UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

CHRISTIAN JAVIER HAWKINS,

                                        Plaintiff,

v.                                                                    9:25-cv-0083
                                                                      (BKS/TWD)

FREDERICK J. AKSHAR, II, et al.,

                                        Defendants.

_____

APPEARANCES:                                     OF COUNSEL:

CHRISTIAN JAVIER HAWKINS
*Plaintiff, pro se*
433681
Broome County Correctional Facility
P.O. Box 2047
Binghamton, NY 13902-2047

BROOME COUNTY ATTORNEY'S OFFICE              JOSHUA T. TERRELL, ESQ.
Attorneys for Defendants
Broome County Office Building
60 Hawley Street
P.O. Box 1766
Binghamton, NY 13902-1766

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

## I.    INTRODUCTION

This matter has been referred to the undersigned for a report and recommendation by the

Hon. Brenda K. Sannes, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Local Rule 72.3(c).  Plaintiff Christian Javier Hawkins ("Plaintiff") commenced this action

pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act

("RLUIPA"), 42 U.S.C. §§ 2000cc-2000cc-5. *See generally*, Dkt. No. 1. Currently before the Court is a motion to dismiss filed by Defendants Frederick J. Akshar, II and Cris Mogenson ("Defendants"). *See generally*, Dkt. No. 24. For the reasons set forth below, the undersigned recommends that the Defendants' motion be granted and the complaint be dismissed.

## II.    BACKGROUND

Plaintiff commenced this action as a pretrial detainee held at the Broome County Correctional Facility ("BCCF") by submitting a complaint along with an application to proceed *in forma pauperis* ("IFP"). *See generally*, Dkt. Nos. 1-3, 5. By Decision and Order dated February 27, 2025, the Hon. Judge Sannes granted Plaintiff's application to proceed IFP and found his (1) RLUIPA claim for injunctive relief, (2) First Amendment Free Exercise, and (3) Fourteenth Amendment Equal Protection claims against BCCF Chaplin Mogenson and BCCF Sheriff Akshar survived *sua sponte* review and required a response. *See* Dkt. No. 9 at 16.[1]

Counsel entered a notice of appearance on behalf of Defendants Mogenson and Akshar and both Defendants filed answers. *See* Dkt. Nos. 14, 16, 20. On July 3, 2025, Defendants Mogenson and Akshar filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). *See generally*, Dkt. No. 24. The Court subsequently issued a notice to Plaintiff of the July 24, 2025, deadline to respond to Defendants' motion. Dkt. No. 25.

By Text Order dated August 7, 2025, the undersigned noted Plaintiff had not filed a response to Defendants' motion to dismiss and *sua sponte* extended the response deadline to

---

[1] Citations to the parties' submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

September 22, 2025.  Dkt. No. 26.[2]  On September 10, 2025, Plaintiff filed a letter requesting appointment of counsel.  Dkt. No. 27.  On September 12, 2025, the undersigned issued a Text Order denying Plaintiff's fourth request for appointment of counsel and, in light of Plaintiff's *pro se* status, extended Plaintiff's time to respond to Defendants' motion until October 14, 2025. Dkt. No. 28.[3]

Plaintiff has not filed a response to Defendants' motion to dismiss.  The Court takes judicial notice of New York State Department of Corrections and Community Supervision (DOCCS) public administrative records which indicate Plaintiff was admitted to DOCCS custody on November 26, 2025, and is currently housed at Lakeview Correctional Facility.  *See* https://nysdoccslookup.doccs.ny.gov/ for Hawkins, Christian J., DIN: 25B3690 (site last visited on January 20, 2026); *see also*, *e.g.*, *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 453 (E.D.N.Y. 2018) ("The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information . . . .").[4]

## III.    LEGAL STANDARD

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The motion tests the legal sufficiency of the complaint and whether it conforms to Rule 8(a)(2) of the Federal

---

[2] The Text Order further advised, "Plaintiff's failure to file any response to the motion may result in the motion being granted since the Court will not have the benefit of Plaintiff's response to consider in making its decision."  Dkt. No. 26.

[3] The Undersigned further advised, "No further extensions will be granted for any reason. Plaintiff's failure to file any response to the motion may result in the motion being granted since the Court will not have the benefit of plaintiff's response to consider in making its decision." Dkt. No. 28.

[4] To date, Plaintiff has not filed a change of address as required by N.D.N.Y. L.R. 10.1(c)(2) and 41.2(b).

Rules of Civil Procedure.  To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

> Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.

*Iqbal*, 556 U.S. at 679 (internal quotations and citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face."  *Id*. at 570.  While Rule 8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me-accusation."  *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).  A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice.  *Id*. (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they

suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*).  In considering a Rule 12(b)(6) motion, "the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation and internal quotation marks omitted).  Furthermore,

> [t]he mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the plaintiff's complaint.

*Robles v. Bleau*, No. 9:07-CV-0464, 2008 WL 4693153, at *6 and n.41 (N.D.N.Y. Oct. 22, 2008) (collecting cases).

Alternatively, where a plaintiff fails to respond to a defendant's motion to dismiss, such a failure to respond "is not, by itself, a sufficient reason grant [the] defendant's motion." *Coleman v. Erie Painting & Maint., Inc.*, No. 5:24-CV-1239, 2025 WL 1331745, at *3 (N.D.N.Y. May 7, 2025); *see also, e.g.*, *Mendez v. Cayuga Cnty.*, No. 9:21-CV-1090 (BKS/TWD), 2024 WL 1469060, at *4 (N.D.N.Y. Feb. 1, 2024), *report and recommendation adopted*, 2024 WL 1251541 (N.D.N.Y. Mar. 25, 2024); *Malloy v. Sopchak*, No. 1:18-CV-1460 (BKS/DJS), 2020 WL 4432631, at *2 (N.D.N.Y. July 31, 2020) ("A plaintiff's failure to respond to a motion to dismiss does not relieve the Court of its obligation to consider the merits of plaintiff's claims . . . .") (internal quotations and citations omitted).  "If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000); *see also Goldberg v. Danaher*, 599 F.3d 181, 183 (2d Cir. 2010) ("Because a motion under Rule 12(b)(6) presents a

pure legal question, based on allegations contained within the four corners of the complaint, the district court is equipped to make a determination on the merits.").

## IV.    DISCUSSION

Defendants aver dismissal of the complaint is warranted under Rule 12(b)(1) as BCCF has substantially met Plaintiff's requests for religious accommodations, therefore, this action is moot. *See* Dkt. No. 24-11 at 10-12. Defendants further argue the complaint is subject to dismissal pursuant to Rule 12(b)(6) because Plaintiff's complaint fails to state a claim under the RLUIPA, § 1983, and the First and Fourteenth Amendments, Plaintiff has not alleged either Akshar or Mogenson were personally involved in the alleged deprivation of his constitutional rights, Plaintiff's claims are barred by the doctrine of qualified immunity, and Plaintiff has failed to identify the municipal policy or custom from which the alleged constitutional violations arose to support a claim for municipal liability against the County of Broome under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1970). *See id*. at 12-23.

### A. RLUIPA Claim for Injunctive Relief

The RLUIPA provides "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person" is (1) "in furtherance of a compelling governmental interest; and" (2) "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C.A. § 2000cc-1(a). It is well established that the RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities. *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014); *Washington v. Gonyea*, 731 F.3d 143, 145-46 (2d

Cir. 2013) (citing *Sossamon v. Texas*, 563 U.S. 277, 280 (2011)); *see also*, *e.g.*, *Fox v. Lee*, No. 9:15-CV-0390 (TJM/CFH), 2015 WL 13949048, at *3 (N.D.N.Y. July 17, 2015).

Moreover, "'[i]n this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.'" *Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)). Accordingly, RLUIPA claims against an institution seeking injunctive or declaratory relief are subject to dismissal where the plaintiff is no longer housed at that institution. *See*, *e.g.*, *Trapani v. Pullen*, No. 9:14-CV-00556 (TJM/TWD), 2016 WL 1295137, at *12 (N.D.N.Y. Feb. 18, 2016) (recommending dismissal of the plaintiff's RLUIPA claims, without leave to amend, "because Plaintiff is no longer housed at Coxsackie, where the alleged violations occurred.") (citing *Salahuddin*, 467 F.3d at 272), *report and recommendation adopted*, 2016 WL 1060307 (N.D.N.Y. Mar. 15, 2016).

As previously stated, DOCCS public administrative records indicate Plaintiff is no longer housed at the BCCF, where the alleged violations occurred. *See supra*, Section II. Therefore, the undersigned recommends dismissal of Plaintiff's RLUIPA claim seeking injunctive relief. *See*, *e.g.*, *Trapani*, 2016 WL 1295137, at *12; *Peters v. Ulster Cnty. Sheriffs Dep't/Emps.*, No. 9:22-CV-0638 (DNH/TWD), 2025 WL 1033894, at *5 (N.D.N.Y. Feb. 28, 2025) (recommending dismissal of the plaintiff's claims under the RLUIPA where "he is no longer housed at the Ulster County Jail, where the alleged violations of his rights occurred . . . .") (citations omitted), *report and recommendation adopted*, 2025 WL 863863 (N.D.N.Y. Mar. 19, 2025); *Jones v. Smith*, No. 9:09-CV-1058 (GLS/ATB), 2015 WL 5750136, at *24 (N.D.N.Y. Sept. 30, 2015) (explaining, "only injunctive relief is available under RLUIPA," and "[w]hile plaintiff may no longer obtain injunctive relief . . .based upon his transfers from" the facilities

where the alleged violations occurred, "further analysis is required with respect to a First

Amendment claim for monetary damages against defendants in their individual capacities.").

### B.  § 1983 Claims for Money Damages

"It is well settled that, in order to establish a defendant's individual liability in a suit

brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in

the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d

Cir. 2013) (citations omitted).  As the Second Circuit has explained, "there is no special rule for

supervisory liability.  Instead, a plaintiff must plead and prove 'that each Government-official

defendant, through the official's own individual actions, has violated the Constitution.'"

*Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

"Thus, a Section 1983 plaintiff must 'allege a tangible connection between the acts of the

defendant and the injuries suffered.'"  *Peters*, 2025 WL 1033894, at *5 (citing *Austin v. Pappas*,

No. 1:04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*,

790 F.2d 260, 263 (2d Cir. 1986))); *see also Bradshaw v. Annucci*, No. 9:23-CV-0602

(MAD/ML), 2023 WL 4744735, at *13 (N.D.N.Y. July 24, 2023) (explaining, "[d]ismissal is

appropriate where a defendant is listed in the caption, but the body of the complaint fails to

indicate what the defendant did to the plaintiff' and dismissing the plaintiff's § 1983 claims

where it was " entirely unclear how and when, if at all, the[ defendant] officials may have

violated plaintiff's federal rights.") (citations omitted).

Here, Plaintiff has failed to allege either Akshar or Mogenson were personally involved

in the alleged deprivation of Plaintiff's First or Fourteenth Amendment rights.  *See* Dkt. No. 1,

Dkt. No. 1-1, Dkt. No. 1-2.[5]  Plaintiff's complaint and additional submissions lack a connection

between either of the named Defendants' actions and Plaintiff's injuries.  *See generally*, *id*.

Accordingly, the undersigned agrees with the Defendants that dismissal of Plaintiff's § 1983

claims for lack of personal involvement is warranted.  *See*, *e.g.*, *Bradshaw*, 2023 WL 4744735, at

*13; *Kweller v. Cnty. of Broome*, No. 3:24-CV-1328 (AJB/ML), 2025 WL 3280745, at *3-4

(N.D.N.Y. Nov. 25, 2025); *Trapani v. Annucci*, No. 9:21-CV-0681 (LEK/ML), 2022 WL

7290107, at *13 (N.D.N.Y. June 21, 2022), *report and recommendation adopted*, 2022 WL

4008027 (N.D.N.Y. Sept. 1, 2022).  Moreover, even if Plaintiff *had* alleged the named

Defendants' personal involvement, his complaint fails to state a plausible claim for relief.

The First Amendment states "Congress shall make no law respecting an establishment of

religion, or prohibiting the free exercise thereof . . . ."  U.S. Const. amend. I.  "Prisoners have

long been understood to retain some measure of the constitutional protection afforded by the

First Amendment's Free Exercise Clause."  *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003)

(*citing Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

> In the prison context, however, "the right to free exercise of
> religion" is balanced against "the interests of prison officials
> charged with complex duties arising from administration of the
> penal system." . . . Therefore, an infringement of the free exercise
> of religion is permissible only if it is "reasonably related to
> legitimate penological interests." . . . "[T]o assess a free exercise
> claim, a court must determine (1) whether the practice asserted is
> religious in the person's scheme of beliefs, and whether the belief is
> sincerely held; (2) whether the challenged practice of the prison
> officials infringes upon the religious belief; and (3) whether the
> challenged practice of the prison officials furthers . . . legitimate
> penological objective[s]."

---

[5] In the additional papers submitted with Plaintiff's complaint, Plaintiff does allege, "everytime I asked about Anything Native American Chaplin Chris said we dont do That here."  Dkt. No. 1-1 at 9.  Without more, the undersigned is unpersuaded this allegation is sufficient to state a claim against Defendant Mogenson for violation of Plaintiff's First or Fourteenth Amendment rights.

*Kravitz v. Purcell*, 87 F.4th 111, 127-28 (2d Cir. 2023) (first quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990); then quoting *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988)) (additional citation omitted); *see also Kravitz*, 87 F.4th at 125 ("[A]n inmate does not need to establish a substantial burden in order to prevail on a free exercise claim under § 1983.").

"A religious belief is 'sincerely held' when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature." *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 279 (N.D.N.Y. 2018) (citing *Ford v. McGinnis*, 352 F.3d 582, 590 (2d Cir. 2003)). In the instant matter, while Plaintiff alleges he was "denied my first [amendment right] to practice native American religion," Dkt. No. 1 at 3,[6] and requested to be permitted to "Practice Native American religion (medicine pouch, Abaline shell, Animal claws, deer hooves, tabacco, dream catchers)," Dkt. No. 1 at 5, "Plaintiff has entirely failed to allege that his religious beliefs are sincerely held." *Velez v. Collado*, No. 9:22-CV-0362 (AMN/ML), 2023 WL 5782446, at *4 (N.D.N.Y. May 30, 2023) (recommending dismissal of the plaintiff's First Amendment Free Exercise claim where "[a]lthough the Complaint alleges that Plaintiff was 'not allowed' to attend Jewish services . . . and was 'denied' Kosher meals . . . , it does not allege that he previously attended Jewish services, ate Kosher meals, or forewent eating non-Kosher meals.") (citations omitted), *report and recommendation adopted*, 2023 WL 5444418 (N.D.N.Y. Aug. 24, 2023). Because the complaint is devoid of facts plausibly suggesting Plaintiff sincerely held any religious belief, the undersigned recommends Plaintiff's Free Exercise claim be dismissed for failure to state a claim.

---

[6] *See also* Dkt. No. 1-1 at 1 (alleging, "the facility has denied my right to practice my Native American religion upon exhausting the grievance process mod[i]fied Accomm[o]dations has Been made of w[h]ich Are Not suit[]able for the requirements of Native American heritage.").

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. U.S. Const. amend. XIV, § 1. Essential to that protection is the guarantee that similarly-situated persons be treated equally. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To that end,

> the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."

*Vega v. Artus*, 610 F. Supp. 2d 185, 209 (N.D.N.Y. 2009) (quoting *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005)) (additional quotations and citations omitted).

"To prove an equal protection violation, claimants must prove purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (first citing *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); then citing *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 457-58 (1988)). Alternatively, under a "class of one" theory, a plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). However, "class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted).

As relevant here, the additional pages submitted with Plaintiff's complaint allege:

> Violation of Rights: under "equal protection clause of the united states constitution" By treating me differently from other inmates based solely upon a racial classification. Specifically Plaintiff [] alleged that defendants (Jail) refused to consider my request to

> obtain Native American religious items because of reasons I dont
> know.

Dkt. No. 1-1 at 1.  Plaintiff further avers, "Boome County No smoke policy discriminates against

(me) and other Natives By we Are required to immedi[a]tely stop Any type of tabaco use upon

Arrival at Jail which constitutes unconstitutional punishment . . . ." *Id*. at 10.

Notably, the "complaint does not include any facts plausibly suggesting that similarly

situated prisoners were treated differently than [the plaintiff]." *Thomas v. Pingotti*, No. 9:17-

CV-0300 (GTS/DEP), 2017 WL 3913018, at *7 (N.D.N.Y. Sept. 6, 2017).  Plaintiff states he

was treated "differently" based on a "racial classification," but does not specify *how* he was

treated differently.  *See* Dkt. No. 1-1 at 1.  His claim the "No smoke policy discriminates against

[him] and other Native[] American inmates" is similarly wholly conclusory.  *See id*. at 10.  Such

"[c]onclusory allegations of disparate treatment or [] plaintiff's personal belief of discriminatory

intent are patently insufficient to plead a valid claim under the Equal Protection clause."

*Thomas*, 2017 WL 3913018, at *7 (citing *Nash v. McGinnis*, 585 F. Supp. 2d 455, 462

(W.D.N.Y. 2008)) (additional citation omitted); *see also*, *e.g.*, *Hilton v. Mahan*, No. 9:23-CV-

00209 (MAD/CFH), 2024 WL 6935161, at *18 (N.D.N.Y. Feb. 29, 2024), *report and

recommendation adopted*, 2024 WL 1242263 (N.D.N.Y. Mar. 22, 2024); *Matthews v. Barq*, No.

9:18-CV-0855 (TJM/CFH), 2019 WL 1025828, at *13 (N.D.N.Y. Mar. 4, 2019).  Accordingly,

the undersigned recommends dismissal of Plaintiff's Equal Protection claim for failure to state a

claim.

In sum, the Plaintiff's complaint and additional submissions fail to provide facts from

which the Court could plausibly conclude he held any sincere religious belief, he was treated

differently from other similarly situated inmates, and that Defendants Akshar or Mogenson were

personally involved in the deprivation of Plaintiff's constitutional rights.  Therefore, the undersigned recommends Plaintiff's § 1983 claims be dismissed.

Because the undersigned recommends dismissal of Plaintiff's claims alleged under the RLUIPA and § 1983, the Court need not address Defendants' arguments regarding qualified immunity or a claim for municipal liability, if any, under *Monell*.

## V.    CONCLUSION

After carefully reviewing the record, the parties' submissions, and the applicable law, and for the reasons stated herein, it is hereby

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 24) be **GRANTED**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

---

[7] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

Dated: January 20, 2026
        Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge

2008 WL 4693153
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Raymond ROBLES, Plaintiff,

v.

K. BLEAU, Correctional Officer, Riverview C.F.; Peacock, Correctional Sergeant, Riverview C.F.;
R. Varkiar, Senior Counsel, Riverview C.F.; and New York State Dep't of Corr. Servs., Defendants.

No. 9:07-CV-0464.
|
Oct. 22, 2008.

**Attorneys and Law Firms**

Raymond Robles, Cape Vincent, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, David L. Cochran, Esq., of Counsel, New York, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

 **\*1** This *pro se* civil rights action, brought pursuant to 42 U.S.C. § 1983, was referred to the Hon. George H. Lowe, United States Magistrate Judge, for a Report-Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

The Report-Recommendation dated September 12, 2008 recommended that Defendants motion to dismiss be granted in part and denied in part. Specifically, Judge Lowe recommended that Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Varkiar regarding his disciplinary hearing be dismissed if, within thirty (30) days from the filing of this Final Order, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim. It was recommended that Plaintiff's remaining claims be dismissed with prejudice.

Plaintiff filed objections to the Report-Recommendation, essentially raising the same arguments presented to the Magistrate Judge.

When objections to a magistrate judge's Report-Recommendation are lodged, the Court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1). After such a review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Having reviewed the record *de novo* and having considered the issues raised in the Plaintiff's objections, this Court has determined to accept and adopt the recommendation of Magistrate Judge Lowe for the reasons stated in the Report-Recommendation.

It is therefore

2008 WL 4693153

**ORDERED** that Defendants motion to dismiss be **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

*REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me by the Honorable Thomas J. McAvoy, Senior United States District Judge, for Report and Recommendation with regard to any dispositive motions filed, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Generally, in his Complaint, Raymond Robles ("Plaintiff") alleges that three employees of the New York State Department of Correctional Services ("DOCS"), as well as DOCS itself, violated his rights under the Eighth and Fourteenth Amendments when they (1) required him to submit to a random urinalysis test when they knew he was taking a medication that would prevent him from providing a urine sample, and (2) charged, convicted, and punished him with eighty-seven days in a Special Housing Unit for refusing to provide a urine sample. (*See generally* Dkt. No. 1 [Plf.'s Compl.].) Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16.) For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

**I. BACKGROUND**

   **A. Summary of Plaintiff's Complaint**
 **\*2**   As Defendants correctly observe in their Memorandum of Law, Plaintiff's Complaint-which describes the events giving rise to his claims in two brief paragraphs without identifying any role played by Defendants in those events-is hardly a model of *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.].) However, as explained below in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [1] Here, I find that the factual allegations contained in Plaintiff's Response Affidavit are consistent with the factual allegations of his Complaint. As a result, in construing Plaintiff's Complaint, I will consider his Response Affidavit as effectively amending the factual allegations of his Complaint. Thus construed, Plaintiff's Complaint alleges as follows:

1. On November 6, 2006, at about 7:28 a.m., Plaintiff was directed to report to the drug testing center at Riverview C.F.; [2]

2. Upon arriving at the drug testing center, Plaintiff was informed by Correctional Officer K. Bleau ("Defendant Bleau") that he had been randomly selected to submit to urinalysis drug testing; [3]

3. Defendant Bleau asked Plaintiff if he would provide a urine sample, and Plaintiff responded yes; [4]

4. Defendant Bleau then asked Plaintiff if he was taking any medications, and Plaintiff explained that (1) yes, he was taking Flomax and Omeprazole due to a prostate condition and a stomach problem, and (2) "d[ue] to the medication [s]" and the fact that he had used the bathroom at approximately 7:10 a.m. that morning, he would need more water in order to urinate; [5]

5. As Plaintiff was explaining these facts to Defendant Bleau, Defendant Bleau became upset and walked away from Plaintiff; [6]

2008 WL 4693153

6. When he returned, Defendant Bleau then informed Plaintiff that, pursuant to DOCS Directive 4937, Plaintiff had three hours provide a urine sample or he would be considered to be refusing to provide the urine sample; [7]

7. Defendant Bleau then gave Plaintiff a cup of water at approximately 7:30 a.m., and a second cup of water at approximately 9:30 a.m., but did not give him a third cup of water at approximately 8:30 a.m., as required by Part D.4. of DOCS Directive 4937; [8]

8. At approximately 10:30 a.m., Plaintiff was still unable to provide a urine sample; [9]

9. At that time, Defendant Bleau notified Correctional Sergeant Peacock ("Defendant Peacock") that Plaintiff was refusing a direct order to provide a urine sample; [10]

10. When Plaintiff tried to explain to Defendant Peacock that his medical condition prevented him from providing the urine sample, Defendant Peacock responded, "Shut up and put [your] hands behind [your] back"; [11]

 **\*3**  11. Both Defendants Bleau and Peacock failed to investigate or inquire as to why Plaintiff had been prescribed Flomax and Omeprazole, or what the potential side effects of those drugs were, although that information was readily obtainable from medical staff at Riverview C.F.; [12]

12. Instead, Defendants Bleau and/or Peacock escorted Plaintiff to the Riverview C.F. Special Housing Unit ("S.H.U."); [13]

13. On November 7, 2006, at about 8:55 a.m., while Plaintiff was in S.H.U., he was served with a copy of a misbehavior report authored by Defendant Bleau, charging him with (1) failing to comply with the urinalysis testing procedure, and (2) refusing a direct order to provide a urine sample; [14]

14. On November 10, 2006, Senior Correctional Counselor R. Varkiar conducted Plaintiff's disciplinary hearing on the misbehavior report; [15]

15. At the hearing, when Plaintiff entered a plea of "Not guilty, with an explanation," Defendant Varkiar gave Plaintiff "an opportunity to explain [him] self"; [16]

16. Plaintiff explained that he had a medical condition that prevented him from providing a urine sample, that he had attempted to inform Defendant Bleau of this medical condition (but Defendant Bleau walked away from Plaintiff), and that he had attempted to inform Defendant Peacock of this medical condition (but Defendant Peacock told Plaintiff to "[s]hut up"); [17]

17. Defendant Varkiar then made a telephone call; when he was done with the call, he told Plaintiff that (1) he had called the medical unit at Riverview C.F. to ask whether or not the medication that Plaintiff was taking would prevent him from urinating, and (2) someone in the medical unit had responded that no, the medication should not prevent Plaintiff from urinating; [18]

18. Plaintiff then attempted to explain to Defendant Varkiar *why* he was taking one of the medications, specifically, to remedy a prostate problem that itself interfered with his ability to urinate; [19]

19. However, Defendant Varkiar failed to call back the person in the medical unit at Riverview C.F. and request that he or she again answer the question he had posed before, taking into account Plaintiff's prostate condition as shown by his medical records; [20]

20. As a result, Defendant Varkiar found Plaintiff guilty of both disciplinary charges, and sentenced him to ninety (90) days in S.H.U ., with a corresponding loss of privileges;[21]

21. At the conclusion of the hearing, Plaintiff received a written copy of the hearing disposition, which stated that the evidence relied on included (1) the statements in the written misbehavior report of Defendant Bleau (which Defendant Varkiar stated were credible), and (2) Plaintiff's own hearing testimony (which Defendant Varkiar stated was not credible);[22]

22. On November 27, 2006, Plaintiff appealed his conviction to DOCS Director of Special Housing, Donald Selsky, who reversed the conviction on January 19, 2007;[23] and

**\*4** 23. On February 1, 2007, Plaintiff was finally released from S.H.U., after spending eighty-seven (87) days there.[24]

It should be noted that, in addition to asserting constitutional claims against Defendants Bleau, Peacock, and Varkiar in their individual or personal capacities, Plaintiff's Complaint asserts a constitutional claim also against DOCS itself. It should also be noted that, as relief for Defendants' actions, Plaintiff requests money damages but no injunctive relief.[25]

### B. Summary of Grounds in Support of Defendants' Motion

Generally, Defendants' motion to dismiss for failure to state a claim is premised on two grounds: (1) Plaintiff's claim against DOCS is barred by the Eleventh Amendment; and (2) the allegations of Plaintiff's Complaint are too lacking in detail to give Defendants *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 2-5 [Defs.' Memo. of Law].)

### II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2);[26] or (2) a challenge to the legal cognizability of the claim.[27]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."[28] The main purpose of this rule is to "facilitate a proper decision on the merits."[29] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[30]

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[31] However, it is well established that even this liberal notice pleading standard "has its limits."[32] As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard.[33]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007).[34] Rather than

turning on the *conceivability* of an actionable claim, the Court clarified, the Fed.R.Civ.P. 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74.

 **\*5** More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading contain at least "some factual allegation[s]." *Id.* [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Twombly* ). [35] The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants). [36]

It should be emphasized that Fed.R.Civ.P. 8's plausibly standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gibson,* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever. [37] There must still be enough fact alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [38] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*" [39] In other words, as stated above, while all pleadings are to be construed liberally under Fed.R.Civ.P. 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality . [40]

 **\*6** For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [41] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [42] Furthermore, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [43] Of course, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [44] In addition, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading. [45]

2008 WL 4693153

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed),[46] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[47] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[48] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended."[49]

## III. ANALYSIS

### A. Whether Plaintiff's Claim Against DOCS is Barred by the Eleventh Amendment

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's constitutional claims against Defendant DOCS are barred by the Eleventh Amendment to the United States Constitution. (Dkt. No. 16, Part 2, at 2-3 [Defs.' Mem. of Law].) In the interest of brevity, I will not repeat the well-established points of law that they correctly cite in support of their argument. Instead, I will only add three points that Defendants do *not* make in their succinct argument: (1) where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case (or claim), and "the case [or claim] *must* be stricken from the docket";[50] (2) Plaintiff's civil rights claims against Defendant DOCS (an entity) are barred also by the express language of 42 U.S.C. § 1983, which confers liability upon only any *"person* who ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws .... "[51]; and (3) because the defect with this claim is substantive rather than merely formal, better pleading will not cure it, and thus it should be dismissed with prejudice.[52]

**\*7** For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's claims against Defendant DOCS.

It should be noted that, in addition to barring Plaintiff's constitutional claims against Defendant DOCS, the Eleventh Amendment would also bar any claim by Plaintiff against Defendants Bleau, Peacock and Varkiar in their official capacities.[53] However, because I do not even liberally construe Plaintiff's Complaint (and Response Affidavit) as asserting such claims, no need exists to recommend the dismissal of those claims. (*See generally* Dkt. No 1, 17.)

### B. Whether the Allegations of Plaintiff's Complaint Are Too Lacking in Detail to Give Defendants *Fair Notice* under Fed.R.Civ.P. 8(a)(2)

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's Complaint-when considered alone-is too lacking in detail to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 3-5 [Defs.' Mem. of Law].) However, as explained above in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[54] Here, when construing Plaintiff's Complaint together with his Response Affidavit, I find that Plaintiff's allegations *are* detailed enough to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). *See, supra,* Part I.A. of this Report-Recommendation.

However, this does not end the Court's analysis of Plaintiff's Complaint because, even where a defendant has not advanced a certain argument on a motion to dismiss in a *pro se* prisoner civil rights case, a district court may (and, indeed, has a duty to) *sua sponte* address whether the pleading in such a case has successfully stated a claim upon which relief may be granted.[55] Here, Plaintiff's Complaint is plagued by several defects (some substantive and some formal)[56] that simply cannot be overlooked.

2008 WL 4693153

**C. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau, Peacock and Varkiar Arising Out of Plaintiff's Being Required to Provide a Urine Sample Given Their Knowledge of His Medications and/or Medical Condition**

Among Plaintiff's claims is a claim that "[i]t is neither lawful nor [ ] reasonable to expect an Inmate to perform a bodily function on command when you know or should know that his medical condition and prescribed treatment plan indicate that when he urinates[,] and when he [can] not[,] can be beyond his control." (Dkt. No. 17, at 5 [Plf.'s Response Affid.].) I liberally construe this claim as one of harassment or perhaps inadequate-prison-conditions under the Eighth Amendment. (To the extent that this allegation is also used to support a procedural due process claim under the Fourteenth Amendment, I address that claim below in Parts III.D. and III.E. of this Report-Recommendation.)

**\*8** The problem with Plaintiff's Eighth Amendment claim is that the rather detailed facts alleged by him in support of that claim do not suggest in any way that any of the three individual Defendants were acting with the sort of mental state that is required for them to incur liability under the Eighth Amendment, namely, *deliberate indifference.* Deliberate indifference is a state of mind akin to *criminal recklessness,* which involves *knowing* of and disregarding an excessive risk to inmate health or safety. [57] Here, Plaintiff himself alleges that the three individual Defendants did not in fact *understand* that he could not urinate due to his prostate condition. Indeed, as he was trying to explain his medical condition to Defendants, (1) Defendant Bleau became angry and "walked away" from Plaintiff, (2) Defendant Peacock told Plaintiff to "[s]hut up," and (3) Defendant Varkiar failed to call back the person in the medical unit of Riverview C.F. and ask him or her to report (to Varkiar) the impact of Plaintiff's prostate condition on his ability to urinate. *See, supra,* Part I.A. of this Report-Recommendation. [58]

At its heart, Plaintiff's Eighth Amendment claim alleges that the three individual Defendants *should have known* that he could not urinate during the time in question due to his enlarged prostate, but that they did not know that fact because they *failed to investigate* the nature and effects of his prostate condition. In other words, his Eighth Amendment claim is one of *negligence.* Such a claim is simply not actionable under the Eighth Amendment (or any constitutional provision). As is often observed, "[D]eliberate indifference describes a state of mind more blameworthy than negligence." [59] Finally, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it. [60]

For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Eighth Amendment claim.

**D. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau and Peacock Arising Out of His Receipt of an Erroneous or False Misbehavior Report**

It is well established that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 [2d Cir.1986] ). [61] Rather, the only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there is "more, such as retaliation against the prisoner for exercising a constitutional right." *Boddie,* 105 F.3d at 862; *accord, Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at \*26, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted].

Here, Plaintiff alleges no actionable conduct regarding his being issued the misbehavior report in question, such as retaliation against him for exercising a constitutional right. *See, supra,* Part I.A. of this Report-Recommendation. Moreover, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it. [62]

**\*9** For these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Fourteenth Amendment false-misbehavior-report claim.

2008 WL 4693153

**E. Whether Plaintiff Has Stated an Actionable Claim Against Defendant Varkiar Arising Out of Plaintiff's Erroneous or Unjustified Disciplinary Conviction**

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient .... " *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). With regard to the first question, in 1995, the Supreme Court held in *Sandin v. Connor* that liberty interests protected by the Fourteenth Amendment's Due Process Clause will not arise from the use of mandatory language of a particular state law or regulation, but "will generally be limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor,* 515 U.S. 472, 483-484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Here, Plaintiff alleges that the disciplinary hearing conducted by Defendant Varkiar resulted in a sentence of eighty-seven (87) days in the Riverview C.F. S.H.U. with a corresponding loss of privileges. *See, supra,* Part I.A. of this Report-Recommendation. Numerous district courts in this Circuit have issued well-reasoned decisions finding no atypical and significant hardship experienced by inmates who served sentences in S.H.U. of far more than the eighty-seven (87) days alleged here-even where the conditions of confinement in the S.H.U. were, to varying degrees, more restrictive than those in the prison's general population. [63] As a result, I find that Plaintiff has not alleged facts plausibly suggesting that he possessed, during the disciplinary hearing, a liberty interest that was protected by the Fourteenth Amendment.

However, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice. This is because it is conceivable to me that Plaintiff's Complaint and Response Affidavit-which are silent with regard to the conditions of confinement he experienced in the Riverview C.F. S.H.U.-may be amended so as to allege facts plausibly suggesting that those conditions were so restrictive as to impose on Plaintiff an *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life* (thus conferring on him a protected liberty interest under the Fourteenth Amendment).

I should also point out that, even assuming (for the sake of argument) that Plaintiff possessed a protected liberty interest with regard to his disciplinary hearing, I find that he has alleged facts plausibly suggesting that he was, in fact, given all the process that he was due under the circumstances. Specifically, Plaintiff alleges that he was given the following: (1) timely notice of the misbehavior report: (2) an "opportunity to explain [him]self" at his disciplinary hearing; (3) a written disciplinary hearing disposition; (4) a disciplinary hearing disposition that was based on at least some evidence (e.g., his own hearing testimony, which Defendant Varkiar found to be not credible); and (5) an opportunity to appeal the disciplinary hearing disposition (which he did so successfully). *See, supra,* Part I.A. of this Report-Recommendation.

 **\*10**  Of course, the defect that Plaintiff alleges occurred at his disciplinary hearing was Defendant Varkiar's failure to use the telephone to call back the person in the medical unit at Riverview C .F. and request that he or she again answer the question of whether Plaintiff was physically unable to urinate, taking into account his prostate condition as shown by his medical records. *Id.* Generally, it is not the duty of an impartial hearing officer to conduct an investigation of the merit of the disciplinary charges against an inmate; rather, the duty of a hearing officer is merely to review the evidence presented to him at the disciplinary hearing, and in *certain circumstances* identify defense witnesses for the inmate. [64] Here, I find that Plaintiff has alleged no circumstances conferring on Defendant Varkiar a duty to call back the medical unit at Riverview C.F. For example, I find that Plaintiff's Complaint and Response Affidavit are devoid of any allegation that, at his disciplinary hearing, he requested and was denied an adjournment of the hearing so that, with the help of a legal assistant, he could obtain his medical records and call as a witness a member of the medical unit, in order that he himself could introduce testimony that his prostate condition prevented him from urinating during the time in question. *See, supra,* Part I.A. of this Report-Recommendation. However, again, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice, because it is conceivable to me that Plaintiff's Complaint and Response Affidavit may be amended to allege facts plausibly suggesting that, at his disciplinary hearing, he made, and was denied, such a request.

2008 WL 4693153

For these reasons, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment procedural due process claim regarding his disciplinary hearing if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing.

Finally, two points bear mentioning. First, to the extent that Plaintiff is attempting to allege that his procedural due process rights were violated at his disciplinary hearing also because Defendant Bleau violated Part D.4. of DOCS Directive 4937 by giving Plaintiff only two cups of water during the three-hour period in question, that allegation is not actionable under the circumstances. Section 1983 provides, in pertinent part, "Every person who ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by *the Constitution and laws,* shall be liable to the party injured ...." 42 U.S.C. § 1983 [emphasis added]. The term "the Constitution and laws" refers to the United States Constitution and *federal* laws. [65] A violation of a state law or regulation, *in and of itself,* does not give rise to liability under 42 U.S.C. § 1983. [66] Furthermore, the violation of a DOCS Directive, alone, is not even a violation of New York State law or regulation; [67] this is because a DOCS Directive is "merely a system the [DOCS] Commissioner has established to assist him in exercising his discretion," which he retains, despite any violation of that Directive. [68]

**\*11** Second, in making the above recommendation (that Plaintiff be required to file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing, upon penalty of dismissal), I am in no way "issuing specific instructions [to Plaintiff] mandating the content and format of the putative amended complaint"-instructions that the Second Circuit recently found erroneous in the case of *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at \*6 (2d Cir. Aug.12, 2008). Rather, I am merely reporting my finding that Plaintiff's current Fourteenth Amendment procedural due process claim regarding his disciplinary hearing fails to state a claim upon which relief might be granted, as pleaded.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 16) be ***GRANTED* in part** and ***DENIED* in part** in the following respects:

(1) Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Varkiar regarding his disciplinary hearing be ***DISMISSED*** if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing; and

(2) The other claims asserted in Plaintiff's Complaint (as effectively amended by his Response Affidavit) be ***DISMISSED* with prejudice,** and without condition.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a)(2), (d).

**BE ADVISED that the District Court, on** *de novo* **review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.** [69]

2008 WL 4693153

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

30    *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion), *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J .). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

1    *See, infra,* note 41 of this Report-Recommendation (citing cases).

2    (Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

3    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

4    (Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"].)

5    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

6    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

7    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid ., attaching page from DOCS Directive 4937].)

8    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid., attaching page from DOCS Directive 4937].)

9    (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf .'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

10    (Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

11    (Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

12    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 9 [Ex. 2 to Plf.'s Response Affid., attaching page of his Ambulatory Health Record].)

13    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

14    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid ., attaching Inmate Misbehavior Report].)

15    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 25 of 397
Robles v. Bleau, Not Reported in F.Supp.2d (2008)
2008 WL 4693153

16   (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

17   (*Id.*)

18   (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

19   (Dkt. No. 17, at 2-3 [Plf.'s Response Affid.]; Dkt. No. 17, at 14-15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid., attaching page of information about Flomax].)

20   (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid ., attaching page of information about Flomax].)

21   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

22   (Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 3 [Plf.'s Response Affid.].)

23   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3-4 [Plf.'s Response Affid.]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 16 [Ex. 8 to Plf.'s Response Affid., attaching Donald Selsky's Review of Superintendent's Hearing, issued on January 19, 2007].)

24   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 2 [Plf.'s Response Affid.].)

25   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

26   *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b) (6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a) (2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

27   *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ( "Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5, 2004 WL 2613993 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]

); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b] [6] motion-one aimed at the sufficiency of the pleadings under Rule 8 [a], and the other aimed at the legal sufficiency of the claims).

28    *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz,* 534 U .S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

29    *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

31    *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

32    2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

33    *See, e.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a] [2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

34    The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly,* 127 S.Ct. at 1969.

35    *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.' ") [citation omitted]; *Goldstein v. Pataki,* 07-CV-2537, 2008 U.S.App. LEXIS 2241, at *14, 2008 WL 269100 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires ... that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level ....' ") [internal citation omitted]; *ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98, n. 2 (2d Cir.2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* ) [emphasis in original].

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 27 of 397
**Robles v. Bleau, Not Reported in F.Supp.2d (2008)**

2008 WL 4693153

36    *See, e.g., Jacobs v. Mostow,* 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim upon which relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

37    For example, in *Erickson,* a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Twombly,* all that is required is a "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id.* at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id.* at 2199-2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e .g., Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept.9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan.23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

38    *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

39    *Hernandez,* 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

40    *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] *pro se* complaint ... must be held to less stringent standards than formal pleadings drafted by lawyers ....") [internal quotation marks and citation omitted]; *McEachin v. McGinnis,* 357 F.3d 197, 200 (2d Cir.2004) ("[W]hen the plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.") [citation omitted].

41    "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,* 317 F.Supp.2d 160

(N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

42  *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

43  *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

44  *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

45  *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2, n. 14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5, n. 34 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4, n. 30 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.,* 03-CV-0407, 2006 WL 2794415, at *5, n. 18 (N.D.N.Y. Sept. 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver,* 03-CV-0912, 2006 WL 2799417, at *4, n .16 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

46  *See Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

47  *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

48  *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

49   *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,*
05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting report-recommendation of
Lowe, M.J.); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting
report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307 (W.D.N.Y.2007);
*Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright,* 05-
CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of
Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting
report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453,
at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur.
of Prisons,* 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of
Lowe, M.J.).

50   *McGinty v. State of New York,* 251 F.3d 84, 100 (2d Cir.2001) [citation omitted]; *see also* Fed.R.Civ.P. 12(h)(3).

51   42 U.S.C. § 1983 [emphasis added].

52   *See, supra,* note 44 of this Report-Recommendation.

53   *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("The immunity to which a state's official may be
entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued
for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke
the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993)
( "[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state
officials in their official capacities."); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) ("The eleventh amendment bars
recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he
is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109
S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in
his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it
is no different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official
capacities are 'persons' under § 1983."); *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114
(1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in
all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for
the real party in interest is the entity."); *see also Holloway v. Selsky,* 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y.
Feb.6, 2007) (Sharpe, J.) [citing cases].

54   *See, infra,* note 41 of this Report-Recommendation (citing cases).

55   The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which
provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis* ] at any time if
the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be
granted[,] ... or ... seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. §
1915A(b), which provides that, "[o]n review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the
complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted ...."

56   As explained above in Part II of this Report-Recommendation, a dismissal for failure to state a claim may be based not
only on a successful challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2), but also on a successful
challenge to the legal cognizability of the claims asserted in the pleading. *See, supra,* notes 26 and 27 of this Report-
Recommendation.

57   *Farmer v. Brennan,* 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[S]ubjective recklessness as used in
the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause

as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness ....") [citation omitted]; *accord, Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept.26, 2007) (Kahn, J.), *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *15, n. 124 (N.D.N.Y. Jan.23, 2007) (Kahn, J.), *Salaam v. Adams,* 03-CV-0517, 2006 WL 2827687, at *10, n. 59 (N.D.N.Y. Sept.29, 2006) (Kahn, J.).

58   In addition, it is worth noting that Plaintiff's explanation to Defendant Bleau consisted of a statement that Plaintiff could not urinate because of his prostate *medication,* not because of his prostate *condition. See, supra,* Part I.A. of this Report-Recommendation. As a result, Defendant Bleau would not have become *aware* of the reason for Plaintiff's inability to urinate (which Plaintiff now alleges was his prostate *condition,* not his prostate *medication* ), even if Defendant Bleau had remained in Plaintiff's presence and listened to his explanation.

59   *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J .) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

60   *See, supra,* note 44 of this Report-Recommendation.

61   *Accord, Lugo v. Van Orden,* 07-CV-0879, 2008 U.S. Dist. LEXIS 56707, at *7, 2008 WL 2884925 (N.D.N.Y. July 23, 2008) (McAvoy, J.); *Darvie v. Countryman,* 08-CV-0715, 2008 U.S. Dist. LEXIS 60931, 2008 WL 3286250 (N.D.N.Y. Aug. 7, 2008) (Sharpe, J.), *adopting* 2008 U.S. Dist. LEXIS 52797, at *18, n. 5, 2008 WL 2725071 (N.D.N.Y. July 10, 2008) (Lowe, M.J.); *Anderson v. Banks,* 06-CV-0625, 2008 U.S. Dist. LEXIS 60896, at *16-17, 2008 WL 3285917 (N.D.N.Y. May 19, 2008) (Homer, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 60932, 2008 WL 3285917 (N.D.N.Y. Aug. 6, 2008) (Sharpe, J.); *Stewartson v. Almstead,* 04-CV-1097, 2008 U.S. Dist. LEXIS 22178, at *7, 2008 WL 783367 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *McEachin v. Goord,* 06-CV-1192, 2008 U.S. Dist. LEXIS 27479, at *12, 2008 WL 1788440 (N.D.N.Y. Feb. 8, 2008) (Treece, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 31879, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J.); *Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *27, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 23065, 2007 WL 956941 (N.D.N.Y. March 29, 2007) (Kahn, J.); *Madera v. Goord,* 103 F.Supp.2d 536, 542 (N.D.N.Y.2000) (Kahn, J., adopting Report-Recommendation by Di Bianco, M.J.).

62   *See, supra,* note 44 of this Report-Recommendation.

63   *See, e.g., Spence v. Senkowski,* 91-CV-0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (180 days that plaintiff spent in S.H.U., where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord, Husbands v. McClellan,* 990 F.Supp. 214, 217-19 (W.D.N.Y.1998) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin,* 985

F.Supp. 350, 353-56 (W.D.N.Y.1997) (161 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky,* 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y.1997) (192 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin,* 949 F.Supp. 112, 116-17 (N.D.N.Y.1996) (Smith, M.J.) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin,* 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug.27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero,* 905 F.Supp. 99, 103-04 (W.D.N.Y.1995) (270 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population).

64  *Jackson v. Onondaga County,* 05-CV-1393, 2008 U.S. Dist. LEXIS 64930, at *40 & n. 46, 549 F. Supp. 2d 204 (N.D.N.Y. Jan. 8, 2008) (Lowe, M.J.) [citations omitted], *adopted on* de novo *review by* 05-CV-1393, 2008 U.S. Dist. LEXIS 22175, 2008 WL 782655 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *see also Martin v. Mitchell,* 92-CV-0716, 1995 U.S. Dist. LEXIS 19006, at *10-12, 1995 WL 760651 (N.D.N.Y. Nov. 24, 1995) (McAvoy, C.J.) (rejecting plaintiff's assertion that prison disciplinary hearing officer "had a duty to investigate the identity of [a correction officer identified by the plaintiff merely as] 'Budd' and call him to testify"); *Hampton v. McGinnis,* 89-CV-6344, 1992 U.S. Dist. LEXIS 15696, at *6, 1992 WL 309553 (S.D.N.Y. Oct. 15, 1992) ("[I]t was not [the disciplinary hearing officer's] duty to investigate [the prisoner's assault] claim, and plaintiff was not precluded from offering his own evidence on that subject."); *cf. Kingsley v. Bureau of Prisons,* 937 F.2d 26, 31 (2d Cir.1991) (under circumstances, a hearing officer did have a duty to identify the name of the plaintiff's desired witness because [1] the plaintiff had an "especially compelling" need for the witness, [2] the witness's identity was "readily available" to the hearing officer, [3] the plaintiff had arrived at the prison only five days earlier, [4] fulfilling the request would not have delayed the imposition of "swift discipline," and [5] "no other institutional objective was implicated").

65  *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States."* ) (emphasis added); *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985) ("Recovery under 42 U.S.C. § 1983 ... is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right ....") (citation omitted; emphasis added); *Fluent v. Salamanca Indian Lease Auth.,* 847 F.Supp. 1046, 1056 (W.D.N.Y.1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and laws' *of the United States."* ) [emphasis added].

66  *See Doe v. Conn. Dept. of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson,* 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983 ....") (citation omitted); *Murray v. Michael,* 03-CV-1434, 2005 WL 2204985, at * 10 (N.D.N.Y. Sept.7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings ... do not rise to the level of constitutional violations.") (citation omitted); *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.' ") (citing *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 [2d Cir.1990] ).

67  *See Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) (citation omitted); *Lopez v. Reynolds,* 998 F.Supp. 252, 259 (W.D.N.Y.1997).

68  *See Farinaro v. Coughlin,* 642 F.Supp. 276, 280 (S.D.N.Y.1986).

69  *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World*

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 32 of 397
Robles v. Bleau, Not Reported in F.Supp.2d (2008)
2008 WL 4693153

*Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at * 18 n. 8 (S.D.N.Y. Sept.30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; *see also Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4693153

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 33 of 397
Coleman v. Erie Painting & Maintenance, Inc., Slip Copy (2025)

2025 WL 1331745

2025 WL 1331745

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Lekia COLEMAN, Plaintiff,

v.

ERIE PAINTING & MAINTENANCE, INC., Defendant.

5:24-CV-1239

|

Signed May 7, 2025

**Attorneys and Law Firms**

LEKIA COLEMAN, Plaintiff, pro se, 107 Mitchell Avenue, Syracuse, NY 13207.

ARIANNA E. KWIATKOWSKI, ESQ., ROSS M. GREENKY, ESQ., BARCLAY DAMON LLP, Attorneys for Defendant, 200 Delaware Avenue, Suite 1200, Buffalo, NY 14202.

<u>**DECISION and ORDER**</u>

DAVID N. HURD, United States District Judge

## I. INTRODUCTION

**\*1** On October 9, 2024, plaintiff Lekia Coleman ("Coleman" or "plaintiff"), acting *pro se*, filed this action against his former employer, defendant Erie Painting & Maintenance, Inc. ("defendant"), alleging racial discrimination in violation of both Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law (the "NYSHRL"). [1] Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.

[1]    Plaintiff filed a Northern District of New York form discrimination complaint bringing racial discrimination claims under both Title VII and the NYSHRL. Dkt. No. 1. While plaintiff has not explicitly stated his intention to do so, the Court also finds that plaintiff checked the box on his form complaint to indicate age also served as a basis for the alleged discrimination. Dkt. No. 1–1. In light of plaintiff's *pro se* status, the Court will construe plaintiff as having alleged that certain younger co-workers received preferential treatment. Further, given that that age is not a protected category under Title VII, his complaint will be deemed as bringing additional causes of action for discrimination on the basis of his age under both the Americans with Disabilities Act of 1967 ("ADEA") and the NYSHRL. *Id.* Plaintiff is 50 years old. Dkt. No. 1 at 4.

On December 30, 2024, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP Application and, after an initial review of the pleadings, found that plaintiff's complaint sufficiently stated claims for racial discrimination to survive initial review under 28 U.S.C. § 1915. Dkt. No. 4 at 2. [2]

[2]    Pagination corresponds to CM/ECF headers.

On March 7, 2025, defendant moved to partially dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), arguing that: (1) plaintiff failed to exhaust his administrative remedies with respect to his ADEA claim; and (2) plaintiff's age-discrimination claims were time-barred under the NYSHRL. Dkt. No. 10–2. Plaintiff has not filed an opposition to this motion and the deadline to do so has passed. Dkt. No. 10.

The motion has been fully briefed and will be considered on the basis of the available submissions without oral argument. Dkt. No. 10–2.

## II. BACKGROUND

In the summer of 2017, defendant, who operates as a construction company, hired Coleman, a Black man, as a bridge painting apprentice. Dkt. No. 1. According to plaintiff's Equal Employment Opportunity Commission ("EEOC") complaint, he was hired by defendant as a bridge painting apprentice. EEOC Complaint, Dkt. No. 1-1 at 1–4. Plaintiff completed his apprenticeship and became a 'journeyman' in October of 2020. *Id.* at 1.

Sometime in May of 2021, defendant assigned Coleman to work on a project located in Hornell, New York (the "Hornell Project"), which is two hours away from his house in Syracuse. [3] Dkt. No. 1–1 at 1. Plaintiff alleges that one of defendant's project managers informed him that he was being assigned to the Hornell Project to satisfy a racial quota. *Id.* According to plaintiff, the racial quota made the bid more competitive. *See* Dkt. No. 1-1.

[3]    Plaintiff erroneously refers to this as "Hormel, New York" in his EEOC complaint.

 **\*2**  On June 2, 2021, Coleman arrived on the Hornell Project site expecting to perform journeyman-level work, *e.g.*, blasting. Dkt. No. 1–1 at 1. However, plaintiff alleges that the project foreman told him that all blasting work had already been promised to two younger, less experienced Caucasian apprentices. *Id.* Plaintiff alleges that he was directed to perform "gritting" work, which required far less skill or experience. *Id.*

The next day, on June 7, 2021, Coleman approached a project manager to complain about his work assignment on the Hornell Project. *Id.* Plaintiff alleges that he told the project manager that he believed he was being treated differently because of his race. *Id.*

Thereafter, Coleman alleges the project manager failed to meaningfully investigate his discrimination claims and that defendant retaliated against him for complaining to the project manager about racial discrimination complaint by removing him from work on an upcoming project near his home in Syracuse. Dkt. No. 1–1 at 1. [4] *Id.* In addition, plaintiff alleges that defendant reported him to his Union because he had "started a racial thing." *Id.* at 1–2. Plaintiff contends he was never offered work by defendant after the Hornell Project and was effectively terminated from his position. [5] , [6] *Id.* at 2.

[4]    Per Coleman's EEOC complaint, this Syracuse project involved the same foreman as the Hornell Project.

[5]    According to plaintiff's form complaint, there was "gossiping in the union hall and job sites" after he lodged his complaint of racial discrimination to defendant. Compl. at 4. Plaintiff also alleges, *inter alia*, that his employment was terminated, that he was denied reasonable accommodations to complete the essential functions of his job and that defendant failed to promote him. Notably however, plaintiff has not alleged any facts detailing his termination, how defendant failure to promote him, or what reasonable accommodations were withheld. To the contrary, plaintiff alleges being promoted from journeyman. Dkt No. 1-1 at 1. While plaintiff was perhaps constructively terminated when he was no longer assigned to projects after lodging his complaint, the circumstances underlying his alleged termination are, at best, murky.

[6]    In plaintiff's EEOC complaint, he states that, to this day, he has never been given additional work from defendant. Dkt. No. 1–1.

On March 29, 2022, plaintiff filed a complaint with the EEOC. Dkt. No. 1–1. Plaintiff received notice of his right to sue on July 11, 2024. Notice of Right to Sue Letter, Dkt. No. 1–1 at 4–7.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

## IV. DISCUSSION

**\*3**  As noted *supra*, Judge Dancks reviewed Coleman's pleading and construed it as asserting race discrimination claims under Title VII and the NYSHRL. *See* Dkt. No. 4. However, plaintiff's EEOC charge also references age-based discrimination: he claimed that *younger* employees received the better work assignment. Accordingly, the Court construes plaintiff's complaint as asserting Title VII and NYSHRL race discrimination claims for disparate treatment and retaliation as well as ADEA and NYSHRL claims for age discrimination.

Defendant has moved to partially dismiss Coleman's complaint insofar as it brings age discrimination claims. Dkt. No. 10. Specifically, defendant moves to dismiss plaintiff's: 1) ADEA claim on the basis that plaintiff failed to exhaust his available administrative remedies; and 2) NYSHRL age discrimination claims as time-barred because they were not filed within the three-year statute of limitations. Def's. Mem., Dkt. No. 10–2 at 3–7.

### A. Plaintiff's Failure to Oppose Motion to Dismiss

As a threshold matter, Coleman did not oppose defendant's partial motion to dismiss. *See* Dkt. No. 10. But the fact that plaintiff has failed to respond to defendant's partial motion to dismiss for failure to state a claim is not, by itself, a sufficient reason grant defendant's motion. As the Second Circuit has cautioned:

> [T]he sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law. If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal.

*McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000); *Goldberg v. Danaher*, 599 F.3d 181, 183 (2d Cir. 2010) ("Because a motion under Rule 12(b)(6) presents a pure legal question, based on allegations contained within the four corners of the complaint, the district court is equipped to make a determination on the merits."). In other words, even an unopposed motion to dismiss requires the movant to "demonstrate entitlement to the relief requested therein." N.D.N.Y. L.R. 7.1(a)(3).

Furthermore, plaintiff is *pro se*. His filings must be held to less stringent standards than formal pleadings drafted by an attorney. *See, e.g., Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012). As the Second Circuit has repeatedly explained, *pro se* filings must be "construed liberally" with "special solicitude" and interpreted to raise the strongest claims they suggest. *Hogan v.*

*Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). "This is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

### B. ADEA Claim

Defendant argues that Coleman's ADEA claim must be dismissed because he failed to exhaust his available administrative remedies. Def's Mem. at 3–5. Specifically, defendant argues that plaintiff's EEOC charge failed to include any allegations of age discrimination and therefore failed to put the EEOC on notice as to his ADEA and NYSHRL age discrimination claims. *Id.*

The ADEA makes it "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This protection applies to individuals who are at least forty (40) years of age. 29 U.S.C. § 631(a).

**\*4**  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff asserting an employment discrimination complaint under the ADEA must plausibly allege that adverse action was taken against [him] by [his] employer, and that [his] age was the "but-for" cause of the adverse action. *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 31–32 (2d Cir. 2016) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)). "A plaintiff must plead facts that give 'plausible support to a minimal inference' of the requisite discriminatory causality." *Id.* at 32. (quoting *Littlejohn v. City of N.Y.*, 795 F.3d 297, 310–11 (2d Cir. 2015)). A plaintiff must also allege sufficient facts, and not solely legal conclusions, "to push the misconduct alleged in the pleading beyond the realm of the 'conceivable' to the 'plausible.' " *Id.* (quoting *Vega*, 801 F.3d at 84) (cleaned up).

"A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' " *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). "Where the plaintiff complains of discrete discriminatory or retaliatory acts such as 'termination, failure to promote, denial of transfer, or refusal to hire,' such claims are not actionable if they occurred prior to the 300-day period even though they may be 'related to' acts that occurred within the permissible 300-day period." *Id.* at 115. For purposes of the statute of limitations under the ADEA, claims accrue on the date that the employee learns of the employer's discriminatory conduct. *Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 514 (S.D.N.Y. 2016) (citing *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980)).

An individual may not commence a civil action under the ADEA until sixty days after filing an unlawful discrimination charge with the EEOC. 29 U.S.C. § 626(d). That charge must be filed within 300 days after the alleged unlawful practice occurred. [7] *Id.* Thus, to bring an ADEA action in federal court, a plaintiff must first file a timely complaint with the appropriate administrative agency to pursue available administrative remedies. [8] *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003); *see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006) ("Under Title VII and the ADEA, a plaintiff can sue in federal court only after filing timely charges with the EEOC.") (cleaned up).

[7]    The 300-day deadline, as opposed to the 180-day deadline, applies to "deferral states." *See Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 562 (2d Cir. 2006). Most, if not all, plaintiffs reside in referral states, which have their own age discrimination laws and age discrimination remedial agencies. *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 82 n. 4 (2d Cir. 2023).

[8]    Or, in New York, the New York State Division of Human *Rights* ("NYSDHR").

However, this rule is not without exception. Claims not asserted before the administrative agency can still be pursued in a later federal court action where they are "reasonably related" to the claims that were filed with the agency. *Deravin*, 335 F.3d at 200 (internal citations omitted). The exception applies where: "(1) the claim would fall within the reasonably expected scope of an EEOC investigation into charges of discrimination; (2) it alleges retaliation for filing the EEOC charge; or (3) the plaintiff alleges additional incidents of discrimination conducted in the exact manner alleged in the administrative charge." *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (cleaned up).

Coleman v. Erie Painting & Maintenance, Inc., Slip Copy (2025)

2025 WL 1331745

"In determining whether claims are reasonably related, the focus should be on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Deravin*, 335 F.3d at 201; *see also Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 458 (S.D.N.Y. 1998) ("[I]t is the substance of the charge and not its label that controls.").

**\*5** Defendant argues that Coleman's EEOC charge only alleged race discrimination but made no claims regarding his age that might put the administrative agency on notice that he was bringing an age discrimination complaint. Def's. Mem, Dkt. No. 10–2 at 4.

That is inaccurate. Coleman referenced his age in the EEOC charge. Plaintiff alleged that the foreman at the Hornell Project informed him that blasting work had already been promised to "*younger*, Caucasian apprentices." [9] EEOC Complaint, Dkt. No. 1–1 at 1 (emphasis added). [10] Therefore, plaintiff put the EEOC on notice that he was treated differently than co-workers who, aside from being a different race, were also younger than him. Accordingly, plaintiff's age discrimination allegations were within the reasonably expected scope of an agency investigation into his charges of discrimination, thus placing the agency on notice that he experienced disparate treatment on the basis of his age. *Alfano*, 294 F.3d 365, 381 (2d Cir. 2002).

[9]    In their memorandum of law, defendant quoted this very language emphasizing plaintiff's use of the term "Caucasian" without giving any attention to the word "younger." Defendant nevertheless contends that the EEOC complaint "solely" focused on race.

[10]   Put differently, it is reasonable to conclude that Coleman's EEOC charge, even when limited to the four corners of the document, would have alerted the EEOC that plaintiff might have been treated differently on the basis of his age. *Id.* Indeed, plaintiff's age- and race-related allegations arise from the same, single incident on the Hornell project.

Even so, Coleman's ADEA claim must be dismissed. While Coleman sufficiently exhausted his administrative remedies with respect to his discrimination claim under the ADEA, he nevertheless has failed to plausibly allege that claim. Coleman has plausibly alleged that he is over 40 years of age, which entitles him to protection under the ADEA. 29 U.S.C. § 631(a).

The problem for Coleman is that his operative pleading is devoid of any allegations about age-based discrimination aside from the sole, conclusory assertion discussed *supra*. Plaintiff has not offered any allegations as to why he was treated differently on the basis of his age. *Id.* Rather, plaintiff has pleaded facts that tend to suggest race-based discrimination was the reason for the adverse action he allegedly suffered. Indeed, plaintiff has given no factual matter to suggest defendant possessed any discriminatory intent or acted in a discriminatory manner towards him on the basis of his age. (Cite Vega?)

Therefore, because plaintiff's complaint fails to state a plausible claim for which relief could be granted as to disparate treatment on the basis of age under the ADEA, that claim will be dismissed.

**C. NYSHRL Claim**

Defendant has also moved to dismiss Colemans' NYSHRL claims for age discrimination on the basis that they are time-barred under the statute of limitations. As defendant explains, plaintiff failed to bring this action within three years of the alleged discriminatory act. Def's. Mem. at 5–7.

First, defendant argues that the last allegedly discriminatory act took place in May of 2021, more than three years after this action was filed on October 9, 2024. *Id.* at 4. Second, defendant argues that equitable tolling does not save this claim because plaintiff failed to include any age-related allegations in his EEOC charge. Defendant further contends that plaintiff's EEOC claim was devoid of any allegations of age-based discrimination.

2025 WL 1331745

**\*6** NYSHRL claims have a three-year statute of limitations. *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 446 (S.D.N.Y. 2023) (citing *Franchitti v. Cognizant Tech. Sols. Corp.*, 2022 WL 2657171, at \*8 (July 8, 2022)). This limitations period is tolled during the pendency of a complaint with the EEOC. *Herrera v. Syracuse Univ.*, 2025 WL 874734, at \*14 (N.D.N.Y. Mar. 20, 2025) (citing *Lent v. CCNH, Inc.*, 2015 WL 3463433, at \*8 (N.D.N.Y. June 1, 2025)) ("Plaintiff's claims under the NYSHRL were timely filed, as the three-year statute of limitations was tolled during the pendency of [p]laintiff's complaint with the EEOC"). Specifically, the three-year limitations period is tolled "for the period between the filing of an EEOC charge and the issuance by the EEOC of a right-to-sue letter." *Sloth v. Constellation Brands, Inc.*, 883 F. Supp. 2d 359, 374 (W.D.N.Y. June 8, 2012).

Coleman alleges that the final discriminatory act occurred in either May or June of 2021. [11] Plaintiff then filed his EEOC charge on March 29, 2022, approximately ten to eleven months later. Dkt. No. 1–1. The filing of this charge tolled the statute. Then, on July 11, 2024, plaintiff received notice of his right to sue from the EOCC. Dkt. No. 1–1 at 4. At that point, because Coleman's complaint was no longer pending before the EEOC, the statute of limitations was once again running. Roughly three months later, on October 9, 2024, plaintiff filed his complaint. Dkt. No. 1. Therefore, the statute of limitations in this matter ran for no more than a total of fourteen months—less than the three-year limitations period allowed for bringing an EEOC.

[11] Plaintiff's complaint alleges that the final discriminatory act took place in May 2021. However, the facts in plaintiff's EEOC charge suggest the final discriminatory act actually took place in June. Regardless, if plaintiff's EEOC complaint tolled the statute of limitations.

Therefore, the statute of limitations period for plaintiff's was tolled from March 29, 2022 to July 11, 2024—the time during which his charge was pending before the EEOC—and did not run for the full three-year period. Further, plaintiff's age discrimination claims were administratively exhausted for the same reasons described *supra*. Accordingly, plaintiff's NYSHRL age discrimination claims are not time-barred.

Even so, Coleman's NYSHRL age discrimination claims must be dismissed for failure to state a claim.

Claims of discrimination under the NYSHRL have traditionally been analyzed under the same standards as its federal counterparts. *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006). However, "[t]he New York State Legislature passed several amendments to the NYSHRL in June 2019, the effect of which is to render the standard for claims closer to the standard of the [New York City Human Rights Law ("NYCHRL")]." *Id.* (quoting *Livingston v. City of N.Y.*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021)).

These state-law amendments have modified the standard for NYSHRL discrimination claims to more closely resemble that of the NYCHRL, which is generally a plaintiff-friendly law. *Cooper v. Franklin Templeton Invs.*, 2023 WL 3882977, at \*3 (2d Cir. June 8, 2023) (summary order) ("While New York courts have not yet produced any substantive analysis of how this amendment changes standards of liability under the NYSHRL, some courts in this Circuit have interpreted the amendment as rendering the standard for claims closer to the standard of the NYCHRL.").

**\*7** Unlike the ADEA, the NYCHRL does not require plaintiffs to plausibly allege that they suffered an adverse employment action. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2023). Instead, a plaintiff need only show differential treatment, *i.e.,* that they were treated less favorably because of defendant's discriminatory intent. *Id.* (citing *Mihalik*, 715 F. 3d at 110).

However, even under this more liberal NYCHRL standard, a plaintiff must still allege facts giving rise to "a minimal inference of discriminatory motivation." *Id.* (citing *Cruz v. Local 32BJ*, 2024 WL 4357036, at \*19 (S.D.N.Y. Sept. 30, 2024)) (quoting *Littlejohn v. City of N.Y.*, 795 F.3d 297, 321 (2d Cir. 2025)); *see also Ward v. Cohen Media Publ'ns LLC,* 2023 WL 5353342,

2025 WL 1331745

at *15 (S.D.N.Y. Aug 21, 2023) ("[E]ven under the more lenient requirements of the NYCHRL, [a] plaintiff's claims must be more than conclusory or speculative to survive a motion to dismiss.")

Measured against this standard, Coleman's NYSHRL claims fail for the same reason that his federal-law ADEA claims fail: the complaint's allegations of age discrimination are limited to a single reference that younger employees with less training or expertise were assigned work that plaintiff wanted to do. Plaintiff has not alleged any facts whatsoever that might describe defendant's decisions, motivations, intent, or even whether those younger employees were in fact assigned the work that plaintiff wanted to perform. Thus, plaintiff has failed to plausibly allege facts that would give rise to even "a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 321.

Therefore, while plaintiff's NYSHRL claims are not time-barred under the statute of limitations, plaintiff has failed to plausibly allege facts to support a claim for age discrimination under the NYSHRL.

Therefore, it is

ORDERED that

1. Defendants' partial motion to dismiss (Dkt. No. 10) is GRANTED [12];

[12]    However, the motion is granted for different reasons than the ones argued by defendant. That is to say, plaintiff's age discrimination claims fail because they do not plausibly allege facts upon which relief could be granted as is required by Rule 12(b)(6). *Twombly*, 550 U.S. at 570.

2. Plaintiff's ADEA claim for disparate treatment is DISMISSED;

3. Plaintiff's NYSHRL claim for disparate treatment on the basis of his age is DISMISSED;

The Clerk of the Court is directed to terminate the pending motion.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2025 WL 1331745

---

End of Document                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Mendez v. Cayuga County, Not Reported in Fed. Supp. (2024)

2024 WL 1469060

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 40 of 397

2024 WL 1469060
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Luis MENDEZ, Plaintiff,

v.

CAYUGA COUNTY, Defendant.

9:21-cv-01090 (BKS/TWD)
|
Signed February 1, 2024

**Attorneys and Law Firms**

LUIS MENDEZ, Plaintiff, pro se, 99001021, Onondaga County Justice Center, 555 South State Street, Syracuse, NY 13202.

JUDITH B. AUMAND, ESQ., BURKE, SCOLAMIERO LAW FIRM, Attorneys for Defendant, 7 Washington Square, Albany, NY 12205.

**<u>REPORT-RECOMMENDATION AND ORDER</u>**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## I. INTRODUCTION

**\*1** This matter has been referred for a report and recommendation by the Honorable Brenda K. Sannes, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Luis Mendez commenced this *pro se* action pursuant to 42 U.S.C. § 1983 ("Section 1983") asserting claims arising out of his confinement at the Cayuga County Jail as a federal pretrial detainee. (Dkt. No. 11.) Plaintiff, who is presently confined at the Onondaga County Justice Center, paid the full statutory filing fee. (Dkt. No. 9.) Following the Court's initial review of Plaintiff's amended complaint pursuant to 28 U.S.C. § 1915A, only Plaintiff's Section 1983 medical indifference claim against Defendant Cayuga County remains. (Dkt. Nos. 26, 29.) Currently before the Court is Defendant's unopposed motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 34.) For the reasons discussed below, the Court recommends Defendant's motion be granted.

## II. PROCEDURAL HISTORY

Plaintiff commenced this action in October of 2021. (Dkt. No. 11.) On January 19, 2022, the Court reviewed the complaint pursuant to 28 U.S.C. § 1915A, and found it failed to state a claim upon which relief may be granted. (Dkt. No. 12. [1]) In light of Plaintiff's *pro se* status, he was afforded an opportunity to submit an amended complaint. *Id.* at 22-24. [2] Plaintiff was specifically advised that his failure to comply with the January 2022 Order within thirty days would result in dismissal of the action. *Id.* Plaintiff was also ordered to promptly notify the Clerk's Office, in writing, of any change in his address and was warned his failure to do so may result in the dismissal of this action. *Id.* at 23-24.

[1]    The procedural history of this case leading up to the January 2022 Order was discussed at length therein.

[2]    Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

On April 20, 2022, following several extensions of the amended pleading deadline and the return of certain mail as undeliverable, the Court dismissed this action without prejudice pursuant to 28 U.S.C.§ 1915A(b)(1), Federal Rule of Civil Procedure 41(b),

2024 WL 1469060

and Local Rule 41.2(b), based on Plaintiff's failure to comply with the January 2022 Order and maintain a current address in accordance with Local Rule 10.1(c). (Dkt. No. 22.) That same day, judgment was entered dismissing this action. (Dkt. No. 23.) Both the April 2022 Order and the Order of Judgement were returned to the Court as undeliverable. (Dkt. No. 24.)

On September 8, 2022, the Court received a letter from Plaintiff's friend or relative, which provided a new address for Plaintiff, and requested an update on this case. (Dkt. No. 25.) In light of this submission, the Clerk sent a copy of the April 2022 Order and Order of Judgement to Plaintiff at this new address. *See id.* Shortly thereafter, Plaintiff filed a letter requesting this action be re-opened. (Dkt. No. 26.) On October 5, 2022, the Court granted Plaintiff's request to vacate the Judgment and afforded him a final opportunity to file an amended complaint within thirty days. (Dkt. No. 27.)

 **\*2** Thereafter, Plaintiff timely submitted the amended complaint. (Dkt. No. 28.) Unlike the original, which named only employees of Cayuga County Jail and a treating physician as defendants, the caption of the amended complaint named the United States of America as the only defendant, and the body of the pleading asserted Section 1983 claims against only Cayuga County Jail. *Id.*

On initial review, the Court liberally construed the amended complaint to assert a Section 1983 medical indifference claim against Cayuga County based on a delay in medical treatment under the Due Process Clause of the Fifth Amendment,[3] and a medical negligence claim against the United States of America pursuant to the Federal Tort Claims Act ("FTCA"). (Dkt. No. 29.) As detailed therein, only Plaintiff's Section 1983 medical indifference claim against Cayuga County survived initial review and required a response. *Id.* In so ruling, the Court expressed no opinion as to whether this claim could withstand a properly filed dispositive motion. *Id.* All remaining federal claims were dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *Id.* at 8-9.

[3]    In *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017), the Second Circuit made clear that the standard governing conditions of confinement claims, which encompass claims for medical indifference, is the same whether brought by a state or federal pretrial detainee. *Id.* at 21 n.3 ("This case implicates the Due Process Clause of the Fourteenth Amendment because it involves state pretrial detainees who are seeking to vindicate their constitutional rights.... However, the analysis in this decision should be equally applicable to claims brought by federal pretrial detainees pursuant to the Due Process Clause of the Fifth Amendment.").

By Text Order entered January 11, 2023, Plaintiff was informed that because he paid the filing fee for this action, he was responsible for serving the summons and amended complaint on Cayuga County in accordance with Federal Rule of Civil Procedure 4. (Dkt. No. 30.) In relevant part, Plaintiff was advised Rule 4(c) of the Federal Rules of Civil Procedure also provides that "[a]t the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court." *Id.* On January 27, 2023, Plaintiff filed a letter request for the Marshals to effectuate service on his behalf and provided payment of the $8.00 service fee to the U.S. Marshal. (Dkt. No. 31.) On February 15, 2023, the Court granted Plaintiff's letter request and directed the Clerk to issue a summons and forward it along with a copy of the amended complaint to the U.S. Marshal for service of process on Cayuga County. (Dkt. Nos. 32, 33.)

On May 1, 2023, Cayuga County filed the instant counseled motion to dismiss for failure to state a claim upon which relief may be granted and for lack of personal jurisdiction. (Dkt. No. 34.) The Court notified Plaintiff his response was due by May 22, 2023. (Dkt. No. 35.) However, that text notice was returned as undeliverable. (Dkt. No. 36.) On June 12, 2023, the Court *sua sponte* granted Plaintiff a 30-day extension of time to respond to Defendant's motion. (Dkt. No. 37.) On June 15, 2023, Plaintiff filed a change of address. (Dkt. No. 38.) On June 29, 2023, the June 12, 2023, text order was returned as undeliverable. (Dkt. No. 39.) Because it was unclear if Plaintiff received a copy of the text order entered on June 12, 2023, on August 16, 2023, the Court *sua sponte* granted a second 30-day extension of time to respond to Defendant's motion. (Dkt. No. 41.) Plaintiff's response was therefore due by September 15, 2023. *Id.* To date, Plaintiff has not filed a response to Defendant's motion, and the time to do has expired. On October 12, 2023, the Clerk received a letter from Plaintiff requesting an update on the case and the Clerk mailed a copy of the docket sheet to Plaintiff. (Dkt. No. 42.)

Mendez v. Cayuga County, Not Reported in Fed. Supp. (2024)
2024 WL 1469060

## III. FACTUAL BACKGROUND

**\*3**  The facts are drawn from the amended complaint. (Dkt. No. 28.) On December 29, 2020, Plaintiff was housed in the Special Housing Unit at Cayuga County Jail as a federal pretrial detainee. *Id.* at 1. At approximately 4:30 p.m., Plaintiff ingested "pieces" of a "metal wire" that were served in his dinner. *Id.* Plaintiff felt "great pain and started spitting out blood." *Id.* He immediately contacted "Cayuga staff to obtain medical assistance." *Id.* Corrections Officer Cowan responded to his request for assistance, spotted the metal wire, and contacted Corrections Sergeant ("Sgt.") Marvintino. *Id.* Sgt. Marvintino "arrived and witnessed [Plaintiff] spitting out blood and saw pieces of wire still in the food tray[.]" *Id.* He "took a slew of photos of the metal and blood spit up by [Plaintiff] with his cell phone." *Id.* Sgt. Marvintino told Plaintiff arrangements would be made for his transport to a hospital, but thereafter advised Plaintiff "the hospitals were closed and no medical was present[.]" *Id.* at 1-2. As a result, liberally construed, Plaintiff alleges he experienced a delay in medical treatment. *Id.* at 2. [4]

[4]     As the Court noted on initial review of the amended complaint, the nature of the alleged delay is unclear. (Dkt. No. 29 at 4 n.3.) Plaintiff states he received x-rays at Cayuga County Jail two days after the alleged incident, and was evaluated by a physician at a hospital "[a] month later." (Dkt. No. 28 at 2.) However, documents attached to the original complaint indicate that Plaintiff was taken for abdominal radiographs the morning after he allegedly swallowed metal material, and again a few days later. (Dkt. No. 2 at 1-2.) In addition, Plaintiff alleged in the original complaint that he spoke to a nurse the day after the alleged incident, and again less than two weeks later. (Dkt. No. 11 at 7.)

## IV. STANDARD OF REVIEW

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion tests the legal sufficiency of the complaint and whether it conforms to Rule 8(a)(2) of the Federal Rules of Civil Procedure. To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining whether a complaint states a plausible claim for relief ... requires the reviewing court to draw on its judicial experience and common sense ... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679 (internal quotations and citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Twombly*, 550 at 570. While Rule 8(a)(2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement' " does not suffice. *Id.* (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*). In considering a Rule 12(b)(6) motion, "the court considers the complaint, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation and internal quotation marks omitted).

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 43 of 397

Mendez v. Cayuga County, Not Reported in Fed. Supp. (2024)

2024 WL 1469060

**\*4**  "A plaintiff's failure to respond to a motion to dismiss does not relieve the Court of its obligation to consider the merits of plaintiff's claims," and " '[i]f a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond ... does not warrant dismissal.' " *Malloy v. Sopchak*, No. 1:18-CV-1460 (BKS/DJS), 2020 WL 4432631, at *2 (N.D.N.Y. July 31, 2020) (quoting *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000)).


## V. DISCUSSION

Defendant argues Plaintiff's amended complaint must be dismissed for (1) failure to state a claim of municipal liability; (2) failure to state a claim for deliberate indifference to a serious medical need; and (3) for lack of personal jurisdiction. (Dkt. No. 34-2.)


### A. Personal Jurisdiction

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). While Defendant's motion cites only Federal Rule of Civil Procedure 12(b)(6) as the basis of its motion, the Court construes it as, in part, being made under Rule 12(b)(5) for insufficient service of process. [5]  To survive a motion to dismiss for insufficient service of process under Rule 12(b)(5), "the plaintiff bears the burden of establishing that service was sufficient." *Allstate Ins. Co. v. Rosenberg*, 771 F. Supp. 2d 254, 260 (E.D.N.Y. 2011) (quoting *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (summary order)).

[5]    A Rule 12(b)(5) motion to dismiss "is the proper vehicle for challenging the mode of delivery or lack of delivery of the summons and complaint." *Mhina v. Citizens Bank, N.A.*, No. 5:22-CV-427 (BKS/ML), 2022 WL 16572045, at *2 (N.D.N.Y. Nov. 1, 2022).

"In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). Under Rule 4, a plaintiff must serve the summons and complaint on a defendant within 90 days of filing the complaint. Fed. R. Civ. P. 4(c)(1), (m). If a plaintiff fails to effect service on a defendant, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). If, however, "the plaintiff shows good cause for the failure, the court *must* extend the time for service for an appropriate period." *Id.* (emphasis added); *Canady v. Correct Care Sols.*, No. 15-CV-4893 (KMK), 2017 WL 4280552, at *9 (S.D.N.Y. Sept. 25, 2017) (noting that when a plaintiff has demonstrated good cause, the extension to serve is mandatory) (citing *Blessinger v. United States*, 174 F.R.D. 29, 31 (E.D.N.Y. 1997)). Accordingly, there are two means by which a court can grant an extension: (1) upon a showing of good cause; or (2) within its discretion. Fed. R. Civ. P. 4(m).

"The following two factors are relevant in a court's evaluation of good cause: (1) the reasonableness and diligence of plaintiff's efforts to serve; and (2) the prejudice to defendants from the delay." *Lopez v. Guziczek*, No. 21 CV 10099 (NSR), 2023 WL 6973732, at *1 (S.D.N.Y. Oct. 23, 2023) (citations omitted); *see Patel v. Singh*, No. 21-CV-00759, 2023 WL 2262792, at *5 (E.D.N.Y. Feb. 28, 2023) ("[I]f a defendant has received actual notice of a lawsuit, 'regardless of whether service was initially proper or whether good cause is found, the Court may still grant an extension of time given to a plaintiff to serve the defendant in its discretion.' ") *Id.* (declining to dismiss complaint for lack of service).

**\*5**  Moreover, "[t]here is a strong federal policy in favor of resolving disputes on the merits." *Byrd v. Town of DeWitt*, No. 5:23-CV-390 (DNH), 2023 WL 6467921, at *4 (N.D.N.Y. Oct. 5, 2023). "Consequently, as long as 'it appears that proper service may still be obtained,' *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972), the right remedy is typically to direct the plaintiff to re-serve the pleading." *Byrd*, 2023 WL 6467921 at *4; see *Zapata v. City of New York*, 502 F.3d 192, 195-96 (2d Cir. 2007) (granting an extension "even in the absence of good cause").

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 44 of 397

Mendez v. Cayuga County, Not Reported in Fed. Supp. (2024)
2024 WL 1469060

As detailed above, the Court directed the U.S. Marshals to serve the summons and amended complaint on Cayuga County. (*See* Dkt. Nos. 32, 33.) As such, Plaintiff was "entitled to rely on the U.S. Marshals to effect service." *Burris v. Nassau Cnty. Dist. Att'y*, No. 14-CV-5540, 2023 WL 6450398, at *5 (E.D.N.Y. Sept. 30, 2023).

Upon review, it appears the U.S. Marshals inadvertently served the amended complaint on Cayuga County District Attorney's Office on March 2, 2023. (Dkt. No. 34-2 at 3-5, 10-11; Dkt. No. 34-1 at 1-3.) As Defendant correctly points out, the Cayuga County District Attorney's Office is not authorized to accept service on behalf of Cayuga County. (Dkt. No. 34-2 at 10-11; Fed. R. Civ. P. 4(j), N.Y. C.P.L.R. § 311. [6] ) Plaintiff has therefore failed to effect proper service on Cayuga County.

[6]    Rule 4(j) of the Federal Rules of Civil Procedure permits service of process on a local government "by delivering a copy of the summons and of the complaint to its chief executive officer" or "serving a copy of each in the manner prescribed by the state's law for serving a summon or like process on such a defendant." Fed. R. Civ. P. 4(j). Pursuant to New York law, personal service upon a governmental subdivision shall be made by delivering the summons ... upon a county, to the chair or clerk of the board of supervisors, clerk, attorney or treasurer[.]" N.Y. C.P.L.R. § 311.

However, a *pro se* plaintiff may avoid dismissal under Rule 4(m) if he "indicated to the court his reliance on service by the Marshals[.]" *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986). Such is the case here. (Dkt. Nos. 31, 32.) Thus, on the current record, the Court finds "the Marshals' failure to effect service automatically constitutes good cause within the meaning of Rule 4(m)." *Ruddock v. Reno*, 104 F. App'x 204, 206-07 (2d Cir. 2004).

Accordingly, Court recommends denying Defendant's motion to dismiss for improper service and lack of personal jurisdiction. [7]

[7]    Ordinarily, the Court would further recommend that Plaintiff be granted an extension of time under Federal Rule of Civil Procedure 4(m) to effectuate proper service on Cayuga County and direct the U.S. Marshals to re-attempt service of the amended complaint and summons within that time frame. However, because the Court recommends granting Defendant's motion to dismiss under Rule 12(b)(6), the Court declines to do so at this time.

**B. Municipal Liability**

Defendant argues Plaintiff has failed to state a claim for municipal liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The Court agrees.

Under *Monell*, a municipality may be liable for deprivation of constitutional rights "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. "The policy or custom need not be memorialized in a specific rule or regulation," *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996), and it may be "reflected in either action or inaction," *Cash v. Cnty. of Erie*, 654 F.3d 324, 341-42 (2d Cir. 2011).

 **\*6**  The existence of a municipal policy or custom may be plead in any of four ways: "(1) a policy formally adopted and endorsed by the municipality; (2) actions taken by policymaking officials that caused the particular deprivation alleged; (3) practices by subordinate officials that are not expressly authorized but are so widespread and consistent that policymakers must have been aware of them; or (4) a failure by policymakers to train or supervise that amounts to deliberate indifference to the rights of those who come into contact with the inadequately trained or supervised municipal employees." *Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 729 (N.D.N.Y. 2020) (internal quotation marks omitted) (citing *Deferio v. City of Syracuse*, 770 F. App'x 587, 589 (2d Cir. 2019) (summary order)). "Boilerplate statements" that county employees were acting in accord with a municipal policy, with no facts to support those statements, are not sufficient to support a *Monell* claim. *See Brown v. Oneida Cnty.*, No. 6:15-CV-0849, 2016 WL 4275727, at *4 (N.D.N.Y. Aug. 12, 2016).

"To survive a motion to dismiss a municipal liability claim, a plaintiff must allege facts tending to support, at least circumstantially, an inference that a municipal policy or custom exists." *McLennon v. City of New York*, 171 F. Supp. 3d 69,

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 45 of 397
Mendez v. Cayuga County, Not Reported in Fed. Supp. (2024)
2024 WL 1469060

95 (E.D.N.Y. 2016) (internal quotation marks and ellipsis omitted); *see also Cruz v. Vill. of Spring Valley*, No. 21-CV-2073, 2022 WL 428247, at *6 (S.D.N.Y. Feb. 11, 2022) (collecting cases). Put simply, to allege "there is a policy does not make it so." *Vassallo v. City of New York*, No. 15-CV-7125, 2016 WL 6902478, at *14 (S.D.N.Y. Nov. 22, 2016). "Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of his constitutional rights." *Deferio*, 770 F. App'x at 589 (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). [8]

[8]    Generally, "[e]stablishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors [acting in furtherance of the municipality's] custom or policy." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). However, the Second Circuit has also recognized that "constitutional injuries may be found to exist ... in the absence of individual liability, [where] the injuries complained of are not solely attributable to the actions of named individual defendants." *Barrett v. Orange Cnty. Hum. Rts. Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999) ("[E]ven in situations where the acts or omissions of individual employees do not violate an individual's constitutional rights, 'the combined acts or omissions of several employees acting under a governmental policy or custom may violate' those rights.").

As noted, Plaintiff alleges that after he ingested metal material and was told by Sgt. Marvintino that arrangements would be made for his transport to a hospital, Sgt. Marvintino thereafter advised Plaintiff that he could not receive emergency medical treatment because "the hospitals were closed and no medical was present[.]" (Dkt. No. 28 at 1-2.) Plaintiff suggests his injuries "all originat[e] from lack of care and professional ethics and safety of the Cayuga County Jail" and the "County Jail ... violated their duty to serve safe and sanitary meals to inmates without mold, mercury or metal." *Id.* at 3.

Here, the Court finds Plaintiff has failed to plausibly allege Cayuga County maintained a policy or custom which deprived him of a constitutional right. (Dkt. No. 34-2 at 7.) To that end, Plaintiff has not identified any formal policy that delayed his medical treatment and, while the policy or practice need not be formally memorialized, in order to establish the existence of a municipal policy or custom for purposes of Section 1983 Plaintiff must demonstrate that Cayuga County has a "persistent and widespread" practice that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Ruiz v. City of New York*, No. 14-cv-5231, 2015 WL 5146629, at *11 (S.D.N.Y. Sept. 2, 2015). The allegations in the amended complaint fall short of this high standard. [9]  *See Schnauder v. Gibens*, 679 F. App'x 8, 10 (2d Cir. 2017) (no *de facto* policy alleged where "apart from a detailed recounting of his own experiences," the complaint contained "only general conclusory allegations that there was a policy") (internal quotation marks omitted); *Iacovangelo v. Correctional Med. Care, Inc.*, 624 F. App'x 10, 14 (2d Cir. 2015) (widespread practice not pled where other than the plaintiff, the pleading provides only one additional example of a similar incident); *Santana v. City of New York*, No. 15-CV-6715, 2018 WL 1633563, at *10 (S.D.N.Y. Mar. 29, 2018) ("[I]t is well-settled that a "single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.").

[9]    The Court notes "the absence of a policy is not a policy and is not actionable under *Monell.*" *Zachary v. City of Newburgh*, No. 13-CV-5737, 2014 WL 1508705, at *5 (S.D.N.Y. Apr. 1, 2014) (citation omitted); *see also Quinones v. New York City*, No. 19-CV-5400, 2020 WL 5665142, at *19 (S.D.N.Y. Aug. 17, 2020) ("[B]ut, under *Monell*, a municipality's failure to put a formal policy in place to prevent unlawful conduct is not the same thing as an actionable policy."), *report and recommendation adopted*, 2020 WL 6901340 (S.D.N.Y. Nov. 23, 2020). "Nonetheless, the Supreme Court has left a narrow opening for § 1983 claims ... seeking liability based not on affirmative conduct but on a government official's failure to act." *Reynolds v. Giuliani*, 506 F.3d 183, 191-92 (2d Cir. 2007) (citation omitted). When a municipality "does not have an adequate policy ...*Monell* liability exists 'where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Fraser v. City of N.Y.*, No. 20-CV-4926, 2021 WL 1338795, at *10 (S.D.N.Y. Apr. 9, 2021) (quoting *Reynolds*, 506 F.3d at 192). "Such a pattern, if sufficiently persistent or widespread as to acquire the force of law, may constitute a policy or custom within the meaning of *Monell.*" *Id.* Plaintiff's amended complaint does not plausibly allege a "pattern of misconduct." (Dkt. No. 28.) Rather, as Defendant points out, the facts alleged indicate

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 46 of 397
Mendez v. Cayuga County, Not Reported in Fed. Supp. (2024)
2024 WL 1469060

singular interactions with employees of the jail done in response to his specific situation. (Dkt. No. 34-2 at 7.) *See Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

**\*7** Further, Plaintiff has not identified any actions taken by policymaking individuals resulting in the alleged delay, nor does the amended complaint contain allegations describing a failure by policymakers to provide adequate training or supervision to subordinates. *See, e.g.*, *Dosiak v. Town of Brookhaven*, No. 16-cv-6658, 2017 WL 7048912, at * 11 (E.D.N.Y. Nov. 27, 2017); *Boonmalert v. City of New York*, 2017 WL 1378274, at * 7 (S.D.N.Y. Apr. 12, 2017).

Moreover, Plaintiff has not responded to Defendant's motion to dismiss, and therefore he "has failed to identify how any of the allegations contained in his amended complaint support imposing municipal liability on [Cayuga] County." *Rowles v. Doe*, No. 19-CV-6933, 2021 WL 3946291, at *3 (W.D.N.Y. Sept. 3, 2021); *see, e.g.*, *Isaac v. City of New York*, No. 17-CV-1021, 2018 WL 1322196, at *6 (S.D.N.Y. Mar. 13, 2018) (*de facto* policy not plausibly alleged where plaintiff merely asserted that "the City of New York has been aware of the routine, dangerous, and constitutionally inadequate medical care [in its jail]").

Because Plaintiff has failed to plausibly allege municipal liability on the part of Cayuga County, the Court recommends granting Defendant's motion for failure to state a claim upon which relief may be granted and recommends dismissing Plaintiff's Section 1983 medical indifference claim against Defendant Cayuga County. [10]

[10]    As such, the Court does not reach Defendant's remaining argument. (Dkt. No. 34-2 at 7-10.)

## VI. LEAVE TO AMEND

Despite the rather extensive history of this litigation, it remains only in the earliest stages. As noted, Plaintiff did not oppose Defendant's motion to dismiss or seek leave to amend. However, given Plaintiff's *pro se* status, the Court recommends Plaintiff's Section 1983 medical indifference claim against Defendant Cayuga County be dismissed without prejudice and with leave to amend. *See Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 555 (S.D.N.Y. 2003) (noting that courts routinely grant leave to replead following judgment on the pleadings, unless amendment would be futile); *see Levinson v. United States Fed. Bureau of Prisons, Metro. Corr. Ctr. - New York*, 594 F. Supp. 4d 559, 567 (S.D.N.Y. 2022) ("[W]hen a motion to dismiss is granted, the usual practice is to dismiss the claims without prejudice and grant plaintiff leave to amend the complaint.").

## VII. CONCLUSION

**WHEREFORE**, for the reasons set forth herein, it is hereby

**RECOMMENDED** that Defendant's motion to dismiss (Dkt. No. 34) be **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's Section 1983 medical indifference claim against Defendant Cayuga County be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk serve a copy of the Report-Recommendation and Order on all parties in accordance with Local Rules, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. [11] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 47 of 397
Mendez v. Cayuga County, Not Reported in Fed. Supp. (2024)
2024 WL 1469060

F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

11    If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**\*8  IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1469060

---

**End of Document**                      © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Mendez v. Cayuga County, Not Reported in Fed. Supp. (2024)

2024 WL 1251541

2024 WL 1251541
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Luis MENDEZ, Plaintiff,

v.

CAYUGA COUNTY, Defendant.

9:21-cv-1090 (BKS/TWD)
|
Signed March 25, 2024

**Attorneys and Law Firms**

Plaintiff pro se: Luis Mendez, 05357-509, FCI Sandstone, P.O. BOX 1000, Sandstone, MN 55072.

For Defendant: Judith B. Aumand, Burke, Scolamiero Law Firm, 7 Washington Square, Albany, NY 12205.

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, Chief United States District Judge:

**I. INTRODUCTION**

 **\*1** Plaintiff Luis Mendez commenced this civil rights action asserting claims under 42 U.S.C. § 1983 ("Section 1983") arising out of his incarceration at the Cayuga County Jail as a federal pretrial detainee. (Dkt. No. 11). Following this Court's review of the complaint pursuant to 28 U.S.C. § 1915A, plaintiff filed an amended complaint. (Dkt. No. 28). On May 1, 2023, Defendant Cayuga County filed a motion to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Dkt. No. 34). Plaintiff did not oppose the motion. This matter was assigned to United States Magistrate Judge Thérèse Wiley Dancks who, on February 1, 2024, issued a Report-Recommendation and Order recommending that Defendant's motion to dismiss be granted, and that Plaintiff's Section 1983 medical indifference claim against Cayuga County – the only claim remaining in the action – be dismissed without prejudice and with leave to amend. (Dkt. No. 43 ["Report-Recommendation"], at 15). Magistrate Judge Dancks advised the parties that under 28 U.S.C. § 636(b)(1), they had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. (*Id.*). No objections to the Report-Recommendation have been filed. Instead, the Court has received the following from Plaintiff: (1) a second amended complaint, Dkt. No. 47 ("SAC"); and (2) a motion for appointment of counsel, Dkt. No. 48 ("Motion for Counsel").

**II. MOTION TO DISMISS**

As no objection to the Report-Recommendation has been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Report-Recommendation is adopted in its entirety.

Accordingly, the motion to dismiss is granted.

**III. SUFFICIENCY OF THE SECOND AMENDED COMPLAINT**

   **A. Relevant Legal Standard**

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 49 of 397
Mendez v. Cayuga County, Not Reported in Fed. Supp. (2024)
2024 WL 1251541

Because Plaintiff is an inmate suing one or more government employees, his second amended complaint must be reviewed in accordance with 28 U.S.C. § 1915A(b). The legal standard governing the review of a pleading pursuant to 28 U.S.C. § 1915A(b) was discussed at length in the Court's Decision and Order entered on January 19, 2022, and it will not be restated herein. *See* Dkt. No. 12 ("January 2022 Order") at 2-3.

### B. Overview of the Amended Complaint and Report-Recommendation

Plaintiff's amended complaint alleged that on December 29, 2020, he ingested "a large piece of metal wire" served in his food, and thereafter experienced a delay in medical treatment. (Dkt. No. 28). By Decision and Order entered on December 12, 2022, this Court liberally construed the allegations in the amended complaint to assert a medical indifference claim against Cayuga County. (Dkt. No. 29, at 3-4).

In recommending dismissal of Plaintiff's medical indifference claim against Cayuga County, Judge Dancks discussed the legal standard governing Section 1983 claims for municipal liability and noted that the amended complaint failed to identify (1) any formal policy of Cayuga County that delayed Plaintiff's access to medical treatment, (2) a persistent and widespread practice of denying detainees access to emergency medical treatment, (3) wrongdoing by policymaking individuals that resulted in the alleged delay in treatment, or (4) a failure by policymakers to provide adequate training or supervision to subordinates. *See* Report-Recommendation at 12-13.

### C. Overview of the Second Amended Complaint

**\*2**  The allegations in the second amended complaint are materially similar to, albeit less detailed than, the allegations in Plaintiff's prior pleadings. The following facts are set forth as alleged in the second amended complaint.

During Plaintiff's confinement at Cayuga County Jail, he was "provided a meal that contained a 'piece of metal[,]' " which he ingested. SAC at 1. "When Plaintiff brought his concerns to the jail officials[,] they acknowledged his medical condition," but "opted to delay emergent medical care." *Id.* "This delay resulted in serious adverse effects to Plaintiff's health[.]" *Id.* According to Plaintiff, the delay in emergency medical treatment occurred as a result of Cayuga County not having a "policy or regulation" for handling medical emergencies, which resulted in jail officials not knowing how to properly respond to Plaintiff's situation. *See* SAC at 1.

The Court liberally construes the allegations in the second amended complaint to assert a medical indifference claim against Cayuga County, the only named defendant. [1]

[1]    As noted in the January 2022 Order, "a municipality may not be liable on the basis of respondeat superior." *See* January 2022 Order at 10 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)). Moreover, the second amended complaint does not allege that one or more Cayuga County Jail officials placed metal inside of Plaintiff's food, or that this occurred pursuant to a custom or policy of Cayuga County, or as a result of inaction by policymakers to a "pattern of misconduct" involving food contamination. *See Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (noting that *Monell* liability may exist "where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions"). Thus, the Court does not construe the second amended complaint to assert a Section 1983 claim against Cayuga County based on the metal object contained within Plaintiff's food.

### D. Analysis

Municipal liability is limited under Section 1983 by *Monell v. Dep't of Soc. Servs. of City of New York*. In *Monell*, the Supreme Court found that municipal liability existed "where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Thus, to successfully state a claim for *Monell* liability, a plaintiff must "make factual allegations that support a plausible inference

Mendez v. Cayuga County, Not Reported in Fed. Supp. (2024)

2024 WL 1251541

that the [alleged] constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality." *Missel v. Cnty. of Monroe*, 351 Fed. App'x 543, 545 (2d Cir. 2009) (citing *Vives v. City of N.Y.*, 524 F.3d 346, 350 (2d Cir. 2008)). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 36 (2010) ("[I]n *Monell* the Court held that 'municipality cannot be held liable' solely for the acts of others, e.g., 'solely because it employs a tortfeasor.' " (quoting *Monell*, 436 U.S. at 691)); *Sims v. City of New York*, No. 15-CV-2485, 2018 WL 11605048, at *4 (S.D.N.Y. Dec. 17, 2018) ("*Monell* ... does not conclude that plaintiffs may hold municipalities liable under separate causes of action—there must be an underlying constitutional violation that occurred because of the municipality's unconstitutional custom or policy.... When there is no underlying constitutional violation, therefore, there can be no municipal liability under *Monell*." (citing, *inter alia, Segal*, 459 F.3d at 219)), *aff'd*, 788 Fed. App'x 62 (2d Cir. 2019).

  **3**  The existence of a municipal policy or custom may be plead in any of four ways: "(1) a policy formally adopted and endorsed by the municipality; (2) actions taken by policymaking officials that caused the particular deprivation alleged; (3) practices by subordinate officials that are not expressly authorized but are so widespread and consistent that policymakers must have been aware of them; or (4) a failure by policymakers to train or supervise that amounts to deliberate indifference to the rights of those who come into contact with the inadequately trained or supervised municipal employees." *Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 729 (N.D.N.Y. 2020) (internal quotation marks omitted) (citing *Deferio v. City of Syracuse*, 770 Fed. App'x 587, 589 (2d Cir. 2019) (summary order)). "Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of his constitutional rights." *Deferio*, 770 Fed. App'x at 590 (2d Cir. 2019) (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). "Boilerplate statements" that county employees were acting in accord with a municipal policy, with no facts to support those statements, are not sufficient to support a *Monell* claim. *See Brown v. Oneida Cnty.*, No. 6:15-CV-0849, 2016 WL 4275727, at *4 (N.D.N.Y. Aug. 12, 2016).

As with the original and amended complaints, the second amended complaint does not identify a policy that resulted in Plaintiff's lack of access to emergency medical treatment. Indeed, the second amended complaint is devoid of allegations which plausibly suggest that at the time of Plaintiff's injuries, Cayuga County imposed any type of restriction on detainee access to medical treatment, the jail's access to outside hospitals, or the services necessary to facilitate such access.

Instead, Plaintiff alleges, for the first time, that he experienced a delay in medical treatment after ingesting metal as a result of the *absence* of a policy informing officials at the Cayuga County Jail how to respond to a medical emergency. *See* SAC. In other words, according to Plaintiff, the delay in medical treatment that he experienced was as a result of Cayuga County's failure to prepare for, and train officials on, medical emergencies. [2] Thus, the Court focuses its analysis herein on whether Plaintiff has adequately alleged the existence of a municipal policy, for purposes of municipal liability, through either (1) "widespread and consistent" wrongdoing by subordinate officials related to the handling of medical emergencies, or (2) a failure by policymakers to train or supervise that amounts to deliberate indifference to Plaintiff's rights. *See Crawley*, 496 F. Supp. 3d at 729.

[2]    To be clear, the second amended complaint does not contain any allegations which plausibly suggest that Plaintiff did not receive medical treatment as a result of any sort of formal policy by Cayuga County, or the direct actions of any policymaker.

### 1. Practices of Subordinate Officials

Insofar as the second amended complaint may be construed as attempting to assert a municipal policy through the wrongdoing of subordinate officials, as noted in the January 2022 Order, Plaintiff's underlying medical indifference claim must be analyzed under the pretrial detainee standard set forth in *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017). *See* January 2022 Order at 11-12 (citations omitted); *see also Bruno v. City of Schenectady*, 727 Fed. App'x 717, 720 (2d Cir. 2018). To state a medical

2024 WL 1251541

indifference claim under that standard, a pleading must allege (1) "an objective prong showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process," and (2) "a subjective prong showing that the defendants acted with at least deliberate indifference to the challenged conditions." *Sims*, 788 Fed. App'x at 63 (internal quotation marks and alterations omitted).

"The serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles v. Orange County*, 925 F.3d 73, 86 (2d Cir. 2019). "[W]here the allegations amount to a delay in medical treatment (rather than a complete deprivation of treatment), courts look at the particular risk of harm faced by an inmate due to the delay in treatment, rather than from the severity of the inmate's underlying medical condition." *Robinson v. Broome Cnty. Sheriff*, No. 22-CV-0023 (GLS/CFH), 2022 WL 2914476, at *2 (N.D.N.Y. July 25, 2022) (citing, *inter alia*, *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)); *see also Benjamin v. Pillai*, 794 Fed. App'x 8, 11 (2d Cir. 2019) (distinguishing between cases where the prisoner is denied all medical care with those where the prisoner alleges a temporary delay or interruption in care). With respect to the second prong, an official does not act with deliberate indifference "unless the official 'acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.' " *Bruno*, 727 F. App'x at 720 (emphasis omitted) (quoting *Darnell*, 849 F.3d at 35).

 **\*4** As a threshold matter, the second amended complaint fails to identify the nature or cause of the delay in Plaintiff's receipt of medical treatment after he ingested metal, or what treatment, if any, Plaintiff could have received sooner that may have improved his condition and/or alleviated his pain. [3] Instead, Plaintiff vaguely alleges only that jail officials "conciencly [sic] and intentionally delayed" his access to medical care after becoming aware of his condition. SAC at 1. Such conclusory allegations – particularly in light of the allegations in Plaintiff's prior pleadings – are insufficient to plausibly suggest either (1) that Plaintiff faced a serious risk of harm based on the delay in medical treatment that he experienced, or (2) that any official at the Cayuga County Jail acted with deliberate indifference to Plaintiff's medical needs. *See, e.g., Charles*, 925 F.3d at 86 ("In most cases, the actual medical consequences that flow from the denial of care are highly relevant in determining whether the denial of [or delay in] treatment subjected the detainee to a significant risk of serious harm."); *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 274 (N.D.N.Y. 2018) ("[The] [p]laintiff's conclusory allegation that [the defendant] refused to treat him or send him to a hospital fails to plausibly suggest that the defendant was deliberately indifferent to any serious medical need."); *Jimenez v. Sommer*, No. 14-CV-5166, 2017 WL 3268859, at *8 (S.D.N.Y. July 28, 2017) (holding "conclusory assertion" that the defendant "was aware of [the plaintiff's injury] but failed to recommend proper medical treatment" fails to "indicate that [the defendant] had the requisite culpable state of mind to satisfy the subjective prong of a deliberate[ ] indifference claim" (citation omitted) (collecting cases)). [4] Accordingly, Plaintiff cannot state a claim against Cayuga County based on any alleged wrongdoing by subordinate officials. *See Segal*, 459 F.3d at 219 ("Because the District Court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

[3]     The original complaint alleged that Plaintiff ingested metal during his dinner meal on December 29, 2020, and was taken for abdominal radiographs at approximately 6:00 a.m. on December 30, 2020. Dkt. No. 2 at 1. In addition, the amended complaint alleged that Plaintiff did not receive emergency medical treatment sooner because "the hospitals were closed and no medical was present[.]" Am. Compl. at 1-2. The second amended complaint does not repeat either of these factual allegations, let alone elaborate on them.

[4]     Based on the allegations in Plaintiff's original and amended complaints, which, again, Plaintiff has not repeated or corrected in his second amended complaint, the Court can only infer that (1) he experienced a delay in emergency medical of approximately twelve hours based on circumstances outside the control of jail officials working at the time, and (2) his treatment initially consisted of examining the metal within his body – through a radiograph – after it was fully digested.

Furthermore, even if the Court were to overlook the conclusory nature of Plaintiff's allegations of medical deliberate indifference, the second amended complaint is also devoid of any allegations which plausibly suggest that Plaintiff was denied

2024 WL 1251541

medical treatment as part of a "pattern of misconduct." *See Reynolds*, 506 F.3d at 192 (noting that *Monell* liability exists "where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions"). In fact, the second amended complaint does not identify any past incidents in which other detainees at the Cayuga County Jail were denied emergency medical treatment. Nor does the pleading contain allegations which plausibly suggest that emergency medical treatment was repeatedly unavailable at certain times, or that transports to outside hospitals were prohibited or limited in some respect. Rather, the second amended complaint identifies one incident of inadequate medical treatment – the incident involving Plaintiff. Thus, the Court has no basis to plausibly infer from the allegations in the second amended complaint that at the time of Plaintiff's injuries, Cayuga County officials were aware of "widespread and consistent" deliberate indifference by jail officials to the emergency medical needs of detainees such that the alleged failure to adequately respond to Plaintiff's medical needs may be considered a policy choice by Cayuga County. *See Reynolds*, 506 F.3d at 192; *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) ("[I]nherent in the principle that a municipality can be liable under § 1983 only where its policies are the moving force [behind] the constitutional violation, is the concept that the plaintiff must show a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."); *Wilson v. Cnty. of Ulster*, No. 1:20-CV-00104, 2022 WL 813958, at *16 (N.D.N.Y. Mar. 17, 2022) (noting, where a municipal liability claim was asserted based on an isolated incident, that "Plaintiff's conclusory allegation that a policy should be inferred because the 'flagrant deprivations of constitutionally protected rights could not and would not occur without the tacit approval or deliberate indifference regarding the commission of such violations by the policymakers or supervisors of the Town and County of Ulster,' ... is insufficient."); *Maloney v. Cnty. of Nassau*, 623 F. Supp. 2d 277, 289-90 (E.D.N.Y. 2007) ("[P]roof of a single incident of unconstitutional activity is not sufficient to impose liability on a municipality unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy that can be attributed to a municipal policymaker.").

### 2. Failure-to-Train

**\*5**  As the Second Circuit has explained, a municipality's "failure to train its subordinates satisfies the policy or custom requirement" under *Monell* "only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds*, 506 F.3d at 192 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

Once again, as a threshold matter, Plaintiff has failed to adequately allege that he suffered an underlying violation of his Fourteenth Amendment rights in connection with the delay in emergency medical treatment that he experienced. For this reason alone, Plaintiff has failed to state a municipal liability claim against Cayuga County. *See Segal*, 459 F.3d at 219.

Furthermore, setting aside the conclusory nature of Plaintiff's allegations of medical deliberate indifference, the second amended complaint also does not identify the jail's practice of responding to medical emergencies at the time of Plaintiff's injuries, let alone explain how it should have been obvious to a policymaker that the practice would result in Plaintiff's receipt of inadequate medical treatment. *See Reynolds*, 506 F.3d at 192. In addition, the second amended complaint does not allege what type of training may have resulted in Plaintiff's receipt of different (or more immediate) medical treatment, or how the absence of such training resulted in a deprivation of his federal rights. *See Amberslie v. Prisoner Transp. Serv. of Am., LLC*, No. 9:17-CV-0564 (TJM/DEP), 2019 WL 1024183, at *15 (N.D.N.Y. Mar. 4, 2019) ("Plaintiff contends that defendant's employees do not receive training in 'medical and mental health education,' which would plaintiff alleges would 'prevent [the] deprivation of life, [and] minimize[ ] the risk of injuries' suffered by prisoners during transport.... Yet, plaintiff has not pleaded any facts with respect to how this alleged failure to train resulted in a deprivation of plaintiff's rights."), *report and recommendation adopted by* 2019 WL 1368860 (N.D.N.Y. Mar. 26, 2019). Thus, the Court also has no basis to plausibly infer from the allegations in the second amended complaint that Plaintiff suffered a denial of emergency medical treatment as a result of a failure by policymakers to train or supervise subordinate officials regarding how to respond to Plaintiff's situation.

2024 WL 1251541

In light of the foregoing, Plaintiff's medical indifference claim against Cayuga County is once again dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.


## IV. NATURE OF THE DISMISSAL

Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend. *Abascal v. Hilton*, No. 04-CV-1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 13, 2008) (Kahn, J., adopting, on de novo review, Report-Recommendation by Lowe, M.J.) ("Of course, granting a pro se plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading."), *aff'd*, 357 Fed. App'x 388 (2d Cir. 2009)*; accord, Shuler v. Brown*, No. 07-CV-0937, 2009 WL 790973, at *5 & n. 25 (N.D.N.Y. Mar. 23, 2009) (McAvoy, J., adopting Report-Recommendation by Lowe, M.J.), *Smith v. Fischer*, No. 07-CV-1264, 2009 WL 632890, at *5 & n. 20 (N.D.N.Y. Mar. 9, 2009) (Hurd, J., adopting Report-Recommendation by Lowe, M.J.). [5]

[5]  *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that denial of leave to amend was not an abuse of discretion where movant has repeatedly failed to cure deficiencies in pleading); *Coleman v. brokersXpress, LLC*, 375 Fed. App'x 136, 137 (2d Cir. 2010) ("Nor can we conclude that the district court abused its discretion in denying Coleman leave to amend. The district court afforded Coleman one opportunity to amend the complaint, and Coleman made no specific showing as to how he would cure the defects that persisted if given a second opportunity to amend.").

 **6**  Moreover, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. Indeed, as the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted*), accord, Brown v. Peters*, No. 6:95-CV-1641 (RSP/DS), 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted). This rule applies even to pro se plaintiffs. *See, e.g., Cuoco*, 222 F.3d at 103; *Brown*, 1997 WL 599355, at *1.

Although Plaintiff was afforded another opportunity to amend his pleading, he failed to cure the deficiencies identified in the Report-Recommendation. In fact, Plaintiff's pleading is even more vague than his earlier pleadings, particularly as it relates to alleged inadequacies with the medical treatment that he received, and the timing of such treatment. Furthermore, Plaintiff's deficient pleading comes on the heels of his failure to oppose the motion to dismiss. Thus, the Court is not convinced that allowing Plaintiff to amend his pleading for a third time is likely to be productive.

Accordingly, this action is dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.


## V. MOTION FOR COUNSEL

In light of the dismissal of this action, Plaintiff's Motion for Counsel is denied as moot.


## VI. CONCLUSION

In light of the foregoing, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 43) is **ADOPTED** in its entirety; and it is further

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 54 of 397
**Mendez v. Cayuga County, Not Reported in Fed. Supp. (2024)**
2024 WL 1251541

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 34) the amended complaint (Dkt. No. 28) is **GRANTED**; and it is further

**ORDERED** that any and all federal claims asserted in the second amended complaint (Dkt. No. 47) are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted, as set forth above; and it is further

**ORDERED** that Plaintiff's Motion for Counsel (Dkt. No. 48) is **DENIED as moot**; and the Clerk is directed to close this case and enter Judgment; and it is further

**ORDERED** that the Clerk shall provide Plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam), and serve a copy of this Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1251541

---

End of Document
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

Malloy v. Sopchak, Not Reported in Fed. Supp. (2020)

2020 WL 4432631

2020 WL 4432631

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Javar MALLOY, Plaintiff,

v.

Jacob SOPCHAK, et al., Defendants.

1:18-cv-1460 (BKS/DJS)

|

Signed 07/31/2020

**Attorneys and Law Firms**

Plaintiff pro se: Javar Malloy, 199-A-1946, Washington Correctional Facility, Box 180, 72 Lock 11 Lane, Comstock, NY 12821.

For Defendants Megan Spillane, P. David Soares, and County of Albany: Daniel C. Lynch, Albany County Attorney, Michael L. Goldstein, Assistant Albany County Attorney, 112 State Street, 6 th Floor, Albany, NY 12207.

## MEMORANDUM-DECISION AND ORDER

Brenda K. Sannes, United States District Judge:

## I. INTRODUCTION

 *1  Plaintiff *pro se* Javar Malloy brings this action asserting claims under 42 U.S.C. §§ 1983, 1985 and 1986; 42 U.S.C. § 2000d and 3789d; and New York state law arising out of his arrest by Albany Police Department Officers and subsequent prosecution. (Dkt. No. 1). Presently before the Court is Assistant District Attorney ("ADA") Megan Spillane, District Attorney ("DA") P. David Soares, and the County of Albany's ("Defendants" or "Moving Defendants") motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. No. 24). Plaintiff has failed to respond to Moving Defendants' motion, and the last two text orders mailed to Plaintiff were returned as undeliverable. (Dkt. Nos. 28, 30). For the following reasons, Moving Defendants' motion is granted.

## II. PROCEDURAL HISTORY

Plaintiff commenced this action on December 19, 2018, and sought leave to proceed *in forma pauperis*. (Dkt. Nos. 1–2). This matter was assigned to United States Magistrate Judge Daniel J. Stewart who reviewed the Complaint under 28 U.S.C. §§ 1915(e) and 1915A and, on January 28, 2019, issued a Report-Recommendation and Order, granting Plaintiff leave to proceed *in forma pauperis* and recommending that certain claims be dismissed. *Malloy v. Sopchak ("Malloy I")*, No. 18-cv-1460, 2019 WL 1024354, at *4–5, 2019 U.S. Dist. LEXIS 14099, at *12–13 (N.D.N.Y. Jan. 28, 2019), *report and recommendation adopted*, 2019 WL 1025765, 2019 U.S. Dist. LEXIS 33460 (N.D.N.Y. Mar. 4, 2019). Specifically, Magistrate Judge Stewart recommended that the following claims be dismissed with prejudice: 1) conspiracy to commit false arrest and prosecution (the Fifth Cause of Action); 2) claims under 42 U.S.C. § 2000d; and 3) claims against Defendants Albany County District Attorney's Office and Albany Police Department. *Id.* He recommended that Plaintiff's First Cause of Action, an alleged violation of 42 U.S.C. § 1983 without reference to a constitutional violation, and his claim under 34 U.S.C. § 10228 be dismissed without prejudice to amendment, and that Plaintiff's remaining claims, assault and battery, false arrest, First Amendment retaliatory arrest, and municipal liability under *Monell* proceed. *Id.* The Court adopted the Report-Recommendation in its entirety. *Malloy v. Sopchak ("Malloy II")*, No. 18-cv-1460, 2019 WL 1025765, at *1, 2019 U.S. Dist. LEXIS 33460, at *2 (N.D.N.Y. Mar. 4, 2019).

2020 WL 4432631

## III. FACTS [1]

[1] The facts are drawn from the Complaint. (Dkt. No. 1). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020).

On July 4, 2018, Plaintiff attended an Independence Day celebration "with family and friends" at his aunt's house in the City of Albany, New York. (Dkt. No. 1, ¶ 18). "Shortly after 12:30 am" on July 5, 2018, Plaintiff "exited [his] [a]unt's residence with two (2) African-American males attending [the] family gathering" to go to a store nearby. (*Id.* ¶ 19). Plaintiff, who is African-American, was "wearing [a] white T-shirt, blue and black Hawaiian shorts with blue and black sneakers." (*Id.* ¶¶ 9, 23). He was "on parole" and was "within ... Albany County/City beyond curfew mandates." (*Id.* ¶ 24).

**\*2** "At approximately 1:14 am" two members of the Albany Police Department ("APD"), Jacob Sopchak and Matthew Seeber, "received a dispatch call alleging ... that one (1) 'Black Male,' wearing [a] white T-shirt, black pants, black and white sneakers was observed possessing [a] gun in [the] vicinity of 175 Second Street." (*Id.* ¶¶ 10, 20). "Neither Plaintiff or [the] two (2) African-American males accompanying him to the store matched the description provided to" Sopchak and Seeber. (*Id.* ¶ 24). As Plaintiff and his companions were "returning to [his] [a]unt's residence" on foot, Sopchak and Seeber "quickly approached" them "with [a] police cruiser, then immediately exited [the] police cruiser with hands on their guns in [a] threatening manner implying imminent unwarrantable police contact." (*Id.* ¶ 25).

"Plaintiff ran in route to [his] [a]unt's house and into [a] dark alley." (*Id.* ¶ 26). Despite having "no affirmative basis for arrest," Sopchak and Seeber "overzealously pursued Plaintiff." (*Id.* ¶ 27). Two other police officers "came to the aid of" Sopchak and Seeber. (*Id.*). "Defendants tackled Plaintiff to [the] ground, twisted [his] arm to [the] point of extreme pain and forced handcuffs on Plaintiff" while repeatedly screaming "stop resisting" even though "Plaintiff was not resisting arrest during this assault." (*Id.* ¶ 28). Plaintiff was then taken in for processing. (*Id.* ¶ 29). Plaintiff "sustained bruises on [his] body, swelling/bruising and soreness on wrists, back, [and] arms." (*Id.* ¶ 35).

Sopchak "manufactured false police arrest business records alleging Plaintiff 'fled on foot ... through a yard, ignoring multiple lawful commands to stop.' " (*Id.* ¶ 31). ADA Spillane, "acting under the direction of" DA Soares, "introduced APD testimony misrepresenting to the Albany County/City grand jury that:" (1) "Plaintiff's arrest was based upon probable cause," (2) APD defendants "acted upon specific and/or identical description given depicting Plaintiff as 'Black Male' possessing alleged gun," (3) "Plaintiff was the 'Black Male' suspect APD police defendants were looking for," and (4) "Plaintiff obstructed APD police defendants' valid post-pursuit arrest." (*Id.* ¶ 34(a)–(d)).

## IV. STANDARD OF REVIEW

The standard of review for a motion under Rule 12(c) is the same as for a motion under Rule 12(b)(6). *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). "For both motions, the Court must accept the allegations contained in the pleadings as true and draw all inferences in the non-movant's favor." *Neopharma Ltd. v. Wyeth–Ayerst Int'l LLC*, 170 F. Supp. 3d 612, 614 (S.D.N.Y. 2016) (citing *Bank of N.Y.*, 607 F.3d at 922). A complaint "must provide 'enough facts to state a claim to relief that is plausible on its face.' " *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.' " *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at \*2, 2017 U.S. Dist. LEXIS 155140, at \*5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

The Court accepts as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "While *pro se* complaints

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 57 of 397

Malloy v. Sopchak, Not Reported in Fed. Supp. (2020)
2020 WL 4432631

must contain sufficient factual allegations to meet the plausibility standard, we read them with 'special solicitude' and interpret them 'to raise the strongest arguments that they *suggest*.' " *Roman v. Donelli*, 347 Fed. Appx. 662, 663 (2d Cir. 2009) (summary order) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006)). "A plaintiff's failure to respond to a motion to dismiss does not relieve the Court of its obligation to consider the merits of plaintiff's claims," and " '[i]f a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond ... does not warrant dismissal.' " *Crenshaw v. Dondrea*, 278 F. Supp. 3d 667, 669 (W.D.N.Y. 2017) (quoting *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000)). The Court will grant a motion for judgment on the pleadings "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 340 (S.D.N.Y. 2008).

## V. DISCUSSION

**\*3**  The Complaint asserts three causes of action against Moving Defendants. (Dkt. No. 1). Plaintiff brings a claim under 42 U.S.C. § 1983 alleging that ADA Spillane and DA Soares violated his constitutional rights (First Claim) and a claim alleging that they conspired to falsely arrest and prosecute Plaintiff, violating 42 U.S.C. §§ 1985 & 1986 (Fifth Claim). (*Id.* ¶¶ 41–42, 52–54). He also brings a *Monell* [2] claim against Albany County (Seventh Claim). (*Id.* ¶¶ 57–63).

[2]    *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

### A. Previously Dismissed Claims

The Report-Recommendation recommended dismissing Plaintiff's First and Fifth Claims. *Malloy I*, 2019 WL 1024354, at \*4–5, 2019 U.S. Dist. LEXIS 14099, at \*12–13. Specifically, Magistrate Judge Stewart recommended that Plaintiff's First Claim arising under § 1983 "be dismissed with leave to reple[a]d so that Plaintiff can specifically identify the factual and legal basis" of the claim because "he fails to articulate precisely what constitutional rights are at issue." *Malloy I*, 2019 WL 1024354, at \*2, 2019 U.S. Dist. LEXIS 14099, at \*6. As for Plaintiff's Fifth Claim, Magistrate Judge Stewart recommended that it be dismissed with prejudice because "Defendant Spillane ... is protected by absolute immunity," and that DA "Soares is entitled to the same absolute immunity." *Malloy I*, 2019 WL 1025765, at \*3 & n.4, 2019 U.S. Dist. LEXIS 14099, at \*9 & \*10 n.4. The Court adopted the Report-Recommendation in its entirety, dismissing Plaintiff's First Claim without prejudice—"grant[ing] [Plaintiff] leave to file an Amended Complaint within thirty (30) days"—and dismissing the Fifth Claim with prejudice. *Malloy II*, 2019 WL 1025765, at \*1, 2019 U.S. Dist. LEXIS 33460, at \*3 (emphasis omitted).

Moving Defendants contend that both claims should now be dismissed with prejudice, because "ADA Spillane and DA Soares are entitled to absolute immunity." (Dkt. No. 24-1, at 11). As to Plaintiff's Fifth Claim, as described above, it has already been dismissed with prejudice and thus Moving Defendants' argument is moot. As to Plaintiff's First Claim against ADA Spillane and DA Soares, Moving Defendants argue that it should now be dismissed with prejudice because "[t]he entirety of Plaintiff's allegations asserted against ADA Spillane revolve around the district attorney's decision to introduce false or misleading testimony at a grand jury proceeding," and "[i]t is well recognized that a district attorney's actions before a grand jury constitute 'circumstances intimately associated with the judicial phase of the criminal process' and an attorney acting in that realm is entitled to absolute immunity." (*Id.* at 12 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976))).

"To determine whether an official enjoys absolute immunity," courts take a " 'functional approach,' examining 'the nature of the function performed, not the identity of the actor who performed it.' " *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (internal quotation marks omitted)). A prosecutor "acting in the role of an advocate in connection with a judicial proceeding is entitled to absolute immunity for all act 'intimately associated with the judicial phase of the criminal process.' " *Id.* (quoting *Imbler*, 424 U.S. at 430, 96 S.Ct. 984)). "Examples of 'intimately associated' prosecutorial acts include ... evaluating and organizing evidence for presentation at a trial or *grand jury*." *Turner v. Boyle*, 116 F. Supp. 3d 58, 79 (D. Conn. 2015) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (emphasis added)); *see also Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (holding that a prosecutor had absolute immunity for "conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a

Malloy v. Sopchak, Not Reported in Fed. Supp. (2020)

2020 WL 4432631

grand jury"); *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995) (determining that a prosecutor had absolute immunity for alleged misrepresentations to a grand jury).

**\*4**  The Court agrees with Moving Defendants that ADA Spillane and DA Soares have absolute immunity. Though the Court granted him leave to replead, Plaintiff failed to "identify the factual and legal basis" for his First Claim. *Malloy I*, 2019 WL 1024354, at \*2, 2019 U.S. Dist. LEXIS 14099, at \*6. The only allegations pertaining to ADA Spillane and DA Soares in the Complaint involve ADA Spillane's misrepresentations to the grand jury, which she gave "acting under the direction of" DA Soares. (Dkt. No. 1, ¶ 34). Thus, any § 1983 claims arising out of these actions would be barred because their actions were "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430, 96 S.Ct. 984. Given that leave to amend a complaint "need not be given when amendment would be futile," *Castro v. Cusack*, No. 15-cv-6714, 2019 WL 3385218, at \*9, 2019 U.S. Dist. LEXIS 125411, at \*25 (E.D.N.Y. July 26, 2019) (quoting *Sodhi v. Mercedes Benz Fin. Servs., USA, LLC*, 957 F. Supp. 2d 252, 255 (E.D.N.Y. 2013)), and Plaintiff, who did not respond to Moving Defendants' motion, has identified no facts suggesting a viable claim. Thus, the Court dismisses Plaintiff's First Claim against ADA Spillane and DA Soares with prejudice.

### B. *Monell* Claim

The Complaint asserts *Monell* claims against the City and County of Albany, alleging that they had a "longstanding perpetual policy, custom, or practice" to "inadequately supervise and train police officials, [and] support retaliatory arrest animus conduct" including the "defendant officers and coconspirator prosecuting defendant attorneys, thereby failing to adequately discourage further constitutional violations." (Dkt. No. 1, ¶ 60). According to Plaintiff, the City and County of Albany "did not require appropriate in-service training or re-training of APD officials or prosecuting attorneys who were known to have engaged in police or prosecutorial conduct," and "as a consequence" the defendants in this case "believed that their actions and omissions would not be properly monitored ... and that misconduct would not be investigated or sanctioned." (*Id.* ¶ 62). Plaintiff describes three "incidents" that illustrate this "policy and/or custom," including: (1) "On November 9, 1988, Roland James was unlawfully arrested and imprisoned," (2) "In 2006 civilian Constance Hines' vehicle was unlawfully seized and retained," and (3) "In June of 2014 civilian Andre Cantay was unlawfully arrested." (*Id.* ¶ 59(a)–(c)). Moving Defendants contend that Plaintiff's *Monell* claim should be dismissed as to Albany County because Plaintiff "asserts in conclusory fashion that the County inadequately supervises and trains its prosecuting attorneys without providing any detail or factual support." (Dkt. No. 24-1, at 16).

"It is well established that 'under § 1983, local governments are responsible only for 'their own illegal acts.' " *Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 60, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011)). Local governments "are not vicariously liable under § 1983 for their employees' actions." *Id.* (quoting *Connick*, 563 U.S. at 60, 131 S.Ct. 1350); *see also, e.g.*, *Bd. of Cty Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior.*").

"To establish liability under *Monell*, a plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom." *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019). " '[A] municipal policymaker's failure to act, generally pleaded as a failure to train/supervise claim, can trigger municipal liability where was a failure 'amounts to deliberate indifference to the rights' of those with whom municipal employees will come into contact.' " *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (quoting *Walker v. City of New York*, 974 F.2d 293, 297 (2d. Cir. 1992)). A plaintiff "must do more than simply state that a municipal policy or custom exist" but that "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Id.* (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)). "Normally, 'a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality].' " *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012) (quoting *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008)). "Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983," a complaint "does not 'suffice if it tenders naked assertion[s] devoid of further factual enhancement.' " *Id.* (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

2020 WL 4432631

**\*5**  The Court agrees with Moving Defendants that the Complaint is insufficient to allege a *Monell* claim against Albany County based on a custom of tolerating prosecutorial misconduct. "Plaintiff has not alleged any facts to support an inference that [the County] has a custom or practice of tolerating [prosecutorial misconduct], or of failing to discipline and supervise miscreant [prosecutors]." *Triano*, 895 F. Supp. 2d at 535 (S.D.N.Y. 2012) (dismissing a *Monell* claim based on failure to train/supervise because, inter alia, "mere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details"). As Moving Defendants argue, Plaintiff "does not reference a single previous incident of alleged prosecutorial misconduct." (Dkt. No. 24-1, at 16). While the Complaint lists three other "incidents" related to Plaintiff's *Monell* claim, these pertain to unlawful arrests and seizures, and Plaintiff does not connect them in any way to prosecutorial misconduct.

To the extent Plaintiff is attempting to bring a *Monell* claim against the County based on the actions of the APD officers—rather than the prosecutors—it likewise fails because the allegations regarding the County's alleged involvement with the City of Albany Police Department policies are conclusory and do not lead to a plausible inference that they caused Plaintiff's unlawful arrest. *See Outlaw*, 884 F.3d at 373 (explaining that a *Monell* claim requires the plaintiff to show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation") (citation omitted); *see also Grantley v. City of New York*, No. 12-cv-8294, 2013 WL 6139688, at \*3, 2013 U.S. Dist. LEXIS 165800, at \*8 (S.D.N.Y. Nov. 21, 2013) (dismissing a plaintiff's *Monell* claim where the complaint was "light on facts and heavy on conclusory language").

Accordingly, the Court dismisses Plaintiff's *Monell* claim against the County of Albany.[3] Given Plaintiff's *pro se* status, this claim is dismissed with leave to replead so that Plaintiff can specifically identify facts which lead to a reasonable inference that he suffered a denial of a constitutional right that was caused by an Albany County policy or custom. *See Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 555 (S.D.N.Y. 2003) (noting that courts routinely grant leave to replead following judgment on the pleadings, unless amendment would be futile).

[3]     Given that the City of Albany is not a party to the current motion, the Court has not considered the *Monell* claim to the extent it is alleged against the City.

#### C. Duty to Update Address

The last two text orders mailed to Plaintiff were returned as undeliverable, and Plaintiff failed to file a response to Moving Defendants' motion despite the Court granting him an extension. (Dkt. Nos. 27–28, 30). "Parties have an obligation to notify the Court of any change of address," and "[t]his rule applies to both represented parties as well as *pro se* litigants." *Kalamaras v. Sposato*, No. 16-cv-459, 2017 WL 6459567, at \*1, 2017 U.S. Dist. LEXIS 206721, at \*3 (E.D.N.Y. Nov. 3, 2017) (citing *Rossman v. Suffolk Times*, No. 13-cv-3142, 2013 WL 4065020, at \*1, 2013 U.S. Dist. LEXIS 113072, at \*3 (E.D.N.Y. Aug. 12, 2013)), *report and recommendation adopted*, 2017 WL 6493229, 2017 U.S. Dist. LEXIS 206677 (E.D.N.Y. Dec. 14, 2017); *see also* Northern District of New York Local Rule 10.1(c)(2) ("All ... *pro se* litigants must immediately notify the Court of any change of address."). The Court therefore orders Plaintiff to provide the Clerk of the District Court with a current address within thirty (30) days of this Order. The Court advises Plaintiff that failure to follow this order and "the failure to maintain such an address with the Court is a ground for failure to prosecute," *Laney v. Ramirez*, No. 10-cv-9063, 2011 WL 6594491, at \*1, 2011 U.S. Dist. LEXIS 147770, at \*2 (S.D.N.Y. Dec. 22, 2011) (collecting cases), and will result in the dismissal of this case. *See LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209–11 (2d Cir. 2001).

#### VI. CONCLUSION

**\*6**  For these reasons, it is

**ORDERED** that Moving Defendants' Motion to Dismiss (Dkt. No. 24) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's § 1983 claim (First Claim) against ADA Spillane and DA Soares is **DISMISSED with prejudice**; and it is further

**Malloy v. Sopchak, Not Reported in Fed. Supp. (2020)**

2020 WL 4432631

**ORDERED** that Plaintiff's *Monell* claim (Seventh Claim) against Albany County is **DISMISSED without prejudice with leave to amend**; and it is further

**ORDERED** that Plaintiff is granted leave to file an Amended Complaint **within thirty (30) days** of the date of this Order. Any Amended Complaint must be a complete pleading which will replace the current Complaint in total; and it is further

**ORDERED** that Plaintiff must provide his address to the Court **within thirty (30) days** of this Order; and it is further

**ORDERED** that if no Amended Complaint is filed within thirty (30) days of the date of this Order, the Clerk is directed to terminate Albany County as a defendant in this case.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 4432631

---

**End of Document**                                        © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

Fox v. Lee, Not Reported in Fed. Supp. (2015)
Case 9:25-cv-00083-BKS-TWD   Document 29   Filed 01/20/26   Page 61 of 397
2015 WL 13949048

2015 WL 13949048
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Javell FOX, Plaintiff,

v.

Superintendent LEE, et al., Defendants.

9:15-CV-0390 (TJM/CFH)
|
Signed July 17, 2015

**Attorneys and Law Firms**

JAVELL FOX, 12-B-1626, Plaintiff, pro se, Eastern NY Correctional Facility, Box 338, Naponoch, NY 12458.

**DECISION AND ORDER**

THOMAS J. MCAVOY, Senior United States District Judge

## I. INTRODUCTION

 **\*1** Plaintiff Javell Fox commenced this action by filing a pro se complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. [1] Dkt. No. 1 ("Compl."). Plaintiff seeks leave to proceed with this action in forma pauperis. Dkt. No. 2 ("IFP Application"). Plaintiff also requests appointment of counsel and preliminary injunctive relief. Dkt. Nos. 4, 5. Plaintiff is incarcerated in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and has not paid the statutory filing fee.

[1]   Plaintiff has four other civil actions pending in this District. *See Fox v. Zennamo*, No. 6:15-CV-0587 (LEK/ATB); *Fox v. Labatte*, No. 9:15-CV-0144 (LEK/RFT); *Fox v. D'Amico*, No. 9:15-CV-0257 (MAD/DEP); and *Fox v. Hobbie*, No. 6:15-CV-0616 (LEK/ATB).

## II. DISCUSSION

### A. IFP Application

Upon review of plaintiff's IFP Application (Dkt. No. 2), the Court finds that plaintiff has demonstrated sufficient economic need and may commence this action without prepayment of the filing fee. Thus, plaintiff's IFP Application is granted. [2]

[2]   "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

### B. Initial Screening

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

Case 9:25-cv-00083-BKS-TWD   Document 29   Filed 01/20/26   Page 62 of 397

Fox v. Lee, Not Reported in Fed. Supp. (2015)
2015 WL 13949048

Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis. *See id.*

3    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

 **\*2** In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 "demands more than an adorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### C. Review of the Complaint

Plaintiff alleges misconduct against twenty-four defendants that allegedly occurred while he was incarcerated at Eastern New York Correctional Facility ("Eastern C.F."). Plaintiff's lengthy complaint details various constitutional and statutory violations including, among other things, harassment, retaliation against him for his filing of grievances, interference with his religious practices, denial of his rights to due process of law at disciplinary hearings, excessive force, inadequate conditions of confinement, interference with his access to the courts, and conspiracy to violate his rights. *See generally* Compl. For a more complete statement of plaintiff's claims, refer to the complaint.

Construed liberally, plaintiff alleges the following claims: (1) First Amendment Free Exercise Clause and RLUIPA claims against defendants Madison, Miller, Williamson, Cruz, and Vanacore; (2) claims that defendants Bey and Cruz verbally harassed plaintiff; (3) a claim that defendants Waugh, Connor, and Williamson conducted an improper cell search; (4) First Amendment retaliation claims against defendants Lee, Madison, Kozak, Bey, Simmons, Wendland, Henry, Lifield, Bradley, Schadel, Williamson, Cruz, Vanacore, and Barg; (5) an Eighth Amendment excessive force claim against defendant Cruz; (6) claims that defendants Calao, Jennings and Labatte interfered with his First Amendment right of access to the courts; (7) Fourteenth Amendment due process claims against defendants Simmons, Wendland, and Russo; (8) failure-to-investigate claims against defendants Lee, Webbe, and Russo; (9) an Eighth Amendment conditions-of-confinement claim against defendant Cuomo; (10) a claim that defendants Simmons and Sullivan violated DOCCS directives; (11) conspiracy claims against defendants

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 63 of 397

Fox v. Lee, Not Reported in Fed. Supp. (2015)

2015 WL 13949048

Lee, Madison, Webbe, Russo, and Sullivan; and (12) supervisory claims against defendants Lee and Annucci. [4] Plaintiff seeks monetary damages. Compl. at 36-39. For a more complete statement of plaintiff's claims, refer to the complaint.

[4]    Apart from his claim that he was housed in a cell with no feed-up slot, plaintiff alleges that he was subjected to various other inadequate conditions of confinement including cold temperatures, in violation of the Eighth Amendment but he does not attribute this alleged misconduct to any defendant. *See* Compl. at 15-16, 25-26. Insofar as plaintiff alleges these conditions in support of his Fourteenth Amendment due process claims against defendants Simmons, Wendland, and Russo, as discussed below, those claims survive sua sponte review.

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

### 1. Money Damages Pursuant to RLUIPA

 **\*3**  RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities. *Washington v. Gonyea*, 731 F.3d 143, 145-46 (2d Cir. 2013) (per curiam) (citing *Sossamon v. Texas*, —— U.S. ——, 131 S.Ct. 1651, 1663 (2011)); *see also Jouvert v. New York*, No. 9:10-CV-0930 (MAD/CFH), 2012 WL 6964386, at *5 (N.D.N.Y. Oct. 23, 2012) ("[M]onetary claims against state defendants in their official capacities are unavailable under the RLUIPA because the Act does not unambiguously waive sovereign immunity.... Similarly, monetary claims against individual defendants in their individual capacities raise constitutional concerns. Because the RLUIPA was enacted pursuant to the Spending Clause rather than § 5 of the Fourteenth Amendment, which entrusts Congress with the power to enforce the provisions of the Fourteenth Amendment, Congress lacked constitutional authority to enforce RLUIPA against individual defendants in their individual capacities.") (citations omitted); *see also Pilgrim v. Artus*, No. 9:07-CV-1001 (GLS/RFT), 2010 WL 3724883, at *15-16 (N.D.N.Y. Mar. 18, 2010) (discussing Eleventh Amendment immunity and RLUIPA decisions in this Circuit).

Here, insofar as plaintiff seeks monetary damages against defendants in their official or individual capacities under RLUIPA, those claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### 2. Verbal Harassment

Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under 42 U.S.C. § 1983 ("Section 1983"). *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *see also Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases); *Baskerville v. Goord*, No. 97-CV-6413, 2000 WL 897153, at *3 (S.D.N.Y. July 6, 2000) ("Mere verbal abuse or the use of ... slurs or epithets reflecting ... prejudice, although reprehensible, does not form the basis of a claim pursuant to § 1983."). This principle holds true even when the harassment concerns a plaintiff's religion. *See, e.g., Hamilton v. Erhardt*, No. 10-CV-6234, 2011 WL 3476475, at *4 (W.D.N.Y. Aug. 9, 2011) (holding that verbal taunting does not amount to a constitutional violation "even where such verbal harassment pertains to the plaintiff's race or religion.").

Fox v. Lee, Not Reported in Fed. Supp. (2015)
Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 64 of 397
2015 WL 13949048

Plaintiff's claims against defendants Bey and Cruz based on verbal harassment are dismissed pursuant to 28 U.S.C. 1915(e)(2) (B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Cell Search

The Supreme Court has ruled that inmates have no constitutional protection from cell searches, even those conducted for retaliatory reasons. *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984) ("[T]he Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells."); *see also Walker v. Keyser*, No. 98 Civ. 5217, 2001 WL 1160588, at *9 (S.D.N.Y. Oct. 17, 2001) ("Even retaliatory searches are not actionable under § 1983.").

Thus, to the extent that plaintiff alleges that defendants Waugh, Connor, and Williamson conducted an improper or retaliatory search of his cell, that claim is dismissed pursuant to 28 U.S.C. 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. First Amendment Retaliation

Courts must approach claims of retaliation " 'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.' " *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

 **\*4** Since plaintiff alleges that the various defendants retaliated against him because he filed grievances, plaintiff satisfies the first prong of the retaliation test. *See Baskerville v. Blot*, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) (citing cases) ("A prisoner's filing of a grievance against a corrections officer is protected by the First Amendment.").

#### a. Defendants Henry, Lifield, Bradley, and Schadel

To meet the second prong of the retaliation test, plaintiff must allege that defendants took adverse action against him because he filed the grievance. The Second Circuit has defined "adverse action" as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citation omitted) (omission in original). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.* Conduct that is de minimis does not give rise to actionable retaliation. What is de minimis varies according to context. *Dawes*, 239 F.3d at 493. As the Second Circuit has pointed out, "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." *Dawes*, 239 F.3d at 491 (*quoting Thaddeus-X v. Blatter*, 175 F.3d 378, 386-87 (6th Cir. 1999) (en banc) (per curiam)). If a retaliatory act against an inmate would not be likely to "chill a person of ordinary firmness from continuing to engage" in a protected activity, "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes,* 239 F.3d at 493.

Plaintiff alleges that in retaliation for his grievances, defendants Henry and Lifield denied him his weekly phone call on January 7, 2015, and defendants Bradley and Schadel denied him another phone call on March 6, 2015. Compl. at 26. This conduct,

Fox v. Lee, Not Reported in Fed. Supp. (2015)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 65 of 397

2015 WL 13949048

the loss of one telephone call on two separate occasions months apart, is de minimis and does not amount to adverse action necessary to support a retaliation claim.

Thus, plaintiff's First Amendment retaliation claims against defendants Henry, Lifield, Bradley, and Schadel are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Defendants Lee, Madison, Kozak, Bey, Simmons, Wendland, Williamson, Cruz, Vanacore, and Barg

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), defendants Lee, Madison, Kozak, Bey, Simmons, Wendland, Williamson, Cruz, Vanacore, and Barg are directed to respond to the First Amendment retaliation claims against them. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 5. Failure-to-Investigate Claims

Plaintiff claims that defendants Lee, Webbe, and Russo failed adequately investigate his grievances. *See* Compl. at 12-14. However, "the law is clear that plaintiff has no constitutional right to have his grievances processed at all, or if processed, to have the procedure done properly." *Avent v. Doe*, No. 9:05-CV-1311, 2008 WL 877176, at *8 (N.D.N.Y. Mar. 31, 2008); *accord, e.g., Crenshaw v. Hartman*, 681 F. Supp. 2d 412, 416 (W.D.N.Y. 2010); *see also, e.g., Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("The corrections officers' failure to properly address Torres's grievances by conducting a thorough investigation to his satisfaction does not create a cause of action for denial of due process because Torres was not deprived of a protected liberty interest.") (*citing, inter alia, Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)) (per curiam) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.") (quotation omitted). Because plaintiff "does not have a protected liberty interest in having his grievances investigated at the level of thoroughness that he desires," he therefore "cannot assert a due process claim as to such failures." *Torres*, 246 F. Supp. 2d at 342. To the extent that plaintiff attempts to assert a separate constitutional claim of "failure to investigate," the law is also clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (collecting cases).

**\*5** Plaintiff's failure-to-investigate claims against defendants Lee, Webbe, and Russo are dismissed pursuant to 28 U.S.C. 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 6. Eighth Amendment Conditions-of-Confinement Claim Against Defendant Governor Cuomo

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Not every governmental action affecting the interests or well-being of a prisoner is actionable under the Eighth Amendment. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir. 2001).

**Fox v. Lee, Not Reported in Fed. Supp. (2015)**
2015 WL 13949048

To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective element. *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). A plaintiff must demonstrate that (1) the conditions of confinement resulted in "unquestioned and serious deprivations of basic human needs," *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *see also Jolly*, 76 F.3d at 480, and (2) that the defendants acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303-04 (1991).

The personal involvement of a defendant is a prerequisite for the assessment of liability in a Section 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and the doctrine of respondeat superior is inapplicable to these claims. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty.*, 454 U.S. at 325; *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)). [5]

[5]    Whether all five *Colon* factors for supervisor liability remain available in light of the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), has been debated by the district courts in this circuit. *See, e.g., Pearce v. Estate of Longo*, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), *rev'd in part on other grounds sub nom., Pearce v. Labella*, 473 F. App'x 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated *Iqbal*'s impact on the five Colon factors); *Kleehammer v. Monroe Cnty.*, 743 F. Supp. 2d 175, 185 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster...."); *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard). Regardless of whether *Colon* or an *Iqbal*-limited standard applies, plaintiff has failed to allege the personal involvement of defendant Cuomo in any actionable wrongdoing.

 **\*6** Thus, a plaintiff must demonstrate some tangible connection between the constitutional violation alleged and the particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not survive sua sponte review. *Id.* (alterations and internal quotations omitted). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Here, plaintiff claims that while he was at Eastern C.F., he was confined in a cell without a feed-up slot, and he had to climb his cell bars to reach his food trays. Compl. at 22, 25. At one point, while climbing his bars, he fell and suffered serious injuries. *Id.* Construing the complaint liberally, plaintiff claims that defendant Governor Cuomo is responsible for plaintiff's injuries because he "failed to check on the living establishment of [plaintiff] and his fellow inmates at Eastern NY Correctional Facility" and he gave funds to the Commissioner of DOCCS but failed to make sure that Eastern C.F. had feed-up slots. *Id.* at 22. These allegations fail to demonstrate that defendant Cuomo was personally involved the alleged wrongdoing that led to plaintiff's fall or injury at Eastern C.F. Instead, it appears that plaintiff names defendant Cuomo simply because he is the Governor of the State of New York. *See, e.g., Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (affirming dismissal of claim against governor because plaintiff failed to allege governor's personal involvement in prison's smoking policies). There are also no facts to plausibly suggest that defendant Governor Cuomo knew that plaintiff was housed in a cell without a feed-up slot, or that even if he did, that he was aware of a risk to plaintiff's safety, and deliberately disregarded that risk. *See Coronado v. Goord*, No. 99 Civ. 1674, 2000 WL 1372834, at *7 (S.D.N.Y. Sept. 25, 2000) (dismissing Eighth Amendment claim against Governor

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 67 of 397

Fox v. Lee, Not Reported in Fed. Supp. (2015)
2015 WL 13949048

for failure to show that he knew of and deliberately disregarded a substantial risk of serious harm to inmates that may have been caused by the combination of overcrowding and understaffing at the prison). Indeed, plaintiff himself refers to defendant Cuomo's conduct as "neglect," *see* Compl. at 22, which does not rise to the level of deliberate indifference.

Defendant Cuomo, and all claims against him, are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 7. DOCCS Directives

A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations or state law. *See Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, at *6 (S.D.N.Y. Mar. 15, 2001) (the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim); *see also Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir. 1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983 ...."); *Fluent v. Salamanca Indian Lease Auth.*, 847 F. Supp. 1046, 1056 (W.D.N.Y. 1994) (Section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles). Thus, to the extent plaintiff claims that defendants have failed to comply with state laws or regulations, he has failed to state a claim under Section 1983.

 **\*7** The claims that defendants Simmons and Sullivan violated DOCCS directives are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 8. Conspiracy Claims

A conspiracy claim under Section 1983 must allege that: (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff and (2) an overt act was committed in furtherance of that goal. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *Ciambriello*, 292 F.3d at 325; *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Brown v. City of Oneonta*, 106 F.3d 1125, 1133 (2d Cir. 1997) (complaints containing only conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief). To state a conspiracy claim, plaintiff "must provide some factual basis supporting a meeting of the minds." *See Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003). Thus, plaintiff must "make an effort to provide some details of time and place and the alleged effects of the conspiracy ... [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted).

Here, plaintiff does not assert any facts giving rise to a conspiracy, but instead makes only vague statements that defendants somehow acted in concert to deny him rights. *See, e.g.*, Compl. at 12-13 (alleging that defendant Webbe was "conspiring" with defendant Madison to violate plaintiff's rights); *id.* at 19 (alleging that defendant Webbe "conspired" with defendants Sullivan, Lee, and Russo). Aside from plaintiff's conclusory statements that defendants conspired, the complaint alleges no facts upon which it may be plausibly inferred that the defendants came to an agreement, or a "meeting of the minds," to violate his constitutional rights. *See Iqbal*, 556 U.S. at 680-81 (allegations that the defendants "willfully and maliciously agreed to subject" the plaintiff to harsh conditions of confinement "solely on account of his religion, race, and/or national origin" found conclusory); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (finding allegations of conspiracy "baseless" where the plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators"); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (dismissal of "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights" is proper).

Fox v. Lee, Not Reported in Fed. Supp. (2015)
Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 68 of 397
2015 WL 13949048

The conspiracy claims against defendants Lee, Madison, Webbe, Russo, and Sullivan are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 9. Remainder of the Claims

**\*8** Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff*, 537 F.3d at 191, the Court finds that the following remaining claims survive sua sponte review and require a response: (1) the First Amendment Free Exercise Clause and RLUIPA claims against defendants Madison, Miller, Williamson, Cruz, and Vanacore; (2) the First Amendment retaliation claims against defendants Lee, Madison, Kozak, Bey, Simmons, Wendland, Williamson, Cruz, Vanacore, and Barg; (3) the Eighth Amendment excessive force claim against defendant Cruz; (4) claims that defendants Calao, Jennings and Labatte interfered with plaintiff's First Amendment right of access to the courts; (5) the Fourteenth Amendment due process claims against defendants Simmons, Wendland, and Russo; and (6) the supervisory claims against defendants Lee and Annucci. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### D. Motion for Appointment of Counsel

Turning to plaintiff's motion for appointment of counsel (Dkt. No. 4), courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [The Court] should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61). The Court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

Even if the Court were to assume, for purposes of this motion, that plaintiff's position seems likely to be of substance, the relevant factors weigh decidedly against granting plaintiff's motion at this time. For example: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under Section 1983 by pro se litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez*, 899 F. Supp. at 974; (4) if this case survives any dispositive motions filed by defendants, it is highly probable that this Court will appoint trial counsel at the final pretrial conference; and (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. Thus, plaintiff's motion for the appointment of counsel is denied.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 69 of 397

Fox v. Lee, Not Reported in Fed. Supp. (2015)

2015 WL 13949048

#### E. Motion for Preliminary Injunctive Relief

"In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.' " *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted)). A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo*, 638 F.3d at 406 (citing *Citigroup Global Mkts.*, 598 F.3d at 35 n.4) (internal quotation marks omitted); *see also Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (a plaintiff seeking a mandatory injunction must make a "clear" or "substantial" showing of a likelihood of success on the merits of his claim). The same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Perri v. Bloomberg*, No. 06-CV-0403, 2008 WL 2944642, at *2 (E.D.N.Y. Jul. 31, 2008). The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

**\*9** Plaintiff requests preliminary injunctive relief (1) ordering Kingston County District Attorney D. Holley Carnright to "execute charges against all above named defendants" in accordance with "the criminal charges" drafted by plaintiff; (2) directing Kingston City Court Judge Lawrence E. Ball "to file all charges against officials pursuant to criminal procedure law 100.55 and 20.50" and to act impartially despite the official status of the defendants; (3) enjoining defendant Commissioner Annucci from transferring plaintiff out of Eastern C.F.; and (4) enjoining the defendants from punishing plaintiff for refusing to cut his hair, denying plaintiff copies, or transferring him from Eastern C.F. for refusing to cut his hair. Dkt. No. 5 at 7-9; *see also* Dkt. No. 5-1 at 5-125.

Even if the Court were to assume that plaintiff alleges irreparable harm, his motion would be denied for his failure to demonstrate, with evidence, a likelihood of success on the merits of his underlying claims, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *See Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Res., Inc.,* 792 F. Supp. 924, 928 (S.D.N.Y. 1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals.").

Additionally, to the extent that plaintiff seeks to enjoin the actions of non-parties, namely District Attorney Carnright and Judge Ball, the Court lacks subject matter jurisdiction to enjoin their actions. *See Stewart v. United States I.N.S.*, 762 F.2d 193, 198-99 (2d Cir. 1985) (preliminary injunctive relief may be obtained "[o]nly after an action has been commenced"); *Williams v. State University of New York*, 635 F. Supp. 1243, 1246 (E.D.N.Y. 1986) ("prior to the filing of a complaint a court lacks subject matter jurisdiction and is powerless to grant preliminary injunctive relief"); *In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction.").

Finally, there is no basis upon which this Court may properly grant plaintiff's request that he remain in Eastern C.F. Plaintiff's desire to be confined in a specific correctional facility is not sufficient to warrant the requested judicial relief. Indeed, it is the New York State DOCCS, and not this Court, that determines where plaintiff will be housed during his period of incarceration. *See Meachum v. Fano*, 427 U.S. 215, 229 (1976) (stating that "[t]he federal courts do not sit to supervise state prisons, the administration of which is [of] acute interest to the States" (citations omitted)); *Olim v. Wakinekona*, 461 U.S. 238, 248-49 (1983) (stating that inmates have no right to be confined in a particular state or particular prison within a given state); *Montayne v. Haymes*, 427 U.S. 236, 243 (1976) (holding that New York state prisoners have no right to incarceration at a particular prison

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 70 of 397
**Fox v. Lee, Not Reported in Fed. Supp. (2015)**
2015 WL 13949048

facility). It is well-established that DOCCS has "broad leeway in deciding where to house the inmates under its protective care, be it state or county jail." *McFadden v. Solfaro*, Nos. 95 Civ. 1148, 95 Civ. 3790, 1998 WL 199923, *10 (S.D.N.Y. Apr. 23, 1998).

Accordingly, for the foregoing reasons, plaintiff's motion for preliminary injunctive relief (Dkt. No. 5) is denied.

## III. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**. [6] The Clerk shall provide the Superintendent of the facility that plaintiff has designated as his current location with a copy of plaintiff's inmate authorization form (Dkt. No. 3) and notify that official that plaintiff has filed this action and is required to pay to the Northern District of New York the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

[6]    Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

 **\*10    ORDERED** that the Clerk provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the claims for monetary damages under RLUIPA are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); [7] and it is further

[7]    Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011). Amendment of these claims would be futile.

**ORDERED** that the following claims survive sua sponte review and require a response: (1) the First Amendment Free Exercise Clause and RLUIPA claims against defendants Madison, Miller, Williamson, Cruz, and Vanacore; (2) the First Amendment retaliation claims against defendants Lee, Madison, Kozak, Bey, Simmons, Wendland, Williamson, Cruz, Vanacore, and Barg; (3) the Eighth Amendment excessive force claim against defendant Cruz; (4) the claims that defendants Calao, Jennings and Labatte interfered with plaintiff's First Amendment right of access to the courts; (5) the Fourteenth Amendment due process claims against defendants Simmons, Wendland, and Russo; and (6) the supervisory claims against defendants Lee and Annucci; and it is further

**ORDERED** that all remaining claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; [8] and it is further

[8]    Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint that complies with Rule 15 of the Federal Rules of Civil Procedure. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

**ORDERED** that defendants Waugh, Connor, Webbe, Cuomo, Henry, Lifield, Bradley, Schadel, and Sullivan are **DISMISSED without prejudice** in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

Fox v. Lee, Not Reported in Fed. Supp. (2015)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 71 of 397

2015 WL 13949048

**ORDERED** that upon receipt from plaintiff of the documents required for service of process, the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the summons and complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that a response to the complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

 **\*11**  **ORDERED** that plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED**; and it is further

**ORDERED** that plaintiff's motion for preliminary injunctive relief (Dkt. No. 5) is **DENIED**; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2015 WL 13949048

---

End of Document                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:25-cv-00083-BKS-TWD   Document 29   Filed 01/20/26   Page 72 of 397
Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

2016 WL 1295137
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Damian TRAPANI, Plaintiff,

v.

Brian PULLEN, et al., Defendants.

9:14-CV-00556 (TJM/TWD)
|
Signed February 17, 2016
|
Filed 02/18/2016

**Attorneys and Law Firms**

DAMIAN TRAPANI, 32911, Schenectady County Jail, 320 Veeder Avenue, Schenectady, New York 12307, Plaintiff pro se.

HON. ERIC T. SCHNEIDERMAN, Attorney General for the State of New York, The Capitol, OF COUNSEL: HELENA LYNCH, ESQ., Albany, New York 12224, Counsel for Defendants.

## ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1** This *pro se* action commenced under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000, *et seq.,* has been referred to this Court for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). The matter is now before the Court on Defendants' motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 41(b) and Local Rule 10.1, or in the alternative, to dismiss certain claims in Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 23.) Plaintiff has opposed the motion. (Dkt. No. 32.) For the reasons explained herein, the Court recommends that Defendants' Rule 41(b) motion to dismiss be denied as moot, and that Defendants' Rule 12(b)(6) motion to dismiss be granted in part and denied in part.

## I. PROCEDURAL HISTORY

At all times relevant to this action, Plaintiff was a prisoner in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). (Dkt. No. 1 at 11. [1]) On May 12, 2014, Plaintiff commenced this action naming forty-nine employees of DOCCS as Defendants, alleging violations of his rights under the First, Fourth, Eighth, and Fourteenth Amendments, and RLUIPA. *Id.* at 6–11. Plaintiff's claims arise from events that occurred between October 2013 and December 2013 at Coxsackie Correctional Facility ("Coxsackie"), Elmira Correctional Facility ("Elmira"), and Upstate Correctional Facility ("Upstate"). *Id.* at 11–43.

[1]   Unless otherwise noted, page references to documents identified by docket number are to the original page number, not the page number assigned by the Court's CM/ECF electronic docketing system.

On January 21, 2015, Judge McAvoy granted Plaintiff's application to proceed *in forma pauperis* and issued a Decision and Order severing and transferring the claims against eleven of the Defendants relating to Elmira to the Western District of New York. (Dkt. No. 12.) The following claims allegedly occurring at Coxsackie and Upstate survived the Court's *sua sponte* review

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 73 of 397
Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b): (1) Eighth Amendment excessive force claims against Defendants James G. McKeown ("McKeown"), John P. Bonafede ("Bonafede"), S. Ranze ("Ranze"), S. Lamare [2] ("LaMare"), John Does # # 16–20, and Daniel F. Martusello, Jr., [3] ("Martuscello"); (2) Eighth Amendment failure to intervene claim against Defendant D. Dixon ("Dixon"); (3) First Amendment retaliation claim against Defendants Brian Pullen ("Pullen") and Megan McGlynn ("McGlynn"); (4) First Amendment free exercise against claim against Defendants C. King ("King"), S. Syed ("Syed"), and Jane Doe # 5; and (5) RLUIPA claim against King, Syed, and Jane Doe # 5. (Dkt. No. 12 at 35–37.)

[2]    This Defendant's name is spelled "Lamare" in the caption. The Court will use Defendants' spelling and refer to this Defendant as "LaMare". (Dkt. No. 23.)

[3]    This Defendant's name is spelled "Martusello" in the caption. The Court will use Defendants' spelling and refer to this Defendant as "Martuscello". (Dkt. No. 23.)

**\*2**  On March 23, 2015, Defendants moved to dismiss Plaintiff's Complaint with prejudice pursuant to Rule 41(b) and Local Rule 10.1 based on Plaintiff's failure to notify the Court of his change of address. (Dkt. No. 23–3 at 2–4.) In the alternative, Defendants moved to dismiss certain claims in Plaintiff's Complaint for failure to state a claim pursuant to Rule 12(b)(6). *Id.* at 5–12. Specifically, Defendants move to dismiss (1) all claims stated against Martuscello, Pullen, McGlynn, King, Syed, LaMare, John Does # # 16–20, and Jane Doe # 5; and (2) all claims seeking declaratory and injunctive relief. *Id.* On March 25, 2015, McKeown, Bonafede, Ranze, and Dixon timely answered Plaintiff's Complaint. (Dkt. No. 24.)

On April 14, 2015, Judge McAvoy issued an Order instructing Plaintiff to provide the Clerk with his current address. (Dkt. No. 26.) Plaintiff has since complied with that Order (Dkt. No. 28) and in light of his *pro se* status, this Court granted Plaintiff an extension of time to file a response to Defendants' Rule 12(b)(6) motion. (Dkt. No. 29.) Plaintiff timely opposed the motion. (Dkt. No. 32.) Defendants have filed a reply. (Dkt. No. 34.)

## II. BACKGROUND

The following relevant facts are derived from the face of Plaintiff's Complaint and are accepted as true for the purposes of deciding the pending motion to dismiss. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007).

On October 29, 2013, Plaintiff arrived at Coxsackie and "made known to staff that he is from the same county where the facility was situated in, and ha[s] family and past associations with staff that worked or still work at the facility." (Dkt. No. 1 at 11–12.) Despite providing DOCCS with this information, Plaintiff was placed in general population housing. *Id.* at 12.

On November 10, 2013, Plaintiff was issued a false misbehavior report for "openly engaging in the solitary act." *Id.* The next day, Plaintiff was threatened by DOCCS staff. *Id.* On November 12, 2013, Plaintiff was placed on keeplock. *Id.* at 13. That same day, McKeown, Bonafede, and Ranze escorted Plaintiff to the primary care unit, where they proceeded to "mercilessly and savagely beat" Plaintiff without provocation. *Id.* at 14, 47. McKeown, Bonafede, and Ranze continued to punch Plaintiff even after Sergeant Dixon, who was "responsible for overseeing the security of the primary care unit," made his presence known. *Id.* at 14–15. After this incident, Plaintiff was examined by a nurse. *Id.* at 15. To prevent possible false criminal charges from being lodged against him, Plaintiff lied and stated that he "reamed" his head against a wall himself. *Id.* Later that evening, Plaintiff was transferred to Elmira. *Id.* at 15–16.

On November 19, 2013, Plaintiff was transferred back to Coxsackie and was placed in the special housing unit ("SHU"). *Id.* at 23. Thereafter, Plaintiff was issued three misbehavior reports. *Id.* Two of the reports related to Plaintiff "openly masturbating" on November 11, 2013. *Id.* at 24. The third report was issued by McKeown to justify the November 12, 2013, assault. *Id.* On December 2, 2013, Plaintiff pleaded "not guilty" to all charges. *Id.* at 24, 27. The Superintendent's hearings were adjourned and resumed on December 9, 2013. *Id.* at 27. At that time, Plaintiff changed his plea of "not guilty" to "guilty" in order to retain his good time credits. *Id.* at 27–28. Plaintiff was found guilty of the charges issued in all three November misbehavior reports. *Id.*

2016 WL 1295137

at 38. Plaintiff appealed the decisions, which were reversed by Albert Prack, Director of Special Housing/Disciplinary Program of DOCCS. *Id*.

**\*3** On December 2, 2013, Plaintiff was verbally "accosted" by King at his SHU cell window. *Id*. at 25. On December 3, 2013, McGlynn notarized an "Affidavit of Service" for Plaintiff. *Id*. at 26. Plaintiff claims that "attached" to the Affidavit of Service were "several handwritten Inmate Grievance Complaints" that Plaintiff "intended to send" to Coxsackie's Inmate Grievance Resolution Committee, one of which "could have indirectly implicated" McGlynn as the Offender Rehabilitation Coordinator assigned to the SHU. *Id*. Later that evening, Plaintiff mailed the notarized Affidavit of Service and grievances.[4] *Id*.

4     Plaintiff avers that on December 3, 2013, he used the prisoner grievance system available at Coxsackie to grieve the issues that occurred between November 10, 2013, and November 19, 2013. (Dkt. No. 1 at 44.) At every level these grievances were denied, either directly or through lack of timely response or no response. *Id*.

Three days later, on December 6, 2013, Pullen approached Plaintiff's cell "unannounced and without notice" to deliver documents that Plaintiff had requested. *Id*. Thereafter, Pullen "wrote [Plaintiff] up" for "lewdly exposing himself." *Id*. at 26–27. McGlynn, who was with Pullen when the alleged misconduct occurred, signed as a witness to a November 6, 2013, misbehavior report even though she "did not witness the incident per se." *Id*. at 27. At the Superintendent's hearing involving this misbehavior report, Plaintiff was permitted to view the video surveillance of the "so called incident" and Pullen and McGlynn were called as witnesses. *Id*. at 33. Even though there was "absolutely no evidence adduced" during this hearing, Plaintiff was found guilty of the charges. *Id*. at 33. The decision was affirmed on January 2, 2014, by D. Venettozzi, Acting Director of Special Housing/ Inmate Disciplinary Program of DOCCS. *Id*. at 8, 38.

While at Coxsackie, Plaintiff, "a professed adherent to the Jewish religion" was deprived of Kosher meals from December 6, 2013, until December 20, 2013. *Id*. at 27, 49.

Plaintiff tried using the prisoner grievance system at Coxsackie to resolve the problems that arose subsequent to December 3, 2013, but was held "incommunicado by the corrections staff he was trying to complain of." *Id*. at 44.

On December 20, 2013, Plaintiff was transferred to Upstate. *Id*. at 38–39. Upon his arrival, Plaintiff was "mercilessly beat" by LaMare and John Does # # 16–20. *Id*. at 39–40. Plaintiff was kicked, punched with closed fists, and repeatedly struck in the groin area with a nightstick. *Id*. at 40. John Doe # 16 choked Plaintiff and threatened further physical harm, including strangling Plaintiff to death, if he did "any of the acts he was accused of doing at his former facility" while housed at Upstate. *Id*.

Plaintiff claims that within twenty-one days of his arrival at Upstate, he "resubmitted" grievances to Upstate because the grievance procedure was "unavailable" to him at Coxsackie. *Id*. at 44. Plaintiff's grievances were dismissed as untimely, and his appeals for late consideration were denied "even though the grievance procedure at Coxsackie was unavailable to him." *Id*. Plaintiff further argued that the grievances contained "several related incidents," including the December 20, 2013, use of excessive force incident, which "were by themselves timely," and therefore should have been considered on the merits. *Id*. at 44–45. However, Plaintiff also states that he was "unable to make a separate grievance for review, without fear of retaliation, for the excessive use of force incident occurring upon his arrival at Upstate." *Id*. at 45. Finally, Plaintiff claims that he "exhausted all available administrative appeals for each and every disciplinary action taken against him." *Id*.

## III. LEGAL STANDARD GOVERNING RULE 12(b)(6) MOTIONS TO DISMISS

**\*4** A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6). The motion tests the formal legal sufficiency of the complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y.1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

2016 WL 1295137

550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Twombly,* 550 U.S. at 570. While Rule 8(a)(2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement' " does not suffice. *Id.* (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

Where a party is proceeding *pro se,* the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *see also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly* ). "The mandate to read the papers of pro se litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the plaintiff's complaint." *Robles v. Bleau,* No. 07–CV–0464, 2008 WL 4693153, at *6 and n.41, 2008 U.S. Dist. LEXIS 110029, at *26–27 and n.41 (N.D.N.Y. Oct. 22, 2008) [5] (collecting cases); *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (where a *pro se* is faced with a motion to dismiss, a court may consider materials outside of the complaint "to the extent they are consistent with the allegations in the complaint"), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004); *see also Gil v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) (in reviewing district court's dismissal of *pro se* plaintiff's claim, Second Circuit considered plaintiff's affidavit submitted in opposition to motion to dismiss).

[5]     The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* at 112 (citation omitted).

## IV. ANALYSIS

**\*5** Defendants moved to dismiss Plaintiff's Complaint with prejudice pursuant to Rule 41(b) and Local Rule 10.1 based on Plaintiff's failure to notify the Court of his change of address. (Dkt. No. 23–3 at 2–4.) Because Plaintiff has since notified the Clerk of his current address, the Court recommends denying Defendants' Rule 41(b) motion to dismiss as moot.

Defendants moved in the alternative pursuant to Rule 12(b)(6) to dismiss certain claims in Plaintiff's Complaint for failure to state a claim. *Id.* at 5–12. Specifically, Defendants argue that (1) all claims against Pullen, McGlynn, King, Syed, LaMare, John Does # # 16–20, and Jane Doe # 5 should be dismissed based on Plaintiff's failure to exhaust his administrative remedies; (2) the Eighth Amendment supervisory claim against Martuscello should be dismissed for failure to state a claim; (3) the First

Case 9:25-cv-00083-BKS-TWD   Document 29   Filed 01/20/26   Page 76 of 397
Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Amendment retaliation claim against Pullen and McGlynn should be dismissed for failure to state a claim; (4) the RLUIPA claim should be dismissed as moot; and (5) Plaintiff's claims for declaratory and injunctive relief should be dismissed as moot. *Id.*

A. *Exhaustion of Administrative Remedies*

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2015). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock,* 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo,* 548 U.S. 81, 88 (2006)). In New York State prisons, DOCCS has a well-established three-step inmate grievance program. N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5 (2016).

First, the prison inmate must submit a grievance to the clerk within twenty-one days of the alleged action. *Id.* § 701.5(a)(1). The Inmate Grievance Program Committee ("IGPC") must hold a hearing within sixteen days and issue a written decision within two days of the hearing. *Id.* §§ 701.5(b)(2)(i), (ii). Second, the prison inmate may appeal the IGPC's decision, within seven days of receipt, to the facility superintendent. *Id.* § 701.5(c)(1). Third and finally, the prison inmate may appeal the facility superintendent's decision to the Central Office Review Committee ("CORC") within seven days of receipt. *Id.* §§ 701.5(d)(i), (ii). CORC has thirty days to review the appeal and issue a decision. *Id.* § 701.5(d)(2)(ii). If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford,* 548 U.S. at 93.

Significantly, even if Plaintiff failed to exhaust available administrative remedies before commencing this action, that failure might be excusable. The Second Circuit has held that a three-part inquiry is appropriate where a plaintiff has failed to exhaust his available administrative remedies. *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). [6]

[6]   The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford,* 548 U.S. 81. *Amado v. Andrews,* 655 F.3d 89, 102 (2d Cir.2011).

 **\*6**  First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Id.* (citation omitted). Second, if administrative remedies were available,

> the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense.

*Id.* (citations omitted).

Third, if the remedies were available and defendant did not forfeit and was not estopped from raising the non-exhaustion defense, "the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted). Justification "must be determined by looking at the circumstances which might understandably lead ... uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Goord,* 380 F.3d 670, 678 (2d Cir.2004).

The failure of a prisoner to satisfy the PLRA's exhaustion requirement is an affirmative defense that must be raised by a defendant in response to an inmate suit. *Jones v. Bock,* 549 U.S. 199, 216 (2007); *Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999). Thus, a prisoner has no independent duty to plead facts plausibly suggesting that he exhausted his available remedies in order to state an actionable civil rights claim. *Jones,* 549 U.S. at 211–17. However, this "is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Id.* at 216. If a prisoner chooses to plead facts regarding exhaustion, and those facts show that he failed to exhaust his available administrative remedies, then his complaint may be dismissed for failure to state a claim. *Id.* at 215–16. "Simply stated, if a prisoner says nothing or little about exhaustion in his pro se civil rights complaint, he is likely protected from a [Rule] 12(b)(6) motion to dismiss premised on failure to exhaust. However, if he says too much about exhaustion in that complaint so that his non-exhaustion is readily apparent, he may 'plead himself out of court,' as the saying goes." *McCloud v. Tureglio,* No. 9:07–CV–0650, 2008 WL 1772305, at *11, 2008 U.S. Dist. LEXIS 124388, at *40 (N.D.N.Y. Apr. 15, 2008). This is what has happened here, according to Defendants.

Defendants argue that Plaintiff "conceded" that he failed to exhaust (1) the First Amendment retaliation claim against Pullen and McGlynn; (2) the First Amendment free exercise claim against King, Syed and Jane Doe # 5; and (3) the Eighth Amendment excessive force claim against LaMare and John Does # # 16–20, and therefore the claims must be dismissed. (Dkt. No. 23–3 at 5–8.) The Court disagrees.

Typically, "the exhaustion defense is one that is not particularly well-suited for resolution for a motion to dismiss, absent the clearest indication in a plaintiff's complaint that a failure to exhaust has occurred." *Lewis v. Havernack,* No. 9:12–CV–0031(GLS/DEP), 2013 WL 1294606, at *4, 2013 U.S. Dist. LEXIS 48471, at *12–13 (N.D.N.Y. Mar. 28, 2013); *Laporte v. Fisher,* No. 11–CV–9458 (PKK)(HBP), 2012 WL 5278543, at *5, 2012 U.S. Dist. LEXIS 154203, at *13 (S.D.N.Y. Oct. 24, 2012) ("Dismissal pursuant to Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint.") (citing *McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003)).

 **\*7** Here, Defendants argue that Plaintiff conceded that he failed to exhaust his administrative remedies for incidents arising at Coxsackie subsequent to December 3, 2013. (Dkt. No. 23–3 at 7.) Moreover, despite Plaintiff's allegations that he was "held incommunicado by the corrections staff he was trying to complain of," Defendants argue that Plaintiff fails to identify an affirmative act by an official that prevented him from using Coxsackie's grievance procedure. *Id.* "However, it is Defendants' burden to demonstrate nonexhaustion, not Plaintiff's burden to plead exhaustion with particularity." *Barnes v. County of Monroe,* 85 F.Supp.3d 696 (W.D.N.Y.2015); *see also Bailey v. Fortier,* No. 9:09–CV–0742 (GLS/DEP), 2012 WL 6935254, at *6, 2012 U.S. Dist. LEXIS 190646, at *15 (N.D.N.Y. Oct. 4, 2012) (the "ultimate burden of proof with respect to the exhaustion defense, remains, at all times, with the defendant"); *see also Garvin v. Rivera,* No. 13–cv–7054 (RJS), 2015 WL 876464, at *5, 2015 U.S. Dist. LEXIS 24616, at *13 (S.D.N.Y. Feb. 28, 2015) ("[I]t is unrealistic to expect a pro se plaintiff to know that the inclusion of facts reflecting his failure to exhaust administrative remedies triggers an affirmative duty to plead additional facts concerning the relevant *Hemphill* factors that would excuse his failure to exhaust.") Because nonexhaustion is thus not apparent from the face of Plaintiff's Complaint, including whether a *Hemphill* exception applies, dismissal is not appropriate.

With respect to the Eighth Amendment excessive force claim occurring at Upstate, Plaintiff alleges that he was "mercilessly beat" by LaMare and John Does # # 16–20. *Id.* at 39–40. Plaintiff states that he was unable to make a "separate grievance for review, without fear of retaliation, for the excessive use of force incident occurring upon his arrival at Upstate." *Id.* at 45. By isolating this statement, Defendants argue that Plaintiff conceded that he failed to exhaust his administrative remedies, and therefore this claim should be dismissed. (Dkt. No. 232 at 6.) However, Plaintiff further alleges that while John Doe # 16 was strangling him, John Doe # 16 "threatened" Plaintiff with further physical harm, including strangling Plaintiff to death if Plaintiff engaged in lewd conduct or any assaults on staff. (Dkt. No. 1 at 40.) Plaintiff alleges he was repeatedly struck by John Doe # 16 and was told that if "he goes along with the program and [does] not make an issue of the incident it will all end." *Id.*

Here, Plaintiff's Eighth Amendment excessive force claim against LaMare and John Does # # 16–20 cannot be dismissed for failure to exhaust administrative remedies. *See Hemphill,* 380 F.3d at 690 (petitioner's allegations of threats may estop defendants

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 78 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

from asserting exhaustion defense); *Ziemba v. Wezner,* 366 F.3d 161, 162–63 (2d Cir.2004) (exhaustion defense may be estopped where *inter alia,* defendants allegedly beat and threatened petitioner).

In his opposition, Plaintiff attempts to "clarify" the record and declares that he submitted grievances to Coxsackie and Upstate, which were returned to Plaintiff as "untimely" even though mitigating circumstances warranted an exception to the time period. (Dkt. No. 32 at 7–8. [7] ) He further claims that he believes "at least one" grievance was "reinstated for response." *Id.* at 8. Finally, Plaintiff alleges that he sustained "severe injuries that left him somewhat incapable of participating in the grievance program." *Id.*

[7]     Page references to Plaintiff's opposition brief (Dkt. No. 32) are to the automatic pages assigned by the Court's CM/ECF electronic system.

Notwithstanding the inconsistencies between Plaintiff's Complaint and opposition brief, liberally construing Plaintiff's Complaint and affording him the benefit of every reasonable inference, the Court concludes that it would be inappropriate at this stage in the litigation to dismiss Plaintiff's Eighth Amendment excessive force claim for failure to exhaust administrative remedies. *See, e.g., Roland v. Wenz,* No. 10–CV–0089 (GLS/DEP), 2010 WL 2834828, at *4, 2010 U.S. Dist. LEXIS 72009, at *16 (N.D.N.Y. May 24, 2010) (plaintiff's claim that he exhausted administrative remedies should be "fully probed" before his complaint can be dismissed) (citing *Gayle v. Benware,* No. 08 Civ. 8017, 2009 WL 2223910, at *5–6, 2009 U.S. Dist. LEXIS 131369, at *8–12 (S.D.N.Y. Jul. 27, 2009) (denying motion to dismiss where plaintiff conceded in his complaint that he had not filed a grievance but in response to defendant's motion alleged for the first time that he had attempted to file a grievance, but staff prevented him from doing so)).

**\*8**  Accordingly, the Court recommends denying Defendants' Rule 12(b)(6) motion to dismiss (1) the First Amendment retaliation claim against Pullen and McGlynn; (2) the First Amendment free exercise claim against King, Syed and Jane Doe # 5; and (3) the Eighth Amendment excessive force claim against LaMare and John Does # # 16–20 based upon Plaintiff's failure to exhaust his administrative remedies under the PLRA. The Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion for summary judgment.

   B. *Eighth Amendment Excessive Force Claim Against Defendant Martuscello*

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia,* the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven,* 720 F.3d 133, 138 (2d Cir.2013) (citations omitted). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 67 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis,* No. 9:11–CV– 1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *22–23 (N.D.N.Y. Feb. 28, 2012) (citing *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977)); *see also Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections ... in a § 1983 claim") (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)). Therefore, "a plaintiff must ... allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon,* 58 F.3d at 873. [8]

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

8     The Second Circuit has expressly declined to determine whether *Iqbal* eliminated any of the *Colon* bases for liability. *See Grullon,* 720 F.3d at 139.

On November 12, 2013, McKeown, Bonafede, and Ranze "mercilessly and savagely beat" Plaintiff without provocation. (Dkt. No. 1 at 14, 46–47.) Plaintiff brings a supervisory liability claim against, Martuscello, the Superintendent of Coxsackie. *Id.* at 7, 46–47. Plaintiff alleges that Martuscello "was deliberately indifferent" to Plaintiff's safety by failing to respond to concerns that Plaintiff expressed about his safety prior to the date he was subjected to the excessive force. *Id.* at 46–47. Plaintiff alleges that on October, 29, 2013, he "made known to staff that he is from the same county where the facility was located in, and ha[s] family and past associations with staff that worked or still worked at the facility. *Id.* at 11–12. Despite providing staff with this information, Plaintiff was placed in general population. *Id.* Plaintiff alleges that Martuscello allowed staff under his control to repeatedly abuse him "even after receiving a letter" that informed Martuscello that Plaintiff "possibly" knew several of the staff members, his family worked at Coxsackie and that his Inmate I.D. card was confiscated. *Id.* at 46–47. Finally, Plaintiff argues that by "acknowledging receipt of Inmate Grievance Complaints and responding thereto," Martuscello showed "deliberate indifference by not protecting him against these abuses." *Id.* at 47.

**\*9**  Plaintiff's arguments do not establish Martuscello's personal involvement under any of the *Colon* categories. A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official "failed to remedy that violation after learning of it through a report or appeal" or "exhibited deliberate indifference ... by failing to act on information indicating that the violation was occurring." *Rivera v. Goord,* 119 F.Supp.2d 327, 344–45 (S.D.N.Y.2000); *see also Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability.").

Moreover, Plaintiff's allegation the he submitted grievance complaints to Martuscello after the alleged incident of excessive force does not support an inference that Martuscello was personally involved in that incident. *Bridgewater v. Taylor,* 832 F.Supp.2d 337, 348 (S.D.N.Y.2011); *see also Harnett v. Barr,* 538 F.Supp.2d 511, 524–25 (N.D.N.Y.2008) ("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation.").

Furthermore, conclusory claims that a supervisory official has failed to provide proper training and supervision or created a policy, without facts showing personal involvement, are legally insufficient to state a claim under any of the categories identified in *Colon. See Bridgewater,* 832 F.Supp.2d at 348; *White v. Fischer,* No. 9:09–CV–240 (DNH/DEP), 2010 WL 624081, at \*6, 2010 U.S. Dist. LEXIS 15492, at \*19 (N.D.N.Y. Feb. 18, 2010) ("Vague and conclusory allegations that a supervisor failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."); *see also Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) (vague and conclusory allegations that a supervisor has failed to properly monitor the actions of subordinate employees do not suffice to establish the requisite personal involvement and support a finding of liability); *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987) (dismissal of a § 1983 claim is proper where plaintiff does no more than allege defendant was in charge of the prison).

The only factual allegations showing direct participation by Martuscello is that after receiving Plaintiff's letter, Martuscello "knew or should have known the potential threat of having Plaintiff at Coxsackie." (Dkt. No. 32 at 9.) Plaintiff avers that Martuscello "spoke" with Plaintiff about his family on at least two occasions. *Id.* However, it is well-settled that a prisoner has no constitutional right to serve his sentence in any particular institution or to be transferred from one facility to another. *See Olim v. Wakinekona,* 461 U.S. 238, 249–50 (1983); *Meachum v. Fano,* 427 U.S. 215, 224–25 (1976); *Prins v. Coughlin,* 76 F.3d 504, 507 (2d Cir.1997); *see also Taylor v. Levesque,* 246 Fed. App'x 772, 774 (2d Cir.2007) (a prisoner has no constitutional rights to a security classification of his choosing). The Supreme Court recognized in *Turner v. Safley,* that the placement and transfer of inmates are examples of "inordinately difficult" undertakings as to which the courts "accord deference to the appropriate prison authorities." 482 U.S. 78, 84–85 (1987). Therefore, "prison officials have broad discretion to transfer prisoners." *Meriwether v. Coughlin,* 879 F.2d 1037, 1045 (2d Cir.1989). Because Plaintiff has no constitutional right to be transferred to a particular

2016 WL 1295137

correctional facility or security classification of his choosing, Martuscello cannot be held liable to Plaintiff for violation of § 1983 under any of the *Colon* factors. *See Colon,* 58 F.3d at 873.

**\*10** Given the conclusory nature of Plaintiff's Eighth Amendment supervisory liability claim against Martuscello, the Court recommends dismissal for failure to state a claim, with leave to amend granted in deference to Plaintiff's *pro se* status.

C. *First Amendment Retaliation Claim Against Defendants Pullen and McGlynn*

Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak,* 389 F.3d 379, 380–81 (2d Cir.2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *Id.* at 381–83. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).

To state a plausible First Amendment retaliation claim, an inmate must advance non-conclusory allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech and the adverse action." *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003) (quoting *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001), *overruled on other grounds, Swierkiewicz,* 534 U.S. at 508); *see Pidlypchak,* 389 F.3d at 380. "An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983. *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir.2002).

For a retaliation claim to survive a motion to dismiss, it must be "supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Friedl v. City of New York,* 210 F.3d 79, 86 (2d. Cir.2000) (citation and quotation marks omitted). An "unsupported, speculative, and conclusory" allegation of retaliatory conduct may be dismissed on the pleadings. *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citations and quotation marks omitted).

An inmate bears the burden of showing that "the protected conduct was a substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). In evaluating whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, "a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation." *Baskerville v. Blot,* 224 F.Supp.2d 723, 732 (S.D.N.Y.2002) (citing *Colon,* 58 F.3d at 873). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.* A showing of temporal proximity, without more, has been found insufficient to survive summary judgment. *See Roseboro v. Gillespie,* 791 F.Supp.2d 353, 370 (S.D.N.Y.2011) (citations omitted).

**\*11** Plaintiff claims that on December 6, 2013, he was issued a false misbehavior report in retaliation for filing grievances on December 3, 2013. (Dkt. No. 1 at 26.) On December 6, 2013, Pullen charged Plaintiff with "lewdly exposing himself." *Id.* at 26–27. McGlynn, "who did not witness the incident per se," signed as a witness to the December 6, 2013, misbehavior report. *Id.* Plaintiff further alleges that on December 3, 2013, McGlynn notarized an "Affidavit of Service" at Plaintiff's SHU cell window. *Id.* Attached to the Affidavit of Service were several handwritten grievances that Plaintiff intended to send to Coxsackie's Inmate Grievance Committee, "one of which ... could have indirectly implicated" McGlynn. *Id.* Later that evening, Plaintiff mailed the notarized Affidavit of Service and grievances. [9] *Id.*

9    As discussed above, on December 3, 2013, Plaintiff used Coxsackie's grievance program to grieve the issues that occurred between November 10, 2013, and November 19, 2013. (Dtk. No. 1 at 44.)

Other than the temporal proximity, Plaintiff does not allege any facts plausibly suggesting a causal connection between the protected activity and the adverse conduct. In this case, Pullen authored the December 6, 2013, misbehavior report. *Id.* Plaintiff

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 81 of 397
Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

fails to allege any facts that the grievances mailed on December 3, 2013, implicated Pullen, or that Pullen was even aware of the grievances. "As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant." *Hare v. Hayden,* No. 09 Civ. 3135(RWS), 2011 WL 1453789, at *4, 2011 U.S. Dist. LEXIS 40683, at *12–13, (S.D.N.Y. Apr. 14, 2011) (citing *Wright v. Goord,* 554 F.3d 255, 274 (2d Cir.2009) (dismissing retaliation claims against a corrections officer when only alleged basis for retaliation was complaint about an incident involving another corrections officer)); *see also Roseboro,* 791 F.Supp.2d at 369 (the plaintiff failed to provide any basis to believe that a corrections counselor would retaliate for a grievance that she was not personally named in).

Moreover, there is no indication other than Plaintiff's conclusory allegation to this effect, that Plaintiff's grievances implicated McGlynn or that she was even aware that the grievances were attached to the Affidavit of Service. (Dkt. No. 1 at 26.) In his opposition, Plaintiff pleads no additional facts suggesting a causal connection. Rather, Plaintiff posits the following question: "if the grievance was annexed to the affidavit of service, then shouldn't it been read, or at least cursory so in order to verify its contents for the sake of the notary public being administered[?]" (Dkt. No. 32 at 10.)

With respect to the other factors that may be considered, Plaintiff admits that he was found guilty of the charges set forth in the December 6, 2013, misbehavior report at his disciplinary hearing. *Id.* at 33. The guilty finding was affirmed on appeal. *Id.* at 38. Plaintiff's Complaint is void of any statements allegedly made by Pullen or McGlynn concerning their motivation. Finally, Plaintiff pleads no facts suggesting that his prior good disciplinary records would weigh in his favor.

Given the conclusory nature of Plaintiff's First Amendment retaliation claim against Pullen and McGlynn, the Court recommends dismissal for failure to state a claim, with leave to amend granted in deference to Plaintiff's *pro se* status.


    D. *RLUIPA Claim Against King, Syed, and Jane Doe # 5*
Plaintiff alleges that King, Syed, and Jane Doe # 5 deprived Plaintiff of his Kosher meals at Coxsackie for two weeks in violation of his rights under RLUIPA. (Dkt. No. 1 at 27, 49.) Defendants argue that this claim must be dismissed because money damages are not available under RLUIPA, and that Plaintiff's claims for declaratory and injunctive relief are moot because Plaintiff is no longer housed at Coxsackie. *Id.* at 14. Defendants are correct, and Plaintiff concedes as much. (Dkt. No. 32 at 11.)

 **\*12** Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise" of an institutionalized person unless the government shows that the burden imposed "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering" that interest. 42 U.S.C. § 2000cc–1(a). RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities. *Holland v. Goord,* 758 F.3d 215, 224 (2d Cir.2014); *see also Washington v. Gonyea,* 731 F.3d 143, 145–46 (2d Cir.2013) (per curiam) (citing *Sossamon v. Texas,* 563 U.S. 277, 280 (2011)). Plaintiff's RLUIPA claim for injunctive and declaratory relief is subject to dismissal because Plaintiff is no longer housed at Coxsackie, where the alleged violations occurred. *See Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir.2006) (an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility). Therefore, the Court recommends dismissing Plaintiff's RLUIPA claim against King, Syed, and Jane Doe # 5 without leave to amend.


    E. *Declaratory and Injunctive Relief*
As discussed above, all of Plaintiff's surviving claims in this action arose of out occurrences while he was housed at Coxsackie and Upstate. (Dkt. No. 1.) "In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Shepherd v. Goord,* 662 F.3d 603, 610 (2d Cir.2011) (quoting *Salahuddin,* 467 F.3d at 272); *see also Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir.1996). After filing his Complaint, Plaintiff notified the Court that he was transferred from Upstate to Clinton Correctional Facility. (Dkt. No. 8.) Plaintiff was released from DOCCS custody on February 10, 2015. (Dkt. No. 23–3 at 3.) Plaintiff is currently confined at the Schenectady County Jail. (Dkt. No. 36.) Because Plaintiff is no longer housed at Coxsackie or Upstate, Plaintiff's claims for injunctive and declaratory relief are moot. Therefore, the Court recommends dismissing Plaintiff's claim for injunctive and declaratory relief without leave to amend.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 82 of 397

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' Rule 41(b) motion (Dkt. No. 23) to dismiss Plaintiff's Complaint (Dkt. No. 1) be **DENIED** as moot; and it is further

**RECOMMENDED** that Defendants Rule 12(b)(6) motion (Dkt. No. 23) to dismiss certain claims in Plaintiff's Complaint (Dkt. No. 1) be **GRANTED** in part and **DENIED** in part; and it is further

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion be **DENIED** as to the following claims: (1) Eighth Amendment excessive force claim against Defendant LaMare and Defendants John Does # # 16–20; and (2) First Amendment free exercise claim against Defendant King, Defendant Syed, and Defendant Jane Doe # 5; and it is further

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion be **GRANTED WITH LEAVE TO AMEND** as to the following claims: (1) Eighth Amendment excessive force claim against Defendant Martuscello; and (2) First Amendment retaliation claim against Defendant Pullen and Defendant McGlynn; and it is further

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion be **GRANTED WITHOUT LEAVE TO AMEND** as to the following claims: (1) RLUIPA claim against Defendant King, Defendant Syed, and Defendant Jane Doe # 5; and (2) all claims seeking declaratory and injunctive relief; and it is further

**RECOMMENDED** that the case be **DISMISSED** against Defendant Martuscello, Defendant Pullen, and Defendant McGlynn; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Order and Report–Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

**\*13**  Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW***.*Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)   Case 9:25-cv-00083-BKS-TWD   Document 29   Filed 01/20/26   Page 83 of 397

2016 WL 1295137

Bailey v. Fortier, Not Reported in F.Supp.2d (2012)

2012 WL 6935254

2012 WL 6935254
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Everton BAILEY, Plaintiff,
v.
M. FORTIER, Defendant.

Civ. Action No. 9:09–CV–0742 (GLS/DEP).
|
Oct. 4, 2012.

**Attorneys and Law Firms**

Hancock Estabrook LLP, Michael J. Sciotti, Esq., Robert
Thorpe, Esq., of Counsel, Syracuse, NY, for Plaintiff.

Hon. Richard S. Hartunian, United States Attorney, Charles
E. Roberts, Esq., Assistant U.S. Attorney, of counsel,
Syracuse, NY, for Defendant.

**REPORT AND RECOMMENDATION**

DAVID E. PEEBLES, United States Magistrate Judge.

*1 Plaintiff Everton Bailey, a federal prison inmate, has
commenced this *Bivens* [1] action against defendant Michelle
Fortier, a corrections officer stationed at the prison facility
in which Bailey was confined at the relevant times, alleging
deprivation of his civil rights. Bailey's claims are based
upon Fortier's alleged failure to protect him from an assault
by a cellmate, despite having registered prior complaints
expressing fear for his safety.

Currently at the forefront of the action is the threshold
question of whether Bailey, who admits that he did not file
a grievance following the procedures in place at Bureau
of Prisons ("BOP") facilities, should be excused from the
requirement of exhausting administrative remedies before
commencing suit due to the alleged refusal of prison officials
to provide him with the forms necessary to file a grievance.
Because I find, based upon an evidentiary hearing conducted,
that Bailey was not prevented by the actions of prison officials
from filing a grievance regarding his claim against Fortier,
and that he has offered no special circumstances providing
a basis to excuse his failure to exhaust administrative

remedies, I recommend that his complaint be dismissed on
this procedural basis, without addressing its merits.

**I. BACKGROUND**

Bailey is a federal prison inmate currently being held in the
custody of the BOP as a result of a 2007 criminal conviction
entered in the United States District Court for the Eastern
District of Pennsylvania. *See generally* Complaint (Dkt. No.
1); *see also* VanWeelden Decl. (Dkt. No. 10–4) ¶ 5; June 20,
2012 Hearing Transcript (Dkt. No. 44) at p. 84. [2] While he is
presently housed in another BOP facility, at times relevant to
this litigation Bailey was designated by the BOP to the Ray
Brook Federal Correctional Institution ("FCI Ray Brook"),
located in Ray Brook, New York. *Id.*

On the morning of February 23, 2009, while housed in a six-
person cell in the Mohawk Housing Unit at FCI Ray Brook,
Bailey was confronted and physically assaulted by one of his
cellmates after being accused of stealing that inmate's prayer
oil. Complaint (Dkt. No. 1) ¶¶ 8–9; *see also* VanWeelden
Decl. (Dkt. No. 10–4) Exh. D. Bailey reported the incident
to Fortier, and requested that he be moved to another cell.
Complaint (Dkt. No. 1) ¶ 10. That request was denied, and
Bailey was directed by Fortier to return to his cell in light of
an impending inmate count. *Id.* at ¶ 11.

Following the inmate count, Bailey again was accosted by
the same inmate, who on this occasion threw hot oil from a
ceramic mug onto his face. [3] Complaint (Dkt. No. 1) ¶ 13;
VanWeelden Decl. (Dkt. No. 10–4) Exh. D; Tr. 100, 145.
Bailey suffered second degree burns to his face resulting in his
being hospitalized at an outside medical facility for a period of
fourteen days. Complaint (Dkt. No. 1) ¶¶ 13–14; Tr. 32, 84–
85. Upon his return to FCI Ray Brook, Bailey was placed in
a special housing unit ("SHU") cell, where he remained until
he was transferred to another BOP facility. Tr. 59–60, 85.

*2 The BOP has established an Administrative Remedy
Program ("ARP"), comprised of a four-step administrative
process through which inmates can seek formal internal
review of any complaint regarding any aspect of their
imprisonment. Tr. 10; 28 C.F.R. § 542.10 *et seq.*; *see
also Macias v. Zenk,* 495 F.3d 37, 42 (2d Cir.2007). In
accordance with the established ARP protocol, an inmate
must first attempt informal resolution of his or her complaint
by presenting the issue informally to staff, and staff must
attempt to resolve the issue. 28 C.F.R. § 542.13(a); *see also
Johnson v. Testman,* 380 F.3d 691, 693 (2d Cir.2004). This

WESTLAW  © 2016 Thomson Reuters. No claim to original U.S. Government Works.  1

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
Case 9:25-cv-00083-BKS-TWD   Document 29   Filed 01/20/26   Page 84 of 397
2016 WL 1295137

Bailey v. Fortier, Not Reported in F.Supp.2d (2012)

2012 WL 6935254

informal, initial procedure typically begins with the filing of a "cop-out," which can be submitted either on a BP–8 form available to inmates through several sources, including their assigned counselors, or on paper of any other description. Tr. 10, 22, 27, 66–67, 129, 142.

If the complaint cannot be resolved informally, the inmate may next submit a formal written Administrative Remedy Request ("ARR") to the warden of the facility, utilizing a BP–9 form, within twenty calendar days of the event that generated the inmate's complaint.[4] Tr. 22, 52, 44, 28 C.F.R. § 542.14(a); *see also Johnson, 380 F.3d at 693*. That twenty-day period, however, can be extended in appropriate circumstances.[5] Tr. 33, 54, 144. If that formal request is denied, the inmate may next appeal the matter to the appropriate BOP Regional Director, utilizing a BP–10 form, within twenty calendar days of the date the grievance is denied by the facility warden. Tr. 22; 28 C.F.R. § 542.15(a); *see also Johnson, 380 F.3d at 693*. An unfavorable decision from the Regional Director can then be appealed to the General Counsel's office, utilizing a BP–11 form, within twenty calendar days of the date of the Regional Director's response. Tr. 22; 28 C.F.R. § 542.15(a).

Despite the existence of the ARP, Bailey did not avail himself of that process by filing a grievance regarding the assault or the defendant's alleged failure to protect him from it. Tr. 101–02, 106. Bailey claims that he requested the appropriate forms for commencing the grievance process from several prison workers, including Hawley Snyder, Barbara Darrah, and the warden at FCI Ray Brook. Tr. 86–88, 91, 93–95, 107–09. Employees at FCI Ray Brook, however, uniformly testified that Bailey never requested the appropriate grievance forms from them. *See* Tr. 72, 131, 146–47, 153, 155, 168; *see also* Tr. 49 (Robin Van Weelden); 161 (Jean Marie Diehl); 166 (Michelle Gonyea). I credit the testimony of defendant's witnesses and find that Bailey failed to ask his corrections counselor, or any other BOP employee at FCI Ray Brook, for the necessary forms to commence the grievance process.

The record also reflects that Bailey had abundant opportunity to secure the necessary grievance forms. In February and March of 2009, he was assigned a unit team that included Barbara Darrah, his unit manager; Michelle Gonyea, a case worker; Hawley Snyder, his assigned corrections counselor; and one other corrections counselor.[6] Tr. 46, 86, 140–41. Members of Bailey's unit team, particularly his corrections counselor, were in frequent contact with him. *See, e.g.,* Tr. 126, 129–30, 140–41, 165.

**\*3** Various other BOP officials were also in regular contact with Bailey, making periodic rounds of the FCI Ray Brook SHU. Tr. 35. For example, at the times relevant to this litigation, the facility's warden typically visited the SHU every Wednesday morning, normally accompanied by Robin Van Weelden, who in February 2009 served as a legal assistant, as well as one or two associate wardens, a corrections captain, and unit team members. Tr. 35, 55. When making those rounds the group would proceed from cell to cell, knocking on doors and asking whether an inmate in a particular cell wished to voice any needs. Tr. 57. In addition, Barbara Darrah, as a unit manager, was required to visit inmates in the SHU twice weekly, although she testified that she was in that portion of the facility "pretty much daily." Tr. 126. When visiting the SHU, Darrah generally carried with her a folder of various forms, including BP–8, BP–9, BP–10, BP–11 and cop-out forms, earning her the nickname "the form lady." Tr. 70–71, 120, 124–27, 131. Like the warden and the warden's group, when visiting the SHU facility Darrah normally would proceed from cell-to-cell. Tr. 128. Similarly Michelle Gonyea, as plaintiff's case manager during February and March of 2009, was required to visit the SHU at least once weekly. Tr. 165.

Despite all of those visits and requests as to whether he needed anything, Bailey did not ask any of those individuals for the forms necessary to grieve Fortier's alleged failure to protect him from harm. Tr. 161–62, 166, 49–50, 72, 132, 144, 154–55, 161, 166.

As previously indicated, plaintiff was absent from FCI Ray Brook receiving outside treatment for his injuries during the fourteen-day period immediately following the inmate assault. In accordance with FCI Ray Brook policy requiring visits by prison officials to any inmate hospitalized for more than five days, Darrah, as plaintiff's unit manager, visited him in or about March of 2009, while he was a patient at the Adirondack Medical Center in Saranac Lake, in order to insure that his needs were being met. Tr. 133. When asked on that occasion whether he needed anything, Bailey replied, "No."[7] *Id.*

## II. *PROCEDURAL HISTORY*

Bailey commenced this action on June 29, 2009. Dkt. No. 1. His complaint identifies Corrections Officer M. Fortier as the sole named defendant, and alleges that she violated his

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 85 of 397

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

Bailey v. Fortier, Not Reported in F.Supp.2d (2012)
2012 WL 6935254

constitutional rights by failing to protect him from foreseeable harm. *Id.*

On January 8, 2010, prior to answering, Fortier moved to dismiss Bailey's complaint for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, for summary judgment pursuant to Rule 56. Dkt. No. 10.The sole basis for Fortier's motion was her contention that Bailey's complaint is subject to dismissal based upon his failure to exhaust available administrative remedies before commencing suit, as required under 42 U.S.C. § 1997e(a). That motion resulted in my issuance of a report on August 30, 2010, recommending that the motion be denied, based upon the existence of genuine disputes of material fact to be resolved before addressing whether a proper basis for excusing the governing exhaustion requirement had been demonstrated.Dkt. No. 19.That recommendation was adopted by Chief District Judge Gary L. Sharpe on October 12, 2010. Dkt. No. 21.

*4 Following the issuance and acceptance of my report and recommendation, the parties were afforded the opportunity to engage in discovery, and a scheduling order was entered requiring, *inter alia,* that any additional dispositive motions be filed on or before October 3, 2011. *See*Dkt. No. 23.All deadlines under that scheduling order have passed, without the filing of any additional motions, and the case is now trial-ready. In light of the existence of a threshold procedural issue regarding exhaustion, the matter was referred to me for the purpose of conducting an evidentiary hearing, pursuant to *Messa v. Goord,* 652 F.3d 305 (2d Cir.2011), in order to develop the record concerning Bailey's efforts to satisfy his exhaustion requirement. *See* Text Entry 11/02/11. That hearing was conducted on June 20, 2012, *see* Text Entry 6/20/12, and, following the close of the hearing, decision was reserved pending briefing by the parties. [8], [9]

**III. DISCUSSION**

**A. Governing Legal Principles**
The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42

U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006); *Hargrove v. Riley,* No. CV–04–4587, 2007 WL 389003, at *5–6 (E.D.N.Y. Jan.31, 2007)."[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."*Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002). An inmate plaintiff's complaint is subject to dismissal if the evidence establishes that he or she failed to properly exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal. *See Pettus v. McCoy,* No. 04–CV–0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 94–95, 126 S.Ct. at 2387–88 (holding that the PLRA requires "proper exhaustion" of available remedies). "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules."*Woodford,* 548 U.S. at 95, 126 S.Ct. at 2388;*see also Macias,* 495 F.3d at 43 (citing *Woodford* ). Complete exhaustion has not occurred, for purposes of the PLRA, until all of the steps of that available process have been taken. *Macias,* 495 F.3d at 44;*see also Johnson v. Rowley,* 569 F.3d 40, 45 (2d Cir.2009); *Strong v. Lapin,* No. 90–CV–3522, 2010 WL 276206, at *4 (E.D.N.Y. Jan 15, 2010) ("Until the BOP'S Central Office considers the appeal, no administrative remedy is considered to be fully exhausted.").

*5 In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted in the event of a failure to satisfy the PLRA's exhaustion requirement. *Macias,* 495 F.3d at 41;*see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Under the prescribed rubric, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendant should be deemed to have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it, or whether, through the defendant's own actions preventing the plaintiff from exhausting otherwise available remedies, he or she should be estopped from asserting failure to exhaust as a defense. *Id.* In the event the proffered defense survives these first two levels of scrutiny, the court must determine whether the plaintiff has established the existence of special circumstances sufficient "to justify the failure to comply with applicable administrative procedural requirements. [10], [11] *Id.*

WESTLAW  © 2026 Thomson Reuters. No claim to original U.S. Government Works.    14

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 86 of 397

2016 WL 1295137

Bailey v. Fortier, Not Reported in F.Supp.2d (2012)

2012 WL 6935254

**B. Burden of Proof**

Before applying the foregoing legal principles, I must first consider who bears the burden of proof, and whether that burden shifts throughout the analysis prescribed under *Hemphill*.

As an affirmative defense, *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), exhaustion is a claim upon which the party asserting it typically bears the ultimate burden of proving its essential elements by a preponderance of the evidence. *Soria v. Girdich*, No. 9:04–CV–727, 2007 WL 4790807, at *2 (N.D.N.Y. Dec. 2007) (DiBianco, M.J.) (citing *McCoy v. Goord*, 255 F.Supp.2d 233, 247 (S.D.N.Y.2003)); *McFadion v. Solsky*, No. 9:04–CV–83(FJS/RFT), 2005 WL 2128851, at *4 (N.D.N.Y. Aug.30, 2005) (Scullin, C.J.) (citing *Howard v. Goord*, No. 98–CV–7471, 1999 WL 1288679, *3 (E.D.N.Y. Dec. 28, 1999)), *aff'd in part, vacated in part*,225 F. App'x 36 (2d Cir.2007). The issue is somewhat complicated, however, by consideration of the three-part analysis mandated by *Hemphill* and related cases because that line of cases incorporates concepts—such as estoppel, for example—that typically require the party asserting them to bear the ultimate burden of proof. *See e.g., Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir.2007) ("The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel ...."); *In re Heflin*, 464 B.R. 545, 554 (D.Conn.2011) ("The burden of providing every element of an estoppel is upon the party seeking to set up the estoppel.") (citing *Cumm'r v. Union Pac. R.R. Co.*, 86 F.2d 637, 640 (2d Cir.1936)).

*6  Also complicating matters is the fact that several courts have held that once a defendant satisfies the burden of demonstrating that an inmate has failed to exhaust administrative remedies, it then becomes incumbent upon the plaintiff to counter with a showing of unavailability, estoppel, or special circumstances. *See, e.g., Murray v. Palmer*, No. 9:03–CV–1010 (GTS/GJL), 2010 WL 1235591, at * 4 and n. 17 (N.D.N.Y. Mar.31, 2010) (Suddaby, J.); *see also Calloway v. Grimshaw*, No. 9:09–CV–1354, 2011 WL 4345299, at *5 and n. 5 (N.D.N.Y. Aug.10, 2011) (Lowe, M.J.) (citing cases); *report and recommendation adopted*,2011 WL 4345296 (N.D.N.Y. Sep.15, 2011) (McAvoy, S.J.); *Cohn v. KeySpan Corp.*, 713 F.Supp.2d 143, 155 (E.D.N.Y.2010) (finding that, in the employment discrimination context, defendants bear the burden of establishing the affirmative defense of failure to timely exhaust his administrative remedies, but

once defendants have done so, the plaintiff must plead and prove facts supporting equitable avoidance of the defense.). Those decisions, while referencing the burden of proof on an affirmative defense, seem to primarily address an inmate's burden of *production*, or of going forward, to show facts that would form the basis for finding of unavailability, estoppel, or a finding of special circumstances, rather than speaking to the ultimate burden of *persuasion*.

I have been unable to uncover any cases squarely holding that the defendant bears the ultimate burden of proof with regard to all elements of a *Hemphill* analysis. In the final analysis, however, *Hemphill* addresses all of the elements a court is required to consider when analyzing an exhaustion defense. *See Macias*, 495 F.3d at 41 ("In *Hemphill* we "read together" [a series of cases] and formulated a three-part test....") (emphasis added). Therefore, I recommend a finding that, while the burden of production may shift to the plaintiff when a court undertakes a *Hemphill* analysis, the ultimate burden of proof with respect to the exhaustion defense remains, at all times, with the defendant. *See Soria*, 2007 WL 4790807, at *2 ("[A]s with other affirmative defenses, the defendant has the burden of proof to show that plaintiff failed to exhaust his administrative remedies.").

**C. Application of Governing Legal Principles**

**1. Availability of Administrative Remedy**

In this instance, the question of whether the ARP was available to Bailey is at the heart of the exhaustion analysis. The hearing testimony confirmed, and Bailey admitted, that at all times relevant to this litigation, there was an inmate grievance procedure in place at FCI Ray Brook. This, however, does not necessarily mean that it was "available" to the plaintiff.

Bailey contends that the grievance process was not available to him in light of the alleged refusal of prison officials to provide him with the forms necessary to file an ARR and pursue the grievance to culmination. Having considered the competing testimony, however, I conclude that Fortier has established, by a preponderance of the evidence, that the forms necessary to pursue a grievance in accordance with the ARP in place at FCI Ray Brook were available to Bailey through several sources, but were not requested. As such, Fortier has satisfied the first *Hemphill* factor.

**2. Presentation of Defense/Estoppel**

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 87 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Bailey v. Fortier, Not Reported in F.Supp.2d (2012)
2012 WL 6935254

**\*7** The focus of the second prong of the *Hemphill* analysis is upon "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."*Hemphill,* 380 F.3d at 686 (citations omitted). In her answer, Fortier raised exhaustion as a defense in a timely fashion. *See* Answer (Dkt. No. 22) Second Defense ("Plaintiff clearly failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)."). Bailey argues, however, that his failure to follow the prescribed grievance process was a direct result of the refusal of prison officials to cooperate in his efforts to grieve the matter.

" 'Generally, a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of other individuals.' "*Atkins v. Menard,* No. 9:11–CV–9366, 2012 WL 4026840, at \*3 (N.D.N.Y. Sept.12, 2012) (Suddaby, J.) (citing *Murray,* 2010 WL 1235591, at \*5 and n. 26 (collecting cases)). Put differently, a plaintiff must allege that a defendant named in the lawsuit acted to interfere with his ability to exhaust in order to establish a basis to estop that defendant from invoking the exhaustion defense. *Calloway,* 2011 WL 4345299, at \*4 (citing *Bennett v. James,* 737 F.Supp.2d 219, 226 (S.D.N.Y.2010), *aff'd,*441 F. App'x 816 (2d Cir.2011)) (other citations omitted).

The question of whether, in this instance, prison officials should be estopped from asserting failure to exhaust as an affirmative defense as a result of their conduct is inextricably intertwined with the question of availability of the remedy. Assuming, however, that this presents a distinct inquiry, the court must examine whether, through her conduct, Fortier has provided a basis to estop her from asserting an exhaustion defense.

In this instance, Bailey does not allege that Fortier engaged in a campaign to preclude him from filing a grievance regarding her actions. Instead, his focus is upon the alleged refusal of other officials at FCI Ray Brook to provide him with necessary forms and cooperate in his efforts to present his grievance against Fortier. Accordingly, Bailey has failed to present any evidence that would support an estoppel against the defendant from raising the issue of exhaustion. *Atkins,* 2012 WL 4026840, at \* 3. Therefore, I conclude that Fortier has proven, by a preponderance of the evidence, that she did

not, through her own actions, preclude Bailey from taking advantage of the ARP and therefore should not be estopped from asserting the defense.

**3. Special Circumstances**

The third, catchall factor that must be considered under the Second Circuit's prescribed exhaustion rubric centers upon whether special circumstances sufficient to justify excusing the plaintiff's failure to exhaust administrative remedies have been demonstrated. *Hemphill,* 380 F.3d at 689;*see also Giano,* 380 F.3d at 676–77; *Hargrove,* 2007 WL 389003, at \*10. Among the circumstances potentially qualifying as "special" under this prong of the test is where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable.*Giano,* 380 F.3d at 676–77;*see also Hargrove,* 2007 WL 389003, at \*10 (quoting and citing *Giano* ). Special circumstances may also exist when a facility's "[f]ailure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals-which effectively rendered the grievance process unavailable to him."*Murray,* 2010 WL 1235591, at \*6 (quoting *Sandin v. Poole,* 488 (W.D.N.Y.2008) (noting that "[s]uch facts support a finding that defendant's are estopped from relying on exhaustion defense as 'special circumstances' excusing plaintiff's failure to exhaust")).

**\*8** During the evidentiary hearing, Bailey testified to his awareness of the existence of the ARP at FCI Ray Brook. *See, e.g.,* Tr. 102. Bailey's testimony regarding his alleged efforts to secure the forms necessary to pursue the grievance plainly evidences his knowledge of the requirement that he exhaust available administrative remedies, and negates a finding of any reasonable belief on his part that the dispute in issue was not grievable and could not have been presented through the BOP's internal grievance process. Accordingly, again allocating the ultimate burden of proof on the issue of special circumstances to the defendant, I nonetheless conclude that she has demonstrated, by a preponderance of the evidence, the absence of any special circumstances that would serve to excuse plaintiff's failure to exhaust administrative remedies.

**IV. SUMMARY AND RECOMMENDATION**

The credible testimony and evidence adduced at the recent hearing, held to address the merits of defendant's exhaustion defense, establishes that (1) Bailey failed to avail himself of the BOP grievance process, which was available to

Case 9:25-cv-00083-BKS-TWD   Document 29   Filed 01/20/26   Page 88 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Bailey v. Fortier, Not Reported in F.Supp.2d (2012)
2012 WL 6935254

him, before commencing this action; (2) Fortier did not, through her actions, preclude Bailey from filing a grievance regarding the claims set forth in his complaint, or otherwise engage in conduct for which she should be estopped from asserting failure to exhaust as an affirmative defense; and (3) Bailey has offered no special circumstances warranting that he be excused from the PLRA's exhaustion requirement. Accordingly, it is therefore hereby respectfully

RECOMMENDED, that plaintiff's complaint in this action be DISMISSED, based upon his failure to comply with the exhaustion requirements of 42 U.S.C. § 1997e(a).

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such

objections must be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; Roldan v. Racette, 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 6935254

Footnotes

1   Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).
2   The June 20, 2012 Hearing Transcript (Dkt. No. 44) will hereinafter be cited as "Tr. ____".
3   According to Bailey, there were no corrections officers present in his cell unit at the time of the assault. Complaint (Dkt. No. 1) ¶ 13.
4   Plaintiff was aware of the twenty-day limitation for filing a BP–9 form to initiate the formal grievance process. Tr. 103.
5   Here, the record demonstrates that in light of his circumstances, including the fourteen-day period of hospitalization following the incident, Bailey almost certainly would have been granted relief from that requirement had such a request been made. See Tr. 43, 144. I note, parenthetically, that the handbook provided to inmates at FCI Ray Brook does not address the possibility of requesting an extension of the twenty-day time limit for filing a BP–9. See Tr. 34, 43.
6   Jean Marie Diehl took over as plaintiff's correction counselor in or about September 2009, shortly before Snyder's retirement from the BOP. Tr. 140, 163.
7   During the hearing Bailey testified that he did not recall Darrah visiting him. See Tr. 114. Once again, I credit the testimony of Darrah over that of the Bailey with respect to this issue.
8   The hearing was conducted via video conference, with Bailey participating and testifying from the Kentucky federal correctional facility in which he is currently being held, pursuant to Rule 43(a) of the Federal Rules of Civil Procedure. See Rivera v. Santirocco, 814 F.2d 859, 862 (2d Cir.1987). At the outset of the hearing I placed upon the record the factors which I considered in declining to exercise my discretion to require that Bailey be produced in person for the evidentiary hearing. See Tr. 3.
9   Attorney Michael J. Sciotti, Esq., of the firm of Hancock & Estabrook, LLP, was appointed in January 2012 to represent the plaintiff in this action, pro bono, at the hearing. The court wishes to express its thanks to Attorney Sciotti and his co-counsel, Robert Thorpe, Esq., for their energetic and diligent efforts on behalf of the plaintiff.
10  In Macias, which, like this action, involved an Eighth Amendment claim under Bivens, as well as claims under the Federal Court Claims Act, 28 U.S.C. § 2671 et seq., defendants asserted that plaintiff's complaint was subject to dismissal under the PLRA based upon his failure to exhaust available administrative remedies. Macias, 495 F.3d at 40. Reiterating the importance of exhaustion in both a substantive and a procedural sense, the Second Circuit concluded that, while a prisoner may have substantively exhausted remedies by making informal complaints regarding the conditions at issue, the PLRA, as illuminated by Woodford, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368, requires proper procedural exhaustion through the available grievance channels. Id. at 41.The court left open, however, the possibility that, notwithstanding the Supreme Court's decision in Woodford, a defendant could be precluded from asserting failure to exhaust available administrative remedies in the event of a finding that threats by prison officials may have deterred compliance with the PLRA exhaustion requirements, including under Hemphill. Id. at 44–45.The court in Macias also noted that the plaintiff in that case did not assert that the available internal remedial scheme was so confusing as to excuse his failure to avail himself of that process, thereby obviating the need for the court to determine what effect, if any, Woodford would

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.   5

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 89 of 397
2016 WL 1295137

Bailey v. Fortier, Not Reported in F.Supp.2d (2012)
2012 WL 6935254

have upon the *Hemphill* holding to the effect that a reasonable misinterpretation of the available scheme could justify an
inmate's failure to follow the procedural rules. See *Amador v. Superintendents of Dep't of Correctional Serv.,* No. 03 CIV.
0650 (KTD/CWG), 2007 WL 4326747, at *6 (S.D.N.Y. Dec.4, 2007). It therefore appears that the teachings of *Hemphill*
remain intact, at least with regard to the first two points of inquiry. *Id.* at *7.

11    In practicality, these three prongs of the prescribed test, though perhaps intellectually distinct, plainly admit of significant
overlap. *See Hargrove,* 2007 WL 389003, at *8 n. 14; *see also Giano v. Goord,* 380 F.3d 670, 677 n. 6 (2d Cir.2004).

End of Document                                 © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 90 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

85 F.Supp.3d 696
United States District Court,
W.D. New York.

Jessie J. BARNES, 09–B–2707, Plaintiff,
v.
COUNTY OF MONROE, et al., Defendants.

No. 10–CV–6164 EAW.
|
Signed Feb. 10, 2015.

**Synopsis**

**Background:** State inmate brought § 1983 action against county, county officials, and correctional officers, alleging that officers used excessive force against him and that he was subjected to unconstitutional conditions of confinement during his pretrial detention. Defendants moved for judgment on the pleadings.

**Holdings:** The District Court, Elizabeth A. Wolford, J., held that:

[1] fact that judge reached unfavorable decision in another, unrelated matter provided no basis for recusal;

[2] inmate failed to state municipal liability claim;

[3] county executive was not subject to liability;

[4] inmate stated excessive force claim;

[5] inmate stated conspiracy claim;

[6] inmate stated failure-to-protect claim; and

[7] inmate stated conditions-of-confinement claim.

Motion granted in part and denied in part.

West Headnotes (118)

**[1]      Federal Civil Procedure**
         ⬅ Judgment on the Pleadings

Motions for judgment on the pleadings are evaluated by the same standard applicable to motions to dismiss for failure to state a claim. Fed.Rules Civ.Proc.Rule 12(b)(6), (c), 28 U.S.C.A.

Cases that cite this headnote

**[2]      Federal Civil Procedure**
         ⬅ Time for motion

Motions for judgment on the pleadings must be made after the close of the pleadings, but early enough not to delay trial. Fed.Rules Civ.Proc.Rule 12(c), 28 U.S.C.A.

Cases that cite this headnote

**[3]      Federal Civil Procedure**
         ⬅ Matters considered in general

In considering a motion to dismiss for failure to state a claim, district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

Cases that cite this headnote

**[4]      Federal Civil Procedure**
         ⬅ Matters considered in general

On motion to dismiss for failure to state a claim, complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are "integral" to the complaint. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

Cases that cite this headnote

**[5]      Federal Civil Procedure**
         ⬅ Pro Se or Lay Pleadings

On motions to dismiss for failure to state claim, pro se litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

Cases that cite this headnote

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.          1

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Cases that cite this headnote

[6]  **Federal Civil Procedure**
⊢ Insufficiency in general

**Federal Civil Procedure**
⊢ Matters deemed admitted; acceptance as true of allegations in complaint

Although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and therefore recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to overcome **motion** to **dismiss** for failure to state a claim, even in a pro se case. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

Cases that cite this headnote

[7]  **Federal Civil Procedure**
⊢ Construction of pleadings

In ruling on **motion** to **dismiss** for failure to state claim, district court may not invent factual allegations plaintiff has not pled. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

Cases that cite this headnote

[8]  **Judges**
⊢ Determination of objections

Recusal motions are committed to the sound discretion of the district court. 28 U.S.C.A. § 455(a).

Cases that cite this headnote

[9]  **Judges**
⊢ Bias and Prejudice

In cases where a judge's impartiality might reasonably be questioned, the issue for consideration on motion for recusal is not whether the judge is in fact subjectively impartial, but whether the objective facts suggest impartiality. 28 U.S.C.A. § 455(a).

Cases that cite this headnote

[10]  **Judges**
⊢ Bias and Prejudice

Fact that district court judge reached unfavorable decision in another, unrelated matter provided no basis for recusal on ground that judge was racially biased, in African-American inmate's § 1983 action alleging that he was subjected to unconstitutional conditions of confinement during his pretrial detention. 28 U.S.C.A. § 455(a); 42 U.S.C.A. § 1983.

Cases that cite this headnote

[11]  **Counties**
⊢ Acts of officers or agents

County did not assume liability, pursuant to local law, for alleged acts of county sheriff or his deputies in placing racial minorities incarcerated in county jail in unsafe and unsanitary conditions, and thus county was not subject to liability, under respondeat superior theory, for alleged violations of New York law by sheriff and deputies.

Cases that cite this headnote

[12]  **Civil Rights**
⊢ Governmental Ordinance, Policy, Practice, or Custom

Municipality can be held liable under § 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[13]  **Civil Rights**
⊢ Governmental Ordinance, Policy, Practice, or Custom

To assert a claim of municipal liability under § 1983, a plaintiff must allege the existence of a policy or custom that caused injury, and a direct causal connection between that policy or custom and the deprivation of a constitutional right. 42 U.S.C.A. § 1983.

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.                    2

Case 9:25-cv-00083-BKS-TWD   Document 29   Filed 01/20/26   Page 92 of 397

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Cases that cite this headnote

**[14]** **Civil Rights**
← Acts of officers and employees in general;
vicarious liability and respondeat superior in
general

Absent custom, policy, or usage that caused
injury, a municipality cannot be held liable under
§ 1983 on a respondeat superior basis for the tort
of its employee. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[15]** **Civil Rights**
← Governmental Ordinance, Policy, Practice,
or Custom

To prevail on a § 1983 claim against a municipal
entity, a plaintiff must show: (1) actions taken
under color of law, (2) deprivation of a
constitutional or statutory right, (3) causation, (4)
damages, and (5) that an official policy of the
municipality caused the constitutional injury. 42
U.S.C.A. § 1983.

Cases that cite this headnote

**[16]** **Civil Rights**
← Governmental Ordinance, Policy, Practice,
or Custom
**Civil Rights**
← Lack of Control, Training, or Supervision;
Knowledge and Inaction

Municipal policy that could subject municipality
to liability under § 1983 may be pronounced or
tacit and reflected in either action or inaction. 42
U.S.C.A. § 1983.

Cases that cite this headnote

**[17]** **Civil Rights**
← Governmental Ordinance, Policy, Practice,
or Custom

Official municipal policy that could subject
municipality to liability under § 1983 includes
the decisions of a government's lawmakers, the
acts of its policymaking officials, and practices

so persistent and widespread as to practically
have the force of law. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[18]** **Civil Rights**
← Prisons and jails; probation and parole

African-American pretrial detainee's allegations
that county had discriminatory policy of housing
minorities together at county jail, which led to
"rampant" gang activity, failed to state § 1983
municipal liability claim, absent allegations
regarding sanctioned county policy stating that
minority inmates should be placed in certain
housing, or allegations that jail's practices were
so persistent and widespread as to practically
have force of law. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[19]** **Civil Rights**
← Complaint in general

Mere assertion that a municipality has an
unconstitutional custom or policy is insufficient
in the absence of allegations of fact tending
to support, at least circumstantially, such an
inference, for purposes of § 1983 municipal
liability claim. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[20]** **Civil Rights**
← Complaint in general

Where a plaintiff can show only misbehaving
officers, but has not alleged an official policy that
led to the constitutional or statutory violation,
his § 1983 municipal liability claim must fail. 42
U.S.C.A. § 1983.

Cases that cite this headnote

**[21]** **Constitutional Law**
← **Prisoners**

An inmate has no constitutional right to have his
grievances processed at all, or if processed, to
have the procedure done properly.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 93 of 397
Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Cases that cite this headnote

**[22]    Civil Rights**
⬥ Prisons and jails; probation and parole

Pretrial detainee's conclusory allegations that county maintained grievance program at jail that was biased and prejudicial failed to state § 1983 municipal liability claim, absent allegations that county had custom, policy, or usage that led to deprivation of his constitutional rights. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[23]    Sheriffs and Constables**
⬥ Liabilities for acts or omissions of deputies or assistants

Under New York law, a county sheriff cannot be held personally liable on the basis of respondeat superior for the alleged negligent acts of his deputies.

Cases that cite this headnote

**[24]    Civil Rights**
⬥ Persons Liable in General

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[25]    Civil Rights**
⬥ Criminal law enforcement; prisons

Within the Second Circuit, it is generally accepted that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he: (1) directly participated in the alleged infraction, (2) after learning of the violation, failed to remedy the wrong, (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue, (4) was grossly negligent in managing subordinates who caused the unlawful condition or event, or (5) exhibited deliberate indifference

to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[26]    Civil Rights**
⬥ Criminal law enforcement; prisons

Mere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[27]    Civil Rights**
⬥ Criminal law enforcement; prisons

County sheriff's receipt of African-American pretrial detainee's grievances, by itself, did not amount to personal involvement that would subject sheriff to liability under § 1983 for inmate's alleged constitutional deprivations. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[28]    Civil Rights**
⬥ Vicarious liability and respondeat superior in general; supervisory liability in general

Absent an underlying constitutional violation, there can be no supervisory liability under § 1983. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[29]    Civil Rights**
⬥ Criminal law enforcement; prisons

Pretrial detainee's allegations that county executive engaged in "gross negligent management" of various county jail officers and supported "unconscionable tyranny" of placing all minorities in special housing unit (SHU) failed to state § 1983 claim against executive, in her individual capacity, absent allegations that constitutional violations occurred for any of the underlying events that executive negligently mismanaged. 42 U.S.C.A. § 1983.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 94 of 397

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Cases that cite this headnote

**[30] Prisons**
  ⬅ Actions and litigation

Prison Litigation Reform Act's (PLRA) strict
administrative exhaustion requirement applies
in actions brought by pretrial detainees. Prison
Litigation Reform Act of 1995, § 101(a), 42
U.S.C.A. § 1997e(a).

Cases that cite this headnote

**[31] Prisons**
  ⬅ Exhaustion of Other Remedies

Prison Litigation Reform Act's (PLRA)
administrative exhaustion provision requirement
applies to all inmate suits about prison life,
whether they involve general circumstances or
particular episodes, and whether they allege
excessive force or some other wrong. Prison
Litigation Reform Act of 1995, § 101(a), 42
U.S.C.A. § 1997e(a).

Cases that cite this headnote

**[32] Prisons**
  ⬅ Exhaustion of Other Remedies

Prison Litigation Reform Act's (PLRA)
administrative exhaustion provision affords
prison officials an opportunity to resolve
disputes concerning the exercise of their
responsibilities before being hauled into court,
and also creates an administrative record that
facilitates judicial review. Prison Litigation
Reform Act of 1995, § 101(a), 42 U.S.C.A. §
1997e(a).

Cases that cite this headnote

**[33] Prisons**
  ⬅ Pleading

Only circumstance in which it is appropriate
to dismiss complaint on nonexhaustion grounds
under Prison Litigation Reform Act (PLRA)
is when it is apparent from face of complaint
that plaintiff failed to exhaust his administrative

remedies. Prison Litigation Reform Act of 1995,
§ 101(a), 42 U.S.C.A. § 1997e(a).

Cases that cite this headnote

**[34] Civil Rights**
  ⬅ Prisons and jails; probation and parole

Dismissal of inmate's § 1983 complaint for
failure to exhaust administrative remedies under
Prison Litigation Reform Act (PLRA) was
inappropriate at **motion** to **dismiss** stage;
although inmate made some allegations that he
filed grievances and appeals as to his underlying
concerns, he did not discuss his pursuit of
administrative remedies as to each and every
claim. 42 U.S.C.A. § 1983; Prison Litigation
Reform Act of 1995, § 101(a), 42 U.S.C.A. §
1997e(a).

Cases that cite this headnote

**[35] Evidence**
  ⬅ Proceedings in other courts
  **Federal Civil Procedure**
  ⬅ Matters considered

Prior state court actions in which the New York
Supreme Court, Appellate Division, dismissed
inmate's Article 78 petitions seeking review of
his disciplinary hearings were matters of public
record, and thus district court, in reviewing
motion for judgment on the pleadings, would
take judicial notice of state court actions,
in inmate's § 1983 action alleging that he
was subjected to unconstitutional conditions of
confinement. Fed.Rules Civ.Proc.Rule 12(c), 28
U.S.C.A.; 42 U.S.C.A. § 1983; N.Y.McKinney's
CPLR 7801 et seq.

Cases that cite this headnote

**[36] Evidence**
  ⬅ Proceedings in other courts
  **Evidence**
  ⬅ Official proceedings and acts

A district court may take judicial notice of
matters of public record, including decisions in
prior state court.

**WESTLAW** © 2016 Thomson Reuters. No claim to original U.S. Government Works.                    5

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Cases that cite this headnote

**[37]** **Evidence**
     Nature and scope in general
     **Federal Civil Procedure**
     **Matters considered**

In the context of a motion for judgment on the pleadings, district court should generally take judicial notice to determine what statements documents contain, not for the truth of the matters asserted. Fed.Rules Civ.Proc.Rule 12(c), 28 U.S.C.A.

Cases that cite this headnote

**[38]** **Judgment**
     Matters which were not or could not have been adjudicated

Res judicata did not bar inmate's § 1983 action against county officials, alleging that he was subjected to unconstitutional conditions of confinement during his pretrial detention, based upon inmate's prior Article 78 proceedings in New York seeking review of his placement in special housing unit (SHU) as result of prison disciplinary hearings; § 1983 claims could not have been raised in Article 78 proceedings. 42 U.S.C.A. § 1983, N.Y.McKinney's CPLR 7801 et seq.

Cases that cite this headnote

**[39]** **Judgment**
     Nature and requisites of former recovery as bar in general
     **Judgment**
     Nature and elements of bar or estoppel by former adjudication

"Claim preclusion," known as "res judicata," requires that a final judgment on the merits of an action be given preclusive effect, barring parties as well as those in privity with them from relitigating in a subsequent action a claim which was or could have been raised in the prior suit.

Cases that cite this headnote

**[40]** **Judgment**
     Identity of Cause of Action or Relief Sought

New York plaintiff is not barred under doctrine of res judicata from seeking damages, in federal court, on civil rights claims by reason of a prior judgment on the same underlying facts in an Article 78 proceeding and therefore that action cannot give the damages relief demanded in a civil rights suit. N.Y.McKinney's CPLR 7801 et seq.

Cases that cite this headnote

**[41]** **Judgment**
     Scope and Extent of Estoppel in General
     **Judgment**
     Matters actually litigated and determined

Under New York law, the doctrine of "collateral estoppel" precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same.

Cases that cite this headnote

**[42]** **Judgment**
     Scope and Extent of Estoppel in General

Collateral estoppel may bar a plaintiff from bringing an action in federal court pursuant to § 1983. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[43]** **Judgment**
     Scope and Extent of Estoppel in General
     **Judgment**
     Matters actually litigated and determined
     **Judgment**
     Essentials of Adjudication

There are two requirements for the application of collateral estoppel to an issue under New York law: (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 96 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

had a full and fair opportunity to litigate the issue in the first proceeding.

Cases that cite this headnote

[44] **Judgment**
⬅ Scope and Extent of Estoppel in General

To determine whether first action provided a full and fair opportunity to litigate, as required for application of collateral estoppel to an issue under New York law, requires consideration of: the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation.

Cases that cite this headnote

[45] **Judgment**
⬅ Nature of state tribunal's proceedings
**Judgment**
⬅ Issues or Questions Presented

Former pretrial detainee was collaterally estopped from raising in § 1983 action his challenges to certain disciplinary hearings and orders which resulted in his placement in special housing unit (SHU) at county jail, since state court had already examined those challenges in inmate's Article 78 proceedings pursuant to New York law. 42 U.S.C.A. § 1983; N.Y.McKinney's CPLR 7801 et seq.

Cases that cite this headnote

[46] **Civil Rights**
⬅ Arrest and detention

Pretrial detainee who is subjected to excessive force may bring a claim under § 1983. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

[47] **Constitutional Law**
⬅ Safety and security

Because the Eighth Amendment's protection from cruel and unusual punishment does not apply until after conviction and sentence, the right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment. U.S.C.A. Const.Amends. 8, 14.

1 Cases that cite this headnote

[48] **Constitutional Law**
⬅ Threats, harassment, and use of force
**Sentencing and Punishment**
⬅ Use of force

Second Circuit applies the same **standard** to excessive force claims brought under the Fourteenth Amendment as under the Eighth Amendment. U.S.C.A. Const.Amends. 8, 14.

Cases that cite this headnote

[49] **Constitutional Law**
⬅ Safety and security

Analysis provided by the Supreme Court in *Hudson v. McMillian*, that requires a sentenced **prisoner** to satisfy both an objective and subjective prong to establish an Eighth Amendment violation, also applies to excessive force claims brought by a pretrial detainee under the Fourteenth Amendment. U.S.C.A. Const.Amends. 8, 14.

Cases that cite this headnote

[50] **Sentencing and Punishment**
⬅ Scope of Prohibition

Objective component of claim of cruel and unusual punishment under Eighth Amendment focuses on harm done, in light of contemporary **standards** of decency. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

[51] **Sentencing and Punishment**
⬅ Use of force

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**
Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 97 of 397
2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Eighth Amendment's prohibition against cruel and unusual punishment does not extend to de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[52]    Sentencing and Punishment**
    ⬅ Use of force

Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a **prisoner's** Eighth Amendment rights. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[53]    Sentencing and Punishment**
    ⬅ Use of force

Subjective requirement of Eighth Amendment excessive force claim is satisfied if the defendant acted wantonly with a sufficiently culpable state of mind. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[54]    Constitutional Law**
    ⬅ Safety and security

Where a state official is accused of using excessive physical force against a pretrial detainee, in violation of the detainee's due process rights, the inquiry turns on whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[55]    Constitutional Law**
    ⬅ Safety and security
**Prisons**
    ⬅ Use of force

Former pretrial detainee's allegation that county correctional officer used excessive force when he responded to fight between detainee and fellow inmates, and jumped on detainee's back, striking

him in face and knocking out tooth, and that officer was not merely using force to maintain or restore discipline, but that entire incident was "premeditated," stated § 1983 excessive force claim against officer under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[56]    Constitutional Law**
    ⬅ Safety and security
**Prisons**
    ⬅ Use of force

Former pretrial detainee's allegations that county correctional officers used excessive force when they pushed him face-first into glass window, pushed him to floor, kicked, stomped on, and punched him, used handcuffs to inflict pain, that as result of altercation, inmate urinated and defecated on himself, and experienced dizziness and concussion, and that force used on him was in response to his reaching for legal papers and attempting to steady himself, stated § 1983 excessive force claim against officers under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[57]    Conspiracy**
    ⬅ Conspiracy to Interfere with Civil Rights

To state a conspiracy claim in violation of constitutional rights under § 1983, a plaintiff must allege: (1) an agreement between two or more state actors or between a state actor and a private entity, (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal causing damages. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[58]    Conspiracy**
    ⬅ Combination

"Intracorporate conspiracy doctrine" provides that if conspiratorial conduct challenged under § 1983 is essentially a single act by a single corporation acting exclusively through its own

Case 9:25-cv-00083-BKS-TWD   Document 29   Filed 01/20/26   Page 98 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

officers and employees, each acting within the scope of his employment, there can be no actionable conspiracy. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[59]  Conspiracy**
➤ Combination

Exception to intracorporate conspiracy doctrine applies in § 1983 action when individual employees are pursuing personal interests wholly separate and apart from the entity. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[60]  Conspiracy**
➤ Pleading

While exact specifics are not required to state conspiracy claim in violation of constitutional rights under § 1983, pleadings must present facts tending to show agreement and concerted action. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[61]  Conspiracy**
➤ Pleading

Plaintiff alleging conspiracy in violation of constitutional rights under § 1983 is required to make effort to provide some details of time and place and alleged effects of the conspiracy, including facts to demonstrate that defendants entered into agreement, express or tacit, to achieve unlawful end. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[62]  Conspiracy**
➤ Pleading

Bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action are insufficient to state conspiracy claim in violation of constitutional rights under § 1983. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[63]  Conspiracy**
➤ Pleading

Former pretrial detainee's allegations that county correctional officer who responded to fight between detainee and other inmates "collaborated" with fellow officers to delay emergency call, allowing detainee to be attacked by inmates, stated conspiracy claim in violation of constitutional rights under § 1983. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[64]  Conspiracy**
➤ Conspiracy to Interfere with Civil Rights
**Constitutional Law**
➤ Other particular conditions
**Prisons**
➤ Particular violations, punishments, deprivations, and conditions

Even if county correctional officers conspired to cover up theft of pretrial detainee's personal property, officers' actions did not violate inmate's due process rights, since detainee had state remedies available to him for alleged deprivation, thus precluding detainee's § 1983 conspiracy claim. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[65]  Civil Rights**
➤ Nature and elements of civil actions

In order to bring a valid § 1983 claim, a plaintiff must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[66]  Constitutional Law**
➤ Property and employment

Even an intentional deprivation of an inmate's property that is random and unauthorized does not give rise to a § 1983 due process claim so

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 99 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

long as adequate state post-deprivation remedies are available. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

[67]  **Conspiracy**
      Conspiracy to Interfere with Civil Rights

Absent an underlying constitutional injury, a civil rights conspiracy claim under § 1983 cannot survive. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[68]  **Constitutional Law**
      Conditions

As opposed to deliberate indifference claims brought by post-conviction prisoners, which arise under the Eighth Amendment, claims for deliberate indifference brought by state pretrial detainees arise under the Fourteenth Amendment. U.S.C.A. Const.Amends. 8, 14.

Cases that cite this headnote

[69]  **Sentencing and Punishment**
      Conditions of Confinement

Eighth Amendment requires that prison officials take reasonable measure to guarantee the safety of inmates in their custody. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

[70]  **Civil Rights**
      Use of force; protection from violence

Prison official's failure to protect prisoner from harm may form basis of § 1983 claim. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[71]  **Sentencing and Punishment**
      Protection from violence

Prison officials have duty under Eighth Amendment to protect prisoners from violence

at hands of other prisoners. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

[72]  **Sentencing and Punishment**
      Protection from violence

To state an Eighth Amendment failure-to-protect claim under § 1983, a plaintiff must establish two conditions: first, plaintiff must establish that he is incarcerated under conditions posing substantial risk of serious harm, and second, plaintiff must demonstrate that defendant prison officials possessed sufficient culpable intent of deliberate indifference. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

1 Cases that cite this headnote

[73]  **Civil Rights**
      Police, Investigative, or Law Enforcement Activities

For purposes of liability under § 1983, all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[74]  **Civil Rights**
      Use of force; protection from violence

In order to establish § 1983 liability under failure-to-protect theory, a plaintiff must prove that the defendant in question (1) possessed actual knowledge of the use by another correction officer of excessive force, (2) had a realistic opportunity to intervene and prevent the harm from occurring, and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[75]  **Constitutional Law**
      Safety and security

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

**Prisons**
⬅ Protection from violence, assault, or abuse

Former pretrial detainee's allegations that county correctional officers were aware of impending attack by fellow inmates and permitted attack to occur, and that officers collaborated to delay emergency response to allow detainee to be attacked by inmates, stated § 1983 failure-to-protect claim against officers under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

[76]    **Constitutional Law**
⬅ Safety and security
**Prisons**
⬅ Housing assignments; classification and security status

Former pretrial detainee failed to state § 1983 failure-to-protect claim under Due Process Clause arising from correctional officer's placing him in second floor housing, where detainee was involved in fight with two other inmates, absent allegations that officer had any knowledge that placing detainee in second floor housing posed substantial risk of harm to detainee. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

[77]    **Constitutional Law**
⬅ Safety and security
**Prisons**
⬅ Housing assignments; classification and security status

Former pretrial detainee's allegations that county correctional officers placed him in mainframe housing despite his protests, that he was subsequently attacked by three inmates, and that when he informed one officer that he did not want to return to mainframe housing, officer essentially responded that he did not care if detainee was assaulted by other inmates in mainframe housing, stated § 1983 failure-to-protect claim against officers under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

[78]    **Constitutional Law**
⬅ Safety and security
**Prisons**
⬅ Protection from violence, assault, or abuse

Former pretrial detainee's allegations that county correctional officer not only failed to protect detainee from having urine, feces, and dirty mop water thrown into his cell by fellow inmate, but that officer also let inmate out of his cell and directed him to throw those materials into detainee's cell, stated § 1983 failure-to-protect claim against officer under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

[79]    **Constitutional Law**
⬅ Safety and security
**Prisons**
⬅ Protection from violence, assault, or abuse

Former pretrial detainee's allegations that in retaliation for detainee's prior excessive use of force claim, county correctional officer was "watching and laughing" as fellow officers "dragged" detainee back to his cell, stated § 1983 failure to protect claim against officer under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

[80]    **Constitutional Law**
⬅ Retaliation

Courts properly approach prisoner First Amendment retaliation claims under § 1983 with skepticism and particular care, because virtually any adverse action taken by a prison official, even those otherwise not rising to the level of a constitutional violation, can be characterized as a constitutionally proscribed retaliatory act. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

[81]    **Constitutional Law**
         ⟸ Particular claims

In order to survive a motion to dismiss for failure to state a claim, an inmate asserting § 1983 First Amendment retaliation claim must allege (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action. U.S.C.A. Const.Amend. 1; Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.; 42 U.S.C.A. § 1983.

Cases that cite this headnote

[82]    **Constitutional Law**
         ⟸ Prisoners

Filing of formal prisoner grievances is protected conduct under the First Amendment. U.S.C.A. Const.Amend. 1.

Cases that cite this headnote

[83]    **Constitutional Law**
         ⟸ Retaliation

In context of § 1983 First Amendment retaliation claim brought by inmate, "adverse action," defined objectively, is retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

1 Cases that cite this headnote

[84]    **Constitutional Law**
         ⟸ Retaliation

In the context of prisoner First Amendment retaliation suits under § 1983, a prisoner need not demonstrate "actual chill"; issue is whether defendants engaged in retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his constitutional rights. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

[85]    **Constitutional Law**
         ⟸ Retaliation in general

Objective inquiry in § 1983 First Amendment retaliation claim is not static across contexts, but rather must be tailored to the different circumstances in which retaliation claims arise. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

[86]    **Constitutional Law**
         ⟸ Retaliation

In context of § 1983 First Amendment retaliation claim, prisoners may be required to tolerate more than average citizens before retaliatory action taken against them is considered adverse. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

[87]    **Constitutional Law**
         ⟸ Discipline and classification

Prisoner has a substantive due process right not to be subjected to false misconduct charges as retaliation for his exercise of a constitutional right such as petitioning the government for redress of grievances. U.S.C.A. Const.Amends. 1, 14.

Cases that cite this headnote

[88]    **Constitutional Law**
         ⟸ Prisoners

In evaluating whether an inmate has established the necessary causal connection of a § 1983 First Amendment retaliation claim based on the filing of grievances, court may infer an improper or retaliatory motive in the adverse action from: (1) the temporal proximity of the filing to the grievance and the disciplinary action, (2) the inmate's prior good disciplinary record, (3) vindication at a hearing on the matter, and (4) statements by the defendant regarding his motive for disciplining the inmate. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Cases that cite this headnote

**[89]**  **Constitutional Law**
    ⟵ **Retaliation**

An inmate in § 1983 action can establish a causal connection that suggests **retaliation** under **First Amendment** by showing that protected activity was close in time to the adverse action. U.S.C.A. Const.Amend. 1.

Cases that cite this headnote

**[90]**  **Civil Rights**
    ⟵ Prisons and jails; probation and parole

Former pretrial detainee's tenuous and conclusory allegation that correctional officer placed him in special housing unit (SHU) in **retaliation** for burglary of family member that may have been committed by detainee failed to state § 1983 **First Amendment retaliation** claim, absent allegation that detainee was engaging in any protected speech or conduct. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[91]**  **Constitutional Law**
    ⟵ **Prisoners**

    **Prisons**
    ⟵ Particular violations, punishments, deprivations, and conditions

Former pretrial detainee's allegations that county correctional officer permitted theft of detainee's commissary in **retaliation** for detainee's filing of grievances, and that officer expressed his dislike for detainee because detainee had filed grievances, stated § 1983 **First Amendment retaliation** claim against officer. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[92]**  **Civil Rights**
    ⟵ Prisons and jails; probation and parole

Former pretrial detainee's allegations that county correctional officer identified detainee by

pointing at him, and that fellow officer then "humiliated and degraded" detainee for five to six hours before allegedly issuing two false misbehavior reports against detainee, failed to state § 1983 **First Amendment retaliation** claim against officers, absent allegations as to what protected activities detainee engaged in to elicit alleged **retaliatory** conduct, or as to when alleged **retaliation** occurred or reports were issued. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[93]**  **Prisons**
    ⟵ Wrongful proceedings against **prisoners**; false misconduct reports

Prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report; the only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is where the false accusation is based on something more, such as **retaliation** against the **prisoner** for exercising a constitutional right.

Cases that cite this headnote

**[94]**  **Constitutional Law**
    ⟵ **Retaliation**

    **Constitutional Law**
    ⟵ **Prisoners**

    **Prisons**
    ⟵ Particular violations, punishments, deprivations, and conditions

Former pretrial detainee's allegations that, before being placed in special housing unit (SHU), he was subjected to strip search by county correctional officer, that during course of strip search, detainee felt that he was degraded and humiliated, and he subsequently filed grievance against officer, that later the same day, officer approached detainee's cell and made sexual comments and gestures, and that other officers filed false misbehavior report against detainee in **retaliation** for detainee's grievance stated § 1983 **First Amendment retaliation** claim

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 103 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

against officers. U.S.C.A. Const.Amend. 1; 42
U.S.C.A. § 1983.

Cases that cite this headnote

[95]    **Constitutional Law**
        **Particular claims**

Former pretrial detainee's allegations that county
correctional officers engaged in retaliation by
issuing false misbehavior report and placing
detainee on shower and exercise deprivation
order after another officer saw copy of detainee's
legal petition earlier in the day failed to state
causation element of § 1983 First Amendment
retaliation claim, absent allegations that officers
who filed report had knowledge of his protected
activity. U.S.C.A. Const.Amend. 1; 42 U.S.C.A.
§ 1983.

Cases that cite this headnote

[96]    **Constitutional Law**
        **Imprisonment and Incidents Thereof**
        **Constitutional Law**
        **Property and employment**

To establish a due process violation of the
Fourteenth Amendment, an inmate must show
that a government official made a deliberate
decision to deprive him of his life, liberty, or
property. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

[97]    **Constitutional Law**
        **Imprisonment and Incidents Thereof**

Merely negligent conduct by prison officials
does not give rise to claims under the Fourteenth
Amendment. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

[98]    **Constitutional Law**
        **Discipline and classification**
        **Constitutional Law**
        **Segregation**

A prisoner's liberty interest protected by due
process is implicated by prison discipline, such

as special housing unit (SHU) confinement,
only if the discipline imposes an atypical and
significant hardship on the prisoner in relations
to the ordinary incidents of prison life. U.S.C.A.
Const.Amend. 14.

Cases that cite this headnote

[99]    **Constitutional Law**
        **Segregation**

Factors relevant to determining whether an
inmate endured an atypical and significant
hardship that would implicate his liberty interest
protected by due process include the extent
to which the conditions of the disciplinary
segregation differ from other routine prison
conditions and the duration of the disciplinary
segregation imposed compared to discretionary
confinement. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

[100]   **Constitutional Law**
        **Segregation**
        **Prisons**
        **Punitive, Disciplinary, or Administrative**
        **Confinement**

Special housing unit (SHU) confinements of
30 to 90 days fall within the "short range"
of disciplinary confinement and thus implicate
an inmate's liberty interest protected by due
process only if the conditions were more severe
than the normal SHU conditions. U.S.C.A.
Const.Amend. 14.

Cases that cite this headnote

[101]   **Constitutional Law**
        **Other particular conditions**
        **Prisons**
        **Housing assignments; classification and**
        **security status**

Pretrial detainee's assignment to special housing
unit (SHU) for 30 consecutive days with no
showers or exercise subjected him to abnormal
conditions of confinement that implicated his
liberty interests protected by due process.
U.S.C.A. Const.Amend. 14.

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Cases that cite this headnote

[102]  **Constitutional Law**
    ⬅ Discipline and classification

In prison disciplinary context, constitutionally mandated procedural due process requirements include: (1) written notice of the charges to the inmate, (2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence in support of his defense, subject to a prison facility's legitimate safety and penological concerns, (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken, and (4) in some circumstances, the right to assistance in preparing a defense. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

[103]  **Constitutional Law**
    ⬅ Particular claims

Former pretrial detainee's allegations that he was kept in special housing unit (SHU) for six days beyond his date of release from SHU "without adequacy of any due process of law" as result of county correctional officer's filing false charges against him failed to state § 1983 procedural due process claim, absent allegation that detainee was denied fair opportunity to refute charges. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

[104]  **Constitutional Law**
    ⬅ Particular claims

Former pretrial detainee's allegations that his due process rights were violated when he was required to remain in full mechanical restraints during isolated morning exercise period for five months failed to state § 1983 procedural due process claim, absent allegations as to what facts or circumstances led to that requirement, or how he was prevented from exercising his due process rights in relation to requirement. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

[105]  **Constitutional Law**
    ⬅ Similarly situated persons; like circumstances

Equal Protection Clause directs state actors to treat similarly situated people alike. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

[106]  **Constitutional Law**
    ⬅ Intentional or purposeful action requirement

To prove an equal protection violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

[107]  **Constitutional Law**
    ⬅ Intentional or purposeful action requirement
**Constitutional Law**
    ⬅ Similarly situated persons; like circumstances

To prove a violation of the Equal Protection Clause a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

[108]  **Constitutional Law**
    ⬅ Intentional or purposeful action

Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

[109]  **Constitutional Law**
    ⬅ Particular claims

African-American former pretrial detainee's allegations that racial minorities were disproportionately placed in special housing unit (SHU) at county jail and subsequently deprived of access to public information failed to state §

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

1983 equal protection claim, absent allegations that non-minority inmates who committed similar policy violations were not also placed in SHU and subject to same deprivation. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[110]    Sentencing and Punishment**
        Conditions of Confinement

Under the Eighth Amendment, officials may not create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety; however, because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a conditions-of-confinement claim. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[111]    Sentencing and Punishment**
        Conditions of Confinement
**Sentencing and Punishment**
        Deliberate indifference in general

To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[112]    Constitutional Law**
        Other particular conditions
**Prisons**
        Particular violations, punishments, deprivations, and conditions

Former pretrial detainee's allegations that, after he was released from special housing unit (SHU), county correctional officers placed him in poorly ventilated cell where he was exposed to human excrement and bodily fluids over the course of multiple days, and that he was

subjected to extreme conditions in SHU by way of 24-hour lighting by officers, stated § 1983 conditions-of-confinement claim against officers under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[113]    Sentencing and Punishment**
        Sanitation

Unsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment under the Eighth Amendment. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[114]    Constitutional Law**
        Other particular conditions
**Prisons**
        Particular violations, punishments, deprivations, and conditions

Pretrial detainee's inability to shower or exercise over course of four days as result of being housed in booking cell on shower and exercise deprivation order did not rise to level of Fourteenth Amendment violation. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[115]    Sentencing and Punishment**
        Housing

Requiring inmates to live in constant illumination can, under certain circumstances, rise to the level of an Eighth Amendment violation. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[116]    Civil Rights**
        Prisons

African-American former pretrial detainee's allegations that county correctional officials called him a "piece of shit that likes to file grievances" and "nigger," and stated that they would kill detainee, failed to state § 1983 claim

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

based on verbal harassment, absent allegations that detainee was ever physically threatened. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[117]    **Prisons**
     Threats, intimidation, and harassment; abusive language

**Sentencing and Punishment**
     Other particular conditions

Prison officials' verbal harassment of inmates itself does not rise to the level of a constitutional violation.

Cases that cite this headnote

[118]    **Federal Civil Procedure**
     Particular Cases

Deciding issue of qualified immunity on county defendants' motion for judgment on the pleadings was premature, in former pretrial detainee's § 1983 action, since complaint plausibly alleged several causes of action. Fed.Rules Civ.Proc.Rule 12(c), 28 U.S.C.A.; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**Attorneys and Law Firms**

*708 Jessie J. Barnes, Malone, NY, pro se.

Mallorie C. Rulison, Monroe County Department of Law, Rochester, NY, for Defendants.

**DECISION AND ORDER**

ELIZABETH A. WOLFORD, District Judge.

*INTRODUCTION*

Plaintiff Jessie James Barnes ("Plaintiff"), proceeding *pro se*, is an inmate currently housed at Upstate Correctional Facility. Plaintiff brings the instant action pursuant to 42 U.S.C. § 1983, alleging that Defendants committed various

violations of Plaintiff's state and constitutional rights while he was detained at the Monroe County Jail ("MCJ") during 2008 and 2009.

Presently before the Court is the motion by Defendants County of Monroe, Monroe County Executive Maggie Brooks, Monroe County Sheriff Patrick M. O'Flynn, MCJ Superintendent Ronald Harling, Major E. Krenzer, Major Caceci, Captain Jolly, Captain Thomas, Lieutenant Dimartino, Lieutenant Lipari, Lieutenant Horan, Lieutenant Kaiser, Lieutenant Kloner, Sergeant *709 DeRosa, Sergeant Mooney, Sergeant McGowan, Sergeant Hayes, Corporal Kimball, Corporal Gatti, Corporal Guest, Corporal Knapp, Corporal Cardella, Corporal Amatore, Corporal Kennelly, Corporal Pratt, Corporal Inipoli, Corporal Preston, Corporal T. Peck, Corporal S. Peck, Corporal Shellard, Corporal Carlo, Corporal Tripoli, Corporal Messura, Deputy Kluth, Deputy Scally, Deputy Luther, Deputy Atkins, Deputy Newton, Deputy Willis, Deputy Waud, Deputy James Amico, Deputy Ellen Danehy, Deputy Isiah Ruby, Deputy Fitzsimmons, Deputy Palma, Deputy Daly, Deputy Galen, Deputy DiFlores, Deputy Alberti, Jane Doe Nurse, Nurse Mary, Greg Domalski, Bradley Meister, Avis Robinson, E. Holman, Letitia Miller, Michelle Rizzo, and Todd Thibaut ("County Defendants")[1] for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) (Dkt. 119), Defendant Ellie Holman's separate motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) (Dkt. 120),[2] Plaintiff's motion for recusal (Dkt. 142), and Plaintiff's request to convert Defendants' motion for judgment on the pleadings into a motion for summary judgment (Dkt. 133).

For the following reasons, the County Defendants' motion (Dkt. 119) is granted in part and denied in part, Defendant Holman's motion (Dkt. 120) is granted, and Plaintiff's request to convert Defendants' motion for judgment on the pleadings into a motion for summary judgment (Dkt. 133) is denied. In addition, Plaintiff's motion for recusal (Dkt. 142) is denied.

*PROCEDURAL BACKGROUND*

Plaintiff filed his original complaint in this matter on March 22, 2010, alleging numerous causes of action against approximately 88 Defendants, along with an application to proceed *in forma pauperis*. (Dkt. 1, 2). On April 1, 2010, the Court granted Plaintiff leave to proceed *in forma pauperis* (Dkt. 3). In that order, the Court also dismissed Defendants

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Ontario County and Ontario County Attorney as parties to this action. (*Id.*).

Plaintiff filed a motion to appoint counsel on April 28, 2010 (Dkt. 4), and on May 17, 2010, the Court denied his motion (Dkt. 5).

On July 6, 2010, the County Defendants filed a **motion** to **dismiss**. (Dkt. 6). On July 27, 2010, the Court added Corporal Messura as a Defendant. (Dkt. 10). Plaintiff moved to amend his complaint on August 3, 2010. (Dkt. 12). On October 6, 2010, Defendants Beilein, Harrison–Ross, and Stewart filed a motion for summary judgment. (Dkt. 18). On December 27, 2010, Plaintiff filed another motion to **\*710** amend his complaint. (Dkt. 27). On July 26, 2011, Plaintiff voluntarily dismissed Defendants Beilein, Harrison–Ross, Stewart, and the Citizen's Policy and Complaint Review Council, and the Court dismissed these parties with prejudice by Court order. (Dkt. 60, 61). On January 11, 2012, 2012 WL 92553, the Court issued an order granting Plaintiff's motion to amend his complaint (Dkt. 27), and dismissing as moot Plaintiff's additional motion to amend (Dkt. 12) as well as the County Defendants' **motion** to **dismiss** (Dkt. 6). (Dkt. 62).

On January 25, 2012, Plaintiff filed his second amended complaint. (Dkt. 64). On March 22, 2012, the Court ordered that Plaintiff's second amended complaint be amended to insert the name of Cynthia L. Muller in place of the aforementioned Jane Doe nurse. (Dkt. 78). On April 10, 2012, the County Defendants filed a motion for judgment on the pleadings. (Dkt. 82). On June 6, 2012, the Court ordered that Defendants Greg Domalski, Bradley Meister, Avis Robinson, Deputy Fitzsimmons, James Amico, and Deputy Ellen Danehy be added as Defendants in place of formerly named John Does. (Dkt. 92). Plaintiff filed a motion to amend his complaint on July 26, 2012. (Dkt. 96). On August 1, 2012, Defendants Mary Ann McQueeney and Debbie Scarpulla, two nurses employed by Correctional Medical Care, Inc. ("CMC"), filed a **motion** to **dismiss** the claims against them. (Dkt. 97).

On August 2, 2012, the Court granted Plaintiff's request to file a third amended complaint, making Plaintiff's third amended complaint the operative pleading for this matter. (Dkt. 99).

On August 2, 2012, the Court dismissed Defendants McQueeney, Scarpulla, Bye, Showers, Schultz, Wheatley, Burns, Caviccholi, Harris, Knox, Lopez, Chance, Gallina, and Potocki in accordance with Plaintiff's voluntary dismissal of

these Defendants. (Dkt. 100). The outstanding motion for judgment on the pleadings (Dkt. 82) and **motion** to **dismiss** (Dkt. 97) were denied as moot. (Dkt. 99).

On February 4, 2013, the County Defendants filed a motion for judgment on the pleadings (Dkt. 119), and the remaining Defendants, Holman and Muller, filed a **motion** to **dismiss** for failure to state a claim (Dkt. 120).

The County Defendants filed a motion to stay discovery on March 7, 2013. (Dkt. 125). The remaining Defendants filed a declaration in support of this motion to stay discovery on March 13, 2013. (Dkt. 127).

On June 19, 2013, Plaintiff filed his response to Defendants' motions and requested that the County Defendants' motion be converted into a motion for summary judgment and be granted in his favor. (Dkt. 133).

On July 11, 2013, the Court dismissed Defendant Muller in accordance with Plaintiff's voluntary dismissal of this Defendant. (Dkt. 135).

The Court granted Defendants' motion to stay discovery (Dkt. 125) on September 19, 2013, 2013 WL 5298574 (Dkt. 138). On February 13, 2014, the Honorable Charles J. Siragusa, United States District Judge for the Western District of New York, transferred this case to the undersigned. (Dkt. 141).

On January 13, 2015, Plaintiff filed a motion for the recusal of the undersigned. (Dkt. 142).

### FACTUAL BACKGROUND

Plaintiff's third amended complaint against the remaining 58 Defendants asserts the following facts. (Dkt. 95).

In or about July 2008, Plaintiff was arrested, charged with burglary, and remanded to MCJ pending trial. (*Id.* at ¶ 20).

On August 7, 2008, Plaintiff was fighting with two other inmates, Trustee Eades and Tyrone Members, when Defendant Newton jumped on Plaintiff's back, struck Plaintiff in the mouth, and knocked out one of Plaintiff's front teeth. (*Id.*). Plaintiff alleges that Defendant Newton "premeditated" the attack on Plaintiff, and that Defendants Amico and Danehy "collaborated" with Defendant Newton to delay the

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 36

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 108 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

call of a "Code 1," allowing Plaintiff to be attacked by the other inmates. (*Id.* at ¶¶ 30–32). Plaintiff claims that inmate Eades' cousin told Plaintiff on June 12, 2009, that Defendant Newton was aware that inmates Eades and Members were going to "attack" Plaintiff and indicated that he would "take care of the Code # 1 response and finish the plaintiff off himself." (*Id.* at ¶ 32).

As a result of the August 7, 2008 altercation, Plaintiff was placed in the special housing unit ("SHU") by Defendants Luther, Newton, DeRosa, Jolly, Krenzer, Horan, Kaiser, and Dimartino. (*Id.* at * 75). Plaintiff was housed in SHU from August 7, 2008 through August 21, 2008, under full mechanical restraints and under a shower and exercise deprivation order. (*Id.*).

Although it was not specified in the complaint, Plaintiff must have been released at some time after August 21, 2008, because on October 9, 2008, Plaintiff was arrested after a high-speed chase and was again detained at MCJ on charges of burglary and reckless endangerment, awaiting his July 13, 2009 trial. (*Id.* at ¶ 21).

On October 11, 2008, Defendants DeRosa, Horan, and Jolly placed Plaintiff in SHU. (*Id.* at ¶ 22). Plaintiff alleges that Defendant DeRosa placed him in SHU in retaliation for the burglary of a family member that may have been committed by Plaintiff. (*Id.* at ¶ 76). Plaintiff further alleges that his placement in SHU violated his rights to due process. (*Id.* at ¶ 77). On October 16, 2008, Defendant Krenzer sent Plaintiff a memo indicating: "The circumstances of your arrest and institutional history justify actions taken and measures to isolate you." (*Id.* at ¶ 62). On October 20, 2008, Plaintiff sent "an appeal" to Defendant O'Flynn, complaining that Defendants DeRosa and Krenzer were discriminating against him and denying him due process. (*Id.* at ¶ 63). Plaintiff alleges that he sent a copy of his complaint to Defendant Brooks on March 17, 2009. (*Id.* at ¶ 25). Plaintiff further claims that he submitted a notice of temporary restraining order and preliminary injunction to Defendant Brooks on April 20, 2009, concerning Plaintiff's allegations of discrimination and denial of due process. According to Plaintiff, he effectuated service of a notice of claim on Defendant County of Monroe on June 29, 2009. (*Id.* at ¶ 27), and an Article 78 petition on August 5, 2009 (*id.* at ¶ 28).

Plaintiff claims that housing sections 2, 2M, 3, and 3M in MCJ were areas known to have "gang activity," and that Defendants Thomas, Jolly, Dimartino, Horan, Kaiser, Hayes,

Mooney, DeRosa, McGowan, Kimball, Knapp, Cardella, Kenelly, Tripoli, S. Peck, and Carlo discriminated against Plaintiff by placing him in this housing "where gang activity is prevalent and rampant or hostile situations are most likely to occur[sic] with the Black or Hispanic ethnicity inmates of particular profile and character they deliberately and indifferently assemble in small areas with same or similar tendencies and propensities for transgressions or violence...." (*Id.* at * 61). Plaintiff claims that Defendants do not place Caucasian inmates in this housing. (*Id.* at ¶ 71). Plaintiff contends that Defendants O'Flynn, Brooks, and Harling have "acquiesced" in Monroe County's alleged discriminatory "policy, practice, or *712 custom" of housing minorities together in MCJ. (*Id.* at ¶¶ 25–26, 48, 57, 61, 72–73, 94–96).

On November 7, 2008, Defendant Krenzer placed Plaintiff in second floor housing. (*Id.* at ¶ 0). On November 18, 2008, Plaintiff was beaten by "two (2) younger minorities," Aevin King and M. Jones. (*Id.* at ¶ 41). On November 19, 2008, Defendant DeRosa placed Plaintiff in SHU and allegedly stated: "They should have jumped you, you stabbed that kid in the face with a pencil the whole pitt[sic] should have kicked your ass." (*Id.* at ¶ 64). Plaintiff claims that Defendants DeRosa, Horan, Kaiser, Jolly, Amatore, Krenzer, Caceci, and Harling discriminated against Plaintiff by putting him in SHU because there is videotape evidence of King "mercifullessly[sic] repeatedly kicking the plaintiff in his face as he lie on the floor." (*Id.* at ¶¶ 65, 77). Plaintiff claims that he was supposed to be released from SHU on December 17, 2008, but was kept in SHU until December 23, 2008, "without adequacy of any due process of law." (*Id.* at * 77). Plaintiff contends that he notified Defendants O'Flynn, Harling, and Krenzer that he was improperly placed in SHU, but that these individuals "failed to remedy the wrong." (*Id.* at ¶ 78).

After his release from SHU on December 23, 2008, Plaintiff claims that he was placed in a cell that was "atrociously unsanitary disgustingly filthy with excrement, urine, feces and spew all over walls, ceiling, floor and bars for (3) three more consecutive days where ventilation system were non-existent and cell smell toxich[sic] aweful[sic] ..." by Defendants Jolly, Horan, Kaiser, DeRosa, McGowan, Knapp, Kennelly, Cardella, S. Peck, and Tripoli. (*Id.* at ¶ 60).

On December 26, 2008, Plaintiff informed Defendant Tripoli that he did not want to return to the mainframe housing area, and according to Plaintiff, Tripoli responded: "I don't give a fuck how many times you got your ass kicked on main-frame

Case 9:25-cv-00083-BKS-TWD   Document 29   Filed 01/20/26   Page 109 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

we have decide[d] that you will only be placed in a cell on the main-frame and no place else, either you go to 3M or I will put you back in SHU." (*Id.* at ¶ 66). On January 19, 2009, Plaintiff was attacked by three other inmates. (*Id.* at ¶ 43). Plaintiff claims that Defendants Waud and Willis "bragged" about Plaintiff getting beaten up on this occasion. (*Id.* at ¶ 44).

On February 26, 2009, Plaintiff claims that he asked Defendant Waud to lock him in his cell with a large bag of commissary items at approximately 8:30 p.m. (*Id.*). Plaintiff then alleges that at approximately 9:00 p.m., Defendant Waud opened all of the cells, and Plaintiff left for a short time to brush his hair. (*Id.* at ¶ 45). When Plaintiff returned, his belongings were in disarray, and a "large amount" of commissary was taken from his cell. (*Id.*). Plaintiff claims that inmates Frye, Spivey, Ali, and Houston stole his property, and that this theft would appear on videotape. (*Id.* at ¶¶ 45, 47).

Plaintiff alleges that Defendant Waud permitted the theft of commissary to occur in retaliation for Plaintiff's filing of grievances, as evidenced by Defendant Waud's statement that he hated Plaintiff because "he is a piece of shit that likes to file grievances on staff." (*Id.* at ¶ 46). Plaintiff alleges that Defendants Waud, T. Peck, Mooney, Dimartino, Robertson, and Fitzsimmons "collaborated reports" to delete any references to the theft of Plaintiff's commissary. (*Id.* at ¶ 47). Plaintiff contends that Defendants Krenzer, Harling, Jolly, Dimartino, Mooney, T. Peck, Waud, Fitzsimmons, and Robinson altered the videotape evidence by deleting from the tape the time period from 8:55 p.m. through 9:30 p.m. (*Id.* at ¶ 101). Plaintiff further claims that Defendants Harling, Krenzer, Thomas, and Jolly encouraged **\*713** the falsification of records relating to the incident. (*Id.* at ¶ 48). According to Plaintiff, Defendant Monroe County continues to withhold the videotape evidence, which Plaintiff claims is in the possession of Defendants Amico, Danehy, Meister, Domalski, Miller, Rizzo, Fitzsimmons, and Robinson. (*Id.* at ¶¶ 100, 102).

Although Plaintiff does not explain what happened after the alleged theft of his commissary was discovered, Plaintiff alleges that he was taken out of the booking area on a stretcher following the incident. (*Id.* at ¶ 49). As Plaintiff was carried out on a stretcher, Plaintiff claims Defendant DeRosa called out: "Hey Jessie I see you got your ass kicked that is good for you they did a pretty good job this time." (*Id.*). When Defendant Raby asked Plaintiff how many inmates jumped him, Defendant Holman allegedly stated: "Oh Jessie Barnes always gets his ass kicked." (*Id.* at ¶ 53).

Plaintiff alleges that Nurse Muller deliberately omitted from her February 26, 2008 medical notes the fact that Plaintiff was vomiting blood, with the intention of downplaying his injuries. (*Id.* at ¶ 103). Plaintiff voluntarily dismissed Ms. Muller as a defendant to this action with prejudice, and Ms. Muller was dismissed from this matter by Court order dated July 12, 2013. (Dkt. 135).

Between February 27, 2009 and March 2, 2009, Plaintiff was housed in a booking cell, and was allegedly kept on a shower and exercise deprivation order by Defendants T. Peck, Mooney, Waud, Dimartino, and Jolly. (Dkt. 95 at ¶ 79).

On an unspecified date, Plaintiff alleges that Defendant Kluth "humiliated and degraded" Plaintiff for "5 or 6 consecutive hours" after Defendant DeRosa pointed at Plaintiff, and subsequently issued two false misbehavior reports against Plaintiff. (*Id.* at ¶ 67).

On March 2, 2009, before being placed in SHU, Plaintiff was subjected to a "degrading and humiliating strip-search" by Defendant Scally. (*Id.* at ¶ 69). Plaintiff claims that he filed a grievance against Defendant Scally on March 3, 2009, and later that day, Defendant Scally approached Plaintiff's cell and "blew-up his cheeks making jestures[sic] and stated: 'Oh Jessie suck my dick.' " (*Id.* at ¶ 92). Plaintiff claims that Defendants Atkins, Scally, Guest, Amatore, and McGowan then filed a false misbehavior report against Plaintiff in retaliation for Plaintiff's grievance against Defendant Scally. (*Id.* at ¶ 93). As a result of this misbehavior report, Defendants Hayes, Horan, Jolly, McGowan, Guest, Scally, Atkins, and Krenzer placed Plaintiff in SHU on a shower and exercise deprivation order for over 30 consecutive days, causing Plaintiff "extreme outrageous emotional distress, physical suffering and mental anguish." (*Id.* at ¶ 80). Plaintiff claims to have contested this determination but his grievance and subsequent appeal were denied. (*Id.* at ¶ 81).

According to Plaintiff, Defendants Krenzer and Thomas told Plaintiff that the 30-day order "may have been a bit much," and that he would be taken out of SHU on April 13, 2009, if he did not have "any write ups or bad reports." (*Id.* at ¶ 82). Plaintiff claims that Defendant Atkins intentionally "documented degenerate jusinc[sic] notes, log entries, segregation reports and e-mails" between April 9, 2009, and April 12, 2009, to prevent Plaintiff's early removal from SHU. (*Id.* at ¶ 83).

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Plaintiff alleges that his original petition to state court was notarized on April 15, 2009, by the law librarian, and that when copies of the petition were delivered to Plaintiff's cell on April 16, 2009, Defendant Atkins saw the petition. (*Id.* at ¶ 85). Plaintiff alleges that another false misbehavior *714 report was issued against Plaintiff on April 16, 2009, in **retaliation** for Plaintiff's state court petition. (*Id.* at ¶ 86). As a result of this misbehavior report, Defendants Newton, Horan, Jolly, and Kreuzer placed Plaintiff on a shower and exercise deprivation order. (*Id.*). Plaintiff claims to have filed an administrative appeal with Defendant Harling on April 17, 2009, with respect to the new deprivation order and his concerns about the false misbehavior report. (*Id.* at * 87). Defendant Harling responded on April 21, 2009. (*Id.*).

Plaintiff claims that he was required to remain in full mechanical restraints during his isolated morning exercise period from March 2009 until August 31, 2009, and that this requirement constituted cruel and unusual punishment and violated his rights under the due process and equal protection clauses of the New York State and United States Constitutions. (*Id.* at ¶ 88).

On May 2, 2009, Plaintiff claims that Defendant Willis let inmate Clark out of his cell and instructed the inmate to throw "urine, feces, and dirty mop water in the plaintiff's cell," endangering Plaintiff's life, health, and safety. (*Id.* at ¶ 54). Plaintiff further claims that Defendant Willis took Plaintiff's personal towel that held sentimental value and threw the towel into the urine and feces. (*Id.* at ¶ 55). Plaintiff alleges that later that day Defendant Willis stood in front of Plaintiff's cell with inmate Clark and Defendant Gatti when Defendant Gatti, whom Plaintiff had never seen before, called Plaintiff a "nigger" and said that he would kill Plaintiff. (*Id.* at ¶ 56).

On May 4, 2009, Defendants Scally, Anustore, and Atkins allegedly filed a false misbehavior report against Plaintiff, which caused Plaintiff to be placed on a 23–day consecutive "styro-foam tray order," in **retaliation** for Plaintiff "seeking redress of grievances in judicial and administrative forums." (*Id.* at ¶¶ 58, 90).

On August 12, 2009, Plaintiff alleges that he was participating in his one hour of exercise when Defendant Daly harassed Plaintiff about Plaintiff's upcoming parole hearing. (*Id.* at ¶ 33). Following this encounter, Plaintiff requested to speak with a supervisor, and was placed in a no-contact visitation cell for 45 minutes. (*Id.* at ¶ 34).

Later that day, Defendant Daly entered the visitation room at the end of Plaintiff's 50(h) deposition with the Ontario County Attorney. (*Id.* at ¶ 35). According to Plaintiff, Defendant Shellard also entered the room, and when Plaintiff reached for his legal documents, Defendant Shellard pushed Plaintiff face-first into the glass window. (*Id.*). Defendants Shellard, Daly, and Alberti then allegedly pushed Plaintiff to the floor, kicked, stomped on, and punched Plaintiff, although he was in full restraints. (*Id.* at ¶ 36). Plaintiff claims that Defendants Alberti and Daly used the handcuffs to "inflict pain and suffering on [Plaintiff] causing him to lose the feeling in his hands." (*Id.* at ¶ 37).

Plaintiff alleges he was then taken to the elevator, where Defendant Lipari was standing shaking a canister of mace and watching Plaintiff. (*Id.*). After the elevator arrived at the second floor, Plaintiff claims he was pushed into the hallway. (*Id.* at ¶ 38). Plaintiff claims that he tried to steady himself by grabbing the gate and that Defendant Galen told him not to touch the gate, and that Defendants Alberti and Daly then grabbed Plaintiff and slammed his head. (*Id.* at ¶¶ 38–39). Plaintiff claims that he urinated and defecated on himself, and experienced dizziness and a concussion. (*Id.* at ¶ 39). Plaintiff was then allegedly dragged back to his cell by Defendants Galen, Daly, and Alberti. (*Id.*).

Plaintiff also complains about conditions of confinement at MCJ. Plaintiff claims that Monroe County failed to properly *715 train or supervise Defendants Brooks and O'Flynn, resulting in the "gross negligent management" of various officers, and ultimately violations of Plaintiff's constitutional rights. (*Id.* at ¶¶ 48, 57, 61, 89, 97). For example, Plaintiff alleges that the County's failure to properly train or supervise Defendants Brooks and O'Flynn led to their negligent management of Defendants Harling and Krenwer, who permitted Plaintiff to be housed in the mainframe section of housing at MCJ. (*Id.* at * 61).

In that same vein, Plaintiff generally claims that Defendant County of Monroe has maintained a discriminatory classification policy for over fifteen years at MCJ. (*Id.* at ¶ 71). Specifically, Plaintiff alleges that this policy involves placing all minorities in SHU for "minor or miscellaneous rule violations" resulting in the minorities' denial of access to public information. (*Id.* at ¶ 72). Further, Plaintiff claims that the conditions in SHU are extreme, insofar as the "5 ft. long lights just 3 ft. above bed remain on 24 hrs. a day no matter how hot temperature is outside and these bright lights causes [sic] sleeplessness excruciating head-aches, eye pains,

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

anxiety, mental anguish and endless pain and suffering." (*Id.* at ¶ 73). Plaintiff claims that minorities are disproportionately exposed to these conditions. (*Id.*).

In addition, Plaintiff claims that the County of Monroe maintains a defective grievance program at MCJ, insofar as there is bias in the program that denied Plaintiff his right to "petition government for redress of grievances under administrative forum." (*Id.* at ¶¶ 91, 95–97).

Plaintiff claims that he has filed numerous grievances, complaints, and appeals with Defendants Harling and Krenzer in relation to the alleged mistreatment by Defendants Atkins, Scally, Newton, Willis, Guest, Amatore, and DeRosa, but states that Defendants Harling and Krenzer have continued to show "deliberate indifference" to Plaintiff's concerns. (*Id.* at ¶ 59).

Plaintiff claims that Defendants Lipari and Harling provided fraudulent responses to Plaintiff's grievance 09–33, and excluded four witness statements in connection with Plaintiff's grievance 09–49, contributing to Defendant County of Monroe's "faulty" grievance program. (*Id.* at ¶ 94).

Plaintiff alleges that Defendants Lipari, Guest, S. Peck, and Shellard did not appropriately conduct their investigations against supervisors in relation to Plaintiff's grievances 09–01, 09–32, 09–35, 09–46, 09–49, 09–81, 09–88, and 09–89, in violation of Plaintiff's rights under 7 NYCRR § 701.8(d)(1) and the First and Fourteenth Amendments to the U.S. Constitution. (*Id.* at ¶ 95).

Plaintiff generally claims that the investigation into his grievance 09–01 was biased and prejudiced, in violation of his right to seek redress of grievances. (*Id.* at ¶ 96).

Plaintiff alleges that he was denied due process of law at nine disciplinary hearings. (*Id.* at ¶ 97). Plaintiff claims that eight separate provisions of the NYCRR were violated by Defendants Messura, Preston, and Pratt at these hearings. (*Id.*). Plaintiff further claims that Defendants Krenzer and Harling were notified of these violations through Plaintiff's appeals, but that Defendants were deliberately indifferent to Plaintiff's complaints and failed to remedy the wrong. (*Id.* at ¶ 98).

### *DISCUSSION*

**[1]** **[2]** Rule 12(c) motions for judgment on the pleadings are evaluated by the same **standard** applicable to **motions** to **dismiss** pursuant to Fed.R.Civ.P. 12(b)(6). *Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir.2010). These motions must be made **\*716** after the close of the pleadings, "but early enough not to delay trial...." *Id.*

**[3]** " 'In considering a **motion** to **dismiss** for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.' " *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996) (quoting *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991)). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (internal quotations and citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Turkmen v. Ashcroft,* 589 F.3d 542, 546 (2d Cir.2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

"[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (alteration in original) (internal quotations and citations omitted). Thus, "at a bare minimum, the operative **standard** requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki,* 516 F.3d 50, 56 (2d Cir.2008) (alteration in original) (internal quotations and citations omitted).

**[4]** "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir.2004) (citations omitted).

**[5]** **[6]** **[7]** In addition, "[i]t is well-settled that *pro se* litigants generally are entitled to a liberal construction of

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 112 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir.2001) (internal quotations and citation omitted); *see also Hemphill v. New York*, 380 F.3d 680, 687 (2d Cir.2004) (alteration in original) (internal citation omitted) ("It is well-established that 'when [a] plaintiff proceeds *pro se* ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.' "). Moreover, "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir.1984). "Even in a *pro se* case, however, 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir.2010) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.2009)). A court may not "invent factual allegations [plaintiff] has not pled." *Id.*

### I. Plaintiff's Motion for Recusal

In a letter dated January 1, 2015, and filed January 13, 2015, Plaintiff asks that the undersigned recuse herself from this matter pursuant to 28 U.S.C. § 455(a). *717 (Dkt. 142). Plaintiff alleges in a conclusory fashion that the undersigned has racial and prejudicial biases due to her recent unfavorable decision following a bench trial in a separate matter, designated by case number 01–CV–6559, and that therefore recusal is appropriate. (*Id.*). Defendants have filed papers in response to the motion (Dkt. 144 at 2; Dkt. 145), and Plaintiff has filed reply papers (Dkt. 147). The recusal issue is a threshold issue that must be resolved before the Court may consider any substantive motion.

**[8]  [9]**  "Title 28 U.S.C. § 455(a) requires a judge to recuse [her]self 'in any proceeding in which [her] impartiality might reasonably be questioned.' " *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 150 (2d Cir.2014) (quoting 28 U.S.C. § 455(a)). "Recusal motions 'are committed to the sound discretion of the district court....' " *Abdelkan v. N.Y.C. Transit Auth.*, No. 93–CV–5600 (FB), 1998 WL 296372, at *1 (E.D.N.Y. June 4, 1998) (quoting *United States v. Conte*, 99 F.3d 60, 65 (2d Cir.1996)). "In cases where a judge's impartiality might reasonably be questioned, the issue for consideration is not whether the judge is in fact subjectively impartial, but whether the objective facts suggest impartiality." *Williams v. LaClair*, No. 9:10–CV–635(GLS/RFT), 2013 WL 1193766, at *3 (N.D.N.Y. Jan. 29, 2013)

(citing *Liteky v. United States*, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)).

**[10]**  Here, the fact that the Court reached an unfavorable decision in another, unrelated matter provides no basis for recusal. *Mills v. Poole*, Nos. 1:06–cv–00842–MAT–VEB, 1:11–cv–00440–MAT, 2014 WL 4829437, at *6 (W.D.N.Y. Sept. 29, 2014) ("[Plaintiff's] claims of bias and impartiality on the part of the undersigned ... are both conclusory and based entirely on his disagreement with the Court's decisions. This is an insufficient basis for recusal."). Put simply, there is no evidence justifying recusal nor is there any basis for recusal. Accordingly Plaintiff's motion for recusal is denied.

### II. County Defendants' Motion for Judgment on the Pleadings

#### A. Municipal Liability

Plaintiff sues the County of Monroe in its "official capacity as a municipal entity" (Dkt. 95 at ¶ 5), alleging that the County: (1) failed to "properly train or supervise Defendants Brooks and O'Flynn" (*id.* at ¶¶ 48, 57, 61, 89, 97); (2) maintained a discriminatory custom, policy, or practice of classifying inmates by race and placing those racial minorities in unsafe or unsanitary conditions (*id.* at ¶¶ 48, 60, 71, 73); and (3) maintained an unconstitutional grievance program (*id.* at ¶¶ 91, 95–97).

Defendants argue that Monroe County has not assumed liability for the acts of the County Sheriff or his deputies by local law, and therefore Monroe County cannot be liable to the extent Plaintiff alleges claims under New York State law. (Dkt. 119-2 at 4–5). Defendants also argue that Monroe County and Defendant Brooks cannot be held liable for Plaintiff's § 1983 claims because he has failed to plausibly allege that the County is responsible for developing or implementing the policies, procedures, and regulations related to the conduct of the Sheriff deputies named as Defendants. (Dkt. 119-2 at 5).

#### 1. State Law Causes of Action

**[11]**  Plaintiff claims on numerous occasions that Monroe County "failed to properly train or supervise" Defendants Brooks and/or O'Flynn. (*See e.g.* Dkt. 95 at ¶¶ 48, 57, 61, 89). To the extent Plaintiff is attempting to assert claims under New York State law, his claims fail. Monroe County has not assumed liability for the acts of the Sheriff or

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 113 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

his deputies by local law, and *718 therefore the County cannot be held liable to the extent Plaintiff is alleging a state law claim based upon a *respondeat superior* theory. *See D'Amico v. Corr. Med. Care, Inc.*, 120 A.D.3d 956, 959, 991 N.Y.S.2d 687 (4th Dep't 2014), *Smeltz v. Melont*, 306 A.D.2d 872, 873, 762 N.Y.S.2d 467 (4th Dep't 2003), *lv. denied* 100 N.Y.2d 516, 769 N.Y.S.2d 203, 801 N.E.2d 424 (2003). Furthermore, as discussed further below, Plaintiff fails to state any plausible claim as to Defendant Brooks' or O'Flynn's personal involvement and liability, thus negating any corresponding responsibility on the part of the County for their conduct.

### 2. Section 1983 Claims

[12]  [13]  [14]  "[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir.2012), *cert. denied*, — U.S. —, 134 S.Ct. 125, 187 L.Ed.2d 255 (2013). That is, "to assert a claim of municipal liability under § 1983, a plaintiff must allege the existence of a policy or custom that caused injury, and a direct causal connection between that policy or custom and the deprivation of a constitutional right." *Blyden v. N.Y.P.D.*, No. 05 CV 4740 SJF LB, 2005 WL 3388609, at *2 (E.D.N.Y. Dec. 12, 2005). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones*, 691 F.3d at 80.

[15]  [16]  [17]  "To prevail on a Section 1983 claim against a municipal entity, a plaintiff must show: '(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury.' " *Reid v. Nassau Cnty. Sheriff's Dep't*, No. 13–CV–1192 (SJF)(SIL), 2014 WL 4185195, at *10 (E.D.N.Y. Aug. 20, 2014) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir.2008)). "A municipal policy may be pronounced or tacit and reflected in either action or inaction." *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir.2011). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011).

[18]  Plaintiff has, in a conclusory fashion, alleged that Monroe County has a discriminatory policy of housing minorities together at MCJ, which leads to "rampant" gang activity. (Dkt. 95 at ¶¶ 25–26, 48, 57, 61, 72–73, 94–96). However, Plaintiff fails to allege with any factual specifics the existence of a sanctioned County policy that states that minority inmates should be placed in certain housing. Plaintiff would be required to allege that the practices were "so persistent and widespread as to practically have the force of law." *Connick*, 131 S.Ct. at 1359. This Plaintiff has failed to do.

[19]  [20]  "The mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993), *overruled on other grounds, Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Here, Plaintiff offers no allegations of fact tending to support even an inference of an official policy. "Where a plaintiff can show only misbehaving officers, but has not [alleged] an official policy that led to the constitutional or statutory violation, his claim must fail." *719  Adlovic v. Cnty. of Westchester*, No. 08 Civ. 10971(PGG), 2011 WL 2893101, at *8 (S.D.N.Y. July 14, 2011) (quotations omitted).

Plaintiff also includes numerous general allegations in his complaint that the MCJ maintains an unconstitutional grievance program. (Dkt. 95 at ¶¶ 91, 94–98).

[21]  "[T]he law is clear that plaintiff has no constitutional right to have his grievances processed at all, or if processed, to have the procedure done properly." *Hill v. Napoli*, No. 6:09–CV–6546–MAT, 2014 WL 1322476, at *14 (W.D.N.Y. Mar. 31, 2014) (internal quotation and citation omitted); *see also Green v. Herbert*, 677 F.Supp.2d 633, 639 (W.D.N.Y.2010) (inmate's claims that officer assigned to investigate his grievance conducted a biased, unfair investigation "fails because an inmate has no constitutional right to have his grievances processed or investigated in any particular manner.") (internal quotations and citation omitted).

[22]  Plaintiff contends that Monroe County maintains a grievance program that is biased and prejudicial. (Dkt. 95 at ¶¶ 91, 95–97). "Claims of hearing officer bias are common in § 1983 cases by inmate plaintiffs, and where they are based on purely conclusory allegations, they are routinely dismissed." *Washington v. Afify*, 968 F.Supp.2d 532, 541–42

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

(W.D.N.Y.2013). "An inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact." *Booker v. Maly,* No. 9:12–CV–246 NAM/ATB, 2014 WL 1289579, at \*11 (N.D.N.Y. Mar. 31, 2014). Plaintiff has failed to articulate any facts to support his otherwise conclusory statements that Defendant hearing officers showed any bias or prejudice toward Plaintiff or any other minority inmate. Plaintiff has also failed to plead that there is any official policy or custom supporting a biased or prejudicial grievance program.

In sum, Plaintiff's allegations against the County under § 1983 must be dismissed because he has failed to allege a plausible claim that the County had a custom, policy, or usage that led to the deprivation of Plaintiff's constitutional rights. Plaintiff's claims are conclusory in nature, and are therefore insufficient to withstand scrutiny under Fed.R.Civ.P. 12(c).

**B. Sheriff O'Flynn Liability**

Plaintiff sues Monroe County Sheriff Patrick O'Flynn in his individual capacity, alleging that Defendant O'Flynn engaged in "gross negligent management" of various officers at MCJ and supported the "unconscionable tyranny" of placing all minorities in SHU. (Dkt. 1 at ¶¶ 7, 48, 57, 61, 63, 72–73, 78, 94–96). Further, Plaintiff claims that Defendant O'Flynn received numerous complaints and appeals from Plaintiff concerning the alleged racial discrimination and unlawful conduct, and that Defendant O'Flynn "acquiesced in the application of this discrimination against the Plaintiff." (Dkt. 1 at ¶¶ 24, 63, 78). Defendants argue that Plaintiff's claims against Defendant O'Flynn fail because Plaintiff has not established personal involvement on behalf of the Sheriff. (Dkt. 119–2 at 6–7). The Court agrees.

**1. New York State Claims**

[23] It is well settled that "the Sheriff cannot be held personally liable on the basis of respondeat superior for the alleged negligent acts of his deputies." *Schndek v. Cnty. of Monroe,* 202 A.D.2d 960, 961, 609 N.Y.S.2d 502 (4th Dep't 1994). As a result, Defendant O'Flynn may not be found liable under a *respondeat superior* theory for any alleged negligent acts performed by the County Defendants.

To the extent that Plaintiff alleges that Defendant O'Flynn is responsible for the \*720 actions of his deputies under New York law, these claims are dismissed.

**2. Section 1983 Claims**

[24] [25] [26] "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citations omitted). As explained by the Second Circuit Court of Appeals:

> [w]ithin the Second Circuit, it is generally accepted that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he: (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; (4) was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). "Mere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (quotation omitted).

Here, Plaintiff argues that Defendant O'Flynn was personally involved in the alleged constitutional deprivations because he "is the chief policy maker for MCJ which created conditions which unconstitutional ratifications occurred." (Dkt. 133–3 at 16). However, Plaintiff has failed to allege, beyond conclusory allegations, that there was a policy that created unconstitutional conditions at MCJ.

[27] Further, although Plaintiff alleges that he sent Defendant O'Flynn numerous notices of his concerns about alleged constitutional deprivations, "the receipt of letters or grievances, by itself, does not amount to personal involvement." *Mateo v. Fischer,* 682 F.Supp.2d 423, 430 (S.D.N.Y.2010) (citing *Sealey v. Giltner,* 116 F.3d 47, 51

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 115 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

(2d Cir.1997)). *See also Ramsey v. Goord,* No. 05–CV–47A, 2005 WL 2000144, at \*8, 2005 U.S. Dist. LEXIS 42953, at \*8 (W.D.N.Y.2005) ("the fact that a prison official in the prison 'chain of command' affirms the denial of an inmate's grievance is not enough to establish the requisite personal involvement of that official"). Plaintiff has not alleged that Defendant O'Flynn responded to any of his grievances or appeals, and his conclusory allegations that Defendant O'Flynn "acquiesced" in his poor treatment on the basis of this failure to respond does not state a claim against a supervisory defendant.

**[28]** In addition, Plaintiff claims that Defendant O'Flynn engaged in "gross negligent management" of various officers. (Dkt. 95 at ¶¶ 48, 57, 61, 94–96). For example, Plaintiff alleges that Defendant O'Flynn negligently managed Defendants Lipari and Harling, who allegedly filed a "fraudulent response" to Plaintiff's grievances. (*Id.* at ¶ 94). These allegations of negligent management on the part of Defendant O'Flynn lack any factual support. Moreover, as discussed in further detail later in this discussion, Plaintiff has failed to sufficiently allege that his rights were violated by the filing of a fraudulent response. Indeed, each of Plaintiff's allegations of negligent management is attached to an alleged violation that he has failed to sufficiently allege. Absent an underlying constitutional violation, there can be no supervisory liability, or negligent management. *See Murray v. Potaki,* No. 9:03–CV–1263 (LEK/RFT), 2007 WL 956941, at \*7 (N.D.N.Y.Mar. 29, 2007) ("Plaintiff has failed to establish that Goord was grossly \*721 negligent in his supervision of unknown subordinates, especially since no constitutional violation arose from this incident....").

As a result, Plaintiff's claims against Defendant O'Flynn are dismissed.

**C. Defendant Brooks**

**[29]** Plaintiff sues Monroe County Executive Maggie Brooks in her individual capacity, alleging that Defendant Brooks engaged in "gross negligent management" of various officers at MCJ and supported the "unconscionable tyranny" of placing all minorities in SHU. (Dkt. 1 at ¶¶ 6, 25–26, 48, 57, 61, 72–73, 94–96). For the same reasons that Plaintiff has failed to state a claim against Defendant O'Flynn, he has failed to state a claim against Defendant Brooks. Defendant Brooks' position as chief executive of Monroe County does not suffice to state a claim against her. Plaintiff fails to offer any legal support for his conclusory allegations against Defendant Brooks, and he has not sufficiently alleged that constitutional

violations occurred for any of the underlying events that he alleges Defendant Brooks negligently managed. Accordingly, Plaintiff's claims against Defendant Brooks are dismissed.

**D. Jail Supervisors and Administrators**

Defendants argue that the claims against the MCJ supervisors and administrators must be dismissed because § 1983 liability may not be imposed merely because an individual holds a supervisory position of authority. (Dkt. 119–2 at 7–8 (citing *Colon,* 58 F.3d at 873)). Although this is an accurate statement of the law, Defendants fail to demonstrate which claims against which Defendants fail to demonstrate personal involvement. Rather, Defendants generally argue that "the actions against all Jail Supervisors and Administrators should be dismissed for lack of personal involvement." (Dkt. 119–2 at 8). To the extent that any supervisory Defendants are dismissed from this action based on lack of personal involvement, these Defendants are dismissed in the more detailed discussion below. However, the Court disagrees with Defendants that, as a matter of law, all "jail supervisors and administrators" must be dismissed. Rather, as discussed further below, Plaintiff has sufficiently alleged personal involvement by some of these Defendants.

**E. Prisoner Litigation Reform Act ("PLRA")**

**[30]** Defendants contend that Plaintiff's claims are barred by the Prisoner Litigation Reform Act ("PLRA"). (Dkt. 119–2 at 12–13). Specifically, Defendants argue that Plaintiff has failed to exhaust his administrative remedies or show that he was injured with respect to the matters at issue in this litigation. (*Id.* at 12). Plaintiff argues that the PLRA does not apply to him as he was a pretrial detainee at the time of the alleged violations. (Dkt. 133–3 at 24). Plaintiff's argument is without merit, because "the PLRA's strict exhaustion requirement does indeed apply in actions brought by pretrial detainees." *Baez v. Parks,* No. 02 CIV.5821 PKC DF, 2004 WL 1052779, at \*5 (S.D.N.Y. May 11, 2004) (collecting cases); *see also Little v. Mun. Corp.,* 51 F.Supp.3d 473, 502–03, No. 12–CV–5851 (KMK), 2014 WL 5011091, at \*19 (S.D.N.Y. Sept. 30, 2014) (applying PLRA exhaustion requirements to pretrial detainees); *Franklin v. Conty,* No. 13 CV 3873(VB), 2014 WL 2217003, at \*2 (S.D.N.Y. May 27, 2014) (same).

**[31]** **[32]** The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

such administrative remedies as are available are exhausted."
*722 42 U.S.C. § 1997e(a). "This administrative exhaustion provision requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' " *Torres v. Carry,* 672 F.Supp.2d 338, 342–43 (S.D.N.Y.2009) (quoting *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). "This provision affords 'prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being ha[u]led into court[,]' and also creates an administrative record that facilitates judicial review." *Torres v. Anderson,* 674 F.Supp.2d 394, 397 (E.D.N.Y.2009) (quoting *Jones v. Bock,* 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)).

[33] However, "[t]he only circumstance in which it is appropriate to dismiss a complaint on nonexhaustion grounds is when it is apparent from the face of the complaint that the plaintiff failed to exhaust his administrative remedies." *Randle v. Alexander,* 960 F.Supp.2d 457, 483 (S.D.N.Y.2013); *see also Parris v. N.Y.S. Dep't Corr. Servs.,* 947 F.Supp.2d 354, 361 (S.D.N.Y.2013) (denying **motion** to **dismiss** on grounds of exhaustion where it was not evident from the face of the complaint that plaintiff had or had not complied with the inmate grievance program); *Johnson v. Westchester Cnty. Dep't of Corr. Med. Dep't,* No. 10 Civ. 6309, 2011 WL 2946168, at *2 (S.D.N.Y. July 19, 2011) (denying a **motion** to **dismiss** when the complaint was ambiguous about exhaustion). "Most circuits that have considered the issue, ... including this circuit, have held that nonexhaustion is an affirmative defense, and that therefore defendants bear the burden of proof and **prisoner** plaintiffs need not plead exhaustion with particularity." *McCoy v. Goord,* 255 F.Supp.2d 233, 248 (S.D.N.Y.2003).

[34] Defendants have not met their burden to demonstrate that Plaintiff failed to exhaust his administrative remedies. Defendants argue that the documents attached to Plaintiff's complaint do not show that a final determination was made by the Citizen Policy and Complaint Review Council, and therefore Plaintiff has not exhausted his administrative remedies. (Dkt. 119–2 at 12). However, it is Defendants' burden to demonstrate nonexhaustion, not Plaintiff's burden to plead exhaustion with particularity. It is not apparent from the face of Plaintiff's complaint that he has failed to exhaust his administrative remedies. Although Plaintiff makes some allegations that he filed grievances and appeals as to his underlying concerns, he does not discuss his pursuit

of administrative remedies as to each and every claim. As a result, it would be inappropriate at this stage in the litigation to dismiss Plaintiff's claims for failure to exhaust his administrative remedies under the PLRA.

**F. Res Judicata / Collateral Estoppel**

Plaintiff has brought previous litigation concerning issues that overlap with the allegations he makes in his current complaint. In *Barnes v. Monroe County Sheriff,* 89 A.D.3d 1471, 933 N.Y.S.2d 630 (4th Dep't 2011), the court reviewed Plaintiff's Article 78 proceeding seeking review of the administrative hearings on November 27, 2009, and March 9, 2009, which resulted in Plaintiff's placement in SHU. The Fourth Department dismissed Plaintiff's petition. *Id.* In *Barnes v. Harling,* 96 A.D.3d 1415, 945 N.Y.S.2d 901 (4th Dep't 2012), *lv. denied,* 19 N.Y.3d 1011, 951 N.Y.S.2d 706, 976 N.E.2d 233 (2012), Plaintiff brought an Article 78 proceeding seeking review of his placement in SHU as a result of his hearings on March 11, 2009, March 25, 2009, April 16, 2009, and disciplinary orders from March 28, 2009, April 3, 2009, April 27, 2009, and May 21, 2009. *723 The Fourth Department found that Plaintiff was "not entitled to any of the relief he seeks," and the Court of Appeals denied Plaintiff's motion to appeal this determination. *Id.*

[35] [36] [37] Defendants request that this Court take judicial notice of the determinations made in these state court matters and find that Plaintiff is precluded from relitigating those issues under the doctrines of *res judicata* and collateral estoppel. " 'A court may take judicial notice of matters of public record, including ... decisions in prior state court.' " *Pacherille v. Burns,* 30 F.Supp.3d 159, 161 (N.D.N.Y.2014) (quoting *Johnson v. Pugh,* No. 11–CV–385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013)). The Court takes judicial notice of these decisions from the Fourth Department. *See Stewart v. Transp. Workers Union of Greater N.Y., Local 100,* 561 F.Supp.2d 429, 435–36 (S.D.N.Y.2008) (stating that a district court may take judicial notice of matters of public record in resolving a Rule 12(c) motion). "In the context of a Rule 12(c) motion, however, the Court should generally take judicial notice 'to determine what statements [the documents] contain[ ] ... not for the truth of the matters asserted.' " *Piazza v. Fla. Union Free Sch. Dist.,* 777 F.Supp.2d 669, 678 (S.D.N.Y.2011) (quoting *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir.1991)) (alterations in original).

[38] [39] [40] Here, claim preclusion, or *res judicata,* does not bar Plaintiff's civil rights lawsuit based upon his prior Article 78 proceedings. "As the Second Circuit explained ...

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 117 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

claim preclusion, known as res judicata, requires that a final judgment on the merits of an action be given preclusive effect, barring parties as well as those in privity with them from relitigating in a subsequent action a claim which was or could have been raised in the prior suit." *Johnson v. McClure*, No. 9:06-CV-0431, 2009 WL 2356147, at *7 (N.D.N.Y. July 28, 2009) (citing *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286–87 (2d Cir.2002)). In this case, Plaintiff's civil rights claims could not have been raised in the Article 78 proceedings. "[A] New York plaintiff is not barred from seeking damages, in federal court, on civil rights claims by reason of a prior judgment on the same underlying facts in an Article 78 proceeding and therefore that action cannot give the damages relief demanded in a civil rights suit such as this one." *Davis v. Halpern*, 813 F.2d 37, 39 (2d Cir.1987); *see also Leo v. N.Y.C. Dep't of Educ.*, No. 13 CV 2271(RJD)(JMA), 2014 WL 6460704, at *4 (E.D.N.Y. Nov. 17, 2014) (*res judicata* doctrine did not apply to plaintiff's § 1983 claims because plaintiff could not have received damages for violations of his civil rights in his prior Article 78 proceeding).

[41]   [42]   However, a portion of Plaintiff's claims is barred under the doctrine of issue preclusion, also known as collateral estoppel. "[U]nder New York law, the doctrine of collateral estoppel 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same.' " *Shell v. Brun*, 362 F.Supp.2d 398, 400 (W.D.N.Y.2005) (quoting *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984)). "It is well-settled that collateral estoppel may bar a plaintiff from bringing an action in federal court pursuant to 42 U.S.C. § 1983." *Id.*; *see also Vann v. Fischer*, No. 11 Civ.1958(KPF), 2014 WL 4188077, at *25 (S.D.N.Y. Aug. 25, 2014) (plaintiff barred in § 1983 action from relitigating issues concerning bias and due process violations during prison disciplinary proceeding that were previously raised during Article 78 proceeding).

*724   [43]   There are two requirements for the application of collateral estoppel to an issue: "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *McKithen v. Brown*, 481 F.3d 89, 105 (2d Cir.2007), *cert. denied* 552 U.S. 1179, 128 S.Ct. 1218, 170 L.Ed.2d 59 (2008) (quotation omitted).

[44]   "To determine whether the first action provided a full and fair opportunity to litigate requires consideration of: the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation." *Shell v. Brun*, 362 F.Supp.2d 398, 400 (W.D.N.Y.2005).

[45]   Here, the state court has already examined Plaintiff's challenges to his November 27, 2009, March 9, 2009, March 11, 2009, March 25, 2009, and April 16, 2009 hearings, and his disciplinary orders from March 28, 2009, April 3, 2009, April 27, 2009, and May 21, 2009, which resulted in Plaintiff's placement in SHU. It appears that Plaintiff was given a full opportunity to litigate these issues in his Article 78 proceedings. As a result, Plaintiff's claims related to these hearings and assignments to SHU must be dismissed as barred by the doctrine of collateral estoppel.

**G. Excessive Use of Force**

[46]   Plaintiff asserts § 1983 claims of excessive use of force based upon alleged incidents on August 7, 2008, and August 12, 2009. "To state a § 1983 claim, a plaintiff must allege that defendant, while acting 'under color of state law,' deprived Plaintiff of his constitutional or statutory rights." *Cunningham v. Rodriguez*, No. 01 Civ. 1123(DC), 2002 WL 31654960, at *4 (S.D.N.Y. Nov. 22, 2002) (quoting 42 U.S.C. § 1983). "A pretrial detainee who is subjected to excessive force may bring a claim under § 1983." *Id*

[47]   [48]   "Because the Eighth Amendment's protection from cruel and unusual punishment does not apply until after conviction and sentence, the right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." *Adlovic*, 2011 WL 2893101, at *4 (quotations omitted). "The Second Circuit applies the same **standard** to excessive force claims brought under the Fourteenth Amendment as under the Eighth Amendment." *Virella v. Pozzi*, No. 05 Civ. 10460(RWS), 2006 WL 2707394, at *3 (S.D.N.Y. Sept. 20, 2006) (citing *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir.1999)).

[49]   "[T]he analysis provided by the Supreme Court in *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), that requires a sentenced **prisoner** to satisfy both an objective and subjective prong to establish an

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 118 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Eighth Amendment violation also applies to excessive force claims brought by a pretrial detainee." *Perkins v. Brown*, 285 F.Supp.2d 279, 283 (E.D.N.Y.2003).

[50]  [51]  [52]  "The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of 'contemporary **standards** of decency.' " *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir.2009) (quoting *Hudson*, 503 U.S. at 8, 112 S.Ct. 995). "Nonetheless, the Eighth Amendment's prohibition against cruel and unusual force, provided that the use of force is not of a sort repugnant to the conscience of mankind.' " *Id.* at 269 (quoting **\*725** *Hudson*, 503 U.S. at 8, 112 S.Ct. 995). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a **prisoner's** constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.1973).

[53]  [54]  "The subjective requirement is satisfied if the defendant acted wantonly with a sufficiently culpable state of mind." *Perkins*, 285 F.Supp.2d at 283. "Where a state official is accused of using excessive physical force against a pretrial detainee, the inquiry turns on 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Id.* (quoting *United States v. Walsh*, 194 F.3d 37, 48–49 (2d Cir.1999)).

### 1. August 7, 2008

[55]  Plaintiff alleges that Defendant Newton used excessive force on Plaintiff on August 7, 2008, when he responded to the fight between Plaintiff and inmates Eades and Members, and jumped on Plaintiff's back, striking Plaintiff in the face and knocking out a tooth. (Dkt. 95 at ¶ 20). Defendants argue that Plaintiff fails to sufficiently allege that Defendants had a culpable state of mind insofar as "any alleged force used by defendant was made in a good faith effort by defendants to maintain or restore discipline." (Dkt. 119–2 at 15). Defendants claim that the force was used because Plaintiff was fighting with other inmates and resisted the placement of handcuffs. (*Id.*).

Objectively, Plaintiff has sufficiently alleged that Defendant Newton used force above a *de minimis* level. Plaintiff claims that Defendant Newton jumped on his back and knocked out a tooth. At this early stage in the litigation, this force and subsequent injury satisfies the first prong of an excessive use of force claim. *See Tafari v. McCarthy*, 714 F.Supp.2d 317,

362 (N.D.N.Y.2010) (finding incident where officer pulled plaintiff's face into steel door, breaking his tooth, may support excessive use of force claim).

Subjectively, Plaintiff has sufficiently alleged that Defendant Newton was not merely using force to maintain or restore discipline. Taking Plaintiff's claims as true, Defendant Newton "premeditated" the whole incident and intended for Plaintiff to be attacked by two other inmates.

As a result, Plaintiff's claim of excessive use of force as against Defendant Newton relating to the August 7, 2008, incident may proceed to discovery.

### 2. August 12, 2009

[56]  Plaintiff claims that Defendants Daly, Shellard, Alberti, Galen, and Lipari used excessive force on Plaintiff on August 12, 2009. (Dkt. 95 at ¶¶ 33–39). Specifically, Plaintiff alleges that Defendant Shellard pushed Plaintiff face-first into a glass window; Defendants Shellard, Daly, and Alberti pushed Plaintiff to the floor, kicked, stomped on, and punched Plaintiff; Defendants Alberti and Daly used Plaintiff's handcuffs to inflict pain; and that Defendants Alberti and Daly "slammed Plaintiff's head." (Dkt. 95 at ¶¶ 35-39). Defendants Galen, Daly, and Alberti allegedly "dragged" Plaintiff back to his cell. (*Id.* at ¶ 39). According to Plaintiff, as a result of this altercation, he urinated and defecated on himself, and experienced dizziness and a concussion. (*Id.*). Defendants argue that Plaintiff has failed to state a claim because he fails to allege "how he was harmed on that date and/or that the force taken was unwarranted." (Dkt. 119–2 at 16).

Objectively, Plaintiff has sufficiently alleged an excessive use of force. Taking Plaintiff's allegations as true, Plaintiff was reaching for his legal papers when Defendant Shellard pushed him into a glass window and then took him to the floor, where Defendants Shellard, Daly, and Alberti proceeded to kick, stomp on, and punch **\*726** Plaintiff. (Dkt. 95 at ¶¶ 35–37). When Plaintiff attempted to steady himself by grabbing a gate, Defendants Alberti and Daly "slammed" Plaintiff's head, causing Plaintiff to urinate and defecate on himself, and experience dizziness and a concussion. (*Id.* at ¶¶ 38–39). Plaintiff alleges Defendants Galen, Daly, and Alberti dragged him back to his cell. (*Id.* at ¶ 39). Contrary to Defendants' assertions, Plaintiff has sufficiently alleged how he was harmed by Defendants' actions on August 12, 2009.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 119 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Plaintiff has also sufficiently alleged the subjective component of his claim. Plaintiff alleges that the force used on him was in response to his reaching for legal papers and attempting to steady himself. Taken as true, the force could not have been used in a good faith effort to maintain or restore discipline, as Plaintiff had not violated any directives.

Accordingly, Plaintiff's August 12, 2009, excessive use of force claim as against Defendants Shellard, Daly, Galen, and Alberti may proceed to discovery. To the extent this claim is asserted against Defendant Lipari, it is discussed below under the failure to protect analysis.

**II. Conspiracy**

[57]   [58]   [59]   To state a conspiracy claim in violation of constitutional rights under § 1983, a plaintiff must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999). The intracorporate conspiracy doctrine provides that "if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own ... officers[ ] and employees, each acting within the scope of his employment[,] there can be no actionable conspiracy." *O'Diah v. Neth*, No. 6:10–CV–6592(MAT), 2013 WL 6440610, at *4 (W.D.N.Y. Dec. 9, 2013) (internal quotation and citation omitted) (alterations in original). "[A]n exception to the doctrine applies when individual employees are pursuing personal interests wholly separate and apart from the entity...." *Anemone v. Metro. Transp. Auth.*, 419 F.Supp.2d 602, 604 (S.D.N.Y.2006).

[60]   [61]   [62]   "While exact specifics are not required, 'the pleadings must present facts tending to show agreement and concerted action.' " *Graham v. Peters*, No. 13–CV–705JTC, 2013 WL 5924727, at *2 (W.D.N.Y. Oct. 31, 2013) (quoting *Anilao v. Spota*, 774 F.Supp.2d 457, 512–13 (E.D.N.Y.2011)). Plaintiff is required to "make an effort to provide some details of time and place and the alleged effects of the conspiracy ... [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl*, 33 F.Supp.2d 171, 177 (E.D.N.Y.1999) (citations omitted). "Bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action are insufficient." *Booker*, 2014 WL 1289579, at *25.

**1. August 7, 2008**

[63]   Plaintiff claims that Defendants Amico and Danehy "collaborated" with Defendant Newton to permit the attack on Plaintiff by inmates Eades and Members on August 6, 2008. (Dkt. 95 at ¶¶ 30–32). Defendants contend that Plaintiff has only vaguely asserted conclusory statements of conspiracy, and therefore his conspiracy claim must be dismissed. (Dkt. 119–2 at 15).

After carefully reviewing Plaintiff's complaint and drawing all reasonable inferences in his favor, the Court concludes *727 that while the facts are inartfully drafted, Plaintiff has plausibly alleged that Defendants Amico or Danehy "collaborated" with Defendant Newton in his premeditated plan to permit an inmate attack on Plaintiff. Plaintiff has alleged that Defendants engaged in an "overt act" in furtherance of the conspiracy through the delay in calling a "Code # 1." Accordingly, giving Plaintiff the benefit of the doubt, his conspiracy claim as to Defendants Amico, Danehy, and Newton may proceed to discovery.

**2. February 26, 2009**

Plaintiff claims that Defendants Waud, T. Peck, Mooney, Dimartino, Robertson, and Fitzsimmons "collaborated reports" to delete any references to the theft of Plaintiff's commissary. (Dkt. 95 at ¶ 47). Plaintiff contends that Defendants Krenzer, Harling, Jolly, Dimartino, Mooney, T. Peck, Waud, Fitzsimmons, and Robinson altered the videotape evidence of the commissary theft by deleting the time period from 8:55 p.m. through 9:30 p.m. from the tape. (*Id.* at ¶ 101). Plaintiff suggests that Defendants Harling, Krenzer, Thomas, and Jolly encouraged the falsification of the records. (*Id.* at ¶ 48).

Plaintiff's claims are conclusory in nature. "Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir.2002). "While exact specifics are not required, 'the pleadings must present facts tending to show agreement and concerted action.' " *Barnes v. Prack*, No. 11–CV–857 (TJM/CFH), 2012 WL.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 120 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

7761905, at *9 (N.D.N.Y. Sept. 7, 2012) (quoting *Amiao,* 774 F.Supp.2d at 512–13). *See, e.g., Johnson v. Barney,* No. 04 Civ. 10204, 2006 WL 3714442, at *2 (S.D.N.Y. Dec. 13, 2006) (dismissing for failure to state a claim **prisoner's** conclusory allegation that defendant fabricated an investigative report as part of a conspiracy to cover up the wrongful acts of other correction officers), *aff'd,* 360 Fed.Appx. 199 (2d Cir.2010); *Barnes,* 2012 WL 7761905, at *10 (dismissing claim of conspiracy to manipulate videotape evidence where plaintiff "fail[ed] to provide any plausible information which would lend credence to his claims of an explicit or implicit agreement between any or all of [the] defendants").

[64]   [65]   [66]   [67]   Further, Plaintiff's claims do not allege a constitutional injury as required for a conspiracy claim. "In order to bring a valid § 1983 claim, a plaintiff must establish that [he] was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Graham v. City of Albany,* No. 1:08–CV–892 (RFT), 2009 WL 4263510, at *9 (N.D.N.Y. Nov. 23, 2009) (quotations omitted). Even if Defendants had conspired to cover up the theft of Plaintiff's personal property, Plaintiff has not alleged a constitutional injury. As the District Court stated in *Collins v. Goord,* 438 F.Supp.2d 399 (S.D.N.Y.2006):

> Even an intentional deprivation of an inmate's property that is random and unauthorized does not give rise to a due process claim so long as adequate state post-deprivation remedies are available. New York law provides such a remedy in the form of an action before the New York Court of Claims.

*Id.* at 418–19 (dismissing inmate Plaintiff's theft of personal property claim) (internal quotations and citations omitted). In other words, because Plaintiff had state remedies available to him for the alleged deprivation, there can be no underlying constitutional injury. "Absent an **\*728** underlying constitutional injury, a civil rights conspiracy claim cannot survive." *Johnson v. Rock,* No. 9:08–CV–1013 (GLS/RFT), 2010 WL 3911389, at *7 (N.D.N.Y. Mar. 30, 2010), *adopted by Johnson v. Rock,* 2010 WL 3910153 (N.D.N.Y. Sept. 30, 2010).

Therefore, Plaintiff's claims of conspiracy related to the February 26, 2009 incident are dismissed.

**I. Failure to Protect**

[68]   "As opposed to deliberate indifference claims brought by post-conviction **prisoners**—which arise under the Eighth Amendment—claims for deliberate indifference brought by state pretrial detainees arise under the Fourteenth Amendment." *Blake v. Kelly,* No. 12 Civ. 7245(ER), 2014 WL 4230889, at *4 (S.D.N.Y. Aug. 26, 2014). The Second Circuit has held that "[c]laims for deliberate indifference ... should be analyzed under the same **standard** irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Caiozzo v. Koreman,* 581 F.3d 63, 69–72 (2d Cir.2009).

[69]   [70]   "The Eighth Amendment requires that prison officials take 'reasonable measure to guarantee the safety of inmates in their custody.' " *Blake,* 2014 WL 4230889, at *4 (quoting *Hayes v. New York City Dep't of Corrs.,* 84 F.3d 614, 620 (2d Cir.1996)). "Accordingly, a prison official's failure to protect a **prisoner** from harm may form the basis of a § 1983 claim." *Id.* (citing *Farmer v. Brennan,* 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

[71]   [72]   "[P]rison officials have a duty to protect **prisoners** from violence at the hands of other **prisoners**." *Farmer,* 511 U.S. at 833, 114 S.Ct. 1970. "To state a failure-to-protect claim under § 1983, the plaintiff must establish two conditions: 'First, the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. Second, the plaintiff must demonstrate that the defendant prison officials possessed [the] sufficient culpable intent' of deliberate indifference." *Randolph v. Griffin,* No. 12–CV–745S, 2014 WL 3548967, at *6 (W.D.N.Y. July 17, 2014) (quoting *Hayes,* 84 F.3d at 620).

[73]   [74]   In addition, "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). "In order to establish liability under this theory, a plaintiff must prove that the defendant in question (1) possessed actual knowledge of the use by another correction officer of excessive force; (2) had a realistic opportunity to intervene and prevent the harm occurring; and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force." *Finley v. Perry,* No. 9:06–CV–1524(FJS/ATB), 2010 WL 6427496, at *5 (N.D.N.Y. July 13, 2010).

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 121 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

"[T]o recover damages against supervisory officials for the acts of their subordinates, a plaintiff must show that the defendant's personal involvement caused the constitutional deprivation." *Anderson*, 17 F.3d at 557.

### 1. August 7, 2008

[75] Plaintiff's claims that Defendants Amico, Danchy, and Newton collaborated to delay a Code 1 response to allow Plaintiff to be attacked by other inmates may be liberally construed as a failure to protect claim. (Dkt. 95 at ¶¶ 30–32). Defendants argue that Plaintiff has "failed to plead any action which supports a deliberate indifference to protect him from other inmates." (Dkt. 119–2 at 17). The Court disagrees.

*729 Plaintiff alleges that Defendants Newton, Amico, and Danchy were aware of the impending attack by inmates Eades and Members and permitted this attack to occur. (Dkt. 95 at ¶ 31). Plaintiff further claims that Defendant Newton planned the attack. (*Id.*). If these facts are taken as true, Plaintiff has sufficiently alleged that Defendants Amico, Danchy, and Newton failed to intervene to protect Plaintiff from an inmate attack and/or attack by Defendant Newton. To the extent that Plaintiff alleges a failure to protect claim in relation to the August 6, 2008 incident, that claim may proceed to discovery.

### 2. November 18, 2008

[76] On November 7, 2008, Defendant Kreuzer placed Plaintiff in second floor housing, and on November 18, 2008, Plaintiff was involved in a fight with two other inmates. (Dkt. 95 at ¶¶ 40–41).

As an initial matter, Plaintiff has failed to plead that Defendant Kreuzer had any knowledge that placing Plaintiff in second floor housing posed a substantial risk of harm to Plaintiff. Further, Plaintiff has not alleged, beyond conclusory allegations, that Defendant Kreuzer was deliberately indifferent to the harm that allegedly occurred as a result of the fight with two other inmates. As a result, Plaintiff's failure to protect claim related to the November 18, 2008, incident must be dismissed.

### 3. January 19, 2009

[77] Plaintiff alleges that Defendants failed to protect him when they placed him in mainframe housing on December 26, 2009, despite his protests, and he was subsequently attacked by three inmates on January 19, 2009. (Dkt. 95 at ¶¶ 66, 43–44). Plaintiff claims that he informed Defendant Tripoli on December 26, 2008, that he did not want to return to mainframe housing, and that Defendant Tripoli essentially responded that he did not care if Plaintiff was assaulted by other inmates in mainframe housing. (*Id.* at ¶ 66). On January 19, 2009, Plaintiff was attacked by three other inmates. (*Id.* at ¶ 43). Further, Plaintiff alleges that Defendants Wand and Willis "bragged" about Plaintiff getting beaten up on this occasion. (*Id.* at * 44).

Here, Plaintiff has sufficiently alleged, for the purposes of this motion, that there was a substantial risk of harm. Plaintiff claims that Defendants were aware that gang activity was "rampant" in the mainframe housing, and Plaintiff was previously attacked in mainframe housing on at least one occasion. (*Id.* at ¶¶ 40–41, 61). Further, Plaintiff explicitly told Defendant Tripoli that he was concerned about being placed in mainframe housing. (*Id.* at ¶ 66).

Plaintiff has also sufficiently alleged deliberate indifference to this substantial risk of harm. For example, Plaintiff alleges that Defendant Tripoli stated that he did not care if Plaintiff was assaulted in the mainframe housing. (*Id.* at ¶¶ 43, 66).

To the extent that Plaintiff alleges a failure to protect claim in relation to the January 19, 2009, attack by three other inmates, Plaintiff's claim may proceed to discovery.

### 4. May 2, 2009

[78] On May 2, 2009, Plaintiff claims that Defendant Willis not only failed to protect Plaintiff from having urine, feces, and dirty mop water thrown into Plaintiff's cell by inmate Clark, but that Defendant Willis also let inmate Clark out of his cell and directed him to throw these materials into Plaintiff's cell. (Dkt. 95 at ¶¶ 54–55).

Plaintiff has sufficiently alleged that he was exposed to a substantial risk of harm. *See Hogan v. Fischer*, 738 F.3d 509, 516 (2d Cir.2013) (finding spraying an inmate with vinegar, excrement, and machine oil was "repugnant to the conscience of mankind"). Further, based on Plaintiff's allegations, *730 Defendant Willis directed this exposure to occur. Alternatively, Defendant Willis was present while

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

the exposure occurred, but failed to intervene. Accordingly, Plaintiff's failure to protect claim as against Defendant Willis may proceed to discovery.

### 5. August 12, 2009

[79] In relation to Plaintiff's August 12, 2009 excessive use of force claim, Plaintiff alleges that Defendant Lipari was "watching and laughing" while Defendants Galea, Daly, and Alberti "dragged" Plaintiff back to his cell. (Dkt. 95 at ¶ 39).

Plaintiff has sufficiently pled a failure to protect claim as against Defendant Lipari. Plaintiff has alleged that Defendant Lipari was physically present for the use of force and therefore had actual knowledge of the use of force, had an opportunity to intervene to prevent the harm from occurring, but intentionally disregarded the risk by standing back and laughing while Plaintiff was attacked by the other Defendants. See *Finley*, 2010 WL 6427496, at *5. This claim may proceed to discovery.

### J. Retaliation

[80] [81] "Courts properly approach **prisoner retaliation** claims 'with skepticism and particular care,' because 'virtually any adverse action taken by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed **retaliatory** act.' " *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir.2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). "Thus, in order to survive a **motion** to **dismiss** a complaint, a plaintiff asserting **First Amendment retaliation** claims must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' " *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492).

[82] "The filing of formal **prisoner** grievances is protected conduct under the **First Amendment**." *Sheriff v. Poole*, 689 F.Supp.2d 470, 478 (W.D.N.Y.2010) (citing *Colon*, 58 F.3d at 872).

[83] [84] "Adverse action," defined objectively, is "**retaliatory** conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ...

constitutional rights.' " *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir.2004) (quoting *Davis*, 320 F.3d at 353). "In other words, in the context of **prisoner retaliation** suits, a **prisoner** need not demonstrate 'actual chill.' The issue is whether defendants engaged in **retaliatory** conduct that would 'deter a similarly situated individual of ordinary firmness from exercising his constitutional rights.' " *Lashbey v. Wakefield*, 483 F.Supp.2d 297, 300 (W.D.N.Y.2007) (quoting *Gill*, 389 F.3d at 381).

[85] [86] "This objective inquiry is not static across contexts, but rather must be tailored to the different circumstances in which **retaliation** claims arise." *Dawes*, 239 F.3d at 493 (internal quotation omitted). "**Prisoners** may be required to tolerate more ... than average citizens, before a [**retaliatory**] action taken against them is considered adverse." *Davis*, 320 F.3d at 353.

[87] "[A] **prisoner** has a substantive due process right not to be subjected to false misconduct charges as **retaliation** for his exercise of a constitutional right such as petitioning the government for redress of grievances." *Jones v. Coughlin*, 45 F.3d 677, 679–80 (2d Cir.1995).

[88] [89] In evaluating whether a plaintiff has established the necessary causal *731 connection of a **retaliation** claim, "a court may infer an improper or **retaliatory** motive in the adverse action from: (1) the temporal proximity of the filing to the grievance and the disciplinary action; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining the plaintiff." *Sheriff*, 689 F.Supp.2d at 479. "The Second Circuit has held that temporal proximity between an inmate's grievance and disciplinary action may serve as circumstantial evidence of **retaliation**...." *Candelaria v. Higley*, No. 04–CV–0277(MAT), 2013 WL 104910, at *9 (W.D.N.Y. Jan. 8, 2013) (citing *Colon*, 58 F.3d at 872–73). Accordingly, "[a] plaintiff can establish a causal connection that suggests **retaliation** by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir.2009).

### 1. October 11, 2009

[90] Plaintiff contends that Defendant DeRosa placed him in SHU on October 11, 2009, in **retaliation** for the burglary of a family member that may have been committed by Plaintiff. (Dkt. 95 at * 76). This tenuous and conclusory

WESTLAW  © 2016 Thomson Reuters. No claim to original U.S. Government Works.        33

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 123 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

allegation of **retaliation** fails to state a claim because
Plaintiff fails to allege that he was engaging in any protected
speech or conduct. Instead, Plaintiff alleges that Defendant
DeRosa **retaliated** against Plaintiff for a burglary. In the
context alleged by Plaintiff, engaging in a criminal activity
is not protected speech or conduct protected by the **First
Amendment**. As a result, this **retaliation** claim is dismissed.

### 2. February 26, 2009

[91]  Plaintiff claims that on February 26, 2009, Defendant
Waud permitted the theft of Plaintiff's commissary in
**retaliation** for Plaintiff's filing of grievances. (Dkt. 95 at ¶
46). According to Plaintiff, Waud had expressed his dislike
for Plaintiff because Plaintiff filed grievances. (*Id.* at ¶ 46).

As previously noted, Plaintiff had engaged in a protected
activity by filing grievances. In addition, the permitted theft of
Plaintiff's commissary may be construed as an adverse action.
Under the circumstances, these actions would be sufficient to
chill a person of ordinary firmness from continuing to engage
in his **First Amendment** activity.

Plaintiff has also sufficiently alleged a causal connection
between his filing of grievances and the adverse action.
Plaintiff alleges that Defendant Waud had indicated his
dislike for Plaintiff because Plaintiff filed grievances, and it
can be inferred from the other allegations in the complaint
that this statement was made prior to the theft of Plaintiff's
property. (*Id.* at ¶ 46). For the purposes of this motion,
Defendant Waud's statement that Plaintiff was a "piece of
shit that likes to file grievances on staff" prior to the theft of
Plaintiff's commissary is sufficient to demonstrate Defendant
Waud's motive to **retaliate** against Plaintiff. *See Shariff, 689*
F.Supp.2d at 479. Accordingly, Plaintiff's February 26, 2009
**retaliation** claim as against Defendant Waud may proceed to
discovery.

### 3. DeRosa/Kluth **Retaliation**

[92]  Plaintiff does not specify a date, but claims that
Defendant DeRosa identified Plaintiff by pointing to him,
and that Defendant Kluth then "humiliated and degraded"
Plaintiff for five to six hours before allegedly issuing two false
misbehavior reports against Plaintiff. (*Id.* at ¶ 67). Construing
this statement liberally, it appears that Plaintiff is alleging a
**retaliation** claim.

[93]  Plaintiff does not state what protected activities he
engaged in to elicit the *732 alleged **retaliatory** conduct,
nor does he state when the **retaliation** occurred or how a
misbehavior reports were issued. "A prison inmate has no
general constitutional right to be free from being falsely
accused in a misbehavior report. The only way that false
accusations contained in a misbehavior report can rise to the
level of a constitutional violation is where the false accusation
is based on something more, such as **retaliation** against the
**prisoner** for exercising a constitutional right." *Tafari, 714*
F.Supp.2d at 372 (quotations and citations omitted).

Plaintiff's conclusory allegations are insufficient to state a
**retaliation** claim. Plaintiff's allegations lack any specifics
as to the protected activity and alleged **retaliation**. Under
the circumstances, Plaintiff's **retaliation** claim against
Defendants DeRosa and Kluth is simply not plausible.

### 4. March 2, 2009

[94]  On March 2, 2009, before being placed in SHU,
Plaintiff was subjected to a strip search by Defendant
Scally. (Dkt. 95 at ¶ 69). During the course of the strip
search, Plaintiff felt that he was degraded and humiliated,
and he subsequently filed a grievance against Defendant
Scally. (Dkt. 95 at ¶ 92). Plaintiff alleges that later that
day, Defendant Scally approached Plaintiff's cell and "blew-
up his cheeks making jestures[sic] and stated: 'Oh Jessie
suck my dick.' " (*Id.* at ¶ 92). Plaintiff also claims that
Defendants Atkins, Scally, Guest, Amatore, and McGowan
filed a false misbehavior report against Plaintiff in **retaliation**
for Plaintiff's grievance against Defendant Scally, and that as
a result of this false report, Plaintiff was placed in SHU on a
shower and exercise deprivation order for over 30 consecutive
days. (*Id.* at ¶¶ 80, 93).

As an initial matter, Defendant Scally's sexual comments
and gestures do not constitute adverse action to sustain
a **retaliation** claim. Insulting or disrespectful comments
directed to an inmate do not rise to the level of an adverse
action. *Davis, 320 F.3d at 353* (" 'sarcastic' comments,
without more, do not constitute an adverse action."").
However, Plaintiff has sufficiently alleged that he was
subjected to the adverse action of a false misbehavior report in
response to his protected activity of filing a grievance against
Defendant Scally. *See Jones, 45 F.3d at 679–80.* Plaintiff has
sufficiently alleged a causal connection between his protected

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 124 of 397
Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

activity and the adverse action because the events occurred within the course of one day. *See Espinal,* 558 F.3d at 129.

As a result, Plaintiff may proceed with his **retaliation** claim as against Defendants Atkins, Scally, Guest, Amatore, and McGowan, based upon events allegedly occurring on March 2, 2009.

### 5. April 16, 2009

[95] Plaintiff alleges that Defendants Newton, Horan, Jolly, and Krenzer engaged in **retaliation** by issuing a false misbehavior report and placing Plaintiff on a shower and exercise deprivation order on April 16, 2009, after Defendant Atkins saw a copy of Plaintiff's legal petition earlier in the day. (Dkt. 95 at ¶¶ 85–86). Plaintiff further claims that Defendant Harling was notified of this alleged violation of Plaintiff's rights but failed to do anything in response. (*Id.* at ¶ 87).

Plaintiff's pursuit of legal remedies constitutes protected activity. As previously noted, the filing of a false misbehavior report constitutes an adverse action. *See Jones,* 45 F.3d at 679–80. However, Plaintiff has failed to allege facts to support a causal connection between his protected activity and the adverse action. Plaintiff claims that Defendant Atkins viewed his legal petition, not Defendants Newton, Horan, Jolly, or Krenzer. (Dkt. 95 at ¶¶ 85–86). Plaintiff has failed to allege that the individuals he claims filed a false *733 misbehavior report against him even had knowledge of his protected activity. Accordingly, his **retaliation** claim against Defendants Newton, Horan, Jolly, and Krenzer is dismissed. As a result, Plaintiff cannot state a claim against Defendant Harling, because there is no underlying violation of Plaintiff's rights. *See Murray,* 2007 WL 956941, at *7.

### 6. May 4, 2009

Plaintiff alleges that Defendants Scally, Amatore, and Atkins engaged in **retaliation** by filing a false misbehavior report against Plaintiff on May 4, 2009, which resulted in Plaintiff being placed on a 23–day "styro-foam tray order." (Dkt. 95 at ¶¶ 58, 90).

Again, Plaintiff alleges that Defendants filed a false misbehavior report against him in **retaliation** for his filing of grievances. However, Plaintiff does not allege when the

underlying grievances were filed in relation to when the false misbehavior report was issued, nor does Plaintiff indicate that he was "vindicated" on the matter, or that Defendants made a comment indicating **retaliatory** intent. *See Shariff,* 689 F.Supp.2d at 479. In other words, Plaintiff does not allege facts to support a causal connection between his protected activity and the adverse action.

Therefore, Plaintiff's **retaliation** claim as against Defendants Scally, Amatore, and Atkins related to the May 4, 2009 misbehavior report is dismissed.

### K. Denial of Due Process of Law

[96] [97] "To establish a due process violation of the Fourteenth Amendment, an inmate must show that a government official made a deliberate decision to deprive him of his life, liberty, or property. Merely negligent conduct does not give rise to claims under the Fourteenth Amendment." *Jabbar v. Fischer,* 683 F.3d 54, 57 (2d Cir.2012) (citations omitted).

#### 1. Liberty Interest

[98] [99] "A **prisoner's** liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline imposes [an] atypical and significant hardship on the inmate in relations to the ordinary incidents of prison life." *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004) (quotation omitted). "Factors relevant to determining whether the plaintiff endured an atypical and significant hardship include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement." *Id.* (quotations omitted).

[100] SHU confinements of 30 to 90 days "fall within the 'short range' of disciplinary confinement and thus implicate a liberty interest only if 'the conditions were more severe than the normal SHU conditions.' " *Tafari,* 714 F.Supp.2d at 375 (quoting *Palmer,* 364 F.3d at 65).

##### a. March 2, 2009 SHU Assignment

[101] Plaintiff claims that he was subjected to unconstitutional conditions of confinement when Defendants

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Hayes, Horan, Jolly, McGowan, Guest, Scally, Atkins, and Krenzer placed Plaintiff in SHU on a shower and exercise deprivation order for over 30 consecutive days. (Dkt. 95 at ¶ 80). Plaintiff alleges that these conditions caused him "extreme outrageous emotional distress, physical suffering and mental anguish." (*Id.* at ¶ 80).

"Although courts should accord deference to prison officials in determining whether restrictions imposed upon a pretrial detainee are reasonably related to a legitimate governmental objective, the Second Circuit has held that an extreme restriction may smack of punishment so as to warrant a factual inquiry into whether such a restriction is actually related to a **\*734** legitimate governmental interest." *Valdez v. City of New York*, No. 11–CV–5194, 2014 WL 2767201, at \*2 (S.D.N.Y. June 17, 2014).

Here, the 30–day consecutive assignment to SHU is considered a "short term" assignment to SHU, and did not deny Plaintiff a liberty interest. As a result, Plaintiff may only sustain a due process claim with respect to this period of SHU time if he was subjected to abnormal conditions in SHU. At least at this stage of the litigation, Plaintiff has plausibly alleged such abnormal conditions. Plaintiff alleges that he was deprived of shower and exercise for over 30 consecutive days, a time frame that extends far beyond the two week timeframe found acceptable for such deprivations in this Circuit. See *Flake v. Peck*, No. 9:12–cv–00517 (MAD/ATB), 2014 WL 1289582, at \*22 (N.D.N.Y. Mar. 31, 2014) ("[T]his Circuit has rejected claims of shower deprivation, lasting up to two weeks.") (collecting cases); *Johnson v. Colvin*, No. 09–CV–6413–CJS, 2013 WL 775357, at \*4 (W.D.N.Y. Feb. 28, 2013) ("temporary deprivations of showers for periods of approximately two weeks ... do not satisfy the objective component of a claim of cruel and unusual punishment"); *Gardner v. Mental Health Unit of Sullivan Corr. Facility*, No. 07 Civ. 5535(WHP), 2009 WL 1834382, at \*2 (S.D.N.Y. June 17, 2009) ("denying a **prisoner** the opportunity to shower for seven days and withholding toiletries, while uncomfortable, does not endanger an inmate's health and safety").

Plaintiff may proceed with his due process claim as against Defendants Hayes, Horan, Jolly, McGowan, Guest, Scally, Atkins, and Krenzer with respect to his 30–day consecutive SHU assignment that began on March 2, 2009.

#### b. SHU Assignments November 27, 2008 through August 30, 2009

In addition to the March 2, 2009 SHU assignment, Plaintiff objects to the various SHU assignments he received between November 27, 2008 and August 30, 2009. (Dkt. 95 at ¶ 97). All but one of the assignments he contests has previously been examined and affirmed by the state courts. As a result, those claims are barred by the doctrine of collateral estoppel.

Even if Plaintiff's claims were not barred by collateral estoppel, none of the assignments to SHU that Plaintiff objects to extend beyond the "short range" of disciplinary confinement, nor does Plaintiff allege that he was subjected to abnormal conditions as to these particular assignments, and as a result, Plaintiff's allegations do not implicate a liberty interest. (*See* Dkt. 95 at ¶ ¶ 97(a)(30 days); (b)(30 days); (c)(7 days); (d)(14 days); (e)(20 days); (f)(30 days); (g)(42 days); (h)(20 days); (i)(20 days)). The single SHU assignment that Plaintiff had not contested in a prior state action resulted from a March 14, 2009 hearing imposing 14 days of SHU time. (Dkt. 95 at ¶ 97(d)). This 14 day assignment does not implicate a liberty interest, and furthermore, Plaintiff does not allege that he was subjected to abnormal conditions.

#### 2. Due Process

**[102]** "The procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are well established, the contours of the requisite protections having been articulated in *Wolff v. McDonnell*, 418 U.S. 539, 564–69 [94 S.Ct. 2963, 41 L.Ed.2d 935] (1974)." *Graham*, 2013 WL 5924727, at \*2. The constitutionally mandated due process requirements include: "(1) written notice of the charges to the inmate; (2) the opportunity to appear at a disciplinary hearing and present witnesses **\*735** and evidence in support of his defense, subject to a prison facility's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense." *Id.*

#### a. October 11, 2008

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Plaintiff claims that he was placed in SHU on October 11, 2008, without due process of the law. (Dkt. 95 at ¶ 77). Although Plaintiff makes the conclusory statement that his constitutional rights were violated, Plaintiff does not allege how his due process rights were violated. Accordingly, this claim is dismissed.

**b. November 19, 2008**

[103] Plaintiff argues that his placement in SHU on November 18, 2008, was in violation of his due process rights. (Dkt. 95 at ¶ 65). Plaintiff further contends that he was supposed to be released from SHU on December 17, 2008, but was kept in SHU until December 23, 2008 "without adequacy of any due process of law" as a result of Defendant Atkins filing false reports and log entries. (*Id.* at ¶ 77). Here, Plaintiff's due process claims are primarily based on his allegations that the charges against him were false, and were based on false misbehavior reports. (*See e.g.,* Dkt. 95 at ¶¶ 47, 58, 80, 93). "However, even if the charges were false, this does not amount to a due process violation as long as plaintiff was afforded a fair opportunity to refute the charges." *Graham,* 2013 WL 5924727, at *2. Plaintiff does not allege that he was denied a fair opportunity to refute the charges against him. Accordingly, his claim is dismissed.

**c. March 2009—August 2009 Conditions**

[104] Plaintiff alleges that the requirement that he remain in full mechanical restraints during his isolated morning exercise period from March 2009 through August 2009, violated his rights under the due process and equal protection laws of the New York State and United States Constitutions. (Dkt. 95 at ¶ 88).

Plaintiff does not allege what facts or circumstances led up to this requirement, nor does he allege how he was prevented from exercising his rights under the due process clause in relation to this requirement. Accordingly, Plaintiff's due process claim with respect to this requirement is dismissed.

**d. Administrative Hearings November 27, 2008 through August 30, 2009**

Plaintiff alleges that Defendants violated a laundry list of New York regulations as well as the Fourteenth Amendment

during nine administrative hearings conducted between November 27, 2008 and August 30, 2009. (Dkt. 95 at ¶ 97). Again, Plaintiff's concerns about all but one of these hearings were previously addressed in his state court proceedings. Accordingly, Plaintiff may only raise due process claims as to the March 14, 2009 hearing in this action, which was not previously addressed in state court. Plaintiff does not raise any factual allegations to describe how his due process rights were violated at the March 14, 2009 hearing. As a result, Plaintiff's claim is dismissed.

**e. Lack of Supervisory Response to Plaintiff's Complaints**

Plaintiff claims that he filed numerous grievances, complaints, and appeals with Defendants Harling and Krenzer in relation to the alleged mistreatment by Defendants Atkins, Scally, Newton, Willis, Guest, Amatore, and DeRosa, but states that Defendants Harling and Krenzer continued to show "deliberate indifference" to Plaintiff's concerns. (*Id.* at ¶ 59).

*736 These claims against Defendants Harling and Krenzer are dismissed. As previously noted with respect to Defendant O'Flynn, "the receipt of letters or grievances, by itself, does not amount to personal involvement." *Mateo,* 682 F.Supp.2d at 430 (citing *Sealey,* 116 F.3d at 51). The mere fact that Defendants Harling and Krenzer received Plaintiff's numerous grievances, complaints, and appeals does not impute personal involvement to these Defendants. *See Dorsey v. Fisher,* No. 9:09–CV–1011GLSDEP, 2010 WL 2008966, at *12 (N.D.N.Y. May 19, 2010) ("An allegation that an official ignored a **prisoner's** letter of protest or a request for an investigation of allegations contained in the letter is insufficient to hold that official liable for the alleged violations."). To the extent that Plaintiff asserts claims against these Defendants for their failure to respond to his complaints, these claims are dismissed.

Plaintiff also claims that Defendants Lipari and Harling provided fraudulent responses to Plaintiff's grievance 09–33, and excluded four witness statements in connection with Plaintiff's grievance 09–49, contributing to Defendant County of Monroe's "faulty" grievance program. (*Id.* at ¶ 94).

Plaintiff's conclusory allegations are not supported by any factual allegations as to how the alleged responses were fraudulent, or how the testimony of the four witnesses

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 127 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

who were allegedly excluded would have provided him due process. As a result, this claim is also dismissed.

**f. Improper Investigations**

Plaintiff alleges that Defendants Lipari, Guest, S. Peck, and Shellard did not appropriately conduct their investigations against supervisors in relation to Plaintiff's grievances 09–01, 09–32, 09–35, 09–46, 09–49, 09–81, 09–88, and 09–89, in violation of Plaintiff's rights under 7 NYCRR § 701.8(d) (1) and the First and Fourteenth Amendments to the U.S. Constitution. (*Id.* at ¶ 95). "[A]n inmate has no constitutional right to have his grievances processed or investigated in any particular manner." *Green,* 677 F.Supp.2d at 639 (internal quotations and citation omitted). Further, Plaintiff does not allege how the investigations were improper. Accordingly, these claims are dismissed.

Plaintiff generally claims that the investigation into his grievance 09–01 was biased and prejudiced, in violation of his right to redress of grievances. (*Id.* at ¶ 96).

"Claims of hearing officer bias are common in § 1983 cases by inmate plaintiffs, and where they are based on purely conclusory allegations, they are routinely dismissed." *Washington,* 968 F.Supp.2d at 541–42. "An inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact." *Booker,* 2014 WL 1289579, at *11. As a result, this claim is dismissed.

**L. Equal Protection**

[105]   [106]   [107]   "The equal protection clause directs state actors to treat similarly situated people alike. To prove an equal protection violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class." *Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir.1995) (citations omitted). "In other words, '[t]o prove a violation of the Equal Protection Clause ... a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.' " *Randle,* 960 F.Supp.2d at 476 (quoting *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir.2005) (citation omitted)).

[108]   "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *City of Cuyahoga Falls v. Buckeye Cmty.*  *737

*Hope Found.,* 538 U.S. 188, 194, 123 S.Ct. 1389, 155 L.Ed.2d 349 (2003) (quotation omitted).

[109]   Here, Plaintiff makes various claims that he has been discriminated against because he is a racial minority, and that other racial minorities are similarly discriminated against. (*See, e.g.* Dkt. 95 at ¶¶ 71–74). However, Plaintiff never makes any allegations of fact to support a racially discriminatory intent or purpose for the application of otherwise neutral policies. For example, Plaintiff alleges in a conclusory fashion that racial minorities are disproportionately placed in SHU and subsequently deprived of access to public information; however, Plaintiff does not allege that non-minority inmates who commit similar policy violations were not also placed in SHU and subject to the same deprivations. (*Id.* at ¶ 73). As a result, to the extent that Plaintiff alleges violations of the equal protection clause or discrimination, these claims are dismissed.

Plaintiff alleges that the requirement that he remain in full mechanical restraints during his isolated morning exercise period from March 2009 through August 2009 violated his rights under the due process and equal protection laws of the New York State and United States Constitutions. (*Id.* at ¶ 88). However, beyond making this conclusory allegation, Plaintiff does not explain how this requirement in any way injured him or violated his rights. Accordingly, any claim Plaintiff may allege as to the requirement that he remain in full mechanical restraints during exercise from March 2009 through August 2009 is dismissed.

**M. Conditions of Confinement**

[110]   [111]   Under the Eighth Amendment, officials may not "create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety." *Overton v. Bazzetta,* 539 U.S. 126, 137, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003). However, "because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a conditions-of-confinement claim." *Blyden v. Mancusi,* 186 F.3d 252, 263 (2d Cir.1999). "To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Walker v. Schult,* 717 F.3d 119, 125 (2d Cir.2013) (internal quotations omitted).

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 128 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

The Second Circuit has explained:

> To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health. Thus, prison officials violate the Constitution when they deprive an inmate of his 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions. There is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency. Moreover, conditions of confinement may be aggregated to rise to the level of a constitutional violation, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.

> To meet the subjective element, the plaintiff must show that the defendant acted with more than mere negligence. To constitute deliberate indifference, the prison official must know of, and disregard, an excessive risk to inmate health **\*738** or safety. Evidence that the risk was obvious or otherwise must have been known to a defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk.

*Id.* (quotations and citations omitted).

### 1. December 23, 2008

**[112]**    Plaintiff asserts a conditions of confinement claim, insofar as he alleges that after he was released from SHU on December 23, 2008, he was placed in a cell that was "atrociously unsanitary disgustingly filthy with excrement, urine, feces and spew all over walls, ceiling, floor and bars for (3) three more consecutive days where ventilation system were non-existent and cell smell toxic[sic] aweful[sic]...." (Dkt. 95 at ¶ 60). Defendants argue that Plaintiff has failed to meet his burden to allege that he suffered a serious deprivation and that the officials who caused the harm did so with deliberate indifference to Plaintiff's health or safety. (Dkt. 119–2 at 19).

**[113]**    "[U]nsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment." *Walker,* 717 F.3d at 127. At this stage in the litigation, Plaintiff has alleged the objective prong of his conditions of confinement claim. Plaintiff has alleged that he was exposed to human excrement and bodily fluids in a poorly ventilated cell over the course of multiple days. *See Gaston v. Coughlin,* 249 F.3d 156, 166 (2d Cir.2001) ("We are unwilling to adopt as a matter of law the principle that it is not cruel and unusual punishment for prison officials knowingly to allow an area to remain filled with sewage and excrement for days on end.").

Although Plaintiff has not specifically alleged that Defendants had knowledge of this condition, Defendants' knowledge may be inferred by the simple fact that these Defendants must have viewed the conditions of the cell when they placed Plaintiff in it. *See Brock v. Wright,* 315 F.3d 158, 164 (2d Cir.2003) ("[E]vidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it."); *see also Gaston,* 249 F.3d at 166 (finding Plaintiff's allegation that defendant prison guards "made daily rounds of SHU" was sufficient to allege that defendants had actual knowledge of the inhumane conditions). Plaintiff has sufficiently pled that Defendants Jolly, Horan, Kaiser, DeRosa, McGowan, Knapp, Kennelly, Cardella, S. Peck, and Tripoli disregarded Plaintiff's safety by leaving him housed in these unsanitary conditions. (Dkt. 95 at ¶ 60).

### 2. February 27, 2009—March 2, 2009

**[114]**    Plaintiff alleges that he was subjected to poor conditions of confinement when he was inappropriately housed in a booking cell on a shower and exercise deprivation order by Defendants T. Peck, Mooney, Waud, Dimartino, and Jolly from February 27, 2009 through March 2, 2009. (*Id.* at ¶ 79).

To the extent Plaintiff alleges that his inability to shower over the course of four days constitutes a constitutional deprivation, his claim must fail. Even a two-week suspension of shower privileges does not constitute a denial of "basic hygienic needs." *McCoy,* 255 F.Supp.2d at 260 (citing *Cruz v. Jackson,* No. 94 Civ. 2600(RWS), 1997 WL 45348, at *6 (S.D.N.Y. Feb. 5, 1997)). Similarly, Plaintiff's exercise deprivation over the course of four days does not rise to the level of an objective constitutional violation. *See Dillon v. City of New York,* No. 12 Civ. 6746(LAP), 2013 WL 3776252, at *4 (S.D.N.Y. July 18, 2013) ("Courts have held that deprivation of exercise for periods **\*739** as long as fourteen days does not violate the Eighth Amendment.").

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

In addition, Plaintiff has entirely failed to allege the subjective portion of his claim: only arguing that he was "housed in booking" by Defendants. (Dkt. 95 at ¶ 79).

Accordingly, Plaintiff's conditions of confinement claim related to his SHU housing from February 27, 2009 through March 2, 2009, is dismissed.

### 3. Lighting in SHU

Plaintiff claims that the conditions in SHU are extreme, insofar as the lights above the beds remain on 24 hours per day, allegedly causing "sleeplessness excruciating headaches, eye pains, anxiety, mental anguish and endless pain and suffering." (Dkt. 95 at ¶ 73). Defendants do not directly address Plaintiff's allegations, stating only that Plaintiff "makes broad conclusions" including statements about "lack of reading materials, lighting, and one incident of a strip search...." (Dkt. 119–2 at 19). Defendants generally argue that Plaintiff failed to meet his burden to demonstrate a serious deprivation and deliberate indifference as to all allegations of unsanitary conditions. (Id.). Defendants have failed to sufficiently argue that Plaintiff has failed to state a claim.

[115] "[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment." *Walker*, 717 F.3d at 126 (citing *Tafari*, 714 F.Supp.2d at 367). "Requiring inmates to live in constant illumination can also, under certain circumstances, rise to the level of an Eighth Amendment violation." *Jones v. Rock*, No. 9.12-cv-0447 (NAM/TWD), 2013 WL 4804500, at *10 (N.D.N.Y. Sept. 6, 2013) (collecting cases). Accordingly, Plaintiff has sufficiently alleged a conditions of confinement claim under the Fourteenth Amendment with respect to his allegations that he was subjected to extreme conditions in SHU by way of the 24 hour lighting by Defendants Harling, Krenzer, Thomas, Jolly, Horan, Dimartino, and Lipari.

### N. Verbal Threats

#### 1. February 26, 2009

[116] Plaintiff alleges that Defendants Waud, DeRosa, and Thibaut made various verbal threats against him on February 26, 2009. Plaintiff claims that Defendant Waud called Plaintiff a "piece of shit that likes to file grievances on staff." (Dkt. 95 at ¶ 46). Plaintiff alleges that Defendant

DeRosa stated: "Hey Jessie I see you got your ass kicked that is good for you they did a pretty good job this time." (Id. at ¶ 49). Plaintiff does not allege that these statements caused him any injury.

Although these comments do not clearly represent threats, to the extent that the complaint may be read to allege an Eighth Amendment claim against Defendants Waud or DeRosa based on their alleged verbal harassment of Plaintiff on February 26, 2009, such conduct is not actionable under § 1983. *McCoy*, 255 F.Supp.2d at 261; *see also Harris v. Keane*, 962 F.Supp. 397, 406 (S.D.N.Y.1997) ("Allegations of threats, verbal harassment of Plaintiff, without any injury or damage, do not state a claim under § 1983.").

Plaintiff also claims that Defendant Thibaut was discussing a movie with Defendant Ruby when he stated: "Oh he got his ass kicked and fell back down to earth, like somebody on 3M just got their ass kicked." (Dkt. 95 at * 51). Plaintiff claims that this statement caused him to violently "shake uncontrollably." (Id. at ¶ 51). "It is well settled law in this Circuit that '42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse.'" *Murray*, 2007 WL 956941, at *8 (quoting *Gill v. Hoadley*, 261 F.Supp.2d 113, 129 (N.D.N.Y.2003)). Here, Defendant Thibaut's comment is not a threat so much as it is a comment, albeit *740 an arguably insensitive one. This comment alone cannot sustain a constitutional claim. As this is the only claim raised against Defendant Thibaut, Defendant Thibaut is dismissed from this lawsuit.

#### 2. May 2, 2009

Plaintiff alleges that Defendant Gatti stood in front of Plaintiff's cell on May 2, 2009, called Plaintiff a "nigger," and said that he would kill Plaintiff. (Dkt. 95 at ¶ 56). It is well-settled that verbal harassment and name-calling on the part of prison officials do not constitute actionable constitutional violations. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir.1986). However, Defendant Gatti's alleged threat that he would kill Plaintiff presents a closer question.

[117] "Verbal harassment itself does not rise to the level of a constitutional violation. Verbal abuse, vulgarity, and even threats are insufficient to rise to the level of constitutional violations." *DeJesus v. Tierney*, No. 9.04–CV–298, 2006 WL 839541, at *11 (N.D.N.Y. Mar. 28, 2006); *see also Kemp v. LeClaire*, No. 03–0844, 2007 WL 776416, at *15 (W.D.N.Y.

Case 9:25-cv-00083-BKS-TWD   Document 29   Filed 01/20/26   Page 130 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Mar. 12, 2007) (statements like "your day is coming," "you'll be sent to your mother in a black box," and "you'll get your black ass kicked" not adverse actions). *Cf. Ford v. Palmer,* 539 Fed.Appx. 5, 6 (2d Cir.2013) (direct threat to poison inmate-plaintiff constituted an adverse action).

Defendant Gatti's alleged statement that he would kill Plaintiff is too general to support a constitutional claim. Plaintiff alleged that he had never interacted with Defendant Gatti before, and he does not allege that he interacted with Defendant Gatti again. In fact, this alleged threat is the only time Plaintiff even references Defendant Gatti in his complaint. (Dkt. 95 at ¶ 56). "[P]laintiff has not alleged that he was ever physically threatened and, without more, his allegations of verbal threats, abusive language and racial epithets cannot form the basis of a section 1983 claim." *Amaker v. Foley,* No. 94–CV–0843E(SR), 2003 WL 21383010, at *4 (W.D.N.Y. Feb. 18, 2003). Accordingly, Plaintiff's claim against Defendant Gatti is dismissed.

**O. Falsification of Medical Records**

Plaintiff alleges that on February 26, 2009, former Defendant Muller deliberately omitted an incident where Plaintiff was vomiting blood from her medical notes in order to downplay his injuries. (*Id.* at ¶ 103). Plaintiff voluntarily dismissed Ms. Muller with prejudice, and Ms. Muller was dismissed from this matter by Court order on July 12, 2013. (Dkt. 135). Plaintiff does not allege that any other Defendants engaged in falsification of medical records. As a result, Plaintiff's falsification of medical records claim is dismissed.

**P. Qualified Immunity**

[118]   Defendants assert that they are entitled to qualified immunity on all of Plaintiff's claims because any conduct was made in the course of their employment and "did not reasonably violate established law." (Dkt. 119-2 at 10). "Although ... claims of qualified immunity should be decided as early as possible in a case, it would be premature to dismiss the case now on this basis. Rather, ... qualified immunity is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed." *Walker,* 717 F.3d at 130.

Because the Court finds that Plaintiff's complaint plausibly alleges several causes of action, further facts are required to decide the question of qualified immunity. For example, if Defendant Newton premeditated the attack on Plaintiff on August 7, 2008, this would clearly be outside of the scope of

Defendant Newton's employment, and thus would not entitle Defendant Newton to qualified immunity.

\*741   Accordingly, Defendant's request for judgment on the pleadings on the basis of qualified immunity is denied.

**III. Defendant Ellie Holman's Motion for Judgment on the Pleadings**

At the time of Plaintiff's pre-trial holding at MCJ, Defendant Ellie Holman ("Ms. Holman") was employed by CMC as a registered nurse assigned to work at MCJ. (Dkt. 120–1 at ¶ 3). [3] In his complaint, Plaintiff claims that Ms. Holman "with shocking repugnant and reckless callous disregard blurted out following statement: 'Oh Jessic Barnes always gets his ass kicked' " when he arrived at the nurse's station for treatment after an altercation. (Dkt. 95 at ¶ 53). However, Plaintiff does not state how this alleged comment by Ms. Holman (which Ms. Holman denies (Dkt. 102 at ¶ 53)) impacted his rights. Further, as Ms. Holman notes, Plaintiff has failed to allege that she denied him medical care or provided him with inadequate medical care. (Dkt. 120–1 at ¶ 137). As a result, Plaintiff has entirely failed to state a claim with regard to Ms. Holman, and Ms. Holman's motion for judgment on the pleadings is granted.

**IV. Plaintiff's Request to Convert Defendants' Motion for Judgment on the Pleadings into a Motion for Summary Judgment**

Plaintiff requests that the Court convert Defendants' motion for judgment on the pleadings into a motion for summary judgment and grant Plaintiff summary judgment on the basis of "ample evidence against the Defendants" and Defendants' "generalized and conclusory ==motion== to ==dismiss=="." (Dkt. 133– 3 at 33).

"A district court must convert a motion for judgment on the pleadings into one for summary judgment if the motion includes material 'outside the pleadings' and that material is 'not excluded by the court.' " *Sira,* 380 F.3d at 66 (quoting Fed.R.Civ.P. 12(d)).

Here, there is no basis to convert Defendants' motion into a motion for summary judgment. To the extent that Plaintiff seeks summary judgment in his favor, this request is denied without prejudice as premature. *See Brunson v. Jonathan,* 727 F.Supp.2d 195, 199 (W.D.N.Y.2010) ("Factual issues remain to be decided with respect to the merits of [Plaintiff's] claims. Whether those issues may at some point be properly

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

disposed of on a motion for summary judgment, on a more complete record than the one before [the Court], remains to be seen, but at this point summary judgment would plainly be premature.").

### CONCLUSION

For the foregoing reasons, County Defendants' motion (Dkt. 119) is granted in part and denied in part, Defendant Holman's motion (Dkt. 120) is granted, Plaintiff's motion for recusal (Dkt. 142) is denied, and Plaintiff's request to convert his response into a motion for summary judgment (Dkt. 133) is denied.

The Clerk of Court is directed to lift the stay of discovery (Dkt. 138).

The following claims may proceed to discovery: (1) August 7, 2008 Excessive Use of Force against Defendant Newton; *742 (2) August 12, 2009 Excessive Use of Force against Defendants Shellard, Daly, Galen, and Alberti; (3) August 7, 2008 Conspiracy against Defendants Amico, Danchy, and Newton; (4) August 7, 2008 Failure to Protect against Defendants Amico, Danchy, and Newton; (5) January 19, 2009 Failure to Protect against Defendants Tripoli, Waud, and Willis; (6) May 2, 2009 Failure to Protect against Defendant Willis; (7) August 12, 2009 Failure to Protect against

Defendant Lipari; (8) February 26, 2009 Retaliation against Defendant Waud; (9) March 2, 2009 Retaliation against Defendants Atkins, Scally, Guest, Amatore, and McGowan; (10) December 23, 2008 Conditions of Confinement claim against Defendants Jolly, Horan, Kaiser, DeRosa, McGowan, Knapp, Kennelly, Cardella, S. Peck, and Tripoli; (11) Conditions of Confinement lighting claim against Defendants Harling, Krenzer, Thomas, Jolly, Horan, Dimartino, and Lipari; and (12) Due Process claim as against Defendants Hayes, Horan, Jolly, McGowan, Guest, Scally, Atkins, and Krenzer with respect to Plaintiff's 30-day consecutive SHU assignment that began on March 2, 2009. The Court has considered Plaintiff's remaining claims and finds them to be without merit.

The Clerk of Court is further directed to terminate Defendants County of Monroe, Brooks, O'Flynn, Cacaci, Kloner, Mooney, Kimball, Gatti, Pratt, Inipoli, Preston, T. Peck, Carlo, Messara, Kluth, Luther, Raby, Fitzsimmons, Palma, DiFlores, Jane Doe Nurse, Nurse Mary, Domalski, Meister, Robinson, Holman, Miller, Rizzo, and Thibaut as parties to this action.

SO ORDERED.

**All Citations**

85 F.Supp.3d 696

Footnotes

1   Although Defendants Kloner, Inipoli, DiFlores, Nurse Mary, and Jane Doe Nurse are each listed in the caption to this action, at no time throughout Plaintiff's third amended complaint does he allege that these individuals engaged in any activity or violated Plaintiff's rights under state or federal law. As a result, these Defendants are dismissed. See *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (quotation omitted).
    Further, service of the summons and complaint in this matter was never made upon Defendant Palma. Pursuant to Fed.R.Civ.P. 4(m), service of the summons and complaint must be made upon a defendant within 120 days after their filing. Plaintiff has not shown good cause for his failure to serve Defendant Palma, but simply claims that the Clerk of the Court "failed to make service" on Defendant Palma. (Dkt. 133–1 at 3; 133–3 at 23). Accordingly, Defendant Palma is dismissed.

2   Cynthia L. Muller is also listed as a Defendant on this motion, however, Plaintiff voluntarily dismissed Ms. Muller with prejudice, and Ms. Muller was dismissed by Court order on July 12, 2013. (Dkt. 135).

3   Ms. Holman was not named as a defendant in Plaintiff's original complaint, however, Judge Siragusa added Ms. Holman as a named defendant in place of "Jane Doe Nurse working on February 27, 2009" at paragraphs 16, 61, and 62 of Plaintiff's second amended complaint, by Court order. (Dkt. 92). Plaintiff then incorporated Ms. Holman by name in his third amended complaint. (Dkt. 95 at ¶ 53).

End of Document                      © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 132 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Garvin v. Rivera, Slip Copy (2015)

2015 WL 876464

2015 WL 876464
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Gregory GARVIN, Plaintiff,

v.

Warden Luis RIVERA, et al., Defendants.

No. 13–cv–7054 (RJS).

|

Signed Feb. 28, 2015.

**OPINION AND ORDER**

RICHARD J. SULLIVAN, District Judge.

\*1 Plaintiff, proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983 ("section 1983") for injuries arising out of prison lockdowns that allegedly took place at the Anna M. Kross Center ("AMKC"), a prison facility on Rikers Island operated by the New York City Department of Correction (the " 'DOC"). Now before the Court is Defendants' partial motion to dismiss the Complaint, and Plaintiff's motion for the appointment of *pro bono* counsel. For the reasons set forth below, both parties' motions are denied without prejudice to renewal.

**I. BACKGROUND [1]**

Plaintiff alleges that while he was an inmate at the AMKC prison facility, two administrative lockdowns took place in late July to early August of 2013 on the tier in which he was housed-one for five days and another for three to four days. (Compl. at 4.) During these alleged lockdowns, Plaintiff claims that he was deprived of: (1) hot water; (2) showers; (3) food; (4) visits; (5) phones; (6) access to the law-library; and (7) sanitary cell conditions. (*Id.*) Plaintiff also alleges that on July 31, 2013, he was assaulted by correctional officers and denied medical treatment, ultimately suffering from: (1) a headache; (2) a swollen eye; (3) a laceration next to his eye; (4) stomach pain; (5) intense vomiting; (6) severe back pain; and (7) a bloody nose. (Compl. at 11.) As a result of the "mental duress, physical abuse, and emotional torture" caused by Defendants, Plaintiff seeks monetary damages of $750,000 and medical treatment. (Compl. at 12.)

**II. LEGAL STANDARD**

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)."A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns,* 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. Thus, a pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."*Twombly,* 550 U.S. at 555. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."*Id.* at 570. Although the Court construes the Complaint liberally because Plaintiff is *pro se,* the complaint must still contain factual allegations that raise a "right to relief above the speculative level" in order to survive a motion to dismiss. *Dawkins v. Gonyea,* 646 F.Supp.2d 594, 603 (S.D.N.Y.2009) (quoting *Twombly,* 550 U.S. at 555) (internal quotation marks omitted).

\*2 On a motion to dismiss, the Court may consider, in addition to the complaint itself, "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint."*Sira v. Morton,* 380 F.3d 57, 67 (2d Cir.2004) (citations and quotation marks omitted); *see also Taylor v. Vt. Dep't of Educ.,* 313 F.3d 768, 776 (2d Cir.2002); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002).

**III. DEFENDANTS' MOTION TO DISMISS**

Defendants raise a number of grounds why Plaintiff's conditions of confinement and deliberate indifference claims must be dismissed—including his failure to allege that

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Garvin v. Rivera, Slip Copy (2015)

2015 WL 876464

the lockdown was punitive in nature and his failure to allege deprivations that rise to the level of a constitutional violation. [2] As discussed below, the Court finds that while it appears from the face of the Complaints that Plaintiff has not complied with the administrative exhaustion requirement of the Prison Litigation Reform Act (the "PLRA"), Plaintiff should be given an opportunity to set forth facts that could excuse his failure to exhaust. Accordingly, the Court denies Defendants' motion to dismiss without prejudice to renewal as a motion for summary judgment on the issue of administrative exhaustion. Because Plaintiff's failure to exhaust administrative remedies would entirely dispose of Plaintiff's conditions of confinement and deliberate indifference claims, the Court does not reach the other grounds for dismissal urged by Defendants. [3]

The PLRA, which Congress passed to reform and streamline the consideration of prisoner lawsuits by federal courts, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Because the failure to exhaust administrative remedies is an affirmative defense, prisoner plaintiffs are "not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). However, a court may still dismiss a prison condition suit on a Rule 12(b)(6) motion if the allegations of the complaint show that the plaintiff has failed to comply with the administrative exhaustion requirement. *Id.* at 215-16 ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief.... [That administrative exhaustion need not be pleaded] is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim."). In other words, although a complaint cannot be dismissed for failing to plead that administrative remedies were exhausted, it *can* be dismissed if it pleads facts demonstrating that administrative remedies were *not* exhausted. *See Williams v. Dep't of Corr.*, No. 11-cv-1515 (SAS), 2011 WL 3962596, at *5 (S .D.N.Y. Sept. 7, 2011) ("Dismissal for failure to exhaust administrative remedies is appropriate where, on the face of

the Complaint, it is clear that plaintiff did not exhaust such remedies.").

*3 The DOC administers an administrative grievance procedure, the Inmate Grievance and Request Program ("IGRP"), for inmates at its facilities, including the AMKC. The IGRP, which is set forth in DOC Directive 3376, applies to grievances about the following prison conditions: (1) clothing, (2) commissary, (3) correspondence/mail, (4) food, (5) housing, (6) law library, (7) mental and medical health complaints involving DOC personnel, (8) personal hygiene, (9) phone use, (10) recreation, and (11) religious observance and expression. IGRP App. A. Under the IGRP, a prisoner who wishes to file a grievance must file a form with IGRP staff within ten business days of the condition giving rise to the grievance. *Id.* §§ II.F, IV.D. 1. IGRP staff are required to provide an "informal resolution" within five business days of receiving the form. *Id.* § II.F. The dispositions of IGRP staff are appealable through several layers of review, up to the DOC's Central Office Review Committee ("CORC"). *Id.* § II.G (providing for appeal of IGRP staff's disposition to Inmate Grievance Resolution Committee, then to facility's Commanding Officer, then to the CORC). The administrative process is complete only when the CORC has issued its disposition. *Id.* The decisionmakers at each level of review must issue their decisions within certain time limits. *Id.* §§ IV.G.1, H.1, I.2, J.5.a–b, and an inmate may appeal if he "does not receive a timely disposition at any stage of the IGRP process,"*id.* § IV.D.10.

Here, it is clear from the face of the Complaint that Plaintiff did not exhaust the IGRP procedure. Plaintiff specifically pleads that he initiated the administrative process by filing a grievance, but concedes that he did not appeal that decision. Specifically, in response to the question "Describe all efforts to appeal," Plaintiff wrote "N/A" because "nothing was done" following the filing of his grievance. (Compl. at 5.) Thus, Plaintiff did not exhaust administrative remedies, since he made no effort to continue the process after he received no response to his initial grievance.

However, the conclusion that Plaintiff failed to exhaust the IGRP procedure does not end the inquiry. Under certain circumstances, a plaintiff's failure to exhaust administrative remedies may be excused. This inquiry is generally guided by the three-part framework established by the Second Circuit in *Hemphill v. New York*, which considers: (1) "whether administrative remedies were in fact available to the prisoner," (2) "whether the defendants may have forfeited the

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 134 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Garvin v. Rivera, Slip Copy (2015)
2015 WL 876464

affirmative defense of non-exhaustion by failing to raise or preserve it or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense," and (3) "whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements."380 F.3d 680, 686 (2d Cir.2004). [4]

**\*4** Here, the first *Hemphill* factor does not excuse Plaintiff's failure to exhaust: on the face of the Complaint, it is clear that administrative relief was available to Plaintiff through the IGRP process. "To be available under the PLRA, a remedy must afford the possibility of some relief for the action complained of."*Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir.2004) (internal quotation marks omitted). There can be no dispute that each of the conditions complained of by Plaintiff falls within one of the categories to which the IGRP applies. *See* IGRP App. A. Indeed, the Complaint all but concedes that the IGRP process was in fact available to Plaintiff, and that Plaintiff started the process by filing a grievance. (Compl. at 5.) The alleged unresponsiveness of IGRP staff to Plaintiff's grievances does not alter the conclusion that administrative remedies were available to Plaintiff. As discussed above, the IGRP sets deadlines for each stage of the process— including a five-business-day turnaround time for informal resolutions by IGRP staff—and explicitly permits inmates to file appeals if they do not " 'receive a timely disposition at *any stage* of the IGRP process."IGRP § IV.D.10 (emphasis added). Courts in this Circuit have consistently held that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies. *See, e.g., Johnson v. New York City Dep't of Correction*, No. 13–cv–6799 (CM), 2014 WL 2800753, at *6 (S.D.N.Y. June 16, 2014) ("Assuming that Plaintiff filed a timely grievance ... and received no response within five business days[,] ... Plaintiff ... could have taken the next step and requested a hearing."); *Leacock v. New York City Health Hosp. Corp.*, No. 03–cv–5440 (RMB)(GWG), 2005 WL 483363, at *7 (S.D.N.Y. Mar. 1, 2005) ("[T]hat [plaintiff] allegedly did not receive a response to her grievance does not excuse her from failing to exhaust the appellate remedies available to her."); *Burns v. Moore*, No. 99–cv–0966 (LMM)(THK), 2002 WL 91607, at *8 (S.D.N.Y. Jan.24, 2002) ("Thus, even if Plaintiff received no response to his initial grievance, Plaintiff could have sought the next level of review, in this case, to the prison superintendent."). Accordingly, the Court finds that administrative remedies were available to Plaintiff.

Furthermore, the Complaint also does not allege any facts that would excuse non-exhaustion under the second and third *Hemphill* factors—estoppel and special circumstances. There are no allegations that AMKC staff retaliated against Plaintiff or prevented him from pursuing administrative remedies, as would be necessary to support an estoppel argument. [5] *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 178 (2d Cir.2006). There are also no allegations of any special circumstances that would explain and justify Plaintiff's failure to complete the administrative process.

**\*5** That said, the Court is mindful that, under *Bock*, plaintiffs "are not required to specially plead or demonstrate exhaustion in their complaints."549 U.S. at 216. Thus, the Court cannot infer, from the mere absence of allegations that would support an estoppel or special circumstances argument, that no such arguments are available to Plaintiff. Where the merits of an administrative exhaustion defense cannot be determined from the face of a complaint, courts in this Circuit have frequently converted defendants' motions to dismiss to motions for summary judgment on the limited issue of administrative exhaustion. *See, e.g., McCoy v. Goord*, 255 F.Supp.2d 233, 251 (S.D.N.Y.2003); *Stevens*, 2012 WL 4948051, at *3; *Lovick v. Schriro*, No. 12–cv–7419 (ALC) (RLE), 2014 WL 3778184, at *5 (S.D.N.Y. July 25, 2014). The Court takes that course here.

To be sure, some courts in this District and elsewhere have granted motions to dismiss in cases where, on the face of the complaint, it is clear that the prisoner plaintiff did not exhaust administrative remedies and where the complaint does not allege any facts supporting application of the *Hemphill* factors. *See, e.g., Jordan v. Fed. Bureau of Prisons*, No. 09–cv–8561 (ALC), 2013 WL 1143617, at *6 (S.D.N.Y. Mar. 19, 2013); *Martin v. City of New York*, No. 11–cv–600 (PKC) (RLE), 2012 WL 1392648, at *6–7 (S.D.N.Y. Apr. 20, 2012). However, this approach appears to be in tension with the Supreme Court's holding in *Bock* that prisoner plaintiffs are "not required to specially plead or demonstrate exhaustion in their complaints."549 U.S. at 216. In the Court's view, it is hard to reconcile the holding of *Bock*—that a plaintiff need not allege any facts about exhaustion *at all*—with the position that if a plaintiff alleges facts supporting an inference that he did not exhaust administrative remedies, he must then plead additional facts justifying his failure to do so under *Hemphill. Cf. Batley v. Fortier*, No. 09–cv–0742 (GLS) (DEP), 2012 WL 6935254, at *5–6 (N.D.N.Y. Oct. 4, 2012) (noting this tension). Furthermore, it is unrealistic to expect a

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 135 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Garvin v. Rivera, Slip Copy (2015)

2015 WL 876464

*pro se* plaintiff to know that the inclusion of facts reflecting his failure to exhaust administrative remedies triggers an affirmative duty to plead additional facts concerning the relevant *Hemphill* factors that would excuse his failure to exhaust. Absent a clear directive from the Supreme Court or the Second Circuit, the Court declines to impose such a draconian pleading requirement. Accordingly, the Court denies Defendants' motion to dismiss without prejudice to renewal as a Rule 56 motion for summary judgment on the issue of administrative exhaustion.[6]

### IV. PLAINTIFF'S APPLICATION FOR PRO BONO COUNSEL

On May 5, 2014, Plaintiff applied for the appointment of *pro bono* counsel. (Doc. No. 30.) Plaintiff previously made two applications for appointment of *pro bono* counsel, one which was denied by Judge Schofield by Order dated November 4, 2013 and the other which was denied by this Court by Order dated April 2, 2014. (Doc. Nos. 6 & 20.) The Court concludes that its prior determination from the April 2 Order—that the balance of the *Hodge* factors weigh against the appointment of counsel at this time—remains the case. The expected next steps in this litigation will involve Defendants' summary judgment motion on Plaintiff's failure to exhaust administrative remedies. This will require Plaintiff to respond to Defendants' statement of material fact pursuant to Local Civil Rule 56.1 ("56.1 statement") and set forth facts justifying his failure to exhaust under the three-pronged *Hemphill* analysis. The Court has no reason to doubt Plaintiff's ability to represent himself in this regard or to conduct discovery with respect to the excessive force claim that remains. Accordingly, Plaintiff's application for appointment of counsel is denied without prejudice to renewal.

### V. CONCLUSION

*6 For the reasons stated above, IT IS HEREBY ORDERED THAT Defendants' partial motion to dismiss is denied without prejudice to renewal as a motion for summary judgment on the

issue of administrative exhaustion. The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry 23.

IT IS FURTHER ORDERED THAT Plaintiff's application for appointment of *pro bono* counsel is denied without prejudice to renewal at a later point if additional grounds for the application are presented to the Court. Any renewed application should be accompanied by an affidavit establishing facts supporting the *Hodge* factors. The Clerk of the Court is respectfully directed to also terminate the motion pending at docket entry 30.

IT IS FURTHER ORDERED THAT Defendants shall file their motion for summary judgment no later than March 27, 2015. Plaintiff shall respond, if at all, no later than April 24, 2015. Defendant shall reply, if at all, no later than May 1, 2015. The parties shall submit 56.1 statements in connection with Defendants' motion.

The Court reminds Plaintiff that failure to submit responsive 56.1 statements will be deemed an admission of the facts set forth in Defendants' 56.1 statement. Local Civil Rule 56.1(c). The Court also reminds Plaintiff that he bears the burden of demonstrating exhaustion or excuse of exhaustion under the PLRA. Defendants shall serve Plaintiff with a copy of the notice required by Local Civil Rule 56.2, which Plaintiff should read carefully.

IT IS FURTHER ORDERED THAT discovery as to Plaintiff's conditions of confinement and deliberate indifference claims remains stayed pending resolution of Defendants' motion for summary judgment. However, IT IS FURTHER ORDERED THAT, by March 27, 2015, the parties shall submit a proposed case management plan and scheduling order as to discovery for Plaintiff's excessive force claim.

SO ORDERED.

**All Citations**

Slip Copy, 2015 WL 876464

---

**Footnotes**

1    The facts are drawn from the Complaint, which are assumed to be true for purposes of Defendants' motion. (Doc. No. 2 ("Compl.").) *See, e.g., Regan v. New York State Local Ret. Sys., 406 F. App'x 568 (2d Cir 2011).*

2    Defendants have not moved to dismiss Plaintiff's excessive force claims. (Doc. No. 25.)

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.                    4

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Garvin v. Rivera, Slip Copy (2015)

2015 WL 876464

3    As discussed below, in the event that the Court denies summary judgment on the issue of administrative exhaustion,
     Defendants will be permitted to renew their motion to dismiss on these other grounds.

4    Following the Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81, 90–91, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006),
     holding that the PLRA requires 'proper exhaustion' of administrative remedies in 'compliance with an agency's deadlines
     and other critical procedural rules,' the Second Circuit has noted, without holding, that the second and third prongs of
     the *Hemphill* analysis—estoppel and special circumstances—may no longer be applicable. *See Amador v. Andrews*, 655
     F.3d 89, 102 (2d Cir.2011) ("We have questioned whether, in light of *Woodford*, the doctrines of estoppel and special
     circumstances survived.")(citing cases); *see also Dabney v. Pegano*, No. 13–3884, 2015 WL 664562 (2d Cir. Feb.17,
     2015). Nevertheless, the Second Circuit conducted a *Hemphill* analysis in *Amador* itself, 655 F.3d at 102–04, and district
     courts in this Circuit have continued to apply the *Hemphill* framework following *Woodford* and *Amador, see, e.g., Powell
     v. Corr. Med. Care, Inc.*, No. 13–cv–6842 (WHP), 2014 WL 4229980, at *2 n. 3 (S.D.N.Y. Aug. 15, 2014) (collecting
     cases); *Stevens v. City of New York*, No. 12–cv–1918 (JPO)(JLC), 2012 WL 4948051, at *6 (S.D.N.Y. Oct. 11,2012).

5    A plaintiff may also assert an estoppel argument if defendants fail to timely assert an administrative exhaustion defense.
     *Hemphill*, 380 F.3d at 686. That branch of the estoppel inquiry is clearly not implicated here, since Defendants have
     raised their administrative exhaustion defense in this pre-answer motion to dismiss.

6    Because the administrative exhaustion issue is likely dispositive of Plaintiff's conditions of confinement and deliberate
     indifference claims, the Court does not address the other grounds for dismissal raised in Defendants' motion to dismiss.
     Defendants may renew their motion to dismiss on those grounds, if necessary, once the Court has ruled on the
     administrative exhaustion issue.

---

End of Document                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2016 Thomson Reuters. No claim to original U.S. Government Works.                                    5

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 137 of 397
Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Gayle v. Benware, Not Reported in F.Supp.2d (2009)
2009 WL 2223910

2009 WL 2223910
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Robert Edward GAYLE, Plaintiff,
v.
Officer C. BENWARE, Officer S. Carlson,
and Officer D. Williams, Defendants.

No. 08 Civ. 8017(RBM)(FM).
|
July 27, 2009.

**DECISION & ORDER**

RICHARD M. BERMAN, District Judge.

**I. Background**

*1 On or about September 17, 2008, Robert Edward
Gayle ("Plaintiff" or "Gayle") filed a *pro se* complaint
("Complaint") pursuant to 42 U.S.C. § 1983 against
Officer C. Benware, Officer S. Carlson, and Officer D.
Williams (collectively, "Defendants"), alleging, among other
things, that while he was incarcerated at Green Haven
Correctional Facility ("Green Haven"), Defendants injured
him by "punching and kicking" him while Defendants were
restraining and transporting him "to [the] hospital ." (*See*
Compl., dated July 3, 2008, at 3.) In his Complaint, Plaintiff
alleges that he did not "file a grievance" regarding this
incident. (*Id.* at 4.)

On December 29, 2008, Defendants filed a motion to dismiss
pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.")
12(b)(6), arguing, among other things, that Plaintiff "did not
complete the grievance process before filing this action" and
therefore failed "to exhaust his administrative remedies" as
mandated by the Prisoner Litigation Reform Act of 1995
("PLRA"). 42 U.S.C. § 1997e(a). (Mem. of Law in Supp.
of Def.'s Mot. to Dismiss Pl.'s Compl., dated Dec. 29, 2008
("Def.'s Mem."), at 1, 3 .)

On February 18, 2009, in opposition to Defendants' motion,
Plaintiff submitted an affidavit, sworn to on January 23, 2009,
alleging, among other things, that he "requested a grievance
form and a grievance representative, which [he] was denied"
and that he "wrote [his] grievance on a regular piece of paper

and gave it to an officer to mail it out for [him]" but he "never
received [any] response [because] most likely that officer
never mailed it out." (Aff. of Robert Edward Gayle, sworn to
on Jan. 23, 2009 ("Gayle Aff."), at 1.)

On July 6, 2009, United States Magistrate Judge Frank Maas,
to whom the matter had been referred, issued a thorough
report and recommendation ("Report"), recommending that
Defendants' motion be denied because, among other reasons,
when "taking Gayle's pleadings as a whole and construing
them liberally, Gayle has made a prima facie showing
that he reasonably attempted to obtain a grievance form,
access a representative, and mail a grievance through prison
officials."(Report at 9.)

Although the Report advised that, pursuant to 28 U.S.C. §
636(b) (1) and Fed.R.Civ.P. 6(a), 6(d), and 72, "the parties
shall have ten days from the service of this [Report] to file
written objections," (Report at 9,) to date, neither party has
filed objections. (*See* Ltr. from John Knudsen to Hon. Richard
M. Berman, dated July 23, 2009 ("Defendants will not file
objections to the Report".) )

**For the reasons stated below, the Report is adopted in its
entirety.**

**II. Standard of Review**
The Court may adopt those portions of a report and
recommendation to which no objections have been made and
which are not clearly erroneous. *See Thomas v. Arn,* 474
U.S. 140, 149 (1985). The Court may "accept, reject, or
modify, in whole or in part, the findings or recommendations
made by the magistrate judge."28 U.S.C. § 636(b)(1); *see
also*Fed.R.Civ.P. 72(b); *Grassia v. Scully,* 892 F.2d 16, 19
(2d Cir.1989).

*2 Where, as here, a petitioner is proceeding *pro se,*
the Court construes the petitioner's claims liberally, *see
Marmolejo v. United States,* 196 F.3d 377, 378 (2d Cir.1999),
and will "interpret them to raise the strongest arguments
that they suggest,"*Burgos v. Hopkins,* 14 F.3d 787, 790 (2d
Cir.1994).

**III. Analysis**
The facts and procedural history set forth in the Report are
incorporated herein by reference. Having conducted a review
of the Report (and applicable legal authorities), the Court
finds that the Report is not clearly erroneous and, in fact, is in

2016 WL 1295137

Gayle v. Benware, Not Reported in F.Supp.2d (2009)
2009 WL 2223910

conformity with the law. *See Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991).

Judge Maas properly concluded that Defendants' motion should be denied because, among other reasons, Plaintiff claims that he "reasonably attempted to [file] a grievance" but "the actions of the Green Haven staff prevented him from doing so" when they allegedly denied his requests for "a grievance form and access to a grievance representative" and allegedly failed "to mail [Plaintiff's informal] grievance." (Report at 7, 9 (citing Gayle Aff.)); *see Hemphill v. New York,* 380 F.3d 680, 688 (2d Cir.2004); *see also Lahoz v. Orange County,* No. 08 Civ. 3589, 2009 WL 666950, at *5 (S.D.N.Y. Mar. 12, 2009) ("Because [plaintiff] was denied recourse to the grievance procedures, his failure to exhaust procedural remedies must be excused."); *Taylor v. Zerillo,* No. 08 Civ. 1484, 2008 WL 4862690, at *2 (E.D.N.Y. Nov. 10, 2008) (denying motion to dismiss for failure to exhaust administrative remedies because, among other reasons, plaintiff alleged that he "was not given any grievance forms" and that he "complained to the warden in writing but received no response").

**IV. Conclusion and Order**
For the reasons set forth herein and therein, the Court adopts Judge Maas's Report in its entirety and denies Defendants' motion to dismiss [# 7].

**REPORT AND RECOMMENDATION TO THE HONORABLE RICHARD M. BERMAN**

FRANK MAAS, United States Magistrate Judge.

In this prisoner civil rights action brought under 42 U.S.C. § 1983, *pro se* plaintiff Robert Gayle ("Gayle") alleges that certain corrections officers ("Defendants") at the Green Haven Correctional Facility ("Green Haven") injured him by using excessive force while restraining and transporting him. (*See* Docket No. 2) (Complaint). The Defendants have filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that Gayle did not complete the requisite administrative grievance process before commencing this action. For the reasons set forth below, the Defendants' motion (Docket No. 7) should be denied.

**I. Background**

Gayle's complaint arises out of an incident that allegedly occurred at Green Haven on June 24, 2008. (Complaint ¶ II(C)). According to Gayle, during a facility frisk Defendant Officer Benware accused Gayle of throwing a slipper at him, then ordered Gayle to lie on the bed with his hands behind his back, grabbed his arms, handcuffed him from behind, and proceeded to punch and kick him. (*Id.* ¶ II(D)). Officer Benware allegedly subsequently turned Gayle over to Defendant Officers Carlson and Williams, who escorted Gayle to an outside hospital, beating him all the while. (*Id.*). Gayle contends that he suffered numerous injuries as a result of the incident, including a "transfusion for heart failure," chest abrasions, numbness in his wrist and leg, and bruising. (*Id.* ¶ III). Upon his release from the hospital, Gayle was placed in the Special Housing Unit ("SHU") at Green Haven, where he remained for twenty-eight days. (Docket No. 12) (Aff. of Robert E. Gayle, sworn to on Jan. 23, 2009 ("Gayle Aff.")).

*3 In his complaint, Gayle conceded that he had not filed a grievance about the incident with Green Haven or any other correctional facility. (*See* Complaint ¶ IV(D)). Additionally, although the *pro se* prisoner complaint form provided spaces for Gayle to explain his failure to file a grievance, Gayle did not offer a reason or indicate that he had spoken with prison officials about his claim. (*Id.* ¶ IV(F)). Indeed, Gayle stated that he did not know whether Green Haven has a grievance procedure, or whether any grievance procedure would cover his claims. (*Id.* ¶¶ IV(B), (C)).

On December 11, 2008, I held a telephone conference with the parties during which Gayle indicated that he failed to file a formal grievance because of his physical condition and because "no one would answer to [him] filing a grievance [when he was] put into [the] SHU after coming from the hospital." (*See* Tr. of Tel. Conf. dated Dec. 11, 2008, at 3–5). After opposing counsel indicated that the Defendants intended to move to dismiss Gayle's case based upon his failure to exhaust his remedies, I cautioned Gayle that he should, at minimum, submit an affidavit explaining why he did not or could not grieve (*Id.* at 10).

On December 18, 2008, even before the defense motion was filed, Gayle submitted a "Notice of Motion" form to my Chambers in an apparent attempt to explain the circumstances surrounding his failure to grieve. Gayle stated that he "couldn't possi[]bly file a grievance under the security of the correctional facility." (*See* Notice of Mot., dated Dec. 18, 2008 ("Notice of Mot.")). He added that, "[i]n the complaint[,] it

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 139 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Gayle v. Benware, Not Reported in F.Supp.2d (2009)

2009 WL 2223910

were checked off [']not file, ['] because of security[.] It is a criminal matter of the defendants involve [d]." (*Id.*). He thus again conceded that he had not filed a grievance.

On December 29, 2008, the Defendants filed their motion to dismiss. (Docket No. 7). Thereafter, on January 8, 2009, Your Honor referred the motion to me for a Report and Recommendation. (Docket No. 9).

In opposition to the Defendants' motion, Gayle has now submitted an affidavit in which states that while he was in the SHU, he "requested a grievance form and a grievance representative, which [he] was denied and never seen."(Docket No. 12) (Gayle Aff.). Gayle further alleges that he "wrote [his] grievance on a regular piece of paper and gave it to an officer to mail it out for [him], to which [he] never received no response, most likely they never mailed it out".(*Id.*). Gayle's affidavit does not indicate the name of the officer to whom he allegedly gave his grievance.

**II. *Applicable Law***

**A. *Motion to Dismiss***

Under Rule 12(b)(6), a court may dismiss a complaint if it fails to state a claim upon which relief can be granted. In reviewing a Rule 12(b)(6) motion, the Court must accept as true all factual allegations made in the complaint and draw all reasonable inferences in favor of the plaintiff. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164 (1993); *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996). As the Supreme Court recently has explained, the issue that must be decided under Rule 12(b)(6) is whether the plaintiff's claims are "plausible." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007). This requires the Court to apply a "flexible" standard, pursuant to which a pleader must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."*Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007) (emphasis omitted).

*4 When a party proceeds *pro se*, the Court is obligated to "read [the pro se party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest."*Sloane v. Mazzuca,* No. 04 Civ. 8266(KMK), 2006 WL 3096031, at *3 (S.D.N.Y. Oct. 31, 2006) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)) (brackets and ellipsis in original); *see also Davis v. Kelly,* 160 F.3d 917, 922 (2d Cir.1998) ("Though a court need not act as an advocate for *pro se* litigants, in *pro se* cases there is a

greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done.") (internal quotation marks and citation omitted). This principle applies with particular force when, as in this case, a *pro se* plaintiff alleges civil rights violations. *See Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). Moreover, because Gayle is a *pro se* litigant, the Court may appropriately consider his "additional materials, such as his opposition memorandum" in assessing the legal sufficiency of his claims. *See Crum v. Dodrill,* 562 F.Supp.2d 366, 374 n. 13 (N.D.N.Y.2008) (quoting *Gadson v. Goord,* No. 96 Civ. 7544(SS), 1997 WL 714878, at *1 n. 2 (S.D.N.Y. Nov. 17, 1997)).

**B. *Prisoner Litigation Reform Act***

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S .C. § 1997e(a), a prisoner must exhaust any available administrative remedies before he may challenge prison conditions in federal court. This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."*Porter v. Nussle,* 534 U.S. 516, 532 (2002). When a prisoner seeking damages plausibly seeks to counter a defendant's claim that he has failed to exhaust available remedies, the court must ask: "(1) whether administrative remedies were actually available, (2) whether the defendants forfeited their right to raise the affirmative defense or by their own actions precluded the plaintiff from using administrative grievance procedures, and (3) whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative exhaustion requirements."*Singh v. Goord,* 520 F.Supp.2d 487, 495–96 (S.D.N.Y 2007) (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004)); *see also Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004) (failure to exhaust under the PLRA is an affirmative defense subject to estoppel).

The New York State correctional system, of which Green Haven is a unit, has implemented an Inmate Grievance Program ("IGP") which permits an inmate to file complaints with the facility's Inmate Grievance Resolution Committee ("IGRC").*See*N.Y. Comp.Codes R. & Regs. tit. 7, § 701.1(c). The inmate can appeal an adverse IGRC decision to the facility superintendent, and from there to a committee of central office staff. *Id.* A complaint must be submitted to the IGP clerk within twenty-one calendar days of the incident on an "inmate grievance complaint form," or on plain paper if the form is not readily available. *Id.* § 701.5(a)(1). The IGP

WESTLAW    © 2016 Thomson Reuters. No claim to original U.S. Government Works.    3

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 140 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Gayle v. Benware, Not Reported in F.Supp.2d (2009)

2009 WL 2223910

requires that a supply of inmate grievance complaint forms be "maintained in all special housing areas and ... be given to inmates requesting them."*Id.* § 701.7(a)(1). In addition, an "IGRC staff member ... or grievance supervisor shall make rounds of all special housing areas ... at least once a week to allow inmates direct access to the program."*Id.* § 707.7(c) (1).

### III. *Discussion*

\*5 It is clear that Gayle did not file a formal grievance about the June 24 incident despite the existence of an administrative remedy. Moreover, the Defendants are understandably put out that Gayle has alleged for the first time at the eleventh hour that he attempted to file a grievance. (*See* Reply at 3). Reading Gayle's papers collectively, however, and viewing his allegations in the light most favorable to him, Gayle clearly avers that he *attempted* to file a grievance pursuant to the IGP, but that the actions of the Green Haven staff prevented him from doing so. *See Hemphill,* 380 F.3d at 686.Specifically, in his affidavit, Gayle states that while he was in the SHU, he requested a grievance form and access to a grievance representative. (Gayle Aff.). Although both are to be provided to inmates in the SHU, *see*N.Y. Comp.Codes R. & Regs. tit. 7, §§ 707.7(a)(1), (c)(1), Gayle indicates that these requests were denied, (Gayle Aff.). Gayle also states that he instead wrote his grievance on a piece of paper and gave it to an officer to mail. (*Id.*). The IGP permits this method of grieving to be employed when official complaint forms are not available. N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5(a)(1). According to Gayle, he never received a response to his grievance and was concerned that the officer did not actually mail the grievance. (Gayle Aff.).

In these circumstances, Gayle's complaint cannot be dismissed for failure to exhaust administrative remedies. Admittedly, Gayle does not identify which Green Haven staff members he asked for a complaint form or representative, or the officer to whom he allegedly gave his grievance for mailing. He seems to suggest, however, that the Defendants may have impeded his access to the grievance process. (See Notice of Mot.). If any of the Defendants did, in fact, prevent Gayle from grieving pursuant to the IGP's requirements, their exhaustion defense might be forfeited. *See Hemphill,* 380 F.3d at 690 (petitioner's allegations of threats may estop defendants from asserting exhaustion defense); *Ziemba,* 366 F.3d at 162–63 (exhaustion defense may be estopped where defendants allegedly beat and threatened petitioner, and denied grievance forms and writing implements); *Sereika v. Patel,* 411 F.Supp.2d 397, 403 (S.D.N.Y.2006) ("Where a plaintiff alleges that the

defendant made misrepresentations that inhibited the plaintiff from participating in the grievance process, dismissal of the complaint for failure to exhaust is not appropriate."); *DeMartino v. Zenk,* No. 04 Civ. 3880(SLT)(LB), 2006 WL 1455456, at \*5 (E.D.N.Y. May 25, 2006) (declining to hold that plaintiff failed to exhaust when defendants may have prevented plaintiff "from submitting timely grievance forms by misplacing or losing his documents, or denying him access to a photocopier").

Moreover, even if the Defendants themselves were not directly involved, interference by *any* Green Haven staff members would have rendered the IGP constructively unavailable to Gayle. "Where a prisoner has made a 'reasonable attempt' to file a grievance, and prison officials have prevented the prisoner from filing that grievance, the grievance procedures are not 'available' to the [prisoner], and thus the [PLRA] does not preclude the prisoner from suing in federal court."*Thomas v. New York State Dep't of Corr. Servs.,* No. 00 Civ. 7163(NRB), 2002 WL 31164546, at \*3 (S.D.N.Y. Sept. 30, 2002); *see also Miller v. Norris,* 247 F.3d 736, 740 (8th Cir.2001) ("a remedy that prison officials prevent a prisoner from utilizing is not an available remedy" under the PLRA) (cited with approval by *Abney v. McGinnis,* 380 F.3d 663, 669 (2d Cir.2004)).

\*6 Here, taking Gayle's pleadings as a whole and construing them liberally, Gayle has made a prima facie showing that he reasonably attempted to obtain a grievance form, access a representative, and mail a grievance through prison officials. While these assertions may ultimately not prove credible, at this preliminary stage the Court cannot say, as a matter of law, that they are implausible. Accordingly, although there is ample reason to question the veracity of Gayle's latest representations, I reluctantly conclude that the Defendants' motion must be denied.

### IV. *Conclusion*

For the foregoing reasons, the Defendants' motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6) for lack of administrative exhaustion, (Docket No. 7), should be denied.

### V. *Notice of Procedure for Filing of Objections to this Report and Recommendation*

The parties shall have ten days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also*Fed.R.Civ.P. 6(a) and (d). Any

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.    4

Case 9:25-cv-00083-BKS-TWD   Document 29   Filed 01/20/26   Page 141 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Gayle v. Benware, Not Reported in F.Supp.2d (2009)
2009 WL 2223910

such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard B. Berman and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Berman. The failure to file these timely objections

will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 2223910

End of Document

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 142 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Groves v. Davis, Not Reported in F.Supp.2d (2012)

2012 WL 651919

2012 WL 651919
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kenneth Carl GROVES, Sr., Plaintiff,

v.

Brett DAVIS, Secure Care Treatment Aid; David
W. Sill, Secure Care Treatment Aid; Thomas
Nicolette, RN, Ward Nurse; Charmaine Bill,
Treatment Team Leader; Jill E. Carver, Social
Worker, Primary Therapist; Edwin Debroize,
Psychologist Assist; Jeff Nowicki, Chief of Mental
Health Treatment Serv.; Terri Maxymillian,
Ph.D., Dir. of Mental Health Serv.; Sgt. Sweet,
Security Services, CNYPC; Michael Hogan,
Comm'r, Dep't of Mental Health, Defendants.

No. 9:11–CV–1317 (GTS/RFT).
|
Feb. 28, 2012.

**Attorneys and Law Firms**

Kenneth Carl Groves, Sr., Marcy, NY, pro se.

*MEMORANDUM DECISION and ORDER*

Hon. GLENN T. SUDDABY, District Judge.

*\*1 Currently before the Court, in this *pro se* civil rights
action filed by Kenneth Carl Groves, Sr. ("Plaintiff"), against
numerous employees of New York State or the Central
New York Psychiatric Center ("Defendants"), are Plaintiff's
motion to proceed *in forma pauperis*, his motion for a
temporary restraining order and preliminary injunction, and
his motion for appointment of counsel. (Dkt.Nos.2, 3, 4.)[1]
For the reasons set forth below, Plaintiff's motion to proceed
*in forma pauperis* is granted; his motion for a preliminary
injunction is denied; his motion for appointment of counsel
is denied; Plaintiff's claims of deliberate indifference to his
mental health needs against Defendants Bill, Carver and
DeBroize are *sua sponte* dismissed with prejudice; Plaintiff's
claims against Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, and Hogan arising from their alleged personal
involvement in the August 8, 2011 assault are *sua sponte*
dismissed without prejudice and with leave to amend in this

action in accordance with Fed.R.Civ.P. 15; Sgt. Sweet is *sua
sponte* dismissed without prejudice as a Defendant in this
action; the Clerk is directed to issue summonses, and the U.S.
Marshal is directed to effect service of process on Defendants
Davis, Sill, and Nicolette.

**I. RELEVANT BACKGROUND**

On November 7, 2011, Plaintiff commenced this action
*pro se* by filing a civil rights Complaint, together with
a motion to proceed *in forma pauperis*. (Dkt. Nos.1, 2.)[2]
Liberally construed, Plaintiff's Complaint alleges that the
following constitutional violations against him occurred
during his confinement at Central New York Psychiatric
Center ("CNYPC"): (1) Defendants Davis and Sill used
excessive force against him under the Eighth and/or
Fourteenth Amendments; (2) Defendant Nicolette knew of
and failed to take action to protect Plaintiff from the
assault under the Eighth and/or Fourteenth Amendments;
(3) Defendants Bill, Carver, and DeBroize were deliberately
indifferent to his mental health needs under the Eighth and/
or Fourteenth Amendments; and (4) Defendants Bill, Carver,
DeBroize, Nowicki, Maxymillian, Bosco, and Hogan failed
to "adequately train the staff under their supervision" and
to take appropriate action in response to the incident. (See
*generally*Dkt. No. 1.) For a more detailed description of
Plaintiff's claims, and the factual allegations giving rise to
those claims, the reader is referred to Part III.B of this
Decision and Order.

**II. MOTION TO PROCEED** *IN FORMA PAUPERIS*

Because Plaintiff sets forth sufficient economic need, the
Court finds that Plaintiff may properly commence this action
*in forma pauperis*.(Dkt. No. 2.)

**III. *SUA SPONTE* REVIEW OF PLAINTIFF'S
COMPLAINT**

In light of the foregoing, the Court must now review the
sufficiency of the allegations that Plaintiff has set forth in
his Complaint in light of 28 U.S.C. § 1915(e)(2)(B). This is
because Section 1915(e)(2)(B) directs that, when a plaintiff
seeks to proceed *in forma pauperis*,"(2) ... the court shall
dismiss the case at any time if the court determines that—...
(B) the action ... (i) is frivolous or malicious; (ii) fails to state a
claim on which relief may be granted; or (iii) seeks monetary
relief against a defendant who is immune from such relief."28
U.S.C. § 1915(e)(2)(B).[3]

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Groves v. Davis, Not Reported in F.Supp.2d (2012)

2012 WL 651919

**A. Governing Legal Standard**

**\*2** It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a) (2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court cases). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n .17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–51, 173 L.Ed.2d 868 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74.The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id .* at 1965.More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

**\*3** As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."*Iqbal,* 129 S.Ct. at 1949."[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief."*Id.* at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully,"*id.,* it "does not impose a probability requirement."*Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice."*Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 144 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Groves v. Davis, Not Reported in F.Supp.2d (2012)
2012 WL 651919

*Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted).Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."*Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[4] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[5] Stated more simply, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."*Jackson*, 549 F.Supp.2d at 214, n. 28 [citations omitted].[6]

**B. Analysis of Plaintiff's Complaint**

The Court prefaces its analysis of Plaintiff's Complaint by noting that, although Plaintiff is a civilly committed sex offender and no longer a prisoner, the Court will look to cases addressing prisoner's rights in analyzing Plaintiff's claims, because "confinement of civilly committed patients is similar to that of prisoners."*Holly v. Anderson*, 04–CV–1489, 2008 WL 1773093, at *7 (D.Minn. Apr.15, 2008); *see also Morgan v. Rabun*, 128 F.3d 694, 697 (8th Cir.1997) ("The governmental interests in running a state mental hospital are similar in material aspects to that of running a prison."). Thus, whereas claims of excessive force by convicted criminals are analyzed under the Eighth Amendment to the United States Constitution, because Plaintiff is a civilly committed sex offender and no longer a prisoner, his substantive rights to be free from unsafe conditions of confinement arise under the Due Process Clause of the Fourteenth Amendment. In *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court stated "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed–who may not be punished at all–in unsafe conditions."*Youngberg*, 457 U.S. at 315–16. As have numerous other courts which have considered the issue, this Court has found that "the standard for analyzing a civil detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard."*Groves v. Patterson*, 09–CV–1002,

Memorandum–Decision and Order at *15–16 (N.D.N.Y. filed Nov. 18, 2009).[7]

**1. Excessive Force Claims Against Defendants Davis, Sill and Nicolette**

*4 Plaintiff alleges that on August 8, 2011, Defendant Davis entered Plaintiff's dorm room at CNYPC and "viciously attacked and brutally assaulted and battered" him. (Dkt. No. 1 at 4.) During the course of this assault, Defendant Sill is alleged to have entered Plaintiff's room and "jump[ed] on the plaintiff's legs holding and pinning them as Defendant Davis [continued to beat Plaintiff]."(*Id.*)As alleged in the Complaint, although Defendant Nicolette knew in advance that this assault was planned, he "remained in the Nurses Station" and "did nothing to interceed [sic] or stop the brutal attack on the plaintiff."(*Id.* at 5.)

To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must allege the following: (1) subjectively, that the defendants acted wantonly and in bad faith; and (2) objectively, that the defendants' actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262–63 (2d Cir.1999) (internal quotation marks omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 [1992] ).

Here, construing the factual allegations of Plaintiff's Complaint with special leniency, the Court finds that Plaintiff appears to have alleged facts plausibly suggesting that he was subjected to excessive force by Defendants Davis and Sill. In addition, by alleging that Defendants Davis, Sill and Nicolette discussed the assault in advance of it occurring, and that Nicolette was in the vicinity of Plaintiff's room and had an opportunity to intervene to prevent it, the Complaint sufficiently alleges that Defendant Nicolette was personally involved and/or failed to protect Plaintiff from the assault. *See Bhuiyan v. Wright*, 06–CV–0409, 2009 WL 3123484, at *7 (N.D.N.Y. Sept.29, 2009) (Scullin, J.) ("The fact that defendant Davis was not in the room, but was acting as a 'lookout' so that no one came into the room while plaintiff was being beaten, would not absolve him from liability for the assault. An officer's failure to intervene during another officer's use of excessive force can itself constitute an Eighth Amendment violation unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it."); *Jeffreys v. Rossi*, 275 F.Supp.2d 463, 474 (S.D.N.Y.2003) (holding that an officer may be personally involved in the use of excessive force if he either directly participates in the

---

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Groves v. Davis, Not Reported in F.Supp.2d (2012)
2012 WL 651919

assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so).

As a result, a response to these claims is required from Defendants David, Sill, and Nicolette. In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

**2. Deliberate Indifference Claims Against Defendants Bill, Carver and DeBroize**

Plaintiff alleges that on August 9, 2011, the day after the alleged assault, he attempted to "discuss the incident and what transpired" with Defendants Bill and Carver. (Dkt. No. 1 at 5.) Plaintiff alleges that Defendant Bill told him, "I don't want to discuss this Mr. Groves, we're too busy for your foolishness and the matter is being investigated."(*Id.*) Plaintiff's effort to explain that he was frightened by the incident was rebuffed by Defendant Bill, who told Plaintiff to "grow up." (*Id.* at 5–6.)The following day, Plaintiff attempted to discuss the incident with Defendant Carver, his primary therapist, again without success. A further attempt at discussion later that day was met with Defendant Carver "stating to the plaintiff in a snotty tone 'grow the hell up!' " (*Id.* at 6.) On August 10, 2011, Plaintiff attempted to discuss the incident "and his current fears and feelings," during his Monday afternoon "Process Group," which is facilitated by Defendant DeBroize. As alleged, Defendant DeBroize told Plaintiff and the other group members that the matter was under investigation "so no one could discuss the incident with any one." (*Id.* at 6.)

**\*5** To state a claim of deliberate indifference to a serious medical and/or mental health need under the Eighth Amendment, a plaintiff must first allege facts plausibly suggesting that prison officials acted with "deliberate indifference to serious medical needs."*Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)."[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,*970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "First, the alleged deprivation must be, in objective terms, 'sufficiently

serious.' " *Id.* (citations omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.*

With regard to the first element, generally, to be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain."*Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway,* 37 F.3d at 66; *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).). [8] Under the subjective component, a plaintiff must also allege facts plausibly suggesting that the defendant acted with "a sufficiently culpable state of mind."*Hathaway,* 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A physician's negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a Section 1983 action. *Estelle,* 429 U.S. at 105–06, *Chance,* 143 F.3d at 703. [9]

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendants Bill, Carver, and DeBroize acted with deliberate indifference to Plaintiff's serious mental health condition when they declined to discuss the incident of August 8, 2011. There is nothing in the Complaint that even remotely suggests that the requested conversations were integral to Plaintiff's treatment as a convicted sex offender involuntarily committed to CNYPC, or that Defendants' refusal to discuss the incident with Plaintiff when he requested to do so caused Plaintiff to suffer any harm or worsening of his condition. In addition, Plaintiff does not allege that any of these Defendants acted with the requisite culpable state of mind.

Moreover, the statements made by Defendants Bill and Carver that he should "grow up," even if construed as verbal harassment, do not give rise to a cognizable claim that may be pursued under Section 1983. Allegations of verbal harassment are insufficient to support a Section 1983 claim. *Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) ("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged.").

**\*6** For these reasons, Plaintiff's deliberate indifference claims against Defendants Bill, Carver, and DeBroize are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Groves v. Davis, Not Reported in F.Supp.2d (2012)
2012 WL 651919

Fed.R.Civ.P. 12(b)(6). Moreover, because the Court cannot imagine how Plaintiff might correct this claim through better pleading, he is not granted leave to attempt to do so in an amended pleading. [10] Rather, this claim is hereby dismissed with prejudice.

**3. Failure to Supervise Claims Against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan**

To prevail on a claim under 42 U.S.C. § 1983, a defendant must be personally involved in the plaintiff's constitutional deprivation. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Generally, for purposes of 42 U.S.C. § 1983, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. [11]

Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. *McKinnon,* 568 F.2d at 934. Rather, a plaintiff must demonstrate " 'a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* 04–CV–7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar.31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 [2d Cir.1986] ) (other citation omitted). An official's failure to respond to grievance letters from inmates, however, "does not establish supervisory liability." *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997). [12] Moreover, "the law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine v. Seally,* 9–CV–1198, 2011 WL 856426, at *9 (N.D.N.Y. Feb.4, 2011). [13]

In his Complaint, Plaintiff alleges in wholly conclusory terms that Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan failed to "adequately train the staff under their supervision and fail[ed] to act within the scope and training of the position and job title they hold."(Dkt. No. 1 at 8.) Plaintiff alleges that he submitted a letter of complaint to Defendant Hogan and wrote to Defendant Nowicki on several occasions expressing concern his complaint had not been responded to, only to be advised that in September, 2011 that an investigation was ongoing. (*Id.* at 6–7.)Plaintiff does

not allege that any of these Defendants personally participated in the alleged assault on August 8, 2011.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting any personal involvement in these Defendants in the alleged used of excessive force on August 8, 2011. As a result, Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from this incident are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). This dismissal is without prejudice to Plaintiff's right to file an Amended Complaint that corrects the above-described pleading defects, and states a viable claim against these Defendants. The Court notes that, at this early stage of the case, Plaintiff has the right—without leave of the Court—to file an Amended Complaint within the time limits established by Fed.R.Civ.P. 15(a)(1)(B). However, if he seeks to file an Amended Complaint after those time limits, he must file a motion for leave to file an Amended Complaint in accordance with Fed.R.Civ.P. 15(a)(2). In either event, Plaintiff is advised that *any Amended Complaint must be a complete pleading that will replace and supersede the original Complaint in its entirety, and that may not incorporate by reference any portion of the original Complaint. See* N.D.N.Y. L.R. 7.1(a) (4).

*7 Finally, although Plaintiff names Sgt. Sweet as a Defendant in the caption of the complaint and in the listing of the parties, he has not set forth in the Complaint any allegations of fact regarding the conduct of this Defendant complained of. (*See generally*Dkt. No. 1.) As a result, the Complaint fails to state a claim upon which relief may be granted and Sgt. Sweet is dismissed from this action without prejudice to Plaintiff's right to file an Amended Complaint as set forth above.

**IV. MOTION FOR INJUNCTIVE RELIEF**

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter."*Patton v. Dole,* 806 F.2d 24, 28 (2d Cir.1986). In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in favor of the moving party. *D.D. ex rel. V.D. v. New York City Bd. of Educ.,* 465 F.3d 503, 510 (2d Cir.2006) (quotation omitted)."The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 147 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Groves v. Davis, Not Reported in F.Supp.2d (2012)

2012 WL 651919

opportunity to rule on the ... merits.' " *Candelaria v. Baker,* 00–CV–912, 2006 WL 618576, at \*3 (W.D.N.Y. Mar.10, 2006) (quoting *Dewose v. Herrington,* 42 F.3d 470, 471 [8th Cir.1994] ). Preliminary injunctive relief " 'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Moore v. Consolidated Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 [1997] ). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore,* 409 F.3d at 510 (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). The same standards govern consideration of an application for a temporary restraining order. *Perri v. Bloomberg,* 06–CV–0403, 2008 WL 2944642, at \*2 (E.D.N.Y. Jul.31, 2008) [citation omitted]. The district court has broad discretion in determining whether to grant a preliminary injunction.*Moore,* 409 F.3d at 511.

"The Second Circuit has defined 'irreparable harm' as 'certain and imminent harm for which a monetary award does not adequately compensate,' noting that 'only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief.' " *Perri,* 2008 WL 2944642, at \*2 (citing *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,* 339 F.3d 101, 113–14 [2d Cir.2003] ); *see also Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir.2002) ("To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing threat of harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.") (internal quotation omitted). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons,* 461 U.S. 95, 111–12, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *see also Hooks v. Howard,* 07–CV–0724, 2008 WL 2705571, at \*2 (N.D.N.Y. Jul.3, 2008) (citation omitted) ("Irreparable harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages.").

\*8 Plaintiff has submitted a document entitled "Order to Show Cause for Preliminary Injunction and Tempor[ary] Restraining Order."(Dkt. No. 3.) Construed liberally, Plaintiff's submission seeks a temporary restraining order and injunctive relief enjoining Defendants from "submitting and filing false and untrue statements and reports" regarding the August 11, 2011 incident, and to "stop all retaliatory actions against the plaintiff ..." (*Id.* at 1.) Plaintiff also seeks an

"Order of Seperation [sic]" directing that Defendants Davis, Sill, Nicolette, Bill, Carver and DeBroize be "restrained from being within 100 feet from the plaintiff in any form or matter." (*Id.* at 2.)

The Court has reviewed Plaintiff's motion papers thoroughly and considered the claims asserted therein in the light most favorable to Plaintiff, as a *pro se* litigant. Based upon that review, the Court finds that the harm Plaintiff alleges is purely speculative and, therefore, not "irreparable." Plaintiff's motion is supported only by a recitation of the alleged assault in August, 2011. (*Id.* at 1–4.)Plaintiff has not supported the claims of ongoing misconduct set forth in his motion papers with any factual allegations, such as the dates on which the misconduct occurred, the nature of the injuries he claims to have suffered, the identities of the persons responsible for the conduct he seeks to enjoin, or the relationship between those actions and the claims asserted in his Complaint. Simply stated, Plaintiff's alleged fear of future wrongdoing by the Defendants is not sufficient to warrant the extraordinary remedy of preliminary injunctive relief.

The Court further notes that the requested injunctive relief cannot be granted unless there is also proof that Plaintiff has a likelihood of succeeding on the merits of his claim, or evidence that establishes sufficiently serious questions going to the merits of his claim and a balance of hardships tipping decidedly toward him. *See Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir.1992). Plaintiff has failed to submit *proof or evidence* that meets this standard. Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F.Supp. 547, 561 (E.D.N.Y.1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.,* 792 F.Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Without evidence to support his claims that he is in danger from the actions of anyone at CNYPC, the Court will not credit Plaintiff's conclusory allegations that he will be retaliated against or harmed in the future.

Plaintiff has failed to establish either of the two requisite elements discussed above. As a result, Plaintiff's request for a temporary restraining order and/or injunctive relief is denied.

**V. MOTION FOR APPOINTMENT OF COUNSEL**

\*9 Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 148 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Groves v. Davis, Not Reported in F.Supp.2d (2012)

2012 WL 651919

party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 [2d Cir.1986] ). This is not to say that all, or indeed any, of these factors are controlling in a particular case.[14] Further, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

Upon due consideration, the Court finds that the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example, the Court finds as follows: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez,* 899 F.Supp. at 974; (4) if this case survives any dispositive motions filed by Defendants, *it is highly probable that this Court will appoint trial counsel at the final pretrial conference;* (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation; and (6) Plaintiff's motion for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

For these reasons, Plaintiff's motion for the appointment of counsel is denied without prejudice. After the Defendants have responded to the allegations in the Complaint which survive *sua sponte* review, and the parties have undertaken discovery, Plaintiff may file a second motion for the appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Plaintiff is advised that any second motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

**\*10 ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is *GRANTED;*[15] and it is further

**ORDERED** that Plaintiff's motion for injunctive relief (Dkt. No. 3) is *DENIED;* and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is *DENIED* without prejudice; and it is further

**ORDERED** that Plaintiff's claims of deliberate indifference against Defendants Bill, Carver and DeBreize are *sua sponteDISMISSED* **with prejudice** pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's claims against Defendants Bill, Carver, DeBreize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 incident are *sua sponteDISMISSED* **without prejudice and with leave to amend** in this action in accordance with Fed.R.Civ.P. 15 (as described above in Part III.B.3. of this Decision and Order), pursuant to 28 U.S.C. § 1915(e)(2)(B) (ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Defendant Sweet is *sua sponteDISMISSED* **without prejudice and with leave to be reinstated** as a Defendant in this action in accordance with Fed.R.Civ.P. 15, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is otherwise accepted for filing (i.e., as to the claims against Defendants Davis, Sill, and Nicolette arising from the August 8, 2011 incident); and it is further

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Groves v. Davis, Not Reported in F.Supp.2d (2012)

2012 WL 651919

**ORDERED** that Plaintiff provide a summons, USM-285 form and a copy of the complaint for Defendant Davis, Sill and Nicolette for service, and upon receipt from Plaintiff of the documents required for service of process, the Clerk shall (1) issue summonses and forward them, along with copies of the Complaint to the United States Marshal for service upon the remaining Defendants, and (2) forward a copy of the summons and Complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that, after service of process on Defendants, a response to the Complaint shall be filed by the Defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261–7367. **Any paper sent by a party to the Court**

or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to so may result in the dismissal of this action.** All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 651919

Footnotes

1    This is the fourth civil rights action filed by Plaintiff in this District. Generally, two of these actions arose out of Plaintiff's refusal to consent to a strip search and the subsequent actions taken against Plaintiff as a result of his refusal. See Groves v. New York, 09–CV–0406, Decision and Order (N.D.N.Y. filed May 11, 2009) (Hurd, J.) (sua sponte dismissing complaint pursuant to 28 U.S.C. § 1915[e][2][B] ); Groves v. The State of New York, 9:09–CV–0412, Decision and Order (N.D.N.Y. filed Mar. 26, 2010) (Sharpe, J.) (granting defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12[b][6] ). The third action alleged numerous violations of Plaintiff's constitutional rights during the period July 23, 2009, and August 26, 2009, and was dismissed without prejudice upon Plaintiff's request in October, 2010. See Groves v. Maxymillian, 9:09–CV–1002, Decision and Order (N.D.N.Y. filed Oct. 8, 2010) (Suddaby, J.). As a result, it does not appear that the current action is barred because of res judicata, collateral estoppel, and/or the rule against duplicative litigation.
2    At that time, Plaintiff also filed motions for injunctive relief and for appointment of counsel. (Dkt.Nos.3, 4.)
3    The Court notes that, similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).
4    See Vega v. Artus, 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); Rusyniak, 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).
5    See Vega, 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); Rusyniak, 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).
6    It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in Twombly, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in Erickson v. Pardus, in which (when reviewing a pro se pleading) the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a) (2).Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in Conley and repeated in Twombly—that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. Twombly, 127 S.Ct. 1965, n. 3 (citing Conley, 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must

WESTLAW    © 2016 Thomson Reuters. No claim to original U.S. Government Works.    8

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 150 of 397

2016 WL 1295137

Groves v. Davis, Not Reported in F.Supp.2d (2012)

2012 WL 651919

still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. See *Rusyniak*, 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

7    See *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir.1996) ("[W]hile the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner."); *Walton v. Breeyear*, 05–CV–0194, 2007 WL 446010, at *8, n. 16 (N.D.N.Y. Feb.8, 2007) (Peebles, M.J.) (noting that pretrial detainees enjoy protections under the due process clause of the Fourteenth Amendment parallel to those afforded to sentenced prisoners by the Eighth Amendment); *Vallen v. Carrol*, 02–CV–5666, 2005 WL 2296620, at ——8–9 (S.D.N.Y. Sep.20, 2005) (finding that the Eighth Amendment standard of "deliberate indifference" is the correct one for Section 1983 claims brought by involuntarily committed mental patients based on alleged failures to protect them that violated their substantive due process rights); *Bourdon v. Roney*, 99–CV–0769, 2003 WL 21058177, at *10 (N.D.N.Y. Mar.6, 2003) (Sharpe, M.J.) ("The standard for analyzing a pretrial detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard.").

8    Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "reasonable doctor or patient would find important and worthy of comment or treatment," a condition that "significantly affects" a prisoner's daily activities, or "the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702.

9    Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison*, 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under Section 1983 if the treatment provided is "adequate." *Chance*, 143 F.3d at 703. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.' " *Jones v. Westchester Cnty. Dept. of Corr.*, 557 F.Supp.2d 408, 413 (S.D.N.Y.2008). In addition, "disagreements over medications, diagnostic techniques (e .g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim" *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F.Supp.2d 303, 312 (S.D.N.Y.2001). However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference.*Harrison*, 219 F.3d at 138.

10   The Court notes that, generally, leave to amend pleadings shall be freely granted when justice so requires. Fed.R.Civ.P. 15(a). However, an opportunity to amend is not required where amendment would be futile.*John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d at 458, 462 (2d Cir.1994).*John Hancock Mut. Life Ins. Co.*, 22 F.3d at 462. The Second Circuit has explained that "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend."*Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993); see *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [Plaintiff's] cause of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). This rule is applicable even to *pro se* plaintiffs. See, e.g., *Cuoco*, 222 F.3d at 103.

11   *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright*, 21 F.3d at 501 (adding fourth prong); *Williams v. Smith*, 781 F.2d 319, 323–324 (2d Cir.1986) (setting forth four prongs).

12   See also *Gilfard v. Rosati*, 08–CV–1104, 2011 WL 4402131, at *7 (N.D.N.Y. Aug.22, 2011) (Peebles, J.) ("It is well-established that without more, 'mere receipt of letters from an inmate by a supervisory official regarding a medical claim is insufficient to constitute personal liability.'[internal citation and brackets omitted] ); *Greenwaldt v. Coughlin*, 93–CV–6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("It is well-established that an official that ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Clark v. Coughlin*, 92–CV 0920, 1993 WL 205111, at *5 n. 2 (S.D.N.Y. Jun.10, 1993) ("Courts in this jurisdiction have consistently held that an inmate's single letter does not constitute the requisite personal involvement in an alleged constitutional deprivation to trigger the Commissioner's liability.")

13   See also *Bernstein v. N.Y.*, 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) ("Courts within the Second Circuit have determined that there is no constitutional right to an investigation by government officials."[internal quotation marks, brackets and ellipsis omitted] ).

14   For example, a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. See *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir.1994); *Cooper v. Sargenti Co., Inc.*, 877 F.2d 170, 172, 174 (2d Cir.1989) [citation omitted].

2016 WL 1295137

---

Groves v. Davis, Not Reported in F.Supp.2d (2012)

2012 WL 651919

15    Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to
      copying and/or witness fees.

---

End of Document                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

Hare v. Hayden, Not Reported in F.Supp.2d (2011)
2011 WL 1453789

2011 WL 1453789
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Susan Lee HARE, Plaintiff,
v.
James HAYDEN et al., Defendants.

No. 09 Civ. 3135(RWS).
|
April 14, 2011.

**OPINION**

SWEET, District Judge.

*1 Defendants Reverend Maria Lopez ("Lopez"), Deputy Superintendant James Hayden ("Hayden"), and Grievance Supervisor Kim Watson ("Watson") (collectively, "Defendants") have filed motions for summary judgment. For the reasons stated below, these motions are granted.

**Prior Proceedings**

Plaintiff Susan Lee Hare ("Hare" or "Plaintiff") filed her complaint on April 1, 2009, alleging misconduct by Superintendant Ada Perez, Superintendant Elizabeth Williams, Hayden, Lopez, and Watson. Defendants Perez, Williams, Hayden, and Watson answered on September 16, 2009. Defendant Lopez answered on August 31, 2010. On November 22, 2010, the Court signed off on the stipulated dismissal of Defendants Perez and Williams.

Defendant Lopez and Defendants Hayden and Watson filed separate motions for summary judgment on December 13, 2010 and December 14, 2010, respectively. These motions were heard on submission on January 19, 2011.

**Statement of Facts**

In August 2008, Plaintiff was programmed as a Catholic clerk assisting Father O'Shea, the Catholic Chaplain at Bedford Hills Correctional Facility ("BHCF"). She was programmed for both the morning and afternoon shifts. See Deposition of Susan Hare, attached to Declaration of John Knudsen ("Knudsen Dec") as Exhibit A ("Hare Dep."), at 15. On August 14, 2008, a meeting occurred between Plaintiff, Father O'Shea, and Hayden. At that meeting, Father O'Shea recommended that Plaintiff remain as the Catholic clerk after his retirement on August 15, and Hayden agreed that Plaintiff remain in the position. Affirmation of James Hayden ("Hayden Aff."), ¶ 3, attached to Knudsen Dec. as Exhibit C.

Plaintiff then sent a letter dated August 16, 2008 to Hayden in which she made several allegations against Reverend Lopez, including that Lopez met with Hare on August 15, that Lopez ordered the moving of a cabinet with Catholic items, and that Lopez ordered her clerks to pack up the Catholic items in the Sacristy into bags and put them out for the trash. See Hare Letter dated Aug. 18, 2008, attached to Knudsen Dec. at Exhibit B at Hare 27–31. The underlying theme of Plaintiff's letter appears to have been that Reverend Lopez was using her position to defile the Catholic religion. See Id. at 30 ("the Catholic (sic) have been defiled by this woman and her community.") In response to Plaintiff's letter and to address the allegations, Hayden set up a meeting on August 18, 2008 with Plaintiff, Lopez and two other inmates, Tuttle and Ramsey. Hayden Aff., ¶ 5.

The August 18 meeting between Plaintiff and Reverend Lopez was very contentious. Hayden Aff. ¶ 6. During the meeting, Hayden attempted to verify the allegations made in Plaintiff's August 16 letter. See Hare 110–11. He could not substantiate any of Plaintiff's allegations and determined that they were largely hearsay. Id.; Hayden Aff, ¶ 6. According to Hayden, Lopez did not attempt to attack Plaintiff during that meeting. Hayden Aff. ¶ 7; Affirmation of John Ruiz, ¶ 2, attached to Knudsen Dec as Exhibit D.

*2 Plaintiff contends that on August 18, Lopez verbally abused and physically threatened her in the chapel. Pl. Opp. Aff., at 4–7. Plaintiff claims that this interaction led to an investigation which prevented her from working as Catholic clerk. Id. at 4. It is unclear whether this interaction was separate from the August 18, 2008 meeting.

Plaintiff filed a grievance alleging that Reverend Lopez verbally harassed her during the August 18 meeting. See Hare 104–105. Hayden notified the Superintendent's Office of his personal observations during that meeting, which were incorporated into the Superintendent's response. See Hare 103; Hayden Aff., ¶ 8. Following the August 18 meeting, Plaintiff did not appear for her program assignment as Catholic clerk for two weeks, after which time Reverend Lopez forwarded a memorandum to counselor Greenfield on September 2, 2008, requesting that Plaintiff be removed

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Hare v. Hayden, Not Reported in F.Supp.2d (2011)
2011 WL 1453789

from her position as Catholic clerk and noting that no new Catholic clerk should be named until a Catholic Priest had been hired. *See* Hare 42. Plaintiff contends that this report was false and that she showed up for work but was sent away. Pl. Opp. Aff. at 9. Counselor Greenfield contacted Hayden to discuss Lopez's request for Plaintiff's removal. Hayden Aff., ¶ 9. According to Hayden, Plaintiff was removed from her Catholic clerk position by him on September 8, 2008, at the latest. Hayden Aff. ¶ 11. Plaintiff contends that she was not removed until September 15, 2008. Pl. Opp. Aff. at 9.

Hayden claims to have removed Plaintiff from her position for multiple reasons. Initially, it was reported that plaintiff failed to report for two weeks for programming after Father O'Shea retired. Hayden Aff., ¶ 10; Hare 42. Also, Hayden determined that Plaintiff was being disruptive to the provision of Catholic services at Bedford Hills. Hayden Aff. ¶ 10. Hayden had investigated plaintiff's numerous allegations about Reverend Lopez and her alleged interference with the Catholic programs and could not substantiate any of them. *Id.* For example, Hayden states that Plaintiff was telling inmates and outside civilians in the Catholic community that Lopez had the cabinet with Catholic items in it moved, and had articles removed from the Sacristy. *Id.* Hayden had received a call from Deacon Leo Santore, a civilian volunteer, who had been told these claims by Plaintiff and was upset. Hayden investigated these claims and determined them to be inaccurate. *Id.* Instead, he determined that the cabinet was moved by a volunteer from the long-term inmate committee, and that Plaintiff appeared to be the only person with the combination to the Sacristy. *Id.*; Affirmation of Kowsithia Magoo, ◄ 4, attached to Knudsen Dec. as Exhibit E. As part of his responsibilities as Deputy Superintendent of Programs, Hayden states that he could not allow inmates to use their programming position to disrupt the inmate and civilian volunteer populations. *Id.*

*3  Additionally, Hayden discussed this issue with all the other chaplains at the facility, who agreed that Plaintiff should no longer remain as the Catholic clerk. Hayden Aff., ¶ 11. This included Sister MaryAnn Collins, who was a part-time employee at the facility and apparently effectively acted as head of the Catholic community there. *Id.* Finally, Hayden determined that Plaintiff and Reverend Lopez were not able to work together. *Id.* Plaintiff drafted a handwritten grievance complaint on September 4, 2008, in which she complained that Reverend Lopez was retaliating against her because of her prior grievance, and asked that she "stop being harassed and retaliated against by Rev. Lopez."Hare 40–41. Defendant

Watson responded to that grievance, noting that Plaintiff no longer worked as a clerk and, thus, Reverend Lopez could no longer be harassing her. Hare 39. Watson states that this was an attempt by her to informally resolve Plaintiff's grievance. Affirmation of Kim Watson ("Watson Aff."), at ¶ 3, attached as Exhibit F to Knudsen Dec. Plaintiff did not request to have the grievance formally processed, but if she had, Watson claims she would have done so. *Id.* Plaintiff contends that she took Watson's response to mean that she could not file a grievance.

**Summary Judgment Standard**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(c). In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inference in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party.",*Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995) (internal citations and quotation marks omitted); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Affidavits submitted in opposition to summary judgment must be based on personal knowledge from a competent source, and "set forth such facts as would be admissible in evidence."*Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir.2004) (quoting Fed.R.Civ.P. 56(e)). Hearsay or other evidence that would be inadmissible at trial cannot be credited to defeat a summary judgment motion. *See Id.* at 219 ("an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial.").

**Plaintiff's Retaliation Claims are Dismissed**

In order to make a valid retaliation claim, a plaintiff must allege that her actions were protected by the Constitution, and that such "conduct was a substantial or motivating factor for the adverse actions taken by prison officials."*Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (internal citations omitted). There must be a "causal connection between the protected [conduct] and the adverse action."*Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (internal citation and quotations omitted)."A plaintiff cannot state a retaliation claim in wholly conclusory terms, but rather, must provide a pleading that is 'supported by specific and detailed factual allegations.' " *Anderson v. Lapolt,* No. 07 Civ. 1184, 2009

2016 WL 1295137

Hare v. Hayden, Not Reported in F.Supp.2d (2011)
2011 WL 1453789

WL 3232418, at *5 (N.D.N.Y. Oct. 1, 2009) (quoting *Friedl v. City of New York*, 210 F.3d 79, 85–86 (2d Cir.2000)); *see also Sawyer v. Jowers*, No. 08 Civ. 186, 2008 WL 4791557, at *6 (N.D.Tex. Oct. 31, 2008) ("To state a claim of retaliation, the inmate must allege more than his personal belief that he is the victim of retaliation. Conclusory allegations of retaliation are not sufficient; the plaintiff must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred") (internal citations omitted); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995) (if plaintiff's claim of retaliation had been based on circumstantial evidence alone, and not also supported by direct evidence of defendant's admission, Court would be inclined to grant summary judgment); *Bussey v. Phillips*, 419 F.Supp.2d 569, 585 (S.D.N.Y.2006) ("In order to survive summary judgment on a retaliation claim, a plaintiff bears the burden of showing two genuine issues of material fact: first, that the plaintiff engaged in constitutionally protected conduct, and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials.").

*4  Even where a plaintiff meets her burden of establishing a prima facie retaliation claim, it is still subject to dismissal if sufficient other non-retaliatory reasons to take the adverse action were present. *See Bussey*, 419 F.Supp.2d at 585; *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir.2002). Furthermore, inmates have no right, constitutional or otherwise, to any particular job or assignment within a prison. *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir.1987); *Hodges v. Jones*, 873 F.Supp. 737, 745 (N.D.N.Y.1995) (citing *Lane v. Reid*, 575 F.Supp. 37, 39 (S.D.N.Y.1983). Inmates can be removed from prison assignments for virtually any reason, provided that such decisions are not based on the inmate's race or religion. *Bussey*, 419 F.Supp.2d at 589 (S.D.N.Y.2006).

It should be noted that "courts must approach prisoner claims of retaliation with skepticism and particular care," as such claims are "easily fabricated" and run the risk of "unwarranted judicial intrusion into matters of general prison administration." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir.2001), overruled on other grounds in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). *See also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (noting that prisoner retaliation claims are " 'prone to abuse' because prisoners can claim retaliation for every decision they dislike.") (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983)); *Colon*, 58 F.3d at 872 ("because we recognize both the near inevitability of decisions and actions by prison officials to

which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoners' claims of retaliation with skepticism and particular care."); *Gill*, 824 F.2d at 194 (because of the potential for abuse, the Court of Appeals requires a "higher level of detail in pleading [retaliation claims]").

Plaintiff contends that she was removed from her position as Catholic clerk by Hayden in retaliation for her complaints against Lopez. [1] There is no dispute that Plaintiff's complaints against Lopez are protected speech and that her removal from her position as Catholic clerk was an adverse action; however, Plaintiff fails to establish the causal link between her complaints and her dismissal, particularly in light of legitimate non-discriminatory reasons for her dismissal given by Hayden.

As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant. *See Wright v. Goord*, 554 F.3d 255, 274 (2d Cir.2009) (dismissing retaliation claim against a corrections officer when only alleged basis for retaliation was complaint about a prior incident by another corrections officer). Here, even giving Plaintiff every reasonable inference, Plaintiff fails to establish that Hayden had a motive to retaliate arising from her complaints against Lopez, and that Hayden's retaliatory motive formed the basis for her dismissal.

*5  To the extent Plaintiff contends that Hayden was incompetent or covering up Lopez's misconduct, the evidence before the Court indicates otherwise. Hayden investigated Plaintiff's claims against Reverend Lopez. The August 18, 2008 meeting between Plaintiff, Hayden and Lopez was called in order for Hayden to investigate Plaintiff's allegations in her August 16 letter, *see* Hayden Aff., ¶ 5, and at that meeting, Hayden questioned both Plaintiff and Lopez to determine the veracity of Plaintiff's allegations. *See* Hare 110–111; Hare Dep., at 73–74. Plaintiff's subsequent grievance on August 21 alleged that Lopez mistreated her during the August 18 meeting, a claim for which there was no need for Hayden to investigate since he was present for the meeting and knew what had and had not occurred. *See* Hayden Aff.,* 8. Finally, there is no evidence to indicate that Hayden was "covering up" for Lopez, and the record indicates that Hayden reasonably found Plaintiff's complaints against Lopez to be meritless. Plaintiff's allegations of a cover up are conclusory and are insufficient to meet Plaintiff's burden for a retaliation claim at the summary judgment stage. *See Graham*, 89 F.3d at 79.

2016 WL 1295137

Hare v. Hayden, Not Reported in F.Supp.2d (2011)
2011 WL 1453789

Even if the Court were persuaded that there was a causal connection between Plaintiff's complaints against Lopez and her dismissal for her position as Catholic clerk, Hayden had valid, non-discriminatory reasons for dismissing her. "A finding of sufficient permissible reasons to justify state action is 'readily drawn in the context of prison administration where ... prison officials have broad administrative and discretionary authority.' " *Graham*, 89 F.3d at 79 (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir.1994)). Here, Hayden identified four legitimate reasons for Plaintiff's removal: (1) she failed to show up for work for 2 weeks[2]; (2) her behavior disrupted the overall provision of Catholic services at Bedford Hills; (3) her removal was recommended by all the other chaplains, including the part-time chaplain, Sister Mary Ann Collins; and (4) the inability of Plaintiff and Lopez to work together. Hayden Aff., ¶¶ 10–11.

Plaintiff's allegations that Lopez independently retaliated against her, by preventing her from returning to her program assignment, falsely reporting her absence from her job, and otherwise acting inappropriately toward her, are belied by Plaintiff's acknowledgement that Lopez never made any statement revealing that she engaged in any conduct with the intent to retaliate against Plaintiff. (Hare Dep. at 135). Plaintiff can only point to her conclusory assumptions of Lopez's motive and has failed to adequately substantiate her claims to survive this motion for summary judgment.

Furthermore, even if Plaintiff did establish that Lopez filed a false report in retaliation for her complaints, Plaintiff cannot establish that the adverse action of her dismissal from her position as Catholic clerk by Hayden arose from that allegedly false report. As discussed above, Hayden chose to dismiss Plaintiff for three other legitimate reasons and would have done so regardless of the report. Hayden Aff., ¶¶ 10–11. *See Graham*, 89 F.3d at 79 (quoting *Lowrance*, 20 F.3d at 535).

**Plaintiff's Claim that Lopez Filed a False Misbehavior Report is Dismissed**

*6  To the extent that Plaintiff claims Lopez falsely reported her absence from work for two weeks, this allegation does not support a claim. "The Second Circuit has held that the issuance of false misbehavior reports against an inmate by corrections officers is insufficient on its own to establish a denial of due process..."[3] *Faison v. Janicki*, No. 03 Civ. 6475, 2007 WL 529310, at *4 (W.D.N.Y. Feb. 14,

2007) (citing *Boddie v. Schmieder*, 105 F.3d 857, 862 (2d Cir.1997)).*See also Moore v. Casselberry*, 584 F.Supp.2d 580, 582 (W.D.N.Y.2008) ("There is no basis for a constitutional claim alleging the mere filing of a false report"); *Flemings v. Kinney*, No. 02 Civ. 9989, 2004 WL 1672448, at *3 (S.D.N.Y. Jul. 27, 2004) ("[i]t is well settled that 'a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report' ") (quoting *Boddie*, 105 F.3d at 862). Furthermore, the record does not support Plaintiff's assertion that Lopez's report was false. Officers Ruiz and Magoo both affirm that they were never instructed by Lopez not to allow Plaintiff to enter the chapel. Ruiz Aff., ¶ 3; Magoo Aff., ¶ 3. Lopez denies having falsified the report.

**Plaintiff's Claim that She was Unable to File a Grievance is Dismissed**

Plaintiff alleges that she was denied the right to file a grievance when Watson responded to Plaintiff's September 4, 2008 grievance, which requested that Lopez stop retaliating against her, by noting that Plaintiff no longer worked as a clerk, and, thus, Reverend Lopez could not retaliate against her. *See* Hare 39–41. Watson claims to have sent this memorandum to Plaintiff in an attempt to informally resolve the grievance, which is part of Watson's responsibilities, Watson Aff. ¶ 3, but Plaintiff alleges she understood the memorandum to indicate that she was not allowed to file a grievance. Watson claims she would have formally filed the grievance if Plaintiff had contacted her and requested that it be formally filed. *Id*

While there is a dispute of fact as to whether Plaintiff was allowed to file a grievance, Plaintiff has no constitutionally protected right to file a grievance, and thus does not have a cognizable § 1983 claim. *See Shell v. Brzezniak*, 365 F.Supp.2d 362, 370 (W.D.N.Y.2005) ("[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim") (citing *Cancel v. Goord*, No. 00 Civ.2042, 2001 WL 303713, *3 (S.D.N.Y. Mar. 29, 2001)); *Mastroianni v. Reilly*, 602 F.Supp.2d 425, 437 (E.D.N.Y.2009) ("[T]he grievance procedure or lack thereof cannot itself form the basis of a Section 1983 claim because there is no constitutional right to a grievance mechanism") (citing *Swift v. Tweddell*, 582 F.Supp.2d 437, 445–46 (W.D.N.Y.2008)). Notably, Defendants do not argue that Plaintiff has failed to exhaust her claim of retaliation because this grievance was not processed through the entire grievance system.

2016 WL 1295137

---

Hare v. Hayden, Not Reported in F.Supp.2d (2011)

2011 WL 1453789

---

***Plaintiff's Claims of Verbal Abuse are Dismissed***

**\*7** Plaintiff accuses Lopez of approaching her on August 18, 2008 "in a menacing way, raising her hands toward plaintiff from behind in a motion as if to strangle plaintiff" (Pl. Opp. Aff. at 7) and asserts that Lopez "screamed" at her and called her a "liar" (Hare Dep. at 57) or otherwise spoke to her in an abusive manner. While Lopez denies Hare's allegations regarding her conduct, even when the evidence concerning them is viewed most favorably to Plaintiff, these allegations do not support an action pursuant to § 1983. The Eighth Amendment proscribes the " 'unnecessary and wanton infliction of pain' " on prisoners by prison officials. *Bodtke,* 105 F.3d at 86-1 (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). Hare does not claim that any actual physical harm was caused to her by Lopez, and she acknowledged in her deposition testimony that, on the occasion when she alleges Lopez approached her in a physically threatening manner, "[m]y back was to her" (Hare Dep. at 61), and "I didn't see her ..." (Hare Dep. at 58). According to Plaintiff, Officer Ruiz "stopped the whole incident" before any assault could take place. (Hare Dep. at 57).

It is undisputed that there was no actual assault, and Plaintiff's evidence, viewed most favorably to her, establishes nothing more than verbal abuse. As the Court held in *Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y. 1998):

[V]erbal harassment or profanity alone, "unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem," does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983. *Del Carpio v. Walker,* No. 95 Civ. 1502(RSP) (GJD), 1997 WL 642543, at \* 6 (N.D.N.Y. Oct. 15, 1997) (citing *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) (per curiam); *Brown v. Croce,* 967 F.Supp. 101, 104 (S.D.N.Y.1997)); *see Ramirez v. Holmes,* 921 F.Supp. 204, 210 (S.D.N.Y.1996); *Aleutt v. Cleary,* 913 F.Supp. 160, 165-66 (W.D.N.Y.1996); *Jermosen v. Coughlin,* 878 F.Supp. 444, 449 (N.D.N.Y.1995) ( "Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983."); *Beal v. City of New York,* No. 92 Civ. 0718(KMW), 1994 WL 163954, at \*6 (S.D.N.Y. Apr. 22, 1994), *aff'd,*89 F.3d 826, 1995 WL 722263 (2d Cir.1995); *Hurdle v. Ackerhalt,* No. 92–CV–1673, 1993 WL 71370, at \*1–2 (N.D.N.Y. Mar. 8, 1993) (allegations of threats and harassment do not rise to the level of a Constitutional violation).

Plaintiff's claim fails because she does not allege that she suffered any physical injury. *See Bouknight v. Shaw,* No. 08 Civ. 5187, 2009 WL 969932, at \*3 (S.D.N.Y. Apr. 6, 2009) ("Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under § 1983.") (citing *Purcell,* 790 F.2d at 265).*See also Thompson v. Carter,* 284 F.3d 411, 418 (2d Cir.2002) ("We agree with the majority of our sister circuits that [42 U.S.C. § ] 1997e(e) applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury.") Rather, Plaintiff contends that she suffered only "mental anguish" as a consequence of the Defendants' actions.

**\*8** "Under certain circumstances, the intentional infliction of psychological pain may constitute an Eighth Amendment violation, so long as the pain is not *de minimus."Shabazz,* 994 F.Supp. at 475. Plaintiff stated in her deposition that she was affected by Lopez's conduct particularly because she was a domestic violence victim and because Lopez came from a position of trust. (Hare Dep. at 139). However, Plaintiff admitted during her deposition that, notwithstanding the availability of mental health services, she never sought such services, but attained sufficient relief from her distress by speaking about it with a chaplain. (Hare Dep. at 139–40). Based on Plaintiff's allegations and record, Plaintiff's mental pain was *de minimus. See Shabazz,* 994 F.Supp. at 475 (mental anguish caused by repeated use of racial slurs was *de minimus* ); *Jermosen v. Coughlin,* No. 87 Civ. 6267, 1993 WL 267357, at \*6 (S.D.N.Y. July 9, 1993), *aff'd,*41 F.3d 1501 (2d Cir.1994) (*de minimus* psychological harm when correctional officers "approached plaintiff with their nightsticks raised in a threatening position" before conducting a strip frisk).

***Plaintiff's Claims for Infringement of Her Religious Rights are Dismissed***

**a. The Alleged Removal of Religious Objects from the Sacristy**

Hare's complaint discusses at length the alleged removal of religious articles from the Catholic sacristy at BHCF, but she has acknowledged that she did not observe anyone removing those articles, and that she has no personal knowledge regarding who is responsible for any such conduct. (Hare Dep. at 137; Pl. Opp. Aff. at 7). Lopez, for her part, denies any

---

2016 WL 1295137

Hare v. Hayden, Not Reported in F.Supp.2d (2011)

2011 WL 1453789

involvement in or knowledge of this occurrence. (Lopez Aff., ¶¶ 14–15). It appears that Plaintiff's only basis for claiming that Lopez had any involvement in the alleged removal of the articles in question is her assertion that she was told by Officer Magoo and through a grapevine of other inmates that Lopez had authorized other inmates to take this action. (Hare Dep. at 37; Pl. Opp. Aff. at 9). This hearsay claim is not corroborated by Officer Magoo; in fact, he has affirmed that he did not make such a statement to Hare. (Magoo Aff., ¶ 4). Likewise, Inmate Rose Ramsey, who allegedly told Lucy Tuttle, who allegedly told Plaintiff, about Lopez's role in the removal of articles for the Catholic service has not provided an affidavit corroborating Plaintiff's contention. Thus, Hare does not present admissible evidence to support her allegation that Lopez caused the removal of items from the Catholic sacristy. *See Finnegan v. Board of Educ. of Enlarged City School Dist. of Troy,* 30 F.3d 273, 274 (2d Cir.1994) (hearsay that would not be admissible at trial cannot be relied upon in opposition to a motion for summary judgment). Without establishing Lopez's involvement in the alleged removal of Catholic items, Plaintiff has not established a claim. As the Court of Appeals has recognized, "[b]ecause *Section 1983* imposes liability only upon those who actually cause a deprivation of rights, 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Blyden v. Mancusi,* 186 F.3d 252, 264 (2d Cir.1999) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)).

**\*9** Even if Plaintiff had established that Lopez bears responsibility for the removal of those articles from the sacristy, the conduct she alleges would not establish any violation of Hare's personal rights. She does not claim that any of the articles in question belonged to her, and, in the absence of specific criteria that Hare does not allege here, a plaintiff does not have standing to assert the constitutional rights of others. *Camacho v. Brandon,* 317 F.3d 153, 159 (2d Cir.2003) ("A plaintiff may assert the constitutional claims of a third party if the plaintiff can demonstrate: (1) injury to the plaintiff, (2) a close relationship between the plaintiff and the third party that would cause plaintiff to be an effective advocate for the third party's rights, and (3) 'some hindrance to the third party's ability to protect his or her own interests.' ") (quoting *Campbell v. Louisiana,* 523 U.S. 392, 397 (1998)).*Cf. Hudson v. Palmer,* 468 U.S. 517, 547 n. 13 (1984) (Stevens J., conc. in part and diss. in part) ("A prisoner's possession of ... personal property relating to religious observance, such as a bible or a crucifix, is surely protected by the Free Exercise Clause of the First

Amendment"). Thus, Hare's allegations regarding the alleged removal and desecration of objects from the Catholic sacristy does not give rise to any genuine dispute regarding facts that would be material to her § 1983 action against Lopez.

**b. The Alleged Denial of Plaintiff's Right to Practice Her Religion**

Plaintiff alleges that Lopez impermissibly infringed upon her right to practice religion. She does not allege any involvement in this deprivation by Hayden or Watson, so this claim is dismissed as to them.

In her complaint, Plaintiff asserts denial of "the right to practice Freedom of Religion," but she does not specify how this alleged violation of her civil rights occurred. In her affirmation opposing the summary judgment motions [4], Plaintiff contends that Lopez prevented Plaintiff from continuing her Catholic video group and curtailed "all Catholic programs, which precluded plaintiff from participating in them, as they no longer were running."Pl. Opp. Aff. at 8. Also, referring to Lopez's alleged verbal abuse of Plaintiff on August 8, 2011, Plaintiff claims that "Lopez's actions effectively precluded any operations of religious programs for Catholic inmates."Pl. Opp. Aff. at 6. These assertions are insufficient to place into issue facts that, if resolved in Plaintiff's favor, would entitle her to relief pursuant to Section § 1983.

To establish a free exercise claim under the First Amendment, a plaintiff must demonstrate that state action substantially burdened her observation of a "central religious belief" without a "compelling government interest" justifying the burden. *Skoros v. City of New York,* 437 F.3d 1, 39 (2d Cir.2006) (quoting *Jimmy Swaggart Ministries v. Bd. of Equalization,* 493 U.S. 378, 384–85 (1990)). An inmate's right to the free exercise of religion is "subject to limitations that arise both as a consequence of being incarcerated and from 'valid penological objectives.' " *Harris v. Lord,* 957 F.Supp. 471, 474 (S.D.N.Y.1997) (quoting *O'Lone v. Estate of Shabazz,* 482 U.S. 342 (1987)).

**\*10** With regard to the alleged curtailment of programs such as the "Praise Dance" or the video activities that she sought to organize, Plaintiff does not claim that these programs were "central or important" to the practice of her religion, an essential component of a claim that her religious beliefs were "substantially burdened." *Ford v. McGinnes,* 352 F.3d 582, 593–94 (2d Cir.2003).

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 158 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Hare v. Hayden, Not Reported in F.Supp.2d (2011)

2011 WL 1453789

Hare's claims regarding the "suspension" of Catholic programs appear to be linked with her role in leading such programs. Plaintiff's papers and testimony recognize, however, the Catholic Chaplain, Father O'Shea, retired in August of 2008. The subsequent temporary suspension of programs that he had supervised cannot be deemed an unreasonable infringement on Plaintiff's practice of her religion, but simply a consequence of the institution's temporary lack of a Catholic Chaplain. Plaintiff's claim appears to be premised on her assumption that, even in Father O'Shea's absence, she should have been permitted to continue running these programs. (*See* Hare Dep. at 105 ("Even if I was not a clerk, I should have been allowed to run the program")). However, as discussed above, inmates have no right to any particular position or assignment at a correctional institution. *See Gill*, 824 F.2d at 194.

Plaintiff's claim that Lopez prevented her from attending Catholic Mass and other religious programming, to the extent that she asserts it, is not supported by the record and does not survive summary judgment even when all reasonable inferences are made in her favor. At her deposition she testified as follows:

> Q. In general, do you recall at any time when you were trying to go to Catholic mass where you were not allowed to go?
>
> A. If [Lopez] knew I was in there, then I was harassed. If she told the officer this Sunday she found out, she would tell that officer. If that officer was there, then I would be harrassed.
>
> Q. How were you harassed?
>
> A. Because I was told to leave, I'm not allowed to be there.
>
> Q. How many times, to the best of your recollection, were you told that you had to leave the Catholic mass?
>
> A. I would say a couple of times. Like I said, I got tired of being harrassed, and I just stopped going.
>
> ...
>
> Q. What about programming, were you allowed to go to Catholic programming?
>
> A. No. Those were during the day. That's when she really got me. Then on Tuesday night she was there late. She was there until 8 o'clock at night. That was her late night. She

made sure that the officer knew I was not supposed to be there.

(Hare Dep. at 106–07).

Plaintiff does not identify the officers involved or specify the dates on which she was allegedly told to leave the chapel. Plaintiff also provides no basis for her claim that, when they allegedly told her to leave, the officers were acting at the direction of Lopez, and does not claim to have observed Lopez giving any officer such instructions. Officers Ruiz and Magoo, who were stationed outside the 112 Chapel during the period in question, have affirmed that they never received any such instruction from Lopez. Ruiz Aff. ¶ 3; Magoo Aff. ¶ 3. Thus, Plaintiff has not presented any admissible evidence that would support her claim that Lopez prevented her from attending Mass or other religious services, and the record suggests that she was not denied entry to Mass.

*\*11* Moreover, it is unclear whether being told to leave the chapel "a couple of times" (Hare Dep. at 107)—even when the evidence is viewed most favorably to Plaintiff—rises to the level of a "substantial burden" on Hare's religious freedom. It is undisputed that Hare's right to free exercise of religion includes the right to attend religious services. *O'Lone*, 482 U.S. 342, 348 (1987). However, that right is not unlimited or absolute, but is subject to limitations that arise both as a consequence of being incarcerated and from "valid penological objectives." *Id.* Because Plaintiff provides no particulars as to the dates and times when she was allegedly prevented from attending Mass, and does not identify the officers who allegedly prevented her from doing so, her claims are too vague to permit the Court to determine both that the alleged removal actually occurred and, if it did, whether it was justified by a compelling government interest. *See Skoros*, 437 F.3d at 39.

In view of all of these circumstances, the Court concludes that Hare's claim that her freedom of religion was infringed is not based on facts that would entitle her to relief pursuant to § 1983. *See Salahuddin v. Coughlin*, 781 F.2d 24, 29 (2d Cir.1986) (summary judgment stage is appropriate juncture for *pro se* plaintiffs to make clear the facts that they believe support their claims, and for a court to grant summary judgment where the underlying facts are insufficient).

***Plaintiff's Reference to Additional Witnesses Does Not Merit a Denial of Summary Judgment***

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 159 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Hare v. Hayden, Not Reported in F.Supp.2d (2011)

2011 WL 1453789

Plaintiff claims that Defendants' motions for summary judgment should be denied on the grounds that two witnesses have yet to file affidavits. Four months have passed since Defendants filed their motions for summary judgment, and Plaintiff has not attempted to submit these additional affidavits. Furthermore, Plaintiff's description of what their witnesses will say demonstrates that they would not rescue her claims.

Plaintiff contends that Inmate Lucy Tuttle observed Lopez verbally abuse and physically threaten her in the chapel on August 18, 2008 and in the subsequent meeting on that same day (to the extent that these are separate instances). As was discussed above, Lopez's alleged verbal abuse does not support a § 1983 claim for cruel and unusual punishment, as Plaintiff alleges.

Plaintiff also contends that Lieutenant Collins was Sergeant Collins at BHCF at the time Lopez prevented Plaintiff from entering her work assignment as Catholic Chaplain's Clerk, again without specifying when this occurred. Lopez's alleged refusal to allow Plaintiff to work as Catholic clerk

is insufficient to support § 1983 claim, as Lopez holds no right to her prison assignment. To the extent that Collins's affidavit would support Plaintiff's allegation that Lopez falsely reported her absent from work in retaliation for the Plaintiff's complaints, Plaintiff has not established that her complaints motivated the allegedly false reporting. Furthermore, Plaintiff cannot establish that the adverse action of her removal from her position as Catholic clerk was caused by the allegedly false reports, as Hayden cited other valid reasons for his decision to remove her.

*Conclusion*

*12 For the reasons stated above, Defendants' motions for summary judgment are granted.

It is so ordered.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 1453789

Footnotes

1    To the extent that Plaintiff's allegations of retaliation are not contained in her complaint, but come from her deposition testimony and other filings, they are dismissed on this independent ground. Kearney v. County of Rockland, 373 F.Supp.2d 434,440–41 (S.D.N.Y.2005) ("plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense. Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.")

2    Plaintiff contends that she did show up for work but was sent away by Lopez. This claim against Lopez is addressed, infra Hayden's reliance on Lopez's absence report was reasonable and was a legitimate basis for Hayden's decision to dismiss Plaintiff.

3    A plaintiff does have a claim "where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights."Franco v. Kelly, 854 F.2d 584, 588–89 (2d Cir.1988). However, as discussed above, Plaintiff, to the extent she makes such a claim, fails to establish that Lopez was motivated by Plaintiff's complaints when she filed the allegedly false report

4    As with her retaliation claims, to the extent that Plaintiff's allegations of infringement on her rights to practice her religions are not contained in her complaint, but come from her deposition testimony and other filings, they are dismissed on this independent ground. Kearney, 373 F.Supp.2d at 440–41.

End of Document                                   © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

---

Laporte v. Fisher, Not Reported in F.Supp.2d (2012)

2012 WL 5278543

---

2012 WL 5278543
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Hector LAPORTE, Plaintiff,
v.
Correction Sergeant FISHER and
Correction Officer Banks, Defendants.

No. 11 Civ. 9458(PKC)(HBP).
|
Oct. 24, 2012.

*MEMORANDUM AND ORDER*

P. KEVIN CASTEL, District Judge.

**\*1** Plaintiff Hector Laporte, proceeding *pro se*, brings this action pursuant to 18 U.S.C. § 1983 against Correction Sergeant Fisher and Correction Officer Banks in their individual and official capacities. Plaintiff asserts that defendants used excessive force against him in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Defendants Fisher and Banks move to dismiss the claims against them to the extent they are sued in their official capacities, as these claims are barred by the Eleventh Amendment. Defendant Banks further moves to dismiss all claims against him on the grounds of failure to state a claim upon which relief can be granted, qualified immunity, and failure to comply with the administrative exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997c (the "PLRA"). For the reasons stated below, defendants' motion to dismiss all claims against them in their official capacities on the grounds of Eleventh Amendment immunity is granted. Defendant Banks' motion to dismiss on the grounds of failure to state a claim and qualified immunity is denied, and his motion to dismiss for failure to exhaust is converted into a motion for summary judgment, and denied.

**BACKGROUND**

Plaintiff is an inmate at Sing Sing Correctional Facility ("Sing Sing"). (Compl.¶ 1–A.) Plaintiff alleges that while incarcerated at Sing Sing, he was assaulted on April 24, 2011

by defendant Banks, and on July 4, 2011 by defendant Fisher. (*Id.* ¶ II–D.)

According to the Complaint, on April 24, 2011 plaintiff was attempting to go to the chapel when he was stopped by defendant Banks. (*Id.* ¶ II–D, Ex. B "Banks Grievance.") Defendant Banks allegedly accused plaintiff of "playing games with [defendant Banks] and the facility" by "using the chapel as a way just to come out of [plaintiff's] cell."(*Id.* Ex. B.) Defendant Banks then asked plaintiff for his identification card. Upon production of the identification card, plaintiff alleges that defendant Banks "became aggressive, and started pushing, shoving, and eventually punched [plaintiff] in the stomach."(*Id.*) The impact of the punch allegedly caused plaintiff to lose his breath. (*Id.*) Plaintiff asserts that defendant Banks continued to threaten and harass him for a period of time following this incident, such that plaintiff has been afraid to come out of his cell "for fear that CO. Banks will assault [plaintiff], set [plaintiff] up, or have [plaintiff] beaten by other officers."(*Id.*)

Plaintiff further alleges that he was assaulted by defendant Fisher on July 4, 2011. (*Id.* ¶ II–D, Ex. A "Fisher Grievance .") According to the Complaint, plaintiff approached defendant Fisher in his office regarding a problem with a disbursement form for plaintiff's legal mail. Upon bringing the problem to defendant Fisher's attention, plaintiff asserts that defendant Fisher became "very aggressive" and shouted expletives at plaintiff. (*Id.* Ex. A) As plaintiff attempted to leave defendant Fisher's office, Fisher allegedly pulled plaintiff back into the office and "repeatedly punched [plaintiff's] face until [plaintiff] was unconscious."(*Id.*) Plaintiff allegedly regained consciousness later in his cell "with swollen [sic] and bruised [sic] on [plaintiff's] face and body."(*Id.*) Plaintiff asserts that when he awoke, "Sergeant Fisher was shaking me awake and he spit on my face."(*Id.*) Defendant Fisher then allegedly handcuffed plaintiff and told plaintiff he was going to take him to the hospital. (*Id.*) Because plaintiff "couldn't barely walk at this point," plaintiff asserts that he "was literally dragged out the galley," "thrown down the stairs," then dragged "down 32 flights of stairs on [plaintiff's] back," at which point defendant Fisher took plaintiff to the hospital. (*Id.* ¶ II–D, Ex. A.) In addition to a swollen and bruised face, plaintiff claims he suffered "cervical and lumbar spinal injuries" and "was hospitalized for one month." (*Id.* ¶ III.)

**\*2** Plaintiff filed this Complaint on December 21, 2011, alleging that defendants' assaults violated the

---

Laporte v. Fisher, Not Reported in F.Supp.2d (2012)
2012 WL 5278543

Eighth Amendment prohibition against cruel and unusual punishment. (Docket # 1.) Plaintiff seeks $2 million in compensatory and punitive damages. (Compl.¶ V.)

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). " 'Labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' " rather, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 555).

In considering a Rule 12(b)(6) motion to dismiss, all nonconclusory factual allegations are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *See In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (per curiam). Moreover, plaintiff's pro se pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."*Boykin v. KeyCorp,* 521 F .3d 202, 214 (2d Cir.2008) (internal quotations omitted). The plaintiff's pleadings are thus given a liberal and generous construction and are read "to raise the strongest arguments that they suggest."*Triestman v. Fed-Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (internal citation omitted).

In assessing the complaint, a court may consider documents incorporated by reference or attached to the complaint as exhibits, documents the plaintiff knew of or possessed and relied upon in framing the complaint, and items of which judicial notice may be taken. *Samuels v. Air Transp. Local 504,* 992 F.2d 12, 15 (2d Cir.1993). Here, plaintiff has attached relevant documents to the complaint, and these materials are properly considered on the motion.

**DISCUSSION**

**I. *Defendants' Motion to Dismiss All Claims Against Them in Their Official Capacities Is Granted.***

Plaintiff sues the defendants in both their official and individual capacities. Absent a waiver or valid congressional override, the Eleventh Amendment has been construed to bar an action for damages by a private plaintiff against the state. *Seminole Tribe v. Florida,* 517 U.S. 44, 54 (1996). This immunity extends to state officials acting in their official capacity. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985).Section 1983 does not abrogate Eleventh Amendment immunity. *See Edelman v. Jordan,* 415 U.S. 651, 675–77 (1974). Damages are thus not recoverable in a section 1983 action against state officials acting in their official capacities. *See, e.g., Davis v. New York,* 316 F.3d 93, 101–02 (2d Cir.2002).

**\*3** Since plaintiff exclusively seeks monetary damages, not prospective injunctive relief, *see Ex Parte Young,* 209 U.S. 123 (1908), defendants' motion to dismiss all claims against them in their official capacities is granted. Eleventh Amendment immunity has no bearing on claims asserted against defendants in their individual capacities.

**II. *Defendant Banks' Motion to Dismiss For Failure to State a Claim Is Denied.***

Defendant Banks asserts that plaintiff has failed to state a claim for relief. There is no dispute that Banks was acting under color of state law at all times alleged in the complaint. Nor is it contested that the right to be free from excessive force is protected under the Eighth Amendment. *See Graham v. Connor,* 490 U.S. 386, 395 n. 10 (1989) ("After conviction, the Eighth Amendment 'serves as the primary source of substantive protection ... in cases ... where the deliberate use of force is challenged as excessive and unjustified.' ") (quoting *Whitley v. Albers,* 475 U.S. 312, 327 (1986)). Defendant Banks argues that plaintiff has failed to allege any injuries as a result of Banks' alleged conduct, and that plaintiff's allegations are thus insufficient to state an Eighth Amendment claim. Defendant Banks relies on *Johnson v. Glick* 481 F.2d 1028, 1033 (2d Cir.1973), for the proposition that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers ...," violates the Constitution, and *Wilkins v. Gaddy,* 130 S.Ct. 1175, 1178 (2010), for the proposition that "not every malevolent touch by a prison guard gives rise to a federal cause of action."

Defendant Banks' reliance on these cases is misplaced. Plaintiff does not assert that defendant Banks "pushed" or "shoved" him. Rather, plaintiff alleges that defendant Banks "punched [plaintiff] in the stomach," causing plaintiff to "los[e][his] breath." (Compl.¶ II–D, Ex. B.) More significantly, the Supreme Court was clear in *Wilkins* that in

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 162 of 397

2016 WL 1295137

Laporte v. Fisher, Not Reported in F.Supp.2d (2012)
2012 WL 5278543

assessing an Eighth Amendment claim, the " 'core judicial inquiry' ... was not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Wilkins*, 130 S.Ct. at 1178 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). As plaintiff alleges that the punch was not the result of "a good-faith effort to maintain or restore discipline," but rather a "willfully malicious" action, (Compl.¶ V), which resulted from defendant Banks "harrassing (sic)" him, (*Id.* ¶ II–D), the Court concludes that plaintiff has pled sufficient facts to state a claim of use of excessive force, for which Section 1983 provides a remedy. Defendant Banks' motion to dismiss on these grounds is therefore denied.

**III. *Defendant Banks' Motion to Dismiss on the Ground of Qualified Immunity is Denied.***
Defendant Banks asserts that he is protected by qualified immunity against any Section 1983 claims, because the alleged punch did not violate any clearly established federal law. Defendant Banks does not cite any relevant Eighth Amendment case law in support of this argument. Rather, he merely states that the alleged punch "caused no injuries and [was] de minimus," and thus "did not violate any clearly established federal law." (Def.Mem.7.)

**\*4**  "The right of an individual not to be subjected to excessive force has long been clearly established." *Colunia v. City of New York*, 879 F.2d 1025, 1036 (2d Cir.1989). As discussed in the preceding section, plaintiff does not allege de minimus use of force, and there is no indication from the pleadings that force was necessary to maintain or restore discipline. An objectively reasonable corrections officer would have understood that punching an inmate in the stomach, for no purpose other than to harass him, would constitute excessive force in violation of the Eighth Amendment. *See Wilkins*, 130 S.Ct. at 1178. Plaintiff has thus sufficiently pled a violation of a clearly established federal right, and defendant Banks is not entitled to qualified immunity.

**IV. *Defendant Banks' Motion to Dismiss For Failure to Exhaust Under the PLRA is Converted to a Motion for Summary Judgment, and Denied.***
Defendant Banks asserts that plaintiff has failed to administratively exhaust his claim, as is required by the PLRA. Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title,

or any other Federal law, by a prisoner confined in any ... correctional facility until such administrative remedies as are available are exhausted."42 U.S.C. § 1997e(a)."[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."*Ibill v. Curcione*, 657 F.3d 116, 124 (2d Cir.2011) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002))."There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."*Jones v. Bock*, 549 U.S. 199, 211 (2007).

In order to properly exhaust administrative remedies under the PLRA, inmates must complete the administrative review process in accordance with the rules of the particular institution in which they are confined. *Jones*, 549 U.S. at 218. In New York state prisons, the Department of Corrections and Community Supervision ("DOCCS") has established a three-step inmate grievance procedure. This procedure is set forth in N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5(2010).

First, an inmate must submit a grievance complaint to the clerk within twenty-one calendar days of an alleged occurrence. Id. at (a). The Inmate Grievance Resolution Committee ("IGRC") then has up to sixteen calendar days to resolve the issue informally. *Id.* at (b)(1). If there is no informal resolution, the IGRC shall conduct a hearing within sixteen calendar days of receipt of the grievance, and issue a written decision within two working days of the close of the hearing. *Id.* at (b)(2). Next, an inmate must appeal an adverse decision to the facility superintendent within seven calendar days after receipt of the IGRC's written decision. *Id.* at (c)(1). The superintendent then has twenty days to render a decision. *Id.* at (c)(3). Finally, the inmate must appeal to the Central Office Review Committee ("CORC") within seven calendar days after receipt of the superintendent's written response, *id.* at (d)(1), and the CORC must render its final decision on the grievance within thirty calendar days from the time the appeal was received, *id.* at (d)(2). Only after an inmate has exhausted all three steps of this grievance process may he commence suit in federal court. *See Porter*, 534 U.S. at 524.

**a. *Defendant Banks' Motion to Dismiss on* Rule 12(b)(1) *Grounds is Denied.***
**\*5**  Defendant Banks seeks dismissal pursuant to Rule 12(b)(1) and (6), but fails to specify the precise Rule 12(b) grounds under which he seeks dismissal for failure to exhaust. As the

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 163 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Laporte v. Fisher, Not Reported in F.Supp.2d (2012)
2012 WL 5278543

PLRA's exhaustion requirement is not jurisdictional in nature, *Richardson v. Goord,* 347 F.3d 431, 434 (2d Cir.2003), the Court cannot dismiss plaintiff's action for lack of subject matter jurisdiction. Thus, to the extent that the motion at bar is brought pursuant to Rule 12(b)(1), it is denied.

**b. Defendant Banks' Motion to Dismiss on Rule 12(b)(6) Grounds is Converted To a Motion for Summary Judgment.**

Defendant Banks also seeks dismissal for failure to exhaust pursuant to Rule 12(b)(6). Failure to exhaust is an affirmative defense under the PLRA and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones,* 549 U.S. at 216. Dismissal pursuant to Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint. *See McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003) (Chin, J.).

Here, plaintiff states in the Complaint that he filed a grievance with Sing Sing's grievance office, and that his claims were denied. (Compl.¶ IV.) Plaintiff further states he

    appealed to the superintendent Philip
    D. Heath and [his] appeal was denied.
    [He] then appealed to Albany N.Y.
    CORC and received a letter from them
    dated November 2nd 2011 claiming
    they would look into the matter.
    However as of today [he] ha[sn't]
    heard back from CORC.

(Compl.¶ IV–E(3).) Nonexhaustion is not apparent from the face of the complaint, and dismissal pursuant to Rule 12(b)(6) is inappropriate.

However, as then-District Court Judge Chin has noted,

    If nonexhaustion is not clear from the
    face of the complaint, a defendant's
    motion to dismiss should be converted,
    pursuant to Rule 12(b) [now codified
    in relevant part as Rule 12(d) ], to
    one for summary judgment limited to
    the narrow issue of exhaustion and the
    relatively straightforward questions
    about the plaintiff's efforts to exhaust,
    whether remedies were available, or

whether exhaustion might be, in very limited circumstances, excused.

*McCoy,* 255 F.Supp.2d at 251. Under Rule 12(d), Fed.R.Civ.P., if "matters outside the pleadings are presented to and not excluded by the court" on a motion under Rule 12(b)(6), "the motion must be treated as one for summary judgment under Rule 56."Moreover, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."*Id.* Accordingly, "a district court acts properly in converting a motion for judgment on the pleadings into a motion for summary judgment when the motion presents matters outside the pleadings," so long as "the court give [s] 'sufficient notice to an opposing party and an opportunity for that party to respond.' " *Hernandez v. Coffey,* 582 F.3d 303, 307 (2d Cir.2009) (quoting *Groden v. Random House, Inc.,* 61 F.3d 1045, 1052 (2d Cir.1995)).

**\*6** In *Hernandez v. Coffey,* the Second Circuit expounded on the notice requirement with regards to *pro se* parties. *Hernandez,* 582 F.3d at 307–09. The court began by noting that formal notice is not ordinarily required "where a party 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment [and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts outside the pleadings.' " *Id.* at 307 (alteration in original) (quoting *Villante v. Dep't of Corrections of City of New York,* 786 F.2d 516, 521 (2d Cir.1986)). However, in the case of a pro se party, " '[n]otice is particularly important' because the *pro se* litigant 'may be unaware of the consequences of his failure to offer evidence bearing on triable issues.' " *Id.* (alteration in original) (quoting *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983)). Accordingly, the court ruled that "absent a clear indication that the *pro se* litigant understands the nature and consequences of Rule 56 ... he or she must be so informed by the movant in the notice of motion or, failing that, by the district court." Id at 308 (citing *McPherson v. Coombe,* 174 F.3d 276 (2d Cir.1999)).

Here, defendant Banks provided to plaintiff precisely the kind of notice required by *Hernandez.*In accordance with S.D.N.Y. Civil Rules 12.1 and 56.2, defendant Banks served plaintiff with notice that the motion to dismiss might be converted to a summary judgment motion, explaining to plaintiff what he had to do to oppose summary judgment. ("Notice to Pro Se Litigants Opposing Motion to Dismiss or Motion for Summary Judgment," dated March 26, 2012, Docket # 19.) *See Hernandez,* 582 F.3d at 309 n. 2 (in reversing the district court, noting that two cases relied

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 164 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Laporte v. Fisher, Not Reported in F.Supp.2d (2012)

2012 WL 5278543

upon by the district court were "inapposite because the defendants in each case provided notice pursuant to S.D.N.Y. Civil Rule 12.1 explaining that their motions to dismiss might be converted into motions for summary judgment for purposes of determining exhaustion, and, further, explaining what the plaintiff had to do to oppose summary judgment"). Accordingly, the Court concludes that converting the motion to dismiss to a motion for summary judgment is appropriate.

#### c. Defendant Banks' Motion for Summary Judgment is Denied.

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir.2012).

"[T]he burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." Gallo v. Prudential Residential Svcs., Ltd. Partnership, 22 F.3d 1219, 1223 (2d Cir.1994). In response, the nonmovant bears only a "limited burden of production," Powell v Nat'l Bd. of Medical Examiners, 364 F.3d 79, 84 (2d Cir.2004), and "all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought," Gallo, 22 F.3d at 1223. Moreover, the Second Circuit has "long recognized that summary judgment is a drastic device," Nationwide Life Ins. Co. v. Bankers Leasing Ass'n. Inc., 182 F.3d 157, 160 (2d Cir.1999), and "should not be granted when there are major factual contentions in dispute," National Life Ins. Co. v. Solomon, 529 F.2d 59, 61 (2d Cir.1975)."This is particularly so when, as here, one party has yet to exercise its opportunities for pretrial discovery." Id.

*7  Nonetheless, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986) (internal quotations omitted). If the evidence produced by the nonmovant "is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249–50 (internal citations omitted).

Here, there is a disputed issue of material fact as to whether plaintiff administratively exhausted his remedies. Defendant Banks has submitted evidence concerning the CORC computer database, which allegedly "contains a great deal of historical data with respect to appeals to CORC." (Bellamy Decl. ¶ 4, annexed to Harben Decl.) Defendant Banks submits that this database reveals that CORC never received any grievance appeals from plaintiff with respect to the incident at issue. However, plaintiff has declared under penalty of perjury: that he filed a grievance against defendant Banks, and that Sing Sing's Inmate Grievance Committee failed to respond; that he then appealed his grievance to the superintendant, and that the superintendant similarly failed to respond; and that he appealed to CORC, and was told that there was no record of his grievance. ("Opposition in Response to Defendants Motion to Dismiss" ¶ 1, Docket # 24; "Affidavit of Hector Laporte," Docket # 27.) This evidence, viewed in the light most favorable to the nonmoving party, raises a genuine dispute of material fact. Therefore, and particularly in light of the fact that plaintiff has "yet to exercise [his] opportunit[y] for pretrial discovery," Solomon, 529 F.2d at 61, summary judgment is denied. Defendant Banks is free to renew his motion for summary judgment at the close of discovery. If after a full and fair opportunity to conduct discovery, all that plaintiff is able to present is a conclusory assertion, unsupported by documentary evidence (where one would expect documentary support to exist), the defense of lack of exhaustion may look quite different.

#### CONCLUSION

For the foregoing reasons and to the extent stated above, the defendants' motion to dismiss is GRANTED in part and DENIED in part. All claims against defendants Banks and Fisher in their official capacities are dismissed. All other claims, including all claims against the defendants in their individual capacities, remain pending.

The defendants shall provide to the plaintiff copies of all unreported cases cited herein. The Court certifies, pursuant to 28 U.S.C § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 165 of 397

2016 WL 1295137

Laporte v. Fisher, Not Reported in F.Supp.2d (2012)

2012 WL 5278543

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 5278543

End of Document                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:25-cv-00083-BKS-TWD   Document 29   Filed 01/20/26   Page 166 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)
2013 WL 1294606

2013 WL 1294606
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Marc LEWIS, Plaintiff,
v.
HAVERNACK, Sergeant, Mt. McGregor
Correctional Facility, et al., Defendants.

Civil Action No. 9:12–CV–0031 (GLS/DEP).
|
March 28, 2013.

**Attorneys and Law Firms**

Marc Lewis, Moravia, NY, pro se.

Hon. Eric T. Schneiderman, Office of the Attorney General,
State of New York, Department of Law, The Capitol, Gregory
J. Rodriguez, Esq., Assistant Attorney General, of Counsel,
Albany, NY, for Defendants.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** *Pro se* plaintiff Marc Lewis, a New York State prison
inmate with considerable prior litigation experience, has
commenced this action against five corrections officers
employed at the prison facility in which he was confined at
the relevant times, pursuant to 42 U.S.C. § 1983, alleging
deprivation of his civil rights.[1] In his complaint, plaintiff
alleges that he was assaulted by one of the defendants and
denied medical attention for his injuries arising from the
alleged assault, and that the defendants later conspired to
conceal the alleged assault. As relief, plaintiff's complaint
seeks recovery of $3 million in damages.

Currently pending before the court is a motion brought by the
defendants seeking dismissal of plaintiff's complaint based on
his failure to exhaust administrative remedies, and for failure
to state a claim as it relates to all of plaintiff's causes of
action with the exception of his Eighth Amendment excessive
force claim. For the reasons set forth below, I recommend
that defendants' motion to dismiss for failure to exhaust be
denied as premature, without prejudice, but that their motion
otherwise be granted.

**I. BACKGROUND** [2]

Plaintiff is a New York State prison inmate currently being
held in the custody of the New York State Department
of Corrections and Community Supervision ("DOCCS").*See
generally* Complaint (Dkt. No. 1). While he is now
incarcerated elsewhere, at the times relevant to his claims
in this action, plaintiff was confined in the Mt. McGregor
Correctional Facility ("Mt.McGregor"), located in Wilton,
New York. *Id.*

During the week of February 19, 2009, plaintiff filed
a complaint with Mt. McGregor Superintendent William
T. Hagget, accusing corrections officers of stealing and
consuming state food products. Complaint (Dkt. No. 1)
at 6. Plaintiff was interviewed by a corrections lieutenant
on February 14, 2009, concerning the complaint, and was
advised that the matter would be addressed.*Id.*

On February 15, 2009, plaintiff was subjected to an
unauthorized search of his prison cell by several corrections
officers, all of whom threatened him. Complaint (Dkt.
No. 1) at 7. Plaintiff attributes the search and threats
to his complaint to Superintendent Hagget concerning the
conduct of corrections officers. *Id.* In the morning of
February 16, 2009, plaintiff mailed another written complaint
regarding corrections officers stealing and consuming state
food products to Mt. McGregor Superintendent Hagget and
DOCCS Commissioner Brian Fischer. *Id.* at 9.

On February 20, 2009, plaintiff was asked to voluntarily
meet with defendant Havernack, a corrections sergeant, to
discuss his complaints. Complaint (Dkt. No. 1) at 9. Believing
the meeting to be a "set up," plaintiff refused to attend and
retreated to his cell. *Id.* After returning to his cell, defendant
Havernack and two other unidentified officers arrived at
plaintiff's cell, placed him in handcuffs, and escorted him to
the basement of Mt. McGregor's administration building. *Id.*
at 10.Upon arriving, and while still in handcuffs, plaintiff was
placed in a chair in front of a desk, behind which defendant
Sheridan, a corrections lieutenant, was sitting. *Id.* At some
point during the meeting defendant Sheridan stood up, walked
behind plaintiff, and struck plaintiff on the right side of
the face with a closed fist, rendering Lewis unconscious
and knocking him out of his chair. *Id.* at 12.As a result of
the incident, Lewis experienced injuries to his right upper
facial cheek and lower eyelid, as well as his left upper facial

2016 WL 1295137

---

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)

2013 WL 1294606

check. *Id.* Upon returning to consciousness, plaintiff's several requests for medical attention were denied. *Id.* at 13–14.

**\*2** Shortly following the incident, defendants Imfeld and Johnson, together with an unidentified corrections sergeant, escorted plaintiff to a waiting van, where he was transported out of Mt. McGregor. Complaint (Dkt. No. 1) at 15. As the van left the facility, plaintiff continued to complain of his injuries and request medical attention. *Id.* at ¶ 31. Those requests were denied. *Id.* Eventually, after plaintiff threatened to cause an accident if he was not provided medical attention, defendants Imfeld and Johnson returned the van to Mt. McGregor, where plaintiff was taken to the prison infirmary, and ultimately seen by medical personnel. *Id.* at 15–16.

### II. *PROCEDURAL HISTORY*

Plaintiff's complaint in this action was filed on January 9, 2012. Complaint (Dkt. No. 1). That complaint names Corrections Sergeant Havernack, Corrections Lieutenant Sheridan, and Corrections Officers Chapman, Johnson and Imfeld, all of whom were stationed at Mt. McGregor at the relevant times, as defendants, and sets forth five causes of action, including excessive force and deliberate indifference claims under the Eighth Amendment, a claim for conspiracy to violate his Eighth Amendment rights, and claims that are based upon alleged threats by defendants and the issuance of a false misbehavior report. *Id.*

In answer to plaintiff's complaint, defendants moved for its dismissal on July 3, 2012, arguing that plaintiff's claims are precluded based upon his failure to exhaust available administrative remedies, and additionally that all of his claims, except the excessive force claim, fail to state a claim upon which relief may be granted. Dkt. No. 30. Plaintiff has since responded in opposition to defendants' dismissal motion. Dkt. No. 42. In addition, plaintiff seeks leave, by motion filed on September 21, 2012, to file an amended complaint in the action. Dkt. No. 46. Plaintiff's motion for leave to amend has been opposed by defendants on the basis of futility. Dkt. No. 47.

The parties' cross-motions, which are now fully briefed and ripe for determination, have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed.R.Civ.P. 72(b).

### III. *DISCUSSION*

#### A. *Dismissal Standard*

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure calls upon a court to gauge the facial sufficiency of that pleading using a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Iqbal,* 556 U.S. 677–78 (quoting Fed.R.Civ.P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

**\*3** In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citing *Twombly,* 550 U.S. at 555–56); *see also Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir.2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *Iqbal,* 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570); *see also Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened factual pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly,* 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson,* 551 U.S. at 94 (" '[A] *pro se*

---

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 168 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)
2013 WL 1294606

complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)) (internal citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir.2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (internal quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F.Supp.2d 100, 104 (N.D.N.Y.2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

**B. Exhaustion of Remedies**

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 84, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) ( "Exhaustion is ... mandatory. Prisoners must now exhaust all 'available' remedies[.]"); *Hargrove v. Riley*, No. 04–CV–4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan.31, 2007) ("The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983."). [3] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

*4 The failure of a prisoner to satisfy the PLRA's exhaustion requirement is an affirmative defense that must be raised by a defendant in response to an inmate suit. *Jones v. Block*, 549 U.S. 199, 212, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). In the event the defendant establishes that the inmate plaintiff failed "to fully complet[e] the administrative review process" prior to commencing the action, the plaintiff's complaint is subject to dismissal.*Pettus v. McCoy*, No. 04–CV–0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl [ying]

with the system's critical procedural rules."*Woodford*, 548 U.S. at 95;*see also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir.2007) (citing *Woodford*).

Here, defendants argue that plaintiff's claims are barred based upon plaintiff's alleged failure to comply with the exhaustion requirement pursuant to the PLRA. Defs.'s Memo. of Law (Dkt. No. 30, Attach.1) at 5-7. In support, defendants have filed a declaration from Jeffrey Hale, the Assistant Director of the Inmate Grievance Program with DOCCS, who avers that, based on an examination of DOCCS's records, plaintiff "did not pursue a grievance appeal to CORC regarding an incident date of February 15, 2009[,] or February 20, 2009, including the issues presented in this action[.]" Hale Decl. (Dkt. No. 30, Attach.3) at * 4. In response, plaintiff concedes that he did not file a grievance with regard to the alleged assault on February 20, 2009, because he argued these issues, instead, "at his multiple hearing proceedings," including "Superintendent hearing proceedings"—which I have presumed to be a reference to a disciplinary hearing —and his administrative appeal to the Commissioner. Plf.'s Memo. of Law (Dkt. No. 42) at 9–10.

The exhaustion defense is one that is not particularly well-suited for resolution for a motion to dismiss, absent the clearest indication in a plaintiff's complaint that a failure to exhaust has occurred. *See, e.g., Laporte v. Fisher*, No. 11–CV–9458, 2012 WL 5278543, at *5 (S.D.N.Y. Oct.24, 2012) ("Dismissal pursuant to Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint."(citing *McCoy v. Goord*, 255 F.Supp.2d 233, 251, (S.D.N.Y.2003)). In this instance, plaintiff's complaint alleges that he filed more than one grievance related to the facts in his complaint, and that his grievance was denied. Complaint (Dkt. No. 1) at 4. Plaintiff's complaint also alleges that he filed complaints to the DOCCS Commissioner, as well as the Superintendent at Mt. McGregor. *Id.* Considering these allegations, which are contained in the four corners of plaintiff's complaint, I conclude that there is sufficient doubt as to whether plaintiff exhausted his administrative remedies to deny defendants' motion to dismiss on this ground. *See Laporte*, 2012 WL 5278543, at *5 (holding that, absent a clear indication from the face of the complaint that a plaintiff has failed to exhaust, dismissal pursuant to Rule 12(b) (6) is not appropriate).

*5 While defendants have submitted extrinsic evidence, including the Hale declaration, calling into question plaintiff's representation that exhaustion has been accomplished, such

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 169 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)
2013 WL 1294606

extrinsic materials are not properly considered on a motion to dismiss. It is true that one potential course would be to convert the motion into one for summary judgment, pursuant to Rule 12(d), so that the extrinsic materials would then properly be considered. See McCoy, 255 F.Supp.2d at 251 ("If nonexhaustion is not clear from the face of the complaint, a defendant's motion to dismiss should be converted ... to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused."). I recommend against conversion, however, since the plaintiff has not been put on notice that such a conversion was a possibility, or of the possible consequences of such a conversion. See Hernandez v. Coffey, 582 F.3d 303, 308 (2d Cir.2009) ("[A]bsent a clear indication that the pro se litigant understands the nature and consequences of such a conversion. See 56 [governing motions for summary judgment] ... he or she must be so informed by the movant in the notice or, failing that, by the district court.").

Moreover, although plaintiff has apparently conceded that he did not "proper [ly] exhaust[ ]" his claims, Woodford, 548 U.S. at 95, relating to the February 20, 2009 incident, he argues that he satisfied his exhaustion obligation by making his arguments during "multiple hearing proceedings," including "Superintendent hearing proceedings" and on appeal after he was found guilty. Plf's Memo. of Law (Dkt. No. 42) at 9. I note that "under certain circumstances, an inmate may exhaust his administrative remedies by raising his claim during a related disciplinary proceeding." Murray v. Palmer, No. 03–CV–1010, 2010 WL 1235591, at *3 (Mar. 31, 2010) (Suddaby, J.) (emphasis omitted); accord, Barksdale v. Fronya, No. 10–CV–0831, 2012 WL 4107805, at *8 (N.D.N.Y. Sept. 19, 2012) (Peebles, M.J.), adopted in its entirety by 2012 WL 4107801 (D'Agostino, J.); but see LaBounty v. Johnson, 253 F.Supp.2d 496, 501–02 (W.D.N.Y.2003) ("An appeal from a disciplinary hearing does not satisfy the grievance exhaustion requirement for a [constitutional] claim, even if the hearing is based on the same set of facts underlying the grievance.")(citing McNair v. Sgt. Jones, No. 01–CV–3253, 2002 WL 31082948, at *7 (S.D.N.Y. Sept. 18, 2002)). Because the reasons for plaintiff's choice to pursue his complaints through a disciplinary proceeding are far from clear at this early stage of the action, I am unable to make a determination as to whether plaintiff may be excused from properly exhausting his administrative remedies.

For all of these reasons, I recommend that defendants' motion to dismiss on the basis of plaintiff's alleged failure to exhaust be denied, without prejudice to defendants' right to raise the defense at a point when it can be analyzed based upon a more fully developed record.

**C. Eleventh Amendment**

*6  Plaintiff's complaint alleges that, at the relevant times, the named defendants were acting both in their individuals and official capacities in violating the plaintiff's constitutional rights. Complaint (Dkt. No. 1) at 1. In their motion to dismiss, defendants argue that, to the extent they are sued in their official capacities, plaintiff's claims are precluded under the Eleventh Amendment. Defs.' Memo. of Law (Dkt. No. 30) at 7–8.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought. Edelman v. Jordan, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Cory v. White, 457 U.S. 85, 90–91, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir.1993). This absolute immunity, which states enjoy under the Eleventh Amendment, extends to both state agencies and state officials sued for damages in their official capacities when the essence of the plaintiff's claim seeks recovery from the state as the real party in interest.[4] See, e.g., Daisernia v. State of New York, 582 F.Supp. 792, 798–99 (N.D.N.Y.1984) (McCurn, J.) ("[A] suit which seeks a money judgment 'which must be paid from the state treasury is barred by the Eleventh Amendment,' even though it is nominally asserted against an individual official."(quoting Edelman, 415 U.S. at 663)); see also Richards v. State of New York App. Div., Second Dep't, 597 F.Supp. 689, 691 (E.D.N.Y.1984) (citing, inter alia, Cory v. White, 457 U.S. 85, 89–91, 102 S.Ct. 2325, 72 L.Ed.2d 694, (1982)) "To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."[5] Ying Jing Gan, 996 F.2d at 529, see also Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Plaintiff's damage claims in this action against the named defendants in their official capacities are, in reality, claims against the State of New York. Daisernia, 582 F.Supp. at

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)
2013 WL 1294806

798–99. They are therefore subject to dismissal. Accordingly, I recommend that, to the extent that any of the claims asserted in plaintiff's complaint are asserted against any of the named-defendants in their official capacities, those claims be dismissed with prejudice.

**D. Deliberate Medical Indifference**

Plaintiff's complaint alleges that he requested and was denied immediate medical treatment by various correctional officers, including defendants Imfeld and Johnson, after he was allegedly punched and rendered unconscious by defendant Sheridan on February 20, 2009. Complaint (Dkt. No. 1) at 13–14. Plaintiff's complaint also alleges that he was not provided medical assistance until, while being transferred out of Mt. McGregor and into another facility, he threatened to cause an accident on the highway if defendants Imfeld and Johnson did not return him to the Mt. McGregor infirmary. *Id.* at 15–16. Defendants argue that the nature of plaintiff's alleged injuries and the modest delay in providing plaintiff medical treatment do not give rise to a plausible claim for medical indifference. Defs.' Memo. of Law (Dkt. No. 30, Attach.1) at 8–10.

\*7 The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society [,]' or which 'involve the unnecessary and wanton infliction of pain [.]' " *Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Trop v. Dulles,* 356 U.S. 86, 100–01, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) and *Gregg v. Georgia,* 428 U.S. 153, 169–73, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (internal citations omitted)). While the Eighth Amendment " 'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)).

"These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle,* 429 U.S. at 103. Failure to provide inmates with medical care, "[i]n the worst cases, ... may actually produce physical torture or lingering death, [and] ... [i]n less serious cases, ... may result in pain and suffering no one suggests would serve any penological purpose." *Id.*

A claim alleging that prison officials have violated an inmate's Eighth Amendment rights by inflicting cruel

and unusual punishment must satisfy both objective and subjective requirements. *Wright v. Goord,* 554 F.3d 255, 268 (2d Cir.2009); *Price v. Reilly,* 697 F.Supp.2d 344, 356 (E.D.N.Y.2010). To satisfy the objective requirement, the Second Circuit has said that

> [d]etermining whether a deprivation is an objectively serious deprivation entails two inquiries. The first inquiry is whether the prisoner was actually deprived of adequate medical care. As the Supreme Court has noted, the prison official's duty is only to provide reasonable medical care .... Second, the objective test asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner.

*Salahuddin v. Goord,* 467 F.3d 263, 279–80 (2d Cir.2006) (internal citations omitted).

The second inquiry of the objective test requires a court to look at the seriousness of the inmate's medical condition if the plaintiff alleges a complete failure to provide treatment. *Smith v. Carpenter,* 316 F.3d 178, 185–86 (2d Cir.2003). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Salahuddin,* 467 F.3d at 280 (internal quotation marks and alterations omitted).

If, on the other hand, a plaintiff's complaint alleges that treatment was provided but was inadequate, the second inquiry of the objective test is narrowly confined to that specific alleged inadequacy, rather than focusing upon the seriousness of the prisoner's medical condition. *Salahuddin,* 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, [the focus of the] inquiry [is] on the challenged delay or interruption in treatment, rather than the prisoner's underlying medical condition alone."*Id.* (quoting *Smith,* 316 F.3d at 185) (internal quotations marks omitted).

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 171 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)

2013 WL 1294606

*8 To satisfy the subjective requirement, a plaintiff must demonstrate that the defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.' " *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir.1999). "In medical-treatment cases ..., the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280. "Deliberate indifference," in a constitutional sense, "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* (citing *Farmer*, 511 U.S. at 837);*see also Leach v. Dufram*, 103 F.Supp.2d 542, 546 (N.D.N.Y.2000) (Kahn, J.) (citing *Farmer* ); *Waldo v. Goord*, No. 97–CV–1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (same). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280 (citing *Farmer*, 511 U.S. at 839–40).

Applying this legal framework to this action, I conclude that plaintiff's complaint fails to allege facts that plausibly satisfy either the objective or subjective requirements. First, although plaintiff's complaint alleges that defendants Imfeld and Johnson denied him medical care shortly after he regained consciousness, it does not provide a time frame indicating how long they denied plaintiff medical care. *See generally* Complaint (Dkt. No. 1) at 13–16.Plaintiff's complaint does show that, at some point after, and on the same day of, the alleged assault by defendant Sheridan, he was treated at the Mt. McGregor infirmary for his injuries. *Id.* at 16.Accordingly, I am unable to determine whether the facts alleged plausibly suggest that defendants Imfeld and Johnson acted unreasonably under the circumstances as it relates to how quickly they provided plaintiff with medical treatment. *See Salahuddin*, 467 F.3d at 279–80 ("Thus, prison officials who act reasonably in response to an inmate-health risk cannot be found liable under the Cruel and Unusual Punishment Clause[.]" (internal quotation marks and alterations omitted)); *see also Herbert v. NYC Dep't of Corrs.*, No. 10–CV–8799, 2012 WL 3834660, at *4 (S.D.N.Y. Aug.21, 2012) (finding that the plaintiff's complaint failed to state a claim for deliberate indifference where the plaintiff "conceded[d] ... that he ultimately did receive medical treatment on the same days that he alerted Captains Williams and Brown to his condition"); *Sonds v. St. Barnabas Hosp. Corr. Health Svcs.*, 151 F.Supp.2d 303, 312 (S.D.N.Y. May 21, 2001) (finding that the plaintiff's

complaint failed to state a claim for deliberate indifference where the plaintiff suffered an injury to his finger and waited for three and one-half hours for treatment).

*9 In addition, and more persuasively, plaintiff's complaint fails to allege facts plausibly suggesting that the alleged denial of medical care was "sufficiently serious." *See Salahuddin*, 467 F.3d at 280 (requiring, when conducting the objective test, to determine, at the second inquiry, whether "the inadequacy of medical care is sufficiently serious"). To make this determination when a plaintiff, as in this case, alleges a "failure to provide any treatment," the court "examine[s] whether the inmate's medical condition is sufficiently serious."*Id.* (citing *Smith*, 316 F.3d at 185–86). Plaintiff's complaint alleges only that he suffered injuries to his "upper facial cheek and lower eyelid, as well as [his] left upper cheek" after being punched just once. Complaint (Dkt. No. 1) at 12.These allegations regarding his injuries do not plausibly suggest that plaintiff's daily activities were "significantly affect[ed]," or that his condition "cause[d] chronic or substantial pain." *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) (listing that some of the factors relevant to determining the seriousness of a medical condition include "the presence of a medical condition that significantly affects an individual's activities[,] or the existence of a chronic and substantial pain"). In addition, these allegations suggest plaintiff suffered only minor injuries, which are not sufficiently serious to state a deliberate indifference claim under the Eighth Amendment. *See, e.g., Harris v. Morton*, No. 05–CV–1049, 2008 WL 596891, at *3, n. 2 (N.D.N.Y. Feb. 29, 2008) (Kahn, J. and Treece, M.J.) (noting that, although plaintiff stated he suffered from a "snapped" neck, he had not indicated that he suffered from anything other than a generic neck injury); *Bennett v. Hunter*, No. 02–CV–1365, 2006 WL 1174309, *3 (N.D.N.Y. May 1, 2006) (Scullin, S.J. and Lowe, M.J.) (finding that a pinched nerve in one's wrist is not a serious medical need); *Jones v. Furman*, No. 02–CV–939F, 2007 WL 894218, at *10 (W.D.N.Y. Mar.21, 2007) (finding that soreness, pain in, and a lump behind, his right ear, lump on the back of his head, small abrasions on his nose and knuckle, and bruising to his back, ribs, and legs, do not constitute the requisite serious medical need) (citing *Hemmings v. Gorczyk*, 134 F.3d 104, 109 (2d Cir.1998)); *Tapp v. Tougas*, No. 05–CV–0149, 2008 WL 4371766, at *9 (N.D.N.Y. Aug.11, 2008) (Peebles, M.J.), *Report and Recommendation Adopted in Part and Rejected in Part,*2008 WL 4371762 (N.D.N.Y. Sept.18, 2008) (Mordue, C.J.), (noting that a "dull pain" in plaintiff's back and kidney area and persistent rash on plaintiff's foot did not raise a

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)

2013 WL 1294606

constitutional issue) (citing *Peterson v. Miller*, No. 04–CV–0797, 2007 WL 2071743, at \*7 (N.D.N.Y. July 13, 2007) (Hurd, J. and Peebles, M.J.); *Salaam v. Adams*, No. 03–CV–0517, 2006 WL 2827687, \*10 (N.D.N.Y. Sept. 29, 2006) (Kahn, J. and Lowe, M.J.) (finding that plaintiff's injuries did not constitute a serious medical condition where plaintiff suffered from intermittent back pain requiring pain relievers and physical therapy, a gastrointestinal problem with stomach pains, and a psychological problem requiring Wellbutrin and/or Neurontin); *see also Ford v. Phillips*, No. 05–CV–6646, 2007 WL 946703, at \*12 & n. 70 (S.D.N.Y. Mar. 27, 2007) (finding that plaintiff's allegations of bruises, abrasions, slight bleeding, and scratches, did not constitute a sufficiently serious condition giving rise to a medical indifference claim); *Sonds*, 151 F.Supp.2d at 311 (holding that a cut finger, even where the skin had "ripped off" was insufficiently serious); *Bonner v. New York City Police Dep't*, No. 99–CV–3207, 2000 WL 1171150, at \*4 (S.D.N.Y. Aug. 17, 2000) (holding that the inability to "close" a finger due to swelling in one's hand is insufficiently serious to constitute Eighth Amendment violation); *Gomez v. Zwillinger*, 1998 U.S. Dist. LEXIS 17713, at \*16 (S.D.N.Y. November 6, 1998) (holding that back pain and discomfort were not sufficiently serious); *Jones v. New York City Health & Hosp. Corp.*, No. 84–CV–5372, 1984 WL 1280 at \*1 (S.D.N.Y. November 28, 1984) (dismissing claim for deliberate medical indifference where plaintiff challenged treatment for bruises on head and body). Even construing his complaint in the light most favorable to plaintiff, I am unable to conclude that the allegations meet the objective test for a deliberate indifference claim. [6]

\*10 Finally, even if I were to find that the allegations in plaintiff's complaint satisfy the objective test, they would not meet the subjective test. There are simply no allegations in plaintiff's complaint to plausibly suggest that, in denying plaintiff's requests for medical care, defendants Imfeld and Johnson acted with "deliberate indifference." *Salahuddin*, 467 F.3d at 280. The complaint, in contrast, alleges only that defendants Imfeld and Johnson denied plaintiff's request for medical care "after seeing [plaintiff's] injuries." Complaint (Dkt. No. 1) at 14.Bearing in mind that plaintiff's complaint provides little details as to the nature of his injuries, and only alleges that Lewis sustained an injury to his cheeks and an eyelid, I cannot conclude that, even assuming that defendants Imfeld and Johnson did deny plaintiff's medical care, that they were "actually aware of a substantial risk" to plaintiff's health in so doing. *See Salahuddin*, 467 F.3d at 280 (holding that deliberate indifference "requires that the charged official

act ... while actually aware of a substantial risk that serious inmate harm will result").

For all of these reasons, I recommend that defendants' motion to dismiss for failure to state a claim be granted as to plaintiff's deliberate indifference claim against defendants Imfeld and Johnson.

**E. Plaintiff's Claims of Threats and Harassment**

Plaintiff's complaint alleges that, on February 15, 2009, as a prelude to the assault by defendant Sheridan, he was threatened and harassed by corrections officers, including defendant Havernack. Complaint (Dkt. No. 1) at 7. In their motion, defendants also seek dismissal of any claims that may be asserted by those allegations. Defs.' Memo. of Law (Dkt. No. 30, Attach.1) at 10–11.

It is well recognized that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley*, 261 F.Supp.2d 113, 129 (N.D.N.Y.2003); *Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460, 474 (S.D.N.Y.1998). Thus, "[v]erbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation."*Carpio v. Walker*, No. 95–CV–1502, 1997 WL 642543, at \*6 (N.D.N.Y. Oct.15, 1997) (Pooler, J. and DiBianco, M.J.) (citing *Purcell*, 790 F.2d at 165 (holding that name-calling is insufficient to allege a constitutional violation); *see also Moncrieffe v. Witbeck*, No. 97–CV–253, 2000 WL 949457, at \*3 (N.D.N.Y. June 29, 2000) (Mordue, J.) (finding allegations that the defendants laughed at the plaintiff while he showered did not give rise to liability under section 1983); *Abott v. Cleary*, 913 F.Supp. 160, 165 (W.D.N.Y. Jan.8, 1996) ("It is well established that[ ] mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations.").

In this instance, because plaintiff's allegations of threats are insufficient to support a claim under section 1983, I recommend that defendants' motion to dismiss as it relates to plaintiff's claims of verbal threats against defendant Havernack be granted.

**F. Conspiracy**

\*11 Plaintiff's complaint alleges the existence of a conspiracy among the defendants and other prison officials to cover-up the events giving rise to this action and falsify official documents in order to suggest that plaintiff's

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 173 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)

2013 WL 1294606

injuries were self-inflicted. Complaint (Dkt. No. 1) at 13, 16.Specifically, plaintiff alleges that defendants Chapman and Imfeld conspired to violate his constitutional rights when they allegedly drafted a false misbehavior report accusing Lewis of self-inflicting the injuries, which plaintiff alleges, resulted from defendant Sheridan's assault. *Id.* at 16.Plaintiff also alleges that defendant Sheridan and Havernack conspired to conceal defendant Sheridan's alleged assault on plaintiff by moving plaintiff into a different room after the alleged assault, and refusing to provide plaintiff with immediate medical care. *Id.* at 13.Defendants seek dismissal of these claims, arguing that plaintiff's complaint fails to allege facts plausibly suggesting a conspiracy, and, in any event, the claims are barred by the intra-agency conspiracy doctrine. Defs.' Memo. of Law (Dkt. No. 30, Attach.1) at 11–12.

"To prove a [section] 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."*Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999); *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995)."A complaint containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."*Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983).

As it relates to plaintiff's claim of conspiracy against defendants Chapman and Imfeld, "a prison inmate has no general right to be free from being falsely accused in a misbehavior report."*Boddie v. Schneider,* 105 F.3d 857, 862 (2d Cir.1997); *see also Applewhite v. Sheahan,* No. 08–CV–6045, 2013 WL 144957, at *10 (W.D.N.Y. Jan.11, 2013) (dismissing the plaintiff's claim arising from allegations that the defendant filed a false misbehavior report against the plaintiff to disguise the fact that the defendant stole the plaintiff's legal books)."There must be more, such as retaliation against the prisoner for exercising a constitutional right."*Boddie,* 105 F.3d at 862. Where an alleged false misbehavior report is filed against a prisoner, his "due process rights are protected if he is granted a hearing on the charges and given an opportunity to rebut them[.]"*Jones v. Coughlin,* 45 F.3d 677, 679 (2d Cir.1995).

Here, the allegation that defendants Chapman and Imfeld conspired to file a false misbehavior report against plaintiff is not cognizable under section 1983 because plaintiff has no general constitutional right to be free from being falsely

accused in a misbehavior report. *See Boddie,* 105 F.3d at 862 (dismissing the plaintiff's conspiracy claim arising from allegations that the defendants conspired to retaliate against him by filing a false misbehavior report). For this reason, I recommend defendants' motion to dismiss be granted as it relates to plaintiff's conspiracy claim asserted against defendants Chapman and Imfeld.

**\*12** As it relates to the conspiracy claim against defendants Sheridan and Havernack, I likewise find that plaintiff has failed to state a claim because there is no constitutional right to be free from the cover-up of a past constitutional violation. Generally, the case law that addresses allegations that a defendant conspired to conceal a violation of a plaintiff's constitutional rights assess whether the allegations are sufficient to state a claim of conspiracy for denying the plaintiff's constitutional right to access the courts. *See, e.g., McGarty v. Town of Carmel,* 997 F.Supp. 435, 437 (S.D.N.Y.1998) (finding that, "for purposes of a motion to amend, plaintiff has made an adequate showing of deprivation of access to courts, and plaintiff's assertions are sufficient to state a [section] 1983 conspiracy claim" where the pleadings alleged that the defendants conspired to conceal evidence that they used excessive force). Here, however, plaintiff has failed to allege any facts that plausibly suggest that his right to access the courts has been denied. Indeed, plaintiff's complaint fails to allege any facts that plausibly suggest that any of plaintiff's constitutional rights have been violated as a result of the alleged conspiracy between defendants Sheridan and Havernack to conceal defendant Sheridan's alleged assault. For this reason, I recommend that defendants' motion to dismiss plaintiff's conspiracy claim as against defendants Sheridan and Havernack be granted.

For the sake of completeness, I will also briefly address whether plaintiff's conspiracy claims are barred, as argued by defendants, by the intracorporate conspiracy doctrine. That doctrine provides that "there is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation, acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment."*See, e.g., Hermann v. Moore,* 576 F.2d 453, 459 (2d Cir.1978); *see also Hartline v. Gallo,* 546 F.3d 95, 99 n. 3 (2d Cir.2008). While the Second Circuit has applied this doctrine in the context of claims arising under 42 U.S.C. § 1985, *see, e.g., Hermann,* 576 F.2d at 459; *Girard v. 94th and Fifth Ave. Corp.,* 530 F.2d 66, 72 (2d Cir.1976), it has not considered the doctrine's applicability to conspiracy claims arising under section 1983. *See Alvarez v. City of New*

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)

2013 WL 1294606

*York*, No. 11–CV5464, 2012 WL 6212612, at *3 and n. 21 (S.D.N.Y. Dec. 12, 2012) (finding that the Second Circuit has "applied the intracorporate conspiracy doctrine to Section 1985 claims[, b]ut it has not considered its applicability to conspiracy claims brought under Section 1983"); *see also Appel v. Spiridon*, No. 06–CV1177, 2011 WL 3651353, at *19 (D. Conn. Aug. 18, 2011) (same). Because several district courts within this circuit have applied the doctrine to section 1983 claims,[7] and I have not found any controlling authority to the contrary, I find that the intracorporate conspiracy doctrine applies to the conspiracy claims against defendants Chapman and Imfeld arising under section 1983.

*13 As it relates to the conspiracy claims against defendants Sheridan and Havernack, however, I find that the "personal stake" exception to the intracorporate conspiracy doctrine precludes its applicability. Under this exception, the doctrine does not apply "to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity."*Bond v. Bd. of Educ. of the City of New York*, No. 97–CV–1337, 1999 WL 151702, at *2 (E.D.N.Y. Mar.17, 1999). For the exception to apply, "[t]he plaintiff must ... allege that [the defendants] acted other than in the normal course of their corporate duties."*Girard*, 530 F.2d at 72 (internal quotation marks omitted). Here, plaintiff's complaint clearly alleges that defendants Sheridan and Havernack allegedly moved plaintiff from the location where he was allegedly assaulted while he was still unconscious and refused him immediate medical care in an attempt to conceal defendant Sheridan's alleged assault on plaintiff. Complaint (Dkt. No. 1) at 13.These allegations plausibly suggest that defendants Sheridan and Havernack acted in their own personal interest, not in the interest of DOCCS, in covering up defendant Sheridan's alleged excessive force. *See Hill v. City of New York*, 2005 WL 3591719, at *6 (E.D.N.Y. Dec.30, 2005) (finding that the plaintiff's allegations that the defendants conspired to cover-up one of the defendant's alleged use of excessive force was sufficient to apply the "personal stake" exception to the intracorporate conspiracy doctrine); *Alvarez*, 2012 WL 6212612, at *3 (same). I therefore recommend a finding that the intracorporate conspiracy doctrine does not apply to plaintiff's conspiracy claims against defendants Sheridan and Havernack.

**G. Plaintiff's Motion for Leave to Amend**

In response to defendants' motion, plaintiff has requested leave to amend to his complaint. Dkt. No. 46.In his proposed amended complaint, plaintiff eliminates his claims of threats and conspiracy. *See generally*Dkt. No. 46, Attach. 2. However, the proposed amended complaint retains a medical indifference claim against defendants Sheridan, Chapman, Imfeld, and Johnson.*Id.* at 13.Defendants oppose plaintiff's motion for leave to amend, arguing that the claims set forth in his proposed amended complaint are futile in light of his failure to exhaust administrative remedies, and that the allegations set forth in that pleading do not cure the deficiencies as it relates to the medical indifference cause of action. Dkt. No. 47 at 4–11.

Motions for leave to amend are governed by Rule 15(a) of the Federal Rules of Civil Procedure which provides, in pertinent part, that unless amendment as a matter of right is permitted—circumstance that is not applicable here—a party may amend its pleading "only with the opposing party's written consent or the court's leave. Fed. Riv. Civ. P. 15(a)(2)."The court should freely give leave when justice so requires."*Id.* Under Rule 15(a), leave to amend ordinarily should be liberally granted absent undue delay, bad faith, dilatory tactics, undue prejudice in being served with the proposed pleading, or futility. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Elma RT v. Landesmann Int'l Mktg. Corp.*, No. 98–CV–3662, 2000 WL 297197, at *3 (S.D.N.Y. Mar.22, 2000) (citing *Foman* ).

*14 Notwithstanding the familiar and well accepted principle that leave to amend should be granted freely, if a claim contained in a proposed amended complaint would be vulnerable in the face of a Rule 12(b)(6) motion, then permitting amendment would be an act of futility that should not be sanctioned. *See, e.g., Saxholm AS v. Dynal, Inc.*, 938 F.Supp. 120, 124 (E.D.N.Y.1996); *In re Boesky Sec. Litig.*, 882 F.Supp. 1371, 1379 (S.D.N.Y.1995). If, on the other hand, a "proposed claim sets forth facts and circumstances which may entitle the plaintiff to relief, then futility is not a proper basis on which to deny amendment."*Saxholm*, 938 F.Supp. at 124 (citing *Allstate Ins. v. Administratia Asigurarilor De Stat*, 875 F.Supp. 1022, 1029 (S.D.N.Y.1995)).

As is the case with respect to his original complaint, plaintiff's proposed amended complaint sets forth a plausible cause of action for the use of excessive force as against defendant Sheridan.[8] Dkt. No. 46, Attach. 2 at 6. Moreover, plaintiff's proposed amended complaint, like his original complaint, alleges that plaintiff fulfilled his obligation to exhaust administrative remedies before filing suit. Dkt. No. 46,

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)

2013 WL 1294606

Attach. 2 at 3–4. The proposed amended complaint similarly asserts a medical indifference claim, as does its predecessor, but does not cure the deficiencies identified in this report and recommendation. For example, plaintiff's proposed amended complaint fails to allege facts plausibly suggesting that his injuries were "sufficiently serious." *See Salahuddin,* 467 F.3d at 280 (finding that, to determine whether "the inadequacy of medical care is sufficiently serious" when a plaintiff alleges "failure to provide any treatment," the court "examine[s] whether the inmate's medical condition is sufficiently serious."). Instead, plaintiff's proposed amended complaint alleges only that his face "swelled up ... with his right eye shut closed" and that he experienced pain as a result of his injuries. Dkt. No. 46, Attach. 2 at 8. As a result, I find that it would be futile to permit plaintiff to file his proposed amended complaint, and therefore recommend that his motion for leave to amend be denied.

**II. Whether to Permit Further Amendment**

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend *at least* once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."*Branum v. Clark,* 927 F.2d 698, 704–05 (2d Cir.1991); *see also*Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead granted where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy."). Given the procedural history of this action, I must next determine whether to recommend that plaintiff be afforded the benefit of this general rule.

***15** As plaintiff seemingly recognizes, and as is reflected in his proposed amended complaint, the claims arising from allegations of the issuance of false misbehavior reports, harassment, threatening conduct, and conspiracy are not plausibly stated, nor are they likely to be in any future amended complaint. *See generally*Dkt. No. 46, Attach. 2. In contrast, while I also have significant reservations as to plaintiff's ability to state facts demonstrating the existence of a cognizable medical indifference claim for the reasons set forth above, I nonetheless recommend that he be granted leave to amend in order to attempt to plead facts that would support such a claim.

In formulating a new, amended complaint, plaintiff is advised that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd,* 895 F.Supp. 35, 38 (N.D.N.Y.1995) (McAvoy, J.) (quoting *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987)), *Poarzanvkskii v. Humphry,* No. 94–CV–1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). In his amended complaint, plaintiff therefore must clearly set forth the facts that give rise to the claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should specifically allege facts demonstrating the specific involvement of each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986)

*IV. SUMMARY AND RECOMMENDATION*

Plaintiff's complaint in this action states a plausible claim for use of excessive force against defendant Sheridan. However, his complaint fails to state a cognizable claim for medical indifference, filing a false misbehavior report, threats and harassment, and conspiracy against any of defendants.[9] I therefore recommend dismissal of those claims, with leave to file a proposed amended complaint, in accordance with the local rules of practice for this court, with respect to the plaintiff's medical indifference claim only.

Turning to defendants' argument that plaintiff's complaint should be dismissed on the basis of plaintiff's alleged failure to exhaust his administrative remedies, I conclude that the issue cannot be determined at this early stage of the litigation. As a result, I recommend that this portion of defendants' motion be denied, without prejudice to renewal upon a more robust record, either on motion for summary judgment or at trial.

Based upon the foregoing it is therefore hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 30) be GRANTED, and that all of plaintiff's claims, except those based upon defendant Sheridan's alleged assault of plaintiff, asserted against defendants in their individual and official capacities be DISMISSED; and it is further

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)

2013 WL 1294606

**\*16** RECOMMENDED that plaintiff be given leave to replead only with respect to his deliberate medical indifference cause of action; and it is further

RECOMMENDED that plaintiff's motion for leave to amend (Dkt. No. 46) be DENIED, without prejudice to his right to submit an amended complaint to the court that cures the deficiencies identified in this report and recommendation.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within

FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy that report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 1294606

Footnotes

1    In his complaint Lewis acknowledges having brought several other actions in this court, as well as the Western and Southern districts. See Complaint (Dkt. No. 1) at 4–6.A search of the Public Access to Court Electronic Records reveals that plaintiff has filed seven other actions, with varying results, including (1) *Lewis v. Martin et al.*, No. 1:94–CV6873– SHS (S.D.N.Y., filed Sept. 21, 1994) (settled); (2) *Lewis v. DeStore et al.*, No. 1:94–CV7574–SHS (S.D.N.Y., filed Oct. 19, 1994) (settled); (3) *Lewis v. Rodriguez, et al.*, No. 1:95–CV–3572–TPG (S.D.N.Y. filed May 16, 1995) (dismissed pursuant to 28 U.S.C.§ 1915(d)); (4) *Lewis v. Irvin, et al.*, No. 1:97–CV–0789–JTE (W.D.N.Y., filed Oct. 8 1997) (summary judgment granted to the defendants); (5) *Lewis v. Johnson, et al.*, No. 9:08–CV–0482–ATB (N.D.N.Y. filed May 12, 2008) (partial verdict in favor of plaintiff after trial); (6) *Lewis, et al. v. Patterson, et al.*, No. 1:08–CV–1130–LEK–DRH (N.D.N.Y. filed Oct. 20, 2008) (dismissed, and subsequent appeal dismissed); and (7) *Lewis v. Murphy, et al.*, No. 9:12–CV–0288– NAM–CFH (N.D.N.Y., filed Feb. 12, 2012) (pending).

2    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. See *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); see also *Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964).

3    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

4    In a broader sense, this portion of defendants' motion implicates the sovereign immunity enjoyed by the states. As the Supreme Court has reaffirmed, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment. *Northern Ins. Co. of New York v. Chatham Cnty.*, 547 U.S. 189, 193, 126 S.Ct. 1689, 164 L.Ed.2d 367 (2006).

5    By contrast, the Eleventh Amendment does not preclude lawsuits seeking to impose individual or personal liability on state officials under section 1983. *Hafer v. Melo*, 502 U.S. 21, 30–31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

6    While not considered in making a recommendation concerning defendants' dismissal motion, the medical records submitted by plaintiff in opposition to the pending motion substantiate defendants' contention that, as a result of the alleged assault, Lewis did not suffer a "sufficiently serious" medical condition. See Plaintiff's Response (Dkt. No. 46) at 40–42; see also *Donhauser v. Goord*, 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.) ("[I]n cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider matters outside of the complaint to the extent they 'are consistent with the allegations in the complaint.' "). Those records reveal that, as a result of defendant Sheridan's alleged actions. Lewis suffered from only moderate swelling to his cheek and eyelid, with no other evidence of injury or trauma. Plt.'s Response (Dkt. No. 46) at 41.They also note that, during the examination, plaintiff was argumentative and refused ice offered to address his swelling. *Id.* at 40.

7    See *Anemone v. Metro. Transp. Auth.*, 419 F.Supp.2d 602, 603–04 (S.D.N.Y.2006) ("In the absence of controlling contrary authority, this court will continue to apply the intracorporate conspiracy doctrine to Section 1983 claims because the doctrine's logic is sound."), *Jackson v. New York State*, 381 F.Supp.2d 80, 90 (N.D.N.Y.2005) (Munson, J.), *Kamara v. City of New York*, No. 03–CV–0337, 2005 WL 3113423, at \*7 (E.D.N.Y.Nov. 21, 2005); *Nat'l Congress for Puerto Rican Rights v. City of New York*, 75 F.Supp.2d 154, 168–69 (S.D.N.Y.1999).

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 177 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Lewis v. Havermack, Not Reported in F.Supp.2d (2013)

2013 WL 1294606

8    The amended complaint also alleges the failure on the part of other corrections officers to intervene and protect him from the assault. A corrections officer who did not participate in an assault upon an inmate, but was present while it occurred, may nonetheless bear responsibility for any resulting constitutional deprivation. *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994). A law enforcement official is under an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his presence by other officers. *See Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir.2001) ("Failure to intercede results in [section 1983] liability where an officer observes excessive force being used or has reason to know that it will be used."); *Anderson*, 17 F.3d at 557; *Mowry v. Noone*, No. 02–CV–6257, 2004 WL 2202645, at *4 (W.D.N.Y. Sept. 30, 2004). In order to establish liability on the part of a defendant under this theory, the plaintiff must adduce evidence establishing that (1) the officer had a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated, and (3) that officer does not take reasonable steps to intervene. *Henry v. Dinelle*, No. 9:10–CV–0456, 2011 WL 5975027, at *4 (N.D.N.Y. Nov 29, 2011) (Suddaby, J.) (citing *Jean–Laurent v. Wilkinson*, 540 F.Supp.2d 501, 512 (S.D.N.Y.2008)). Mere inattention or inadvertence, it should be noted, does not rise to a level of deliberate indifference sufficient to support liability for failure to intervene. *Cf., Schultz v. Amick*, 955 F.Supp. 1087, 1096 (N.D.Iowa 1997) (finding that "liability in a [section] 1983 'excessive force' action cannot be founded on mere negligence") (citing, *inter alia, Daniels v. Williams*, 474 U.S. 327, 335–36, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986)).

9    In their motion, defendants also address a potential due process claim arising from plaintiff's allegation that he was issued a false misbehavior report by corrections officials during the relevant time. Defs.' Memo. of Law (Dkt. No. 30, Attach.1) at 12–13. As discussed above in connection with plaintiff's conspiracy claim against defendants Chapman and Imfeld, the mere allegation that a false misbehavior report has been filed against an inmate does not implicate constitutional conduct.*Boddie*, 105 F.3d at 862; *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986) ("There must be more, such as retaliation against the prisoner for exercising a constitutional right."*Boddie*, 105 F.3d at 862;see also *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir.1988). In this instance, none of the allegations contained in plaintiff's complaint plausibly suggest that the alleged misbehavior report was issued to further a violation of plaintiff's constitutional rights. As a result, I recommend that this claim, to the extent it is asserted in plaintiff's complaint, be dismissed.

End of Document                                                      © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

2008 WL 1772305
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Christopher McCLOUD, Plaintiff,
v.
C. TUREGLIO, Correctional Officer,
Greene Correctional Facility, Defendant.

No. 9:07-CV-0650.
|
April 15, 2008.

**Attorneys and Law Firms**

Christopher McCloud, Wallkill, NY, Pro Se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Charles J. Quackenbush, Esq. Assistant Attorney General, of Counsel, New York, NY, for Defendant.

---

**ORDER**

NORMAN A. MORDUE, Chief Judge.

**\*1** The above matter comes to me following a Report-Recommendation by Magistrate Judge George H. Lowe, duly filed on the 17th day of March 2008. Following ten days from the service thereof, the Clerk has sent me the file, including any and all objections filed by the parties herein.

After careful review of all of the papers herein, including the Magistrate Judge's Report-Recommendation, and no objections submitted thereto, it is

ORDERED, that:

1. The Report-Recommendation is hereby adopted in its entirety.

2. The Defendant's motion to dismiss for failure to state a claim (Dkt. No. 11)[1] is granted.

3. The Court certifies that any appeal of this order would not be taken in good faith. See 28 U.S.C. § 1915(a)(3).

4. The Clerk of the Court shall serve a copy of this Order upon all parties and the Magistrate Judge assigned to this case.

IT IS SO ORDERED.

---

**REPORT-RECOMMENDATION**

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court. In his Complaint, Christopher McCloud ("Plaintiff") alleges that, on May 31, 2007, at Green Correctional Facility ("Green C.F."), Correctional Officer C. Turiglio ("Defendant") physically assaulted and threatened Plaintiff in violation of his constitutional rights. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].) Currently before the Court is Defendant's motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief might be granted, pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 11.)For the reasons set forth below, I recommend that the Court grant Defendant's motion to dismiss.

**I. BACKGROUND**

**A. Summary of Plaintiff's Complaint**
On June 20, 2007, Plaintiff filed his Complaint in this action. (Dkt. No. 1 [Plf.'s Compl.].) The factual allegations giving rise to Plaintiff's (unspecified) constitutional claim against Defendant Turiglio are as follows:

> On May 31, [20]07 I came to my program late[.] [My program] ... is Mess [H]all [during the] P.M. and late eve[ning shift]. [F]or coming in late I was placed in the pot room[.] [M]y regular job title is 2 ser[v]er on the C-side line[.][W]hile I was in the pot room I was making noise and Officer Tureglio [sic] came into the pot room and started banging pots and curs[ ]ing at me [,] telling me to shut up[.] [A]fter that he told me to step eye balling him or he'll pull my eyes from my skull[.] [A]t 2:30 P.M. [it] is count time and

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 179 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)
2008 WL 1772305

all inmates must report to the din[ ]ing are[a] for count[.] [A]fter count he called me to his office and took me to the back of the Mess [H]all out of plain view and placed me o[n] the wall and started to slap me [o]n the back of the head[.] [A]fter his as[sa]ult he placed his pocket knife to his face and told me he'll cut hi[m]self and say I did it [in order to] let the other inmates know he's not play[ing around].

**\*2**  (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].) As a result of this alleged misconduct, Plaintiff is requesting three forms of relief: (1) a court order "secur[ing] [Plaintiff's] safety and mak[ing] sure there will be [ ]no [ ] retaliation from coworkers or staff"; (2) a court order directing that a search be performed of Defendant's "file to see if [a]ny complaints or grievances [have] been filed against him in the past concerning brutality"; and (3) "\$1,000,000 for mental anguish and distress."(*Id.* at ¶¶ 7, 9.)

It is important to note that, in his form Complaint, Plaintiff provided some information regarding his efforts to exhaust his available administrative remedies before filing this action. Specifically, in response to a question reading "Is there a prisoner grievance procedure at this facility?"Plaintiff checked the box reading "Yes." (*Id.* at ¶ 4[a].) In response to a question reading "If your answer to 4(a) is YES, did you present the facts relating to your complaint in this grievance program?"Plaintiff checked the box reading "No." (*Id.* at ¶ 4[b].) In response to a question reading "If your answer to 4(b) is NO: Why did you choose to not present the facts relating to your complaint in the prison's grievance program?"Plaintiff stated, "Because I fear retaliation from officers and the officer [I]'m fil[ ]ing against brea[js] about the grievance system not working and he claims his uncle is a superintendent." (*Id.*) Finally, in elaboration on this last assertion, Plaintiff stated later on in the Complaint that "[t]he officer [I]'m fil[ ]ing [this action] against[s sic] is a Superintendent here at Green Corr." (*Id.* at ¶ 4[c].)

**B. Plaintiff's Abandoned Efforts to File an Amended Complaint and a Supplemental Complaint**
On June 22, 2007, Plaintiff filed a letter to the Clerk of the Court. (Dkt. No. 6.) The stated purpose of the letter was to serve "as evidence in [Plaintiff's] case." (*Id.*) The letter requested that his Complaint be amended to reflect that the correct spelling of Defendant's name was "C. Turriglio," not

"Tureglio." (*Id.*) (The Court subsequently directed that the docket be so amended.) In addition, the letter requested that a claim be "add [ed] to [Plaintiff's] complaint...." (*Id.*)The factual allegation giving rise to this claim was as follows:

> On June 18, 2007 Officer Turriglio made intimidating comments [to] me [and] taunt[ed] me[,] saying ['][McCloud knows I doesn't [sic] play[.] I Let them know ['.] [By 'them' he was] talking about new Mess [H]all workers. I assumed he was back from vacation time or answering a grievance because he [was] brag[ig]in' about laying on the beach when some inmates here at the facility filed a grievance against him.

(*Id.*)

On July 5, 2007, I directed the Clerk to strike Plaintiff's submission from the docket for two reasons: (1) to the extent that Plaintiff was requesting court permission for leave to amend his Complaint, such permission was unnecessary under Fed.R.Civ.P. 15(a) since Defendant had not yet filed a responsive pleading; and (2) to the extent that Plaintiff was requesting that his (one-page, single-spaced) letter serve as his amended pleading, such an amendment was prohibited by Local Rule 7.1(a), which required that amended pleadings be complete pleadings that superseded the original pleadings in all respects. (Dkt. No. 7.)

**\*3**  However, Plaintiff did not subsequently file an Amended Complaint. Rather, on August 8, 2007, Plaintiff filed another letter with the Court. (Dkt. No. 12.)The stated purpose of the letter was to again request "the court[']s permission to amend [Plaintiff's] complaint." (*Id.*) Although Plaintiff used the word "amend," it was clear that what he was intending was a "supplemental" complaint. SeeFed.R.Civ.P. 15(d). This is because the factual allegations he asserted in the letter arose from incidents occurring *after* the filing of his Complaint on June 20, 2007. (Dkt. No. 12.)In pertinent part, Plaintiff alleged as follows:

> On July 14, [20]07 the very next day [after speaking to a prison psychologist and Iman about the anxiety I was suffering due to my experience with Officer Turriglio] I was approached by [O]fficer Turriglio once I arrived ... [at my] program. Officer Turriglio told me [I want to talk to you.['] After program assi[ ]g[n]ments ... [were] completed

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 180 of 397

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

[O]fficer Turriglio pulled me to the side away from other inmate[ ]mess hall workers on the B side in the din[ ]ing area; [O]fficer Turriglio['s] exact words ... [were] "I spok[e] to the Imam [about] what[']s going on[.] [Y]ou can talk to me man to man. I must admit I was nervous when [O]fficer Turriglio approached me. I started studdering [sic] when I spoke and made up a lie.... After that [O]fficer Turriglio walked away.

(*Id.* at 1.) In addition, Plaintiff attempted to assert a claim against various (unidentified) nonparties. In pertinent part, Plaintiff alleged as follows:

On July 24, [20]07 I was called to the sergeant[']s office[ ] and forced to write a statement [about what had taken place between Plaintiff and Officer Turriglio] that is false ... When I arrived at the sergeant[']s office[,] three sergeants or lieutenants ... [were] there[.] [O]ne left and the other two stayed[.] [O]ne of them asked what happen[ed] between me and Turriglio. [The] [I]nspector [G]eneral's [O]ffice [had] informed them of what [had] happen[ed]. One of the sergeant[']s or lieutenants told me what to write. I tried to write what really took place between me and [O]fficer Turriglio. I was told ["T]hat [']s not good enough[.]' I informed the sergeant or lieutenants that I[had] filed a federal complaint against [O]fficer Turriglio. I was still told what to write[.][W]hen I refused that[']s when threats ... [were] made and I was called a nigger. I was told [I']m not leaving the sergeant[']s office intell [sic] I give them what th[e]y want [sic]... I repeat [that] my statement was false and forced and I took no oath[.] it was given out of fear for my safety.... I can [']t identify [the two sergeants or lieutenants] by name because th[e]y were not wearing badges or name tags.... I [would] like to add [as defendants in my action] Green Cor. Fac.[,] D.O.C. as a while[,] [and the] New Yo[r]k State employees here at Greene [Correctional Facility] ....

*4  (*Id.* at 2.)

On August 13, 2007, I directed the Clerk to strike Plaintiff's submission from the docket for two reasons: (1) to the extent that Plaintiff was requesting court permission for leave to supplement his Complaint, such permission was unnecessary under Fed.R.Civ.P. 15(a) since Defendant had not yet filed a responsive pleading; and (2) to the extent that Plaintiff was requesting that his (two-page, single-spaced) letter serve as his supplemental pleading, such a supplemental pleading was not in conformity with Fed.R.Civ.P. 10(b), Local Rule 10.1, and Local Rule 7.1(a)(4) in that the document was not double spaced, the text was not broken down into paragraphs, and the paragraphs were not numbered consecutively to the paragraphs contained in the original pleading. (Dkt. No. 14.)

However, Plaintiff did not subsequently file a Supplemental Complaint. Rather, on August 29, 2007, Plaintiff filed another letter with the Court. (Dkt. No. 15.)In the letter, Plaintiff requested "the court[']s permission to make a formal complaint, 'not to amend my complaint.' " (*Id.* at 1.) The claim that Plaintiff wished to assert arose from events occurring on August 21, 2007, at Greene C.F., involving the delayed arrival of a piece of his legal mail.(*Id.* at 1-2.)More specifically, Plaintiff alleged that (1) at approximately 3:30 p.m. in Plaintiff's housing unit, Correctional Officer Forbes handed Plaintiff a piece of legal mail (a time-sensitive court order issued by the U.S. District Court for the Southern District of New York on May 31, 2007) unaccompanied by the addressed envelope in which it had arrived at the prison, and (2) that same day, while signing for legal mail (from the New York State Court of Claims) in front of Officer Turriglio at the law library, Plaintiff was led to "fear [that] Officer Turriglio has tampered with my mail ... [because he was] the officer who had access to all inmate[']s legal mail."(*Id.*) As a form of relief, Plaintiff requested that the Court "issue a[n] order to have the Defendant Officer Turriglio removed from the law library intell [sic] this matter is resolved."(*Id.* at 2.)

On September 6, 2007, I directed the Clerk to strike Plaintiff's submission from the docket for the exact two reasons given in my Order of August 13, 2007 (i.e., that Plaintiff need not request permission to file a Supplemental Complaint since he had the right to do so without permission under the circumstances, and that his two-page, single-spaced letter could not serve as his supplemental pleading since the document was not double spaced, the text was not broken down into paragraphs, and the paragraphs were not numbered consecutively to the paragraphs contained in the original

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 181 of 397
2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)
2008 WL 1772305

pleading), as well as for the additional reason that Plaintiff had failed to indicate that he had served his submission on opposing counsel, as required by Local Rule 5.1(a). (Dkt. No. 16.)

However, again, Plaintiff did not subsequently file a Supplemental Complaint.

**C. Defendant's Motion to Dismiss and Plaintiff's Response**

*5 On August 2, 2007, Defendant filed a motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief might be granted, pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 11.)Defendant's motion is premised on two independent grounds: (1) that Plaintiff's action is barred by the Prison Litigation Reform Act ("PLRA") due to his failure to exhaust his available administrative remedies before filing this action; and (2) that Plaintiff's action is barred by the PLRA since that statute requires that any inmate claiming damages related to mental and emotional distress, as is Plaintiff, must make a prior showing of physical injury, which Plaintiff has not made. (Dkt. No. 11, Part 2, at 4-6 [Def.'s Memo. of Law].)

In response to Defendant's first argument (i.e., regarding Plaintiff's failure to exhaust his available administrative remedies), Plaintiff argues that (1) Defendant's own actions inhibited Plaintiff's exhaustion of administrative remedies so as to estop Defendant from asserting Plaintiff's failure to exhaust as a defense; and/or (2) under the circumstances, special circumstances existed justifying his failure to exhaust his administrative remedies. (Dkt. No. 18, Plf.'s Memo. of Law, "Point 1.") In response to Defendant's second argument (i.e., regarding Plaintiff's failure to make a prior showing of physical injury), Plaintiff essentially argues that the "continuous injuries" inflicted on Plaintiff by Defendant constitute the showing of physical injury required by the PLRA. (Dkt. No. 18, Plf.'s Memo. of Law, "Point II.")

**II. RECENTLY CLARIFIED LEGAL STANDARD FOR MOTIONS TO DISMISS**

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of

the pleading" under Rule 8(a)(2), [1] or (2) a challenge to the legal cognizability of the claim. [2]

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2). Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." [3] The purpose of this rule is to "facilitate a proper decision on the merits." [4] A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [5]

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. [6] However, it is well established that even this liberal notice pleading standard "has its limits." [7] As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard. [8]

*6 Most notably, in the recent decision of *Bell Atl. Corp. v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."127 S.Ct. 1955, 1968-69 (2007). [9] Rather than turning on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim. *Id.* at 1965-74.More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]."*Id.; see also Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,'

WESTLAW  © 2026 Thomson Reuters. No claim to original U.S. Government Works.    110

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 182 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)
2008 WL 1772305

which obliges a pleader to amplify a claim with some factual
allegations in those contexts where such amplification is
needed to render the claim *plausible.*") [emphasis in original].

Having said that, it should be emphasized that, "[i]n
reviewing a complaint for dismissal under Rule 12(b)(6), the
court must accept the material facts alleged in the complaint
as true and construe all reasonable inferences in the plaintiff's
favor." [10] Moreover, it should be noted that "[t]his standard
is applied with even greater force where the plaintiff alleges
civil rights violations or where the complaint is submitted *pro
se.*" [11] In other words, while all pleadings are to be construed
liberally, *pro se* civil rights pleadings are generally to be
construed with an *extra* degree of liberality. Indeed, generally
"courts must construe *pro se* pleadings broadly, and interpret
them to raise the strongest arguments that they suggest." [12] In
addition, when addressing a *pro se* complaint, generally a
district court "should not dismiss without granting leave to
amend at least once when a liberal reading of the complaint
gives any indication that a valid claim might be stated." [13]

However, when a plaintiff is proceeding *pro se,*"all normal
rules of pleading are not absolutely suspended." [14] Moreover,
an opportunity to amend should be denied where "the problem
with [plaintiff's] causes of action is substantive" such that
"[b]etter pleading will not cure it." [15]

*7 Finally, it should be remembered that Fed.R.Civ.P. 12(b)
(6) motions to dismiss are limited to the facts alleged in
the complaint and must be converted into a Fed.R.Civ.P. 56
motion for summary judgment if the court considers materials
outside the pleadings. [16] However, of course, the court may,
without converting the motion to dismiss into a motion for
summary judgment, consider any documents provided by the
plaintiff in opposition to defendants' motion to dismiss, *to the
extent those documents are consistent with the allegations in
the complaint.* [17]

**III. ANALYSIS**

As stated above in Part I.C. of this Report-Recommendation,
Defendant's motion is premised on two independent grounds:
(1) that Plaintiff's action is barred by the Prison Litigation
Reform Act ("PLRA") due to his failure to exhaust his
available administrative remedies before filing this action;
and (2) that Plaintiff's action is barred by the PLRA since
that statute requires that any inmate claiming damages related
to mental and emotional distress, as is Plaintiff, must make

a prior showing of physical injury, which Plaintiff has not
made. (Dkt. No. 11, Part 2, at 4-6 [Def.'s Memo. of Law].)
Because I conclude that Defendant's lack-of-physical-injury
argument for dismissal is somewhat stronger than is his
failure-to-exhaust argument, I address the lack-of-physical-
injury argument first.

**A. Requirement of Physical Injury**
The Prison Litigation Reform Act of 1995 ("PLRA")
provides, in pertinent part, as follows: "No Federal civil
action may be brought by a prisoner confined in a jail, prison,
or other correctional facility, for mental or emotional injury
suffered while in custody without a prior showing of physical
injury." 42 U.S.C.1997e(e).

Here, Plaintiff alleges that, on May 31, 2007, Defendant (1)
"bang[ed] pots" in the prison's "pot room," (2) "curs[ed]" at
Plaintiff, (3) told Plaintiff "to shut up," (4) told Plaintiff to
stop "eye balling him" or he would "pull [Plaintiff's] eyes
from [his] skull, (5) "placed [Plaintiff] o[n] the wall and
started to slap me [o]n the back of the head," and (6) "placed
his pocket knife to his [own] face and told [Plaintiff] he'll cut
hi[m]self and say I did it [in order to] let the other inmates
know he's not play[ing around]." (Dkt. No. 1, * 6 [Pl.'s
Compl.].) As a result of this misconduct, Plaintiff alleges that
he suffered "mental anguish and distress." (*Id.* at ¶¶ 7, 9.)

These factual allegations do not plausibly suggest that
Plaintiff suffered any *physical injury* as a result of Defendant's
alleged misconduct. Generally, some slaps on the back of
the head do not constitute a cognizable *physical injury*
under the PLRA. See *Jackson v. Johnson,* 04-CV-0110, 2005
U.S. Dist. LEXIS 21720, at *18-19, 32 (M.D. Ga. June
17, 2005) (no physical injury under PLRA occurred where
corrections officer, *inter alia,*"slapp[ed] [prisoner] in the face
immediately [after shouting derogatory remark to him]").
This is especially true where, as here, there is no allegation
that the slaps resulted in any observable or diagnosable
medical condition requiring treatment by a medical care
professional. *See Jarrieti v. Wilson,* 162 Fed. App'x 394,
400-01 (6th Cir.2005) (mild swelling of left toe with some
pain but no need for medical treatment was not cognizable
physical injury under PLRA); *Dixon v. Toole,* 225 Fed. App'x
797, 799 (11th Cir.2007) ("mere bruising from the application
of restraints [resulting in welts]" was not cognizable physical
injury under PLRA); *Silgar v. Hightower,* 112 F.3d 191,
193-94 (5th Cir.1997) (prisoner's "sore, bruised ear lasting for
three days" was not cognizable physical injury under PLRA);
*cf. Liner v. Goord,* 196 F.3d 132, 135 (2d Cir.1998) (citing

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

*Silgar v. Hightower* for the point of law that the physical injury under the PLRA must be more than "de minimis"), *accord, Voorhees v. Goord,* 05-CV-1407, 2006 WL 1888638, at *10, n. 2 (S.D.N.Y. Feb. 24, 2006) (same), *Leon v. Johnson,* 96 F.Supp.2d 244, 248 (W.D.N.Y.2000) (same). [18]

**\*8** I note that *repeated punches* by correctional officials (while, of course, deplorable if unprovoked) have been specifically held by district courts in this Circuit to not constitute *physical injury* under the PLRA, where they resulted in only superficial and temporary irritations or abrasions. *See Expinal v. Goord,* 00-CV-2242, 2001 WL 476070, at *3-4, 12-13 (S.D.N.Y. May 7, 2001) ("red face" suffered by inmate after correctional officer "struck [him] a couple times," "punch[ing][him] in the head and face," did not constitute physical injury cognizable under PLRA); *Warren v. Westchester County Jail,* 106 F.Supp.2d 559, 563, 569 (S.D.N.Y.2000) (minor scratches suffered by jail inmate as a result of two to three punches by guard, including two scratches to inmate's face, and very small cut inside mouth, did not constitute physical injury cognizable under PLRA); *cf. Abreu v. Nicholls,* 04-CV-7778, 2007 WL 2111086, at *5 (S.D.N.Y. July 24, 2007) [collecting cases in which minor blows to inmates' faces and heads were not actionable under the Eighth Amendment]. [19]

Furthermore, even if (out of special solicitude to Plaintiff) I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion. None of those documents assert any allegations plausibly suggesting that Plaintiff suffered any physical injury as a result of Defendant's alleged misconduct on May 31, 2007. (*See* Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf.'s Letter filed 8/8/07]; Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf.'s Opposition Papers].)

Plaintiff alleges, in his letter to the Court of June 22, 2007, that, on June 18, 2007, Officer Turriglio made "intimidating comments" to Plaintiff, and "taunt[ed]" him, by saying to other Mess Hall workers, "McCloud knows I doesn't [sic] play." (Dkt. No. 6.) He alleges, in his letter to the Court of August 8, 2007, that, on July 14, 2007, during a conversation with Defendant, Plaintiff became "nervous" and "started studdering [sic] when [he] spoke" to Defendant. (Dkt. No. 12, at 1.) He alleges, in his letter to the Court of August 29, 2007, that, on August 21, 2007, he "fear[ed] [that] Officer Turriglio ha[d] tampered with [his] mail ... [because

Officer Turriglio was] the officer who had access to all inmate[']s legal mail." (Dkt. No. 15, at 1-2.) None of these three documents contains any allegation that Plaintiff suffered any physical injury at all. Furthermore, none of the three documents sufficiently connects any of the emotional distress described therein to the incident on May 31, 2007; rather, the documents all allege facts plausibly suggesting that the cause of the emotional distress described in the documents was contact between Plaintiff and Defendant occurring more than two weeks after May 31, 2007.

**\*9** The closest Plaintiff comes to alleging facts plausibly suggesting that he suffered a "physical injury" as a result of the incident on May 31, 2007, is when he alleges, in his letter to the Court of August 8, 2007, that, on July 14, 2007, a prison psychologist diagnosed Plaintiff with "anxiety." (Dkt. No. 12, at 1.) However, this allegation of "anxiety" is insufficient for two reasons. First, Plaintiff does not allege that the diagnosis of "anxiety" on July 14, 2007, was caused by the incident on May 31, 2007-as opposed to being caused by the incident on June 18, 2007 (which is not at issue in this action), or some sort of pre-existing emotional disorder. Second, and much more importantly, numerous courts have held-correctly, I believe-that physical manifestations of emotional injuries (e.g., anxiety, depression, stress, nausea, hyperventilation, headaches, insomnia, dizziness, appetite loss, weight loss, etc.) are not "physical injuries" for purposes of the PLRA. [20] This is especially true where, as here, the plaintiff does not allege an extensive list of physical manifestations but only one, i.e., "anxiety."

Finally, for reasons similar to those articulated above, I find that the affidavit submitted by Plaintiff in opposition to Defendant's motion alleges no facts plausibly suggesting that he suffered a *physical injury* as a result of the incident on May 31, 2007 (or even any physical injury as a result of subsequent incidents). (Dkt. No. 18, Plf.'s Affid., ¶¶ 4, 5[A]-[H].)

For all of these reasons, I recommend that the Court dismiss Plaintiff's Complaint for failing to allege facts plausibly suggesting that he experienced any *physical injury* as a result of Defendant's alleged misconduct.

**B. Exhaustion of Available Administrative Remedies**
In addition, the PLRA requires, in pertinent part, that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §

WESTLAW  © 2016 Thomson Reuters. No claim to original U.S. Government Works.    6

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

1983.... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." [21] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." [22] The Department of Correctional Services ("DOCS") has available a well-established three-step inmate grievance program. [23]

Generally, the DOCS Inmate Grievance Program ("IGP") involves the following procedure. [24] First, an inmate must file a complaint with the facility's IGP clerk within fourteen (14) calendar days of the alleged occurrence. A representative of the facility's inmate grievance resolution committee ("IGRC") has seven working days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within seven (7) working days of receipt of the grievance, and issues a written decision within two (2) working days of the conclusion of the hearing. Second, a grievant may appeal the IGRC decision to the facility's superintendent within four (4) working days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within ten (10) working days of receipt of the grievant's appeal. Third, a grievant may appeal to the central office review committee ("CORC") within four (4) working days of receipt of the superintendent's written decision. CORC is to render a written decision within twenty (20) working days of receipt of the appeal.

*10 It is important to emphasize that any failure by the IGRC or the superintendent to adequately respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process. [25] It is also important to emphasize that DOCS provides for an expedited procedure for the review of grievances alleging employee harassment. [26] While this procedure provides for review of the grievance directly by the facility superintendent, it still requires the filing of a grievance by the inmate. [27] Furthermore, the superintendent's decision must be appealed to CORC in order for the inmate to complete the grievance process. [28]

Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies. [29] However, the Second

Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. [30] First," the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." [31] Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." [32] Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." [33]

Before I proceed to an analysis of the above-referenced three-part inquiry established by the Second Circuit, I should briefly discuss the appropriateness (or inappropriateness) of a failure-to-exhaust argument during a motion to dismiss for failure to state a claim upon which relief might be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

For some years now, it has been the majority rule (followed by the Second Circuit) that a prisoner's fulfillment of his duty to exhaust his available administrative remedies under the Prison Litigation Reform Act ("PLRA") is not a fact that the prisoner had to plead in order to state a claim under 42 U.S.C. § 1983 but a fact that may be challenged by a defendant through an affirmative defense (such as on a motion for summary judgment pursuant to Fed.R.Civ.P. 56, or a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12[b][1]) established by the PLRA. See, e.g., Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir.1999) ("Because, under the PLRA, a prisoner must exhaust administrative remedies before filing a § 1983 suit ..., a defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements."), Snider v. Melindez, 199 F.3d 108, 114 (2d Cir.1999) ("A court may not dismiss for failure to exhaust administrative remedies unless the court determines that such remedies are available. Snider's answers [on a form complaint] cannot establish that.").

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

*11 Recently, the Supreme Court upheld this interpretation of the exhaustion requirement, prohibiting circuits (such as the Sixth, Tenth and Eleventh Circuits) from using exhaustion as a heightened pleading requirement in prisoner civil rights case. *See Jones v. Block,* 127 S.Ct. 910, 914-915, 918-923 (2007). A prisoner has no independent *duty* to plead facts plausibly suggesting that he exhausted his available administrative remedies, in order to state an actionable claim under 42 U.S.C. § 1983. *Block,* 127 S.Ct. at 919-21. "[T]his is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim."*Id.* at 921.If a prisoner *chooses* to plead facts regarding exhaustion, and those facts plausibly suggest that he failed to exhaust his available administrative remedies, then his Complaint may be dismissed for failure to state a claim. *Id.* at 920-21.Simply stated, if a prisoner says nothing or little about exhaustion in his *pro se* civil rights complaint, he is likely protected from a Fed.R.Civ.P. 12(b)(6) motion to dismiss premised on failure to exhaust. However, if he says too much about exhaustion in that complaint so that his non-exhaustion is readily apparent, he may "plead himself out of court," as the saying goes. This is what has happened here, according to Defendants.

**1. Availability of Administrative Remedies**

With regard to the first inquiry (i.e., whether the administrative remedies not pursued by Plaintiff were in fact available to Plaintiff), I answer this question in the affirmative, based on even the most liberal of constructions of Plaintiff's Complaint. More specifically, I find that Plaintiff has not alleged any facts plausibly suggesting that administrative remedies were not available to prisoners at Greene C.F. during the time in question (i .e., between the occurrence of the event in question, on May 31, 2007, and the expiration of the deadline by which to file a grievance 14 days later, on or about June 14, 2007). Indeed, Plaintiff quite expressly alleges that there was a prisoner grievance procedure at Greene C.F. (Dkt. No. 1, ¶ 4[a] [Plf.'s Compl.].)

Furthermore, even if (out of special solicitude to Plaintiff) I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion. None of those documents assert any allegations plausibly suggesting that administrative remedies were not available to prisoners (and Plaintiff in particular) at Greene C.F. during the time in question. (*See*Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf. 's Letter filed 8/8/07];

Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf.'s Opposition Papers].)

**2. Estoppel**

With regard to the second inquiry (i.e., whether Defendant's own actions inhibited Plaintiff's exhaustion of remedies so as to estop Defendant from raising Plaintiff's failure to exhaust as a defence), I answer this question in the negative, based on even the most liberal of constructions of Plaintiff's Complaint. In his Complaint, Plaintiff alleges no facts plausibly suggesting that Defendant took any actions whatsoever that inhibited Plaintiff from exhausting his available administrative remedies at Greene C.F. during the time in question (i.e., between the occurrence of the event in question, on May 31, 2007, and the expiration of the deadline by which to file a grievance 14 days later, on or about June 14, 2007). Rather, Plaintiff alleges that he chose to not present the facts relating to his Complaint in the prison's grievance program "[b]ecause I fear retaliation from officers and the officer [I]'m fil [ ]ing against brag[s] about the grievance system not working and he claims his uncle is a superintendent [at Greene C.F.]." (*Id.*)Plaintiff's feeling of fear of "retaliation from [unidentified] officers" is completely unexplained and wholly conclusory. Furthermore, Defendant's action of "brag[ing] about the grievance system not working" and claiming that his uncle was a superintendent at Greene C.F. about the events giving rise to his claims in this action. At best, these statements by Defendant constituted an indication that Plaintiff might be *unsuccessful* in the grievance process before any appeal reached to the final level of review, by DOCS' Central Office Review Committee ("CORC"). Notifying an inmate of the *prospect of initial* failure (due to alleged antipathy for inmates or even sympathy for correctional officers, held by various *other* officials, participating in the grievance process) is hardly the sort of adverse *action* that is required to estop a correctional officer from asserting the legal defense of non-exhaustion.

*12 Nor do the other factual allegations of Plaintiff's Complaint plausibly suggest that Defendant took any actions that inhibited Plaintiff from exhausting his available administrative remedies at Greene C.F. so as to estop Defendant from raising Plaintiff's failure to exhaust as a defense. Plaintiff alleges, on May 31, 2007, Defendant (1) told Plaintiff to "stop eye balling him" or he would "pull [Plaintiff's] eyes from [his] skull," (2) "slap[ped] [Plaintiff] on the side of his head," and (3) placed a pocket knife to

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

*his own face* and threatened to cut *his own face* and blame it on Plaintiff in order to let the other inmates know he was not "play[ing]" around. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].) The problem with these allegations (at least from Plaintiff's perspective) is that they have absolutely nothing to do with the filing of any grievance, or even the making of any verbal complaint, by Plaintiff. Simply stated, while the alleged conduct is (of course) deplorable, it did not (as alleged) have either the design or effect of preventing Plaintiff from exhausting his administrative remedies.

Moreover, even if (out of special solicitude to Plaintiff) I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion. None of those documents allege facts plausibly suggesting that Defendant's own actions inhibited Plaintiff's exhaustion of remedies during the time in question. (*See* Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf.'s Letter filed 8/8/07]; Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf.'s Opposition Papers].)

In particular, Plaintiff's letter to the Court of June 22, 2007, alleges that, on June 18, 2007, Defendant "intimidat[ed]" and "taunt[ed]" Plaintiff by saying to other inmates, "McCloud knows I [don't] play" around. (Dkt. No. 6.) This allegation fails for the same reason as the allegation about Defendant's earlier comments to Plaintiff fails: it had absolutely nothing to do with the filing of any grievance, or the making of any complaint, by Plaintiff. Moreover, Defendant's utterance of these words occurred on June 22, 2007, more than a *week* after Plaintiff had decided not to exhaust his available administrative remedies. (The deadline by which Plaintiff had to file a grievance regarding the incident on May 31, 2007, expired on or about June 14, 2007.)[34] Thus, it could not have possibly inhibited Plaintiff from exhausting his available administrative remedies.

Plaintiff's letter to the Court of August 8, 2007, alleges that, on July 14, 2007, Defendant said to Plaintiff, "I spok[e] to the Imam [about] what[']s going on[.] [Y]ou can talk to me man to man." (Dkt. No. 12.) An attempt to informally resolve a dispute (which is encouraged in DOCS' grievance process) is not an act inhibiting an inmate from exhausting his available administrative remedies. Plaintiff's letter of August 8, 2007, further alleges that on July 24, 2007, persons *other than Defendant* coerced Plaintiff into making a false statement about what had taken place between Plaintiff and Defendant.

(*Id.*) Plaintiff alleges no action by *Defendant* on July 24, 2007. Nor does Plaintiff explain how the false statement on *July* 14, 2007-whatever that false statement may have been-in any way caused his decision by *June* 14, 2007, not to exhaust his available administrative remedies.

*13 Plaintiff's letter to the Court of August 29, 2007, alleges that Plaintiff obtained reason to "fear" that Defendant was responsible for the delayed arrival of a piece of his legal mail on August 21, 2007. (Dkt. No. 15.) However, the sole reason for this fear was the (alleged) fact that Defendant "had access to all inmate[']s legal mail." (Dkt. No. 15.) Moreover, this fear occurred on August 21, 2007, which was more than *two months* after Plaintiff had decided to not exhaust his available administrative remedies by June 14, 2007.

In an affidavit submitted in opposition to Defendant's motion, Plaintiff swears that, before the incident on May 31, 2007, a fellow inmate, Saheithe Pigford, filed both a federal court action and a grievance against Officer Turriglio and was "beaten on several occasions, threaten[ed] and had his personal area searched during late evening or at predawn hours." (Dkt. No. 18, Plf.'s Affid., ¶ 4.) Plaintiff also swears that, on May 31, 2007, "Plaintiff was aware of what had happened to ... [Inmate] Shakeith Pigford as a result of filing his grievance [against Officer Turriglio]" since the "Pigford ... incident[ ] occurred prior to that of the plaintiffs' [sic]." (*Id.* at ¶ 5[A].)

For the sake of argument, I will assume that Plaintiff is swearing that Mr. Pigford was beaten *by Officer Turriglio* (since actions *by third-persons* can hardly estop Officer Turriglio from asserting Plaintiff's failure to exhaust as a legal defense). The problem with Plaintiff's sworn assertion is that it is so patently false as to be implausible (if not sanctionable). I take judicial notice of the fact that Inmate Pigford did not file the action to which Plaintiff is referring (which is the only federal court action that has been filed by Shakeith Pigford, according to the Federal Judiciary's PACER service) until nearly *a month after* the incident giving rise to the current action, on May 31, 2007. *See Pigford v. Turriglio*, 07-CV-0687, Complaint (N.D.N.Y. filed June 29, 2007, and dated June 25, 2007). Furthermore, I take judicial notice of the fact that the event giving rise to Inmate Pigford's action against Officer Turriglio did not occur until *three days after* the event giving rise to the current action, on May 31, 2007. *See Pigford v. Turriglio*, 07-CV-0687, Complaint, ¶ 6 (N.D.N.Y.). No mention is made in Inmate Pigford's Complaint as to when he filed his grievance and was

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 187 of 397

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

assaulted. *Id.* at ¶¶ 4(b), 6. However, given the clear factual inaccuracies of Plaintiff's other sworn statements regarding Inmate Pigford's experience, I find that Plaintiff's allegation that Inmate Pigford's experience dissuaded Plaintiff from filing a grievance in this action (from May 31, 2007, to June 14, 2007) to be wholly *implausible.*

Furthermore, because I find that the absence of this factual allegation (regarding Inmate Pigford's having been assaulted for filing a grievance against Officer Turriglio) from Plaintiff's Complaint (which is otherwise quite specific as to why Plaintiff "fear[ed] retaliation" if he filed a grievance) to be conspicuous, I find that this late-blossoming factual allegation to be *inconsistent* with the factual allegations of Plaintiff's Complaint. Therefore, I find that this portion of Plaintiff's Opposition Affidavit may not serve to effectively amend Plaintiff's Complaint. (*See, supra,* note 17 of this Report-Recommendation [citing cases].)

*\*14  In his affidavit, Plaintiff also swears that, before the incident on May 31, 2007, a fellow inmate, Mohammed Montalvo, filed a grievance against Officer Turriglio for "brandish[ing] a knife" and was "threaten[ed] thereafter with bodily harm until he agreed to sign-off [sic] on the grievance...." (Dkt. No. 18, Plf.'s Affid., ¶ 4.) For the sake of brevity, I will set aside the fact that Plaintiff does not assert precisely *when* Inmate Montalvo was so threatened. I will also set aside incredulity with which I view this late-blossoming, self-serving sworn statement, given Plaintiff's other misrepresentations to the Court-discussed above, and below. (*See, infra,* Part III.C. of this Report-Recommendation.) The more important fact is that Plaintiff does not allege that it was *Officer Turriglio* who threatened Inmate Montalvo with bodily harm. Again, actions *by third-persons* cannot estop Plaintiff's failure to exhaust as a legal defense. Moreover, because of the conspicuous absence of this factual allegation (regarding Inmate Montalvo's having been threatened for filing a grievance against Officer Turriglio) from Plaintiff's Complaint (which is otherwise quite specific as to why Plaintiff "fear[ed] retaliation" if he filed a grievance), I find that this factual allegation to be *inconsistent* with the factual allegations of Plaintiff's Complaint. Therefore, I find that this portion of Plaintiff's Opposition Affidavit may not serve to effectively amend Plaintiff's Complaint. (*See, supra,* note 17 of this Report-Recommendation [citing cases].)

Finally, in his affidavit, Plaintiff swears that he experienced several other adverse actions following the incident in

question on May 31, 2007. As an initial matter, the vast majority of this asserted misconduct was committed by correctional officers at Greene C.F. other than Defendant. More importantly, all of this misconduct occurred between July 24, 2007, and October 9, 2007-*well after* the expiration of the June 14, 2007, deadline by which he had to file a grievance regarding the incident giving rise to this action. (*See* Dkt. No. 18, Plf.'s Affid., ¶¶ 5[D]-[H].) Thus, it is impossible for this misconduct to have been the reason that Plaintiff chose not to file a grievance against Defendant between May 31, 2007, and June 14, 2007.

**3. "Special Circumstances" Justifying Failure to Exhaust**

With regard to the third inquiry (i.e., whether Plaintiff has plausibly alleged *special circumstances* justifying his failure to comply with the administrative procedural requirements), I answer this question in the negative, also based on even the most liberal of constructions of Plaintiff's Complaint. Plaintiff has not alleged that, during the time in question, he was laboring under any sort of physical infirmity, or reasonable misunderstanding of the law, which impeded his attempts to complain. Indeed, he has not even alleged, in his Complaint, that he *attempted* to complain, for example, by sending a letter of complaint directly to CORC, the DOCS' Commissioner, or a Deputy Commissioner (which prisoners occasionally do in analogous circumstances).

*\*15  Moreover, even if (out of special solicitude to Plaintiff) I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion. None of those documents allege facts plausibly suggesting the existence of any special circumstances justifying Plaintiff's failure to pursue (and exhaust) his administrative remedies during the time in question (i.e., between the occurrence of the event in question, on May 31, 2007, and the expiration of the deadline by which to file a grievance 14 days later, on or about June 14, 2007). (*See* Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf.'s Letter filed 8/8/07]; Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf.'s Opposition Papers].) I note that Plaintiff swears that, between June 3, 2007, and June 5, 2007, he wrote letters of complaint to both the New York State Inspector General's Office, and the Superintendent of Greene C.F., regarding the incident on May 31, 2007. (*See* Dkt. No. 18, Plf.'s Affid., ¶¶ 5[B]-[C].) However, Plaintiff does not explain why the "letter of complaint" that he sent to the

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 188 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

superintendent was not in the form of a grievance filed with the Greene C.F. IGRC, as required by 7 N.Y.C.R.R. § 701.2. Nor does Plaintiff explain why he failed to write to CORC, following whatever action the superintendent did or did not take with respect to the "letter of complaint." Nor does Plaintiff allege that, during the time in question, he was laboring under any sort of physical infirmity, or reasonable misunderstanding of the law, which impeded his attempts to file a formal grievance with the Greene C.F. IGRC, or at least write a letter of complaint to CORC.

For all of these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's Complaint for alleging facts plausibly suggesting that he failed to exhaust his available administrative remedies following the incident on May 31, 2007.

### C. Second Alternative Ground for Dismissal: Misrepresentations to Court

As stated above in this Report-Recommendation, Plaintiff has, in a sworn statement, falsely stated to the Court that, when the incident in question occurred on May 31, 2007, Plaintiff was aware that a fellow inmate (Shakeith Pigford) had been retaliated against for having filed a grievance against Officer Turriglio–a temporal impossibility since the event giving rise to Inmate Pigford's grievance had not even yet occurred as of May 31, 2007. (See, supra, Part III.B.2. of this Report-Recommendation.) This is not the only misrepresentation that Plaintiff has made to the Court.

As of the date he filed this action on June 16, 2007, Plaintiff had acquired two "strikes" for purposes of 28 U.S.C. § 1915's so-called "three strikes rule." See McCloud v. D.O. C., 06-CV-14278 (S.D.N.Y.) (prisoner civil rights case filed by an inmate bearing New York City Department of Correction Identification Number 141-06-05253, with a date of birth of 9/1/74; dismissed *sua sponte* for failure to state a claim pursuant to 28 U.S.C. § 1915 on 12/8/06); McCloud v. D.O.C., 06-CV-14279 (S.D.N.Y.) (prisoner civil rights case by an inmate bearing New York City Department of Correction Identification Number 141-06-05253, with a date of birth of 9/1/74; dismissed *sua sponte* for failure to state a claim pursuant to 28 U.S.C. § 1915 on 12/8/06).

*16 Plaintiff failed to disclose these two cases in Paragraph 5 of his sworn Complaint, where he checked the box labeled "Yes" next to the question "Have you ever filed any other lawsuits in any state or federal court relating to his imprisonment?" but then listed only one such lawsuit

(i.e., McCloud v. Buckhalter, 07-CV-4576 [S.D.N.Y.] ) in response to the form complaint's directive: "If your answer to 5(a) is YES you must describe any and all lawsuits, currently pending or closed, in the space provided on the next page."(Dkt. No. 1, ¶ 5 [Plf.'s Compl.].)

While a plaintiff is under no duty to provide this information in order to state an actionable civil rights claim, here, Plaintiff *chose* to answer a question on a form complaint calling for such information, and *swore* to the truthfulness of his answer. There is simply no excuse for making such a sworn misrepresentation to the Court. District Judges from this Court have indicated a willingness to sanction *pro se* litigants for making such misrepresentations. See, e.g., Standley v. Dennison, 05-CV-1033, 2007 WL 2406909, at *13-14 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting, on *de novo* review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); Muniz v. Goord, 04-CV-0479, 2007 WL 2027912, at *6 & n. 32 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting, on plain-error review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint) [collecting cases]. I have considered less drastic sanctions and have found them to be inadequate to curb this particular intentional and egregious litigation abuse.

For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's Complaint *sua sponte*, under Fed.R.Civ.P. 11, as a sanction for making multiple sworn misrepresentations to the Court.

### D. Third Alternative Ground for Dismissal: Unavailability of Relief Requested

As stated above in Part I.A. of this Report-Recommendation, as a result of the misconduct alleged in this action, Plaintiff is requesting three forms of relief: (1) a court order "secur[ing] [Plaintiff's] safety and mak[ing] sure there will be [ ]no[ ] retaliation from coworkers or staff"; (2) a court order directing that a search be performed of Defendant's "file to see if [a]ny complaints or grievances [have] been filed against him in the past concerning brutality"; and (3) "$1,000,000 for mental anguish and distress."(Dkt. No. 1, ¶¶ 7, 9 [Plf.'s Compl.].)

I find that the first two forms of relief are able to be, and should be, denied on the alternative ground that Plaintiff

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

has alleged no facts plausibly suggesting his entitlement to either form of relief. The first form of relief, which is essentially an injunction or temporary restraining order, must be supported by documents showing cause for the granting of the requested relief-which Plaintiff's Complaint does not do. *See*Fed.R.Civ.P. 65; N.D.N.Y. L.R. 65.1, 65.2, 7.1(f), 7.1(b)(2), 7.1(e). The second form of relief is merely a vehicle by which Plaintiff may embark on a fishing expedition to obtain facts that would enable him to assert an actionable legal claim against Defendant.Rule 8 of the Federal Rules of Civil Procedure-which requires that a plaintiff must assert enough facts in his complaint and thus be in possession of such basic facts *before* he files the complaint) to give a defendant *fair notice* of the claim against him-does not permit such a "bootstrap" pleading. [35] Nor does Plaintiff even provide cause in support of what is essentially a request for discovery.

*17 For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's Complaint *sua sponte*, under 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b), [36] to the extent that the Complaint requests, as relief for the constitutional violation(s) alleged, (1) a court order "secur[ing] [Plaintiff's] safety and mak[ing] sure there will be [ ]no[ ] retaliation from coworkers or staff," and (2) a court order directing that a search be performed of Defendant's "file to see if [a]ny complaints or grievances [have] been filed against him in the past concerning brutality. "(Dkt. No. 1, ¶¶ 7, 9 [Plf.'s Compl.].)

ACCORDINGLY, for the reasons stated above, it is

RECOMMENDED that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 42) be *GRANTED*; and it is further

RECOMMENDED that, when dismissing Plaintiff's Complaint (Dkt. No. 1), the Court state that the dismissal constitutes a "strike" for purposes of 28 U.S.C. § 1915(g); and it is further

RECOMMENDED that the Court certify in writing, for purposes of 28 U.S.C. § 1915(a)(3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec 'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

All Citations

Not Reported in F.Supp.2d, 2008 WL 1772305

Footnotes

1    The Magistrate Judge's Report-Recommendation inadvertently refers to Defendant's motion to dismiss as Dkt. No. 42 on page 35. The correct Dkt. No. is 11 as referred to throughout the Report-Recommendation.

1    *See*5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

2    *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ( "These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest .... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12 [b](6)'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]. *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.*, 331 F.Supp.2d 91, 101-02 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b] [6] motion-one aimed at the sufficiency of the pleadings under Rule 8 [a], and the other aimed at the legal sufficiency of the claims).

3     *Dura Pharm., Inc. v. Broudo*, 125 S.Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 [1957] );*see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

4     *See Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

5     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Tech., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir.1996] ).

6     *See, e.g., Swierkiewicz*, 534 U.S. at 513-514 (characterizing Fed.R.Civ.P. 8[a][2]'s pleading standard as 'simplified').

7     *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

8     *See, e.g., Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-74 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharm.*, 125 S.Ct. at 1634-35, *Christopher v. Harbury*, 536 U.S. 403, 416-22 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-35 (2d Cir.2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-09 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a] [2] ). Although these decisions are not themselves precedential authority, seeRules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2). See *Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir.2001] after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001] ).

9     The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint....*Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."*Twombly*, 127 S.Ct. at 1969.

10    *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994).

11    *Hernandez*, 18 F.3d at 136 [citation omitted]; *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

12    *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

13    *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted); *see also*Fed.R.Civ.P. 15(a) (leave to amend 'shall be freely given when justice so requires').

14    *Stinson v. Sheriff's Dep't of Sullivan County*, 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz*, 2007 WL 2027912, at *2 (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.*, 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins*, 2007 WL 37404, at *4 (Kahn, J., adopting report-recommendation of Lowe, M.J.).

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 191 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

15    *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

16    *See* Fed.R.Civ.P. 12(b) ("if, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

17    "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord*, 96 Civ. 7544, 1997 WL 714878, *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord*, 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds*, 317 F.Supp.2d 160 (N.D.N.Y.2004).

18    *See also Harris v. Garner*, 190 F.3d 1279, 1287 (11th Cir.1999) (prisoner's claim that corrections officers forced him to 'dry shave' during prison "shakedown," causing him to experience bleeding, irritation, and pain, alleged only *de minimis* injury and not the kind of physical injury cognizable under the PLRA) [citation omitted], *opinion reinstated in part on rehearing*,216 F.3d 970 (11th Cir .2000); *Russell v. Johnson*, 07-CV-0008, 2008 WL 480020, at *2 (M.D.Ga. Feb. 19, 2008) (detainee's claim that, during a traffic stop, his foot was caught in police officer's automotive transmission, which resulted only in pain, was not cognizable *physical injury* under PLRA).

19    *See also Borroto v. McDonald*, 04-CV-0165, 2006 WL 2789152, at *1 (N.D.Fla. Sept. 26, 2005) (prisoner's claim that he was "repeatedly punched" by correctional officers, alone, did not allege the kind of *physical injury* that is cognizable under PLRA); *cf. Barker v. Lehrer*, 02-CV-0085. 2004 WL 292142, at *4-5 (N.D.Tex. Jan. 30, 2004) (fact that prisoner was 'hit . . . with a closed fist on the left side of his forehead," resulting in "a lump on his forehead after the assault," did not constitute *physical injury* under PLRA).

20    *See, e.g., Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C.Cir.1998) (weight loss, appetite loss, and insomnia caused by emotional distress not '*physical injury*' for purposes of PLRA); *Cooksey v. Hennessey*, 07-CV-3829, 2007 WL 2790365, at *1 (N.D.Cal. Sept. 20, 2007) ("Physical symptoms that are not sufficiently distinct from a plaintiff's allegations of emotional distress do not qualify as a prior showing of physical injury [for purposes of the PLRA].") [internal quotation marks]; *Johnson v. Georgia*, 06-CV-0049, 2007 WL 2684985, at *3 (M.D.Ga. Sept. 7, 2007) (stress and "a mental disorder" not "physical injury" for purposes of PLRA); *Brown v. Porter*, 05-CV-20957, 2006 WL 2092032, at *2 (N.D.Cal. July 26, 2006) (migraines, dry mouth, and loss of appetite caused by mental health problems not "physical injury" for purposes of PLRA); *Watkins v. Trinity Serv. Group, Inc.*, 05-CV-1142, 2006 WL 3408176, at *4 (M.D.Fla. Nov. 27, 2007) (diarrhea, vomiting, cramps, nausea, and headaches from eating spoiled food on one day not "physical injury" for purposes of PLRA); *Hill v. Williams*, 03-CV-0192, 2005 WL 5993308, at *4 (N.D.Fla. Oct. 14, 2005) (thirty-minute episode of hyperventilation, accompanied by shortness of breath, swollen tongue, pounding heart, and headache, not "physical injury" for purposes of PLRA); *Mitchell v. Newryder*, 245 F.Supp.2d 200, 203, 205 (D.Me.2003) ("permanent traumatization" not "physical injury" for purposes of PLRA); *Todd v. Graves*, 217 F.Supp.2d 958, 960 (S.D.Iowa 2002) (stress, hypertension, insomnia, dizziness, and loss of appetite not "physical injury" for purposes of PLRA); *Ashann-Ra v. Virginia*, 112 F.Supp.2d 559, 566 (W.D.Va.2000) (psychosomatic conditions, including sexual dysfunction, caused by emotional distress not "physical injury" for purposes of PLRA); *McGrath v. Johnson*, 67 F.Supp.2d 499, 508 (E.D.Pa.1999) (inflammation of pre-existing skin condition caused by emotional trauma not "physical injury" for purposes of PLRA); *Cain v. Virgina*, 982 F.Supp. 1132, 1135 & n. 3 (E.D.Va 1997) (depression and painful headaches caused by emotional distress not "physical injury" for purposes of PLRA); *Pinkston-Bey v. DeTella*, 96-CV-4823, 1997 WL 158343, at *3 (N.D.Ill. March 31, 1997) (severe headaches caused by emotional distress not "physical injury" for purposes of PLRA).

21    42 U.S.C. § 1997e.

22    *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

23    7 N.Y.C.R.R. § 701.7.

24    7 N.Y.C.R.R. § 701.7; *see also White v. The State of New York*, 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct. 3, 2002).

WESTLAW    © 2016 Thomson Reuters. No claim to original U.S. Government Works.    14

25 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York*, 198 F.Supp.2d 546, 549 (S.D.N.Y.2002), *vacated and remanded on other grounds*,380 F.3d 680 (2d Cir.2004); *see, e.g .*, *Croswell v. McCoy*, 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA."); *Reyes v. Punzal*, 206 F.Supp.2d 431, 433 (W.D.N.Y.2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him."); *Nimmons v. Silver*, 03-CV-0671, Report-Recommendation, at 15-16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.) (recommending that the Court grant Defendants' motion for summary judgment, in part because plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by* Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.).

26 7 N.Y.C.R.R. § 701.2.

27 *Id.*

28 *Id.*

29 *Rodriguez v. Hahn*, 209 F.Supp.2d 344, 347-48 (S.D.N.Y.2002); *Reyes v. Punzal*, 206 F.Supp.2d 431, 433 (W.D.N.Y.2002).

30 *See Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir.2004).

31 *Hemphill*, 380 F.3d at 686 (citation omitted).

32 *Id.* [citations omitted].

33 *Id.* [citations and internal quotations omitted].

34 As described above, an inmate must file a complaint with the facility's IGP clerk within 14 calendar days of the alleged occurrence.

35 *See Balliett v. Heydt*, 95-CV-5184, 1997 U.S. Dist. LEXIS 14913, at *3-9, 29 (E.D.Pa. Sept. 25, 1997) (referring to a similar attempt to state a claim-based on information generated in 1997, several years after the filing of the complaint in 1995-as a "means of circular pleading and bootstrapping"); *Hill v. Austin*, 89-CV-7790, 1997 U.S. Dist. LEXIS 11737, at *10 (N.D.Ill. Sept. 6, 1990) ("Hill cannot bootstrap his [untimely and therefore non-actionable] complaints dealing with the years 1976 through 1982 through his timely filing of the complaint on the 1985 involuntary detail."); *cf. City of New York v. Permanent Mission of India to the U.N.*, 446 F.3d 365, 377 (2d Cir.2006) (referring to an analogous attempt to state a claim as a "use [of] creative pleading to 'bootstrap' claims" that were otherwise unavailable to the plaintiff); *Scott v. Johnson*, 95-CV-0403, 1995 U.S. Dist. LEXIS 22445, at *6 (W.D.Mich. July 28, 1995) ("A prison inmate cannot bootstrap his complaints with conclusory allegations of retaliation ....") [citation omitted].

36 *See*28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis]* at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted [,] ... or ... seeks monetary relief against a defendant who is immune from such relief"); 28 U.S.C. § 1915A(b) ("On review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted....").

End of Document

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)  Case 9:25-cv-00083-BKS-TWD   Document 29   Filed 01/20/26   Page 193 of 397

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)
2008 WL 4693153

2008 WL 4693153
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Raymond ROBLES, Plaintiff,
v.
K. BLEAU, Correctional Officer, Riverview C.F.;
Peacock, Correctional Sergeant, Riverview C.F.;
R. Varkiar, Senior Counsel, Riverview C.F.; and
New York State Dep't of Corr. Servs., Defendants.

No. 9:07-CV-0464.
|
Oct. 22, 2008.

**Attorneys and Law Firms**

Raymond Robles, Cape Vincent, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of
New York, David L. Cochran, Esq., of Counsel, New York,
NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

*1 This *pro se* civil rights action, brought pursuant
to 42 U.S.C. § 1983, was referred to the Hon. George
H. Lowe, United States Magistrate Judge, for a Report-
Recommendation pursuant to 28 U.S.C. § 636(b) and Local
Rule 72.3(c).

The Report-Recommendation dated September 12, 2008
recommended that Defendants motion to dismiss be
granted in part and denied in part. Specifically, Judge
Lowe recommended that Plaintiff's Fourteenth Amendment
procedural due process claim against Defendant Varkiar
regarding his disciplinary hearing be dismissed if, within
thirty (30) days from the filing of this Final Order, Plaintiff
does not file an Amended Complaint that successfully states a
Fourteenth Amendment procedural due process claim. It was
recommended that Plaintiff's remaining claims be dismissed
with prejudice.

Plaintiff filed objections to the Report-Recommendation,
essentially raising the same arguments presented to the
Magistrate Judge.

When objections to a magistrate judge's Report-
Recommendation are lodged, the Court makes a *"de novo*
determination of those portions of the report or specified
proposed findings or recommendations to which objection is
made."*See*28 U.S.C. § 636(b)(1). After such a review, the
Court may "accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate judge.
The judge may also receive further evidence or recommit the
matter to the magistrate judge with instructions."*Id.*

Having reviewed the record *de novo* and having considered
the issues raised in the Plaintiff's objections, this Court
has determined to accept and adopt the recommendation of
Magistrate Judge Lowe for the reasons stated in the Report-
Recommendation.

It is therefore

**ORDERED** that Defendants motion to dismiss be
**GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

*REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced pursuant
to 42 U.S.C. § 1983, has been referred to me by the Honorable
Thomas J. McAvoy, Senior United States District Judge, for
Report and Recommendation with regard to any dispositive
motions filed, pursuant to 28 U.S.C. § 636(b) and Local
Rule 72.3(c). Generally, in his Complaint, Raymond Robles
("Plaintiff") alleges that three employees of the New York
State Department of Correctional Services ("DOCS"), as
well as DOCS itself, violated his rights under the Eighth
and Fourteenth Amendments when they (1) required him to
submit to a random urinalysis test when they knew he was
taking a medication that would prevent him from providing a
urine sample, and (2) charged, convicted, and punished him
with eighty-seven days in a Special Housing Unit for refusing
to provide a urine sample. (*See generally*Dkt. No. 1 [Plf.'s
Compl.].) Currently pending before the Court is Defendants'
motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16.)For the reasons that

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 194 of 397

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)

2008 WL 4693153

follow, I recommend that Defendants' motion be granted in part and denied in part.

**I. BACKGROUND**

**A. Summary of Plaintiff's Complaint**

*2 As Defendants correctly observe in their Memorandum of Law, Plaintiff's Complaint-which describes the events giving rise to his claims in two brief paragraphs without identifying any role played by Defendants in those events-is hardly a model of *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.].) However, as explained below in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [1] Here, I find that the factual allegations contained in Plaintiff's Response Affidavit are consistent with the factual allegations of his Complaint. As a result, in construing Plaintiff's Complaint, I will consider his Response Affidavit as effectively amending the factual allegations of his Complaint. Thus construed, Plaintiff's Complaint alleges as follows:

1. On November 6, 2006, at about 7:28 a.m., Plaintiff was directed to report to the drug testing center at Riverview C.F.; [2]

2. Upon arriving at the drug testing center, Plaintiff was informed by Correctional Officer B. Bleau ("Defendant Bleau") that he had been randomly selected to submit to urinalysis drug testing; [3]

3. Defendant Bleau asked Plaintiff if he would provide a urine sample, and Plaintiff responded yes; [4]

4. Defendant Bleau then asked Plaintiff if he was taking any medications, and Plaintiff explained that (1) yes, he was taking Flomax and Omeprazole due to a prostate condition and a stomach problem, and (2) "d[ue] to the medication [s]" and the fact that he had used the bathroom at approximately 7:10 a.m. that morning, he would need more water in order to urinate; [5]

5. As Plaintiff was explaining these facts to Defendant Bleau, Defendant Bleau became upset and walked away from Plaintiff; [6]

6. When he returned, Defendant Bleau then informed Plaintiff that, pursuant to DOCS Directive 4937, Plaintiff had three hours provide a urine sample or he would be considered to be refusing to provide the urine sample; [7]

7. Defendant Bleau then gave Plaintiff a cup of water at approximately 7:30 a.m., and a second cup of water at approximately 9:30 a.m., but did not give him a third cup of water at approximately 8:30 a.m., as required by Part D.4. of DOCS Directive 4937; [8]

8. At approximately 10:30 a.m., Plaintiff was still unable to provide a urine sample; [9]

9. At that time, Defendant Bleau notified Correctional Sergeant Peacock ("Defendant Peacock") that Plaintiff was refusing a direct order to provide a urine sample; [10]

10. When Plaintiff tried to explain to Defendant Peacock that his medical condition prevented him from providing the urine sample, Defendant Peacock responded, "Shut up and put [your] hands behind [your] back"; [11]

*3 11. Both Defendants Bleau and Peacock failed to investigate or inquire as to why Plaintiff had been prescribed Flomax and Omeprazole, or what the potential side effects of those drugs were, although that information was readily obtainable from medical staff at Riverview C.F.; [12]

12. Instead, Defendants Bleau and/or Peacock escorted Plaintiff to the Riverview C.F. Special Housing Unit ("S.H.U."); [13]

13. On November 7, 2006, at about 8:55 a.m., while Plaintiff was in S.H.U., he was served with a copy of a misbehavior report authored by Defendant Bleau, charging him with (1) failing to comply with the urinalysis testing procedure, and (2) refusing a direct order to provide a urine sample; [14]

14. On November 10, 2006, Senior Correctional Counselor R. Varkiar conducted Plaintiff's disciplinary hearing on the misbehavior report; [15]

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)
2008 WL 4693153

15. At the hearing, when Plaintiff entered a plea of "Not guilty, with an explanation," Defendant Varkiar gave Plaintiff "an opportunity to explain [him] self"; [16]

16. Plaintiff explained that he had a medical condition that prevented him from providing a urine sample, that he had attempted to inform Defendant Bleau of this medical condition (but Defendant Bleau walked away from Plaintiff), and that he had attempted to inform Defendant Peacock of this medical condition (but Defendant Peacock told Plaintiff to "[s]hut up"); [17]

17. Defendant Varkiar then made a telephone call; when he was done with the call, he told Plaintiff that (1) he had called the medical unit at Riverview C.F. to ask whether or not the medication that Plaintiff was taking would prevent him from urinating, and (2) someone in the medical unit had responded that no, the medication should not prevent Plaintiff from urinating; [18]

18. Plaintiff then attempted to explain to Defendant Varkiar why he was taking one of the medications, specifically, to remedy a prostate problem that itself interfered with his ability to urinate; [19]

19. However, Defendant Varkiar failed to call back the person in the medical unit at Riverview C.F. and request that he or she again answer the question he had posed before, taking into account Plaintiff's prostate condition as shown by his medical records; [20]

20. As a result, Defendant Varkiar found Plaintiff guilty of both disciplinary charges, and sentenced him to ninety (90) days in S.H.U., with a corresponding loss of privileges; [21]

21. At the conclusion of the hearing, Plaintiff received a written copy of the hearing disposition, which stated that the evidence relied on included (1) the statements in the written misbehavior report of Defendant Varkiar, which Defendant Varkiar stated were credible, and (2) Plaintiff's own hearing testimony (which Defendant Varkiar stated was not credible); [22]

22. On November 27, 2006, Plaintiff appealed his conviction to DOCS Director of Special Housing, Donald Selsky, who reversed the conviction on January 19, 2007; [23] and

*4  23. On February 1, 2007, Plaintiff was finally released from S.H.U., after spending eighty-seven (87) days there. [24]

It should be noted that, in addition to asserting constitutional claims against Defendants Bleau, Peacock, and Varkiar in their individual or personal capacities, Plaintiff's Complaint asserts a constitutional claim also against DOCS itself. It should also be noted that, as relief for Defendants' actions, Plaintiff requests money damages but no injunctive relief. [25]

**B. Summary of Grounds in Support of Defendants' Motion**

Generally, Defendants' motion to dismiss for failure to state a claim is premised on two grounds: (1) Plaintiff's claim against DOCS is barred by the Eleventh Amendment; and (2) the allegations of Plaintiff's Complaint are too lacking in detail to give Defendants *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 2-5 [Defs.' Memo. of Law].)

**II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM**

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); [26] or (2) a challenge to the legal cognizability of the claim. [27]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [28] The main purpose of this rule is to "facilitate a proper decision on the merits." [29] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [30]

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)
2008 WL 4693153

requirement.[31] However, it is well established that even this liberal notice pleading standard "has its limits." [32] As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard.[33]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1968–69, 167 L.Ed.2d 929 (2007).[34] Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Fed.R.Civ.P. 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74.

*\*5* More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading contain at least "some factual allegation[s]." *Id.* [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Twombly* ).[35] The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[36]

It should be emphasized that Fed.R.Civ.P. 8's plausibly standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2).*Erickson v. Pardus,* 551 U.S. 89, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gibson.* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever.[37] There must still be enough fact alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [38] This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.* " [39] In other words, as stated above, while all pleadings are to be construed liberally under Fed.R.Civ.P. 8(e),*pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.[40]

*\*6* For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[41] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [42] Furthermore, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [43] Of course, an opportunity to amend is not required where "the problem

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 197 of 397
2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)
2008 WL 4693153

with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[44] In addition, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.[45]

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed),[46] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[47] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[48] Stated more plainly, when a plaintiff is proceeding *pro se*,"all normal rules of pleading are not absolutely suspended."[49]

**III. ANALYSIS**

**A. Whether Plaintiff's Claim Against DOCS is Barred by the Eleventh Amendment**

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's constitutional claims against Defendant DOCS are barred by the Eleventh Amendment to the United States Constitution. (Dkt. No. 16, Part 2, at 2-3 [Defs.' Mem. of Law].) In the interest of brevity, I will not repeat the well-established points of law that they correctly cite in support of their argument. Instead, I will only add three points that Defendants do *not* make in their succinct argument: (1) where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case (or claim), and "the case [or claim] *must* be stricken from the docket";[50] (2) Plaintiff's civil rights claims against Defendant DOCS (an entity) are barred also by the express language of 42 U.S.C. § 1983, which confers liability upon only any *"person* who ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ... "[51] ; and (3) because the defect with this claim is substantive rather than merely formal, better pleading will not cure it, and thus it should be dismissed with prejudice.[52]

*7  For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's claims against Defendant DOCS.

It should be noted that, in addition to barring Plaintiff's constitutional claims against Defendant DOCS, the Eleventh Amendment would also bar any claim by Plaintiff against Defendants Bleau, Peacock and Varkiar in their official capacities.[53] However, because I do not even liberally construe Plaintiff's Complaint (and Response Affidavit) as asserting such claims, no need exists to recommend the dismissal of those claims. (*See generally* Dkt. No 1, 17.)

**B. Whether the Allegations of Plaintiff's Complaint Are Too Lacking in Detail to Give Defendants *Fair Notice* under Fed.R.Civ.P. 8(a)(2)**

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's Complaint–when considered alone–is too lacking in detail to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 3-5 [Defs.' Mem. of Law].) However, as explained above in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[54] Here, when construing Plaintiff's Complaint together with his Response Affidavit, I find that Plaintiff's allegations *are* detailed enough to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2).*See, supra,* Part I.A. of this Report-Recommendation.

However, this does not end the Court's analysis of Plaintiff's Complaint because, even where a defendant has not advanced a certain argument on a motion to dismiss in a *pro se* prisoner civil rights case, a district court may (and, indeed, has a duty to) *sua sponte* address whether the pleading in such a case has successfully stated a claim upon which relief may be granted.[55] Here, Plaintiff's Complaint is plagued by several defects (some substantive and some formal)[56] that simply cannot be overlooked.

**C. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau, Peacock and Varkiar Arising Out of Plaintiff's Being Required to Provide a Urine**

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 198 of 397

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)
2008 WL 4693153

**Sample Given Their Knowledge of His Medications and/ or Medical Condition**

Among Plaintiff's claims is a claim that "[i]t is neither lawful nor [ ] reasonable to expect an Inmate to perform a bodily function on command when you know or should know that his medical condition and prescribed treatment plan indicate that when he urinates[,] and when he [can] not[,] can be beyond his control."(Dkt. No. 17, at 5 [Plf.'s Response Affid.].) I liberally construe this claim as one of harassment or perhaps inadequate-prison-conditions under the Eighth Amendment. (To the extent that this allegation is also used to support a procedural due process claim under the Fourteenth Amendment, I address that claim below in Parts III.D. and III.E. of this Report-Recommendation.)

**\*8** The problem with Plaintiff's Eighth Amendment claim is that the rather detailed facts alleged by him in support of that claim do not suggest in any way that any of the three individual Defendants were acting with the sort of mental state that is required for them to incur liability under the Eighth Amendment, namely, *deliberate indifference.*Deliberate indifference is a state of mind akin to *criminal recklessness,* which involves *knowing* of and disregarding an excessive risk to inmate health or safety.[57] Here, Plaintiff himself alleges that the three individual Defendants did not in fact *understand* that he could not urinate due to his prostate condition. Indeed, as he was trying to explain his medical condition to Defendants, (1) Defendant Bleau became angry and "walked away" from Plaintiff, (2) Defendant Peacock told Plaintiff to "[s]hut up," and (3) Defendant Varkiar failed to call back the person in the medical unit of Riverview C.F. and ask him or her to report (to Varkiar) the impact of Plaintiff's prostate condition on his ability to urinate. *See, supra,* Part I.A. of this Report-Recommendation.[58]

At its heart, Plaintiff's Eighth Amendment claim alleges that the three individual Defendants *should have known* that he could not urinate during the time in question due to his enlarged prostate, but that they did not know that fact because they *failed to investigate* the nature and effects of his prostate condition. In other words, his Eighth Amendment claim is one of *negligence.*Such a claim is simply not actionable under the Eighth Amendment (or any constitutional provision). As is often observed, "[D]eliberate indifference describes a state of mind more blameworthy than negligence."[59] Finally, because the defect with this detailed claim is substantive

rather than merely formal, I find that better pleading will not cure it.[60]

For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Eighth Amendment claim.

**D. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau and Peacock Arising Out of His Receipt of an Erroneous or False Misbehavior Report**

It is well established that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."*Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 [2d Cir.1986] ).[61] Rather, the only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there is "more, such as retaliation against the prisoner for exercising a constitutional right."*Boddie,* 105 F.3d at 862;*accord, Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at \*26, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted].

Here, Plaintiff alleges no actionable conduct regarding his being issued the misbehavior report in question, such as retaliation against him for exercising a constitutional right. *See, supra,* Part I.A. of this Report-Recommendation. Moreover, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it.[62]

**\*9** For these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Fourteenth Amendment false-misbehavior-report claim.

**E. Whether Plaintiff Has Stated an Actionable Claim Against Defendant Varkiar Arising Out of Plaintiff's Erroneous or Unjustified Disciplinary Conviction**

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient .... " *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). With regard to the first question, in 1995, the Supreme Court held in *Sandin v. Connor* that liberty interests protected by the Fourteenth

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 199 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)
2008 WL 4693153

Amendment's Due Process Clause will not arise from the use of mandatory language of a particular state law or regulation, but "will generally be limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 483–484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Here, Plaintiff alleges that the disciplinary hearing conducted by Defendant Varkiar resulted in a sentence of eighty-seven (87) days in the Riverview C.F. S.H.U. with a corresponding loss of privileges. *See, supra,* Part I.A. of this Report-Recommendation. Numerous district courts in this Circuit have issued well-reasoned decisions finding no atypical and significant hardship experienced by inmates who served sentences in S.H.U. of far more than the eighty-seven (87) days alleged here-even where the conditions of confinement in the S.H.U. were, to varying degrees, more restrictive than those in the prison's general population. [63] As a result, I find that Plaintiff has not alleged facts plausibly suggesting that he possessed, during the disciplinary hearing, a liberty interest that was protected by the Fourteenth Amendment.

However, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice. This is because it is conceivable to me that Plaintiff's Complaint and Response Affidavit-which are silent with regard to the conditions of confinement he experienced in the Riverview C.F. S.H.U.-may be amended so as to allege facts plausibly suggesting that those conditions were so restrictive as to impose on Plaintiff *an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life* (thus conferring on him a protected liberty interest under the Fourteenth Amendment).

I should also point out that, even assuming (for the sake of argument) that Plaintiff possessed a protected liberty interest with regard to his disciplinary hearing, I find that he has alleged facts plausibly suggesting that he was, in fact, given all the process that he was due under the circumstances. Specifically, Plaintiff alleges that he was given the following: (1) timely notice of the misbehavior report; (2) an "opportunity to explain [him]self" at his disciplinary hearing; (3) a written disciplinary hearing disposition; (4) a disciplinary hearing disposition that was based on at least some evidence (e.g., his own hearing testimony, which Defendant Varkiar found to be not credible); and (5) an opportunity to appeal the disciplinary hearing disposition (which he did so successfully).*See, supra,* Part I.A. of this Report-Recommendation.

*10 Of course, the defect that Plaintiff alleges occurred at his disciplinary hearing was Defendant Varkiar's failure to use the telephone to call back the person in the medical unit at Riverview C.F. and request that he or she again answer the question of whether Plaintiff was physically unable to urinate, taking into account his prostate condition as shown by his medical records. *Id.* Generally, it is not the duty of an impartial hearing officer to conduct an investigation of the merit of the disciplinary charges against an inmate; rather, the duty of a hearing officer is merely to review the evidence presented to him at the disciplinary hearing, and in *certain circumstances* identify defense witnesses for the inmate. [64] Here, I find that Plaintiff has alleged no circumstances conferring on Defendant Varkiar a duty to call back the medical unit at Riverview C.F. For example, I find that Plaintiff's Complaint and Response Affidavit are devoid of any allegation that, at his disciplinary hearing, he requested and was denied an adjournment of the hearing so that, with the help of a legal assistant, he could obtain his medical records and call as a witness a member of the medical unit, in order that he himself could introduce testimony that his prostate condition prevented him from urinating during the time in question. *See, supra,* Part I.A. of this Report-Recommendation. However, again, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice, because it is conceivable to me that Plaintiff's Complaint and Response Affidavit may be amended to allege facts plausibly suggesting that, at his disciplinary hearing, he made, and was denied, such a request.

For these reasons, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment procedural due process claim regarding his disciplinary hearing if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing.

Finally, two points bear mentioning. First, to the extent that Plaintiff is attempting to allege that his procedural due process rights were violated at his disciplinary hearing also because Defendant Bleau violated Part D.4. of DOCS Directive #937 by giving Plaintiff only two cups of water during the three-hour period in question, that allegation is not actionable under the circumstances. Section 1983 provides, in pertinent part, "Every person who ... subjects, or causes to be subjected, any citizen of the United States or other person within the

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 200 of 397

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)
2008 WL 4693153

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by *the Constitution and laws,* shall be liable to the party injured ...." 42 U.S.C. § 1983 [emphasis added]. The term "the Constitution and laws" refers to the United States Constitution and *federal* laws. [65] A violation of a state law or regulation, *in and of itself,* does not give rise to liability under 42 U.S.C. § 1983. [66] Furthermore, the violation of a DOCS Directive, alone, is not even a violation of New York State law or regulation; [67] this is because a DOCS Directive is "merely a system the [DOCS] Commissioner has established to assist him in exercising his discretion," which he retains, despite any violation of that Directive. [68]

*11 Second, in making the above recommendation (that Plaintiff be required to file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing, upon penalty of dismissal), I am in no way "issuing specific instructions [to Plaintiff] mandating the content and format of the putative amended complaint"-instructions that the Second Circuit recently found erroneous in the case of *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *6 (2d Cir. Aug.12, 2008). Rather, I am merely reporting my finding that Plaintiff's current Fourteenth Amendment procedural due process claim regarding his disciplinary hearing fails to state a claim upon which relief might be granted, as pleaded.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 16) be *GRANTED* **in part** and *DENIED* **in part** in the following respects:

(1) Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Varkiar regarding his disciplinary

hearing be *DISMISSED* if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing; and

(2) The other claims asserted in Plaintiff's Complaint (as effectively amended by his Response Affidavit) be *DISMISSED* **with prejudice,** and without condition.

**ANY OBJECTIONS** to this Report-Recommendation must be filed with the Clerk of this Court within **TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS** from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).*See*28 U.S.C. § 636(b)(1), Fed.R.Civ.P. 72(b), N.D.N.Y. L.R. 72.1(c), Fed.R.Civ.P. 6(a)(2), (d).

**BE ADVISED** that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance. [69]

**BE ALSO ADVISED** that the failure to file timely objections to this Report-Recommendation will **PRECLUDE LATER APPELLATE REVIEW** of any Order of judgment that will be entered.*Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4693153

Footnotes

30    *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), aff'd,113 F.3d 1229 (2d Cir.1997) (unpublished table opinion), accord, *Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. See, e.g., *Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

1    *See, infra,* note 41 of this Report-Recommendation (citing cases).

2    (Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

3    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 201 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)

2008 WL 4693153

4    (Dkt. No. 1, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"].)

5    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

6    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

7    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid., attaching page from DOCS Directive 4937].)

8    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid., attaching page from DOCS Directive 4937].)

9    (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

10    (Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

11    (Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

12    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 9 [Ex. 2 to Plf.'s Response Affid., attaching page of his Ambulatory Health Record].)

13    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 8 [Plf.'s Response Affid.].)

14    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

15    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

16    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

17    (Id.)

18    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

19    (Dkt. No. 17, at 2-3 [Plf.'s Response Affid.]; Dkt. No. 17, at 14-15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid., attaching page of information about Flomax].)

20    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid., attaching page of information about Flomax].)

21    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

22    (Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 3 [Plf.'s Response Affid.].)

23    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3-4 [Plf.'s Response Affid.]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 16 [Ex. 8 to Plf.'s Response Affid., attaching Donald Selsky's Review of Superintendent's Hearing, issued on January 19, 2007].)

24    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 2 [Plf.'s Response Affid.].)

25    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

26    *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

27    *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest ... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6),

WESTLAW  © 2016 Thomson Reuters. No claim to original U.S. Government Works.    9

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 202 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)

2008 WL 4693153

that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ( "Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ] ") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5, 2004 WL 2613993 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro. Trans. Auth.*,331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8 [a], and the other aimed at the legal sufficiency of the claims).

28    *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; see also *Swierkiewicz*, 534 U .S. at 512 [citation omitted]. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

29    *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); see also *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

31    See, e.g., *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)[2]'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

32    2 Moore's Federal Practice § 12.34[1][b] at 12-61 (3d ed.2003).

33    See, e.g., *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, ––– - –––, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals*, 125 S.Ct. at 1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*. See, e.g., *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, seeRules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).See *Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001] ).

34    The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint....Conley, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."*Twombly*, 127 S.Ct. at 1969.

35    See, e.g., *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir.2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.'") [citation omitted]; *Goldstein v. Pataki*, 07-CV-2537, 2008 U.S.App. LEXIS 2241, at *14, 2008 WL 269100 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires ... that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level ... ' ") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98, n. 2 (2d Cir.2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original].

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 203 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)
2008 WL 4693153

36    See, e.g., *Jacobs v. Mostow*, 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's pro se complaint sufficiently presented a "plausible claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

37    For example, in *Erickson*, a district court had dismissed a pro se prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Twombly*, all that is required is a "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id.* at 2200.While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id.* at 2199-2200.In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not also allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. See, e.g., *Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept.9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan.23, 2004); *Johnson v. Wright*, 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

38    *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994).

39    *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

40    *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] pro se complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers ....") [internal quotation marks and citation omitted]; *McEachin v. McGinnis*, 357 F.3d 197, 200 (2d Cir.2004) ("[W]hen the plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally, particularly where they allege civil rights violations.") [citation omitted].

41    "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."*Gadson v. Goord*, 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord*, 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,*317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. See *Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending pro se complaint, on motion to dismiss) [citations omitted]

42    *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

43    *Cuoco v. Montsugu*, 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; see also*Fed.R.Civ.P.* 15(a) (leave to amend "shall be freely given when justice so requires").

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)

2008 WL 4693153

44  *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.') (affirming, in part, dismissal of claim with prejudice) [citation omitted].

45  *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2, n. 14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5, n. 34 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL. 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4, n. 30 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.*, 03-CV-0407, 2006 WL 2794415, at *5, n. 18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver*, 03-CV-0912, 2006 WL 2799417, at *4, n.16 (N.D.N.Y. Sept., 26, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

46  *See Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

47  *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord, Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

48  *See McNeil v. U.S.*, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 [1993] ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir.2006) (pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983) (pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; cf. *Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

49  *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.*, 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

50  *McGinty v. State of New York*, 251 F.3d 84, 100 (2d Cir.2001) [citation omitted]; *see alsoFed.R.Civ.P.* 12(h)(3).

51  42 U.S.C. § 1983 [emphasis added].

52  *See, supra*, note 44 of this Report-Recommendation.

53  *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir.1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent the state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir.1993) ( "[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their individual capacities."); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir.1988) ( "The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)

2008 WL 4693153

is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office... As such, it is no different from a suit against the State itself... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky,* 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y. Feb 6, 2007) (Sharpe, J.) (citing cases).

54   *See, infra,* note 41 of this Report-Recommendation (citing cases).

55   The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis* ] at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted[,] ... or ... seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted ... ."

56   As explained above in Part II of this Report-Recommendation, a dismissal for failure to state a claim may be based not only on a successful challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2), but also on a successful challenge to the legal cognizability of the claims asserted in the pleading. *See, supra,* notes 26 and 27 of this Report-Recommendation.

57   *Farmer v. Brennan,* 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for 'deliberate indifference' under the Eighth Amendment."); *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness ...") [citation omitted]; *accord, Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept.26, 2007) (Kahn, J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *15, n. 124 (N.D.N.Y. Jan.23, 2007) (Kahn, J.), *Salaam v. Adams,* 03-CV-0517, 2006 WL 2827687, at *10, n. 59 (N.D.N.Y. Sept.29, 2006) (Kahn, J.).

58   In addition, it is worth noting that Plaintiff's explanation to Defendant Bleau consisted of a statement that Plaintiff could not urinate because of his prostate medication, not because of his prostate condition. *See, supra,* Part I.A. of this Report-Recommendation. As a result, Defendant Bleau would not have become aware of the reason for Plaintiff's inability to urinate (which Plaintiff now alleges was his prostate condition, not his prostate medication ), even if Defendant Bleau had remained in Plaintiff's presence and listened to his explanation.

59   *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[A] deliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J .) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

60   *See, supra,* note 44 of this Report-Recommendation.

61   *Accord, Lugo v. Van Orden,* 07-CV-0879, 2008 U.S. Dist. LEXIS 56707, at *7, 2008 WL 2884925 (N.D.N.Y. July 23, 2008) (McAvoy, J.); *Darvie v. Countryman,* 08-CV-0715, 2008 U.S. Dist. LEXIS 60931, 2008 WL 3286250 (N.D.N.Y. Aug. 7, 2008) (Sharpe, J.), *adopting* 2008 U.S. Dist. LEXIS 52797, at *18, n. 5, 2008 WL 2725071 (N.D.N.Y. July 10, 2008) (Lowe, M.J.); *Anderson v. Banks,* 06-CV-0625, 2008 U.S. Dist. LEXIS 60896, at *16-17, 2008 WL 3286917 (N.D.N.Y. May 19,

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.        13

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)

2008 WL 4693153

2008) (Homer, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 60932, 2008 WL 3285917 (N.D.N.Y. Aug. 6, 2008) (Sharpe, J.); *Stewartson v. Almstead*, 04-CV-1097, 2008 U.S. Dist. LEXIS 22178, at *7, 2008 WL 783387 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *McEachin v. Goord*, 06-CV-1192, 2008 U.S. Dist. LEXIS 27479, at *12, 2008 WL 1788440 (N.D.N.Y. Feb. 8, 2008) (Treece, M.J.), *adopted by* 2008 U.S. Dist. 31879, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J.); *Murray v. Pataki*, 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *27, 2007 WL 956346 (N.D.N.Y. March 5, 2007) (Treece, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 23055, 2007 WL 956941 (N.D.N.Y. March 29, 2007) (Kahn, J.); *Madera v. Goord*, 103 F.Supp.2d 536, 542 (N.D.N.Y.2000) (Kahn, J., adopting Report-Recommendation by Di Bianco, M.J.).

62    See, supra, note 44 of this Report-Recommendation.

63    See, e.g., *Spence v. Senkowski*, 91-CV-0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (180 days that plaintiff spent in S.H.U., where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); accord, *Husbands v. McClellan*, 990 F.Supp. 214, 217-19 (W.D.N.Y.1998) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin*, 985 F.Supp. 350, 353-56 (W.D.N.Y.1997) (161 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky*, 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y.1997) (192 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin*, 949 F.Supp. 112, 116-17 (N.D.N.Y.1996) (Smith, M.J.) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin*, 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug.27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero*, 905 F.Supp. 99, 103-04 (W.D.N.Y.1995) (270 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population).

64    *Jackson v. Onondaga County*, 05-CV-1393, 2008 U.S. Dist. LEXIS 64930, at *40 & n. 46, 549 F. Supp. 2d 204 (N.D.N.Y. Jan. 8, 2008) (Lowe, M.J.) [citations omitted], *adopted on de novo review by* 05-CV-1393, 2008 U.S. Dist. LEXIS 22175, 2008 WL 782655 (N.D.N.Y. March 20, 2008) (McAvoy, J.). see also *Martin v. Mitchell*, 92-CV-0716, 1995 U.S. Dist. LEXIS 19206, at *10-12, 1995 WL 760551 (N.D.N.Y. Nov. 24, 1995) (McAvoy, C.J.) (rejecting plaintiff's assertion that prison disciplinary hearing officer "had a duty to investigate the identity of [a correction officer identified by the plaintiff merely as] 'Budd' and call him to testify"); *Hampton v. McGinnis*, 89-CV-6344, 1992 U.S. Dist. LEXIS 15696, at *6, 1992 WL 309553 (S.D.N.Y. Oct. 15, 1992) ("[I]t was not [the disciplinary hearing officer's] duty to investigate [the prisoner's assault] claim, and plaintiff was not precluded from offering his own evidence on that subject."); cf. *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 31 (2d Cir.1991) (under circumstances, a hearing officer did have a duty to identify the name of the plaintiff's desired witness because [1] the plaintiff had an "especially compelling" need for the witness, [2] the witness's identity was "readily available" to the hearing officer, [3] the plaintiff had arrived at the prison only five days earlier, [4] fulfilling the request would not have delayed the imposition of 'swift discipline,' and [5] "no other institutional objective was implicated").

65    See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' of the *United States*.") (emphasis added); *Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir.1985) ("Recovery under 42 U.S.C. § 1983... is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal statutory* right....") (citation omitted; emphasis added); *Fluent v. Salamanca Indian Lease Auth.*, 847 F.Supp. 1046, 1056 (W.D.N.Y.1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and *laws'* of the *United States*.") (emphasis added).

66    See *Doe v. Conn. Dept. of Child & Youth Servs.*, 911 F.2d 868, 869 (2d Cir.1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson*, 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983...") (citation omitted); *Murray v. Michael*, 03-CV-1434, 2005 WL 2204985, at *10 (N.D.N.Y. Sept.7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings ... do not rise to the level of constitutional violations.") (citation omitted); *Rivera v. Wohlrab*, 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[federal constitutional standards rather than state law define the requirements of procedural due process.'") (citing *Russell v. Coughlin*, 910 F.2d 75, 78 n. 1 [2d Cir.1990] ).

67    See *Rivera v. Wohlrab*, 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) (citation omitted); *Lopez v. Reynolds*, 998 F.Supp. 252, 259 (W.D.N.Y.1997).

68    See *Farinaro v. Coughlin*, 642 F.Supp. 276, 280 (S.D.N.Y.1986).

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 207 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)
2008 WL 4693153

69    See, e.g., *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report
      before the district court, a party has no right to present further testimony when it offers no justification for not offering the
      testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways,
      Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying
      plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at
      the hearing before the magistrate"); *Alexander v. Evans*, 88-CV-5309, 1993 WL 427409, at * 18 n. 8 (S.D.N.Y. Sept.30,
      1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; see also *Murr
      v. U.S.*, 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes
      waiver."). *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the
      magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535 (5th
      Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural
      default argument] ... Respondent has waived procedural default ... objection [.]") [citations omitted]; *Greenhow v. Sec'y
      of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the
      magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate
      the purpose of the Magistrates Act."), overruled on other grounds by *U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir.1992);
      *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful
      party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the
      magistrate.") [citation omitted].

End of Document                              © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:25-cv-00083-BKS-TWD   Document 29   Filed 01/20/26   Page 208 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Roland v. Wenz, Not Reported in F.Supp.2d (2010)

2010 WL 2834828

2010 WL 2834828
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Thomas M. ROLAND, III, Plaintiff,

v.

Frank WENZ, T.A., [1] Defendant.

Civil Action No. 9:10–CV–0089 (GLS/DEP).

|

May 24, 2010.

**Attorneys and Law Firms**

Thomas M. Roland, III, Alden, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State
of New York, Roger W. Kinsey, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendant.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

*1 Plaintiff Thomas M. Roland, III, a New York State prison
inmate who is proceeding *pro se* and *in forma pauperis*, has
commenced this action pursuant to 42 U.S.C. § 1983 claiming
deprivation of his civil rights. In his complaint, plaintiff
maintains that during the period of his confinement he was
assaulted by the defendant and forced to submit to a drug
injection after informing medical personnel at the facility of
his desire to ingest the medication being administered orally,
claiming both a denial of due process as guaranteed by the
Fourteenth Amendment and exposure to cruel and unusual
punishment prohibited under the Eighth Amendment. As
relief, plaintiff's complaint seeks compensatory and punitive
damages.

In response to plaintiff's complaint the defendant has
moved for its dismissal, alleging that plaintiff's claims are
procedurally barred by virtue of his failure to exhaust
available administrative remedies before commencing
suit.[2] Defendant's motion is premised principally upon
information set forth in plaintiff's complaint, in which Roland
states that no internal grievance procedure exists at the facility
where he was housed at the relevant times and that he
therefore did not pursue a grievance with regard to the matters

set forth in his complaint, and invites the court to find, based
upon a decision in a prior action issued in a distinctly different
procedural setting, that a grievance procedure does in fact
exist at the facility.

In opposition to defendant's motion, plaintiff has submitted
additional materials in which he now claims that he did file
a grievance complaining of the conduct forming the basis
for his claims in this action. In light of plaintiff's additional
submission and my reluctance to recommend dismissal of
plaintiff's complaint on the scant and equivocal record now
before the court, and particularly given the complexity of the
exhaustion analysis in light of controlling authority in this
circuit, I am recommending that defendant's motion be denied
without prejudice.

**I. BACKGROUND** [3]

Plaintiff is a prison inmate entrusted to the care and custody
of the New York State Department of Correctional Services
("DOCS").*See generally* Complaint (Dkt. No. 1). While
plaintiff is currently designated to the Wende Correctional
Facility, located in Alden, New York, it appears that at the
times relevant to his claims, though still serving a prison
sentence, he was a patient at the Central New York Psychiatric
Center ("CNYPC" or "Center"), a facility operated by
the New York Office of Mental Health and located in
Marcy, New York. *Id.*; *see Decker v. Hogan*, No. 9:09–CV–
0239, 2009 WL 3165830, at * 1 (N.D.N.Y. Sept.28, 2009)
(McAvoy, S.J.). [4]

On January 1, 2010, while confined at the Center, plaintiff
became involved in an altercation with another patient.
Complaint (Dkt. No. 1) § 6. Following the incident plaintiff
was placed in a room and asked by defendant Wenz whether
he preferred to take a psychotropic drug, which was going to
be administered, orally or by injection. *Id.* After informing
Wenz that he desired to take the medication orally, he was
assaulted by the defendant in the presence of other workers at
the facility, suffering injuries to his back, face, head, and right
shoulder. *Id.* During the course of the incident the plaintiff
was forcibly injected with the prescribed medication. *Id.*

**II. PROCEDURAL HISTORY**

*2 Plaintiff commenced this action on January 26, 2010.
Dkt. No. 1. In his complaint, which names only Frank Wenz
as a defendant, plaintiff asserts two causes of action, one
alleging deprivation of due process as guaranteed under

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.                                    137

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 209 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Roland v. Wenz, Not Reported in F.Supp.2d (2010)

2010 WL 2834828

the Fourteenth Amendment based upon the forced injection of medicine over his objection, and the second asserting a claim of cruel and unusual punishment in violation of the Eighth Amendment stemming from defendant's alleged assault. *Id.*, § 7. As relief, plaintiff's complaint seeks recovery of compensatory damages of $100,000, and an additional award of punitive damages in a like sum. *Id.*

On March 25, 2010, defendant responded to plaintiff's complaint by moving for its dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 13.In his motion, defendant asserts that plaintiff's claims in the action are barred by virtue of his failure to exhaust available administrative remedies at the CNYPC before commencing suit. *Id.* Plaintiff has since responded to defendant's motion through submission of an affirmation and attached exhibit.[5] Dkt. No. 17.

Defendant's motion, which is now fully briefed and ripe for determination,[6] has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).*See also*Fed.R.Civ.P. 72(b).

## III. DISCUSSION

### A. Dismissal Motion Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny.*Ashcroft v. Iqbal*, 556 U.S. 662, ——, 129 S.Ct. 1937, 1949, 1731L.Ed.2d868A(2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929, ——, (2007)).Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2).*Id.* While modest in its requirement, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."*Ashcroft*, 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face.*Ruotolo v. City of New York*,

514 F.3d 184, 188 (2d Cir.2008) (citing *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974).

**\*3** In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1723, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir.2003), *cert. denied*,540 U.S. 823, 124 S.Ct. 153, 157 L.Ed.2d 44 (2003); *Burke v. Gregory*, 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b) (6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, " 'but whether the claimant is entitled to offer evidence to support the claims.' " *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F.Supp.2d 435, 441 (S.D.N.Y.2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995)) (citations and quotations omitted).

### B. Exhaustion of Remedies

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 84, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006); *Hargrove v. Riley*, No. CV–04–4587, 2007 WL 389003, at *5–6 (E.D.N.Y. Jan.31, 2007)."[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."*Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002) (citation omitted). Plaintiff's claims, which include denial of due process and excessive use of force, both qualify under the PLRA as the type of claims requiring exhaustion as a prerequisite to asserting them in the context of a federal civil rights action.[7] *Porter*, 534 U.S. at 532, 122 S.Ct. at 992;

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.    138

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 210 of 397
Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Roland v. Wenz, Not Reported in F.Supp.2d (2010)

2010 WL 2834828

*Davis v. Barrett*, 576 F.3d 129, 132 (2d Cir.2009) (quoting *Porter*, 534 U.S. at 532, 122 S.Ct. at 992).

In his motion, defendant points out that plaintiff's complaint asserts there is no grievance procedure at the Center and that he therefore did not pursue a grievance with regard to the claims now raised. Complaint (Dkt. No. 1) § 4. At this stage in the proceedings these are allegations that the court is ordinarily bound to accept as true. *Miller*, 321 F.3d at 300. Citing a recent decision from this district, defendant nonetheless asserts that the court should take judicial notice of the existence of a grievance procedure at the CNYPC and, based upon plaintiff's concession that he did not file a grievance in accordance with that procedure, should grant the desired dismissal.[8]

*4 Failure to exhaust is an affirmative defense which may or may not be asserted by a defendant. *Petty v. Goord*, No. 00 CIV 803, 2007 WL 724648, *4 (S.D.N.Y. Mar.5, 2007) (citing *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir.2004)) (other citations omitted). Accordingly, a prisoner is not obligated to plead facts plausibly suggesting that he exhausted his available administrative remedies to state a claim, *Wheeler v. Pataki*, 2009 WL 674152, at *10 (N.D.N.Y. Mar.11, 2009) (McAvoy, S.J. & Lowe, M.J.) (citations omitted). An inmate may, however, gratuitously address exhaustion in a complaint in a such a way as to destine his or her claims to certain dismissal; "[i]f a prisoner chooses to plead facts regarding exhaustion, and those facts plausibly suggest that he failed to exhaust available administrative remedies, then his complaint may be dismissed for failure to state a claim." *Id.*

Significantly, even if plaintiff failed to exhaust available administrative remedies before commencing suit, that failure might be excusable. In this circuit, district courts must engage in a three-part test to determine whether an inmate's failure to exhaust should be excused. *See Johnson v. Testiman*d, 380 F.3d 691 (2d Cir.2004); *Hemphill v. State of New York*, 380 F.3d 680 (2d Cir.2004); *Giano*, 380 F.3d 680; *Abney v. McGinnis*, 380 F.3d 663 (2d Cir.2004); *see also Macias v. Zenk*, 495 F.3d 37 (2007).[9] Obviously at this formative stage in the proceedings, plaintiff has not been afforded an opportunity to offer evidence which could potentially support one or more of the recognized exceptions. This circumstance counsels against dismissal of plaintiff's complaint under Rule 12(b)(6).

It should be noted, moreover, that plaintiff commenced this action utilizing a form civil rights complaint. In response to questions regarding whether there is a *prison* grievance procedure at the facility and whether he presented facts relating to the complaint to the grievance program, plaintiff checked "no" *See* Complaint (Dkt. No. 1). Plaintiff similarly responded "no" to the question, "did you complain to *prison* authorities about the facts alleged in your complaint?"(Emphasis added). In opposition to defendant's motion to dismiss, however, plaintiff submitted a document labeled "objections", which although not sworn is construed by the court as an affirmation, stating that both he and Prisoner Legal Services, on his behalf, wrote letters complaining of the incident to Dr. Donald Sawyer, who never responded. Dkt. No. 17 at p. 2 (unnumbered). Plaintiff also attaches what appears to be one page of a copy of an undated letter addressed to Donald Sawyer, Ph. D. notifying him of the assault. *Id.* at p. 4 (unnumbered).

While at first blush plaintiff's recent submission in opposition to defendant's motion to dismiss may seem to contradict the statements made in his complaint, viewing these allegations in a light most favorable to him, it is possible that plaintiff understood the questions in the complaint to be directed solely to a prison facility, as opposed to the CNYPC. Put another way, plaintiff may have thought that the questions applied to the prison facility in which he was housed when he filed the complaint and not the CNYPC.

*5 Where a court is considering a motion to dismiss the claims of a *pro se* litigant, it is bound to construe the pleadings liberally, particularly when the plaintiff asserts a civil rights violation. *Rodney v. Goord*, No. 00 Civ. 3724, 2003 WL 21108353, at * (S.D.N.Y. May 15, 2003) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir.2001)) (reading a supplemental affidavit that apparently contradicted the allegations in his complaint regarding exhaustion to "raise the strongest argument that they suggest, as befits a motion to dismiss opposed by a *pro se* plaintiff."). Notwithstanding the apparent inconsistency between the statements made in plaintiff's complaint and those in his recent submission, liberally construing these documents and affording plaintiff the benefit of every favorable inference, I conclude that plaintiff's claim that he exhausted administrative remedies should be fully probed before his complaint can be dismissed. *See Gayle v. Benware*, No. 08 Civ. 8017, 2009 WL 2223910, at * 5–6 (S.D.N.Y. Jul.27, 2009) (denying motion to dismiss based upon exhaustion where plaintiff conceded in his complaint that he had not filed a grievance but in response

Case 9:25-cv-00083-BKS-TWD   Document 29   Filed 01/20/26   Page 211 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Roland v. Wenz, Not Reported in F.Supp.2d (2010)
2010 WL 2834828

to defendant's motion alleged for the first time that he had attempted to file a grievance, but staff prevented him from doing so).

**IV. SUMMARY AND CONCLUSION**

Defendant's motion, when considered solely in the context of plaintiff's complaint and accepting as true each of the allegations contained within it, would likely be subject to denial since plaintiff has asserted that there is no grievance procedure in place at the CNYPC and as a result he did not file and pursue a grievance regarding the matters giving rise to his complaint. Defendant, however, has asked the court to rely upon an earlier judicial decision and find the existence of a grievance procedure at the Center. Plaintiff, for his part, has submitted materials in response to defendant's motion which suggest that a grievance may in fact have been lodged.

In light of these equivocal circumstances and the available grounds which plaintiff could potentially assert for excusing a failure to exhaust, in my view the court is not well-positioned at this juncture to conclude that a failure to exhaust defense under the PLRA is "readily apparent" or "unambiguously established in the record" sufficiently to grant defendant's motion. *Torrence v. Pesanti*, 239 F.Supp.2d 230, 231–32 (D.Conn.2003). Instead, I find that the more prudent course of action would be to permit the issue to be fully explored through discovery and allow the defendant, if deemed appropriate, to raise the issue of exhaustion by way

of a motion for summary judgment, when it can be addressed upon a more robust and fully developed record. [10]

Accordingly, it is hereby respectfully

RECOMMENDED that defendant's motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 13) be DENIED, without prejudice.

*6 NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk is respectfully requested to modify the official court records in this case to reflect the correct spelling of the defendant's name as Frank Wenz, and it is further

ORDERED THAT the clerk is also serve a copy of the Report and Recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 2834828

Footnotes

1   In plaintiff's complaint the defendant is identified as "Frank Wench". Defendant's moving papers, however, reflect that the correct spelling of the defendant's last name is "Wenz". The clerk will therefore respectfully be requested to adjust the official court records in this case to reflect the correct spelling of the defendant's name.
2   In his motion defendant also asserts that to the extent the plaintiff may be suing him for damages in his official capacity, such claims are subject to dismissal. Plaintiff's complaint, though perhaps modestly ambiguous in this regard, does not appear to suggest his intention to name Wenz as a defendant in his official capacity. Any such claim, of course, would be precluded under the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); see also *Daisernia v. State of New York*, 582 F.Supp. 792, 798–99 (N.D.N.Y.1984) (McCurn, J.).
3   In light of the present procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. See *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)); see also *Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1733, 1734, 12 L.Ed.2d 1030 (1964).
4   Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 212 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

---

Roland v. Wenz, Not Reported in F.Supp.2d (2010)

2010 WL 2834828

5    In his opposition papers plaintiff has requested that the court order the production of documents, photographs, and information regarding the incident which forms the basis for his complaint. Dkt. No. 17. Because issue has not yet been joined, nor has the court issued its standard Rule 16 order in the action, that request is premature.

6    Despite having been afforded the opportunity to submit reply papers, defendant has not done so, and the deadline for filing a reply has now passed.

7    Although the plaintiff was, at all relevant times, an inmate in the primary care and custody of the DOCS, the conduct giving rise to his claims occurred at the CNYPC, a facility operated by the OMH. Based upon that circumstance, plaintiff could potentially argue that his claims are not subject to the PLRA because they do not involve "prison life". While the court's research has not identified a case in this circuit squarely addressing the issue, it appears that even though confined to CNYPC at the time in question, plaintiff would still qualify as a prisoner subject to the requirements of the PLRA. See, e.g., Page v. Torrey, 201 F.3d 1136, 1140 (9th Cir.2000) ("[W]e hold that only individuals who, at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offense are 'prisoners' within the definition of 42 U.S.C. § 1997e...."); Kalinowski v. Bond, 358 F.3d 978 (7th Cir.) ("As used in this section, the term 'prisoner' means any person incarcerated or detained at any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, [or] probation ....") (quoting 28 U.S.C. § 1915(h)), cert. denied 542 U.S. 907, 124 S.Ct. 2843, 159 L.Ed.2d 273 (2004).

8    Judicial documents and official court records associated with those proceedings, as publically available documents, are properly considered by the court and entitled to judicial notice in connection with this lawsuit. See Federal Rules of Evidence 201 and 1005; see also, Wilson v. Limited Brands, Inc., 08 CV 3431, 2009 WL 1069165 at *1 n. 1 (S.D.N.Y. April 17, 2009). Defendant is not requesting that the court take judicial notice of any publicly filed document, but instead urges the court to take judicial notice of facts established in Brown v. Hogan, No. 9:07–CV–842, 2009 WL 3756595, at *4 (N.D.N.Y. Nov 6, 2009) (Hurd, D.J. & DiBianco, M.J.) ("[P]laintiff is factually incorrect in his claim that CNYPC does not have a policy in place to address institutional complaints."). Under the circumstances of this case, however, even if it were appropriate to take judicial notice of the fact that CNYPC had a complaint procedure in place at the time of the incident in question, and I am not convinced that it is, as will be seen that fact is no longer pivotal to this motion.

9    Under the prescribed protocol, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. Macias, 495 F.3d at 41; Hemphill, 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it or whether, through their own actions preventing the exhaustion of plaintiff's remedies, they should be estopped from asserting failure to exhaust as a defense. Macias, 495 F.3d at 41; Hemphill, 380 F.3d at 686. In the event the proffered defense survives these first two levels of scrutiny, the court lastly must examine whether special circumstances nonetheless exist and 'have been plausibly alleged' to justify the plaintiff's failure to comply with the applicable administrative procedural requirements. Macias, 495 F.3d at 41; Hemphill, 380 F.3d at 686.

10   In papers received by the court plaintiff has intimated a desire to add additional defendants in the case, including Dr. Donald Sawyer, the Executive Director at the Center. Such applications are governed by Rules 15(a) and 21 of the Federal Rules of Civil Procedure. Since more than twenty-one days have elapsed since the filing of defendant's Rule 12(b) motion, and the joinder of parties is sought, plaintiff will be required to seek and obtain court leave in order to join additional parties. Plaintiff is advised that when any such application is made, he must include a proposed amended complaint which is fully integrated—that is, which names all of the defendants being sued and contains all of the claims which he intends to pursue, and is intended to supersede and take the place of the original complaint. See N.D.N.Y.L.R. 7.1(a)(4). In the event such a motion is granted the clerk will be directed to issue supplemental summonses for the new parties, and the matter can then be forwarded to the United States Marshal for service upon the newly-added defendants.

---

End of Document                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 1295137

White v. Fischer, Not Reported in F.Supp.2d (2010)
2010 WL 624081

2010 WL 624081
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jason R. WHITE, Plaintiff,
v.
Brian FISCHER, Commissioner, Dept.
of Correctional Services; Theresa A.
Knapp–David, Director, Classification and
Movement; and R. Woods, Superintendent,
Upstate Correctional Facility, Defendants.

No. 9:09–CV–240.
|
Feb. 18, 2010.

**Attorneys and Law Firms**

Jason R. White, Elmira, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of
New York, Brian J. O'Donnell, Esq., Asst. Attorney General,
of Counsel, Albany, NY, for Defendants.

*DECISION and ORDER*

DAVID N. HURD, District Judge.

**\*1** Plaintiff, Jason R. White, commenced this civil rights
action in February 2009, pursuant to 42 U.S.C. § 1983.
By Report–Recommendation dated January 25, 2009, the
Honorable David E. Peebles, United States Magistrate Judge,
recommended that defendant's motion to dismiss (Dkt. No.
10) be granted, and that plaintiff's complaint in this action
be dismissed without leave to replead. No objections to the
Report–Recommendation have been filed.

Based upon a careful review of the entire file and the
recommendations of Magistrate Judge Peebles, the Report–
Recommendation is accepted and adopted in all respects.
*See* 28 U.S.C. 636(b)(1).

Accordingly, it is

ORDERED that

1. Defendant's motion to dismiss (Dkt. No. 10) is GRANTED;

2. Plaintiff's complaint in this action is DISMISSED without
leave to replead; and

3. The Clerk is directed to file judgment accordingly and close
the file.

IT IS SO ORDERED.

JASON R. WHITE,

Plaintiff,

-v.-

BRIAN FISCHER, THERESA A. KNAPP–DAVID, and R.
WOODS,

Defendants.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Jason R. White, a New York State prison inmate who
is proceeding *pro se* and *in forma pauperis*, has commenced
this action pursuant to 42 U.S.C. § 1983, alleging deprivation
of his civil rights. In his complaint, plaintiff asserts that
his transfer into special housing unit ("SHU") disciplinary
confinement at the Upstate Correctional Facility, to serve
what was originally intended to be a three-month disciplinary
sentence of less restrictive keeplock confinement imposed
while at another facility, represented a deprivation of a liberty
interest without the requisite procedural due process. As relief
for the violation, plaintiff's complaint seeks an award of
compensatory damages in the amount of $25,000.

In response to plaintiff's complaint, defendants have moved
seeking its dismissal for failure to state a cause of action
upon which relief may be granted. In their motion, defendants
argue that plaintiff's allegations do not demonstrate the
existence of a meritorious due process claim since, at best,
it implicates a failure of prison officials to comply with
governing regulations regarding transfers into an SHU unit,
a matter not of constitutional concern, noting further that
plaintiff has no constitutional right to be designated to
a particular correctional facility or to a desired security
classification. Defendants also seek dismissal of plaintiff's
claims against them based upon lack of personal involvement,

2016 WL 1295137

White v. Fischer, Not Reported in F.Supp.2d (2010)

2010 WL 624081

and additionally assert their entitlement to qualified immunity from suit as a basis for their dismissal motion.

For the reasons set forth below, I find that White's complaint fails to set forth a plausible due process violation and that defendant Fischer is also entitled to dismissal of the claims against him based upon the lack of allegations showing of his personal involvement in the conduct allegedly giving rise to plaintiff's claims. I further recommend a finding that, even if plaintiff were able to plead a cognizable due process cause of action, defendants Knapp–David and Woods nonetheless should be granted qualified immunity from suit in this instance.

**I. BACKGROUND** [1]

\*2 Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS").See generally Complaint (Dkt. No. 1). At the times relevant to his claims plaintiff was designated first to the Auburn Correctional Facility ("Auburn"), located in Auburn, New York, and later to the Upstate Correctional Facility ("Upstate"), located in Malone, New York. Id., § 6.

On March 28, 2007, while confined at Auburn, plaintiff was found guilty following a Tier I II disciplinary hearing of engaging in violent conduct and refusing a direct order, in violation of disciplinary rules 104.11 and 106.10, respectively.[2] See Plaintiff's Memorandum (Dkt. No. 1–1) Exh. A.[3] As a result of that determination plaintiff was sentenced to serve three months of keeplock confinement, with a corresponding loss of package, commissary, and telephone privileges. See id.

On April 11, 2007, while serving his keeplock sentence at Auburn, White was processed out of that facility and, following completion of an inter-prison transfer process which included a stop at another facility, was transferred into Upstate on or about April 13, 2007. Complaint (Dkt. No. 1) § 6. At Upstate, plaintiff was assigned to a two-person cell in the facility's SHU to serve the balance of his disciplinary confinement sentence.[4] Id.

On April 23, 2007 plaintiff filed a grievance with prison authorities, arguing that his transfer into the SHU at Upstate was not authorized by DOCS directives. Complaint (Dkt. No. 1) § 6 at p. 4B; Plaintiff's Memorandum (Dkt. No. 1–1) Exh. C. The grievance was denied by the facility's Inmate Grievance Review Committee ("IGRC"). Complaint (Dkt.

No. 1) § 6 at p. 4B; Plaintiff's Memorandum (Dkt. No. 1–1) Exh. D. Plaintiff appealed the denial to defendant Woods, the Superintendent at Upstate, who upheld the IGRC's unfavorable determination by decision dated May 15, 2007. Complaint (Dkt. No. 1) § 6 at p. 4B.Plaintiff's Memorandum (Dkt. No. 1–1) Exh. D. Plaintiff's further appeal of the matter to the DOCS Central Office Review Committee ("CORC") was likewise unsuccessful. Id. Exh. E.

Also on April 23, 2007, plaintiff sent a letter to the DOCS Commissioner Brian Fischer, complaining of the SHU designation. Plaintiff's Memorandum (Dkt. No. 1–1) Exh. F. That letter was referred by Commissioner Fischer to defendant Theresa A. Knapp–David, the DOCS Director of Classification and Movement. Complaint (Dkt. No. 1) § 6 at pp. 4B–4C.In response, defendant Knapp–David wrote to the plaintiff on May 7, 2007, advising that his SHU assignment was in accordance with established DOCS procedures. Plaintiff's Memorandum at (Dkt. No. 1.1) Exh. G.

**II. PROCEDURAL HISTORY**

Plaintiff commenced this action on February 27, 2009, and was thereafter granted leave to proceed in forma pauperis.Dkt. Nos. 1, 4. Named as defendants in plaintiff's complaint are Commissioner Fischer; Director Knapp–David; and Upstate Superintendent R. Woods. Complaint (Dkt. No. 1) § 3. Plaintiff's complaint asserts a single cause of action for deprivation of procedural due process. Id., § 7.

\*3 Following service, in lieu of answering plaintiff's complaint, defendants filed a motion to dismiss asserting a variety of grounds for the relief sought. Dkt. No. 10.In their motion defendants argue, inter alia, that plaintiff's complaint 1) does not implicate a cognizable due process violation, 2) plaintiff's complaint fails to establish their personal involvement in the deprivation alleged; and 3) in any event they are entitled to qualified immunity.[5] Plaintiff has since responded in opposition to defendants' motion, Dkt. No. 13, which is now fully briefed and ripe for determination, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).See also Fed.R.Civ.P. 72(b).

**III. DISCUSSION**

**A. Dismissal Motion Standard**

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 215 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

White v. Fischer, Not Reported in F.Supp.2d (2010)
2010 WL 624081

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny *Ashcroft v. Iqbal,* —— U.S. ——, ——, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555, 127 S.Ct. 1955, (2007)).Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2).*Id.* While modest in its requirement, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."*Ashcroft,* ——U.S. ——, 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face.*Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly,* 550 U.S. at 570 127 S.Ct. at 1974). When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007) (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers' ") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976) (internal quotations omitted)).

**B. Procedural Due Process**

*4  In their motion, defendants assert that because plaintiff's due process claim rests on alleged violations of DOCS regulations, his complaint in fact fails to assert a cognizable due process claim.

To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process arising out of a disciplinary hearing, a plaintiff must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient procedural safeguards. *See Tellier v. Fields,* 260 F.3d 69, 79–80 (2d Cir.2000) (citations omitted); *Hynes,* 143 F.3d at 658; *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996). Inmates' liberty interests may arise out of the Due Process Clause of the Fourteenth Amendment, or state statute or regulation. *Arce v. Walker,* 139 F.3d 329, 333 (2d Cir.1998) (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989)).

Recognizing that lawful imprisonment necessarily restricts the rights and privileges of inmates, the Supreme Court has narrowly circumscribed the scope of liberty interests arising out of the Due Process Clause to protect only the most basic liberty interests of prisoners. *Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869 (1983). Accordingly, the Due Process Clause does not guard against every change in the conditions of confinement having a substantial adverse impact on inmates, but only those conditions or restraints that "exceed[ ] the sentence in ... an unexpected manner."*Arce,* 139 F.3d at 333 (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995)).

In this instance plaintiff does not claim that he was denied procedural due process in connection with the disciplinary hearing that led to the imposition of a three-month period of keeplock confinement as a sanction. Instead, he argues that his due process rights were abridged after the sanction was imposed when, in violation of DOCS Directive No. 4933, [6] he was transferred from keeplock confinement at Auburn to an SHU cell at Upstate, and as a result required to endure a more restrictive confinement. Unfortunately for plaintiff, neither the Due Process Clause nor state statute or regulation give rise to a liberty interest in these circumstances.

Preliminarily, it is well recognized that an inmate has no constitutional right to be incarcerated at a particular correctional facility, "and transfers among facilities do not need to be proceeded by any particular due process procedure."*Halloway v. Goord,* No. 9:03–CV01524, 2007 WL 2789499, at * 5 (N.D.N.Y. Sept. 24, 2007) (Kahn, J. and Treece, J.) [7] (citing *Wilkinson v. Austin,* 545 U.S. 209, 221–22 (2005)) (other citation omitted); *see also, Johnson v. Rowley,* 569 F.3d 40, 43 (2d Cir.2009) (per curiam); *Davis v. Kelly,* 160 F.3d 917, 920 (2d Cir.1998). As a result, the constitution did not present any impediment to plaintiff's transfer to Upstate.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 216 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

White v. Fischer, Not Reported in F.Supp.2d (2010)

2010 WL 624081

*5 Additionally, it is equally well established, as defendants now argue, that state regulations, including DOCS Directives, do not ordinarily confer constitutional rights sufficient to give rise to a due process claim. *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999) (citing *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993)); *Cusamano v. Sobek,* 604 F.Supp.2d 416, 482 (N.D.N.Y.2009). A state can, however, by statute or regulation confer a liberty interest which cannot be abridged without due process. *Black v. Lansberg,* No. 9:06–CV–1243, 2009 WL 3181111, at *3 (Sept. 29, 2009) (Suddaby, J., adopting Report and Recommendation of Lowe, M.J.). Nonetheless, contrary to plaintiff's contention, DOCS Directive No. 4933 does not give rise to a cognizable liberty interest.

It should be noted that on at least four separate occasions, addressing the same issues raised by the plaintiff in this case, this court has held that an inmate's transfer from keeplock to SHU after being sentenced to serve time in keeplock does not implicate a cognizable liberty interest. *McEachin v. Goord,* No. 9:06–CV–1192, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J. and Treece, M.J.) (dismissing complaint alleging that plaintiff was unlawfully transferred from keeplock to SHU while serving disciplinary sentence); *Halloway,* 2007 WL 2789499 (granting summary judgment dismissing claim that plaintiff should have received hearing before transfer to Upstate after sentenced to keeplock at Elmira Correctional Facility); *Carlisle v. Goord,* No. 9:03–CV–296, 2007 WL 2769566, at *2 n. 1 (N.D.N.Y. Sept. 21, 2007) (Scullin, S.J., adopting Report and Recommendation of Lowe, M.J.) (granting summary judgment finding that "an inmate has no liberty interest in not having his sentence of keeplock confinement at one prison converted to a sentence of SHU confinement at another facility without receiving a hearing regarding the conversion."); and, *Chavis v. Kienert,* 9:03–CV–0039, 2005 WL 2452150, at *9–10 (N.D.N.Y. Sept. 30, 2005) (Scullin, C.J.) (finding that transfer from keeplock at Coxsackie Correctional Facility to SHU at Upstate did not implicate a liberty interest).*See also, Holmes v. Grant,* No. 03–Civ. 3426, 2006 WL 851753, at *18–19 (S.D.N.Y. mar. 31, 2006 (dismissing claim plaintiff's claim that disciplinary sentence was improperly converted from keeplock sentence to SHU). These decisions are premised upon the court's conclusion that a transfer from keeplock in one facility to SHU in another does not implicate a constitutionally protected liberty interest and that "New York has not created, by regulation or statute, any liberty interest in remaining in one particular prison[.]" noting that "the DOCS ... possesses sole discretion to determine 'where

a [state] inmate will be housed.' " *Halloway,* 2007 WL 2789499, at *5 (quoting *Grullan v. Reid,* No. 97 CIV. 7616, 1999 WL 436457, at *10 (S.D.N.Y. Jun. 24, 1999)) (other citations omitted). These cases are indistinguishable from the case presently before the court.

*6 Moreover, contrary to the interpretation offered by the plaintiff, the court has read section 301.6 of DOCS Directive No. 4933 as "explicitly permitt[ing] keeplock sentences to be served in SHU and subject to the same restrictions and amenities ...." *McEachin,* 2008 WL 1788440, at *4;*See also, Halloway,* 2007 WL 278499, at * 5 ("[N]ot only do New York State Regulations permit keeplock sentences to be served in SHU, but further contemplate that assignments to SHU will be subject to the same ... limitations.") and *Holmes,* 2006 WL 851753, at * 19 ("Section 301.6... relat[es] to keeplock admissions and authorizes placement of inmates in SHU 'at a medium or minimum security correctional facility or *Upstate Correctional Facility*... for confinement pursuant to disposition of a disciplinary (Tier II) or superintendent's (Tier II hearing.' ") (emphasis in original).

In view of the foregoing, it is clear that plaintiff's transfer from Auburn, where he was keeplocked, to SHU confinement at Upstate does not implicate a liberty interest arising out of either Due Process Clause, or state statute or regulation. According to plaintiff's complaint, he was sentenced to keeplock after a Tier III disciplinary hearing; he does not allege that he was denied due process in connection with that hearing. The Tier II I hearing that he was provided was all that was required by the constitution before he was sentenced to disciplinary confinement. *Holmes,* 2006 WL 851753, at *19. Plaintiff was entitled to no further procedure at the time of transfer to Upstate, and therefore cannot show that he was deprived of a protected liberty interest without due process of law. [8] *Id.* Accordingly, I recommend that plaintiff's complaint be dismissed for failure to state a cause of action.

**C. Personal Involvement**

In their motion, defendants also challenge the sufficiency of plaintiff's allegations regarding their personal involvement in the constitutional deprivations alleged. Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,*434 U.S. 1087, 98 S.Ct. 1282

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

White v. Fischer, Not Reported in F.Supp.2d (2010)
2010 WL 624081

(1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

Two of the three defendants, Brian Fischer and Robert Woods, appear to be named as defendants in their supervisory capacities, based solely upon their positions as the DOCS Commissioner and the Superintendent at Upstate, respectively. As supervisors, neither of those individuals can be liable for damages under section 1983 solely by virtue of their respective positions as supervisor; there is no *respondeat superior* liability under section 1983.*Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability. *Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim ... [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights."). Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), *rev'd on other grounds, sub nom., Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937.; *see also Richardson,* 347 F.3d at 435; *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986).

**1. Commissioner Fischer**

*7  Aside from allegations centering upon his role as the DOCS Commissioner, which are clearly insufficient in and of themselves to establish his liability, plaintiff's claims against defendant Fischer appear to revolve around the letter written by him to the Commissioner on or about April 23, 2007, complaining of his SHU confinement at Upstate. That letter, it appears from the limited materials now before the court, was referred to defendant Knapp-David for

response. It is well established that when the Commissioner receives a letter and forwards it on to another individual for investigation and a response, his or her involvement in the constitutional violation cannot be predicated solely upon those circumstances. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997); *Rivera v. Fischer,* No. 08-CV-6505L, 2009 WL 2981876, at *2 (W.D.N.Y. Sept. 18, 2009). I therefore recommend dismissal of plaintiff's claims against Commissioner Fischer on the basis of lack of his personal involvement.

**2. Superintendent Woods**

Plaintiff's claims against Superintendent Woods stand on slightly different footing. It is alleged that Superintendent Woods processed and affirmed the determination of the Upstate IGRC denying plaintiff's grievance regarding the relevant occurrences. His review of plaintiff's grievance arguably placed Superintendent Woods on notice of a constitutional violation, which was ongoing, at a time when he was potentially positioned to end the violation. On that basis I conclude that plaintiff has sufficiently alleged Superintendent Woods' personal involvement in the violation alleged to withstand defendants' dismissal motion. *See Charles v. New York State Dept. of Corr. Services,* No. 9:07-CV-1274, 2009 WL 890548, at *5–9 (N.D.N.Y. Mar. 21, 2009) (Hurd, J. and DiBianco, M.J.).

**3. Director Knapp-David**

Plaintiff's complaint alleges that in her position as the DOCS Director of Classification and Movement, defendant Knapp-David would have reviewed and approved his transfer from Auburn into Upstate. That allegation is buttressed by both her position with the DOCS and the fact that plaintiff's letter regarding the matter was referred to defendant Knapp-David for response explaining why the transfer was proper under DOCS regulations. On this basis, I conclude that plaintiff has stated a plausible claim against defendant Knapp-David and her personal involvement in the constitutional deprivations alleged.

**D. Qualified Immunity**

In their motion, defendants also assert entitlement to qualified immunity from suit. Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,*

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 218 of 397

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

White v. Fischer, Not Reported in F.Supp.2d (2010)

2010 WL 624081

457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982) (citations omitted)."In assessing an officer's eligibility for the shield, 'the appropriate question is the objective inquiry whether a reasonable officer could have believed that [his actions were] lawful, in light of clearly established law and the information the officer[ ] possessed."*Kelsey v. County of Schoharie, 567 F.3d 54, 61 (2d Cir.2009) (quoting Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692 (1999)). The law of qualified immunity seeks to strike a balance between the need to hold government officials accountable for irresponsible conduct and the need to protect them from "harassment, distraction, and liability when they perform their duties reasonably."*Pearson v. Callahan, 555 U.S. ——, 129 S.Ct. 808, 815 (2009).

**8** In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151 (2001), the Supreme Court "mandated a two-step sequence for resolving government official's qualified immunity claims."*Pearson,* 555 U.S. ——, 129 S.Ct. at 816. The first step required the court to consider whether, taken in the light most favorable to the party asserting immunity, the facts alleged show that the conduct at issue violated a constitutional right. [9] *Kelsey,* 567 F.3d at 61,"the second step being whether the right is clearly established",*Okin v. Village of Cornwall–On Hudson Police Dept.,* 577 F.3d 415, 430 n. 9 (citing *Saucier* ). [10] Expressly recognizing that the purpose of the qualified immunity doctrine is to ensure that insubstantial claims are resolved prior to discovery, the Supreme Court recently concluded in *Pearson* that because "[t]he judges of the district courts and courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case", those decision makers "should be permitted to exercise their sound discretion in deciding which of the ... prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." [11] *Pearson,* 555 U.S. ——, 129 S.Ct. at 818, 821. In other words, as recently emphasized by the Second Circuit, the courts "are no longer *required* to make a 'threshold inquiry' as to the violation of a constitutional right in a qualified immunity context, but we are free to do so."*Kelsey,* 567 F.3d at 61 (citing *Pearson,* 129 S.Ct. at 821) (emphasis in original).

For courts engaging in a qualified immunity analysis, "the question after *Pearson* is 'which of the two prongs ... should be addressed in light of the circumstances in the particular case at hand.' " *Okin,* 577 F.3d 430 n. 9 (quoting *Pearson* ). "The [*Saucier* two-step] inquiry is said to be appropriate in those cases where 'discussion of why the relevant facts

do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all . ' " *Kelsey,* 567 F.3d at 61 (quoting *Pearson,* 129 S.Ct. at 818).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."*Saucier,* 533 U.S. at 202, 121 S.Ct. at 2156 (citation omitted). When deciding whether a right was clearly established at the relevant time, a court should consider

> (1) whether the right in question was
> defined with 'reasonable specificity';
> (2) whether the decisional law of
> the Supreme Court and the [Second
> Circuit] support the existence of
> the right in question; and (3)
> whether under preexisting law a
> reasonable defendant official would
> have understood that his or her acts
> were unlawful.

**9** *Wright v. Smith,* 21 F.3d 496, 500 (2d Cir.1994) (quoting *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993)). The objective reasonableness test will be met, and qualified immunity enjoyed, where government officers of reasonable competence could disagree as to whether by his or her alleged conduct the defendant would be violating the plaintiff's rights. *Okin,* 577 F.3d at 433 (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092 (1986))."If, on the other hand, no officer of reasonable competence would conclude that the conduct in question is lawful, there is no immunity."*Okin,* 577 F.3d at 433 (citing *Lennon v. Miller,* 66 F.3d 416, 420–21 (2d Cir.1995)).

Applying the *Saucier* two-step inquiry here, I have already determined that plaintiff has failed to state a plausible constitutional violation. Moreover, even if plaintiff were able to distinguish the existing precedent in this district and allege a protected liberty interest that required that plaintiff be provided with additional due process before his transfer to Upstate, I conclude that any such right was far from a clearly established and that a reasonable person in the circumstances of defendant Woods and defendant Knapp-David would not have appreciated that the transfer of plaintiff into SHU confinement at Upstate represented a potential deprivation of plaintiff's procedural due process rights beyond those addressed by the hearing officer. Accordingly, as

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

White v. Fischer, Not Reported in F.Supp.2d (2010)

2010 WL 624081

an additional basis for dismissal, I recommend that both defendants Woods and Knapp-David be granted qualified immunity from suit.

**IV. SUMMARY AND RECOMMENDATION**

At the heart of plaintiff's complaint in this action is his contention that his due process rights and DOCS regulations were violated when he was transferred from keeplock confinement at Auburn into an SHU cell at Upstate. Since such a claim, it is well established in this district, is not constitutionally cognizable, White has therefore failed to state a claim upon which relief may be granted. While plaintiff has failed to establish personal involvement on the part of Commissioner Fischer in the alleged deprivation and he claims against him should be dismissed on this additional basis, plaintiff has sufficiently alleged personal involvement on the part of defendant Knapp-David and R. Woods. Nonetheless, I find that those two defendants are entitled to qualified immunity from suit, providing an additional basis for dismissal of plaintiff's claims against them. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 10) be GRANTED, and that plaintiff's complaint in this action be DISMISSED, without leave to replead; and it is further

ORDERED that pending a final determination on defendants' dismissal motion, discovery in this action be and hereby is STAYED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; Roldan v. Racette, 984 F.2d 85 (2d Cir.1993).

**\*10** It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 624081

Footnotes

1    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. See Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007)); see also Cooper v. Pate, 378 U.S. 546, 546, 84 S.Ct. 1733, 1734 (1964). I have also considered the exhibits attached to plaintiff's memorandum, which accompanied his complaint, to the extent that they are consistent with the allegations of his complaint. See Donhauser v. Goord, 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.).

2    The DOCS conducts three types of inmate disciplinary hearings. Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in punishments which include confinement for a period of time in the SHU. Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of 'good time' credits. See Hynes v. Squillace, 143 F.3d 653, 655 (2d Cir.), cert. denied,525 U.S. 907, 119 S.Ct. 246 (1998).

3    Plaintiff filed what he labeled as a "memorandum of law", with exhibits attached, in conjunction with his complaint. 'Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as his ... memorandum.'Rivera v. Selsky, No. 9:05–CV–0967, 2007 WL 956998, at *11 n. 2 (N.D.N.Y. Jan. 5, 2007) (quoting Gadson v. Goord, 96 Civ. 7544, 1997 WL 714878, at *11 n. 2 (S.D.N.Y. Nov. 17, 1997)).

4    Upstate is a maximum security prison comprised exclusively of SHU cells in which inmates are confined, generally though not always for disciplinary reasons, for twenty-three hours each day. See Samuels v. Selsky, No. 01 CIV. 8235, 2002 WL 31040370, at *4 n. 11 (S.D.N.Y. Sept. 12, 2002).

5    Defendant's also seek a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure staying discovery in this matter pending final determination of their dismissal motion. Discerning no basis to conclude that plaintiff would be unduly prejudiced by such a stay, that application will be granted.

6    Section 301.6(a) of DOCS Directive No. 4933 permits an inmate confined in a medium or minimum security facility, or at Upstate, to be admitted into an SHU for various reasons, which can include confinement pursuant to a Tier II or III hearing

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

---

White v. Fischer, Not Reported in F.Supp.2d (2010)

2010 WL 624081

disposition. Plaintiff asserts that because he was transferred from Auburn, a maximum security facility, into an SHU unit, that section does not apply. Interestingly, a prior version of DOCS Directive No. 4933 provided, in relevant part, that

[a]n inmate who is assigned to keeplock status and who is transferred to a maximum security facility shall not be assigned to the special housing unit at the receiving facility. Such inmate shall be assigned to keeplock within general population and shall have the same rights and responsibilities as other keeplock inmate in that facility.

*Lee v. Coughlin*, 26 F.Supp.2d 615, 628 (S.D.N.Y.1998) (quoting prior version of 7 NYCRR § 301.6(h)).

7    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Appended decisions deleted for Westlaw purposes.]

8    Plaintiff alleges a litany of differences between the conditions experienced while in keeplock at Auburn and those in SHU at Upstate asserting, for example, that with regard to visits, he was required to travel to and from them in handcuffs, had to remain in handcuffs if he needed to use the restroom, and was not permitted to take photographs, and also that he did not have the same opportunities for social interaction with other prisoners and had to sleep with a light on. Plaintiff's Memorandum (Dkt.1–1) at pp. 11–12.As a matter of law, these alleged conditions can hardly be characterized as "exceed[ing] his sentence in an unexpected manner" or as imposing an "atypical and substantial hardship upon the [plaintiff] in relation to the ordinary incidents of prison life". *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300. "[T] fact that 'life in one prison is much more disagreeable than another does not itself signify that a Fourteenth Amendment liberty interest is implicated....' *Holloway*, 2007 WL 2789499, at *7 (quoting *Meachum v. Fano*, 427 U.S. 215, 225 (1976). Moreover, even if a liberty interest were alleged, plaintiff was afforded all the process he was due, by way of a disciplinary proceeding, before the alleged deprivation. *Carlisle*, 2007 WL 2789566, at *3.

9    If no constitutional right would have been violated were the allegations established, no further inquiry regarding qualified immunity is necessary. *Kelsey*, 567 F.3d at 61 (quoting *Saucier* ).

10   In *Okin*, the Second Circuit clarified that the ' 'objectively reasonable' inquiry is part of the 'clearly established' inquiry", also noting that "once a court has found that the law was clearly established at the time of the challenged conduct and for the particular context in which it occurred, it is no defense for the [government] officer who violated the clearly established law to respond that he held an objectively reasonable belief that his conduct was lawful.' *Okin*, 577 F.3d at 433 n. 11 (citation omitted).

11   Indeed, because qualified immunity is "an immunity from suit rather than a mere defense to liability ...", *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985), the Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in the litigation." *Pearson*, —— U.S. ——, 129 S.Ct. at 815 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 524 (1991) (per curiam)).

End of Document    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

## All Citations

Not Reported in Fed. Supp., 2016 WL 1295137

---

End of Document    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1060307

2016 WL 1060307
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Damian TRAPANI, Plaintiff,

v.

Brian PULLEN, et al., Defendants.

9:14-CV-556
|
Signed March 14, 2016
|
Filed 03/15/2016

**Attorneys and Law Firms**

Damian Trapani, Schenectady, NY, pro se.

Helena Lynch, Mark G. Mitchell, New York State Attorney General, Albany, NY, for Defendants.

**DECISION and ORDER**

Thomas J. McAvoy, United States District Judge

**\*1** This matter was referred to the Hon. Thérèse Wiley Dancks, United States Magistrate Judge, for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Rule 72.3(d) of the Local Rules of the Northern District of New York. No objections to the February 13, 2016 Report-Recommendation have been raised. After examining the record, this Court has determined that the Report-Recommendation is not subject to attack for plain error or manifest injustice. Accordingly, this Court adopts the Report-Recommendation and Order for the reasons stated therein.

Accordingly, the Report and Recommendation of Magistrate Judge Wiley Dancks is hereby **ADOPTED**, and:

1. Defendants' Rule 41(b) motion to dismiss, dkt. # 23, is hereby **DENIED** as moot;

2. Defendants' 12(b)(6) motion to dismiss is hereby **GRANTED** in part and **DENIED** in part, as follows:

a. The motion is **GRANTED** without prejudice as to Plaintiff's claims for: (1) excessive force in violation of the Eighth Amended against Defendant Martuscello; and (2) retaliation in violation of the First Amendment against Defendants Pullen and McGlynn;

b. The motion is **GRANTED** with prejudice as to Plaintiff's: (1) RLUIPA claim against Defendants King, Syed, and Jane Doe #5; and (2) all claims seeking declaratory and injunctive relief; and

c. Denied in all other respects;

3. The Complaint is hereby **DISMISSED** against Defendants Martuscello, Pullen and McGylnn; and

4. Plaintiff may file an Amended Complaint that complies with the terms of Magistrate Judge Wiley Dancks Report-Recommendation within twenty-one (21) days of the date of this order. Failure to file an Amended Complaint will cause the Court to consider abandoned the claim s for which Plaintiff was given leave to re-plead.

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1060307

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2016 WL 1060307

---

**End of Document**                                              © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

2025 WL 1033894
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Leon PETERS, [1] Plaintiff,
v.
ULSTER COUNTY SHERIFFS DEPARTMENT/EMPLOYEES, et al., Defendants.

[1]    Plaintiffs Christopher Arrotta and Donovan Holliet, Jr. were terminated from this action. Dkt. No. 14. Since Plaintiff
       Leon Peters is the only remaining Plaintiff, the Court directs the caption be amended to reflect Leon Peters is the sole
       remaining Plaintiff.

9:22-cv-0638 (DNH/TWD)
|
Signed February 28, 2025

**Attorneys and Law Firms**

LEON PETERS, Plaintiff, pro se, 22-R-1965, Orleans Correctional Facility, 3531 Gaines Basin Road, Albion, NY 14411.

KIMBERLY H. LEE, ESQ., SOKOLOFF STERN LLP, Attorneys for Defendants, P.O. Box 509, 63 Washington Street, PO
Box 509, Poughkeepsie, NY 12602-0509.

**REPORT-RECOMMENDATION AND ORDER**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**I. INTRODUCTION**

 **\*1**  This matter has been referred for a report and recommendation by the Honorable David N. Hurd, Senior United States
District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Leon Peters commenced this action alleging
violations of his rights under the United States Constitution while he was confined at the Ulster County Jail. *See generally*, Dkt.
Nos. 4, 23. Currently before the Court is a motion to dismiss Plaintiff's amended complaint, filed by Defendants Ulster County
Jail and Ulster County Sheriff's Department. Dkt. No. 44.

**II. RELEVANT BACKGROUND**

  **A. Complaint**

Plaintiffs Christopher Arrotta, Leon Peters, and Donovan Holliet, Jr. commenced this action by filing a complaint, along with
applications to proceed *in forma pauperis* ("IFP"), with the U.S. District Court for the Southern District of New York on May
31, 2022. *See* Dkt. Nos. 1-7. On June 8, 2022, the Hon. Laura Taylor Swain, Chief United States District Judge, transferred
the action to this District. *See* Dkt. No. 8. By Order dated July 7, 2022, the Hon. Gary L. Sharpe, Senior United States District
Judge, denied the Plaintiffs' IFP applications as incomplete and ordered the Plaintiffs to either: (1) pay the Court's filing fee in
full; or (2) submit a completed, signed, and certified IFP application. Dkt. No. 10. Plaintiff Leon Peters (hereinafter, "Plaintiff")
subsequently filed a completed, signed, and certified IFP application. Dkt. No. 11.

By Order dated September 14, 2022, Judge Sharpe granted Plaintiff's IFP application and conducted a sufficiency review of
the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. *See* Dkt. No. 14 at 12. [2] The Court liberally construed the

complaint as containing First Amendment claims related to Plaintiff's religious freedoms pursuant to 42 U.S.C. § 1983 ("Section 1983"). *See id.* at 7.

2      Citations refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

More specifically, the Court first construed the complaint as alleging a violation of Plaintiff's rights under the Free Exercise Clause of the First Amendment, but determined:

> even assuming Peters' religious beliefs were "sincerely held," the complaint lacks any facts establishing that his beliefs were "substantially burdened." The complaint contains vague accusations that Peters' religious requests were denied without specific dates, times, and facts suggesting that any named defendant was personally involved in the decisions to deny Peters' requests. The allegations, without more, fail to plausibly suggest that defendants burdened Peters' right to freely practice his religion.

*Id.* at 9. The Court next explained "[u]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued," and accordingly, dismissed Plaintiff's "claims against the Ulster County Sheriffs Department/Employees and Ulster County Jail Administration/ Employees." *Id.* at 10 (internal quotations and citation omitted). However, in deference to Plaintiff's *pro se* status, the Court "construe[d] the claims against the Ulster County Sheriffs Department/Employees and Ulster County Jail Administration/ Employees as if they had been brought against Ulster County," and determined the complaint "lack[ed] any facts plausibly suggesting that Ulster County created or enforced a policy of unconstitutional acts or knew of and disregarded any unconstitutional acts perpetrated by individual defendants" such that municipal liability under *Monell* would be proper, and dismissed Plaintiff's claims against Ulster County. *Id.* at 10-11.

 **\*2** Finally, the Court noted while Plaintiff "identified Lieutenants John Does, Sergeants John Does, Corporals John/Jane Does, and Officers John/Jane Does as defendants in the list of parties," such parties were "not referenced anywhere in the body of the complaint or causes of actions," therefore, because Plaintiff had "not pleaded facts suggesting that the aforementioned defendants were personally involved in any conduct that violated [his] constitutional rights, the complaint fails to state a cognizable claim against them." *Id.* at 11. [3] Because Plaintiff's claims were dismissed without prejudice, Plaintiff was given thirty days to file an amended complaint. *Id.* at 12.

3      Additionally, Judge Sharpe determined, "[t]he Court need not decide whether Glatt Kosher Foods/Meat Mart and/or Trinity Foods Service were acting under color of state law within the meaning of 42 U.S.C. § 1983 because Peters fails to sufficiently allege a violation of his First Amendment rights." Dkt. No. 14 at 9, n.5.

### B. Amended Complaint

Plaintiff filed an amended complaint on January 3, 2023. *See generally*, Dkt. No. 23. Plaintiff's amended pleading reiterated his First Amendment claims and included a new cause of action pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-2000cc-5. *See id.* at 4-8.

By Order dated February 3, 2023, Judge Sharpe accepted the amended complaint for filing and conducted a sufficiency review of the pleading. *See generally*, Dkt. No. 24. The Court first determined the new factual allegations in Plaintiff's amended complaint did not cure the deficiencies with respect to his First Amendment claim, as Plaintiff's "general accusations against unidentified 'employees, officers, sergeants, and corporals' without dates, times, places, or references to a specific defendant"

were "too vague to provide any sort of notice of a claim against any particular defendant." *Id.* at 4 (citations omitted). Further, Plaintiff had not "pleaded facts suggesting that any named defendant was personally involved in any conduct that violated his constitutional rights" and, while the amened pleading contained "new allegations against C.O. Hunt and a 'Deacon/Chaplain,' ... these individuals are not identified as defendants in the caption or list of parties." *Id.* at 4-5. Accordingly, the Court dismissed Plaintiff's First Amendment claims. *See id.* at 5. Finally, the Court noted Plaintiff sought only monetary damages, and explained the "RLUIPA does not authorize claims for monetary damages," therefore, the Court dismissed Plaintiff's RLUIPA claims for failure to state a claim upon which relief may be granted. *See id.* at 5-6 (internal quotations and citation omitted).

Plaintiff appealed the dismissal of his amended complaint to the Second Circuit Court of Appeals. *See generally*, Dkt. Nos. 26-27. By Order dated July 27, 2023, the Second Circuit vacated in part and remanded the District Court's judgment dismissing Plaintiff's amended complaint. *See* Dkt. No. 28. [4]  The Court of Appeals found, with respect to Plaintiff's claims under the RLUIPA, "the district court did not address whether the Ulster County Jail employees, as county officials, should be treated as state officials for purposes of state sovereign immunity." *Id.* at 1 (citations omitted). Next, the Second Circuit concluded "the district court did not address whether Appellant sufficiently alleged personal involvement under 42 U.S.C. § 1983, or an official policy or custom under *Monell v. Department of Social Services*, ... in light of his assertion that he could identify specific defendants by photograph, and his identification of C.O. Hunt in the amended complaint." *Id.* at 2 (citations omitted). Additionally, "the district court did not consider whether Appellant asserted other causes of action, including, but not limited to, an Establishment Clause claim, an equal protection claim, and other free exercise claims, in addition to the free exercise claim it recognized." *Id.* (citations omitted). The Court of Appeals instructed "[o]n remand, the district court should consider all of these issues, as well as any others that arise, with the benefit of a response from Appellees." *Id.* (citations omitted).

[4]    The Court of Appeals first found Plaintiff's appeal of dismissal of his "claims against Glatt Kosher Foods/Meat Mart and Trinity Food Service lack[ed] an arguable basis either in law or in fact ...." Dkt. No. 28 at 1 (internal quotations and citations omitted).

**\*3**  In accordance with the Second Circuit's mandate, Judge Sharpe ordered this case be reopened for further proceedings and that a response is required with respect to Plaintiff's: "(1) First Amendment and RLUIPA claims against Ulster County Sheriff's Department/Employees, Ulster County Jail Administration/Employees, and Doe defendants; (2) Establishment Clause claims against Ulster County Sheriff's Department/Employees, Ulster County Jail Administration/Employees, and Doe defendants; and (3) equal protection claims against Ulster County Sheriff's Department/Employees, Ulster County Jail Administration/Employees, and Doe defendants[.]" Dkt. No. 30 at 2. Counsel subsequently appeared on behalf of "Ulster County Sheriff's Department" and "Ulster County Jail." *See* Dkt. Nos. 34-35. By Text Order dated February 21, 2024, this case was reassigned to Judge Hurd for all further proceedings. Dkt. No. 43.

### C. Motion to Dismiss

On March 1, 2024, counsel for the Ulster County Sheriff's Department and Ulster County Jail filed a motion to dismiss Plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See generally*, Dkt. No. 44. The Defendants argue dismissal of the amended complaint is warranted because: (1) the Ulster County Sheriff's Department and the Ulster County Jail are merely administrative agencies of the County, therefore, they are not legal entities which can be sued; (2) Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"); (3) RLUIPA does not authorize claims for monetary damages; (4) Plaintiff failed to plead the personal involvement of any defendant in the alleged constitutional deprivations; (5) Plaintiff fails to state a cognizable Free Exercise claim; (6) Plaintiff fails to sufficiently allege an Establishment Clause claim; (7) to the extent the amended complaint is construed as raising a claim against C.O. Hunt, he would be entitled to qualified immunity; and (8) Ulster County is immune from punitive damages. *See* Dkt. No. 44-6 at 10-18.

Plaintiff filed a response in opposition to the Defendants' motion to dismiss. *See generally*, Dkt. No. 48. Plaintiff also filed a motion to appoint counsel. *See generally*, Dkt. No. 49. The Defendants submitted a reply in further support of their motion. *See generally*, Dkt. No. 50.

2025 WL 1033894

## III. LEGAL STANDARD

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion tests the legal sufficiency of the complaint and whether it conforms to Rule 8(a)(2) of the Federal Rules of Civil Procedure. To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

> Determining whether a complaint states a plausible claim for relief ... requires the reviewing court to draw on its judicial experience and common sense ... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.

*Iqbal*, 556 U.S. at 679 (internal quotations and citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Id.* at 570. While Rule 8(a)(2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement' " does not suffice. *Id.* (citation omitted).

**\*4**  "In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*). In considering a Rule 12(b)(6) motion, "the court considers the complaint, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation and internal quotation marks omitted). Furthermore,

> [t]he mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the plaintiff's complaint.

*Robles v. Bleau*, No. 9:07-CV-0464, 2008 WL 4693153, at *6 and n.41 (N.D.N.Y. Oct. 22, 2008) (collecting cases); *see also*, *e.g.*, *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (where a *pro se* plaintiff is faced with a motion to dismiss, a court may consider materials outside of the complaint "to the extent they are consistent with the allegations in the complaint."), *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004).

## IV. ANALYSIS

Afforded the most liberal construction, Plaintiff's amended complaint alleges violations of his rights under the First Amendment's Free Exercise and Establishment Clauses, as well as the Fourteenth Amendment's Equal Protection Clause, by: the Ulster County Sheriff's Department; Ulster County Jail; Ulster County; Ulster County Sheriff's Department Lieutenant John Does, Sergeant John Does, Corporal John and Jane Does, and Officer John and Jane Does; as well as Ulster County Jail John and Jane Doe employees, pursuant to the RLUIPA and Section 1983. *See generally*, Dkt. No. 23; *see also, e.g.*, *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022) (court to liberally construe submissions by *pro se* litigants to raise the strongest arguments they suggest).

### A. RLUIPA Claims

The RLUIPA provides "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person" is (1) "in furtherance of a compelling governmental interest; and" (2) "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C.A. § 2000cc-1(a). However, it is well established that the RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities. *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014); *Washington v. Gonyea*, 731 F.3d 143, 145-46 (2d Cir. 2013) (citing *Sossamon v. Texas*, 563 U.S. 277, 280 (2011)); *see also, e.g.*, *Fox v. Lee*, No. 9:15-CV-0390 (TJM/CFH), 2015 WL 13949048, at *3 (N.D.N.Y. July 17, 2015).

**\*5** Furthermore, " '[i]n this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.' " *Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)). As a result, RLUIPA claims against an institution seeking injunctive or declaratory relief are subject to dismissal where the plaintiff is no longer housed at that institution. *See, e.g.*, *Trapani v. Pullen*, No. 9:14-CV-00556 (TJM/TWD), 2016 WL 1295137, at *12 (N.D.N.Y. Feb. 18, 2016) (recommending dismissal of the plaintiff's RLUIPA claims, without leave to amend, "because Plaintiff is no longer housed at Coxsackie, where the alleged violations occurred.") (citing *Salahuddin*, 467 F.3d at 272), *report and recommendation adopted*, 2016 WL 1060307 (N.D.N.Y. Mar. 15, 2016).

Here, Plaintiff's amended complaint seeks only monetary relief, *see* Dkt. No. 23 at 8, and he is no longer housed at the Ulster County Jail, where the alleged violations of his rights occurred, *see* Dkt. No. 40 (indicating, as of January 26, 2024, Plaintiff was housed at Orleans Correctional Facility). Therefore, the undersigned recommends dismissal of Plaintiff's claims under the RLUIPA. *See id.*; *see also, e.g.*, *Jones v. Smith*, No. 9:09-CV-1058 (GLS/ATB), 2015 WL 5750136, at *24 (N.D.N.Y. Sept. 30, 2015).

### B. Section 1983 Claims

As an initial matter, with respect to Plaintiff's claims against the individual defendants, "[i]t is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 1:04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)). Furthermore, "[d]ismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Bradshaw v. Annucci*, No. 9:23-CV-0602 (MAD/ML), 2023 WL 4744735, at *13 (N.D.N.Y. July 24, 2023) (citing *Cipriani v. Buffardi*, No. 9:06-CV-0889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007)) (additional citation omitted).

Next, with respect to the defendant entities, "[u]nder New York law, a county is a municipal corporation capable of bringing suit and being sued." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (citing N.Y. Gen. Mun. Law § 2). However, "departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (citations omitted); *see also, e.g.*, *Smith v. Oneida Cnty. Sheriff Dep't*, No. 6:24-CV-0687 (GTS/MJK), 2024 WL 3063725, at *2 (N.D.N.Y. June 20, 2024), *report and recommendation adopted sub nom.*, 2024 WL 4799461 (N.D.N.Y. Nov. 15, 2024). Therefore, county sheriff's departments and correctional facilities cannot be sued. *See, e.g.*, *Lawrence v. Shattick, et al.*, No. 8:24-CV-656 (MAD/DJS), 2025 WL 542587, at *5 (N.D.N.Y. Feb. 19, 2025) (explaining, "[b]ecause a sheriff's department does not exist separate and apart from the municipality and does not have its own legal identity, it cannot sue or be sued," and, "[f]or these same reasons, a county correctional facility cannot be sued under Section 1983" and dismissing the plaintiff's causes of action against the St. Lawrence County Correctional Facility and St. Lawrence County Sheriff's Department with prejudice) (internal quotations and citations omitted).

 **\*6**  Accordingly, the undersigned recommends the motion to dismiss by Defendants Ulster County Jail and Ulster County Sheriff's Department be granted and Plaintiff's claims against Ulster County Jail and Ulster County Sherriff's Department be dismissed with prejudice. In deference to Plaintiff's *pro se* status, however, the Court construes Plaintiff's constitutional claims to be alleged against *Ulster County.* Thus, the undersigned recommends that the County of Ulster be substituted in place of Defendants Ulster County Jail and Ulster County Sheriff's Department. It is further recommended that the Clerk of Court be directed to amend the caption of this action to replace the Ulster County Jail and the Ulster County Sheriff's Department with the County of Ulster. *See generally, Davis v. Erie Cnty. Sheriff Dep't*, No. 17-CV-955, 2019 WL 4926289, at *2 (W.D.N.Y. Oct. 7, 2019); *Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 408, 416 n.4 (S.D.N.Y. 2008).

A municipality such as Ulster County "is liable under section 1983 only if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)). "The policy or custom need not be memorialized in a specific rule or regulation," *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citations omitted), and "may be pronounced or tacit and reflected in either action or inaction." *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011). Municipal liability under *Monell* may be established by way of:

> (1) a policy formally adopted and endorsed by the municipality; (2) actions taken by policymaking officials that caused the particular deprivation alleged; (3) practices by subordinate officials that are not expressly authorized but are so widespread and consistent that policymakers must have been aware of them; or (4) a failure by policymakers to train or supervise that amounts to "deliberate indifference" to the rights of those who come into contact with the inadequately trained or supervised municipal employees.

*Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 729 (N.D.N.Y. 2020) (citing *Deferio v. City of Syracuse*, 770 F. App'x 587, 589 (2d Cir. 2019) (Summary Order)) (additional citation omitted). "Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of his constitutional rights." *Deferio*, 770 F. App'x at 590 (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).

### 1. Free Exercise Clause

The First Amendment states "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...." U.S. Const. amend. I. "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). " 'Balanced against the constitutional protections afforded prison inmates, including

the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system.' " *Id.* (quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). To state a claim under the Free Exercise Clause, a "prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274-75.

Plaintiff's first cause of action alleges he "was denied Hallal meat's and sweet's to fulfill my Islamic observance of Eid" and "was told by the countless employees of the Ulster County Jail that they do not Need to provide or do the wish to provide any allowance for the Muslim religion." Dkt. No. 23 at 4. Plaintiff's second cause of action states "Juma'ah ... is a sacred day for Muslim's and is to be hold as a congregational prayer ... not to be prayed separately as individuals" and alleges he "was wrongfully denied Juma'ah Services and was told that Ulster County Jail do not provide Juma'ah services by officers, sergeants, and corpurals." *Id.* Plaintiff's third cause of action alleges "[w]hile being detain at the Ulster County Jail from April 1, 2021 'to' August 30 2022," he was denied his Muslim "religious diet 'Hallal.' " *Id.* at 5. Plaintiff's fourth cause of action asserts "from April 1, 2021 'to' August 30 2022," he "was wrongfully denied a paid Muslim spiritual leader and was told by countless employees at the Ulster County Jail that there is only going to be Christian and Jewish spiritual leaders at there facility, there is no room nore is there going to be any room for a Muslim spiritual leader and to stop asking cause ain't nothing changing." *Id.* Plaintiff's sixth cause of action concerns a "chaplain cart," as "every week" the Plaintiff "would ask for something to read for my religion which is (Muslim) or why don't the Muslim's have a space on his cart that he bring to the pod's every week for religious reading and worshipping" and "was told that he will look into it but it's not his job ...." *Id.* at 7.

 **\*7** While each of these causes of action implicate Plaintiff's right to exercise his religious beliefs, the claims lack any allegation of personal involvement by any of the individual, *i.e.*, the "Doe" defendants. Because Plaintiff has not alleged any connection between the defendants and these injuries, these allegations fail to state a claim against any of the individual defendants. *See*, *e.g.*, *Austin*, 2008 WL 857528, at \*2.

Plaintiff's seventh cause of action states "while on observance of the Islamic Holy month known as Ramadan at Ulster County Jail, defendants allowed on numerous occassions me ... to be served food's for consumption that were unclean, impure, and contaminated with foreign object's," and, as a result:

> on April 6, 2022 I was force to fast without food because my breakfast meal came uncook and with three Big Ant's in it and was witness by two people C.O. Macdonald and Col Klepeis who was on f-pod when my ramadan meal was served and with no time to change it and not knowing what will come from the kitchen next I had to fast with nothing to eat[.]

Dkt. No. 23 at 7-8. Though this claim accuses "defendants" of wrongdoing, because Plaintiff fails to specify *which* individual defendant, if any, was personally involved in this alleged violation of his right to free exercise, the cause of action fails to state a claim against any individual defendant. *See Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017) ("Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim.") (citations omitted); *see also*, *e.g.*, *Williams v. Leach*, No. 5:24-CV-0721 (BKS/TWD), 2024 WL 3339881, at \*5 (N.D.N.Y. July 8, 2024), *report and recommendation adopted*, 2024 WL 4291332 (N.D.N.Y. Sept. 25, 2024).

Next, Plaintiff's fifth cause of action alleges "one or more correctional officer's violating my constitutional rights a[t] the Ulster County Jail." Dkt. No. 23 at 6. He states:

> on 4-29-2021 at approximately 3:45 AM the housing officer C.O. Hunt Violated my Constitutional first amendment right by infringing upon my religious practices by not only mishandling my Ramadan meals that are to be Sealed, Blessed and distributed by a Muslim, he also place said meal on the stairs, as well

as not changed his gloves before distributing the meals which is highly unsanitary and unhygienic. When I brought it to his attention and ask for a different and propper meal I was yelled at and denied by C.O. Hunt ... denying me my meal to begin my fast, forcing me to fast without food until the sun go's down, because it was the month of Ramadan. also on April 2, 2022, the first day of Ramadan I receive my meal (Ramadan breakfast) way after the sun rising up and way after I have to stop eating .... and on April 22, 2022 C.O. Hunt work f-pod the Ramadan meal arrived at 4:04 AM, I told C.O. Hunt that I do not eat the food the facility provide because it is not Hallal. I was ignored. I ask again to be let out my sell to prepare my meal for fast ... [but was not allowed out of his cell early enough, therefore,] I had to fast until the sun set with nothing to eat ....

*Id.* While, unlike the aforementioned causes of action, this claim identifies an individual involved in an alleged deprivation of Plaintiff's constitutional rights, "C.O. Hunt" is not named as a defendant, *see id.* at 2, therefore, this Court will not treat him as such. *See, e.g., Alaei v. State Univ. of New York at Albany*, No. 1:21-CV-00377 (BKS/TWD), 2022 WL 4094450, at *2 n.5 ("Stark is not named as a Defendant in this action and the Court does not treat him as such.") (N.D.N.Y. Sept. 7, 2022); *see also* Fed. R. Civ. P. 10.

**\*8** In deference to his *pro se* status, the undersigned recommends Plaintiff be afforded leave to amend his free exercise claims to cure these deficiencies with respect to the individuals allegedly involved.

Finally, while Plaintiff has not explicitly identified an Ulster County policy underlying the alleged violations of his right to exercise his religious beliefs, when afforded a more liberal construction, the amended complaint suggests a practice by Ulster County subordinates so widespread and consistent that policymakers must have been aware of it. Therefore, the undersigned recommends Plaintiff's *Monell* free exercise claim against Ulster County requires a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion by Ulster County. [5]

[5]    Generally, "[e]stablishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors [acting in furtherance of the municipality's] custom or policy." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). However, the Second Circuit has also recognized that "constitutional injuries may be found to exist ... in the absence of individual liability, [where] the injuries complained of are not solely attributable to the actions of named individual defendants." *Barrett v. Orange Cnty. Hum. Rts. Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999) ("[E]ven in situations where the acts or omissions of individual employees do not violate an individual's constitutional rights, 'the combined acts or omissions of several employees acting under a governmental policy or custom may violate' those rights.").

### 2. Establishment Clause

"The Establishment Clause guarantees at a minimum that the government may not 'coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a [state] religion or religious faith, or tends to do so.' " *Muhammad v. City of New York Dep't of Corr.*, 904 F. Supp. 161, 197 (S.D.N.Y. 1995) (quoting *Lee v. Weisman*, 505 U.S. 577, 587 (1992)) (additional quotations and citation omitted). "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). "However, in the prison setting, this test is tempered by an inmate's free exercise rights and legitimate penological interests." *Hamilton v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:18-CV-1312 (MAD/CFH), 2019 WL 2352981, at *14 (N.D.N.Y. June 4, 2019) (citing *Pugh v. Goord*, 571 F. Supp. 2d 477, 494 (S.D.N.Y. 2008)).

Plaintiff's fourth cause of action, regarding the lack of a "full time paid muslim spiritual leader at Ulster County Jail," alleges "establishing Christianity and Jew's as the state's religions at Ulster County Jail[.]" Dkt. No. 23 at 5. As an initial matter, this

allegation does not accuse any specific defendant(s) of wrongdoing, therefore, fails to state a claim. *See, e.g., Ying Li*, 246 F. Supp. 3d at 598. In any event, such a conclusory accusation of establishing a state religion does not amount to a cognizable Establishment Clause claim. [6]

[6]    As discussed above and below, to the extent Plaintiff seeks to recover for the defendants' alleged interference with his exercise of his Muslim beliefs, such conduct is properly assessed under the Free Exercise Clause, and, to the extent Plaintiff contends he, as a Muslim individual, was treated differently than similarly situated individuals possessing other religious beliefs, such allegations are properly assessed under the Fourteenth Amendment's Equal Protection Clause.

### 3. Equal Protection Clause

 **\*9**  The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. U.S. Const. amend. XIV, § 1. Essential to that protection is the guarantee that similarly-situated persons be treated equally. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). More specifically,

the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."

*Vega v. Artus*, 610 F. Supp. 2d 185, 209 (N.D.N.Y. 2009) (quoting *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005)) (additional quotations and citations omitted).

"To prove a violation of the Equal Protection Clause ... a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (citing *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995)). The plaintiff "also must show that the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not 'reasonably related to [any] legitimate penological interests.' " *Id.* (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

In his second cause of action, concerning the denial of Juma'ah services, Plaintiff alleges he "witness Jew's holding mass, Christians having the Sunday church in the Multipurpose room on the teir." Dkt. No. 23 at 4. In connection with his third cause of action, regarding the lack of Hallal diet meals, Plaintiff avers he "was told to Accept the State substituted Kosher," which "show's the states and Ulster County Jail appceptance and favouritism to other religion, with total disregard and Mistreatment for the Muslim religion and the Islamic community." *Id.* at 5. In connection with his fourth cause of action, concerning the lack of a Muslim spiritual leader at the Ulster County Jail, Plaintiff avers he was told "there is only going to be Christian and Jewish Spiritual leaders at there facility ...." *Id.* In his seventh cause of action, regarding the lack of Muslim reading materials, Plaintiff states he observed "a chaplain cart with Christian and Jewish Books, phamplet's, prayer beed's, Holy water, Ash, and when any of the Holiday's come around the cart would have the Season's Holiday Card's ect ....." *Id.* at 7.

As discussed above in connection with Plaintiff's Free Exercise claims, these causes of action contain no allegations of personal involvement by any of the individual "Doe" defendants. Accordingly, for the reasons previously discussed, these allegations necessarily fail to state a claim against any of the individual defendants.

However, Plaintiff's allegations that Muslim inmates were denied the ability to conduct and/or attend religious services, receive meals compliant with their religious diet, and access a spiritual leader and religious materials, while similarly situated inmates with other religious beliefs were afforded those same liberties, is sufficient to support a claim of discrimination in violation of the Equal Protection clause. *See, e.g., Scott v. Uhler*, No. 9:16-CV-0403 (TJM/CFH), 2018 WL 3130670, at \*5 (N.D.N.Y. May 24, 2018), *report and recommendation adopted*, 2018 WL 3130592 (N.D.N.Y. June 25, 2018). A liberal construction of the amended complaint suggests these resulted from a consistent and widespread practice sufficient to support Ulster County's liability under *Monell*. Therefore, the undersigned recommends Plaintiff's Equal Protection clause claim against Ulster County

2025 WL 1033894

requires a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion by the County.

## V. MOTION FOR COUNSEL

 **\*10** Finally, Plaintiff has filed a motion to appoint counsel. *See generally*, Dkt. No. 49. Plaintiff argues because he is confined in the Orleans C.F. "RRU," he "do[es] not have access to the law library on a daily basis," and seeks appointment of counsel to "help to better understand" the law and respond to the Defendants. *Id.* at 1.

"A party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) (citing *United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981), *cert. denied*, 456 U.S. 916 (1982)). Before evaluating a request for appointment of counsel, a party must first demonstrate that he is unable to obtain counsel through the private sector or public interest firms. *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 173-74 (2d Cir. 1989) (citing *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). Next, courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the Court in ruling upon such a motion.

As a threshold matter, the Court should ascertain whether the indigent's claims seem likely to be of substance. *See Leftridge*, 640 F.3d at 69. If the court finds the claims have substance, the court should then consider:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge*, 802 F.2d at 61-62). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge*, 802 F.2d at 61).

For purposes of Plaintiff's application, the Court will assume, without deciding, that the case may be of substance. As an initial matter, Plaintiff's motion fails to make the requisite showing that he has been unable to obtain counsel through the private sector or public interest firms. Furthermore, a review of the issues in dispute are not overly complex. This case is early in the litigation process, however, it appears, to date, Plaintiff has been able to effectively litigate this action. Additionally, while it is possible there will be conflicting evidence implicating the need for cross-examination at the time of the trial of this matter, as is the case in many actions brought by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez*, 899 F. Supp. at 974. The undersigned is unaware of any special reason why appointment of counsel *at this time* would be more likely to lead to a just determination of this litigation. Finally, it is highly probable that this Court will appoint trial counsel at the final pretrial conference if this case survives dispositive motions.

Accordingly, appointment of counsel at this time is not warranted. *See, e.g.*, *Israel v. City of Syracuse*, No. 5:21-CV-0915 (DNH/ML), 2021 WL 7161914, at \*9 (N.D.N.Y. Dec. 9, 2021), *report and recommendation adopted*, 2022 WL 18587 (N.D.N.Y. Jan. 3, 2022); *Lawrence*, 2025 WL 542587, at \*9 (denying the plaintiff's request to appoint counsel "particularly in light of the early stage of this action.") (citing *Gervasio v. Diaz*, No. 9:20-CV-0346 (TJM/DJS), 2020 WL 3496423, at \*2 (N.D.N.Y. June 29, 2020)).

## VI. CONCLUSION

2025 WL 1033894

**\*11**  After carefully reviewing the record, the parties' submissions, and the applicable law, and for the reasons stated herein, it is hereby

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 44) be **GRANTED** and that Defendants Ulster County Sheriff's Department and Ulster County Jail be terminated from this action; and it is further

**RECOMMENDED** that the County of Ulster be substituted in place of Defendants Ulster County Jail and Ulster County Sheriff's Department; and it is further

**RECOMMENDED** that the Court require an answer to Plaintiff's amended complaint, to the extent it asserts the following claims: (1) First Amendment Free Exercise claim against Ulster County; and (2) Fourteenth Amendment Equal Protection claim against Ulster County; and it is further

**RECOMMENDED** that Plaintiff be afforded leave to amend the operative pleading, to the extent he seeks to assert a First Amendment Free Exercise claim against any individual defendant, pursuant to 42 U.S.C. § 1983; and it is further

**RECOMMENDED** that Plaintiff's motion to appoint counsel (Dkt. No. 49) be **DENIED** without prejudice; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[7] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[7]     If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 1033894

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 863863

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Leon PETERS, Plaintiff,

v.

ULSTER COUNTY SHERIFF'S DEPARTMENT/EMPLOYEES, et al., Defendants.

9:22-CV-638

|

Signed March 19, 2025

**Attorneys and Law Firms**

LEON PETERS, Plaintiff, Pro Se, 22-R-1965, Orleans Correctional Facility, 3531 Gaines Basin Road, Albion, New York.

KIMBERLY H. LEE, ESQ., SOKOLOFF STERN LLP, P.O. Box 509, 63 Washington Street, Poughkeepsie, NY 12602-0509, Albany, New York 12224, Attorney for Defendants.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

*\*1* On May 31, 2022, plaintiff Leon Peters [1] ("plaintiff"), acting *pro se*, commenced an against the Ulster County Sheriff's Department, the Ulster County Jail, Glatt Kosher Foods, and Trinity Foods Service (collectively, "defendants"), pursuant to 42 U.S.C. § 1983 ("Section 1983"), for violating plaintiff's rights under the Free Exercise Clause of the First Amendment. Dkt. No. 1. That same day, plaintiff filed an application to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 3. Plaintiff's IFP application was denied as incomplete. Dkt. No. 10. Plaintiff subsequently filed a completed, signed, and certified IFP application. Dkt. No. 11. On September 14, 2022, United States Senior District Court Judge Gary L. Sharpe granted plaintiff's IFP application and gave plaintiff leave to file an amended complaint. Dkt. No. 14.

[1] Both Christoper Arotta and Donovan Holliet, Jr. were also named plaintiffs in this original complaint but have since been terminated from this action leaving Leon Peters as the sole remaining plaintiff. Dkt. No. 14.

Upon review, Judge Sharpe liberally construed plaintiff's complaint to assert Section 1983 claims under the Free Exercise Clause of the First Amendment. Dkt. No. 14 at 7. However, Judge Sharpe ultimately concluded that plaintiff failed to plausibly allege that his religious beliefs had been "substantially burdened." *Id.* at 9. Judge Sharpe also liberally construed plaintiff's complaint to assert *Monell* claims for denial of religious benefits in violation of the Free Exercise Clause of the First Amendment against the County of Ulster. [2] *Id.* at 8–11. Nevertheless, because plaintiff failed to plausibly allege the County of Ulster either "created or enforced a policy of unconstitutional acts or knew of and disregarded any unconstitutional acts perpetrated by individual defendants," his *Monell* claims were dismissed. Dkt. No. 14 at 10. All other claims were dismissed without prejudice. *See generally id.*

[2] Judge Sharpe held that "under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and, therefore, cannot sue or be sued." Dkt. No. 14 at 10. Nevertheless, in deference to plaintiff's *pro se* status, the Court construed claims against the Ulster County Sheriff's Department and Ulster County Jail Administration as if they had been brought against the County of Ulster.

2025 WL 863863

On January 3, 2023, plaintiff filed an amended complaint. Dkt. No. 23. This amended pleading reiterated plaintiff's First Amendment claims and added a new cause of action under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc–2000cc-5. On February 3, 2023, Judge Sharpe conducted a sufficiency review of the amended complaint. Dkt. No. 24. Upon review of the amended complaint, Judge Sharpe concluded that plaintiff failed to cure the deficiencies with respect to his First Amendment claim and dismissed the claim. *Id.* at 4–5. Judge Sharpe also dismissed plaintiff's RLUIPA claims seeking only monetary damages because RLUIPA does not allow for money damages. *Id.* at 5–6.

**\*2** Plaintiff appealed the dismissal of his amended complaint to the Court of Appeals for the Second Circuit. Dkt. Nos. 26–27. On July 27, 2023, the Second Circuit vacated in part and remanded plaintiff's complaint.[3] Dkt. No. 28. On February 21, 2024, this case was reassigned to United States District Court Judge David N. Hurd for all further proceedings. Dkt. No. 43.

[3] The Second Circuit found that the District Court: (1) failed to address whether Ulster County Jail employees should be treated as state officials for the purpose of sovereign immunity; (2) did not address whether appellant sufficiently alleged either personal involvement under Section 1983 or an official policy or custom under *Monell v. Dep't of Social Services*; and (3) failed to consider whether appellant asserted other causes of action, *e.g.*, an Establishment Clause claim, and equal protection claims, or any other forms of free exercise claims. Dkt. No. 28 at 1–2.

On March 1, 2024, defendants moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).[4] Dkt. No. 44. Plaintiff opposed. Dkt. No. 48.

[4] In support of their motion, defendants argue that: (1) named defendants Ulster County Sheriff's Department and Ulster County Jail are merely administrative agencies of the County of Ulster, *i.e.*, they cannot be sued; (2) that Plaintiff failed to exhaust administrative remedies as is required by the Prison Litigation Reform Act ("PLRA"); (3) RLUIPA does not authorize claims for money damages; (4) Plaintiff failed to plead the personal involvement of any defendant with respect to the alleged constitutional deprivations; (5) plaintiff fails to plead a cognizable Free Exercise claim; (6) plaintiff did not adequately allege an Establishment Clause claim; (7) to the extend the complaint is construed as raising a claim against Corrections Officer Hunt, he is entitled to qualified immunity; and (8) County of Ulster is immune from punitive damages. Dkt. No. 44-6 at 10–18.

After reviewing both the motion and opposition, U.S. Magistrate Judge Thérèse Wiley Dancks advised by Report & Recommendation ("R&R") that: (1) defendants' motion should be granted; (2) defendants Ulster County Sheriff's Department and Ulster County Jail be terminated from this action; (3) the County of Ulster be substituted in place of the two terminated defendants; (4) the Court require an answer to plaintiff's amended complaint[5]; and (5) plaintiff be afforded leave to amend the operative pleading to the extent he seeks to assert a First Amendment Free Exercise claim against any individual defendant pursuant to Section 1983. Dkt. No. 58. Judge Dancks also recommended that plaintiff's motion to appoint counsel be denied.[6] *Id.*

[5] But only to the extent that the Amended Complaint asserts either a First Amendment Free Exercise claim or a Fourteenth Amendment Equal Protection claim against the County of Ulster.

[6] Judge Dancks noted that plaintiff's motion failed to show he was unable to obtain counsel through the private sector or public interest firms. Dkt. No. 58 at 20. Furthermore, though Judge Dancks indicated that plaintiff's case *may* be of substance, this matter remains in the early stages of the litigation process and that plaintiff appears able to effectively litigate this action at this early stage. Dkt. No. 58 at 20–21.

Plaintiff has not lodged objections and the time period in which to do so has expired. Dkt. No. 58.

**\*3** Upon review for clear error, Judge Dancks's R&R will be adopted in all respects. *See* FED. R. CIV. P. 72(b).

Therefore, it is

2025 WL 863863

ORDERED that

1. The Report & Recommendation (Dkt. No. 58) is ACCEPTED and ADOPTED in all respects;

2. Defendants' motion to dismiss (Dkt. No. 44) is GRANTED as to defendants Ulster County Sheriff's Department and Ulster County Jail and the parties shall be terminated from this action;

3. The County of Ulster shall be substituted in place of defendants Ulster County Jail and Ulster County Sheriff's Department;

4. Plaintiff is directed to serve a copy of the summons and amended complaint upon defendant County of Ulster;

5. Defendant shall file an answer to the amended complaint to plaintiff's amended complaint to the extent that it asserts the following claims: (1) a First Amendment Free Exercise claim against defendant County of Ulster; and (2) a Fourteenth Amendment Equal Protection claim against defendant County of Ulster;

5. Plaintiff shall be afforded thirty (30) days to amend the operative pleading insofar as plaintiff seeks to assert a First Amendment Free Exercise claim against any individual defendant(s), pursuant to Section 1983; and

6. Plaintiff's motion to appoint counsel (Dkt. No. 49) is DENIED without prejudice.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2025 WL 863863

End of Document                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag
Distinguished by Sanchez v. Graham, N.D.N.Y., September 12, 2016

2015 WL 5750136
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Michael JONES, Plaintiff,
v.
Joseph SMITH et al., Defendants.

No. 9:09–cv–1058 (GLS/ATB).
|
Signed Sept. 30, 2015.

**Attorneys and Law Firms**

Michael Jones, Ossining, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney General, Cathy Y. Sheehan, Assistant Attorney General, of Counsel, Albany, NY, for the Defendants.

*MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, District Judge.

### I. *Introduction*

**\*1** Plaintiff *pro se* Michael Jones alleges violations of the First, Eighth, and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983 against numerous employees of New York State Department of Corrections and Community Supervision (DOCCS) at Shawangunk Correctional Facility and Eastern Correctional Facility in their official and individual capacities. (Compl., Dkt. No. 1.) Jones also alleges a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA). [1] (*Id.* at 5.) Pending before the court are Jones' objections to the R & R and an appeal from the denial of his motion to amend. [2] (Dkt. No. 135.) For the reasons that follow, the R & R is adopted in its entirety and the denial of Jones' motion to amend his complaint is affirmed.

[1] *See* 42 U.S.C. §§ 2000cc–2000cc–5.

[2] Although Jones does not identify his arguments directed to the denial of his motion as an appeal of a non-dispositive order, (Dkt. No. 134 at 2–3), or fully comply with the Local Rules, *see* N.D.N .Y. L.R. 72.1(b), because Jones proceeds *pro se* the court liberally construes these arguments as an appeal subject to review under Rule 72(a) of the Federal Rules of Civil Procedure.

### II. *Background*

While incarcerated at Schawagunk, Jones converted to Judaism. (Dkt. No. 131, Attach. 3 at 87.) Since Jones' conversion, he allegedly received cold kosher meals three times per day, seven days per week. (*Id.,* Attach. 2 at 29; Compl. ¶ 7–m.) Jones alleged he had high blood pressure, (Compl.¶ 7–e), and, in 2009, requested low sodium kosher meals, (Dkt. No. 131, Attach. 2 at 28.). Jones also requested two hot meals per day. (*Id.*) Jones' requests were denied. (*Id.* at 29–30.) As a result, Jones allegedly changed his diet to non-kosher, low sodium meals. (Compl.¶ 7–l.)

On May 13, 2009, Jones was transferred to Eastern and escorted into his assigned double cell. (Defs.' Statement of Material Facts (SMF) ¶ 3, Dkt. No. 124, Attach. 2.) Jones allegedly informed the escorting officer that his assignment to a double cell and top bunk would exacerbate injury to his back and knees. (Compl.¶ 8–j.) In response, escorting officers allegedly issued a disciplinary ticket and escorted Jones to the special housing unit (SHU). (*Id.* ¶ 8–k.)

Jones' allegations arise from conduct during his incarceration at Shawangunk and Eastern between 2006 and 2009. (Compl. at 6–22.) After the close of discovery, defendants moved for partial summary judgment. (Dkt.Nos.124, 125.) Jones opposed and cross-moved to amend his complaint to join three parties. (Dkt. No. 131.)

In an Order and Report–Recommendation (R & R) filed May 20, 2015, Magistrate Judge Andrew T. Baxter recommended to grant defendants' partial motion for summary judgment and to dismiss Jones' First Amendment and RLUIPA causes of action *sua sponte.* (Dkt. No. 134 at 2.) Judge Baxter also denied Jones' motion to amend his complaint. (*Id.* at 49–50.)

### III. *Standard of Review*

#### A. *Objections to the R & R*

Before entering final judgment, this court routinely reviews all report and recommendation orders in cases it has referred to a magistrate judge. If a party has objected to specific elements of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo. See Almonte v. N.Y. State Div. of Parole,* No. Civ. 904 CV 484, 2006 WL 149049, at *3, *5 (N.D.N.Y. Jan. 18, 2006). In those cases where no party has filed an objection, or only a vague or general objection has been filed, this court reviews the findings and recommendations of the magistrate judge for clear error. *See id.*

#### B. *Appeal of a Magistrate Order*

**\*2** When reviewing an appeal from a pretrial non-dispositive motion decided by a magistrate judge, the court will affirm the order unless it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). Courts have generally held that motions to amend a complaint are non-dispositive. *See Rubin v. Valicenti Advisory Servs., Inc.,* 471 F.Supp.2d 329, 333 (W.D.N.Y.2007). Under a clearly erroneous standard, a district court can reverse a magistrate judge's order only if the court " 'is left with the definite and firm conviction that a mistake has been committed.' " *Gualandi v. Adams,* 385 F.3d 236, 240 (2d Cir.2004) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)). Under a contrary to law standard, a district court can reverse a magistrate judge's order only if the order fails to apply the relevant law. *See Olais–Castro v. United States,* 416 F.2d 1155, 1158 n. 8 (9th Cir.1969) ("The term 'contrary to law' means contrary to any existing law." (citing *Callahan v. United States,* 285 U.S. 515, 517 (1932)). "[M]agistrate judges are afforded broad discretion in resolving non-dispositive disputes and reversal is appropriate only if their discretion is abused." *Am. Stock Exch., LLC v. Mopex, Inc.,* 215 F.R.D. 87, 90 (S.D.N.Y.2002).

### IV. *Discussion*

#### A. *Objections to the R & R*

Jones objects to Judge Baxter's failure to address his claim that the denial of his request for hot, low sodium kosher meals violates the Eighth Amendment. (Dkt. No. 135 at 3.) Judge Baxter generically addressed Jones' claim in a footnote and concluded that

2015 WL 5750136

Jones did not allege any of the necessary elements to state a violation of the Eighth Amendment. (Dkt. No. 134 at 39 n. 15.) Construing Jones' argument liberally, the court treats his objection as invoking *de novo* review. Ultimately, while the court recognizes that the procedural posture is summary judgment, it agrees with Judge Baxter that the complaint is devoid of factual allegations to support an Eighth Amendment violation.

To establish an Eighth Amendment claim involving prison conditions, a plaintiff must demonstrate that: (1) the alleged deprivation is sufficiently serious and (2) prison officials acted with deliberate indifference to the inmate's health and safety. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The Eighth Amendment requires prisons to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it," and "under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983) (internal quotation marks and citations omitted). Here, however, Jones fails to sufficiently allege he was deprived of any meals or that his food was contaminated. *See Curtis v. Fischer,* No. 9:12–CV–1140, 2014 WL 5769410, at *7 (N.D.N.Y. Aug. 11, 2014) (prisoner failed to state a claim under the Eighth Amendment when denied kosher low sodium, high fiber diet but offered a non-kosher medically prescribed alternative), *report and recommendation rejected on other grounds* 2014 WL 5769656 (N.D.N.Y. Nov. 5, 2014); *Phelan v. Hersh,* No. 9:10–CV–0011, 2011 WL 6031940, at *12 (N.D.N.Y. Sept. 13, 2011) ("There is no constitutional right to have a hot meal every day, but only that inmates be provided nutritionally adequate food prepared under safe conditions." (citation omitted)), *report and recommendation adopted,* 2011 WL 6031071 (N.D.N.Y. Dec. 5, 2011); *cf. Robles,* 725 F.2d at 16 (holding that inmates' allegations that corrections officers contaminated inmate meals with glass, human waste, and rocks were sufficient to state an Eighth Amendment claim). Accordingly, the court agrees with Judge Baxter that Jones' claim must fail.

**\*3** Jones' remaining objections are general, triggering clear error review. Upon reviewing the R & R for clear error and finding none, the court adopts it in its entirety.

### B. *Appeal*

As noted above, the court construes Jones' arguments directed to the denial of his motion to amend his complaint as an appeal of a non-dispositive order. *See* Fed.R.Civ.P. 72(a). Jones contends that he should be permitted to amend his complaint to add additional parties because defendants: (1) did not contest that a proposed party violated his constitutional rights and (2) did not oppose joinder. (Dkt. No. 135 at 3.) Jones proposed to join Robert Schattinger and Elizabeth Culkin, who allegedly created DOCCS' dietary menu, and "Sgt. Todd" to replace defendant "Jane Doe," who allegedly ordered Jones to SHU in May 2009 and took his knee braces. (Dkt. No. 131, Attach. 1 at 16–17.)

Judge Baxter held the proposed amendment would be futile because it would not survive summary judgment. (Dkt. No. 134 at 49.) Judge Baxter reasoned that Jones did not allege the personal involvement of Schattinger and Culkin and, assuming personal involvement, Jones' First Amendment claim against them arising from the denial of hot, low sodium kosher meals would fail. (*Id.*) Additionally, Judge Baxter held that the addition of Sgt. Todd would be futile because Jones had no cognizable Eighth Amendment claim against him. (*Id.*)

Because a scheduling order had been entered, the standard to evaluate leave to amend the pleadings is Rule 16(b) of the Federal Rules of Civil Procedure rather than Rule 15(a). *Grochowski v. Phoenix Constr.,* 318 F.3d 80, 86 (2d Cir.2003) ("Where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause.") (internal quotation marks and citations omitted)); *see also Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 339–40 (2d Cir.2000). Rule 16(b)(4) of the Federal Rules of Civil Procedure provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed R. Civ P. 16(b)(4). "To satisfy the good cause standard the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Enzymotec Ltd. v. NBTY, Inc.,* 754 F.Supp.2d 527, 536 (E.D.N.Y.2010) (internal quotation marks and citations omitted).

Here, Jones fails to demonstrate good cause. He did not seek leave to amend his complaint until his opposition to defendants' summary judgment motion, (Dkt. No. 131, Attach. 1 at 16–17), long after the deadline to file dispositive motions, (Dkt. No. 121).[3] Jones never sought permission to extend the time to amend his pleadings. Although Jones learned of Sgt. Todd's identity during discovery, (Dkt. No. 131, Attach. 3 at 15), he failed to seek leave to amend at that point. With respect to the other proposed parties, Jones fails to demonstrate that he diligently identified them. Although Judge Baxter should have employed the Rule 16 standard, this error is harmless because the court would have denied leave to amend under either Rule 16 or Rule 15. *See Bailey v. Christian Broad. Network,* 483 F. App'x 808, 810 (4th Cir.2012) (holding that the magistrate's legal error was harmless because the proper standard would have rendered the same result). Accordingly, the denial of Jones' motion to amend his complaint is affirmed.

3      The scheduling order did not have a deadline to amend the pleadings but it was necessarily before the deadline to file dispositive motions. (Dkt. No. 39, 121.)

### V. *Conclusion*

**\*4  WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Andrew T. Baxter's May 20, 2015 Order and Report–Recommendation (Dkt. No. 134) is **ADOPTED** in its entirety; and it is further

**ORDERED** that defendants' motion for partial summary judgment (Dkt. No. 124.) is **GRANTED** on the grounds raised therein and Jones' following claims are dismissed:

  1. All claims for injunctive relief dismissed as moot;

  2. All claims against defendants in their official capacities dismissed with prejudice;

  3. All claims against defendant Fischer dismissed due to lack of personal involvement;

  4. Eighth Amendment claims against defendants Smith, Griffin, Khramova, Schoonmaker, Gusman, and Brown;

  5. Retaliation claim against defendant Maly, but only to the extent that it was predicated on an allegation of verbal harassment, dismissed with prejudice;

  6. Due process and right to privacy claims against defendant Pingotti; and it is further

**ORDERED** that all RLUIPA and First Amendment Religion claims against defendants Rapp and Horowitz are **DISMISSED** *sua sponte,* with prejudice; and it is further

**ORDERED** that Judge Baxter's denial of Jones' motion to amend is **AFFIRMED.**

**IT IS SO ORDERED.**

### ORDER and REPORT–RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge.

2015 WL 5750136

Presently before the court is the defendants' motion for partial summary judgment pursuant to Fed.R.Civ.P. 56. (Dkt. No. 124, 125). This matter was referred for Report and Recommendation on October 16, 2014 by Chief U.S. District Judge Gary L. Sharpe, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y (L.R.) 72.3(c).

In his civil rights complaint, plaintiff alleged that defendants violated his rights to proper medical care, religious freedom, equal protection, due process, privacy, and his right to be free from cruel and unusual punishment. (Dkt. No. 1). The allegations stem from his imprisonment, by the New York State Department of Corrections and Community Supervision ("DOCCS"), at the Shawangunk Correctional Facility ("Shawangunk") and the Eastern Correctional Facility ("Eastern"). Plaintiff is still incarcerated, but is no longer in the custody of DOCCS.[1]

[1]    Plaintiff notified the court, by letter dated August 8, 2014 (Dkt. No. 122), that he now is confined at the George Motchan Detention Center, a facility of the New York City Department of Corrections. *See* http://www.nyc.gov/html/doc/html/about/locate-facilities.shtml

Following the completion of discovery, defendants filed a partial motion for summary judgment on October 15, 2014 (Dkt.Nos.124, 125). Plaintiff has opposed the motion for summary judgment; he has also moved to amend his complaint to add three additional parties. (Dkt. No. 131). Defendants did not reply in further support of their motion or respond to the motion to amend.

For the reasons set forth below, this court recommends that defendants' motion for partial summary judgment be granted on the grounds raised therein, and also recommends that the District Court dismiss plaintiff's First Amendment/RLUIPA cause of action *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B). Furthermore, this court denies plaintiff's motion to amend his complaint by adding additional parties.

 **\*5**  Since the present motion only sought summary judgment in regards to certain causes of action and certain defendants, this court's recommendation does not resolve all issues in this litigation. Specifically, the following claims survive, solely against defendants in their individual capacities: claims for monetary damages against Dr. Maryann Genovese, Catherine Wells, and Pedro Diaz for medical indifference; a claim against Dr. Genovese for invasion of privacy in plaintiff's First Cause of Action; and claims against Earnell Boddison, Joseph Smith, John Maly, Lt. Gardner, Lt. Palen, Sgt. Kimbler, and C.O. Brooks for alleged retaliation for prior grievances in plaintiff's Third Cause of Action.

### BACKGROUND

**I. Facts and Procedural History**

**A. Factual Overview**[2]

[2]    Given the breadth of the claims and the number of defendants, the court will detail the relevant facts of each claim below, as necessary to address defendants' motion for summary judgment.

Plaintiff alleges a number of constitutional violations which occurred while he was an inmate at Shawangunk and Eastern, including: deliberate medical indifference, stemming from an alleged failure to accommodate plaintiff's back pain following surgery; retaliatory treatment, including transfer from Shawangunk to Eastern, in response to plaintiff's history of litigation and grievances at Shawangunk and other DOCCS facilities; and cruel and unusual punishment arising from the nighttime illumination of plaintiff's cell while confined to the Eastern Special Housing Unit ("SHU"). (Compl.¶ 6–b). Plaintiff also makes due process claims concerning a disciplinary hearing at Eastern, and a religious liberty claim arising from the limited Kosher menu available at both facilities. *Id.*

In addition to the defendants directly involved in the incidents alleged in the complaint, plaintiff also makes a broad claim against Brian Fischer, the DOCCS Commissioner during the relevant time period.[3] Plaintiff alleges that defendant Fischer failed to adequately train and establish appropriate policies for the DOCCS employees under his supervision. (Compl.¶ 10–c).

3 Defendant Fischer is no longer the Commissioner of DOCCS. The current Acting Commissioner of DOCCS is Anthony J. Annucci. http://www.doccs.ny.gov/

All defendants were sued in their individual and official capacities. (Compl.¶ 10–b). In addition to monetary damages on each claim, plaintiff also seeks the following injunctive relief: provision of a low sodium Kosher menu; delivery of two hot Kosher meals per day; provision of a special mattress and a chair in his cell to relieve plaintiff's back pain; return of knee braces confiscated while he was in SHU; and exclusion from any future housing in double-bunk cells to accommodate his back problems. (Compl.¶ 13).

**B. Procedural History**

The original complaint in this action was filed on September 16, 2009. On May 16, 2011, defendants, who are all officials or employees of DOCCS, filed a motion to dismiss plaintiff's civil rights action based upon their allegation that plaintiff had “three strikes” pursuant to 28 U.S.C. § 1915(g), and therefore, should not be entitled to proceed *in forma pauperis.* (Dkt. No. 75). Plaintiff responded (Dkt. No. 78) and defendants filed a reply. (Dkt. No. 79). On December 6, 2011, this court recommended that defendants' motion to dismiss be granted, unless a filing fee was paid by plaintiff. (Dkt. No. 83). This recommendation was adopted by the District Court on January 23, 2012. (Dkt. No. 85). On January 25, 2012, plaintiff appealed to the United States Court of Appeals for the Second Circuit (Dkt. No. 86), which reversed the decision of the District Court on July 12, 2013. (Dkt.90).

***6** Now, upon completion of discovery, all defendants move for summary judgment regarding plaintiff's claims for monetary relief against the defendants in their “official capacities,” and against all injunctive relief, due to plaintiff's subsequent transfer to a different prison. Certain defendants also move for summary judgment as to all or some of the claims against them in their individual capacities.

**C. Deficiencies in Plaintiff's Opposition Papers**

As required under L.R. 7.1, defendants have filed a Statement of Material Facts. (Dkt. No. 124.) Although plaintiff has responded to the Statement of Material Facts filed by Defendants (Dkt. No. 131), he has failed to do so in the manner required under L.R. 7.1(a)(3). Under this rule, the opposing party's response to the movant's statement of material facts “shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises.” Although plaintiff has admitted or denied many of the defendants' assertions and has submitted two volumes of exhibits in support of his response, his Response to the Statement of Material Facts is inconsistent with L.R. 7.1.

Where, as in this case, a party has failed to respond to the movant's statement of material facts in the manner required under L.R. 7.1(a)(3), the local rule provides that facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, and (2) the nonmovant, if proceeding pro se, has been specifically advised of the possible consequences of failing to respond to the motion. *See Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). However, the Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that “while a court is not required to consider what the parties fail to point out in their [local rule statements of material facts], it may in its discretion opt to conduct an assiduous review of the entire record even where one of the parties has failed to file such a statement.” *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir.2001) (citation and internal quotation marks omitted). In deference to plaintiff's pro se status and his attempt, albeit inadequate, to respond to defendants' statement of material facts, the court has opted to review the entire summary judgment record.

*DISCUSSION*

## I. Summary Judgment–Applicable Law

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994).

**\*7** The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord,* 467 F.3d at 273. In that context, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc .,* 369 U.S. 654, 655 (1962); *Salahuddin v. Goord,* 467 F.3d at 272.

"[I]n a pro se case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y.2007) (citing, *inter alia, Burgos v. Hopkins,* 14 F .3d 787, 790 (2d Cir.1994) (a court is to read a pro se party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest")). "However, a pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin,* 902 F.Supp. 424, 429 (S.D.N.Y.1995) (citing *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991)).

## II. Mootness/Injunctive Relief

### A. Legal Standards

A case is moot, and the court has no jurisdiction when the "parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496 (1969). Federal courts are without power to decide questions that cannot affect the rights of the parties in the case before the court. *See Swaby v. Ashcroft,* 357 F.3d 156, 159–160 (2d Cir.2004) (petitioner's injury must be traceable to respondent and likely to be redressed by a favorable judicial decision). The plaintiff must have a "personal stake" in the litigation. *Fox v. Board of Trustees of the State University of New York,* 42 F.3d 135, 140 (2d Cir.1994).

The Second Circuit has held that an inmate's request for prospective injunctive relief against correctional staff or conditions of confinement at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution. *See, e.g., Day v. Chaplin,* 354 F. App'x 472, 473 (2d Cir.2009) (citing *Mawhinney v. Henderson,* 542 F.2d 1, 2 (2d Cir.1976)); *Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir.1996) (citations omitted). There is an exception to the mootness doctrine for challenged actions that are "capable of repetition, yet evading review." *See Murphy v. Hunt,* 455 U.S. 478, 482 (1982). This exception will be applied—provided the action is not a class-action lawsuit-if "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* (quoting *Weinstein v. Bradford,* 423 U.S. 147, 149 (1975)); *Muhammad v. City of New York Dep't of Corr.,* 126 F.3d 119, 123 (2d Cir.1997). Transfer of an inmate does not moot monetary damage claims. *See Young v. Coughlin,* 866 F.2d 567, 568 n. 1 (2d Cir.1989).

### B. Analysis–All Defendants

**\*8**  Plaintiff was transferred from Eastern to Clinton Correctional Facility ("Clinton") on or about July 2009 [4] . (Dkt. No. 131, Pl.'s Resp. to Def.'s Stmt. of Mat. Fact at 17, ¶ 70). In this proceeding, commenced September 11, 2009, plaintiff seeks injunctive relief consisting of the following: (1) a low sodium Kosher diet; (2) two hot Kosher meals per day; (3) a special mattress to relieve his back pain; (4) a chair for his cell; (5) knee braces; (6) and (7) exclusion from double bunk cells. (Compl.¶ 13).

[4]    Plaintiff has been transferred at least once more, and is currently housed in Sing Sing Correctional Facility. (Dkt. No. 124–5, Sheehan Aff. Ex. A).

Plaintiff does not allege that any of the alleged violations continued after he was transferred, and states that some of the disputes have been resolved. For example, plaintiff challenges the confiscation of his knee braces while in the Eastern SHU, and notes that he was allowed to wear knee braces after being transferred to the Clinton SHU. (Pl.'s Resp. to Def.'s Stmt. of Mat. Fact at 17, ¶ 70). None of the other claims rise to the level of "disputes which are capable of repetition and evading review," particularly now that plaintiff is no longer in DOCCS custody. [5]  Therefore, the court will recommend granting summary judgment on all plaintiff's claims for injunctive relief.

[5]    Plaintiff's religious freedom claims are those with the greatest potential for repetition, but plaintiff does not assert that the alleged violations are ongoing. Moreover, for the reasons discussed below plaintiff has failed to state a claim for which relief can be granted on either First Amendment or RLUIPA grounds.

### III. Eleventh Amendment–Official Capacity Monetary Damage Claims

#### A. Legal Standards

The state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD,* 64 F.3d 810, 815 (2d Cir.1995) (citing *Will v. Michigan Department of Police,* 491 U.S. 58, 71 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n. 3. An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales,* 948 F.2d 84, 87 & n. 1 (2d Cir.1991) (citations omitted).

#### B. Analysis–All Defendants

Plaintiff states that he is suing defendants in their individual and official capacities. (Compl.¶ 10–b). In this motion, defendants correctly argue that to the extent that plaintiff is attempting to sue them for damages in their official capacities or to the extent that his complaint can be interpreted as raising such official capacity claims, he is barred by the Eleventh Amendment from doing so. (Dkt. No. 124–8, Def.'s Mem. of Law at 14–15). Accordingly, this court recommends that defendants' motion for summary judgment be granted insofar as all monetary claims raised by plaintiff against the defendants in their official capacity be dismissed with prejudice. Monetary claims against defendants in their individual capacities will survive, to the extent that summary judgment or dismissal is not recommended on other grounds.

### IV. Personal Involvement/Respondeat Superior

#### A. Legal Standards

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability for any constitutional claim. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003). "The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference

to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing, *inter alia, Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). [6]

[6]   Many courts in this Circuit have discussed whether all of the personal involvement factors, set forth in *Colon,* are still viable after *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). *See, e.g., Conklin v. County of Suffolk,* 859 F.Supp.2d 415, 439 (E.D.N.Y.2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon. Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.' " *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.,* 811 F.Supp.2d 803, 815 (S.D.N.Y.2011)). *See* also *Young v. Choinski,* 15 F.Supp.3d 172, No. 3:10–CV–606, 2014 WL 962237, at *10–12 (D.Conn. Mar. 13, 2014) ("Although *Iqbal* does arguably cast doubt on the viability of certain categories of supervisory liability, where the Second Circuit has not revisited the criteria for supervisory liability, this Court will continue to recognize and apply the *Colon* factors.").

### B. Analysis–Fischer

**\*9**  Plaintiff alleges that defendant Fischer failed to adequately train DOCCS staff and establish policies that would prevent the constitutional violations alleged in the complaint. Defendants argue that plaintiff has failed to allege sufficient personal involvement of defendant Fischer. Defendant Fischer was the Commissioner of DOCCS at the time that the complaint was filed. Defendant Fischer delegated the day-to-day operations of the various correctional facilities to his staff. (Dkt. No. 124–6, Sheehan Aff., Ex. B, Fischer's Resp. to Inter.). Fischer's office was in Albany, not in any of the individual DOCCS facilities. (*Id.*) Fischer has denied any knowledge related to any of plaintiff's claims. (*Id.*). Without more, plaintiff has failed to establish that defendant Fischer was even aware of any of plaintiff's concerns or any lapses in policy. Plaintiff's conclusory allegations are not adequate to establish Fischer's personal involvement. Accordingly, the court recommends that summary judgment be granted to defendant Fischer as to all causes of action.

### V. Eighth Amendment Claims

#### A. Legal Standards

The Eighth Amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials. *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). The constitutional prohibition against cruel and unusual punishment includes the right to be free from conditions of confinement that impose an excessive risk to an inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). To establish an Eighth Amendment claim based on unsafe or medically inappropriate living conditions, a plaintiff must establish that (1) he was incarcerated under conditions which posed a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety. *See Farmer,* 511 U.S. at 834.

"The deliberate indifference standard embodies both an objective and a subjective prong." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). Under the objective standard, a plaintiff must allege a deprivation "sufficiently serious" to constitute a constitutional violation. *Hathaway,* 37 F.3d at 66 (quoting *Wilson v. Seiter,* 501 U.S. at 298). "Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim." *Blyden v. Mancusi,* 186 F.3d 252, 263 (2d Cir.1999) (citing *Hudson v. McMillan,* 503 U.S. 1, 9 (1992) (only those deprivations denying "the minimal civilized measures of life's necessities" are sufficiently serious to form the basis of an Eighth Amendment violation) (internal quotations and citations omitted).

The subjective element of the Eighth Amendment analysis focuses on whether the defendant official acted with "a sufficiently culpable state of mind." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir.2006) (citing *Wilson v. Seiter,* 501 U.S. at 300). "Deliberate indifference" requires more than negligence, but less than conduct undertaken for the very purpose of causing harm.

Case 9:25-cv-00083-BKS-TWD   Document 29   Filed 01/20/26   Page 246 of 397
Jones v. Smith, Not Reported in F.Supp.3d (2015)
2015 WL 5750136

*Farmer,* 511 U.S. at 835. In order for a prison official to act with deliberate indifference, he must know of and disregard an excessive risk to an inmate's health or safety. *Hathaway,* 37 F.3d at 66. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.*

**\*10**  In regards to prison medical care, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services,* 151 F.Supp.2d 303, 311 (S.D.N.Y.2001). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986). The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

It is well established that disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds,* 151 F.Supp.2d at 312 (citing *Estelle,* 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id. See also Daniels v. Williams,* 474 U.S. 327, 332 (1986) (negligence not actionable under Section 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under Section 1983.

### B. Deliberate Medical Indifference

#### 1. Shawangunk

##### a. Relevant Facts

Plaintiff claims that upon his return to Shawangunk after back surgery, Dr. Maryann Genovese, M.D. confiscated a special back brace provided by plaintiff's back surgeon and denied plaintiff's requests for its return. (Compl.¶ 6–e). Plaintiff also requested that if defendant Genovese could not provide his back brace, that she prescribe a chair for his cell and/or a special mattress with greater back support than the standard prison issue mattress. (Compl.¶¶ 6–f, 6–h). Genovese denied all these requests, and plaintiff's grievances were unsuccessful. (Compl.¶¶ 6t–6y). In connection with this dispute with Dr. Genovese, plaintiff claims to have spoken with Shawangunk Superintendent Joseph Smith, requesting the return of his back brace, and/or the addition of a special mattress or a chair to his cell. (Compl.¶ 6–j). According to plaintiff, Smith stated that the issue "should be addressed with the medical department." (*Id.*). Smith also allegedly stated that "he had nothing to do with the medical department and a special mattress, chair and back brace was not a security issue" but that "he would look into the problem." (*Id.*). In plaintiff's response to the Statement of Material Facts, he also notes that Smith denied his grievance at Shawangunk requesting the special mattress, although this allegation does not appear in his complaint. (Dkt. No 131, Pl.'s Resp. to Def.'s Stmt. of Mat. Fact p. 8, ¶ 19; Dkt. No. 131–3, Pl.'s Ex. O).

Plaintiff claims that his back pain became so extreme that he could not get a full night's sleep, and woke up with stiffness and numbness. (Compl.¶ 6–q). On August 21, 2007, plaintiff filed a grievance requesting that he be provided with a special mattress and chair for his cell. (Dkt. No. 131, Pl.'s Exhibit O). The grievance was denied, and plaintiff exhausted his administrative remedies. Plaintiff filed this complaint, claiming that the actions of Genovese and Smith constituted deliberate medical indifference and cruel and unusual punishment under the Eighth Amendment. Plaintiff also named Catherine Wells, a Shawangunk administrative nurse and Pedro Diaz, a Regional Health Service Administrator based in Albany, New York, as defendants for their involvement during the administrative grievance process. (Dkt. No. 131, Pl.'s Ex. O and R).

##### b. Analysis–Defendant Smith

**\*11**  Only defendant Smith moves for summary judgment as to the medical indifference claim arising from the refusal to allow plaintiff a back brace, special mattress, or chair while in Shawangunk. Defendant Smith alleges that he was informed of plaintiff's back problems, but deferred to the medical department. (Def.'s Mem. of Law at 10). Beyond mere speculation,

2015 WL 5750136

plaintiff does not allege that defendant Smith had any authority to override the medical determinations of Dr. Genovese. *See Cuoco v. Moritsugu,* 222 F.3d 99, 111 (2d Cir.2000) (the failure of non-doctors at a prison to intercede in the medical treatment of an inmate is not unreasonable, because they lack the authority to intervene in medical decisions). Moreover, Smith's alleged statement that he would "look into it" is not by itself, a demonstration of personal involvement. *See Garrido v. Coughlin,* 716 F.Supp. 98, 100 (S.D .N.Y.1989); *Parks v. Smith,* No. 08–CV–586, 2011 WL 4055415, at *14 (N.D.N.Y. Mar. 29, 2011) (Rep't–Rec.), *adopted,* 2011 WL 4055414 (N.D.N.Y. Sept. 12, 2011). The fact that Smith issued an unfavorable grievance report on this claim, which plaintiff raised for the first time in opposition to this motion, does not change the outcome. Smith's denial of plaintiff's grievance expressly relied on the medical determination of Dr. Genovese and does not give rise to a constitutional claim. (Dkt. No. 131–3, Pl's Ex. O). *See Brock v. Wright,* 315 F.3d 158, 164 (2d Cir.2003) (prison superintendent with no medical training who deferred completely to a prison doctor in ruling on a grievance regarding medical care, while perhaps negligent, was not "deliberately indifferent"). Therefore, the court recommends that defendant Smith's motion for summary judgment on the medical indifference claim in plaintiff's First Cause of Action be granted.

### 2. Eastern

#### a. Relevant Facts

On May 13, 2009, plaintiff was transferred to Eastern. (Compl.¶ 8–j). Defendant Steven Schoonmaker, a Correctional Officer, escorted plaintiff along with several other prisoners to their respective cells. (*Id.*). When Schoonmaker directed plaintiff to the top bunk of a double-bunk cell, plaintiff told him that "he could not be placed in a double-bunk cell, especially on the top bunk because of his back injury and bad knees." (*Id.*). Defendant Schoonmaker repeated the order to go into the assigned cell, and plaintiff "stated that he would not go into the cell because of his back injuries and bad knees, and to do so would put his health in jeopardy." (Compl.¶ 8–k), Plaintiff was ticketed for misbehavior and escorted to SHU. (*Id.*).

Plaintiff alleges that the order to enter the double-bunk cell, and the assignment to a top bunk, constituted cruel and unusual punishment. (Compl.¶ 8–k). Plaintiff also alleges that the assignment was precipitated by the deliberate medical indifference of Defendants Thomas Griffin and Olga Khramova of Shawangunk, who completed the screening forms allowing plaintiff to be placed into a double-bunk cell. (Compl.¶ 8–I). Plaintiff contends that this contradicted a 2001 Shawangunk medical evaluation form which indicated that plaintiff's medical history required assignment to a bottom bunk bed. (Compl. ¶ 9–e; Dkt. No. 131–3, Pl.'s Ex. D).

 **\*12**  On June 2, 2009, plaintiff went to his scheduled medical appointment with defendant Dr. Mikhail Gusman, where plaintiff requested a medical permit to exempt him from placement in a double-bunk cell. (Compl.¶ 9–j). After a physical examination, defendant Gusman would only issue a permit to limit plaintiff to a bottom bunk. (Compl.¶ 9–I). Plaintiff also requested a special mattress to accommodate his back pain, and the return of his knee braces, which had been confiscated during his placement in SHU. (Compl.¶ 9–m). Defendant Gusman refused both requests, but advised that plaintiff's knee braces would be returned once he was released from SHU. (*Id.*).

Plaintiff alleges that defendant Gusman's actions constitute deliberate medical indifference, in violation of the Eighth Amendment. Defendant Gusman has moved for summary judgment, arguing that plaintiff's request to be exempted from a double cell is unconnected to his back problems, that plaintiff's knee braces were confiscated for security reasons while plaintiff was in SHU, and that plaintiff's allegations amount to non-actionable disagreements about medical care. (Def.'s Mem. of Law at 10–11).

#### b. Analysis–Griffin, Khramova, and Schoonmaker

Plaintiff alleges that defendants Griffin and Khramova completed screening sheets which allowed plaintiff to be assigned to a top bunk, despite the attendant difficulties associated with his back problem. (Compl.¶ 8–I). At times, plaintiff's complaint also alleges that the mere assignment to a double bunk cell violated his constitutional rights. (Dkt. No 131, Pl.'s Resp. to Def.'s Stmt. of Mat. Fact p. 16, ¶ 62). Based on the evidence before the court, it appears that plaintiff's condition was sufficiently serious to

warrant assignment to a bottom bunk in 2001 (prior to back surgery) at Shawangunk and after his July 2009 medical evaluation at Eastern. (Dkt. No. 131–2, Pl.'s Ex. 1–X; Dkt. No. 131–3, Pl.'s Ex. D). Thus, reading the facts presented by the plaintiff in the most favorable light, the court will assume for purposes of this motion that the potential aggravation of plaintiff's back problems constituted a "sufficiently serious" medical impairment.

However, the Court finds no record evidence from which a rational trier of fact could conclude that defendants Griffin, Khramova, and Schoonmaker's failure to assign plaintiff a bottom bunk was, at worst, anything more than carelessness or negligence. *See Felix Torres v. Graham,* 687 F.Supp.2d 38, 53 (N.D.N.Y.2009). Negligently failing to assign an inmate to a lower bunk does not satisfy the subjective element of the legal standard governing claims of deliberate indifference to a serious medical need under the Eighth Amendment. *See Goodson v. Willard Drug Treatment Campus,* 615 F.Supp.2d 100, 102 (W.D.N.Y.2009) ("[E]ven if there were sufficient evidence upon which a factfinder could reasonably conclude that defendants were negligent in assigning plaintiff to a top bunk (and I do not believe that there is), that too would be insufficient."); *Faison v. Janicki,* No. 03–CV–647, 2007 WL 529310, at *2–3 (W.D.N.Y. Feb. 14, 2007) ("[E]ven assuming that Dr. Barranos's rescission of plaintiff's bottom-bunk permit amounted to a serious deprivation of his constitutional rights-which is doubtful-there is no evidence that Dr. Barranos acted with a culpable state of mind [where the plaintiff admitted in his deposition that the basis of his claim against Dr. Barranos was 'medical negligence'].");  *Connors v. Heywright,* No. 02–CV–9988, 2003 WL 21087886, at *3 (S.D.N.Y. May 12, 2003) (dismissing prisoner's claim that defendants were "negligent to [his] medical needs" in that they, inter alia, placed him in a top bunk despite the fact that he had a "mandatory lower bunk slip").

 **\*13** Plaintiff points to the inconsistency between the 2001 Shawangunk screening sheet, which limited plaintiff to a bottom bunk, and the 2009 screening sheet, which did not, as proof that Griffin ignored or failed to review plaintiff's medical history when completing the form. (Compl.¶ 8–I). However, plaintiff makes no showing that Griffin knew and disregarded an excessive risk to plaintiff's safety. As to Khramova, plaintiff likewise concludes, without proof, that she must have ignored his medical history before completing her form. (*Id.*). Plaintiff offers nothing to support this notion, and mere speculation is insufficient to overcome a summary judgment motion. *Bennett v. Goord,* No. 06–3818–pr, 2008 WL 5083122, at *2 (2d Cir. Dec. 2, 2008) (citing *inter alia McPherson v. N.Y. City Dep't of Educ.,* 457 F.3d 211, 215 (2d Cir.2006) (speculation alone is insufficient to defeat a motion for summary judgment)). As to Schoonmaker, plaintiff offers no proof that Schoonmaker had any indication of plaintiff's medical history or did anything more than escort plaintiff to his assigned cell.

Even taking the facts in the light most favorable to the plaintiff, the actions of the moving defendants do not support a constitutional claim. Accordingly, the court recommends that defendants Griffin, Khramova, and Schoonmaker's motion for summary judgment on plaintiff's Third Cause of Action be granted.

### c. Analysis–Defendant Gusman

Defendant Gusman evaluated plaintiff after his transfer to Eastern, and considered plaintiff's requests to be excluded from double bunk cells, to be issued a special mattress due to his back pain, and to be allowed to wear knee braces while being held in SHU. (Compl.¶ 9–k–9–m). Defendant Gusman denied each of these requests, but did restrict plaintiff to a bottom bunk, consistent with his previous celling situation at Eastern. (Compl.¶ 9–i). The exhibits show that Dr. Gusman provided significant medical treatment while plaintiff was in SHU, including knee x-rays. (Dkt. No. 131–3, Pl.'s Ex. B). Plaintiff's allegations against Gusman amount to nothing more than a dispute over what further medical treatment was appropriate. The fact that plaintiff was ultimately allowed to wear his knee braces after being transferred to a different facility has no bearing on the legitimacy of Gusman's treatment. *Gillespie v. New York State Dept. of Correctional Services,* No. 9:08–CV–1339 (TJM/ATB), 2010 WL 1006634, at *6, (N.D .N.Y. Feb. 22, 2010) (citing cases) (Rep't–Rec.), *adopted,* 2010 WL 1006643 (N.D.N.Y. Mar 19, 2010) ("The mere fact that [DOCCS] physicians in other facilities may have previously provided plaintiff with some of the treatments and accommodations he demanded at [Clinton] does not render the medical decisions of [N.P. Lashway] 'deliberate indifference.'"). Even if those medical judgments rose to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Sonds,* 151 F.Supp.2d at 312. Moreover, plaintiff's own exhibits do not

Jones v. Smith, Not Reported in F.Supp.3d (2015)

2015 WL 5750136

show an existing permit for knee braces for the May to June 2009 time period at issue [7] . Therefore, the court recommends that defendant Gusman be granted summary judgment as to plaintiff's Fourth Cause of Action.

[7]    Plaintiff has included with his response to this summary judgment motion "medical equipment passes" for "neoprene knee sleeves" for the periods July 23, 2003 to July 23, 2004; December 21, 2004 to March 21, 2005; June 3, 2006 to January 3, 2007; January 29, 2007 to July 29, 2007; August 29, 2007 to March 1, 2008; February 29, 2008 to August 29, 2008; and August 21, 2008 to February 21, 2009. (Dkt. No. 131–2, Pl.'s Ex. 1V through 1Y.

### C. Conditions of Confinement (Eastern)—SHU Lighting

#### 1. Relevant Facts

 **\*14**  While in SHU, plaintiff alleges that his cell had a night light which "was directly overhead and was so bright that it was impossible to sleep the entire time he was in Eastern SHU." (Compl.¶ 9–a). During his confinement in SHU, plaintiff spoke with defendants William Brown and Thomas Griffin, who were making rounds, and complained "that the night light was to [sic] bright and that he could not sleep ..." and that "the light was so bright that he could read a book, and he had not had a full night's sleep since he [had] been [in] SHU." (Compl.¶ 9–f). In response to Brown's suggestion that plaintiff should put something over his eyes, plaintiff said that "he had tried that but every time he turn[ed] over it would come off and he would wake up." (*Id.*).

Plaintiff's June 5, 2009 grievance, in which he requested that the night light be turned off at night so that he could sleep, was denied, and his appeal was unsuccessful. (Dkt. No. 131–2, Pl.'s Ex. 1U). In this action, Plaintiff alleged that the sleep deprivation caused by the night light in the Eastern SHU constituted cruel and unusual punishment, and named Brown and Griffin as defendants.

#### 2. Analysis—Brown and Griffin

"[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment." *Walker v. Schult,* 717 F.3d 119, 126 (2d Cir.2013) (citing, *inter alia, Tafari v. McCarthy,* 714 F.Supp.2d 317, 367 (N.D.N.Y.2010)) ("Courts have previously recognized that sleep constitutes a basic human need and conditions that prevent sleep violate an inmate's constitutional rights."). "Requiring inmates to live in constant illumination can ..., under certain circumstances, rise to the level of an Eighth Amendment violation." *Jones v. Rock,* No. 9:12–CV–447 (NAM/TWD), 2013 WL 4804500, \*10 (N.D.N.Y. Sept. 6, 2013) (citing, *inter alia, Keenan v. Hall,* 83 F.3d 1083, 1090–91 (9th Cir.1996) (an allegation that large fluorescent lights directly in front of and behind an inmate's cell that shown into his cell twenty-four hours a day, causing him grave sleeping problems and other mental and psychological problems stated a claim of cruel and unusual punishment that could withstand a motion for summary judgment). *See also Holmes v. Grant,* No. 03–CV–3426, 2006 WL 851753, at \*3, 11–12 (S.D.N.Y. Mar. 31, 2006) (denying motion to dismiss plaintiff's claim that 24–hour illumination of the SHU during his 35 days of confinement caused fatigue, loss of appetite, migraine headaches, and other physical and mental problems because, as alleged, it would sustain both the objective and the subjective prongs of an Eighth Amendment analysis) (collecting cases).

The decisions evaluating Eighth Amendment claims based on continuous lighting in the prison setting are very "fact-driven," turning on the degree of illumination, the duration of the inmate's exposure, the extent of harm it causes, and the penological justification for the lighting. [8]  *Booker v. Maly,* No. 9:12–CV–246 (NAM/ATB), 2014 WL 1289579, at \*18 (N.D.N.Y. Mar. 31, 2014) (citing, *inter alia, McGee v. Gold,* No. 1:04–CV–335, 2010 WL 5300805, at \*5 (D.Vt. Aug. 3, 2010) (Rep't–Rec.), *adopted, sub nom. McGee v. Pallito,* 2010 WL 5389996 (D.Vt. Dec. 20, 2010), *vacated and remanded on other grounds sub nom. Kimber v. Tallon,* 556 F. App'x 27 (2d Cir.2014); *Chappell v. Mandeville,* 706 F.3d 1052, 1058–59 (9th Cir.2013) (comparing cases). Taking these factors into consideration, and resolving all ambiguities and drawing all reasonable inferences in favor of the plaintiff, the court recommends granting defendant's motion for summary judgment on plaintiff's cause of action for cruel and unusual punishment related to the illumination of the SHU.

8      The Ninth Circuit has noted:

> The precise role of legitimate penological interests is not entirely clear in the context of an Eighth Amendment challenge to conditions of confinement. The Supreme Court has written that the test of *Turner v. Safley,* 482 U.S. 78 ... (1987), which requires only a reasonable relationship to a legitimate penological interest to justify prison regulations, does not apply to Eighth Amendment claims. *Johnson v. California,* 543 U.S. 499, 511 ... (2005) (”[W]e have not used *Turner* to evaluate Eighth Amendment claims of cruel and unusual punishment in prison....) ... The existence of a legitimate penological justification has, however, been used in considering whether adverse treatment is sufficiently gratuitous to constitute punishment for Eighth Amendment purposes. *See Rhodes v. Chapman,* 452 U.S. 337, 346 ... (1981) (“Among ‘unnecessary and wanton’ inflictions of pain are those that are ‘totally without penological justification.’ ”)

*Grenning v. Miller–Stout,* 739 F.3d 1235, 1240 (9th Cir.2014) (some citations omitted). Other courts which have considered penological justification in the context of claims involving continuous prison lighting have related it to the subjective prong of the Eighth Amendment analysis. *See, e.g., Chavarria v. Stacks,* 102 F. App'x 433, 436 (5th Cir.2004) (plaintiff cannot establish the subjective element of an Eighth Amendment violation because he cannot show that his deprivation is unnecessary and wanton, given the security-related justification for the lighting policy in the administrative segregation area).

**\*15**  Defendant has offered evidence that the night light currently used in the Eastern SHU is 13 watts, but the declarant, the current Deputy Superintendent for Security at Eastern; did not offer any objective evidence that the light in plaintiff's cell in 2009 was actually 13 watts. (Dkt. No. 124–3, Wilkins Decl. ¶ 6). However, even if brighter than 13 watts, constant illumination of the SHU cell does not necessarily violate the Eighth Amendment. *See Vasquez v. Frank,* 290 F. App'x 927, 929 (7th Cir.2008) (24–hour lighting involving a single, 9–watt fluorescent bulb does not objectively constitute an “extreme deprivation.”); *McBride v. Frank,* No. 05C1058, 2009 WL 2591618, at \*5 (E.D.Wis.Aug.21, 2009) (constant illumination from a 9–watt fluorescent bulb does not objectively deny “the minimal civilized measure of life's necessities.”); *Wills v. Terhune,* 404 F.Supp.2d 1226, 1230–31 (E.D.Cal.2005) (holding that 24–hour illumination by 13–watt bulb was not objectively unconstitutional); *Pawelski v. Cooke,* No. 90–C–949–C, 1991 WL 403181, at \*4 (W.D.Wis. July 18, 1991) (“Having a single 40 watt light bulb on 24 hours a day for security purposes amounts to no more than an inconvenience to the segregation inmates.”), *aff'd,* 972 F.2d 352 (7th Cir.1992) (table). Plaintiff disputes defendants' description of the night light but states only that it was bright enough to “read a book.” (Complaint 9–f). Plaintiff also admits that he could cover his eyes and fall asleep, but would wake up when he would turn over and the cover would come off. (*Id.*). *Cf. Quick v. Graham,* No. 9:12–CV–1717, 2014 WL 4627108 (N.D.N.Y.2014) (denying summary judgment motion where plaintiff claimed that cell lights were never dimmed at night); *Keenan,* 83 F.3d 1083, 1090–91 (lighting from “large fluorescent lights” was unconstitutional where plaintiff alleged that he “had no way of telling night or day”).

Plaintiff was in the Eastern SHU for 48 days. (Wilkins Decl. ¶ 2). The relatively short duration that plaintiff was exposed to the uncomfortable illumination does not, on its face, compel summary judgment in favor of defendants. *See Holmes v. Grant,* No. 03–CV–3426, 2006 WL851753 (S.D.N.Y.2006) (where plaintiff alleged specific health problems resulting from twenty-four hour lighting during 35 day stay in SHU, he had adequately stated a constitutional claim). However,”[i]n order to succeed on a claim of illegal illumination, plaintiff must produce evidence that the constant illumination had harmful effects on his health beyond mere discomfort.” *Vasquez v. Frank,* No. 05–C–528–C, 2007 WL 3254702, at \*5 (W.D.Wis. Nov. 2, 2007); *see also Quick,* 2014 WL 4627108 at \*8 (denying defendants' motion for summary judgment where plaintiff alleged that he suffered migraine headaches and delusions as a result of sleep deprivation); *Holmes,* 2006 WL851753 at \*11 (denying motion to dismiss where plaintiff alleged that sleep deprivation caused fatigue, loss of appetite, migraine headaches, and other physical and mental problems). Plaintiff does not allege any health problems resulting from the alleged sleep deprivation that would rise to the severity necessary to trigger Eighth Amendment concerns. Instead, plaintiff only claims that he was unable to get a full night's sleep. (Compl. ¶ 9–f; Dkt. No. 131–2, Pl.'s Ex. 1U).

**\*16**  Finally, defendants argue that the night lights serve a legitimate penological function. Both plaintiff and defendant agree that the SHU cell doors are solid doors with a small window measuring approximately either 8 inches by 10 inches, or 8 inches by 16 inches, and a “feed-up hatch” that is closed unless a meal is being served. (Wilkins Decl. ¶ 21; Pl.'s Resp. to Def.'s Stmt. of

Mat. Fact at 3, ¶ 6). Given the limited visibility, defendants argue that the night lights provide the necessary illumination to allow security staff to see into the cell in order to protect both correctional facility staff and inmates from physical harm. (Wilkins Decl. ¶ 8). It is well-recognized that the ability to maintain the safety of inmates and the officers is a legitimate penological interest. *Booker v. Maly,* 2014 WL 1289579 at *19. Indeed, plaintiff does not challenge the security purpose of the light in his pleadings.[9]

[9]  In plaintiff's grievance, plaintiff argued that the security goals could be adequately met by equipping security guards with flashlights, but did not press that claim in this proceeding.

After consideration of the intensity of the nighttime lighting, the limited exposure of plaintiff during his stay in SHU, the lack of any identifiable health or other deleterious impacts from the illumination, and the legitimate penological interest in being able to monitor SHU inmates 24 hours a day, the court recommends granting defendants' motion for summary judgment as to the Eighth Amendment claim in the Fourth Cause of Action related to the SHU night light.

## V. Due Process/Right to Privacy (Eastern)

### A. Procedural Due Process

**1. Relevant Facts**

Plaintiff was ticketed for three violations arising from the refusal to enter the assigned cell: refusal to obey a direct order; interference with an employee; and failure to follow facility regulations and staff directions. (Dkt. No. 124–7, Sheehan Aff., Ex. C, Disciplinary Hearing Certified Transcript at 4–5). Plaintiff's disciplinary hearing before defendant Captain Louis Pingotti of Eastern was held on May 16, 2009, May 19, 2009, and May 29, 2009. (Compl.¶¶ 9–b, 9–d, 9–g). The hearing was adjourned several times to allow for obtaining evidence and identifying potential witnesses. (Dkt. No. 124–7, Sheehan Aff., Ex. C, Disciplinary Hearing Certified Transcript). Plaintiff pled not guilty to the three charges. (*Id.* at 5). On the first day of the hearing, May 16, plaintiff raised an issue regarding the availability of his medical records, and the hearing was adjourned. (*Id.* at 9).

On May 19, 2009, the hearing re-opened and defendant Pingotti provided plaintiff with three documents related to his back condition. (*Id.* at 11–14). Each document was read into the record: a May 11, 2009 double cell information sheet completed by defendant Thomas Griffin; a May 13, 2009 screening of physical assessment form for placement in a double cell completed by defendant Olga Khramova; and a December 6, 2001 screening physical assessment and placement for a double cell form from Shawangunk. (*Id.*). Plaintiff had requested the first two documents. Pingotti requested the third document on his own, noting that he "wanted to make sure what your last facility said in case there was a contradiction." (*Id.* at 11). During the course of the hearing, plaintiff testified regarding his 2006 back surgery, 2008 physical therapy, and his physical therapist's exercise recommendations. (Dkt. No. 124–7, Sheehan Aff., Ex. C, Disciplinary Hearing Certified Transcript at 5, 14–22, 24–7).

**\*17**  Following another adjournment, on May 29, 2009, plaintiff was allowed to call the doctor then on duty at Eastern, Dr. Bhavsar, as a witness. (*Id.* at 27–31). Dr. Bhavsar reviewed the various screening sheets and concluded that plaintiff should be assigned to a bottom bunk, but that double-bunking was appropriate. (*Id.* at 30). Dr. Bhavsar also stated that the screening sheets available upon plaintiff's transfer to Eastern did not indicate that a bottom bunk was required. (*Id.*). Dr. Bhavsar also scheduled plaintiff for a medical review. (*Id.* at 29).

Defendant Pingotti denied plaintiff's request to call his physical therapist as a witness. Pingotti explained the rationale for his decision-that the physical therapist had no direct knowledge of the incident that led to the disciplinary hearing, and there was no dispute that the inmate had been given a list of exercises. (*Id.* at 23). Plaintiff also did not know the physical therapist's name. (*Id.* at 26).

Defendant Pingotti denied plaintiff's request that the disciplinary hearing be adjourned until plaintiff had received a medical checkup, and issued his decision on May 29, 2009. (Dkt. No. 124–7, Sheehan Aff., Ex. C, Disciplinary Hearing Certified Transcript at 35). Plaintiff was found guilty on all three charges, based upon defendant Schoonmaker's report and the evidence

presented at the hearing. (*Id.*). The disposition of the hearing was confinement in SHU, loss of commissary, packages and phones for a period of three months, with a start date of March 13, 2009 [10]. (*Id.*).

[10]   Plaintiff stayed in the Eastern SHU until June 29, 2009, when he was transferred to Clinton. (Wilkins Decl. ¶ 2, Plaintiff's Ex. 1Y).

Plaintiff contends that defendant's Pingotti's handling of the disciplinary hearing, including his refusal to call all the requested witnesses, indicated bias and violated his right to due process. (Compl.¶ 9–i). Plaintiff also argues that defendant Pingotti's request for plaintiff's double cell information sheet from Shawangunk violated his right to privacy in his medical records. (Compl.¶ 9–d). In the present motion for summary judgment, defendant Pingotti argues that plaintiff received due process, and that the weight of the evidence supports his conclusion. (Def.'s Mem. of Law at 4–7). Defendant Pingotti also argues that plaintiff did not raise any objection to the retrieval of plaintiff's Double Cell Information Sheet from Shawangunk, and that the document was obtained solely to investigate plaintiff's claim that he could not be double-bunked because of his back problems. (*Id.* at 6).

### 2. Procedural Due Process–Legal Standards

In order to begin a due process analysis, the court first determines whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges and then determines whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001); *Bedoya v. Coughlin,* 91 F.3d 349, 351 (2d Cir.1996). In *Sandin v. Conner,* the Supreme Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 483–84 (1995).

**\*18**   The Second Circuit has explicitly avoided a bright line rule that a certain period of confinement in a segregated housing unit automatically gives rise to due process protection. *See Sims v. Artuz,* 230 F.3d 14, 23 (2d Cir.2000); *Colon v. Howard,* 215 F.3d 227, 234 (2d Cir.2000). Instead, cases in this circuit have created guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed. *Palmer v. Richards,* 364 F.3d 60, 64–66 (2d Cir.2004). A confinement longer than an intermediate one, and under "normal SHU conditions" is "a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin.*" *Colon v. Howard,* 215 F.3d at 231 (finding that a prisoner's liberty interest was infringed by 305–day confinement). Shorter confinements under normal SHU conditions may not implicate a prisoner's liberty interest.

"SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions ... or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer v. Richards,* 364 F.3d at 65 (citations omitted). In the absence of a detailed factual record, cases in this Circuit typically affirm dismissal of due process claims where the period of time spent in SHU was short-*e.g.,* 30 days-and there was no indication that the plaintiff endured unusual SHU conditions. *Id.* at 65–66 (collecting cases).

The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton,* 380 F.3d 57, 69 (2d Cir.2004) (citing, *inter alia, Wolff v. McDonnell,* 418 U.S. 539, 563–67 (1974)). The hearing officer's findings must be supported by "some reliable evidence." *Id.* (*citing, inter alia, Superintendent v. Hill,* 472 U.S. 445, 455 (1985)).

### 3. Procedural Due Process–Analysis

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 253 of 397
Jones v. Smith, Not Reported in F.Supp.3d (2015)
2015 WL 5750136

Plaintiff was found guilty of three misbehavior charges in this case, and the penalty was three months in SHU, with loss of commissary, package and phone privileges. (Complaint ¶ 9–I). Plaintiff only served 48 days in the Eastern SHU before being transferred to Clinton. (Wilkins Decl. ¶ 2). At Eastern, plaintiff's only concerns about the condition of his confinement were the night light that kept him from getting a full night's sleep, and a restriction on wearing his knee braces due to security concerns. (Compl. ¶¶ 9–f, 9–m; Pl.'s Resp. to Def.'s Stmt. of Mat. Fact at 3, ¶ 6). The remainder of the penalty was served in Clinton SHU, and plaintiff has raised no concerns about conditions there. In fact, plaintiff has compared it favorably to Eastern SHU, noting that he was allowed to wear his knee braces in Clinton's SHU. (Pl.'s Resp. to Def.'s Stmt. of Mat. Fact at 17, ¶ 70).

**\*19** The ninety day period in SHU, and the 48 days spent under the disfavored conditions at Eastern, fall within the "short range" of disciplinary confinement. *See Tafari v. McCarthy,* 714 F.Supp.2d 317, 375 (N.D.N.Y.2010) (finding 30, 60, and 90 day SHU sentences within the short range of disciplinary sentences). Therefore, plaintiff's confinement in SHU implicates a liberty interest only if "the conditions were more severe than the normal SHU conditions." [11] *Palmer,* 364 F.3d at 64. "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.' " *Id.* (quoting *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998)). Plaintiff alleges that the SHU night light kept him from getting a full night's sleep, and that he was denied use of knee braces while in SHU. The court doubts that the constant illumination and the confiscation of knee braces, which applied to all inmates in the Eastern SHU, would qualify as "atypical and significant hardships" that, over a period of relatively limited confinement, would implicate a liberty interest. (*See* Wilkins Decl. Ex. A and B (policy documents noting that inmate property may be confiscated upon entry to SHU)). But even assuming that plaintiff's confinement in the Eastern SHU implicated a liberty interest, he received adequate due process in connection with the disciplinary hearing.

[11]   "Normal" SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week. *Ortiz v. McBride,* 380 F.3d 649, 655 (2d Cir.2004).

A review of the record shows that plaintiff was afforded notice of the charges, a hearing, and the opportunity to present witnesses. Plaintiff also received a written reason for the disposition at the close of the hearing. (Dkt. No. 124–7, Sheehan Aff., Ex. C, Disciplinary Hearing Certified Transcript).

An inmate is entitled to a decision-maker who does not "prejudge the evidence and who cannot say ... how he would assess evidence he has not seen yet." *Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996) (citing *inter alia Patterson v. Coughlin,* 905 F.2d 564, 570 (2d Cir.1990)); *Tellier v. Scott,* 94 Civ. 3459, 2004 WL 224499, at \*8 (S.D.N.Y. Feb. 5, 2004) (citations omitted). However, prison hearing officers 'are not held to the same standard of neutrality as adjudicators in other contexts." *Id.* (citing *inter alia Russell v. Selsky,* 35 F.3d 55, 60 (2d Cir.1994)).

The evidence presented demonstrates that the hearing officer was not biased and that plaintiff otherwise received adequate process. During the course of the hearing, defendant Pingotti adjourned the proceeding several times to allow plaintiff an opportunity to review documents or identify witnesses. (Dkt. No. 124–7, Sheehan Aff., Ex. C, Disciplinary Hearing Certified Transcript). A medical doctor was allowed to testify as to defendant's back condition, even after plaintiff had admitted to refusing to enter the assigned cell. (*Id.* at 27–31). The hearing office excluded one witness-an unidentified physical therapist who could allegedly testify as to the potential difficulty for plaintiff to perform back exercises in a double bunk cell-but defendant Pingotti did consider a chart depicting those exercises, and plaintiff's related testimony. (*Id* . at 14–18).

**\*20** Although due process includes a right to call witnesses, this right is not unfettered. *Alicea v. Howell,* 387 F.Supp.2d 227, 234 (W.D.N.Y.2005) (citing *Ponte v. Real,* 471 U.S. 491, 495 (1985)). A hearing officer does not violate due process by excluding irrelevant or unnecessary evidence or testimony. *Kawalinski v. Morse,* 201 F.3d 103, 109 (2d Cir.1999) (citing *Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30 (2d Cir.1991)); *Chavis v. vonHagn,* No. 02–CV–119, 2009 WL 236060, at \*62 (W.D.N.Y. Jan. 30, 2009) (citing *Kawalinski, supra* ). For constitutional due process purposes (assuming that a liberty interest existed), all that is required is "some" or "a modicum" of evidence supporting the disciplinary determination. *Superintendent*

2015 WL 5750136

*v. Hill,* 472 U.S. 445, 455 (1985) (some evidence standard). Plaintiff in this case simply disagrees with defendant Pingotti's findings, which are supported by the evidence. Therefore, defendant Pingotti's motion for summary judgment as to plaintiff's allegations of a deprivation of due process in his Fourth Cause of Action should be granted, even assuming that plaintiff had demonstrated a liberty interest.

### B. Right to Privacy

#### 1. Legal Standards

In the United States Constitution, there exists a right to privacy, protecting an individual's interest in avoiding the disclosure of personal matters. *Doe v. City of New York,* 15 F.3d 264, 267 (2d Cir.1994) (citing *Whalen v. Roe,* 429 U.S. 589, 599 (1977)). This right is protected by the Due Process Clause. *O'Connor v. Pierson,* 426 F.3d 187, 201 (2d Cir.2005) (citing *Whalen,* 429 U.S. at 598–600). The right to privacy has also been "characterized as a right to 'confidentiality,' which 'includes the right to protection regarding information about the state of one's health.' " *Matson v. Bd. of Ed. of City School Dist. of New York,* 631 F.3d 57, 64 (2d Cir.2011) (quoting inter alia *Doe,* 15 F.3d at 267).

With respect to the "disclosure" of medical information, an inmate's privacy right varies with the inmate's condition, with a greater interest in preventing the disclosure of highly sensitive conditions. *Id.* (citations omitted). Prison officials may impinge upon the inmate's privacy right only to the extent that their actions are not "reasonably related to legitimate penological interests." *Powell v. Schriver,* 175 F.3d 107, 112 (2d Cir.1999). Where the sensitive information is spread gratuitously through "humor or gossip," it is more likely that the inmate's right to privacy will have been violated. *Rodriguez v. Ames,* 287 F.Supp.2d 213, 220 (citing *Powell,* 175 F.3d at 112).

#### 2. Right to Privacy–Analysis [12]

[12]   In his First Cause of Action, plaintiff alleges that, while at Shawangunk, defendant Genovese unlawfully released plaintiff's medical records in violation of New York State regulations. Plaintiff does not identify the nature of the records allegedly released, and defendants do not address the issue in the present motion for summary judgment. Therefore, the court will not address this issue in this motion.

Defendant Pingotti has moved for summary judgment on the alleged breach of privacy during the disciplinary hearing. (Dkt. No. 124–8, Def.'s Mem. of Law at 5). Even reading the complaint in the light most favorable to the plaintiff, there was a legitimate penological purpose for obtaining the screening sheet, as plaintiff's primary argument during the disciplinary hearing was that his medical condition prohibited assignment to a double-bunk cell. In fulfilling his duties, defendant Pingotti sought the best available source of the information. Moreover, plaintiff's back and knee problems, to the extent that they were "disclosed" during the hearing, are not the sort of impairment which "carr[ies] with it the sort of opprobrium that confers upon those who suffer from it a constitutional right of privacy as to that medical condition." *See Matson v. Bd. of Education of the City School Dist. of New York,* 631 F.3d 57, 61 (2d Cir.2010) (finding that disclosure of fibromyalgia would not expose a person to discrimination or intolerance). Accordingly, the court recommends that defendant Pingotti's motion for summary judgment be granted as to the Fourth Cause of Action.

## VI. Retaliation/Verbal Harassment (Shawangunk)

### A. Relevant Facts

**\*21**  Plaintiff alleges that numerous personnel at Shawangunk retaliated against him for filing various grievances at the facility, as well as for receiving a settlement payment in connection with prior litigation against officials at Attica Correctional Facility. (Compl.¶ 8–a). Plaintiff claims that each time that he filed a grievance, his cell was searched immediately afterwards [13] . (Dkt. No 131, Pl.'s Resp. to Def.'s Stmt. of Mat. Fact p. 13, ¶¶ 46, 48). Plaintiff also claims that his wife was denied entrance to Shawangunk on a visiting day, and that he was transferred to another facility as retaliation for his past grievances and receipt

of the settlement payment. (Compl.¶ 8–b). Plaintiff alleges that Correctional Councilor Earl Boddison, Superintendent Joseph Smith, Superintendent John Maly, Lt. Gardner, Lt. Palen, Sgt. Kimbler and C.O. Brooks participated in these retaliatory actions. (Compl. ¶ 8–e,8–f,8–h). The only alleged retaliation addressed in this summary judgment motion is defendant Maly's response to plaintiff's question regarding the transfer. Maly allegedly "smiled and said, 'have a nice day Mr. Jones." (Compl. ¶ 8–h). Defendant John Maly has moved for summary judgment solely in regards to this exchange. ((Dkt. No. 124–8, Def.'s Mem. of Law at 12–13).

13    Plaintiff states that his "cell was destroyed" in a cell search on or about April 16, 2009, but does not identify any personal property that was removed or destroyed. (Compl.¶ 8–e).

### B. Legal Standards

It is well established in the Second Circuit that verbal abuse, whether threatening, vulgar, or racial in nature, does not, by itself, rise to the level of a constitutional violation. *See, e.g ., Purcell v. Coughlin* 790 F.2d 263, 265 (2d Cir.1986); *Webster v. Holmes,* 694 F.Supp.2d 163, (N.D.N.Y.2010) (collecting cases); *Ramirez v. Holmes,* 921 F.Supp. 204, 210 (S.D.N.Y.1996).

### C. Analysis

Plaintiff has interpreted Maly's response "have a nice day Mr. Jones," as proof of a retaliatory motive for his transfer. In this motion, defendant Maly ignores the other allegations of retaliation in the complaint and narrowly argues that his response to plaintiff is not actionable in a federal civil rights action. To the extent that plaintiff is suing over the comment alone, the court agrees that even if the remark could be interpreted as harassment, it does not give rise to a constitutional claim. Therefore, defendant Maly should be granted summary judgment solely as it relates to any allegation of verbal harassment.

Defendant Maly must still remain part of this litigation, as plaintiff's Third Cause of Action alleges that Maly was personally involved in other retaliatory conduct, including the denial of plaintiff's visitation privileges. (Compl.¶ 8–e). Because defendant Maly did not address these allegations in his motion for summary judgment, [14] he is not entitled to summary judgment with respect to plaintiff's further claims of retaliation. *See Salahuddin,* 467 F.3d at 278.

14    As noted above, none of the defendants identified in the retaliation claim (Earnel Boddison, Joseph Smith, Lt. Palen, Sgt. Kimbler, C.O. Brooks, Lt. Gardner, and John Maly) moved for summary judgment, except for the Maly verbal harassment issue addressed herein.

## VI. Religious Liberty (Shawangunk and Eastern) [15]

15    Although the heading for plaintiff's second Cause of Action also references cruel and unusual punishment, and the equal protection clause, his pleadings with regard to the Kosher menu do not allege any of the elements necessary for an Eighth Amendment or Fourteenth Amendment claim.

### A. Relevant Facts

Plaintiff converted to Judaism on or about January 2004, while in prison. (Dkt. 131–1, Pl.'s Ex. T). Plaintiff alleges that since his conversion, he "received a high sodium cold Kosher Diet three times a day, seven days a week for the past five years." (Compl.¶ 7–m). Plaintiff also alleges that he has a history of high blood pressure, and so he sought a low-sodium Kosher alternative diet. (Compl.¶¶ 7–e, 7–f).

 **\*22**  Plaintiff alleges that he asked Rabbi Horowitz, a Shawangunk prison chaplain, for assistance in receiving "at least two hot meals per day and to change the Kosher Menu ..." (Compl.¶ 7–c). Plaintiff claims that Rabbi Horowitz refused to assist him. (Compl.¶ 7–i). [16]

16        Plaintiff also alleges that Rabbi Horowitz was skeptical of his conversion and refused to provide him with information concerning the Jewish religion. However, the record demonstrates that Rabbi Horowitz signed plaintiff's change of religious designation form and plaintiff's form accepting the Kosher diet requirements. (Dkt. 131–3, Pl.'s Ex. T).

Plaintiff submitted a request to John Rapp, Shawangunk Food Administrator, seeking a low sodium Kosher diet which included at least two hot meals per day. (Compl.7–i) This request was denied. (Dkt. No. 131–2, Pl.'s Ex. 1–I). During the grievance process, Rapp advised that the Kosher menu is established by DOCCS Central Food Service, and that hot meals were only provided on Jewish holidays, with the exception of the Green Haven Correctional Facility. (*Id.*). Plaintiff exhausted his administrative appeals, which were unsuccessful.

### B. Legal Standards

#### 1. Religious Land Use and Institutionalized Persons Act ("RLUIPA")

RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (A) is in furtherance of a compelling governmental interest; and
>
> (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). Under RLUIPA, the plaintiff bears the burden of showing that his religious exercise has been burdened and that the burden is substantial. [17] *Marria v. Broaddus,* 200 F.Supp.2d 280, 297 (S.D.N.Y.2002) (citing 42 U.S.C. § 2000cc–2(b)). The burden then shifts to the government to show that the burden furthers a compelling governmental interest ***and*** that it is the ***least restrictive*** means of achieving that interest. *Id.* The act defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A).

17        RLUIPA uses the term "substantial burden" in the language of the statute, removing any ambiguity with respect to the extent of the burden required to establish a statutory claim.

A "substantial burden" is one that places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Singh v. Goord,* 520 F.Supp.2d 487, 498 (S.D.N.Y.2007) (citing, *inter alia, Jolly v. Coughlin,* 76 F.3d 468, 477 (2d Cir.1996)). Inconvenience alone is insufficient to establish a substantial burden. *Id.* (citing *Westchester Day School v. Village of Mamaroneck,* 379 F.Supp.2d 550, 557 (S.D.N.Y.2005)). Furthermore, the substantial burden test presupposes that some inconveniences may be so minor that they do not amount to a violation. *See McEachin v. McGuinnis,* 357 F.3d 197, 203 n. 6 (2d Cir.2004) (discussing in a footnote the applicability of the "time-honored maxim *'de minimis non curat lex' '* "). However, the court should not attempt to engage in resolving disputes as to whether a particular practice is "central" or "mandatory" to a particular religion in determining whether a burden was substantial. *See Ford v. McGinnis,* 352 F.3d 582, 593–94 (2d Cir.2003) (discussing First Amendment protections).

#### 2. First Amendment

**\*23** Inmates have the right under the First and Fourteenth Amendments to freely exercise a chosen religion. *Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir.2003) (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)). However this right is not limitless, and may be subject to restrictions relating to legitimate penological concerns. *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990). The analysis of a free exercise claim is governed by the framework set forth in *O'Lone v. Estate of Shabazz,* 482 U.S. 342 (1987) and *Turner v. Safely,* 482 U.S. 78, 84 (1987). This framework is one of reasonableness and is less restrictive than the standard ordinarily applied to the alleged infringements of fundamental constitutional rights. *Ford,* 352 F.3d at 588.

In *O'Lone,* the Supreme Court held that a regulation that burdens a protected right withstands a constitutional challenge if that regulation is reasonably related to legitimate penological interests. 482 U.S. at 349 (quoting *Turner,* 482 U.S. at 89). An individualized decision to deny an inmate the ability to engage in a religious exercise is analyzed under the same standard. *Salahuddin v. Goord,* 467 F.3d 263, 274 n. 4 (2d Cir.2006) (citations omitted). In *Farid v. Smith,* 850 F.2d 917, 926 (2d Cir.1988), the Second Circuit held that to assess a free exercise claim, the court must determine "(1) whether the practice asserted is religious in the person's scheme of beliefs and whether the belief is sincerely held; (2) whether the challenged practice of prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological interest."

The Second Circuit has recently examined the standard for analyzing a First Amendment religion claim. *Holland v. Goord,* No. 13–2694, 2014 WL 3360615, at *47 (2d Cir. July 10, 2014). In *Holland,* the court discussed the degree of burden required for a First Amendment claim. *Id.* The court noted that it has not been decided in this Circuit whether, to state a claim under the First Amendment, the inmate must show at the onset that the disputed conduct "substantially burdens his sincerely held religious beliefs ." *Id.* (citing *Salahuddin, supra* at 274–75; *Ford, supra* at 592 (where the court assumed without deciding that the substantial burden test applies)). The court in *Holland* did not decide the issue, rather the court assumed the continued validity of the substantial burden test and analyzed the case accordingly. [18] *Id.* This court will follow the analysis in *Holland* and proceed to consider the First Amendment analysis, assuming that the substantial burden test is still valid. [19]

[18]   This finding was supported by the fact that the court's "precedent squarely dictat[ed] that Holland's religious exercise was unconstitutionally burdened," a point that the defendants in that case did not challenge on appeal. *Holland,* 2014 WL 3360615 at *4.

[19]   The definition of "substantial burden" is discussed above.

Once a substantial burden is found, the court must examine whether the challenged action has a legitimate, rational connection to the governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating that right; and the existence of alternative means of facilitating the exercise of that right that have only a *de minimis* adverse effect on the valid penological interests. *See King v. Bennett,* No. 02–CV–349, 2007 WL 1017102, at *4 (W.D.N.Y. March 30, 2007) (citing *Salahuddin,* 467 F.3d at 274). Finally, once prison officials state a legitimate penological interest to justify their actions, the burden shifts to plaintiffs to show that the defendants' concerns are "irrational." *Ford,* 352 F.3d at 595.

### C. Analysis

**\*24**  Defendants did not move for summary judgment as to plaintiff's First Amendment or RLUIPA claims. However, the court recommends dismissing plaintiff's religious liberty causes of action for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) (ii). This section provides that the court may dismiss an *in forma pauperis* action *sua sponte* at any time if the court determines that, *inter alia,* the action fails to state a claim on which relief can be granted.

### 1. RLUIPA

As noted above, plaintiff was transferred from both Shawangunk and Eastern and has not been in DOCCS custody since August 2014. Hence, injunctive relief against DOCCS is no longer possible and any claim for injunctive relief should be dismissed as moot. [20]  In addition, since only injunctive relief is available under RLUIPA, money damages are not available against the defendants, either in their individual or official capacities. *Loccenitt v. City of New York,* No. 12 Civ. 948, 2013 WL 1091313, at *6 (S.D.N.Y. March 15, 2013) (citing *Pugh v. Goord,* 571 F.Supp.2d 477, 506–507 (S.D.N.Y.2008) (citing cases)). Thus, the court recommends *sua sponte* dismissal of plaintiff's RLUIPA claim. [21]

[20]     In *Blalock v. Jacobsen,* No. 13–CV–8332, 2014 WL 5324326, at *3 & n. 2 (S.D.N.Y. Oct. 20, 2014), the court discussed the possibility that RLUIPA claims for injunctive relief might not be moot upon an inmate's transfer if the "Commissioner's" policy continued to burden and adversely affect the plaintiff's rights, under the theory that the violation is capable of repetition, yet evades review. *Id.* (citing *Pugh v. Goord,* 571 F.Supp.2d 477, 507 (S.D.N.Y.2008)). Here, plaintiff does not allege that the RLUIPA violations are ongoing since his transfer.

[21]     Even if injunctive relief were still available on the RLUIPA claim, dismissal would still be warranted as plaintiff fails to state a claim on which relief may be granted. Recent decisions in this district, discussed *infra,* rejected RLUIPA claims identical to plaintiff's, where otherwise valid religious menus do not meet a prisoner's dietary wants or medical needs. *See Williams v. Fisher,* No. 9:11–CV–379 (NAM/TWD), 2015 WL 1137644 (N.D.N.Y. Mar. 10, 2015) (finding compelling state interest in limiting menu options and not providing vegetarian Kosher meals); *Hamilton v. Smith,* No. 9:06–CV–805 (GTS/DRH), 2009 WL 3199520 (N.D.N.Y. Sept. 30, 2009) (finding that financial burden of creating low sodium Kosher menu was a compelling state interest warranting summary judgment in favor of DOCCs on RLUIPA claim); *Smith v. Perlman,* No. 09:11 CV–20 (MAD/CFH), 2014 WL 7333229 (N.D.N.Y. Dec. 18, 2014) (granting DOCCS summary judgment on Muslim inmate's RLUIPA claim seeking therapeutic diet which included halal meat); *see also Prins v. Coughlin,* 76 F.3d 504, 507 (2d Cir.1996) (finding that inmate had no claim under the Religious Freedom Restoration Act arising from inability to obtain hot Kosher meals after prison transfer).

## 2. First Amendment

While plaintiff may no longer obtain injunctive relief (either under RLUIPA or the First Amendment), based upon his transfers from Shawangunk and Eastern, further analysis is required with respect to a First Amendment claim for monetary damages against defendants in their individual capacities.

The necessary analysis for this case is identical to that performed in *Williams v. Fisher,* 2015 WL 1137644 and *Hamilton v. Smith,* 2009 WL 3199520. First, the record evidence establishes that named defendants Rapp and Rabbi Horowitz do not have any personal involvement in creating or altering the Kosher menu served at DOCCS facilities. (Pl.'s Resp. to Def.'s Stmt. of Mat. Fact p. 10, ¶¶ 31, 33; Dkt. No. 131–3, Pl.'s Ex. V, W, X, and Z). The action against Rapp and Horowitz could be dismissed on this basis alone. *Williams,* 2015 WL 1137644, at *22–3.

However, even assuming that any defendant had personal involvement, plaintiff's First Amendment claim is futile, given the clear nexus between limiting the variety of menus and the economic and efficiency concerns of the state-wide prison system. *Williams,* 2015 WL 1137644, at *28–9; *Hamilton,* 2015 WL 3199520, at *56. Plaintiff does not allege that he cannot receive a Kosher meal, only that he cannot receive a Kosher meal that meets his preferences. Even if the plaintiff were given every benefit of the doubt by the court in considering the *Turner* and *O'Lone* factors, the legitimate penological concerns of maintaining order and meeting budgetary demands justifies the burden, if any, imposed on plaintiff's First Amendment rights. *Williams,* 2015 WL 1137644, at *24–29; *Hamilton,* 2015 WL 3199520, at *6. To hold otherwise, and allow plaintiff an individualized meal option outside the established DOCCS-wide menus could have a "significant ripple effect" on fellow inmates, and "open the door to the creation of various specialized menus for other inmates with different therapeutic and religious needs." *Hamilton,* 2015 WL 3199520, at *6. Therefore, the court recommends *sua sponte* dismissal of plaintiff's Second Cause of Action.

## VII. Motion to Amend

### A. Applicable Law

**\*25**  Pursuant to Fed.R.Civ.P. 15(a), a court should grant leave to amend a pleading "freely ... when justice so requires." Fed.R.Civ.P. 15(a)(2); *Foman v. Davis,* 371 U.S. 178, 182 (1962). The Second Circuit has stated that, "[a] *pro se* plaintiff who brings a civil rights action should be 'fairly freely' afforded an opportunity to amend his complaint, even if he makes the request after the court has entered judgment dismissing his original complaint." *Satchell v. Dilworth,* 745 F.2d 781, 785 (2d Cir.1984) (citing *Bradley v. Coughlin,* 671 F.2d 686, 690 (2d Cir.1982)). The Second Circuit has articulated the similarly liberal standards

by which a court may allow a party to supplement a pleading with allegations regarding transactions, occurrences, or events that have transpired since the date of the original pleading:

> Fed.R.Civ.P. 15(d) permits a party to move to serve a supplemental pleading and the district court may grant such a motion, in the exercise of its discretion, upon reasonable notice and upon such terms as may be just.... [L]eave to file a supplemental pleading should be freely permitted when the supplemental facts connect it to the original pleading.

*Quaratino v. Tiffany & Co.,* 71 F.3d 58, 66 (2d Cir.1995) (citations omitted).

Although Rule 15 generally governs the amendment or supplementation of complaints, where the proposed amendment seeks to add new parties, Fed.R.Civ.P. 21 governs. *Rush v. Artuz,* No. 00 Civ. 3436, 2001 WL 1313465, at *5 (S.D.N.Y. Oct. 26, 2001). Rule 21 states that "the court may at any time, on just terms, add or drop a party." Fed.R.Civ.P. 21. "In deciding whether to allow joinder, the Court is guided by 'the same standard of liberality afforded to motions to amend pleadings under Rule 15.' " *Rush v. Artuz,* 2001 WL 1313465, at *5 (citations omitted). *Accord, Javier H. v. Garcia Botello,* 239 F.R.D. 342, 346 (W.D.N.Y.2006).

A motion to amend, supplement, or join parties should not be denied unless there has been undue delay, bad faith, undue prejudice to the opposing party, or the amendment is futile. *Milanese v. Rust Oleum Corp.,* 244 F.3d 104, 110 (2d Cir.2001). A motion to amend may also be denied when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed. *Berman v. Parco,* 986 F.Supp. 195, 217 (S.D . N.Y.1997). This is particularly true when the movant offers no excuse for the delay.

Generally, an amendment is futile if the pleading fails to state a claim or would otherwise be subject to dismissal. *U.M.G. Recordings, Inc. v. Lindor,* No. CV–05–1095, 2006 WL 3335048, at*2 (E.D.N.Y. Nov. 9, 2006) (citing *S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28, 42 (2d Cir.1979)). "In addressing the proposed futility of an amendment, the proper inquiry is comparable to that required upon a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.,* 404 F.3d 566, 604 (2d Cir.2005) (citation omitted). The court must accept the asserted facts as true and construe them in the light most favorable to the amending party. *Stetz v. Reeher Enterprises, Inc.,* 70 F.Supp.2d 119, 121 (N.D .N.Y.1999). When proposed amendments raise colorable claims, especially where they are based upon disputed facts, they should be allowed, and a comprehensive legal analysis deferred to subsequent motions to dismiss or for summary judgment. *See, e.g., Alexander Interactive, Inc. v. Adorama, Inc.,* No. 12 Civ. 6608, 2014 WL 113728, at *4 (S.D.N.Y. Jan. 13, 2014); *Gallagher v. Town of Fairfield,* 3:10CV1270, 2012 WL 370070, at *3 (D.Conn. Feb. 2, 2012); *S.S. Silberblatt,* 608 F.2d at 42–43; *WIXT Television, Inc. v. Meredith Corp.,* 506 F.Supp. 1003, 1010 (N.D.N.Y.1980). In the limited circumstances when a summary judgment motion is opposed with a cross-motion to amend a pleading, the futility of the proposed amendment is judged by whether it would survive a motion for summary judgment. *Milanese v. Rust Oleum Corp.,* 244 F.3d at 110.

### B. Analysis

**\*26** In his opposition to the motion for summary judgment, plaintiff requests that, if defendants' motion is not denied in its entirety, that he be allowed to amend his complaint to identify "Sgt. Todd" as the "Jane Doe" who ordered plaintiff to SHU and confiscated his knee braces. Plaintiff also seeks to add Robert Schattinger and Elizabeth Culkin, alleging that these individuals "are in charge of establishing the dietary menu" for DOCCS. (Pl.'s Mem. of Law at 16–7; Pl.'s Resp. to Def.'s Stmt. of Mat. Fact at 14, ¶ 54). Defense counsel did not file any response to plaintiff to address the motion to amend or offer any declarations from the new prospective defendants. Hence, the court must rely primarily on plaintiff's allegations in addressing whether his amended claims are futile, based on the standards of Fed.R.Civ.P. 12(b)(6).

Plaintiff fails to elaborate how Mr. Schattinger or Ms. Culkin are personally involved in this matter, beyond the bare allegation that these individuals establish the DOCCS menu. However, even assuming such personal involvement, the court concludes that plaintiff's claims against Mr. Schattinger and Ms. Culkin would be futile, for the reasons set forth in the *Williams* and *Hamilton* analysis in Section VI(C) of this report and recommendation. Similarly, the proposed claims against "Sgt. Todd [22]" would be futile for the same reasons set forth in Section V(A)(4) of this report and recommendation regarding defendants Schoonmaker and Gusman. Applying the summary judgment standard as required, the court thus orders that plaintiff's motion to amend be denied.

[22]   Plaintiff offers no facts in support of his conclusion that Sgt. Todd confiscated plaintiff's knee braces and ordered him to SHU. In their motion papers, defendants identify "Lt. Mark" as the individual who ordered plaintiff to SHU. Both Sgt. Todd and Lt. Mark are listed in the Eastern SHU log book, submitted as plaintiff's Exhibit C.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion for partial summary judgment (Dkt. No. 124, 125) be **GRANTED** on the grounds raised therein, and the following of plaintiff's claims dismissed:

  1. All claims for injunctive relief, to be dismissed as moot;

  2. All claims against defendants in their official capacities, to be dismissed with prejudice;

  3. All claims against defendant Fischer to be dismissed, due to lack of evidence of any personal involvement;

  4. Eighth Amendment claims, against defendants Smith, Griffin, Khramova, Schoonmaker, Gusman, and Brown only;

  5. Retaliation claim against defendant Maly, but only to the extent that it was predicated on an allegation of verbal harassment, to be dismissed with prejudice;

  6. Due process and right to privacy claims against defendant Pingotti; [23] and it is further

[23]   As noted above (at p. 2 and notes 12 and 14), the defendants' summary judgment motion did not address the following individual capacity claims for monetary damages, which survive: (1) claims against Dr. Maryann Genovese, Catherine Wells, and Pedro Diaz for medical indifference; (2) a claim against Dr. Genovese in her individual capacity for invasion of privacy; and (3) retaliation claims against Earnell Boddison, Joseph Smith, John Maly (involving conduct other than verbal harassment), Lt. Gardner, Lt. Palen, Sgt. Kimbler, and C.O. Brooks.

**RECOMMENDED** that all RLUIPA and First Amendment Religion claims (against defendants John Rapp and Rabbi A. Horowitz), be **DISMISSED** *sua sponte,* and with prejudice; [24] and it is further

[24]   If this court's recommendations are approved, defendants Fischer, Smith, Griffin, Khramova, Schoonmaker, Gusman, Brown, Pingotti, Rapp, and Horowitz may be terminated from this action, based on the dismissal of all claims against them.

**ORDERED,** that plaintiff's motion to amend (Dkt. No. 131) is **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

**\*27**  Filed May 20, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 5750136

---

End of Document                                        © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 857528
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Richard AUSTIN, Plaintiff,

v.

Brian PAPPAS, John Does, Yonkers Police Commissioner Charles C. Coles, Westchester County, Defendants.

No. 04-CV-7263 (KMK)(LMS).
|
March 31, 2008.

**Attorneys and Law Firms**

Mr. Richard Austin, Stormville, NY, pro se.

Rory Carleton McCormick, Esq., Corporation Counsel, City of Yonkers, Yonkers, NY, for Defendants.

*ORDER ADOPTING REPORT & RECOMMENDATION*

KENNETH M. KARAS, District Judge.

**\*1** Richard Austin ("Plaintiff") filed this suit pursuant to 42 U.S .C. § 1983 ("Section 1983") against Yonkers Police Officer Brian Pappas ("Defendant Pappas"), several John Doe Yonkers Police Officers ("John Doe Defendants"), former Yonkers Police Commissioner Charles C. Cola ("Defendant Cola") (whose name is misspelled in Plaintiff's Complaint as Charles C. Coles), and Westchester County (collectively, "Defendants"), alleging violations of Plaintiff's civil rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, along with various supplemental state law claims. [1] (Compl.¶¶ 17, 19.) Plaintiff alleged that these violations occurred when Defendants failed to protect Plaintiff from Franklyn Kelley, a private individual who physically attacked Plaintiff during the course of Plaintiff's May 16, 2003 arrest. (*Id.* ¶ 10.) Plaintiff alleged that Defendant Pappas and the John Doe Defendants handcuffed him and pinned him to the ground while Franklyn Kelley repeatedly kicked and punched Plaintiff in the face. (*Id.* ("The officers did nothing to protect the plaintiff from this vicious assault, even though plaintiff was helpless and in their custody [.]").) Defendants moved for summary judgment, and this Motion was referred by Judge McMahon to Chief Magistrate Judge Lisa M. Smith for review pursuant to 28 U.S.C. § 636(b)(1). On August 2, 2007, Magistrate Judge Smith issued a thorough Report and Recommendation ("R & R"), concluding that this Court should grant Defendants' Motion for Summary Judgment on the ground that Plaintiff has failed to demonstrate that there exists a genuine issue of material fact as to whether his constitutional rights were violated. Plaintiff was advised of his right to file objections to the R & R, but he did not do so.

[1]  On August 8, 2005, Plaintiff's claim against Westchester County was dismissed by the Honorable Gerald E. Lynch, to whom this case was initially assigned. On February 28, 2006, the case was transferred to White Plains and reassigned to Judge Colleen McMahon. The case was reassigned to the undersigned on August 6, 2007.

A district court reviewing a report and recommendation " 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.' " *Donahue v. Global Home Loans & Fin., Inc.,* No. 05-CV-8362, 2007 WL 831816, at \*1 (S.D.N.Y. Mar. 15, 2007) (quoting 28 U.S.C. § 636(b)(1)(C)). Under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, parties may submit objections to a magistrate judge's report and recommendation.

2008 WL 857528

The objections must be "specific" and "written," and must be made "within 10 days after being served with a copy of the recommended disposition." Fed.R.Civ.P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

Where a party does not submit an objection, " 'a district court need only satisfy itself that there is no clear error on the face of the record.' " *Donahue,* 2007 WL 831816, at *1 (quoting *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985)). In addition, a party's failure to object waives that party's right to challenge the report and recommendation on appeal. *See Fed. Deposit Ins. Corp. v. Hillcrest Assocs.,* 66 F.3d 566, 569 (2d Cir.1995) ("Our rule is that 'failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.' " (quoting *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989))).

 **\*2**  Here, Plaintiff has not filed objections to the R & R. Accordingly, the Court has reviewed the R & R for clear error only. In so doing, the Court adopts the conclusion reached in the R & R that Defendants' Motion for Summary Judgment should be granted, but the Court does so in part on different grounds than those relied on in the R & R.

First, the Court agrees with Magistrate Judge Smith that Defendants' noncompliance with Local Civil Rule 56.2 should be overlooked because any prejudice resulting from noncompliance was cured by the following: (i) Magistrate Judge Smith advised Plaintiff of the nature of summary judgment during a March 23, 2007 conference; and (ii) Magistrate Judge Smith annexed a Rule 56.2 notice to the R & R, a document to which Plaintiff was free to file objections. *See Narumanchi v. Foster,* No. 02-CV-6553, 2006 WL 2844184, at *2 (E.D.N.Y. Sept. 29, 2006) (refusing to deny defendant's motion for summary judgment based on failure of defendant to comply with Local Civil Rule 56.2 because "[a]ny prejudice to *pro se* plaintiffs [was] cured" by court's actions).

As expressed in the R & R, though Plaintiff did not file any opposition to Defendants' Motion for Summary Judgment, Defendants were still required to meet their burden of demonstrating to the Court that "no material issue of fact remains for trial." *See Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir.2001). The Court finds no clear error in Magistrate Judge Smith's determination that Defendants satisfied this burden.

With respect to Defendants Pappas and Cola, the Court finds that Plaintiff has failed to offer any evidence demonstrating that they were personally involved in the alleged violation of Plaintiff's constitutional rights. The " 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 122 (2d Cir.2004) (quoting *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977)). For purposes of Section 1983 liability, personal involvement can be established by evidence that:

> '(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring.'

*Id.* at 127 (quoting *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)); *accord Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 753 (2d Cir.2003); *Schiller v. City of New York,* No. 04-CV-7922, 2008 WL 200021, at *4 (S.D.N.Y. Jan. 23, 2008); *Fair v.. Weiburg,* No. 02-CV-9218, 2006 WL 2801999, at *4 (S.D.N.Y. Sept. 28, 2006). Further, a Section 1983 plaintiff must "allege a tangible connection between the acts of the defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986); *see also Fair,* 2006 WL 2801999, at *4 (citing *Bass* ).

**\*3** In support of their Motion for Summary Judgment, Defendants submitted evidence that Defendant Pappas did not directly participate in the arrest of Plaintiff, but he instead arrested Plaintiff's accomplice. For example, on April 8, 2004, at a hearing before the Honorable Richard A. Molea of the Westchester County Court, Defendant Pappas testified that he remained with Plaintiff's accomplice while other officers arrested Plaintiff. (Defs.' Affirmation in Supp., Ex. J, 50-51.) Further, in response to interrogatories served on him by Plaintiff, Defendant Pappas stated that he "did not observe what transpired during the course of plaintiff's arrest." (*Id.,* Ex. L.) Finally, Defendants offer a police report indicating that "Pappas was detaining [Plaintiff's accomplice] in the garage area, as additional units arrived and placed [Plaintiff] into custody." (*Id.,* Ex. C.)

Plaintiff has failed to offer any evidence refuting Defendant Pappas' version of events. In other words, Plaintiff has offered no evidence demonstrating that Defendant Pappas was actually one of the officers who arrested him and allegedly pinned him to the ground while Kelley assaulted him. In fact, during his deposition testimony, Plaintiff admitted that he was not sure whether Defendant Pappas was one of the police officers who arrested him, and that the reason Defendant Pappas was named as a defendant in the present suit was because Plaintiff had seen his name on Plaintiff's felony complaint. (*Id.,* Ex. G, 32-35.) As such, the unrefuted evidence before the Court demonstrates that Defendant Pappas was not one of the officers directly involved in Plaintiff's arrest. Plaintiff therefore has failed to satisfy a prerequisite to liability under Section 1983-namely that Defendant Pappas had personal involvement in the alleged violation of Plaintiff's constitutional rights. *See Back,* 365 F.3d at 122. Thus, Plaintiff's claim against Defendant Pappas must be dismissed.

Plaintiff alleged that Defendant Cola, Yonkers Police Commissioner at the time of Plaintiff's 2003 arrest, violated Plaintiff's constitutional rights by "authoriz[ing], tolerat[ing], as institutionalized practices, and ratif[ying] the misconduct [of Defendant Pappas and John Doe Defendants]." (Compl.¶ 14.) More specifically, Plaintiff charges Defendant Cola with failure to properly: (1) discipline subordinate officers; (2) take adequate precautions in hiring subordinate officers; (3) report criminal acts by police personnel to the Westchester County District Attorney; and (4) establish a system for dealing with complaints about police misconduct. (*Id.*) Plaintiff does not assert that Defendant Cola directly participated in the violation of his constitutional rights; instead, Plaintiff urges the Court to find Defendant Cola liable under Section 1983 based on his role as supervisor of Defendant Pappas and the John Doe Defendants.

"It is well settled, however, that the doctrine of respondeat superior standing alone does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity." *See Hayut,* 352 F.3d at 753 (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978)). Instead, it is necessary to establish a supervisory official's personal involvement in the alleged constitutional violation. *See id.; Fair,* 2006 WL 2801999, at \*4.

**\*4** Plaintiff has failed to provide the Court with any evidence from which a reasonable jury could conclude that Defendant Cola was personally involved in the alleged violation of Plaintiff's constitutional rights. Plaintiff has offered no evidence demonstrating that Defendant Cola was aware of and failed to remedy constitutional violations by subordinate officers, or that he acted in a grossly negligent or deliberately indifferent manner in supervising or training subordinate officers. There is also no evidence in the record to support a theory that Defendant Cola created a policy or custom that fostered and led to the alleged violation of Plaintiff's rights. *See Hayut,* 352 F.3d at 754 (finding as fatal to plaintiff's Section 1983 claim the fact that there existed "no evidence that, after becoming aware of the alleged harassment, any of the [supervisory officials] failed to respond or remedy the situation, that any of these [supervisory officials] created or allowed a policy to continue under which alleged harassment could occur, or that they were grossly negligent in monitoring [the alleged harasser's] conduct"); *Harris v. City of New York,* No. 01-CV-6927, 2003 WL 554745, at \*6 (S.D.N.Y. Feb. 26, 2003) ("[P]laintiff has put forth no evidence pointing to defendant ['s] personal involvement in plaintiff's alleged deprivation of rights .... Plaintiff's conclusory allegations regarding defendant['s] alleged supervisory role, without more, cannot withstand summary judgment."). Further, nothing in the record, even drawing all inferences in Plaintiff's favor, suggests any tangible connection between Defendant Cola's training or supervision of subordinate officers and the alleged violation of Plaintiff's rights. In fact, the record contains no evidence with regard to Defendant Cola whatsoever. Without such evidence, no reasonable jury could conclude that Defendant Cola had personal involvement in the alleged violation of Plaintiff's constitutional rights, which means that Plaintiff has failed to satisfy a prerequisite to Section 1983 liability, and therefore that Defendant Cola is entitled to summary judgment in his favor. *See Davis*

*v. Kelly,* 160 F.3d 917, 921 (2d Cir.1998) ("After an opportunity for discovery, undisputed allegations that [a] supervisor lacked personal involvement will ultimately suffice to dismiss that official from the case.").

In sum, the Court finds that Plaintiff has failed to establish the personal involvement of Defendants Pappas and Cola in the alleged violation of his rights. For reasons set forth more fully in the R & R, the Court also dismisses the Complaint as to the John Doe Defendants because Plaintiff's time limit to amend the Complaint in order to substitute in named defendants has lapsed. Therefore, the Court finds it unnecessary to reach the question of whether Plaintiff has adequately established an underlying violation of his constitutional rights. Finally, having determined that no cognizable federal claims exist, the Court will follow Magistrate Judge Smith's recommendation in declining to exercise jurisdiction over the state law claims.

**\*5**  Accordingly, it is hereby:

ORDERED that the Report and Recommendation dated August 2, 2007, is ADOPTED on the grounds set forth in this Order; and it is further

ORDERED that Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 is GRANTED.

The Clerk of Court is respectfully directed to enter judgment in favor of Defendants, to terminate Defendant's Motion (Dkt. No. 28), and to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 857528

**End of Document**                                   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 4744735
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jay BRADSHAW, Plaintiff,

v.

Anthony ANNUCCI, et al., Defendants.

9:23-CV-0602 (MAD/ML)
|
Signed July 24, 2023

**Attorneys and Law Firms**

JAY BRADSHAW, 08-A-3654, Plaintiff, pro se, Great Meadow Correctional Facility, Box 51, Comstock, NY 12821.

**DECISION and ORDER**

MAE A. D'AGOSTINO, United States District Judge

## I. INTRODUCTION

**\*1** Pro se plaintiff Jay Bradshaw commenced this action by filing a complaint asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis ("IFP"), and a request for preliminary injunctive relief. Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application"); Dkt. No. 4 ("Preliminary Injunction Motion"). [1] Plaintiff, who is incarcerated at Great Meadow Correctional Facility, has not paid the filing fee for this action.

[1]    The complaint was also accompanied by an application seeking leave to commence a new civil action in this District as required by the Pre-Filing Order entered by the Honorable Glenn T. Suddaby on March 3, 2022. *See In re: Bradshaw*, No. 9:21-PF-0002 (GTS), Dkt. No. 4. By Decision and Order entered on May 18, 2023, the Honorable Brenda K. Sannes granted plaintiff's application to commence this action. *Id.*, Dkt. No. 10.

## II. IFP STATUS

Where a plaintiff seeks leave to proceed IFP, the Court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying, in full, the Court's filing fee of four hundred and two dollars ($402.00). [2] The Court must also determine whether the "three strikes" provision of 28 U.S.C. § 1915(g) ("Section 1915(g)") bars the plaintiff from proceeding IFP and without prepayment of the filing fee. [3] More specifically, Section 1915(g) provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). If the plaintiff is indigent and not barred by Section 1915(g), the Court must consider the sufficiency of the claims stated in the complaint in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

**Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)**

2023 WL 4744735

2       "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee ... at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

3       The manifest intent of Congress in enacting Section 1915(g) was to curb prison inmate abuses and to deter the filing of multiple, frivolous civil rights suits by prison inmates. *Tafari v. Hues*, 473 F.3d 440, 443-44 (2d Cir. 2007). The question of whether a prior dismissal is a "strike" is a matter of statutory interpretation and, as such, is a question for the court to determine as a matter of law. *Tafari*, 473 F.3d at 442-43.

**\*2** In this case, plaintiff has demonstrated economic need through his IFP Application, and has filed the inmate authorization form required in the Northern District of New York. *See* Dkt. Nos. 2, 3. Thus, the Court must determine whether the "three strikes" rule of Section 1915(g) bars plaintiff from proceeding with this action IFP.

### A. Determination of "Strikes"

Plaintiff is a frequent litigator, having commenced, in addition to this action, at least twenty-five previously filed civil actions in the district courts in the Second Circuit since 2008. *See* PACER Case Locator <https://pcl.uscourts.gov/pcl/pages/search/findParty.jsf> (last visited July 18, 2023). The following is a list of those actions: (1) *Bradshaw v. McQueen*, No. 08-CV-5518 (S.D.N.Y. filed June 18, 2008); (2) *Bradshaw v. Officer Banks*, No. 09-CV-0966 (S.D.N.Y. filed Feb. 4, 2009); (3) *Bradshaw v. Brown*, No. 13-CV-4308 (E.D.N.Y. filed July 31, 2013); (4) *Bradshaw v. The City of New York*, No. 15-CV-2166 (E.D.N.Y. filed Apr. 13, 2015); (5) *Bradshaw v. The City of New York*, No. 15-CV-4638 (S.D.N.Y. filed June 10, 2015); (6) *Bradshaw v. The City of New York*, No. 15-CV-5481 (S.D.N.Y. filed July 10, 2015); (7) *Bradshaw v. The City of New York*, No. 15-CV-7074 (S.D.N.Y. filed Sept. 8, 2015); (8) *Bradshaw v. The City of New York*, No. 15-CV-8252 (S.D.N.Y. filed Oct. 20, 2015); (9) *Bradshaw v. The City of New York*, No. 15-CV-9031 (S.D.N.Y. Nov. 17, 2015); (10) *Bradshaw v. The City of New York*, No. 17-CV-1199 (S.D.N.Y. filed Feb. 16, 2017); (11) *Bradshaw v. The City of New York*, No. 17-CV-1168 (E.D.N.Y. filed Feb. 27, 2017); (12) *Bradshaw v. The City of New York*, No. 18-CV-8215 (S.D.N.Y. filed Sept. 7, 2018) ("*Bradshaw v. The City of New York IX*"); (13) *Bradshaw v. Locke*, No. 19-CV-428 (N.D.N.Y. filed April 10, 2019) ("*Bradshaw v. Locke*"); (14) *Bradshaw v. Burns*, No. 19-CV-931 (N.D.N.Y. filed July 31, 2019) ("*Bradshaw v. Burns*"); (15) *Bradshaw v. Annucci*, No. 20-CV-6083 (W.D.N.Y. filed Feb. 6, 2020); (16) *Bradshaw v. Piccolo*, No. 20-CV-6106 (W.D.N.Y. Feb. 18, 2020); (17) *Bradshaw v. Piccolo*, No. 20-CV-6368 (W.D.N.Y. filed June 4, 2020); (18) *Bradshaw v. Annucci*, No. 20-CV-6548 (W.D.N.Y. Sept. 29, 2020); (19) *Bradshaw v. Piccolo*, No. 21-CV-6050 (W.D.N.Y. filed Jan. 19, 2021); (20) *Bradshaw v. Gordon*, No. 21-CV-0645 (N.D.N.Y. filed June 3, 2021) ("*Bradshaw v. Gordon*"); (21) *Bradshaw v. Uhler*, No. 21-CV-0776 (N.D.N.Y. filed July 8, 2021) ("*Bradshaw v. Uhler*"); and (22) *Bradshaw v. Marshal*, No. 21-CV-0826 (N.D.N.Y. filed July 21, 2021) ("*Bradshaw v. Marshal*"); (23) *Bradshaw v. Annucci*, No. 21-CV-0901 (N.D.N.Y. filed Aug. 11, 2021) ("*Bradshaw v. Annucci*"); (24) *Bradshaw v. Brand*, No. 21-CV-0942 (N.D.N.Y. filed Aug. 20, 2021) ("*Bradshaw v. Brand*"); and (25) *Bradshaw v. Bishop*, No. 22-CV-0094 (GTS/ML) (N.D.N.Y. filed Feb. 2, 2022) ("*Bradshaw v. Bishop*").[4]

4       *Bradshaw v. Locke, Bradshaw v. Marshall,* and *Bradshaw v. Annucci* are all currently pending in this District. On December 3, 2021, judgment was entered in *Bradshaw v. Brand* dismissing the action without prejudice based on plaintiff's failure to comply with the filing fee requirement. *Id.*, Dkt. No. 6. On February 18, 2022, plaintiff's IFP status was revoked in *Bradshaw v. Gordon* and *Bradshaw v. Uhler*, and those actions were later dismissed without prejudice based on plaintiff's failure to comply with the filing fee requirement. *See Bradshaw v. Gordon*, Dkt. Nos. 67, 75; *Bradshaw v. Uhler*, Dkt. Nos. 72, 81. On April 28, 2023, judgment was entered in *Bradshaw v. Bishop* dismissing the action without prejudice based on plaintiff's failure to comply with the filing fee requirement. *Id.*, Dkt. No. 27.

**\*3** Upon review of these actions, and consistent with the determinations reached by the Honorable Brenda K. Sannes in *Bradshaw v. Locke* and *Bradshaw v. Burns*, by the Honorable Glenn T. Suddaby in *Bradshaw v. Gordon* and *Bradshaw v. Uhler*,

2023 WL 4744735

and by this Court in *Bradshaw v. Marshal*, this Court once again finds that, as of the date that plaintiff commenced this action, he had acquired at least four "strikes."[5] As a result, plaintiff's IFP Application must be denied unless it appears that the "imminent danger" exception to the "three strikes" rule set forth in Section 1915(g) is applicable to this action.

[5]    The actions in which plaintiff acquired strikes are as follows: (1) *Bradshaw v. McQueen*, No. 08-CV-5518, Dkt. No. 32 (S.D.N.Y. Feb. 11, 2010) (dismissing complaint for failure to state a claim upon which relief may be granted); (2) *Bradshaw v. Brown*, No. 13-CV-4308, Dkt. No. 52 (E.D.N.Y. May 18, 2017) (Mandate dismissing appeal of dismissal order on grounds that it lacked "an arguable basis either in law or in fact"); (3) *Bradshaw v. The City of New York*, No. 15-CV-2166, Dkt. No. 58 (E.D.N.Y. Aug. 22, 2017) (dismissing complaint for failure to state a claim upon which relief may be granted); (4) *Bradshaw v. The City of New York*, No. 15-CV-2166, Dkt. No. 62 (E.D.N.Y. Nov. 16. 2018) (Mandate dismissing appeal on grounds that it lacked "an arguable basis either in law or in fact"). In *Bradshaw v. Locke*, Judge Sannes specifically discussed each of these four "strikes" in her initial Decision and Order entered on May 9, 2019. *See id.*, Dkt. No. 8.

**B. Applicability of the "Imminent Danger" Exception**

The "imminent danger" exception protects a prison inmate exposed to potential serious physical injury from the consequences of his earlier mistakes in filing frivolous litigation. Generally speaking, the allegations relevant to this inquiry "are those in which [plaintiff] describes physical injury, threats of violence, and deprivation of medical treatment." *Chavis v. Chappius*, 618 F.3d 162, 165 (2d Cir. 2010). The Second Circuit has described the nature of the Court's inquiry regarding imminent danger as follows: "although the feared physical injury must be serious, we should not make an overly detailed inquiry into whether the allegations qualify for the exception, as § 1915(g) concerns only a threshold procedural question, while [s]eparate PLRA provisions are directed at screening out meritless suits early on." *Id.* at 169-70 (*quoting Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007)) (internal quotation marks omitted).

"[F]or a prisoner to qualify for the imminent danger exception, the danger must be present when he files his complaint – in other words, a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed." *Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009); *see also Polanco v. Hopkins*, 510 F.3d 152 (2d Cir. 2007); *Akassy v. Hardy*, 887 F.3d 91, 96 (2d Cir. 2018). However, "allegations of past violence can satisfy the imminent danger exception when, for example, the past harms are part of an ongoing pattern of acts." *Carter v. New York State*, No. 20-CV-5955, 2020 WL 4700902, at *1 (S.D.N.Y. Aug. 12, 2020) (citing *Chavis*, 618 F.3d at 170 (holding that "[a]n allegation of a recent brutal beating, combined with three separate threatening incidents, some of which involved officers who purportedly participated in that beating, is clearly the sort of ongoing pattern of acts that satisfies the imminent danger exception.")).

**\*4**  In addition, "§ 1915(g) allows a three-strikes litigant to proceed [IFP] only when there exists an adequate nexus between the claims he seeks to pursue and the imminent danger he alleges." *Pettus*, 554 F.3d at 296. In deciding whether such a nexus exists, the Second Circuit has instructed the courts to consider "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is fairly traceable to unlawful conduct asserted in the complaint, and (2) whether a favorable judicial outcome would redress that injury." *Id.* at 298-99.

In this case, the complaint alleges that at the time of filing, plaintiff had been continuously confined in the Residential Rehabilitation Unit ("RRU") for one year, where he was scheduled to remain housed for at least an additional year. Compl., ¶¶ 221, 233, 248, 259-260, 303. The complaint further alleges that plaintiff is confined in his cell for all but two hours each day, and had not received, throughout the year that he was confined in the RRU, an individual rehabilitation plan or private mental health therapy, despite a history of self-harm and ongoing anxiety and depression associated with his confinement status. *Id.*, ¶¶ 307-313, 332-340. The complaint also identifies several incidents of plaintiff being assaulted by other inmates, alleges that he is likely to be harmed in the future if he continues to be placed in a double-bunk cell, and further alleges that he was informed three days before the complaint was filed that he would be placed in a double-bunk cell "as soon as possible." *Id.*, ¶¶ 96-179.

2023 WL 4744735

At this stage of the proceeding, the Court finds that the allegations in the complaint plausibly suggest that plaintiff was "under imminent danger of serious physical injury" when he signed his complaint on April 17, 2023. *See, e.g., Lindsey v. Hoem*, 799 Fed. App'x 410, 412 (7th Cir. 2020) ("Lindsey's first complaint alleges that prison staff have placed Lindsey in danger of imminent physical harm by failing to treat his PTSD. Suicidal ideation and a risk of self-harm, particularly for a mentally ill prisoner like Lindsey in prolonged segregation, satisfy the statutory imminent-danger exception that the court adopted in its sanction order.") (citing, *inter alia, Sanders v. Melvin*, 873 F.3d 957, 960 (7th Cir. 2017)); *Abreu v. Lira*, No. 12-CV-1385 (NAM/DEP), Dkt. No. 5 (N.D.N.Y. Feb. 28, 2013) (granting "three strikes" plaintiff leave to proceed in forma pauperis, finding that plaintiff's allegations that he was "denied adequate medical care for his serious medical and mental health needs at Upstate Correctional Facility" were sufficient to plausibly suggest that he was "under imminent danger of serious physical injury" when the action was filed). Thus, plaintiff is granted leave to proceed IFP in this action.

The Court notes that this is a preliminary finding which defendants are entitled to challenge or refute in future filings. Thus, plaintiff's IFP status will be revoked if, as the case progresses, it is determined that he did not face "imminent danger" when he commenced this action or is otherwise not entitled to proceed IFP.

## III. INITIAL REVIEW OF THE COMPLAINT

### A. Governing Legal Standard

Having found that plaintiff meets the financial criteria for commencing this action IFP, and because he seeks relief from officers and employees of governmental entities, the Court must now consider the sufficiency of the allegations set forth in his complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e). Similarly, Section 1915A directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that Sections 1915(e) and 1915A are available to evaluate prisoner pro se complaints).

**\*5** Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95-CV-4768, 1998 WL 832708, at \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Thus, although the court has the duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the court also has a responsibility to determine whether plaintiff may properly proceed with this action.

### B. Summary of the Complaint

Plaintiff asserts allegations of wrongdoing that occurred while he was incarcerated at Upstate Correctional Facility ("Upstate C.F."), in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").

The forty-five (45) page handwritten complaint, which is generally organized by claim, alleges that on multiple occasions between June, 2021 and April, 2023, corrections officials subjected plaintiff to unnecessary force, failed to protect him from assaults by other inmates, issued him false misbehavior reports that resulted in excessive restrictive confinement, deprived him of constitutionally adequate conditions-of-confinement, denied him access to mental health treatment, interfered with his mail, subjected him to retaliatory cell searches, and deprived him of personal property. *See generally*, Compl. The following facts are set forth as alleged by plaintiff in his complaint.

### 1. Use-of-Force Incidents Involving Corrections Officials

The complaint identifies the following use-of-force incidents involving corrections officials: (1) defendant Corrections Officer Osborn "maliciously slamm[ing] plaintiff's hand in the cell hatch on June 18, 2021[,]" Compl., ¶ 16 (hereinafter, "the First Assault"); (2) defendant Corrections Sergeant John Doe #1 forcibly pressing plaintiff into a wall while handcuffed, despite plaintiff's complaints of pain, on June 24, 2021, Compl., ¶ 17 (hereinafter, "the Second Assault"); (3) defendant Corrections Officer Phillips "slamm[ing]" plaintiff to the floor of his cell and placing him in a "choke hold" while defendant Corrections Officer Tyler "searched plaintiff's anal cavity for contraband" on July 1, 2021, Compl., ¶¶ 19-22 (hereinafter, "the Third Assault"); (4) defendant Osborn "intentionally and maliciously slamm[ing] plaintiff's hand with the cell door hatch" on September 27, 2021, Compl., ¶ 31 (hereinafter, "the Fourth Assault"); (5) defendant Corrections Officer Menard "intentionally and maliciously slamm[ing] plaintiff's hand with the cell door hatch" on December 5, 2021, Compl., ¶ 37 (hereinafter, "the Fifth Assault"); (6) defendant Corrections Officer Bailey "grab[bing]" plaintiff by the back of his coat and twisting his waist shackles while exiting a bus on December 20, 2021, and Bailey and defendant Corrections Officer Trombley thereafter pushing plaintiff and squeezing his handcuffs during the escort back to his cell, in the presence of defendant Corrections Sergeant Cymbrak, Compl., ¶¶ 40-42 (hereinafter, "the Sixth Assault"); (7) defendant Corrections Officers Mitchell and Chase punching plaintiff in his cell and defendant Corrections Sergeant Marshall spraying plaintiff in the eyes with a foreign substance on January 30, 2022, while defendant Corrections Lieutenant Gettman, Corrections Officer Morrison, and Corrections Sergeant John Doe #2 stood by, Compl., ¶¶ 56-60 (hereinafter, "the Seventh Assault"); (8) defendant Corrections Officer John Doe #3 tightening plaintiff's handcuffs and slamming him into a wall, and defendant Osborn pushing plaintiff into a wall during an escort on April 30, 2022, Compl., ¶¶ 71-73 (hereinafter, "the Eighth Assault"); (9) defendant Osborn threatening plaintiff with harm, defendants Gettman, Corrections Sergeant Plonka, and Corrections Captain Gravlin disregarding the reported threat, defendants Osborn and Corrections Officer Robare thereafter macing and restraining plaintiff in his cell, and defendants Osborn and Corrections Officer Carter assaulting plaintiff in a different cell, in the presence of defendants Plonka and Corrections Officer John Doe #4, on December 12, 2022, Compl., ¶¶ 76-84 (hereinafter, "the Ninth Assault").

**\*6** The complaint also alleges that (1) defendant Osborn initiated the First Assault in retaliation for plaintiff filing a grievance, Compl., ¶ 16, (2) defendant Corrections Officer Hooper, defendant Corrections Sergeant McGee, and defendant Phillips each authored false reports regarding the Third Assault in an effort to "conceal" the wrongdoing, Compl., ¶¶ 23, (3) defendant Menard initiated the Fifth Assault in retaliation for plaintiff filing a grievance, Compl., ¶ 37, (4) defendant Trombley participated in the Sixth Assault in retaliation for plaintiff filing a lawsuit against him, Compl., ¶ 43, (5) defendants Bailey and Trombley

engaged in retaliatory acts of intimidation against plaintiff following the Sixth Assault, Compl., ¶¶ 46-50, (6) defendant Marshall directed "retaliatory search[es]" of plaintiff's cell on January 6 and January 30, 2022, prior to the Seventh Assault, Compl., ¶¶ 53, 56, (7) defendant Chase engaged in acts of intimidation against plaintiff following the Seventh Assault, Compl., ¶¶ 62-69, (8) defendants Robare, Osborn, Plonka, Gravlin, and Gettman "conspired to conceal" the Ninth Assault "by falsely reporting the incident[,]" Compl., ¶ 81, and (9) defendants Upstate Correctional Facility Superintendent Uhler, Deputy Superintendent of Security Bishop, DOCCS Special Investigators Nichols and Holmes, and DOCCS Commissioner Annucci failed to protect plaintiff from assaults that occurred after July 1, 2021, by denying his grievances and failing to take "remedial action" against the involved officials. Compl., ¶¶ 23-26, 34-35, 38-39, 44-46, 51-52, 70-71, 74-75.

### 2. Assaults By Other Inmates

#### a. First Inmate Assault

On April 22, 2022, plaintiff returned to his cell from a program to find "several officers standing outside" and "Inmate J ... locked in the recreation cell." Compl., ¶ 96. "Inmate J immediately told plaintiff to tell the officers that plaintiff cannot stay in the cell, and threatened to beat-up plaintiff while calling [him] a 'rapo.' " *Id.*, ¶ 97. Defendant Corrections Sergeant McQuinn and defendant Corrections Officer Waite "disregarded Inmate J's repeated threats against plaintiff[,]" with McQuinn stating that "Bishop approved the double-bunk." *Id.*, ¶ 98. Defendants McQuinn and Waite then "exited the gallery before directing the recreation cell door to be open[ed] to allow Inmate J to enter the cell[.]" *Id.*, ¶ 99.

Upon entering the cell, Inmate J "immediately attacked plaintiff" and did so for a second time "when the officer arrived to serve lunch." Compl., ¶ 99. Plaintiff submitted a grievance regarding the incident, which was "forwarded" to defendants Uhler and Bishop for resolution. *Id.*, ¶ 100. The grievance was denied and plaintiff was thereafter placed in another double-bunk cell and "assaulted by other prisoners." *Id.*

#### b. Second Inmate Assault

On April 25, 2022, defendants Bishop and Corrections Sergeant Fletcher "recommended and directed" corrections officers to remove plaintiff from his cell "under the guise of a cell search" and place him in a cell with Inmate Tullis, "a known ... gang member and undercover homosexual" with "a history of violence against other prisoners in double-bunk cells." Compl., ¶ 102. Each day between April 26 and April 29, 2022, Inmate Tullis threatened to assault plaintiff and forced him to engage in sexual activity. *Id.*, ¶¶ 103-106. On April 29, 2022, defendants Osborn and Corrections Lieutenant Rowe "stood before the door" while plaintiff was sexually assaulted, and thereafter, defendant Osborn told plaintiff that the behavior did not "look good." *Id.*, ¶ 106.

On April 30 and May 1, 2022, Inmate Tullis again forced plaintiff to engage in sexual activity. Compl., ¶¶ 107-108. On May 2, 2022, plaintiff's grievance regarding the sexual assaults was "received by the Grievance Supervisors[,] who notified defendant [Corrections Captain] Veneske." Compl., ¶ 108. In response, defendant Veneske "directed" defendant Chase and Corrections Officer Welch (not a party) "to attack plaintiff at about 10:15 a.m." *Id.*

At 5:00 p.m., Inmate Tullis again forced plaintiff to engage in sexual activity. Compl., ¶ 109. One hour later, plaintiff "called a Prison Rape Crisis Hotline and reported the sexual assault," and defendant Veneske thereafter removed plaintiff from the cell. *Id.*, ¶¶ 110-111. Although plaintiff submitted grievances regarding the sexual assaults, which were reviewed by defendants Bishop and Veneske and "forwarded to" defendants Nichols and Holmes for investigation, he "continued to be placed in a double-bunk cell and assaulted by other prisoners." *Id.*, ¶¶ 111-112.

### c. Third Inmate Assault

**\*7** On May 2, 2022, plaintiff filed a grievance regarding a "retaliatory search" carried out by defendant Corrections Sergeant Keleher on May 1, 2023. Compl., ¶ 113. On May 5, 2022, defendant Keleher directed two searches of plaintiff's cell and then recommended, and received approval from defendants Bishop and Corrections Lieutenant Debyah, for Inmate Samuel to be double-bunked with plaintiff. *Id.*, ¶ 114. Defendants Keleher, Debyah, Gravlin, and Bishop "denied plaintiff's request for protective custody." *Id.*, ¶ 115. Yet these officials "were aware that Inmate Samuel had a history of violence against other prisoners [and] was a Blood gang member," and plaintiff "has a history of being victimized by Bloods and labeled a snitch." *Id.*, ¶ 121.

Inmate Samuel was "forced by defendant Keleher into the cell and assaulted while handcuffed by defendant Osborn." Compl., ¶ 117. Inmate Samuel stated to these officials that he would not stay in the cell overnight and "immediately threatened to fight plaintiff[.]" *Id.* Shortly thereafter, Inmate Samuel "choked plaintiff from behind while sitting at the desk," causing plaintiff to "pass[ ] out[.]" *Id.*, ¶ 118. Inmate Samuel then "hog-tied plaintiff's hands behind his back and his legs, and dragged plaintiff to the recreation cell." *Id.*

Defendants Keleher and Corrections Officer Harmer subsequently entered the cell and "maliciously" stepped on plaintiff's legs and feet while he was handcuffed, in order to untie him. Compl., ¶ 119 (the "Tenth Assault"). Thereafter, defendants Keleher, Harmer, Osborn, and Gravlin "conspired to cover up the incident" by "falsely report[ing]" that "a cell fight" occurred, and omitting from the report any reference to defendants Keleher and Harmer entering the cell to untie plaintiff and stepping on him. *Id.*, ¶ 120. Plaintiff submitted a grievance regarding this incident, which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 122. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 123. Plaintiff's grievance was denied, and his complaint was dismissed, and he continued to be placed in a double-bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 122-123.

On May 13, 2022, "[a]s a means of retaliation for reporting sexual and physical assaults by other prisoners," defendant North "amended the Directive for double-cell housing assignments regarding victim prone inmates" to "permit inmates with a pattern of being victimized by other inmates to be double-bunk[ed] at the Deputy of Security's discretion." *Id.*, ¶ 124.

### d. Fourth Inmate Assault

On June 8, 2022, defendants Gravlin and Rowe recommended plaintiff to be double-bunked with Inmate Johnson, which defendant Bishop approved. Compl., ¶ 125. Once they were in a cell together, Inmate Johnson threatened to attack plaintiff and harassed him about his criminal case and altercation with Inmate Samuel. *Id.*, ¶ 126. On July 17, 2022, Inmate Johnson was transferred out of Upstate Correctional Facility. *Id.*, ¶ 127. Apparently around this time, plaintiff filed a grievance requesting that he not be double-bunked, wherein he referenced the physical and sexual assaults he had experienced. *Id.*

Thereafter, defendant Osborn and Rowe recommended that plaintiff be placed in a double-bunk cell with Inmate X, which defendant Bishop approved, even though Inmate X "appeared to need emergency mental health care and had a history of violence[.]" Compl., ¶ 128. The same day that Inmate X was placed in a cell with plaintiff, he was removed. *Id.*

On August 1, 2022, plaintiff filed a grievance regarding officials placing rival gang members in double-bunk cells together, which "increases the violence among prisoners" at the facility. Compl., ¶ 129. On August 5, 2022, defendants Fletcher, Gravlin, and Bishop assigned plaintiff to be celled with Inmate Y, who "immediately" attacked plaintiff in the cell and was removed. *Id.*, ¶¶ 130-131. Defendants Fletcher, Gravlin, and Bishop "were aware that Inmate Y had a history of violence against prisoners,

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 273 of 397
Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

was a Blood who could not remain in a double cell with plaintiff because he has a sex offense, and plaintiff has a history of being victimized by Bloods whom [sic] labeled him a snitch." *Id.*, ¶ 132.

 **\*8** Plaintiff submitted a grievance regarding this incident, which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 133. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 134. Plaintiff's grievance was denied, and his complaint was dismissed, and he continued to be placed in a double bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 133-134.

### e. Fifth Inmate Assault

On August 11, 2022, defendant Gravlin recommended that Inmate Jones be placed in a cell with plaintiff, which defendant Bishop approved even though Inmate Jones was a "known Blood" with a "history of violence against prisoners, and [weighed] about 220 pounds[.]" Compl., ¶ 133. Inmate Jones did not assault plaintiff, and was removed from the cell due to a pre-existing injury. *Id.*, ¶ 134. Defendants Gravlin and Bishop denied plaintiff's request for protective custody. *Id.*, ¶ 135.

On August 15, 2022, defendants Fletcher and Gravlin recommended that Inmate Burrell be placed in a cell with plaintiff, which defendant Bishop approved even though Inmate Burrell was a "known Blood" and was "involved in a cell fight immediately before being placed in the cell with plaintiff." Compl., ¶ 136. Inmate Burrell informed plaintiff that Fletcher and Gravlin wanted plaintiff out of the cell, and thereafter "attacked" him twice, including once in the presence of defendant Harrigan. *Id.*, ¶¶ 136-37.

Plaintiff submitted a grievance regarding this incident (and others), which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 141. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 142. Plaintiff's grievance was denied, and his complaint was dismissed, and he continued to be placed in a double bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 141-142.

### f. Sixth Inmate Assault

In November, 2022, defendants Uhler, Bishop, and "Classification and Movement" Officers John Doe #1 and John Doe #2 "conspired to transfer plaintiff back to Upstate [Correctional Facility] and ... confine [him] in [a] double-cell[.]" Compl., ¶ 145. On December 9, 2022, plaintiff was placed in a cell with Inmate Jones, who "punch[ed] plaintiff several times and choke[d] [him]." *Id.*, ¶ 146. Defendant Corrections Officer Orbegozo and defendant Corrections Sergeant John Doe #1 arrived at the scene "while plaintiff was being attacked[,]" but elected to leave plaintiff in the cell. *Id.*, ¶ 147.

On the morning of December 10, 2022, Inmate Jones attacked plaintiff again. Compl., ¶ 148. Plaintiff was thereafter removed from the cell, having suffered injuries to his lower back and spine. *Id.*, ¶¶ 148-149.

### g. Seventh Inmate Assault

On December 12, 2022, defendants Osborn, Plonka, Gettman, and Gravlin "directed plaintiff to exit his cell for a search" and then "moved [him] to a double cell as a means of retaliation and with the approval of defendant Bishop." Compl., ¶ 150. Plaintiff was placed in a cell with Inmate Flenders, "who had a history of violence against other prisoners." *Id.*, ¶ 151.

Inmate Flenders "threatened to attack plaintiff[,]" which was reported to defendants Osborn and Plonka, who ignored the information. Compl., ¶ 152. Thereafter, Inmate Flenders "punched plaintiff several times," which was again reported to

defendants Osborn and Plonka. *Id.*, ¶ 153. After a second assault on plaintiff by this inmate, defendant Osborn arrived at the cell and "repeatedly" sprayed plaintiff with mace. *Id.*, ¶ 154. Defendants Gravlin, Osborn, Carter, and Plonka then removed plaintiff from the cell and relocated him to a double-bunk cell with Inmate Williams, with the approval of defendant Bishop, even though this inmate also "had a history of violence against prisoners" and was "a known Blood gang member[.]" *Id.*, ¶ 155. Inmate Williams "attacked plaintiff" three times, causing him "serious injuries[.]" *Id.*, ¶ 156.

**\*9** Plaintiff submitted a grievance regarding this incident and the Sixth Inmate Assault, which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 158. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 159. Plaintiff's grievance was denied, and his complaint was dismissed, and he continued to be placed in a double bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 158-159.

Defendants Nurse Sturgen and Nurse Lewis also "disregarded plaintiff's medical conditions" and failed to exempt him from further placement in a double-bunk cell. Compl., ¶ 160.

### h. Eighth Inmate Assault

On January 23, 2023, plaintiff was housed in a cell with Inmate Z, who informed the gallery officer (not a party) that he did not want to remain in the cell with plaintiff and intended to "fight" him. Compl., ¶ 162. The officer advised plaintiff that defendant Corrections Sergeant Sharpe would address the situation in the morning and had him remain in the cell. *Id.* At some point, plaintiff submitted letters to defendant Dumas, which indicated that he had been assaulted with a "makeshift weapon" by Inmate Z, who threatened to attack plaintiff again. *Id.*, ¶ 163. Defendant Dumas "disregarded the letters" and "continued [to] pass plaintiff" at his cell. *Id.* Plaintiff also informed defendant Sturgen about the threat during a cell visit, and this official stated that he did not stop by for that issue, and walked away. *Id.*

Plaintiff submitted a grievance regarding this incident, which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 167. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 168. Plaintiff's grievance was denied, and his complaint was dismissed, and he continued to be placed in a double bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 167-168.

Defendant Lewis also "disregarded plaintiff's medical condition[,] which should have precluded [him] from double-bunking[.]" Compl., ¶ 169.

### i. Ninth Inmate Assault

On March 6, 2023, defendants Gravlin, Corrections Officer Hollenbeck, and Corrections Sergeant DeCosse recommended plaintiff's placement in a double-bunk cell with Inmate Davis, which defendant Bishop approved even though Inmate Davis was "over 300 pound[s]" and "a known Blood with a[n] extensive history of violence against other prisoners[.]" Compl., ¶ 171. The next day, plaintiff informed a counselor about his cell placement and fear for his safety. *Id.*, ¶ 172. Five days later, Inmate Davis reached an agreement with defendant Hollenbeck to move him to a larger cell. *Id.*, ¶ 173. Roughly one hour after this agreement was reached, Inmate Davis "angerly [sic] asked [defendant Corrections] Officer Connor Gordon where is Hollenbeck and preceded [sic] to attack plaintiff by grabbing [him] by the sweater and swing[ing] and slamming [him] [in]to the door and ground[,] then cutting [him] twice on the left side of his face." *Id.*, ¶ 174. As a result of defendant Bishop's failure to "do a reassessment" following this incident, plaintiff was relocated to a cell with another gang member who was involved in a cell fight minutes before plaintiff arrived. *Id.*, ¶ 175.

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)
Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 275 of 397
2023 WL 4744735

Plaintiff submitted a grievance regarding this incident, which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 178. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 180. Plaintiff's grievance was denied, and his complaint was dismissed, and he continues to be at risk of placement in a double bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 178, 180.

**\*10** Following this incident, defendants DeCosse and Bishop denied plaintiff's request for protective custody. Compl., ¶ 179.

Defendant Lewis also "disregarded plaintiff's medical condition[,] which should have precluded [him] from double-bunking[.]" Compl., ¶ 182.

On April 14, 2023, defendants Gravlin, Bishop, and Corrections Sergeant Jubert "had plaintiff assigned to a cell with [a] prisoner [that] medical did not clear for 'TB' test[,]" and defendant Jubert informed plaintiff that he would be placed in a double-bunk cell "as soon as possible." Compl., ¶ 179.

Defendant DOCCS Commissioner Annucci "enacted or approved the double-celling policy that plaintiff has been subjected to" during his incarceration. Compl., ¶ 185.

### 3. Discipline

The complaint identifies the following incidents where plaintiff was issued a misbehavior report that was allegedly based on false charges and/or resulted in a disciplinary sanction of restrictive confinement.

#### a. First Disciplinary Sentence

On or about November 1, 2021, plaintiff was issued two misbehavior reports charging him with, among other things, two sex offenses based on allegations that he made sexually charged statements to two corrections officials in response to their orders. Compl., ¶¶ 187-189. On November 9, 2021, defendant Commissioner Hearing Officer S. Martin presided over plaintiff's combined disciplinary hearing ("the First Disciplinary Hearing") and found him guilty of all charges except interference in the first report and violent conduct in the second report. *Id.*, ¶ 190. As a result of improperly finding plaintiff guilty of two sex offenses even though plaintiff's conduct did not constitute a sex offense, defendant Martin sentenced plaintiff to 90 days confinement in the special housing unit ("SHU"). *Id.* Plaintiff appealed defendant Martin's disciplinary determination, which was affirmed by defendants Uhler and DOCCS Director of Special Housing Unit Rodriguez. *Id.*, ¶¶ 191-193. At the time the sanction was imposed, plaintiff was already serving a 360-day SHU sanction. *Id.*, ¶ 195. Plaintiff served the 90-day SHU sanction between December 3, 2022 and March 3, 2023. *Id.*, ¶ 198.

#### b. Second Disciplinary Sentence

On November 16, 2021, plaintiff "reported to medical staff and [a] sergeant that defendant Menard slammed his hand and kept it wedged in the hatch on the cell door." Compl., ¶ 199. Two days later, plaintiff was issued a misbehavior report that charged him with various rules violations based on his alleged refusal of a direct order to return a tray to defendant Menard on November 16, 2021. *Id.*, ¶ 200.

On December 1, 2021, defendant Institutional Steward Terriah presided over plaintiff's disciplinary hearing ("the Second Disciplinary Hearing"), found plaintiff guilty of all charges in the misbehavior report, and imposed a penalty of 15 days of SHU confinement. Compl., ¶ 202. Plaintiff appealed the disciplinary determination on the grounds that "SHU could not be

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 276 of 397

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

imposed for the allege[d] offenses" in the misbehavior report. *Id.*, ¶ 203. Defendant Rodriguez failed to decide plaintiff's appeal within the 60-day deadline, which is "considered a constructive denial." *Id.*, ¶ 204. Plaintiff served the 15-day SHU sanction between March 3 and March 18, 2023. *Id.*, ¶ 209. Defendant Rodriguez then "extended" plaintiff's SHU sanction by another 30 days to April 12, 2023. *Id.*

### c. Third Disciplinary Sentence

**\*11**  On November 21, 2021, plaintiff submitted a grievance regarding defendant Menard issuing him a false misbehavior report on November 18, 2021. Compl., ¶ 211. On December 5, 2021, defendant Menard issued plaintiff a false misbehavior report charging him with various rules violations related to refusing direct orders and creating a disturbance in his cell. *Id.*, ¶¶ 212-213.

On December 23, 2022, defendant Terriah presided over plaintiff's disciplinary hearing ("the Third Disciplinary Hearing"), found plaintiff guilty of all charges in the misbehavior report, and imposed a penalty of 30 days of SHU confinement. Compl., ¶ 214. Plaintiff appealed the disciplinary determination on the grounds that the misbehavior report was "false and retaliatory" and "SHU confinement could not be imposed for the alleged offenses" in the misbehavior report. *Id.*, ¶ 215. On February 8, 2022, defendant Rodriguez modified the hearing decision by dismissing the interference charge, but failed to dismiss the improper SHU sanction. *Id.*, ¶ 216. Plaintiff is "expected to serve the 30 day SHU sanction from March 18, 2023 to April 17, 2023." *Id.*, ¶ 221.

### d. Fourth Disciplinary Sentence

On January 13, 2022, plaintiff filed a grievance regarding a "retaliatory cell search" and threat made to him by defendant Marshall in the presence of defendant Gettman. Compl., ¶ 223. On January 30, 2022, defendant Marshall issued plaintiff a misbehavior report, which charged him with assault on staff and other rules violations in connection with a use-of-force incident. *Id.*, ¶ 224.

At the conclusion of plaintiff's disciplinary hearing on February 17, 2022 ("the Fourth Disciplinary Hearing"), defendant Bishop found plaintiff guilty of the charges in the misbehavior report and imposed a penalty of 240 days of SHU confinement, and loss of package and commissary privileges. Compl., ¶ 226. On February 24, 2022, defendant Uhler reviewed and affirmed the disciplinary determination. *Id.*, ¶ 278. On April 21, 2022, defendant Rodriguez modified the SHU sanction to 180 days and otherwise affirmed the hearing decision. *Id.*, ¶ 229. Plaintiff is expected to either start or finish serving the 180-day SHU sanction on October 14, 2023. *Id.*, ¶ 233.

### e. Fifth Disciplinary Sentence

In "early April 2022," plaintiff filed a grievance and motion for injunctive relief in an ongoing federal lawsuit about his placement in a double-bunk cell. Compl., ¶ 235. On April 22, 2022, plaintiff was issued two misbehavior reports in connection with his altercation with Inmate J. *Id.*, ¶¶ 236-238.

At the conclusion of plaintiff's disciplinary hearing on April 26, 2022 ("the Fifth Disciplinary Hearing"), defendant Bishop found plaintiff guilty of the charges in the two misbehavior reports and imposed a penalty of 90 days of SHU confinement and loss of package and commissary privileges. Compl., ¶ 240. On April 29, 2022, defendant Uhler reviewed and affirmed the disciplinary determination even though SHU could not be imposed for the charged offenses pursuant to New York Correction Law § 137. *Id.*, ¶¶ 241-242. On July 12, 2022, defendant Rodriguez reviewed and affirmed the disciplinary determination. *Id.*, ¶ 243. Plaintiff is expected to serve the disciplinary sentence sometime between October, 2023 and January, 2024. *Id.*, ¶ 248.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 277 of 397
Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

**f. Sixth Disciplinary Sentence**

On December 10, 2022, plaintiff was issued a misbehavior report for fighting with his cellmate. Compl., ¶ 249. At the conclusion of plaintiff's disciplinary hearing on December 23, 2022 ("the Sixth Disciplinary Hearing"), defendant Commissioner Hearing Officer LaPlant found plaintiff guilty of the charges in the misbehavior report and imposed a penalty of 30 days of SHU confinement and one month loss of good time credits. *Id.*, ¶ 251. On January 9, 2023, plaintiff appealed the disciplinary determination on the grounds that SHU could not be imposed for the charged violations, and the imposed penalties were retaliatory. *Id.*, ¶ 252. Defendant Rodriguez failed to decide plaintiff's appeal within 60 days in accordance with DOCCS' regulations "as a means to keep plaintiff confined in segregation." *Id.*, ¶ 253. Plaintiff is expected to serve this SHU sanction sometime between February and June, 2024. *Id.*, ¶¶ 259-260.

**\*12** Each of the imposed SHU sanctions were authorized and/or ignored by defendant Annucci. Compl., ¶ 260.

**4. Confinement Conditions**

In addition to the assaults discussed above, the complaint identifies the following "atypical" conditions of confinement experienced by plaintiff between May, 2021 and April 11, 2022: (1) a deprivation of nine out of twelve meals between May 28 and May 31, 2021, Compl., ¶ 262; (2) a deprivation of ten out of twelve meals between July 1 and July 4, 2021, and numerous additional meal deprivations between July 6, 2021 and April, 2022, Compl., ¶ 264; (3) inadequate heating due to the heat vent being turned off and cold air being blown in to plaintiff's housing unit, at the direction of defendant Gravlin, between September 25 and October 2, 2021, Compl., ¶ 267; (4) defendant Corrections Officer Austin Martin removing plaintiff's mattress from his cell, with approval from defendant Marshall, from December 6 to December 11, 2021, Compl., ¶ 269; (5) defendant Corrections Sergeant Jane Doe "compell[ing] plaintiff to remain outside to stand in the freezing cold weather for about five or six hours while the officers and defendant Jane Doe remained inside the facility or on the bus with other prisoners[,]" Compl., ¶ 268; (6) the deprivation of a change of underwear and clothing between December 20, 2021 and January 23, 2022, Compl., ¶ 270; (7) defendant Sturgen forcing plaintiff to quarantine in his cell for fourteen days in July, 2021 and October, 2021 based on his refusal to "take a COVID-19 test[,]" Compl., ¶ 271; (8) searching plaintiff's cell and at times placing him in unclean cells without cleaning supplies at various points between May 25, 2021 and April 11, 2022, in response to him filing grievances, Compl., ¶¶ 272-290; (9) defendants Corrections Officers John Doe #5, Lamica, Locke, Keating, John Doe #6, and Ayer denying plaintiff access to legal mail on multiple dates between August and December, 2021, Compl., ¶¶ 291-295; (10) defendants Veneske and Gravlin denying plaintiff weekly phone calls on four separate occasions between July and December, 2021, Compl., ¶ 297; and (11) plaintiff's continuous confinement in the SHU between January 10, 2018 and April 12, 2022, Compl., ¶ 298.

Between April 12, 2022 and April 12, 2023, plaintiff was continuously confined in the RRU, where his confinement conditions were "identical to his confinement in the SHU, with the exception of approximately two hours of programming." Compl., ¶ 303. In addition to the assaults discussed above, the complaint identifies the following "atypical" conditions of confinement experienced by plaintiff during this time: (1) denial of "congregate religious services [and] recreation[,]" Compl., ¶ 303; (2) defendants Dumas, Gravell, and Mental Health Professionals Jane Doe #1 and Jane Doe #2 refusing to speak with plaintiff during rounds or place his name on callouts for private interviews between October 1, 2022 and April 12, 2023, Compl., ¶ 308; (3) defendant Jane Doe #2 disregarding plaintiff's request for an intake interview and stated concerns regarding depression and anxiety on April 3, 2023, Compl., ¶ 310; (4) defendant Jane Doe #1 failing to schedule plaintiff for a private mental health interview and, along with defendant Dumas, ignoring plaintiff's complaints regarding a lack of mental health care on April 12, 2023, Compl., ¶ 312; (5) defendants Gravlin, Veneske, Uhler, and Bishop denying plaintiff in-cell cleaning supplies between April and September, 2022, and December, 2022 and January, 2023, Compl., ¶¶ 315-318; (6) defendants Fletcher and Keleher directing retaliatory searches of plaintiff's cell between April 25 and May 5, 2022, which defendants Uhler and Bishop failed to remedy, Compl., ¶¶ 319-326; (7) defendant Deputy Superintendent of Programs Stickney depriving plaintiff of a personalized rehabilitation plan and limiting his out-of-cell programming to two hours per day, Compl., ¶¶ 332-340; (8) defendants Stickney

and Bishop denying plaintiff weekly congregate services each week between April 12, 2022 and April 12, 2023, Compl., ¶¶ 341-342; (9) defendant Annucci denying plaintiff a nutritionally adequate diet "as a cost saving measure" since 2019, Compl., ¶¶ 343-347; (10) denial of tablet services, packages, congregate recreation, access to the law library, daily showers, full access to commissary services, and the opportunity to appear at grievance hearings throughout plaintiff's placement in the RRU, Compl., ¶¶ 348-356; (11) defendant Bishop forcing plaintiff to share a cell with another inmate in excess of sixty days, Compl., ¶¶ 357-359; (12) defendants Uhler and Bishop requiring plaintiff to wear handcuffs and shackles for all out-of-cell movement, and to remain shackled during programs, Compl., ¶¶ 361-367; and (13) defendants Uhler and Bishop denying plaintiff access to certain personal property throughout his placement in the RRU, Compl., ¶¶ 371-372.

### 5. Plaintiff's Claims

**\*13** Liberally construed, the complaint asserts the following claims for relief against the named defendants in their individual capacities: (1) First Amendment retaliation claims against defendants Osborn, Bailey, Menard, Trombley, Marshall, Keleher, North, Plonka, Gettman, Gravlin, Bishop, Mitchell, Fletcher, Veneske, Uhler, Rowe, Classification and Movement Corrections Officers John Doe #1 and John Doe #2, Sturgen, Austin Martin, Lamica, Locke, and Keating; (2) First Amendment mail tampering claims against defendants Corrections Officer John Doe #5, Lamica, Locke, Keating, Lord, John Doe #6, and Ayer; (3) First Amendment free exercise claims against defendants Bishop, Stickney, Uhler, and Annucci; (4) Eighth Amendment excessive force and failure-to-intervene claims against defendants Osborn, Corrections Sergeant John Doe #1, Phillips, Tyler, Menard, Bailey, Trombley, Cymbrak, Mitchell, Chase, Marshall, Gettman, Morrison, Corrections Sergeant John Doe #2, Corrections Officer John Doe #3, Gravlin, Robare, Carter, Corrections Officer John Doe #4, Plonka, Keleher, and Harmer; (5) Eighth Amendment failure-to-protect claims against defendants McQuinn, Waite, Bishop, Uhler, Fletcher, Osborn, Rowe, Veneske, Nichols, Holmes, Annucci, Keleher, Debyah, Gravlin, North, Harrigan, Classification and Movement Corrections Officers John Doe #1 and John Doe #2, Orbegozo, Corrections Sergeant John Doe #1, Plonka, Gettman, Carter, Sturgen, Lewis, Sharpe, Dumas, Hollenbeck, DeCosse, Gordon, and Jubert; (6) Eighth Amendment conditions-of-confinement claims against defendants Gravlin, Uhler, Bishop, Sergeant Jane Doe, Austin Martin, Marshall, Sturgen, and Veneske based on COVID-19 quarantine requirements, unhygienic conditions, inadequate heating and clothing, and inadequate sleeping accommodations; (7) an Eighth Amendment conditions-of-confinement claim against defendant Annucci based on plaintiff's receipt of an inadequate diet; (8) Eighth Amendment conditions-of-confinement claims against defendants Uhler, Bishop, and Annucci based on excessive restrictive confinement in the SHU from August 1, 2021 to April 12, 2022; (9) Eighth Amendment conditions-of-confinement claims against defendants S. Martin, Uhler, Rodriguez, Terriah, Bishop, LaPlant, Stickney, and Annucci based on excessive restrictive confinement in the RRU; (10) Eighth Amendment medical indifference claims against defendants Dumas, Gravell, Jane Doe #1 and Jane Doe #2 based on denying plaintiff access to adequate medical and mental health treatment; (11) Fourteenth Amendment disciplinary due process claims against defendants S. Martin, Uhler, Rodriguez, Terriah, Bishop, and LaPlant; (12) Fourteenth Amendment due process claims against defendants Gravlin and Veneske based on denying plaintiff access to phone calls; (13) Fourteenth Amendment due process claims against defendants Stickney, Bishop, Uhler, Gravlin, Veneske, and Annucci based on the nature of plaintiff's confinement in the RRU; and (14) conspiracy claims against defendants Tyler, Phillips, Hooper, McGee, Robare, Gravlin, Keleher, Harmer, and Osborn.

Plaintiff seeks an award of money damages and injunctive relief. Compl. at 45. For a complete statement of plaintiff's claims and the facts he relies on in support of those claims, reference is made to the complaint.

### C. Analysis

Plaintiff seeks relief pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at \*2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").

"Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

### 1. Hastings, Peterson, and Spinner

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

The Second Circuit recently clarified that "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Instead, " 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Id.* (quoting *Iqbal*, 556 U.S. at 676).

"Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998)).

Here, plaintiff names Corrections Officers Hastings and Peterson and Steward Spinner as defendants without any allegations of wrongdoing by these individuals in the body of the complaint. Indeed, it is entirely unclear how and when, if at all, these officials may have violated plaintiff's federal rights. *See generally*, Compl.

Accordingly, plaintiff's Section 1983 claims against defendants Hastings, Peterson, and Spinner are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Retaliation Claims

Courts must approach claims of retaliation " 'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.' " *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (*quoting Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (*quoting Dawes*, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

 **\*14** Here, the Court liberally construes the complaint to assert retaliation claims against the following officials: (1) defendant Osborn based on this official initiating or participating in the First Assault, Fourth Assault, Eighth Assault, and Ninth Assault, and failing to protect plaintiff with respect to the second inmate assault, third inmate assault and seventh inmate assault, in response to plaintiff filing grievances against him, Compl., ¶¶ 16, 31, 71-73, 76-84, 101-106, 120, 150-155 ("First Retaliation Claim"); (2) defendants Lamica, Locke, and Keating denying plaintiff access to legal mail between August ad October, 2021, in response to plaintiff filing grievances against them, Compl., ¶¶ 292-294 ("Second Retaliation Claim"); (3) defendant Sturgen forcing plaintiff to quarantine in his cell for fourteen days in July, 2021 and October, 2021 based on his refusal to "take a COVID-19 test[,]" Compl., ¶ 271 ("Third Retaliation Claim"); (4) defendant Menard initiating the Fifth Assault in response to plaintiff filing a grievance against him, Compl., ¶ 37 ("Fourth Retaliation Claim"); (5) defendant Trombley participating in

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

the Sixth Assault in response to plaintiff filing a lawsuit against him, Compl., ¶ 43 ("Fifth Retaliation Claim"); (6) defendants Bailey and Trombley engaging in retaliatory acts of intimidation against plaintiff following the Sixth Assault in response to plaintiff filing grievances against them, Compl., ¶¶ 40-52 ("Sixth Retaliation Claim"); (7) defendant Austin Martin removing plaintiff's mattress from his cell, with approval from defendant Marshall, from December 6 to December 11, 2021, in response to plaintiff filing a grievance against him, Compl., ¶¶ 190-193, 269 ("Seventh Retaliation Claim"); (8) defendant Marshall directing "retaliatory search[es]" of plaintiff's cell on January 6 and January 30, 2022, prior to the Seventh Assault, and participating in the Seventh Assault, in response to plaintiff filing grievances and a lawsuit against him, Compl., ¶¶ 27-29, 53-60, 222-224 ("Eighth Retaliation Claim"); (9) defendant Mitchell participating in the Seventh Assault in response to plaintiff filing a grievance against him for his role in a use-of-force incident on July 12, 2021, and/or for filing a grievance against him shortly before the Seventh Assault, Compl., ¶¶ 27-29, 222 ("Ninth Retaliation Claim"); (10) defendant Veneske directing defendants Welch and Chase to attack plaintiff on May 2, 2022, in response to plaintiff filing a grievance regarding sexual assaults committed against him earlier that day, Compl., ¶ 108 ("Tenth Retaliation Claim"); (11) defendant Keleher directing two searches of plaintiff's cell and recommending him for placement in a cell with Inmate Samuel on May 5, 2022, in response to plaintiff filing a grievance against this official days earlier, Compl., ¶¶ 113-114 ("Eleventh Retaliation Claim"); (12) defendant North "amend[ing] the Directive for double-cell housing assignments regarding victim prone inmates" on May 13, 2022, to "permit inmates with a pattern of being victimized by other inmates to be double-bunk[ed] at the Deputy of Security's discretion[,]" in response to plaintiff "reporting sexual and physical assaults by other prisoners," Compl., ¶ 124 ("Twelfth Retaliation Claim"); (13) defendants Rowe and Osborn recommending, and defendant Bishop approving, plaintiff to be celled with Inmate X, in response to plaintiff filing a grievance regarding "double-bunking[,]" Compl., ¶¶ 128 ("Thirteenth Retaliation Claim"); (14) defendants Fletcher, Gravlin, and Bishop assigning plaintiff to be celled with Inmate Y on August 5, 2022, in response to plaintiff filing a grievance a few days earlier regarding officials placing rival gang members in double-bunk cells together, Compl., ¶¶ 129-131 ("Fourteenth Retaliation Claim"); (15) defendants Uhler, Bishop, and Classification and Movement Officials John Doe #1 and John Doe #2 "conspir[ing] to transfer plaintiff back to Upstate [Correctional Facility] and ... confine [him] in [a] double-cell" in late 2022, in response to grievances and lawsuits filed regarding his placement in a double-bunk cell, Compl., ¶¶ 145-184 ("Fifteenth Retaliation Claim"); (16) defendants Osborn, Plonka, Gettman, and Gravlin "mov[ing] plaintiff to a double cell" with Inmate Flenders on December 12, 2022, and then relocating him to a cell with Inmate Williams based on his complaints about being housed with Inmate Flenders and earlier grievances that he filed, Compl., ¶¶ 150-156 ("Sixteenth Retaliation Claim"); and (17) defendants Fletcher and Keleher directing searches of plaintiff's cell between April 25 and May 5, 2022, which defendants Uhler and Bishop failed to remedy, in response to earlier grievances and/or lawsuits that plaintiff filed against these officials, Compl., ¶¶ 319-326 ("Seventeenth Retaliation Claim").

With respect to the Second Retaliation Claim against defendant Locke, the complaint lacks allegations which plausibly suggest that the single alleged incident of mail tampering resulted in any sort of material injury to plaintiff, or otherwise deterred him from pursuing his legal action. Thus, plaintiff has failed to adequately allege that defendant Locke's conduct rises to the level of adverse action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights. *Rasheen v. Adner*, 356 F. Supp. 3d 222, 243-44 (N.D.N.Y. 2019) (finding an isolated incident of mail tampering did not constitute an adverse action because plaintiff failed to allege facts plausibly suggesting that he suffered any injury as a result); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010) (collecting cases in which claims of mail tampering did not constitute an adverse action, noting in particular that the plaintiff had alleged only a single instance of mail interference); *Islam v. Goord*, No. 05-CV-7502, 2006 WL 2819651, at *7 (S.D.N.Y. Sept. 29, 2006) (finding that isolated incidents of tampering with plaintiff's family and legal mail was not an adverse action because it would not deter an ordinary individual from exercising his constitutional rights and plaintiff failed to allege he suffered any injury as a result of the tampering). Accordingly, plaintiff's Second Retaliation Claim against defendant Locke is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to the Third Retaliation Claim against defendant Sturgen, even assuming that plaintiff's election not to "take a COVID-19 test" satisfies the protected activity requirement, the complaint lacks allegations which plausibly suggest that placing plaintiff on quarantine status constitutes adverse action that was substantially motivated by a desire to punish plaintiff for engaging in protected activity, as opposed to a desire to impose facility-wide health precautions. Accordingly, plaintiff's Third

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)
Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 281 of 397
2023 WL 4744735

Retaliation Claim against defendant Sturgen is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to the Seventh Retaliation Claim against defendant Austin Martin, although the complaint conclusorily alleges that this official removed plaintiff's mattress from his cell on December 6, 2021, "as a means of retaliation for filing a grievance against him[,]" the complaint does not identify any wrongdoing by this official prior to December 6, 2021, let alone indicate when plaintiff filed a grievance against this official. Thus, the Court has no basis to plausibly infer that the alleged wrongdoing on December 6, 2021, was substantially motivated by plaintiff's engagement in protected activity. Accordingly, plaintiff's Seventh Retaliation Claim against defendant Martin is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**\*15** With respect to the Twelfth Retaliation Claim against defendant North, the complaint lacks allegations which plausibly suggest that (1) defendant North was employed at Upstate C.F.; or (2) the alleged Directive amendment impacted only inmates at this facility. In addition, the Court has no basis to plausibly infer from the allegations in the complaint that defendant North was aware of plaintiff's engagement in protected activity before allegedly amending the Directive regarding double-celling. Thus, the complaint fails to adequately allege that defendant North's conduct was substantially motivated by plaintiff's engagement in protected activity. *See, e.g.*, *Hayes v. Dahkle*, No. 9:16-CV-1368 (TJM/CFH), 2017 WL 384066, at \*7 (N.D.N.Y. Jan. 27, 2017) (dismissing retaliation claim against corrections officer where plaintiff failed to allege that corrections officer was aware of the protected activity that gave rise to the claim); *Burroughs v. Petrone*, 138 F. Supp. 3d 182, 208 (N.D.N.Y. 2015) (same); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 368 (N.D.N.Y. 2010) ("Plaintiff has failed to demonstrate a causal connection between his conduct and the adverse action of leaving the lights on in the SHU twenty-four hours a day since this policy applied to all inmates in the SHU, not just Plaintiff .... Therefore, Plaintiff cannot sustain a claim a retaliation since the adverse action was not directed at him, but rather the entire SHU population."). Accordingly, plaintiff's Twelfth Retaliation Claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to the Fifteenth Retaliation Claim against defendants Uhler, Bishop, and Classification and Movement Officials John Doe #1 and John Doe #2 based on these officials allegedly "conspir[ing] to transfer plaintiff back to Upstate [Correctional Facility] and ... confine [him] in [a] double-cell" in late 2022, in response to grievances and lawsuits filed by plaintiff regarding his placement in a double-bunk cell, the complaint is devoid of allegations explaining how defendants John Doe #1 and John Doe #2 – both of whom are allegedly employed at the DOCCS Central Office in Albany, New York – may have known about lawsuits or grievances plaintiff filed related to double-celling. Furthermore, the complaint does not include any allegations explaining the basis for plaintiff's knowledge that these officials "conspired" with defendants Uhler and Bishop to return plaintiff back to Upstate C.F. Indeed, beyond plaintiff's speculation, the Court has no basis to plausibly infer that, but for plaintiff filing grievances and commencing litigation regarding double-celling, he would not have been transferred back to Upstate C.F. in or around November, 2022. Accordingly, plaintiff's Fifteenth Retaliation Claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to the remaining retaliation claims identified above, the Court finds that the complaint alleges enough to warrant a response. Accordingly, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that all retaliation claims other than the Second Retaliation Claim against defendant Locke, the Third Retaliation Claim, the Seventh Retaliation claim, the Twelfth Retaliation Claim, and the Fifteenth Retaliation Claim survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 3. Mail Tampering Claims

"[A] prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis*, 320 F.3d at 351. A prisoner's mail may only be restricted to further " 'one or more of the substantial governmental interests of security,

2023 WL 4744735

order, and rehabilitation ... [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.' " *Id.* (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)). "The First Amendment protects prisoners' access to mail directly, unlike the right of access to courts, which protects prisoners' access to mail only derivatively and with respect to given claims." *Bellezza v. Holland*, No. 09-CV-8434, 2011 WL 2848141, at *6 (S.D.N.Y. July 12, 2011) (dismissing access-to-the-courts claim for failure to allege injury, but holding that plaintiff adequately alleged a violation of his right to send and receive mail). "It is thus not necessary to allege actual injury when asserting a violation of one's right to the free flow of mail." *Antrobus v. City of New York*, No. 11-CV-2524, 2014 WL 1285648, at *4 (S.D.N.Y. Mar. 27, 2014) (citations omitted).

 **\*16** As courts have attempted to balance the competing interests implicated when facilities place restrictions on prison mail, the courts have "consistently afforded greater protection to legal mail than to non-legal mail[.]" *Davis*, 320 F.3d at 351. "While a prisoner has a right to be present when his legal mail is opened, ... an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Davis*, 320 F.3d at 351 (citations omitted). However, in *Washington v. James*, the Second Circuit found that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Davis*, 320 F.3d at 351 (citing *Washington*, 782 F.2d at 1139); *see also Turner v. Safley*, 482 U.S. 78, 84-91 (1987) (prison regulations impinging constitutional rights must be "reasonably related to legitimate penological interests").

In this case, the complaint alleges that plaintiff was denied access to legal mail on the following dates by the following officials: (1) on August 6, 2021, by defendant John Doe #5; (2) on September 15, 16, 17 and October 6, 7, 8, 9, 15, 16, 17, 18, and 19, 2021, by defendant Lamica; (3) on September 22, 2021, by defendant Lord; (4) on October 7, 2021, by defendant Locke; (5) on October 8, 2021, by defendant John Doe #6; (6) on October 22 and 23, 2021, by defendant Keating; and (7) on November 5 and December 1, 2021, by defendant Ayer. Compl., ¶¶ 291-295.

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's mail tampering claims against defendants Lamica, Lord, Locke, John Doe #6, Keating, and Ayer survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to plaintiff's mail tampering claim against defendant John Doe #5 because (1) this official's alleged refusal to provide plaintiff with access to legal mail was the first time plaintiff experienced this type of deprivation, and (2) a single incident of mail tampering – the first of its kind – does not plausibly suggest an ongoing practice of censorship unjustified by a substantial government interest.

Accordingly, plaintiff's mail tampering claim against defendant John Doe #5 is dismissed pursuant to 28 U.S.C. § 1915(e)(2) (B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Free Exercise Claims

The First Amendment to the United States Constitution guarantees the right to free exercise of religion. *See* U.S. Const. amend. I; *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). As is true with regard to the First Amendment generally, the free exercise clause applies to prison inmates, subject to appropriate limiting factors. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir 2003) (holding that "[p]risoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause") (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

To state a claim under the Free Exercise Clause of the First Amendment, an inmate "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274-75 (articulating test that inmates

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 283 of 397
Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

"must show at the threshold that the disputed conduct ... burdens his sincerely held religious beliefs," prior to advancing to the *Turner* test and "legitimate penological interests that justify the impinging conduct"). "For a burden to be substantial, a plaintiff must demonstrate that the government's action pressures him to commit an act forbidden by his religion or prevents him from engaging in conduct or having a religious experience mandated by his faith." *Booker v. Maly*, No. 9:12-CV-246 (NAM/ATB), 2014 WL 1289579, at *22 (N.D.N.Y. Mar. 31, 2014), *aff'd*, 590 Fed. App'x 82 (2d Cir. 2015) (summary order).

**\*17** At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's Free Exercise claims survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 5. Excessive Force and Failure-to-Intervene Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). [6]

[6] In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

"To determine whether a defendant acted maliciously, several factors should be examined including, 'the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.' " *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano*, 998 F.2d at 105).

When a citizen is subjected to excessive force, "an officer who fails to intervene where he or she observes or has reason to know that excessive force is being used or a constitutional violation has been committed by a fellow officer is liable for the preventable harm caused by that officer." *Portillo v. Webb*, No. 16-CV-4731, 2017 WL 4570374, at *4 (S.D.N.Y. Oct. 11, 2017) (collecting cases), *report and recommendation adopted by* 2018 WL 481889 (S.D.N.Y. Jan. 17, 2018); *see also Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." (internal quotation marks and citation omitted)).

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that each of plaintiff's Eighth Amendment excessive force and failure-to-intervene claims survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

2023 WL 4744735

### 6. Failure-to-Protect Claims

**\*18** "The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dept. of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Prison officials may be held liable under Section 1983 for failing to protect an inmate from conditions posing a substantial risk of serious harm. *See Farmer*, 511 U.S. at 836. In order to establish a "failure to protect," the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, and prison officials acted with deliberate indifference to that risk and the inmate's safety. *Id.* Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

"One way to make out such a claim is to allege that 'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant official being sued had been exposed to information concerning the risk and thus must have known about it.' " *Coronado v. Goord*, No. 99-CV-1674, 2000 WL 1372834, at *4 (S.D.N.Y. Sept. 25, 2000) (quoting *Farmer*, 511 U.S. at 842-43); *see also Hayes*, 84 F.3d at 620-21 (prisoner's repeated expressions of fear following an inmate attack and requests for transfer as a safety measure raised a question of fact). "Courts have [also] found that a prisoner validly states an Eighth Amendment claim based on a failure to protect when he alleges that he informed corrections officers about a specific fear of assault and is then assaulted." *Davis v. Torres*, No. 10-CV-2236, 2012 WL 3070092, at *5 (S.D.N.Y. May 2, 2012), *report and recommendation adopted by* 2012 WL 3070083 (S.D.N.Y. July 27, 2012); *see also Beckles v. Bennett*, No. 05-CV-2000, 2008 WL 821827, at *17 (S.D.N.Y. Mar. 26, 2008) (denying summary judgment where plaintiff presented evidence that he informed sergeant of correction officers' threatening behavior and was later assaulted by those officers).

"On the other hand, an inmate's communications about 'generalized safety concerns' or 'vague concerns of future assault by unknown individuals' are insufficient to provide knowledge that the inmate is subject to a substantial risk of serious harm." *Stephens v. Venettozzi*, No. 13-CV-5779, 2016 WL 929268, at *19 (S.D.N.Y. Feb. 24, 2016) (quoting *Ross v. City of New York*, No. 12-CV-8545, 2014 WL 3844783, at *8 (S.D.N.Y. 2014), *rev'd on other grounds*, No. 14-3327 (2d Cir. July 20, 2015) (summary order)), *report and recommendation adopted sub nom. Stephens v. Venetozzi*, 2016 WL 1047388 (S.D.N.Y. Mar. 10, 2016). "Neither mere negligence nor a prison guard's mere failure to act reasonably is enough to state an Eighth Amendment deliberate indifference claim." *Sawyer v. New York State Depat. of Corr. Servs.*, No. 11-CV-0152, 2015 WL 6644112, at *7 (W.D.N.Y. June 30, 2015) (citing *Garcia v. Witkowski*, 988 F. Supp. 2d 360, 361 (W.D.N.Y. 2013)), *report and recommendation adopted in pertinent part by* 2015 WL 6641471 (W.D.N.Y. Oct. 28, 2015); *Shell v. Brun*, 585 F. Supp. 2d 465, 469-70 (W.D.N.Y. 2008) ("In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety. Mere negligence (for example if a prison guard should know of a risk but does not) is not enough ....").

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that each of plaintiff's Eighth Amendment failure-to-protect claims survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 7. Conditions-of-Confinement Claims

**\*19** The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth

2023 WL 4744735

Amendment, a plaintiff must satisfy both an objective and subjective element. *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). A plaintiff must demonstrate that (1) the conditions of confinement resulted in "unquestioned and serious deprivations of basic human needs," *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *see also Jolly*, 76 F.3d at 480, and (2) the defendants acted with "deliberate indifference." *Wilson*, 501 U.S. at 303-04.

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds the following conditions-of-confinement claims survive sua sponte review and require a response: (1) plaintiff's conditions-of-confinement claims against defendants Gravlin, Uhler, Bishop, Sergeant Jane Doe, Martin, Marshall, Sturgen, and Veneske based on unhygienic conditions, inadequate heating and clothing, and inadequate sleeping accommodations; (2) plaintiff's conditions-of-confinement claims against defendants Uhler, Bishop, and Annucci based on excessive restrictive confinement in the SHU from August 1, 2021 to April 12, 2022; and (3) plaintiff's conditions-of-confinement claims against defendants Martin, Uhler, Rodriguez, Terriah, Bishop, LaPlant, Stickney, and Annucci based on excessive restrictive confinement in the RRU. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to plaintiff's conditions-of-confinement claims against (1) defendant Sturgen based on this official allegedly forcing plaintiff to quarantine in his cell for fourteen days in July, 2021 and October, 2021, and (2) defendant Annucci based on this official allegedly providing plaintiff with an inadequate diet between 2019 and 2023.

With respect to defendant Sturgen, the Court has no basis to plausibly infer that forcing plaintiff to quarantine in his cell on two separate occasions for fourteen days deprived him of a basic human need. Furthermore, even assuming the quarantine hold subjected plaintiff to an objectively serious condition, the complaint is devoid of allegations which plausibly suggest that defendant Sturgen's decision was made out of deliberate indifference to plaintiff's health and safety (as opposed to out of a desire to reduce the potential spread of COVID-19). Accordingly, plaintiff's Eighth Amendment conditions-of-confinement claim against defendant Sturgen is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to plaintiff's claim against defendant Annucci based on the meal plan offered to plaintiff since 2019, the complaint generically alleges that plaintiff is on a "meatless" meal plan, which "lacks the necessary daily protien [sic], vitamins and minerals[,]" and "uses soy more than the daily 25 grams recommended by the Food and Drug Administration[.]" Compl., ¶¶ 344-345. The complaint further alleges that as a result of the meal plan, plaintiff "has suffered from low good cholesterol and vitamin D deficiency[.]" *Id.*, ¶ 346.

**\*20** As an initial matter, the complaint fails to explain how plaintiff knows that he suffers from "low good cholesterol and [a] vitamin D deficiency[,]" the severity of these alleged deficiencies, or when in relation to plaintiff's current diet he began suffering these deficiencies. Moreover, the complaint fails to allege facts which plausibly suggest that these deficiencies have impaired plaintiff's daily functioning, or present any long-term health problems, and the Court has no basis to plausibly infer from the allegations in the complaint that the food items offered to plaintiff are not available to the general public for consumption based on health and safety concerns. Thus, plaintiff has failed to adequately allege that his meal plan – which is presumably offered to other inmates as well – presents a known risk to his health. *See, e.g., Mejia v. Goord*, No. 9:03-CV-124 (LEK/DEP), 2005 WL 2179422, at \*6 (N.D.N.Y. Aug. 156, 2005) (noting that "the Eighth Amendment does not elevate to constitutional significance an inmate's dislike for the food served or the portions received"); *Collado v. Sposato*, No. 12-CV-2151, 2012 WL 3113837, at \*4 (E.D.N.Y. July 25, 2012) ("Preference for certain foods and dislike of others cannot be equated with a constitutional guarantee to a custom-tailored menu."); *Mitchell v. New York State Dep't of Corr. Servs.*, No. 6:06-CV-6278, 2012 WL 6204205, at \*12 (W.D.N.Y. Dec. 12, 2012) (dismissing as frivolous prisoner's claim that a soy-based diet causes cancer).

Furthermore, the complaint does not allege that any medical professionals have expressed concerns for plaintiff's health based on his diet, or that plaintiff has sought treatment to address any health-related concerns stemming from his diet. In addition,

2023 WL 4744735

the complaint fails to explain why plaintiff has only been offered a "meatless" meal plan since 2019 if he wishes to consume meat, or how the diet offered to plaintiff is a "cost saving measure[.]" Thus, the Court also has no basis to plausibly infer from the allegations in the complaint that defendant Annucci knew that plaintiff was (or has been) suffering from a nutritionally inadequate diet, yet has continued to deprive plaintiff of alternative meal options, i.e., has acted with deliberate indifference to plaintiff's dietary needs.

Accordingly, plaintiff's Eighth Amendment conditions-of-confinement claim against defendant Annucci based on the meal plan offered to plaintiff since 2019 is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 8. Medical Indifference Claims

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle*, 429 U.S. at 102, 104. "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). "The standard of deliberate indifference includes both subjective and objective components." *Id.*

"First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). "Determining whether a deprivation is an objectively serious deprivation entails two inquiries[:] [1] ... whether the prisoner was actually deprived of adequate medical care[; and 2] ... whether the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (citations omitted).

The first inquiry under the objective component requires examining "whether the prisoner was actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. Prison officials who act "reasonably" in response to an inmate's health risk will not be found liable because the official's duty is only to provide "reasonable care." *Id.* at 279-80 (citing *Farmer*, 511 U.S. at 844-47).

The second inquiry under the objective component requires examining whether the purported inadequacy in the medical care is "sufficiently serious." *Salahuddin*, 467 F.3d at 280. If the "unreasonable care" consists of a failure to provide any treatment, then the court must examine whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)). A condition is "sufficiently serious" in objective terms if it presents "a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

 **\*21**  With respect to the subjective component of a medical indifference claim, a plaintiff must show that the defendant "act[ed] with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.' ").

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's medical indifference claims against defendants Dumas, Gravell, Jane Doe #1 and Jane Doe #2 survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 9. Disciplinary Due Process Claims

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 287 of 397

2023 WL 4744735

To successfully state a claim under Section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)). Due process generally requires that the state afford individuals "some kind of hearing" prior to depriving them of a liberty or property interest. *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).

An inmate's protected liberty interest is implicated where the punishment at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The duration of the challenged confinement, while not determinative, is a significant factor under *Sandin*. The Second Circuit generally takes the position that normal confinement in a segregated housing unit of 101 days or less does not constitute an "atypical and significant hardship" under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (citing *Sealey v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999)).

The "atypicality" inquiry under *Sandin* is normally a question of law. *Colon*, 215 F.3d at 230-31; *Sealey*, 197 F.3d at 585. In making that determination the Court must consider the specific circumstances of the confinement, including both the duration and the conditions thereof. *Id.*

Although the Second Circuit has declined to provide a bright-line rule as to what duration of punitive confinement implicates a prisoner's constitutional rights, general guidelines have been defined. *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). The Second Circuit generally takes the position that normal confinement in a segregated housing unit of 101 days or less does not constitute an "atypical and significant hardship" under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (citing *Sealey*, 197 F.3d at 589-90).[7]  As a general matter, "[a] period of confinement between 101 and 305 days is considered to be an 'intermediate duration' and could implicate a liberty interest should a detailed record of the conditions of confinement indicate that it was an atypical and significant hardship." *Bunting v. Nagy*, 452 F. Supp. 2d 447, 456 (S.D.N.Y. 2006) (citing *Sealey*, 197 F.3d at 589; *see also Palmer*, 364 F.3d at 64-65 ("Where the plaintiff was confined for an intermediate duration -- between 101 and 305 days -- 'development of a detailed record' of the conditions of confinement relative to ordinary prison conditions is required.") (citing *Colon*, 215 F.3d at 232).

[7]  A New York state inmate confined in SHU is placed in a solitary confinement cell for 23 hours a day. The inmate may exercise in the yard for one hour each day; is limited to two showers a week; and may not work or attend programming. *See Colon*, 215 F.3d at 230; N.Y. Comp. Codes R. & Regs., tit. 7, §§ 304.1-.14 (2008).

**\*22**  Under some circumstances, separate restrictive confinement sentences can be aggregated for purposes of determining whether there is a protected liberty interest. *See Giano v. Selsky*, 238 F.3d 223, 226 (2d Cir. 2001). To determine whether such sentences should be aggregated for this purpose, "the precise issue ... is whether the disciplinary confinements in question constitute a 'sustained' period of confinement[.]" *Taylor v. Artus*, No. 05-CV-271, 2007 WL 4555932, at \*8 (N.D.N.Y. Dec. 19, 2007). Generally, "it appears from Second Circuit decisions that separate SHU sentences constitute a 'sustained' period of confinement when (1) they are contiguous and (2) they either (a) were imposed by the same disciplinary hearing officer or (b) were based on the same administrative rationale and are executed under the same conditions." *Id.* (collecting cases).

The due process protections afforded inmates facing disciplinary hearings that affect a liberty or property interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing, *inter alia, Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). The hearing officer's findings must be supported by "some" "reliable evidence." *Id.* (citing, *inter alia, Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

2023 WL 4744735

In this case, the complaint asserts due process claims based on the First Disciplinary Hearing, the Second Disciplinary Hearing, the Third Disciplinary Hearing, the Fourth Disciplinary Hearing, the Fifth Disciplinary Hearing, and the Sixth Disciplinary Hearing. *See generally*, Compl.

### a. The First Disciplinary Hearing

According to the complaint, on or about November 1, 2021, plaintiff was issued two misbehavior reports charging him with, among other things, two sex offenses based on allegations that he made sexually charged statements to two corrections officials in response to their orders. Compl., ¶¶ 187-189. On November 9, 2021, defendant S. Martin presided over the First Disciplinary Hearing, found plaintiff guilty of all charges except interference in the first report and violent conduct in the second report, and sentenced plaintiff to 90 days confinement in the SHU. *Id.*, ¶¶ 190-194.

The complaint alleges that the charged misconduct, which included making sexually explicit statements to a corrections officer, did not constitute a sex offense, and defendant Martin's guilty determination was "not supported by 'some reliable evidence.' " Compl., ¶¶ 190-191. However, the complaint fails to include any details from which this Court might plausibly infer that the guilty determination was not supported by some reliable evidence. Indeed, the complaint is devoid of any allegations regarding the documentary evidence considered, and the witnesses who testified, during plaintiff's disciplinary hearing. Furthermore, plaintiff does not deny that he refused direct orders issued by a sergeant and made sexually explicit statements to the official as charged.

Simply put, even assuming that the disciplinary sanction triggered a liberty interest, the Court has no basis to plausibly infer that plaintiff was denied the process to which he was entitled during the First Disciplinary Hearing. Accordingly, plaintiff disciplinary due process claims related to the First Disciplinary Hearing are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Remaining Disciplinary Hearings

With respect to the Second Disciplinary Hearing, the Third Disciplinary Hearing, the Fourth Disciplinary Hearing, the Fifth Disciplinary Hearing, and the Sixth Disciplinary Hearing, the complaint does not include any allegations regarding these hearings, let alone allegations which plausibly suggest that plaintiff was denied the process to which he was entitled during any of them. Thus, plaintiff has failed to adequately allege that he suffered a violation of his due process rights in connection with any of the other disciplinary hearings referenced in the complaint.

**\*23** Accordingly, plaintiff's disciplinary due process claims related to the Second Disciplinary Hearing, the Third Disciplinary Hearing, the Fourth Disciplinary Hearing, the Fifth Disciplinary Hearing, and the Sixth Disciplinary Hearing are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. [8]

[8]    Insofar as the complaint alleges that the disciplinary sentences imposed with respect to each of the six disciplinary hearings was grossly disproportionate to the charged offenses, these allegations form the basis of plaintiff's Eighth Amendment claims for excessive restrictive confinement in the RRU.

### 10. Due Process Claims Based on Denial of Telephone Privileges

The complaint alleges that defendants Veneske and Gravlin denied plaintiff weekly phone calls on four separate occasions between July and December, 2021. *See* Compl., ¶ 297. At the time, plaintiff was confined in the SHU, and New York Correction

2023 WL 4744735

Law § 137 was not in effect. [9]  Furthermore, the law is well-settled that "[a] prisoner's access to family and friends via telephone may be restricted so long as the prisoner has some other avenue to communicate, even if less than ideal." *See Fox v. Lee*, No. 9:15-CV-0390 (TJM/CFH), 2016 WL 11807252, at *5 (N.D.N.Y. Dec. 19, 2016) (collecting cases).

[9]  This statute, which became effective on March 31, 2022, states, among other things, that "[w]ithin twenty-four hours of disciplinary confinement ... and at weekly intervals thereafter for the duration of such confinement, an incarcerated individual shall be permitted to make at least one personal phone call, except when to do so would create an unacceptable risk to the safety and security of incarcerated individuals or staff." *See* N.Y Corr. Law § 137(6)(g).

Here, plaintiff does not allege that he was altogether denied all forms of communication with the outside world at any point during his confinement in the SHU, let alone during the four weeks that he was allegedly denied his weekly phone calls. Thus, the Court does not construe the complaint to assert a cognizable Section 1983 claim based on the alleged phone deprivations. *See Fox*, 2016 WL 11807252, at *5; *see also Martinez v. Healey*, No. 14-CV-302, 2014 WL 5090056, at *3 (S.D.N.Y. Oct. 10, 2014) (noting that "inmates have no right to unlimited telephone calls" and that "phone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world, and particularly with counsel" (alteration and internal quotation marks omitted)); *Edwards v. Horn*, No. 10-CV-6194, 2012 WL 760172, at *5 (S.D.N.Y. Mar. 8, 2012) ("Because inmates have no right to unlimited telephone calls, [the plaintiff] must, but fails to, allege that he was stripped of alternate methods of communication to state a violation of his constitutional rights" (alterations, citation, and internal quotation marks omitted)); *Henry v. Davis*, No. 10-CV-7575, 2011 WL 3295986, at *2 (S.D.N.Y. Aug. 1, 2011) ("Phone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world, and particularly with counsel."), *report and recommendation adopted by* 2011 WL 5006831 (S.D.N.Y. Oct. 20, 2011).

Accordingly, plaintiff's due process claims against defendants Gravlin and Veneske based on denying him access to phone calls are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 11. Due Process Claims Based on Conditions of RRU Confinement

**\*24**  Aside from challenging the disciplinary determinations that resulted in his placement in the RRU, plaintiff challenges both the restrictive nature of his confinement in the RRU, and the extended duration of this confinement. More specifically, the complaint alleges that plaintiff (1) was limited to two hours of out-of-cell programming and subjected to other restrictions throughout his confinement in the RRU, which began on April 12, 2022, (2) was deprived of a rehabilitation plan throughout his confinement in the RRU, which prevented him from obtaining early release, and (3) is scheduled to remain in the RRU for more than one year, despite New York law prohibiting such a restrictive confinement period. Compl., ¶¶ 303-373. According to plaintiff, pursuant to New York Correction Law § 137, he has a liberty interest in accessing the programs, services, privileges, and rehabilitation plan that he was denied, among other things. *Id.*

"A liberty interest under the Fourteenth Amendment arises either directly from the Due Process Clause itself or from a state's laws." *Galloway v. Suffolk Cnty. Corr. Facility*, 232 F. Supp. 2d 4, 8 (E.D.N.Y. 2002) (citing *Klos v. Haskell*, 48 F.3d 81, 86 (2d Cir. 1995)). "For a liberty interest to be conferred by the state, two requirements must be met: (1) the state must have articulated specified substantive predicates which limit the discretion of state officials; and (2) it must have employed explicitly mandatory language, requiring state officials to follow those substantive predicates." *Klos*, 48 F.3d at 87 (internal quotation marks and citations omitted).

Section 6 of New York Correction Law § 137, which became effective on March 31, 2022, provides, in pertinent part, as follows:

2023 WL 4744735

6. Except as provided in paragraphs (d) and (e) of this subdivision, the superintendent of a correctional facility may keep any incarcerated individual confined in a cell or room, apart from the accommodations provided for incarcerated individuals who are participating in programs of the facility, for such period as may be necessary for maintenance of order or discipline, but in any such case the following conditions shall be observed:

...

(j) (i) All segregated confinement and residential rehabilitation units shall create the least restrictive environment necessary for the safety of incarcerated persons, staff, and the security of the facility.

(ii) Persons in segregated confinement shall be offered out-of-cell programming at least four hours per day, including at least one hour for recreation. Persons admitted to residential rehabilitation units shall be offered at least six hours of daily out-of-cell congregate programming, services, treatment, recreation, activities and/or meals, with an additional minimum of one hour for recreation. Recreation in all residential rehabilitation units shall take place in a congregate setting, unless exceptional circumstances mean doing so would create a significant and unreasonable risk to the safety and security of other incarcerated persons, staff, or the facility. Persons in segregated confinement and residential rehabilitation units shall be offered programming led by program or therapeutic staff five days per week, except on recognized state legal holidays. All other out-of-cell time may include peerled programs, time in a day room or out-of-cell recreation area with other people, congregate meals, volunteer programs, or other congregate activities.

(iii) No limitation on services, treatment, or basic needs such as clothing, food and bedding shall be imposed as a form of punishment. If provision of any such services, treatment or basic needs to an individual would create a significant and unreasonable risk to the safety and security of incarcerated persons, staff, or the facility, such services, treatment or basic needs may be withheld until it reasonably appears that the risk has ended....

(iv) Upon admission to a residential rehabilitation unit, program and mental health staff shall administer assessments and develop an individual rehabilitation plan in consultation with the resident, based upon his or her medical, mental health, and programming needs. Such plan shall identify specific goals and programs, treatment, and services to be offered, with projected time frames for completion and discharge from the residential rehabilitation unit.

 **\*25**  (v) An incarcerated person in a residential rehabilitation unit shall have access to programs and work assignments comparable to core programs and types of work assignments in general population. Such incarcerated persons shall also have access to additional out-of-cell, trauma-informed therapeutic programming aimed at promoting personal development, addressing underlying causes of problematic behavior resulting in placement in a residential rehabilitation unit, and helping prepare for discharge from the unit and to the community.

(vi) If the department establishes that a person committed an act defined in subparagraph (ii) of paragraph (k) of this subdivision while in segregated confinement or a residential rehabilitation unit and poses a significant and unreasonable risk to the safety and security of other incarcerated persons or staff, the department may restrict such person's participation in programming and out-of-cell activities as necessary for the safety of other incarcerated persons and staff. If such restrictions are imposed, the department must provide at least four hours out-of-cell time daily, including at least two hours of therapeutic programming and two hours of recreation, and must make reasonable efforts to reinstate access to programming as soon as possible. In no case may such restrictions extend beyond fifteen days unless the person commits a new act defined herein justifying restrictions on program access, or if the commissioner and, when appropriate, the commissioner of mental health personally reasonably determine that the person poses an extraordinary and unacceptable risk of imminent harm to the safety or security of incarcerated persons or staff. Any extension of program restrictions beyond fifteen days must be meaningfully reviewed and approved at least every fifteen days by the commissioner and, when appropriate, by the commissioner of mental health. Each review must consider the impact of therapeutic programming provided during the fifteen-day period on the person's risk of imminent harm and the commissioner must articulate in writing, with a copy provided to the incarcerated person, the specific reason why the person currently poses an extraordinary and unacceptable risk of imminent harm to the

2023 WL 4744735

safety or security of incarcerated persons or staff. In no case may restrictions imposed by the commissioner extend beyond ninety days unless the person commits a new act defined herein justifying restrictions on program access.

(m) (i) Any sanction imposed on an incarcerated person requiring segregated confinement shall run while the person is in a residential rehabilitation unit and the person shall be discharged from the unit before or at the time such sanction expires. If a person successfully completes his or her rehabilitation plan before the sanction expires, the person shall have a right to be discharged from the unit upon such completion.

(ii) If an incarcerated person has not been discharged from a residential rehabilitation unit within one year of initial admission to such a unit or is within sixty days of a fixed or tentatively approved date for release from a correctional facility, he or she shall have a right to be discharged from the unit unless he or she committed an act listed in subparagraph (ii) of paragraph (k) of this subdivision within the prior one hundred eighty days and he or she poses a significant and unreasonable risk to the safety or security of incarcerated persons or staff. In any such case the decision not to discharge such person shall be immediately and automatically subjected to an independent review by the commissioner and the commissioner of mental health or their designees. A person may remain in a residential rehabilitation unit beyond the time limits provided in this section if both commissioners or both of their designees approve this decision. In extraordinary circumstances, a person who has not committed an act listed in subparagraph (ii) of paragraph (k) of this subdivision within the prior one hundred eighty days, may remain in a residential rehabilitation unit beyond the time limits provided in this section if both the commissioner and the commissioner of mental health personally determine that such individual poses an extraordinary and unacceptable risk of imminent harm to the safety or security of incarcerated persons or staff.

 *26  (iii) There shall be a meaningful periodic review of the status of each incarcerated person in a residential rehabilitation unit at least every sixty days to assess the person's progress and determine if the person should be discharged from the unit. Following such periodic review, if the person is not discharged from the unit, program and mental health staff shall specify in writing the reasons for the determination and the program, treatment, service, and/or corrective action required before discharge. The incarcerated person shall be given access to the programs, treatment and services specified, and shall have a right to be discharged from the residential rehabilitation unit upon the successful fulfillment of such requirements.

(iv) When an incarcerated person is discharged from a residential rehabilitation unit, any remaining time to serve on any underlying disciplinary sanction shall be dismissed. If an incarcerated person substantially completes his or her rehabilitation plan, he or she shall have any associated loss of good time restored upon discharge from the unit

In light of the foregoing statutory language, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's due process claims against defendants Stickney, Bishop, Uhler, Gravlin, Veneske, and Annucci related to restrictions imposed with respect to his RRU confinement survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 12. Conspiracy Claims

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors ...; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). A plaintiff must "make an effort to provide some details of time and place and the alleged effects of the conspiracy ... [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002); *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.").

The complaint asserts conspiracy claims against defendants Tyler, Phillips, Osborn, Robare, Keleher, Harmer, Gravlin, Hooper, and McGee. Compl. at 44-45.

As an initial matter, the complaint is devoid of any details regarding an agreement entered into between two or more of the named defendants to violate plaintiff's constitutional rights. For example, the complaint lacks any allegations which plausibly suggest that any of the named defendants involved in the alleged use-of-force incidents or housing plaintiff with an inmate who assaulted him, agreed, in advance, to subject plaintiff to physical harm. In any event, plaintiff's excessive force and failure-to-intervene claims against defendants Tyler, Phillips, Osborn, Robare, Keleher, Harmer, and Gravlin have survived sua sponte review, and plaintiff need not establish that these officials agreed in advance to violate his constitutional rights in order to succeed on these claims. *See Clark v. City of Oswego*, No. 5:03-CV-202 (NAM/DEP), 2007 WL 925724, at *7 (N.D.N.Y. Mar. 26, 2007) ("A plaintiff asserting a Section 1983 conspiracy claim must first prove a violation of the underlying constitutional right, ..., or in other words, a civil conspiracy claim do[es] not set forth an independent cause of action but rather is sustainable only after an underlying tort claim has been established[.]" (internal quotation marks and citations omitted)); *see also Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009), as amended (Oct. 7, 2009) ("Because neither of the underlying section 1983 causes of action can be established, the claim for conspiracy also fails."); *DeStefano v. Duncanson*, No. 08-CV-3419, 2011 WL 651452, at *4 (S.D.N.Y. Feb. 10, 2011) ("A Section 1983 conspiracy claim against private individuals will stand 'only insofar as the plaintiff can prove the sine qua non of a § 1983 action: the violation of a federal right.' ") (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). Furthermore, insofar as plaintiff asserts conspiracy claims against defendants Hooper and McGee based on allegations that these officials prepared false reports regarding the Third Assault in an effort to "conceal" the wrongdoing, Compl., ¶¶ 23, the alleged creation of false reports by officials who were not present during the alleged use-of-force incident is not enough to plausibly suggest participation in an agreement to violate plaintiff's constitutional rights. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (dismissing the plaintiff's conspiracy claim arising from allegations that the defendants conspired to retaliate against him by filing a false misbehavior report); *Lewis v. Havernack*, No. 9:12-CV-0031 (GLS/DEP), 2013 WL 1294606, at *11 (N.D.N.Y. Mar. 28, 2013) ("Here, the allegation that defendants Chapman and Imfeld conspired to file a false misbehavior report against plaintiff is not cognizable under section 1983 because plaintiff has no general constitutional right to be free from being falsely accused in a misbehavior report."), *report and recommendation adopted by* 2013 WL 1294592 (N.D.N.Y. Mar. 28, 2013).

**\*27** Accordingly, plaintiff's conspiracy claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### IV. PRELIMINARY INJUNCTION MOTION

"In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.' " *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted)). A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo*, 638 F.3d at 406 (citing *Citigroup Global Mkts.*, 598 F.3d at 35 n.4) (internal quotation marks omitted); *see also Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (a plaintiff seeking a mandatory injunction must make a "clear" or "substantial" showing of a likelihood of success on the merits of his claim). The same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Perri v. Bloomberg*, No. 06-CV-0403, 2008 WL 2944642, at * 2 (E.D.N.Y. Jul. 31,

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 293 of 397

2023 WL 4744735

2008). The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

Plaintiff's request for injunctive relief seeks an order enjoining defendants Annucci, Uhler, Bishop, and Dumas from (1) assigning officials "involved in assaulting plaintiff from assuming a post or supervising an area where plaintiff is located," (2) "assigning plaintiff to double-bunk cells or having [him] remain in a double-cell [for] more than 60 days unless he volunteer[s]," (3) "continuing plaintiff's confinement in the RRU[,]" and (4) "denying [him] medical care[.]" *See* Preliminary Injunction Motion at 1.

After plaintiff filed his motion, he notified the Court in another one of his pending actions that he has been transferred to Great Meadow Correctional Facility. *See Bradshaw v. Annucci*, Dkt. No. 150.

In light of plaintiff's transfer, and the absence of any credible evidence that he is likely to continue suffering, at his new facility, the same alleged harm that forms the basis of his Preliminary Injunction motion, his request for injunctive relief is denied as moot. *See Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."); *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").

## V. CONCLUSION

**\*28** **WHEREFORE**, it is hereby

**ORDERED** that plaintiff's application for leave to proceed IFP (Dkt. No. 2) is **GRANTED** in accordance with 28 U.S.C. § 1915(g) because plaintiff has made a preliminary showing that he is entitled to the "imminent danger" exception; and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility designated by plaintiff as his current location with a copy of plaintiff's inmate authorization form (Dkt. No. 3), and notify the official that this action has been filed and that plaintiff is required to pay to the Northern District of New York the statutory filing fee of $350 in installments, over time, pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk is directed to update the docket to add any officials identified herein as defendants who are not currently recognized as such; and it is further

**ORDERED** that the following claims **SURVIVE** sua sponte review: (1) plaintiff's retaliation claims against defendants Osborn, Bailey, Menard, Trombley, Marshall, Keleher, Plonka, Gettman, Gravlin, Bishop, Mitchell, Fletcher, Veneske, Rowe, Lamica, and Keating (i.e., each of plaintiff's retaliation claims other than the Second Retaliation Claim against defendant Locke, the Third Retaliation Claim, the Seventh Retaliation Claim, the Twelfth Retaliation Claim, and the Fifteenth Retaliation Claim); (2) plaintiff's mail tampering claims against defendants Lamica, Locke, Keating, Lord, John Doe #6, and Ayer; (3) plaintiff's free exercise claims against defendants Bishop, Stickney, Uhler, and Annucci based on the denial of congregate services and religious meals; (4) plaintiff's excessive force and failure-to-intervene claims against defendants Osborn, Corrections Sergeant John Doe #1, Phillips, Tyler, Menard, Bailey, Trombley, Cymbrak, Mitchell, Chase, Marshall, Gettman, Morrison, Corrections Sergeant John Doe #2, Corrections Officer John Doe #3, Gravlin, Robare, Carter, Corrections Officer John Doe #4, Plonka, Keleher, and Harmer (i.e., the excessive force and failure-to-intervene claims related to each of the ten assaults identified in the recitation of facts); (5) plaintiff's failure-to-protect claims against defendants McQuinn, Waite, Bishop, Uhler, Fletcher, Osborn, Rowe, Veneske, Nichols, Holmes, Annucci, Keleher, Debyah, Gravlin, North, Harrigan, Classification and Movement Corrections Officers John Doe #1 and John Doe #2, Orbegozo, Corrections Sergeant John Doe #1, Plonka, Gettman, Carter, Sturgen, Lewis, Sharpe, Dumas, Hollenbeck, DeCosse, Gordon, and Jubert (i.e., the failure-to-protect claims related to each of the nine inmate assaults identified in the recitation of facts); (6) plaintiff's conditions-of-confinement claim against defendant Gravlin based on inadequate heating in plaintiff's housing unit between September 25 and October 2, 2021; (7) plaintiff's conditions-of-

2023 WL 4744735

confinement claim against defendants Austin Martin and Marshall based on defendant Martin removing plaintiff's mattress from his cell, with approval from defendant Marshall, from December 6 to December 11, 2021; (8) plaintiff's conditions-of-confinement claim against defendant Corrections Sergeant Jane Doe based on this official "compell[ing] plaintiff to remain outside to stand in the freezing cold weather for about five or six hours while the officers and defendant Jane Doe remained inside the facility or on the bus with other prisoners[,]"; (9) plaintiff's conditions-of-confinement claim against defendants Gravlin, Veneske, Uhler, and Bishop based on these officials denying plaintiff in-cell cleaning supplies between April and September, 2022, and December, 2022 and January, 2023; (10) plaintiff's conditions-of-confinement claims against defendants Uhler, Bishop, and Annucci based on excessive restrictive confinement in the SHU from August 1, 2021 to April 12, 2022; (11) plaintiff's conditions-of-confinement claims against defendants S. Martin, Uhler, Rodriguez, Terriah, Bishop, LaPlant, Stickney, and Annucci based on excessive restrictive confinement in the RRU; (12) plaintiff's medical indifference claims against defendants Dumas, Gravell, Jane Doe #1, and Jane Doe #2; and (13) plaintiff's due process claims against defendants Stickney, Bishop, Uhler, Gravlin, Veneske, and Annucci based on the nature of his confinement in the RRU; and it is further

 **\*29 ORDERED** that all remaining Section 1983 claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted;[10] and it is further

[10]    Should plaintiff seek to pursue any of the claims dismissed without prejudice, including any claim dismissed against a terminated defendant, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff's deadline to amend his pleading as a matter of course is set forth in Rule 15(a) of the Federal Rules of Civil Procedure.

**ORDERED** that the Preliminary Injunction Motion (Dkt. No. 4) is **DENIED without prejudice** as set forth above; and it is further

**ORDERED** that the Clerk shall **TERMINATE** the following individuals as defendants in this action: Hastings, Peterson, Spinner, Hooper, McGee, and John Doe #5; and it is further

**ORDERED** that upon receipt from plaintiff of the documents required for service, the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon defendants Osborn, Bailey, Menard, Trombley, Marshall, Keleher, Plonka, Gettman, Gravlin, Bishop, Mitchell, Fletcher, Veneske, Rowe, Lamica, Keating Locke, Lord, Ayer, Stickney, Uhler, Annucci, Phillips, Tyler, Cymbrak, Chase, Morrison, Robare, Carter, Harmer, McQuinn, Waite, Nichols, Holmes, Debyah, North, Harrigan, Orbegozo, Sturgen, Lewis, Sharpe, Dumas, Hollenbeck, DeCosse, Gordon, Jubert, Austin Martin, S. Martin, Rodriguez, Terriah, LaPlant, Dumas, and Gravell.[11] The Clerk shall forward a copy of the summons and complaint by electronic mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

[11]    Summonses will not issue for the "Doe" defendants because the U.S. Marshal cannot effect service on an individual who has not been identified by name.

**ORDERED** that a response to the complaint be filed by defendants Osborn, Bailey, Menard, Trombley, Marshall, Keleher, Plonka, Gettman, Gravlin, Bishop, Mitchell, Fletcher, Veneske, Rowe, Lamica, Keating Locke, Lord, Ayer, Stickney, Uhler, Annucci, Phillips, Tyler, Cymbrak, Chase, Morrison, Robare, Carter, Harmer, McQuinn, Waite, Nichols, Holmes, Debyah, North, Harrigan, Orbegozo, Sturgen, Lewis, Sharpe, Dumas, Hollenbeck, DeCosse, Gordon, Jubert, Austin Martin, S. Martin, Rodriguez, Terriah, LaPlant, Dumas, and Gravell, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

2023 WL 4744735

**ORDERED** that plaintiff must take reasonable steps to ascertain the identity of the remaining "Doe" defendants and, when identified, seek to amend the complaint to add these individuals as defendants in this action pursuant to Federal Rule of Civil Procedure 15(a); and it is further

**\*30  ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4744735

---

End of Document                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 3280745
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Yaron KWELLER, Plaintiff,

v.

The COUNTY OF BROOME, et al., Defendants.

3:24-CV-1328 (AJB/ML)

|

Signed November 25, 2025

### Attorneys and Law Firms

Elena Fast, The Fast Law Firm, P.C., New York, NY, Karen A. Newirth, Newirth Linehan PLLC, New York, NY, Oscar Michelen, Michelen Law, P.C., Mineola, NY, for Plaintiff.

Christopher Baiamonte, The Wladis Law Firm, PC, East Syracuse, NY, Timothy J. Lambrecht, Wladis Law Firm, P.C., Syracuse, NY, for Defendants The County of Broome.

James C. Knox, Julie A. Nociolo, Alishah Elena Bhimani, Hacker Murphy LLP, Troy, NY, for Defendant Alyssa Congdon.

Edward E. Kopko, Law Office of Edward E. Kopko, Ithaca, NY, for Defendant Hailey Demkovich.

Kavitha Janardhan, Lawrence M. Ordway, Jr., Bousquet Holstein PLLC, Syracuse, NY, for Defendant Samantha Herceg.

### DECISION and ORDER

Anthony J. Brindisi, United States District Judge:

## I. INTRODUCTION

 **\*1** On October 30, 2024, plaintiff Yaron Kweller ("plaintiff") filed this 42 U.S.C. § 1983 action against defendants Hailey Demkovich, Samantha Herceg, the City of Binghamton, City Police Chief Joseph Zikuski, City Police Captain Cory Minor, City Police Investigator Amanda Miller, the County of Broome, the Broome County District Attorney's Office, Broome County District Attorney Michael Korchak, Broome County Chief Assistant District Attorney Mark Loughran, Broome County Assistant District Attorneys Alyssa Congdon and Amanda Cronin, Broome County District Attorney Investigator Jeff Wagner, and unidentified Broome County District Attorney's Office and Binghamton Police Department employees # 1–10. Dkt. No. 1.

In short, plaintiff alleges that Hailey Demkovich and Samantha Herceg falsely accused him of rape, the Binghamton Police Department ("BPD") inadequately investigated those false allegations, and the Broome County District Attorney's Office (the "BCDA") deliberately disregarded exculpatory evidence and chose to prosecute him anyway. *See generally* Dkt. No. 1. Plaintiff was acquitted of all charges after a jury trial.

The twelve-count complaint asserts 42 U.S.C. § 1983 claims for "False Arrest and Malicious Prosecution" (Count I); "Due Process and Denial of the Right to a Fair Trial" (Count II), "Failure to Intervene" (Count III), "Supervisory Liability" (Count IV), "*Monell* Liability" (Counts V & VI), "Civil Rights Conspiracy" (Count VII), as well as related state law claims for "False Arrest and Malicious Prosecution" (Count VIII), "Intentional, Reckless, or Negligent Infliction of Emotional Distress" (Count IX), violations of Article I, Sections 6 and 12 of the New York State Constitution (Count X), "*Respondeat Superior*" (Count XI), and "Abuse of Process" (Count XII). Dkt. No. 1, ¶¶ 191–302. [1]

1    The complaint is sequentially numbered by line. Accordingly, citations to the pleading correspond with that document's internal pagination.

Defendants Hailey Demkovich and Samantha Herceg answered the complaint. Dkt. Nos. 37, 39. All other defendants, apart from BCDA Investigator Wagner ("Wagner"), moved to dismiss the pleading pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Dkt. Nos. 40, 57, 65, 67, 74. The Court granted those motions in part, and denied those motions in part, on September 29, 2025. Dkt. No. 106. Thereafter, the County of Broome (the "County") moved for partial reconsideration of the Court's decision pursuant to Federal Rule of Civil Procedure 54 and Local Rule 60.1. Dkt. No. 107.

Wagner originally defaulted. Dkt. No. 76. After the entry of default was vacated, Dkt. No. 94, he, too, moved to dismiss plaintiff's claims pursuant to Rule 12(b)(6). Dkt. No. 101. The Court did not address Wagner's motion in its earlier decision because of this delay.

Wagner's motion to dismiss and the County's motion for partial reconsideration have been fully briefed, Dkt. Nos. 101, 104–05, 107, 110, and will be considered on the basis of the submissions without oral argument.


## II. BACKGROUND

 **\*2**  The Court incorporates the factual background from the earlier decision and order on defendants' motions to dismiss. Dkt. No. 106 (the "September 29 Order") at 3–15.


## III. LEGAL STANDARD

### A. Motion to Dismiss

The Federal Rules of Civil Procedure permit a party to move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) ("[T]he '[f]actual allegations must be enough to raise a right to relief above the speculative level.' ") (quoting *Twombly*, 550 U.S. at 555).

To assess this facial plausibility requirement, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw all reasonable inferences in favor of the plaintiff, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In doing so, the court generally confines itself to the facts alleged in the pleading, documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

### B. Motion for Reconsideration

Under this District's Local Rules, "a party may file and serve a motion for reconsideration or reargument no later than fourteen days after the entry of the challenged ... order." N.D.N.Y. L.R. 60.1. Similarly, "Rule 54(b) [of the Federal Rules of Civil Procedure] provides, in relevant part, that, prior to entry of a final judgment, an interlocutory 'order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.' " *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting Fed. R. Civ. P. 54(b)).

However, the availability of reconsideration under Rule 54(b) is limited, and "gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that 'where litigants have once battled for the court's decision, they should neither

2025 WL 3280745

be required, nor without good reason permitted, to battle for it again.' " *Off. Comm. of Unsecured Creditors of Color Tile, Inc.*, 322 F.3d at 167 (quoting *Zdanok v. Glidden Co.,* 327 F.2d 944, 953 (2d Cir. 1964)).

In other words, "the standard for granting a motion for reconsideration is 'strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters ... that might reasonably be expected to alter the conclusion reached by the court.' " *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024) (quoting *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995)), *cert. denied*, 145 S. Ct. 279 (2024).

## IV. DISCUSSION

**\*3** The Court will address Wagner's motion to dismiss before reaching the County's motion for partial reconsideration.

### A. BCDA Investigator Wagner's Motion to Dismiss

Plaintiff has asserted § 1983 claims against Wagner for false arrest, Dkt. No. 1 ("Compl.") ¶¶ 191–97; malicious prosecution, *id.*; deprivation of liberty without due process and denial of the right to a fair trial, *id.* at ¶¶198–205; failure to intervene, *id.* at ¶¶ 206–10; and civil rights conspiracy, *id.* at 263–66. He also brings related state law claims against Wagner for false arrest, *id.* ¶¶ 267–80; malicious prosecution, *id.*; intentional, reckless, or negligent infliction of emotional distress, *id.* at ¶¶ 281–85; and violations of Article I, sections 6 and 12 of the New York State Constitution, *id.* at ¶¶ 286–89.

Wagner has moved to dismiss all of the claims asserted against him, arguing that "[n]one of [p]laintiff's causes of action allege[ ]a legally viable claim against [him]." Dkt. No. 101-1 ("Wagner Mem.") at 10. In opposition, plaintiff maintains that he has plausibly alleged that Wagner's conduct "materially contributed to the violation of [his] constitutional rights." Dkt. No. 104 ("Pl.'s Opp.") at 5.

#### 1. Section 1983 Claims

Wagner argues that plaintiff's § 1983 claims must be dismissed because (1) plaintiff has not plausibly alleged that he was "personally involved" in any constitutional deprivation, *see* Wagner Mem. at 10–13; (2) the complaint does not plausibly allege all elements of plaintiff's § 1983 claims against him, *id.* at 15–24; and (3) regardless, he is entitled to qualified immunity for any allegedly violative conduct, *id.* at 13–15. Plaintiff disagrees. *See* Pl.'s Opp. at 10–27.

##### i. Personal Involvement

Because "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983," *Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir. 1991), the Court addresses it first. "[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia,* the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven,* 720 F.3d 133, 138 (2d Cir. 2013).

Wagner argues that plaintiff's § 1983 claims must be dismissed because plaintiff has stated "exactly one factual allegation against [him]," and that allegation does not plausibly suggest that he was personally involved in violating plaintiff's constitutional rights. Wagner Mem. at 10–13. In opposition, plaintiff argues that the complaint plausibly alleges Wagner's personal involvement at this stage. Pl.'s Opp. at 10–14.

As an initial matter, plaintiff misstates the governing legal standard for personal involvement. Pl.'s Second Opp. at 10–11. Plaintiff states that personal involvement does not require active participation and can be found " 'when an official has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act.' " *Id.* (quoting *Nolan v. W. Re'l Off Track Betting Corp.*, 2024 WL 4555115, at *11 (W.D.N.Y. Oct. 23, 2024) quoting *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989)). But that is no longer the rule.

**\*4**  In *Tangreti v. Bachmann*, the Second Circuit held that, "[f]ollowing *Ashcroft v. Iqbal*, ... [a] plaintiff must directly plead and prove that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " 983 F.3d 609, 612 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Since *Tangreti*, the Second Circuit has reiterated that, "[a] defendant is culpable only if his *own* conduct amounted to a constitutional violation." *Calix v. United States*, 2024 WL 3263361, at \*2 (2d Cir. July 2, 2024) (citing *Tangreti*, 983 F.3d at 619) (emphasis in original); *see also Kravitz v. Purcell*, 87 F.4th 111 (2d Cir. 2023); *Wiggins v. Griffin*, 86 F.4th 987 (2d Cir. 2023).

As Wagner points out, plaintiff alleges only that Assistant District Attorney Alyssa Congdon ("ADA Congdon") directed him to retrieve the Saitta folder, but that he failed to do so. Compl. ¶¶ 118–19. Notably, the pleading does not allege that Wagner had any other involvement in plaintiff's investigation or prosecution. *See generally id.*

Absent additional non-conclusory factual allegations tending to establish that Wagner knew that the contents of the Saitta folder were exculpatory and intentionally suppressed them, plaintiff has not plausibly alleged Wagner's "personal involvement" in any of the constitutional violations. Accordingly, plaintiff's § 1983 claims against Wagner must be dismissed, and the Court need not reach Wagner's qualified immunity arguments.

### 2. State Law Claims

Wagner argues that plaintiff's state law claims must also be dismissed, because (1) he has failed to plausibly allege the elements of any state law cause of action, Wagner Mem. at 15–19; (2) plaintiff's intentional, reckless, or negligent infliction of emotional distress claim is improperly brought, *id.* at 24–27; and (3) plaintiff has no private right of action under the New York State Constitution under these circumstances, *id.* at 27–28.

Plaintiff has voluntarily withdrawn his claim for intentional, negligent, or reckless infliction of emotional distress, *see* Pl.'s Opp. at 27 n.4, but rejects Wagner's arguments as to his remaining state law claims, *id.* at 15–20, 27–28.

#### i. False Arrest

Plaintiff's eighth cause of action is identified as a state law claim for "false arrest and malicious prosecution." Compl. ¶¶ 267–80. But false arrest and malicious prosecution are distinct causes of action under state law. *See Broughton v. State*, 335 N.E.2d 310, 313 (N.Y. 1975) ("Although [false imprisonment and malicious prosecution] are kindred actions, each protects a different personal interest and is composed of different elements."). Accordingly, they will be addressed separately.

"Under New York law, the elements of a false arrest [or] false imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.' " *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (*McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016)).

Wagner argues that this claim must be dismissed, in part, because "the complaint lacks any allegations that Wagner played any role in [p]laintiff's arrest." Wagner Mem. at 15. Plaintiff concedes that the complaint "does not allege that Wagner physically arrested him," arguing instead that Wagner's failure to retrieve the Saitta folder "caused [p]laintiff's arrest and prosecution to proceed based on an incomplete and misleading evidentiary record." Wagner Mem. at 11–12.

**\*5**  Although the complaint alleges that plaintiff was arrested, Compl. ¶ 134, plaintiff's only factual allegation against Wagner is that he failed to retrieve the Saitta folder at ADA Congdon's direction. *Id.* ¶¶ 118–19. This is not enough.

A plaintiff cannot sustain a false arrest claim under New York law where there is "no allegation that the defendant personally participated in the arrest or detention of the plaintiff." *Levy v. Chasnoff*, 245 A.D. 607, 610 (1st Dep't 1935); *see also Barr v. Albany Cnty.*, 69 A.D.2d 914, 915 (3d Dep't 1979) (affirming dismissal of false arrest claim against sheriff where he "neither ordered the raid resulting in the arrests, nor participated in the raid"), *aff'd as modified*, 406 N.E.2d 481 (N.Y. 1980); *Du Chateau*

*v. Metro-N. Commuter R. Co.*, 253 A.D.2d 128, 132 (N.Y. App. Div. 1st Dep't 1999) ("It is not enough that the defendant's words or actions caused a police officer to confine him; plaintiff must [allege] that the defendant 'directed an officer to take [him] into custody.' ") (quoting *Vernes v. Phillips*, 194 N.E. 762, 76 (N.Y. 1935)).

Plaintiff has alleged that *ADA Congdon* held "ultimate decision-making authority over the investigation," and that *she* "met ... and decided with BPD to file criminal charges against [p]laintiff." Compl. ¶¶ 127, 133. Because plaintiff has not plausibly alleged that Wagner participated in or directed his arrest, *see generally* Compl., his state law false arrest claim must be dismissed.

**ii. Malicious Prosecution**

Under state law, "[t]he elements of an action for malicious prosecution are (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." *Colon v. City of New York*, 455 N.E.2d 1248, 1250 (N.Y. 1983).

Wagner argues that plaintiff's state law malicious prosecution claim must be dismissed because plaintiff has not plausibly alleged the elements as to him. Wagner Mem. at 16–19. Plaintiff maintains that, at this stage, his allegations sufficiently state a malicious prosecution claim against Wagner. Pl.'s Opp. at 11–12, 18–20.

New York courts have held that the initiation element may be satisfied through allegations that a defendant filed a charging instrument, *Bonfante v. Golub Corp.*, 186 A.D.2d 343, 344 (N.Y. App. Div. 3d Dep't 1992), falsified or withheld information, *id.*, or "played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Viza v. Town of Greece*, 94 A.D.2d 965, 965 (N.Y. App. Div. 4th Dep't 1983).

Again, plaintiff has only alleged that ADA Congdon directed Wagner to retrieve the Saitta folder, but he did not. Compl. ¶¶ 118–19. Absent any other non-conclusory factual allegations, plaintiff has not plausibly stated that Wagner "initiated" plaintiff's prosecution. Accordingly, plaintiff's state law malicious prosecution claim against Wagner must be dismissed.

**iii. New York State Constitutional Violations**

Plaintiff's tenth cause of action alleges violations of Article I, sections 6 and 12 of the New York State Constitution. Compl. ¶¶ 286–89.

Wagner argues that this claim must be dismissed because the New York State Constitution does not provide a right of action where there are adequate alternative remedies available, and regardless, plaintiff has not plausibly alleged that Wagner violated his rights under the New York State Constitution. Wagner Mem. at 27–28. Plaintiff argues that his state constitutional claims are "are asserted in the alternative in the event the Court ... conclude[s] that [p]laintiff lacks a viable federal claim against Wagner." Pl.'s Opp. at 28.

**\*6** In *Brown v. State*, the Court of Appeals "recognized a private right of action to recover damages against the State for violations of the Equal Protection and Search and Seizure Clauses ... Finding neither injunctive, declaratory, nor exclusionary relief adequate to protect against the invasion of personal liberty interests suffered by the claimants." *Martinez v. City of Schenectady*, 276 A.D.2d 993, 996 (N.Y. App. Div. 3d Dep't 2000) (citing *Brown v. State*, 674 N.E.2d 1129, 1140–41 (N.Y. 1996)), *aff'd* 761 N.E.2d 560 (N.Y. 2001).

"[H]owever, the Court of Appeals made it clear that th[is] 'narrow remedy'... was not 'boundless.' " *Lyles v. State*, 2 A.D.3d 694, 695 (N.Y. App. Div. 2d Dep't 2003) (quoting *Martinez v. City of Schenectady*, 761 N.E.2d 560, 563 (N.Y. 2001)), *aff'd*, 820 N.E.2d 860 (N.Y. 2004). For example, in *Lyles*, the Appellate Division for the Second Department held that:

> recognition of the claimant's State constitutional claims was neither necessary nor appropriate to ensure the full realization of his rights, because the alleged wrongs could have been redressed by an alternative

remedy, namely, timely interposed common-law tort claims for assault and battery, false imprisonment, and the intentional and negligent injury to his property.

*Lyles*, 2 A.D.3d at 695.

Wagner argues that, here, a private right of action to vindicate any alleged violations of plaintiff's state constitutional rights is unnecessary, because plaintiff's alleged harms could be redressed by § 1983 claims for "false arrest, malicious prosecution, and denial of fair trial," or state law tort claims for false arrest and malicious prosecution—both of which permit a damages remedy. Wagner Mem. at 28. The Court agrees.

Plaintiff alleges that Wagner's failure to retrieve exculpatory evidence—*i.e.*, the Saitta folder—caused him to be arrested and prosecuted without probable cause, in violation of his rights under the New York State Constitution. *See* Compl. ¶¶ 118–19, 193, 201. State tort law and § 1983 both provide a damages remedy for this alleged harm, thereby vitiating the need for a private right of action under the New York State Constitution.

Even if a private right of action were appropriate here, Wagner is correct that any such claim would "fail for the same reasons set forth above in connection with Plaintiff's Section 1983 and other state-law claims." Wagner Mem. at 28. Accordingly, plaintiff's tenth cause of action is dismissed.

### 3. Leave to Amend

Finally, the Court must address plaintiff's request for leave to amend his complaint. Plaintiff sought leave to amend through a single sentence in the "Conclusion" paragraph of his opposition brief. Pl.'s Opp. at 28. Wagner argues that plaintiff's request should be denied, because "any request to amend must be made by motion." Wagner's Mem. at 14. The Court agrees.

Under this District's Local Rules of Practice, "[a] party moving to amend a pleading ... must attach an unsigned copy of the proposed amended pleading to its motion papers." L.R. 15.1(a). "[T]he proposed amended pleading must be a complete pleading, which will supersede the pleading sought to be amended in all respects." *Id.* A motion to amend "must set forth specifically the proposed insertions and deletions of language and identify the amendments in the proposed pleading." *Id.*

Plaintiff has not complied with this Local Rule. His failure to attach a proposed amended pleading is particularly frustrating, "as it precludes the Court from 'examin[ing] the exact amendment that it is being asked to permit[;] ... ensur[ing] that all of the allegations asserted ... are contained in a single document[;] ... [and] eliminat[ing] the confusing nature of piecemeal amended pleadings.' " *Wynn v. Lee*, 2019 WL 13546213, at *1 (N.D.N.Y. May 1, 2019) (quoting *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 508 (N.D.N.Y. 2009)).

**\*7** Plaintiff's obvious non-compliance with the Local Rules is a sufficient basis on which to deny his motion to amend. *Reynolds-Sitzer v. EISAI, Inc.*, 586 F. Supp. 3d 123 (N.D.N.Y. 2022) (denying motion for leave to amend where plaintiffs requested leave in a brief paragraph of their opposition papers and failed to comply with the Local Rules); *Webb v. Mentor Worldwide LLC*, 453 F. Supp. 3d 550 (N.D.N.Y. 2020) (denying plaintiff's motion for leave to amend, in part, for noncompliance with the Local Rules); *Braxton v. Bell*, 2020 WL 13908846, at *1 (N.D.N.Y. July 7, 2020) (denying "motion to amend for failure to comply with the Local Rules for the Northern District of New York and Federal Rules of Civil Procedure.").

While plaintiff is correct that leave to amend should be freely given when justice so requires, Pl.'s Opp. at 28 (citing Fed. R. Civ. P. 15(a)(2)), "a court need not always allow a party to replead simply because it asked. In particular, denial of leave to amend is proper where the request gives no clue as to how the complaint's defects would be cured." *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (internal quotation omitted); *Murphy Med. Assocs., LLC v. Yale Univ.*, 120 F.4th 1107, 1114 (2d Cir. 2024) (affirming denial of plaintiff's request for leave to amend where plaintiff failed to make formal motion or submit

proposed amended complaint); *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 55 (2d Cir. 2025) (affirming denial of request for leave to amend where plaintiff "waited until her opposition to the motion to dismiss to request leave ... and ... did so only in a single footnote on the final page of her brief").

Plaintiff was given extra time, Dkt. No. 102, to respond to Wagner's motion to dismiss—which raised the same or substantially similar legal issues as the earlier-filed motions in this case—but the Court finds no indication anywhere in plaintiff's briefing of what new or additional, non-conclusory factual allegations he would raise to cure the deficiencies in his complaint. *See generally* Pl.'s Opp.

Accordingly, plaintiff's request for leave to amend his complaint is denied.

## B. County's Motion for Reconsideration

The County has moved for partial reconsideration of the September 29 Order, arguing that (1) the Court erroneously permitted plaintiff's state law false arrest and malicious prosecution claims to proceed against the County under a theory of *respondeat superior* liability; and (2) regardless, the Court should have dismissed plaintiff's state law false arrest claim because, based on the facts alleged, any claim for his unlawful detention "must be pursued as malicious prosecution, not false arrest." *See* Dkt. No. 107 ("County Mem.") at 5–9.

In opposition, plaintiff argues that the County's motion must be denied, because it is "merely an attempt to relitigate issues the Court has already carefully considered and decided," and "the County identifie[d] no circumstances that establish either an error of law or the risk of manifest injustice." Dkt. No. 110 ("Pl.'s Opp. Recons.") at 4.

As plaintiff correctly notes, "[r]econsideration under Local Rule 60.1 and Rule 60(b) is an extraordinary remedy, available only to account for an intervening change in controlling law, address newly discovered evidence that could not previously have been presented, or to correct a clear error of law or prevent manifest injustice." Pl.'s Opp. Recons. At 4. The County has failed to demonstrate entitlement to reconsideration on any permissible basis.

First, the County argues that plaintiff's state false arrest and malicious prosecution claims must be dismissed, because ADA Congdon was acting on behalf of the State, rather than the County, when the alleged misconduct occurred. County's Mem. at 5–8.

**\*8** The County is correct that:

[U]nder Second Circuit precedent, "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county," *Baez v. Hennessy*, 853 F.2d [73, 77 (2d Cir. 1988)], and therefore, a "county c[annot] be held legally responsible for injuries that the prosecutor had caused" in the context of a § 1983 *Monell* claim, *see Bellamy v. City of New York*, 914 F.3d 727, 757 (2d Cir. 2019).

*Broadwater v. Cnty. of Onondaga*, 2024 WL 1053351, at \*7 (N.D.N.Y. Mar. 11, 2024) (Sannes, C.J.). But the Court already dismissed plaintiff's § 1983 *Monell* claims, and only plaintiff's state law false arrest and malicious prosecution claims remain against the County.

Thus, "[t]he proper inquiry ... is whether a county may be held liable for a state-law claim under the theory of *respondeat superior* where its prosecutor faces liability for conduct 'outside his quasi-judicial role'—that is, conduct that does not entitle the prosecutor to absolute immunity." *Broadwater*, 2024 WL 1053351, at \*7 (quoting *Claude H. v. Cnty. of Oneida*, 214 A.D.2d 964, 965 (1995)).

"Under New York law, '[i]t is well established that a District Attorney is a local officer of the county rather than of the State.' " *Broadwater*, 2024 WL 1053351, at \*7 (quoting *Claude H.*, 214 A.D.2d at 966). "And under New York law, where a county

prosecutor is potentially liable—that is, where a prosecutor does not enjoy absolute immunity—'the County may be held vicariously liable.' " *Broadwater*, 2024 WL 1053351, at *7 (quoting *Claude H.*, 214 A.D.2d at 966).

The Court has already determined that, at this stage, ADA Congdon is not absolutely immune from liability as a matter of law. *See* September 29 Order at 24–27. Because ADA Congdon may be held liable under state law for her alleged conduct, the County may be held vicariously liable. *See Claude H.*, 214 A.D.2d at 966 ("Because of the District Attorney's potential liability, the County may be held vicariously liable."). Accordingly, the County's motion for reconsideration is denied on this ground.

Second, the County argues that plaintiff's false arrest claim should have been dismissed, because plaintiff "admits that he was produced by counsel and charged and arraigned ... on the same date," therefore, "any claim for unlawful detention must be pursued as malicious prosecution, not false arrest." County Mem. at 8–9 (citing *Wallace v. Kato*, 549 U.S. 384, 389–90 (2007)).

At the outset, "a party may not advance new arguments or requests for relief in a motion for reconsideration if they were 'not previously presented to the Court.' " *In re Furstenberg Fin. SAS*, 785 F. App'x 882, 886 (2d Cir. 2019) (summary order) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001)). As plaintiff points out, the County could have, but "did not raise this issue in its motion to dismiss or its reply." Pl.'s Opp. Recons. At 9. Even setting that aside, the County's late-breaking argument fails.

In *Wallace v. Kato*, the Supreme Court held that an unlawful imprisonment ends and a § 1983 false arrest claim accrues when an arrestee becomes held pursuant to legal process—"when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace*, 549 U.S. at 389. "From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." *Id.* at 390 (internal quotation omitted).

 **\*9**  Contrary to the County's contentions, the Court in *Wallace* did not hold that someone who was unlawfully arrested but subsequently held pursuant to legal process could not bring a claim for false arrest, rather, it held that an unlawful arrest ends upon arraignment, and damages incurred after that point must be recovered through a malicious prosecution action, rather than a false arrest action. *Wallace*, 549 U.S. at 389.

Regardless, *Wallace* is inapplicable here, because only state law claims remain against the County, and *Wallace* concerned "the accrual date of a § 1983 cause of action," which "is a question of federal law that is *not* resolved by reference to state law." *Id.* at 388 (emphasis in original).

Lastly, to the extent the County argues that plaintiff did not plausibly allege his state law false arrest claim because he was arrested pursuant to legal process, that argument is rejected, because "[a] motion for reconsideration is not an opportunity ... to 'relitigate an issue already decided' or present arguments that could have been made" previously. *Ethridge v. Bell*, 49 F.4th 674, 688 (2d Cir. 2022). [2]

---

[2]    In any event, plaintiff has plausibly alleged that (1) ADA Congdon directed complainant Herceg to destroy exculpatory electronic data during the investigation, Compl. ¶¶ 66, 171, (2) ADA Congdon "decided that [p]laintiff ... should be arrested," *id.* ¶ 130; (3) "no probable cause existed to arrest plaintiff," *id.* ¶ 132; (4) "BPD notified [p]laintiff's attorney that [he] would have to appear to be arrested," *id.* ¶ 134; and (5) plaintiff's attorney "produced him on the same date," *id.* Together these allegations state a plausible false arrest claim against ADA Congdon, for which the County may be held vicariously liable.

In sum, the County has failed to demonstrate that reconsideration of the Court's September 29 Order is warranted.


**V. CONCLUSION**
Therefore, it is

2025 WL 3280745

ORDERED that

1. Wagner's motion to dismiss (Dkt. No. 101) is granted; and

2. The County's motion for reconsideration (Dkt. No. 107) is denied.

The Clerk of the Court is directed to:

    a. Terminate BCDA Investigator Jeff Wagner from the docket report; and

    b. Terminate moving defendants' pending motions (Dkt. Nos. 101 & 107).

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 3280745

---

End of Document                           © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Trapani v. Annucci, Not Reported in Fed. Supp. (2022)

2022 WL 7290107

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 305 of 397

2022 WL 7290107
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Damian R. TRAPANI, Plaintiff,

v.

Anthony J. ANNUCCI; John Colvin, Superintendent, Five Points Corr. Facility;
and Robert Morton, Superintendent, Downstate Corr. Facility, Defendants.

9:21-CV-0681 (LEK/ML)
|
Signed June 21, 2022

**Attorneys and Law Firms**

DAMIAN R. TRAPANI, Plaintiff, Pro Se, Upstate Correctional Facility, Post Office Box 2001, Malone, New York 12953.

LETITIA A. JAMES, Attorney General for the State of New York, RACHAEL OUIMET, ESQ., Assistant Attorney General, Counsel for Defendants, The Capitol, Albany, New York 12224.

**REPORT and RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

 **\*1**  This matter has been referred to me for a Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge. Currently before the Court, in this civil rights action filed by Damian R. Trapani ("Plaintiff") against Anthony J. Annucci, John Colvin, and Robert Morton (collectively "Defendants"), is Defendants' motion for summary judgment and dismissal pursuant to Fed. R. Civ. P. 12(b)(6) and 56. (Dkt. No. 25.) For the reasons set forth below, I recommend that Defendants' motion be granted in part and denied in part.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claims

At this procedural posture, the remaining claims from Plaintiff's Amended Complaint based on his placement in punitive segregation are (1) a claim of cruel and unusual punishment pursuant to the Eighth Amendment; and (2) a claim that Plaintiff's due process rights were violated pursuant to the Fourteenth Amendment. (*See generally* Dkt. No. 11; Dkt. No. 15.) Judge Kahn's Memorandum-Decision and Order dated November 19, 2021, thoroughly outlines Plaintiff's allegations and claims. (Dkt. No. 15 at 2-7.)

### B. Procedural History

On January 31, 2022, in lieu of an answer, Defendants filed a motion for summary judgment and dismissal pursuant to Fed. R. Civ. P. 12(b)(6) and 56. (Dkt. No. 25.) Plaintiff's response was due by February 22, 2022. (Dkt. No. 26.) On February 17, 2022, Plaintiff filed a letter requesting an extension of the time for him to respond to Defendants' motion. (Dkt. No. 28.) On February 22, 2022, the undersigned granted Plaintiff's request for an extension of time to respond to the motion, Plaintiff's response was due by March 8, 2022. (Dkt. No. 29.) On March 21, 2022, the Court *sua sponte* extended the deadline for Plaintiff to file a response to Defendants' motion for summary judgment, until April 4, 2022. (Dkt. No. 31.) On March 21, 2022, Plaintiff filed a response to the motion. (Dkt. No. 32.) On March 30, 2022, Defendants filed a reply. (Dkt. No. 33.)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 306 of 397

Trapani v. Annucci, Not Reported in Fed. Supp. (2022)

2022 WL 7290107

### C. Statement of Undisputed Material Facts

Unless otherwise noted, the following facts were asserted and supported by Defendants in their Statement of Material Facts and not denied by Plaintiff. (*Compare* Dkt. No. 25, Attach. 4 [Defs.' Statement of Material Facts], *with* Dkt. No. 32 [Pl.'s Resp.].)

1. Plaintiff is and was at all relevant times, incarcerated in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").

2. DOCCS has an inmate grievance process ("IGP"), established by Part 701 of Title 7 of the Official Compilation of Codes, Rules and Regulations of the State of New York ("N.Y.C.R.R."), which involves three levels of review: (1) a complaint to the Inmate Grievance Review Committee ("IGRC") at the individual facility, (2) review by the Superintendent of the facility, and (3) appeal to the Central Office Review Committee ("CORC").

3. CORC is the final appellate level of the IGP.

4. Plaintiff's claims in this action are proper subjects for a grievance pursuant to the DOCC's IGP. [1]

[1]    Notwithstanding Plaintiff's objection, the Court deems the fact admitted because Plaintiff fails to include any citation to the record. Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact ... is genuinely disputed must support the assertion by ... citing to particular parts of the record."); *see N.Y. Teamsters v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (upholding grant of summary judgment where the district court "reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a response to the statement of material facts not in dispute that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations"); *Jamison v. Metz*, 865 F. Supp. 2d 204, 207 n.1 (N.D.N.Y. 2011) (Suddaby, J.) ("[W]herever [the *pro se*] Plaintiff has [willfully] failed to cite record evidence in support of his denials of properly supported facts ... the Court has deemed such facts admitted to the extent that they are not clearly in dispute.").

**\*2**  5. Plaintiff did not file an appeal to CORC related to the claims in this action. [2]

[2]    *See*, *supra*, note 1.

### D. Parties' Briefing on Defendants' Motion for Summary Judgment

#### 1. Defendants' Memorandum of Law

Generally, in support of their motion for summary judgment, Defendants assert the following five arguments: (1) Plaintiff failed to exhaust his administrative remedies before commencing this action; (2) Plaintiff failed to state a claim with respect to his Eighth Amendment claim; (3) Plaintiff failed to state a claim with respect to his Fourteenth Amendment claim; (4) Plaintiff failed to allege the personal involvement of Defendants; and (5) in the alternative, Defendants are entitled to dismissal based on the doctrine of qualified immunity. (*See generally* Dkt. No. 25, Attach. 1 [Defs.' Mem. of Law].)

First, Defendants argue that the IGP was fully available to Plaintiff and—despite successfully appealing numerous other grievances to CORC while incarcerated at Five Points Correctional Facility—Plaintiff did not appeal any grievance to CORC regarding his claims in this action. (Dkt. No. 25, Attach. 1 at 8-11.) Further, Defendants argue that Plaintiff alleges he filed a habeas petition regarding his confinement in DOCCS, but does not allege that he filed a grievance appeal related to his allegedly wrongful disciplinary confinement. (*Id.*) Defendants argue that because the time for Plaintiff to exhaust his claims has expired, the Amended Complaint should be dismissed with prejudice. (*Id.*)

2022 WL 7290107

Second, Defendants argue that Plaintiff's Eighth Amendment claim "must fail because he cites no authority for the novel—and irrational—proposition that an incarcerated individual serving a term of disciplinary confinement whose conviction is reversed but then takes a plea on the same indictment and returns to DOCCS custody need not finish his term of disciplinary confinement." (*Id.* at 12-15.) Further, Defendants argue that the conditions to which Plaintiff was subjected to while in disciplinary confinement do not support an Eighth Amendment cruel and unusual punishment claim. (*Id.*) Defendants argue that the conditions Plaintiff alleges he was subjected to in disciplinary confinement were typical and merely included fewer privileges compared to prisoners in the general population. (*Id.*) Moreover, Defendants argue that Plaintiff failed to allege facts plausibly suggesting that Defendants knew of and disregarded an excessive risk to his health and safety. (*Id.*) In addition, Defendants argue that Plaintiff's Eighth Amendment claim against Defendant Morton should be dismissed because Plaintiff was at Downstate Correctional Facility for "at most—several weeks" and temporary deprivations do not generally violate a prisoner's constitutional rights. (*Id.*)

Third, Defendants argue that Plaintiff's Fourteenth Amendment claim must fail because although Plaintiff's disciplinary confinement lasted approximately 175 days, and thus was of intermediate duration, Plaintiff's clear and specific allegations describe standard conditions. (*Id.* at 15-18.) More specifically, Defendants argue that Plaintiff failed to allege facts plausibly suggesting atypical hardship. (*Id.*)

**\*3** Fourth, Defendants argue that Plaintiff failed to allege facts plausibly suggesting the personal involvement of Defendants in the constitutional violations. (*Id.* at 18-20.) More specifically, Defendants argue that Defendant Annucci's role as commissioner of DOCCS and the role of Defendants Morton and Colvin as superintendents of their respective facilities, cannot support Plaintiff's conditions of confinement claims. (*Id.*) Defendants argue that Plaintiff's hearsay allegation that he was "told" that Defendant Morton reviewed his continued disciplinary confinement after his return from being resentenced, is insufficient to allege personal involvement. (*Id.*) In addition, Defendants argue that—aside from that vague hearsay assertion—Plaintiff does not allege that Defendants were specifically made aware of Plaintiff's concerns. (*Id.*)

Fifth, Defendants argue that, in the alternative, they are entitled to dismissal based on the doctrine of qualified immunity. (*Id.* at 20-22.) More specifically, Defendants argue that Plaintiff cites "no authority for his position that it is somehow improper or unlawful to have him continue the term of disciplinary confinement he was serving for the reversal of his conviction and subsequent resentencing." (*Id.*) Thus, Defendants argue that it was objectively reasonable for them to believe that Plaintiff's return to disciplinary confinement after his resentencing was lawful. (*Id.*)

## 2. Plaintiff's Opposition

Generally, in opposition to Defendants' motion for summary judgment, Plaintiff asserts the following three arguments: (1) Defendant's motion is premature and should be denied or stayed until discovery is complete; (2) once Plaintiff's conviction and sentence were overturned, any obligation to complete his punitive segregation sanction extinguished with the sentence, he was not afforded a hearing with respect to his punitive segregation confinement, and he was deprived of his medically prescribed boots and other property while in punitive confinement which resulted in atypical conditions of confinement; and (3) Defendants were personally involved in Plaintiff's wrongful confinement, which included their use of an invalid sentence and commitment order and disobeying a court order. (*See generally* Dkt. No. 32 at 12-16.) In addition, Plaintiff filed a declaration wherein he asserts that: (1) in June 2018, he filed an inmate grievance related to the issues in this action, which he appealed with the IGP at Downstate Correctional Facility; (2) in July 2018, he signed for a decision from "either Inmate Grievance Resolution Committee (IGRC), IGP Supervisor, or Superintendent, Defendant Robert Morton" denying his inmate grievance complaint as untimely and noting that it would "not be entertained further"; (3) each of the two grievances referred to by Defendants in their memorandum of law—titled "exams not performed" and "status not given on grievance"—related to the issues complained of in the Amended Complaint. (Dkt. No. 32 at 17-21.) Based on these assertions, Plaintiff argues that a genuine issue of material fact remains regarding (1) whether the language "will not be entertained further" indicated that administrative remedies were unavailable to Plaintiff, and (2) whether Plaintiff's other grievances satisfied the exhaustion requirements. (*Id.*)

Trapani v. Annucci, Not Reported in Fed. Supp. (2022)
2022 WL 7290107

### 3. Defendants' Letter Reply [3]

[3]    In the future, defense counsel is cautioned to comply with Local Rule 7.1(b)(1), which provides that "[a]ll memoranda of law shall contain a table of contents."

Generally, in further support of their motion for summary judgment, Defendants assert the following three arguments: (1) Plaintiff cannot rely on a claim that discovery has not taken place to avoid admitting that he did not file a CORC appeal about the subject claims because whether he filed a CORC appeal is squarely within his personal knowledge; (2) Plaintiff fails to allege facts plausibly suggesting an Eighth or Fourteenth Amendment claim because (a) his sentence and his period of disciplinary confinement are not viewed as equivalent under the law, (b) the allegation that Plaintiff did not have his medical boots does not constitute an unreasonable risk of serious damage to his health or the denial of minimum civilized measure of life's necessities to satisfy the objective prong of his Eighth Amendment claim, (c) Plaintiff fails to allege facts plausibly suggesting that Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety to satisfy the subjective prong of his Eighth Amendment claim, and (d) Plaintiff fails to allege facts plausibly suggesting an atypical hardship to support his Fourteenth Amendment claim; and (3) Plaintiff's conclusory claim that DOCCS had a policy and Defendants should have been aware because they were supervisory officials is insufficient to show personal involvement. (Dkt. No. 33.)

## II. RELEVANT LEGAL STANDARDS

### A. Standard Governing A Motion For Summary Judgment

**\*4**    Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). [4]    As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law.... Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

[4]    As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted). As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*. [5]    (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.) [6]    As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules. [7]

Trapani v. Annucci, Not Reported in Fed. Supp. (2022)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 309 of 397

2022 WL 7290107

5    *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

6    *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

7    *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response ... does not ... [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 56.1. What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1(b) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement [8] –even when the non-movant was proceeding *pro se.* [9]

8    Among other things, Local Rule 56.1 (previously Local Rule 7.1(a)(3)) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 56.1.

9    *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to "perform an independent review of the record to find proof of a factual dispute.").

**\*5** Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(a)(3). [10] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at \*1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at \*2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

10    *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at \*27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1(a)(3) (previously Local Rule 7.1(b)(3))); *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at \*3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

### B. Standard Governing Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) ("The [PLRA] mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or

2022 WL 7290107

particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly. *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates " 'using all steps that the [government] agency holds out, and doing so properly' " (quoting *Woodford*, 548 U.S. at 90)). In New York State prisons, DOCCS has a well-established three-step IGP. 7 N.Y.C.R.R. § 701.5.

First, an inmate must file a complaint with the facility IGP clerk within twenty-one days of the alleged occurrence. 7 N.Y.C.R.R. § 701.5(a)(1). A representative of the facility's IGRC has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id.* § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id.* § 701.5(b)(3).

Second, a grievant may appeal the IGRC's decision to the facility superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to CORC for a decision under the process applicable to the third step. *Id.* § 701.5(c)(3)(i).

**\*6** Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id.* § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* § 701.5(d)(3)(ii).

The superintendent is required to render a decision on the grievance within twenty-five calendar days, and extensions may be granted only with the consent of the grievant. *Id.* § 701.8(f). If the superintendent fails to respond within the required twenty-five days, the grievant may appeal the grievance to CORC by "filing a notice of decision to appeal (form #2133) with the inmate grievance clerk." *Id.* § 701.8(g). If the grievant wishes to appeal the superintendent's response to CORC, he must do so within seven calendar days of receipt of that response. *Id.* § 701.8(h).

Generally, if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).") (quotations marks and citations omitted).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]") (quotation marks and citations omitted). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks and citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically

2022 WL 7290107

speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. In *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" The illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry. *Mena v. City of New York*, 13-CV-2430, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

**\*7** Because non-exhaustion is an affirmative defense, the defendants bear the burden of showing that a prisoner has failed to satisfy the exhaustion requirements. *See Jones*, 549 U.S. at 216. The plaintiff must then establish the IGP grievance procedure was unavailable to him under *Ross*. *Id.*

### C. Legal Standard Governing Motions To Dismiss For Failure To State A Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a) (2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a) (2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added). [11]

[11]   *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak*, 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 312 of 397
Trapani v. Annucci, Not Reported in Fed. Supp. (2022)
2022 WL 7290107

"[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

**\*8**  As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

However, "in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (Sharpe, M.J.) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to " 'make reasonable allowances to protect *pro se* litigants' " from inadvertently forfeiting legal rights merely because they lack a legal education. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). As a result, *Twombly* and *Iqbal* notwithstanding, the court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 139, 146 (2d Cir. 2002).

## III. ANALYSIS
After carefully considering the matter, I recommend that Defendants' motion be granted in part and denied in part.

### A. Whether Plaintiff Failed to Exhaust His Administrative Remedies
I recommend that the Court deny Defendants' motion for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies because there appears to be a genuine dispute of material fact whether (1) Plaintiff did, in fact, exhaust his administrative remedies, or (2) in the alternative, whether administrative remedies were unavailable to Plaintiff.

First, Plaintiff alleges that the two appeals to CORC, titled "status not given on grievance" and "exams not performed," "relate to events complained of in this action." (Dkt. No. 32 at 19.) [12] Construing all reasonable inferences in Plaintiff's favor, the Court is unable to determine whether Plaintiff's claims in this action were encompassed in those grievances and appeals. Thus, an issue of fact remains, at this juncture whether Plaintiff failed to exhaust his administrative remedies.

[12]    The Court notes that the grievances and respective appeals titled "status not given on grievance" and "exams not performed," are not currently before the Court. (*See generally* docket sheet.)

Second, to the extent that Plaintiff failed to exhaust his administrative remedies, a genuine issue of fact remains for trial whether administrative remedies were unavailable to Plaintiff. Construing all reasonable inferences in Plaintiff's favor, a genuine issue of fact remains whether prison administrators thwarted Plaintiff from taking advantage of the grievance process through misrepresentation by stating that his grievance would "not be entertained further" despite Plaintiff's right to appeal.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 313 of 397

Trapani v. Annucci, Not Reported in Fed. Supp. (2022)

2022 WL 7290107

**\*9**  As a result, I recommend that the Court conduct an exhaustion hearing pursuant to *Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011) to determine whether Plaintiff properly exhausted his administrative remedies.

### B. Whether Plaintiff Sufficiently Stated a Claim for Cruel and Unusual Punishment Pursuant to the Eighth Amendment

The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981).

Prison conditions can constitute "cruel and unusual punishment" if prison officials act (or fail to act) with "deliberate indifference to a substantial risk of serious harm to a prisoner." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). A constitutional violation under these principles has both objective and subjective components. First, a prisoner must be incarcerated under conditions that, objectively, pose "a substantial risk of serious harm." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer*, 511 U.S. at 834). Second, because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," a prison official must possess "a 'sufficiently culpable state of mind,' " which "[i]n prison-conditions cases ... is one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " *Jolly Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted). "Although the Constitution does not mandate a comfortable prison setting, prisoners are entitled to 'basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety.' " *Brown v. Doe*, 13-CV-8409, 2014 WL 5461815, at \*6 (S.D.N.Y. Oct. 28, 2014) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

There is no "bright line test" to determine if a risk of serious harm is "substantial" for Eighth Amendment purposes. *Lewis, 944 F.3d* at 432. Rather, a court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original); *see Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (citing *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)) ("There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.' "); *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (citing *Helling* 509 U.S. at 35-36; *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)) ("Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency."). "In other words," the Supreme Court has written, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling*, 509 U.S. at 36.

**\*10**  To satisfy the subjective element, "[t]o constitute deliberate indifference, '[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety.' " *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

Thus, an Eighth Amendment claim based on conditions of confinement requires that the plaintiff demonstrate that official's conduct reflects "the deliberate infliction of punishment," and not just "an ordinary lack of due care for prisoner interests or safety." *Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019); *see Farmer*, 511 U.S. at 834-35 ("Deliberate indifference describes a state of mind more blameworthy than negligence."). While officials need not engage in "acts or omissions for the very purpose of causing harm or with knowledge that harm will result," they must at least "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 835, 837. In other words, they must act with a *mens rea* "consistent with recklessness in the criminal law." *Id.* at 837. Under this standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.* at 835; *see, e.g.*, *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) ("This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."). "[A]n official's failure to alleviate a significant

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 314 of 397

Trapani v. Annucci, Not Reported in Fed. Supp. (2022)

2022 WL 7290107

risk that he should have perceived but did not, while no cause for commendation, cannot ... be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

I recommend that Plaintiff's Eighth Amendment conditions of confinement claim be dismissed because Plaintiff failed to allege facts plausibly suggesting the objective or subjective elements of his claim. [13]

[13]    However, I reject Defendants' argument that Plaintiff was obliged to—and thus, his Amended Complaint was insufficient because he failed to—provide "authority" to support his claim. *See Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004) (quoting *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 46 (2d Cir. 1997)) (quotation marks omitted) ("Rule 8's liberal pleading principles do not permit dismissal for failure in a complaint to cite a statute, or to cite the correct one.... Factual allegations alone are what matters.")

Even accepting Plaintiff's allegations as true—that Defendants placed him in punitive segregation, did not return the bulk of his personal belongings, and denied him his medically prescribed boots—the facts are insufficient to plausibly suggest that he was incarcerated under conditions that objectively posed a substantial risk of serious harm. *See Williams v. Gumbula*, 13-CV-1132, 2018 WL 1795547 (W.D.N.Y. Apr. 16, 2018) (concluding that the plaintiff's claim that he suffered inhumane conditions because correction officers refused to turn water on to his cell for nine days fails to support an Eighth Amendment claim); *Young v. Tryon*, 12-CV-6251, 2015 WL 309431, at *10 (W.D.N.Y. Jan. 23, 2015), *report and recommendation adopted*, 2015 WL 554807 (W.D.N.Y. Feb. 11, 2015) (citing *Walker v. Schriro*, 11-CV-9299, 2013 WL 1234930, *13 (S.D.N.Y. 2013) (allegations that plaintiff was temporarily deprived of food, shower, linens, running water or bathroom were insufficient to state a claim)) (dismissing Eighth Amendment claims arising from temporary deprivations as a result of a lockdown); *Miller v. Campell*, 804 F. Supp. 159, 162 (D. Kan. 1992) (finding that the "brief" suspension of water and electricity during a lockdown was not a serious deprivation of basic human needs). [14]

[14]    I also note that Defendants appear to conflate the standards for Plaintiff's due process claim with the standard for his conditions of confinement claim. (Dkt. No. 25, Attach. 1 at 14 [citing *Boyd v. Doe #1*, 18-CV-1333, 2019 WL 5287973, at *12 (N.D.N.Y. Oct. 18, 2019) (considering a due process claim and concluding that the plaintiff failed to allege facts plausibly suggesting the deprivation of a liberty interest because the alleged deprivation of privileges did not constitute a serious hardship)].)

**\*11** Although Plaintiff alleged that he was denied his medically prescribed boots while confined in punitive segregation, which inhibited his ability to properly exercise (Dkt. No. 11 at ¶ 65), the Second Circuit has "recognized that [only] some opportunity for exercise must be afforded to prisoners." *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *see Alston v. Coughlin*, 668 F. Supp. 822, 837 (S.D.N.Y. 1987) ("Opportunities for exercise must be afforded to prisoners"); *Rhem v. Malcolm*, 371 F. Supp. 5894, 627 (S.D.N.Y. 1974) ("The right of a prisoner to reasonable physical exercise is fundamental" so that the "50 minute per week opportunity for exercise at MHD (even supplemented by other recreation programs) does not meet constitutional standards" for pretrial detainees), *aff'd*, 507 F.2d 333 (2d Cir. 1974); *Albro v. Onondaga*, 681 F. Supp. 991, 995 (N.D.N.Y. 1988) (Munson, C.J.) ("Detainees, even those [held] for only a short time, ought to be afforded at least 1 hour of exercise per day"). Plaintiff does not allege that he was denied the opportunity to exercise or that the opportunity was deficient in some way. (*See generally* Dkt. No. 11.) In fact, Plaintiff alleges that he was afforded recreational time each day while in punitive segregation. (Dkt. No. 11 at ¶ 64.)

Further, even assuming *arguendo*, that Plaintiff's allegations were sufficient to satisfy the objective prong of the Eighth Amendment, he fails to allege facts plausibly suggesting that Defendants knew of and disregarded an excessive risk to Plaintiff's health and safety. Construing all reasonable inferences in Plaintiff's favor, he alleged that Defendants were responsible for a policy that resulted in his punitive segregation assignment. (Dkt. No. 11 at ¶¶ 55, 77, 83.) However, he does not allege facts plausibly suggesting that Defendants "were responsible for or personally involved in the alleged unconstitutional conditions" that Plaintiff experienced in punitive segregation. *Rasheen v. Adner*, 356 F. Supp. 3d 222, 241 (N.D.N.Y. Jan. 28, 2019).

2022 WL 7290107

As a result, I recommend that Plaintiff's claim of cruel and unusual punishment related to his confinement in punitive segregation, pursuant to the Eighth Amendment, be dismissed for failure to state a claim upon which relief may be granted.

### C. Whether Plaintiff Sufficiently Stated a Claim that His Due Process Rights Were Violated Pursuant to the Fourteenth Amendment

"[T]o present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendants(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 2235 (2d Cir. 2001).

"Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). When evaluating whether an inmate has suffered "atypical and significant hardship," courts must compare the conditions imposed upon that inmate with the conditions "endured by prisoners in [the] general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999). When evaluating the severity of an inmate's hardship, courts should consider both the duration and the conditions of confinement. *See Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 606 (S.D.N.Y. 2009).

The Second Circuit has taken the position that restrictive confinement—like punitive segregation—without unusual conditions, for a period of up to 101 days, does not constitute an atypical hardship. *Ortiz*, 380 F.3d at 654-55. However, for periods that fall into the " 'intermediate duration' of between 101 and 305 days, 'development of a detailed record' regarding the conditions of confinement as compared to 'ordinary prison conditions' is required" to determine whether a prisoner's liberty interest was infringed. *Chavez v. Gutwein*, 20-CV-0342, 2022 WL 1487781, at *5 (S.D.N.Y. May 11, 2022) (quoting *Palmer v. Richards*, 364 F.3d 60, 64-65 (2d Cir. 2004)); *see Johnson v. Schiff*, 17-CV-8000, 2019 WL 4688542, at *22 (S.D.N.Y. Sept. 26, 2019) (declining to dismiss due process claim for failure to allege a liberty interest where the plaintiff had been sentenced to 180 days in punitive segregation, because "development of a detailed record of the conditions ... [was] required."); *Koehl v. Bernstein*, 10-CV-3808, 2011 WL 2436817, at *7 (S.D.N.Y. June 17, 2011) (same with respect to a plaintiff who spent 120 days in SHU, and concluding that, on a motion to dismiss the court could not dismiss the plaintiff's due process claim "for failure to describe in detail the conditions of his confinement"), *report and recommendation adopted by*, 2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011).

**\*12** Based on the allegations contained in the Amended Complaint, Plaintiff spent approximately 175 days in punitive segregation. (Dkt. No. 11 at ¶ 76 [alleging that Plaintiff was "incarcerated and in punitive segregation, continuously, without interruption, from June 12, 2018[,] to December 2, 2018, total[ ]ing 171 days."].) Thus, Plaintiff's confinement to punitive segregation was an "intermediate duration," which requires the development of a detailed record regarding the conditions of confinement to determine whether Plaintiff's liberty interest was infringed.

The cases cited by Defendants in support of their motion are distinguishable and unavailing. First, Defendants cite to *Young v. Polizzi, Smith v. Costello*, and *Israel v. Brandt*, which were decided on a motions for summary judgment and thus, after there was a development of the record regarding the conditions of confinement that the plaintiff experienced. *Young v. Polizzi*, 16-CV-0660, 2018 WL 3949967, at *6 (N.D.N.Y. July 11, 2018) (Hummel, M.J.); *Smith v. Costello*, 15-CV-0401, 2017 WL 1155811, at *5-6 (N.D.N.Y. Mar. 3, 2017) (Stewart, M.J.); *Israel v. Bradt*, 228 F. Supp. 3d 237, 239 (W.D.N.Y. 2017). Second, Defendants cite to *Boyd v. Doe #1* and *Judd v. Guynup*, which related to the plaintiffs' restrictive confinement for periods of less than 101 days. *Boyd v. Doe #1*, 18-CV-1333, 2019 WL 5287973, at *12 (N.D.N.Y. Oct. 18, 2019) (McAvoy, J.); *Judd v. Guynup*, 12-CV-0058, 2012 WL 5472113, at *5-7 (N.D.N.Y. Oct. 17, 2012) (Treece, M.J.).

As a result, I recommend that the Court deny Defendants' motion to dismiss Plaintiff's due process claim pursuant to the Fourteenth Amendment for failure to state a claim upon which relief may be granted.

### D. Whether Plaintiff Sufficiently Alleged Defendants' Personal Involvement

Trapani v. Annucci, Not Reported in Fed. Supp. (2022)
Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 316 of 397
2022 WL 7290107

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).

"It is well settled in [the Second] Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotations omitted). In *Tangreti*, the Second Circuit recognized that, after *Ashcroft v. Iqbal*, there is "no special test for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Instead, a plaintiff "must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti*, 983 F.3d at 618.

Here, Plaintiff alleges that Defendants "created, authorized, maintained, permitted, and enforced a policy or procedure of not releasing ... inmates in punitive segregation, who ... had their sentences terminated due to their underlying criminal convictions and sentences being annulled and expunged for purposes of placing them back in punitive segregation if they return." (Dkt. No. 11 at ¶ 77.) In addition, Plaintiff alleges that "the matter regarding him being placed back in punitive segregation ... was taken all the way up to the superintendent ... to no avail." (*Id.* at ¶ 54.) Plaintiff alleged that he was informed by a DOCCS employee that it was "essentially up to the superintendent whether to place an inmate, upon returning from a court-ordered discharge, back in punitive segregation." (*Id.*)

**\*13** Given the special liberality afforded to *pro se* complaints, I find that Plaintiff has alleged facts plausibly suggesting the personal involvement of Defendants Colvin and Morton—both of whom were superintendents of the facilities where Plaintiff was confined to punitive segregation—sufficient to survive Defendants' motion to dismiss. I reject Defendants' argument that the Court should not consider Plaintiff's allegations that are based on hearsay. *See PDV USA, Inv. V. Interamerican Consulting Inc.*, 20-CV-3699, 2021 WL 2581569, at *8 (S.D.N.Y. June 22, 2021) ("[T]he fact that the news reports constitute hearsay [does not] warrant striking, because admissibility of an allegation is not a concern at the motion to dismiss stage."); *Campanella v. Cnty. of Monroe*, 853 F. Supp. 2d 364, 378 (W.D.N.Y. 2012) ("Although, as pleaded, these allegations are based on hearsay, that does not bar the Court from considering them on a motion to dismiss."). As a result, I recommend that the Court deny Defendants' motion to dismiss to the extent that it argues that Plaintiff failed to allege facts plausibly suggesting the personal involvement of Defendants Colvin and Morton.

However, I find that the Amended Complaint fails to allege facts plausibly suggesting the personal involvement of Defendant Annucci. Plaintiff does not allege that Defendant Annucci was aware of or involved in any way with Plaintiff's punitive segregation assignment. As a result, I recommend that the Court grant Defendants' motion to dismiss Plaintiff's claims against Defendant Annucci for lack of personal involvement. *See Conklin v. Cnty. of Suffolk*, 859 F. Supp. 2d 415, 441-42 (E.D.N.Y. 2012) (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)) ("[T]he fact that [the defendant] 'was in a high position of authority is an insufficient basis for the imposition of personal liability.' ").

### E. Whether Defendants are Entitled to Qualified Immunity

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.' " *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

2022 WL 7290107

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotations and citations omitted). The Court has discretion to determine the order in which it will address the inquiries required when assessing the applicability of qualified immunity. *See Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson* 555 U.S. at 236).

A right is clearly established if, "at the time of the challenged conduct ... every 'reasonable official would have understood that what he is doing violates that right.' " *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). There is no requirement that a case have been decided which is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft, 563 U.S. at 741.*

In addition, qualified immunity protects state actors when it was objectively reasonable for the state actor to believe that his conduct did not violate a clearly established right. *Manganiello v. City of N. Y.,* 612 F.3d 149, 165 (2d Cir. 2010). "If a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability." *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1867 (2017). Therefore, the district court may first ask whether it was objectively reasonable for any of the defendants to believe their conduct was not unlawful at the time. *Simpson v. City of N. Y.,* 793 F.3d 259, 268 (2d Cir. 2015). Qualified immunity does not apply if, on an objective basis, it is obvious that no reasonably competent officer would have taken the actions of the alleged violation. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

 **\*14**   "Although a defendant may assert the defense of qualified immunity in a motion to dismiss, the Second Circuit has held that it is very difficult for such a defense to succeed at the pleading stage." *Charles v. New York State DOCCS*, 07-CV-1274, 2009 WL 890548, at \*10 (N.D.N.Y. Mar. 31, 2009) (citing *McKenna v. Wright*, 386 F.3d 432, 436-37 (2d Cir. 2004)). "The defense must be based on facts appearing on the face of the complaint." *Charles*, 2009 WL 890548, at \*10 (citing *Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008)); *see Bernstein v. City of New York*, 06-CV-0895, 2007 WL 1573910, \*9 (S.D.N.Y. May 24, 2007) (quoting ("[b]ecause the qualified immunity defense necessarily involves a fact-specific inquiry, '[i]t is generally premature to address the defense of qualified immunity in a motion to dismiss pursuant to Rule 12(b)(6).' ").

Here, whether Defendants can successfully assert the defense of qualified immunity depends, to a great extent, on the facts concerning Plaintiff's punitive segregation, what actions they took, and why they took those actions in light of surrounding circumstances. As a result, I find that Defendants' motion to dismiss on this ground is premature and recommend that it be denied. *Rivera v. Fischer*, 655 F. Supp. 2d 235, 239-40 (W.D.N.Y. 2009).

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment and to dismiss (Dkt. No. 25) be **GRANTED to the extent that** (1) Plaintiff's conditions of confinement claim pursuant to the Eighth Amendment be dismissed, and (2) all of Plaintiff's claims against Defendant Annucci be dismissed for failure to state a claim upon which relief may be granted; and **DENIED to the extent that** it sought (1) dismissal for failure to exhaust administrative remedies, and (2) dismissal of Plaintiff's due process claim pursuant to the Fourteenth Amendment against Defendants Morton and Colvin; and it is further respectfully

**ORDERED** that the Clerk of the Court shall provide Plaintiff with a copy of this Report and Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO**

2022 WL 7290107

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


**All Citations**

Not Reported in Fed. Supp., 2022 WL 7290107

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 4008027
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Damian R. TRAPANI, Plaintiff,

v.

Anthony J. ANNUCCI, et al., Defendants.

9:21-CV-0681 (LEK/ML)
|
Signed September 1, 2022

**Attorneys and Law Firms**

Damian R. Trapani, Dannemora, NY, Pro Se.

Erik Boule Pinsonnault, Rachael Ouimet, New York State Attorney General, Albany, NY, for Defendants Anthony J. Annucci, John Colvin, Robert Morton.

## MEMORANDUM-DECISION AND ORDER

LAWRENCE E. KAHN, United States District Judge

## I. INTRODUCTION

**\*1** Plaintiff Damian Trapani commenced this action pro se on June 11, 2021. Dkt. No. 1. On September 27, 2021, Plaintiff filed an amended complaint alleging violations under 42 U.S.C. § 1983 ("Section 1983") of his constitutional rights at Downstate Correctional Facility ("Downstate") and Five Points Correctional Facility ("Five Points") by defendants Anthony J. Annucci, John Colvin, and Robert Morton (collectively, "Defendants"). Dkt. No. 11 ("Amended Complaint"). After initial review of the Amended Complaint, this Court found two of Plaintiff's claims could proceed: a claim arising under the Eighth Amendment's prohibition against cruel and unusual punishment, and a claim for violation of Plaintiff's Fourteenth Amendment due process rights. See Dkt. No. 15 at 16-17.

On January 31, 2022, Defendants filed a motion for summary judgment and dismissal pursuant to Fed. R. Civ. P 12(b)(6). Dkt. No. 25 ("Motion"). Plaintiff's request for an extension of time to respond to Defendants' Motion was granted on February 22, 2022; Plaintiff's response was due by March 8, 2022. Dkt. No. 29. On March 21, 2022, the Court sua sponte extended the deadline for Plaintiff to file a response to Defendants' Motion to April 4, 2022. Dkt. No. 31. On March 21, 2022, Plaintiff filed a response to the Motion, Dkt. No. 32, and on March 30, 2022, Defendants filed a reply. Dkt. No. 33.

Now before the Court is a report and recommendation issued by the Honorable Miroslav Lovric, United States Magistrate Judge, recommending that Defendants' Motion be granted in part and denied in part. Dkt. No. 37 ("Report-Recommendation"). For the reasons that follow, the Court approves and adopts the Report-Recommendation in its entirety.

## II. BACKGROUND

### A. Factual Allegations

Plaintiff's factual allegations are detailed in the Report-Recommendation, familiarity with which is assumed. See R&R at 3; see also Dkt. No. 15 at 2-7.

Case 9:25-cv-00083-BKS-TWD   Document 29   Filed 01/20/26   Page 320 of 397
Trapani v. Annucci, Not Reported in Fed. Supp. (2022)
2022 WL 4008027

## B. The Report-Recommendation

Judge Lovric found a genuine dispute of material fact regarding whether (1) Plaintiff did, in fact, exhaust his administrative remedies, or (2) in the alternative, whether administrative remedies were unavailable to Plaintiff. R&R at 17–18. Thus, Judge Lovric recommended denying Defendant's motion for summary judgment which argued that Plaintiff failed to exhaust his administrative remedies before commencing this action. R&R at 18. To resolve the dispute, Judge Lovric recommended that the Court conduct an exhaustion hearing pursuant to Messa v. Goord, 652 F.3d 305 (2d Cir. 2011) to determine whether Plaintiff properly exhausted his administrative remedies. Id.

Judge Lovric then addressed Plaintiff's cruel and unusual punishment claim pursuant to the Eighth Amendment. R&R at 18. Judge Lovric concluded that Plaintiff failed to "allege facts plausibly suggesting the objective or subjective elements of his claim." Id. at 21. Judge Lovric observed that "the facts are insufficient to plausibly suggest that [Plaintiff] was incarcerated under conditions that objectively posed a substantial risk of serious harm." Id. Judge Lovric also stated, "[Plaintiff] fails to allege facts plausibly suggesting that Defendants knew of and disregarded an excessive risk to Plaintiff's health and safety." Id. at 22. Thus, Judge Lovric recommended dismissing Plaintiff's Eighth Amendment cause of action for failure to state a claim upon which relief may be granted. Id.

 *2  Next, Judge Lovric addressed Plaintiff's Fourteenth Amendment due process claim. Id. at 23. Judge Lovric explained that the Second Circuit has indicated that restrictive confinement—like punitive segregation—without unusual conditions, for a period of up to 101 days, does not constitute an atypical hardship. See Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004); see also R&R at 23. Judge Lovric explained, however, that for periods which fall into the " 'intermediate duration' between 101 to 305 days, 'development of a detailed record' regarding the conditions of confinement as compared to 'ordinary prison conditions' is required" to determine whether a prisoner's liberty interest was infringed. Chavez v. Gutwein, 20-CV-0342, 2022 WL 1487781, at *5 (S.D.N.Y. May 11, 2022) (quoting Palmer v. Richards, 364 F.3d 60, 64-65 (2d Cir. 2004)); see R&R at 23-24. Judge Lovric found that "Plaintiff's confinement to punitive segregation was an 'intermediate duration,' which requires the development of a detailed record regarding the conditions of confinement to determine whether Plaintiff's liberty interest was infringed." R&R at 24. As a result, Judge Lovric recommended denying Defendants' motion to dismiss Plaintiff's due process claim.

Judge Lovric then addressed whether Defendants were personally involved in the alleged constitutional deprivations. Id. at 25. Judge Lovric determined that Plaintiff's Amended Complaint plausibly suggested personal involvement of Colvin and Morton—both superintendents of the facilities where Plaintiff was confined to punitive segregation—but failed to suggest personal involvement of Annucci. Id. at 25-26. Consequently, Judge Lovric recommended granting Defendants' motion to dismiss Plaintiff's claims against Annucci for lack of personal involvement but recommended denying Defendants' motion to dismiss with respect to Colvin and Morton. Id. at 27.

Finally, Judge Lovric addressed Defendants' qualified immunity defense. Id. at 27–29. Judge Lovric ultimately found Defendants' qualified immunity defense premature and recommended that it be denied. Id. at 29.

## III. STANDARD OF REVIEW

"Rule 72 of the Federal Rules of Civil Procedure and Title 28 United States Code Section 636 govern the review of decisions rendered by Magistrate Judges." A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 191 F. Supp. 2d 404, 405 (S.D.N.Y. 2002); see also 28 U.S.C. § 636; Fed. R. Civ. P. 72. Review of decisions rendered by Magistrate Judges are also governed by the Local Rules. See L.R. 72.1. As 28 U.S.C. § 636 states:

> Within fourteen days after being served with a copy [of the Magistrate Judge's report and recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of the court. A judge of the court shall make a de novo

Trapani v. Annucci, Not Reported in Fed. Supp. (2022)

2022 WL 4008027

determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings of recommendations made by the magistrate [judge]. The judge may also receive further evidence or recommit the matter to the magistrate [judge] with instructions.

28 U.S.C. § 636(b)(1). When written objections are filed and the district court conducts a de novo review, that "*de novo* determination does not require the Court to conduct a new hearing; rather, it mandates that the Court give fresh consideration to those issues to which specific objections have been made." A.V. by Versace, 191 F. Supp. 2d at 406 (emphasis in original); see also 12 Wright & Miller, Fed. Prac. & Proc. Civ. § 3070.2 (3rd ed.) (2022) ("[T]he judge to whom the objection is made must review the record and magistrate's recommendations, and must make a de novo determination of the facts and legal conclusions, receiving additional evidence and rehearing witnesses at his or her discretion. The district judge must not be a rubber stamp." (footnote omitted)).

"The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record." DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009). "When a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the [report and recommendation] strictly for clear error." New York City Dist. Couns. of Carpenters Pension Fund v. Forde, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) (quoting Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)).

 **\*3** "The objections of parties appearing *pro se* are 'generally accorded leniency' and should be construed 'to raise the strongest arguments that they suggest.' " DiPilato, 662 F. Supp. 2d at 340 (emphasis in original) (quoting Milano v. Astrue, No. 05-CV-6527, 2008 WL 4410131, at \*2 (S.D.N.Y. Sept. 26, 2008)). "Nonetheless, even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." DiPilato, 662 F. Supp. 2d at 340 (emphasis in original) (quoting Pinkney v. Progressive Home Health Servs., No. 06-CV-5023, 2008 WL 2811816, at \*1 (S.D.N.Y. July 21, 2008)).

## IV. DISCUSSION

After the Report-Recommendation was issued on June 21, 2022, see R&R, Plaintiff filed his Objections to the Report-Recommendation on July 21, 2022.[1] Dkt. No. 43. Plaintiff indicated that he "objects to the Report and Recommendation of the Magistrate Judge, recommending dismissal of his conditions-of-confinement claims pursuant to the Eighth Amendment, on account of [D]efendants unnecessarily placing Plaintiff back in punitive segregation, which inhibited his ability to exercise." Obj. at 3. Plaintiff concluded, "The fact [that] Plaintiff was placed back in punitive segregation alone, without any justification, is enough to be cruel and unusual punishment." Id. Thus, Plaintiff's objection focuses on Judge Lovric's recommendation to dismiss Plaintiff's Eighth Amendment cruel and unusual punishment cause of action for failure to state a claim upon which relief can be granted. As such, the Court will conduct a de novo review of this specific portion of the Report-Recommendation. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

1    Plaintiff's request for an extension of time to file his objections, Dkt. No. 40, was granted by this Court with a deadline set for July 26, 2022. Dkt. No. 42. Objections were filed in the Docket on July 27, 2022, Dkt. No. 43. However, Plaintiff's filing was timely under the prison mailbox rule, which holds that a pro se prisoner meets the filing deadline if he delivers the filing to prison officials within the time specified. Cf. Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001). Plaintiff dated his objections July 21, 2022, and July 22, 2022, and they were postmarked by July 25, 2022. Dkt. No. 42 at 3–6. "Assuming that the prison mailbox rule applies to objections made to a report and recommendation, the Court deems the objection timely." Yancey v. Robertson, No. 17-CV-0381, 2019 WL 315048, at \*1 (N.D.N.Y. Jan. 24, 2019). Thus, Plaintiff filed in a timely manner.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 322 of 397
Trapani v. Annucci, Not Reported in Fed. Supp. (2022)
2022 WL 4008027

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556.

 **\*4**  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678–79.

Given Plaintiff's pro se status, the Court is obligated to construe the allegations in the Amended Complaint with the utmost leniency. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"). Therefore, the Court must determine whether it should accept, reject, or modify the Magistrate Judge's recommendation to grant Defendants' motion to dismiss for failure to state a claim upon which relief can be granted with respect to Plaintiff's Eighth Amendment cruel and unusual punishment claim against Defendants.

The Eighth Amendment to the Constitution prohibits the infliction of "cruel and unusual punishments...." U.S. Const. amend. VIII. Prison conditions may become "cruel and unusual punishments" if prison officials act (or fail to act) with "deliberate indifference to a substantial risk of serious harm to a prisoner." Farmer v. Brennan, 511 U.S. 825, 836 (1994). The standard of deliberate indifference includes both subjective and objective components." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

The objective element is met when "[C]onditions of confinement ... result in unquestioned and serious deprivations of basic human needs." Anderson v. Coughlin, 757 F.2d 33, 34–35 (2d. Cir. 1985) (internal quotations omitted). Although the Constitution does not mandate a comfortable prison setting, see Rhodes v. Chapman, 452 U.S. 337, 349 (1981), "[p]risoners are entitled to 'basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety.' " Helling v. McKinney, 509 U.S. 25, 32 (1993) (quoting DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 199–200 (1989)). Courts must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Helling, 509 U.S. at 25. "Ultimately, to establish the objective element of an Eight Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency." Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002) (quoting Helling, 509 U.S. at 35-36; Rhodes, 452 U.S. at 347).

To satisfy the subjective element, "the defendant 'must act with a sufficiently culpable state of mind.' " Chance, 143 F.3d at 702 (quoting Hathaway, 37 F.3d at 66). "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " Chance, 143 F.3d at 702 (quoting Farmer, 511 U.S. at 837). "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006). Put another way, to satisfy the subjective element, defendants must act with a mens rea "consistent with recklessness in the criminal law." Farmer, 511 U.S. at 837.

 **\*5**  The Magistrate Judge found that "Even accepting Plaintiff's allegations as true—that Defendants placed him in punitive segregation, did not return the bulk of his personal belongings, and denied him his medically prescribed boots—the facts are insufficient to plausibly suggest that he was incarcerated under conditions that objectively posed a substantial risk of serious

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 323 of 397
*Trapani v. Annucci*, Not Reported in Fed. Supp. (2022)
2022 WL 4008027

harm." R&R at 21. The Court agrees. Plaintiff contends that he was denied medically prescribed boots while he was confined in punitive segregation, which hindered his ability to properly exercise. Dkt. No. 11 at ¶ 65. But this alone is insufficient to satisfy the objective prong. The Second Circuit has indicated that "[only] some opportunity for exercise must be afforded to prisoners." Anderson, 757 F.2d at 35.

Here, Plaintiff does not allege that Defendants denied him the opportunity to exercise. To the contrary, Plaintiff concedes that he was "let outside cell each day for fresh air," and afforded recreational time. Dkt. No. 11 at ¶ 64. Moreover, Plaintiff's allegations are supported by mere conclusory statements including the contention that "[t]he fact [that] Plaintiff was placed back in punitive segregation alone, without any justification, is enough to be cruel and unusual punishment," and that "Defendants unnecessarily plac[ed] Plaintiff back in punitive segregation." Obj. at 2. [2]

[2]    Although the Court has already determined that Plaintiff's assertions fail the objective prong of his Eighth Amendment claim, Plaintiff's allegations are also insufficient to satisfy the subjective prong of his Eighth Amendment claim. Plaintiff does not show how Defendants knew of and disregarded an excessive risk to Plaintiff's health and safety. See generally Dkt. No. 11. When viewed in the light most favorable to Plaintiff, Plaintiff alleges that Defendants created a policy that resulted in his punitive segregation assignment, Dkt. No. 11 at ¶¶ 55, 77, 83, but he does not allege that Defendants "were responsible for or personally involved in the alleged unconstitutional conditions" Plaintiff experienced in punitive segregation. Rasheen v. Adner, 356 F. Supp. 3d 222, 241 (N.D.N.Y. Jan. 28, 2019). Indeed, Plaintiff "does not plead facts suggesting that the named defendants created or knew about the conditions." Id.

Plaintiff also requests leave to amend his Complaint. See Obj. at 3. However, to the extent Plaintiff wishes to file an amended complaint, he must file a motion to amend pursuant to Local Rule 15.1(a). [3]

[3]    "A party moving to amend a pleading pursuant to Fed. R. Civ. P. 14, 15, 19-22 must attach an unsigned copy of the proposed amended pleading to its motion papers. Except if the Court otherwise orders, the proposed amended pleading must be a complete pleading, which will supersede the pleading sought to be amended in all respects. A party shall not incorporate any portion of its prior pleading or exhibits thereto into the proposed amended pleading by reference. The motion must set forth specifically the proposed insertions and deletions of language and identify the amendments in the proposed pleading, either through the submission of a redline/strikeout version of the pleading sought to be amended or through other equivalent means." L.R. 15.1(a).

Lastly, Plaintiff requests that the Court impose sanctions on Defendants "for making false representations on the court." Obj. at 3. However, to the extent that Plaintiff wishes to file a motion for sanctions, he must follow the procedures described in Fed. R. Civ. P. 11(c)(2).

Neither party filed objections to the remaining portions of the Report-Recommendation by August 10, 2022, when they were due pursuant to Fed. R. Civ. P. 6(d) and 6(a)(1)(C). See generally Docket. Consequently, the Court reviews the rest of the Report-Recommendation for clear error and finds none. Therefore, the Court adopts the Report-Recommendation in its entirety.

## V. CONCLUSION

**\*6**  Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 37) is **APPROVED** and **ADOPTED** in its entirety; and it is further

**ORDERED**, that Defendants' Motion for Summary Judgment and to Dismiss (Dkt. No. 25) is **GRANTED** with regard to (1) Plaintiff's Eighth Amendment cruel and unusual punishment claim, and (2) all of Plaintiff's claims against Defendant Annucci; and **DENIED** to the extent that it sought (1) dismissal for failure to exhaust administrative remedies, (2) dismissal on the basis of qualified immunity; and (3) dismissal of Plaintiff's Fourteenth Amendment due process claim against Defendants Morton and Colvin; and it is further

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 324 of 397

Trapani v. Annucci, Not Reported in Fed. Supp. (2022)

2022 WL 4008027

**ORDERED**, that this matter is **REFERRED BACK** to Magistrate Judge Lovric to facilitate resolution of the genuine disputes of material fact surrounding Plaintiff's exhaustion of his administrative remedies, including an exhaustion hearing; and it is further

**ORDERED**, that the Clerk serve copies of Plaintiff's Amended Complaint, Defendants' Motion for Summary Judgment and to Dismiss, and the Docket on Plaintiff; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 4008027

---

**End of Document**                                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Velez v. Collado, Not Reported in Fed. Supp. (2023)

2023 WL 5782446

2023 WL 5782446
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael Tony VELEZ, Plaintiff,

v.

COLLADO, individually and official capacity as Superintendent; S. Devilyn-Varin; John and Jane Doe individually
and their official capacity as RN's; Bodrogi, individually and their official capacity as MD's; John and Jane Doe
individually and their official capacity as MD's; and Morley, individually and official capacity as MD, Defendants.

9:22-CV-0362 (AMN/ML)
|
Signed May 30, 2023

**Attorneys and Law Firms**

Michael Tony Velez, Pro Se Plaintiff, Clinton Correctional Facility, Post Office Box 2001, Dannemora, New York 12929.

LETITIA A. JAMES, Attorney General for the State of New York, MARK J. DOLAN, ESQ., Assistant Attorney General,
Counsel for Defendants Collado, Devlin-Varin, Bodrogi, and Morley, The Capitol, Albany, New York 12224.

### REPORT and RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

 **\*1** Currently before the Court, in this civil rights action filed by Michael Tony Velez ("Plaintiff") against Collado, S. Devlin-Varin,[1] John and Jane Doe (as RNs), Bodrogi, John and Jane Doe (as MDs), and Morley (collectively "Defendants"), is Defendants Collado, Devlin-Varin, Bodrogi, and Morley's (collectively "Named Defendants") motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 19.) For the reasons set forth below, I recommend that Named Defendants' motion be granted in part and denied in part.

---

[1]     In Named Defendants' motion to dismiss (Dkt. No. 19, Attach. 1) counsel indicates that defendant referred to by Plaintiff as "S. Devilyn-Varin" is actually "S. Devlin-Varin." As a result, the Clerk of the Court is directed to amend the docket sheet accordingly. Any reference in the Complaint (Dkt. No. 1) to "S. Devilyn-Varin" shall be deemed to refer to "S. Devlin-Varin."

## I. RELEVANT BACKGROUND

### A. Procedural History
On March 23, 2022, Plaintiff commenced this action by the filing of a Complaint, accompanied by a motion for leave to proceed *in forma pauperis* ("IFP") in the District Court for the Southern District of New York. (Dkt. Nos. 1, 2.) On March 29, 2022, Chief United States District Judge Laura Taylor Swain granted Plaintiff's IFP application. (Dkt. No. 4.) On April 12, 2022, Chief Judge Swain transferred this action to the District Court for the Northern District of New York. (Dkt. No. 5.)

On July 22, 2022, Senior United States District Judge Lawrence E. Kahn reviewed Plaintiff's Complaint pursuant to 28 U.S.C. §§ 1915, 1915A. (Dkt. No. 9.) Judge Kahn ordered that a response was required to the following three claims: (1) a claim that Plaintiff's right to free exercise was violated by Defendant Collado pursuant to the First Amendment and 42 U.S.C. § 1983; (2) a claim of retaliation against Defendants Collado and Devlin-Varin pursuant to the First Amendment and 42 U.S.C. § 1983; and

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 326 of 397
Velez v. Collado, Not Reported in Fed. Supp. (2023)
2023 WL 5782446

(3) a conditions-of-confinement claim against Defendants Devlin-Varin, Nurse John Doe, Nurse Jane Doe, Bodrogi, Morely, Dr. John Doe, and Dr. Jane Doe, in violation of the Eighth Amendment and 42 U.S.C. § 1983. (*Id.*) Judge Kahn dismissed all of the other claims included in the Complaint. (*Id.*)

In lieu of an answer, Named Defendants filed the pending motion to dismiss for failure to state a claim upon which a relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 19.)

### B. The Complaint

Judge Kahn thoroughly outlined the allegations contained in the Complaint as they relate to Plaintiff's surviving clams. (*See generally* Dkt. No. 9.) For a complete summary of Plaintiff's claims and allegations, reference is made to Judge Kahn's Decision and Order. (Dkt. No. 9 at 3-8.)

### C. Parties' Briefing on Named Defendants' Motion to Dismiss

#### 1. Named Defendants' Memorandum of Law

Generally, in support of their motion to dismiss, Named Defendants assert the following three arguments: (1) Plaintiff's First Amendment free exercise claim against Defendant Collado fails because the Complaint does not allege facts plausibly suggesting (a) Defendant Collado's personal involvement in any purported deprivation of Plaintiff's free exercise rights, and (b) that Plaintiff follows the Jewish faith, that attending Jewish services is required by any sincerely held belief he has, that Plaintiff has participated in Jewish services in the past, or that Plaintiff has had any past contact with the Rabbi for the facility; (2) Plaintiff's First Amendment retaliation claim against Defendants Collado and Devlin-Varin fails because the Complaint does not allege facts plausibly suggesting (a) an adverse action, and (b) a causal connection between Plaintiff's protected conduct and the alleged adverse actions; and (3) Plaintiff's Eighth Amendment conditions of confinement claim against Defendants Devlin-Varin, Bodrogi, and Morley fails because placing an incarcerated person under observation for a potential TB infection is a reasonable response and thus, the Complaint does not allege facts plausibly suggesting the objective or subjective prongs of such a claim. (*See generally* Dkt. No. 19, Attach. 1.)

#### 2. Plaintiff's Opposition

 **\*2**  Generally, in opposition to Named Defendants' motion, Plaintiff argues that (1) Named Defendants' motion does not contain an affidavit or affirmation in support of the notice of motion, and thus should not be considered; (2) the facts of the Complaint are reiterated and Plaintiff does not "relinquish [his] constitutional right[s]"; and (3) Named Defendants seek to mislead the Court on the facts and merits of Plaintiff's constitutional claims and violated his rights to the practice of his Jewish faith. (Dkt. No. 22.)

#### 3. Named Defendants' Reply Letter [2]

[2]    In the future, counsel is cautioned to comply with Local Rule 7.1(b)(1), which provides that "[a]ll memoranda of law shall contain a table of contents."

Generally, in their reply, Named Defendants argue that: (1) Plaintiff's opposition was filed with the Clerk of the Court three days after the deadline and request that their late reply be accepted based on a change in counsel for Named Defendants; and (2) Plaintiff's opposition contains no allegations or legal authority which overcome the dispositive arguments set forth by Named Defendants in their memorandum of law or otherwise would warrant a response. (Dkt. No. 24.)

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a) (2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a) (2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added). [3]

[3]   *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak*, 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

 **\*3** Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense .... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Velez v. Collado, Not Reported in Fed. Supp. (2023)

2023 WL 5782446

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

However, "in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (Sharpe, M.J.) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to " 'make reasonable allowances to protect *pro se* litigants' " from inadvertently forfeiting legal rights merely because they lack a legal education. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). As a result, *Twombly* and *Iqbal* notwithstanding, the court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 139, 146 (2d Cir. 2002).

## III. ANALYSIS

### A. Whether Plaintiff Sufficiently Alleged a First Amendment Free Exercise Claim Against Defendant Collado
After carefully considering the matter, I answer this question in the negative for the reasons set forth below.

"Prisoners have long been understood to retain some measure of their rights under the Free Exercise Clause." *Brandon v. Kinter*, 938 F.3d 21, 32 (2d Cir. 2019) (cleaned up). To state a First Amendment free exercise claim upon which relief may be granted, an inmate "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014). [4] "Determining whether a plaintiff's free exercise rights have been substantially burdened 'requires courts to distinguish important from unimportant religious beliefs, a task for which ... courts are particularly ill-suited.' " *Brandon*, 938 F.3d at 32 (quoting *Ford v. McGinnis*, 352 F.3d 582, 593 (2d Cir. 2003)). Therefore, courts in the Second Circuit should be "wary of making 'conclusory judgments about the unimportance of the religious practice to the adherent.' " *Id.* (quoting *Ford*, 352 F.3d at 593). While certain "belief[s] or practice[s]" may be "so peripheral to the plaintiff's religion that any burden can be aptly characterized as constitutionally de minimis," *Ford*, 352 F.3d at 593, establishing a substantial burden is "not a particularly onerous task," *McEachin v. McGuinnis*, 357 F.3d 197, 202 (2d Cir. 2004). For instance, a "relatively small number of violative incidents" should "not prevent" a court "from finding that the prisoner's religious beliefs were substantially burdened." *Brandon*, 938 F.3d at 35.

[4]     It remains unclear whether the substantial burden requirement for proving a free exercise violation under the First Amendment remains good law. In *Employment Division v. Smith*, 494 U.S. 872 (1990), the Supreme Court "took issue with the premise that courts can differentiate between substantial and insubstantial burdens." *Ford v. McGinnis*, 352 F.3d 582, 582 (2d Cir. 2003) (citing *Smith*, 494 U.S. at 887). Other circuits have disagreed over whether the substantial burden test continues to apply to free exercise claims. *Compare Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003) (finding "no support for" defendants' argument that it is "a prerequisite for the inmate to establish that the challenged prison policy 'substantially burdens' his or her religious beliefs"), *with Levitan v. Ashcroft*, 281 F.3d 1313, 1320-21 (D.C. Cir. 2002) (requiring prisoners demonstrate that free exercise of religion be substantially burdened). This Court proceeds on the assumption that the substantial burden requirement applies, in part because establishing a substantial burden is "not a particularly onerous task," *McEachin v. McGuinnis*, 357 F.3d 197, 202 (2d Cir. 2004).

**\*4** As set forth by Named Defendants in their memorandum of law, the Complaint fails to allege facts plausibly suggesting that Plaintiff held any sincere religious beliefs. Although the Second Circuit has made clear that "establishing a substantial burden is 'not a particularly onerous task,' " *Brandon*, 938 F.3d at 32 (quoting *McEachin*, 357 F.3d at 202), Plaintiff has entirely failed to allege that his religious beliefs are sincerely held. *See Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988) ("Because [the plaintiff]

Velez v. Collado, Not Reported in Fed. Supp. (2023)

2023 WL 5782446

has neither alleged nor submitted any proof that he sincerely holds to any religious belief that mandates the use of Tarot cards, we conclude that summary judgment was appropriate on the free exercise claim."); *Gambino v. Payne*, 12-CV-0824, 2013 WL 1337319, at *8 (W.D.N.Y. Mar. 29, 2013) (noting that the "complaint is devoid of any allegations that would establish that [the plaintiff] has a sincerely held religious belief"). Although the Complaint alleges that Plaintiff was "not allowed" to attend Jewish services (Dkt. No. 2 at 33) and was "denied" Kosher meals (Dkt. No. 2 at 9), it does not allege that he previously attended Jewish services, ate Kosher meals, or forewent eating non-Kosher meals. *See cf. Ackridge v. Aramark Corr. Food Servs.*, 16-CV-6301, 2018 WL 1626175, at *18 (S.D.N.Y. Mar. 30, 2018) (citing *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999)) (holding that although "Plaintiff has not explicitly plead[ed] that his religious beliefs are 'sincerely held,' he has alleged that he listed his religious preference as Jewish, participated in the kosher meal program when he was previously incarcerated, and chose not to eat the non-kosher food .... The Second Circuit has found similar allegations sufficient to plea this element."). As a result, I recommend that Plaintiff's Free Exercise claim pursuant to the First Amendment against Defendant Collado be dismissed for failure to state a claim upon which relief may be granted. [5]

[5]     To the extent that Named Defendants argue that the Complaint fails to allege the personal involvement of Defendant Collado, I find that argument unpersuasive. (Dkt. No. 19, Attach. 1 at 7-8.) The attachments to the Complaint allege that Defendant "Collado would not allow [Plaintiff] to attend any Jewish services and has refused to answer [his] grievance appeal related to this denial." (Dkt. No. 2 at 33.) Moreover, the attachments allege that Defendant Collado "would not allow [Plaintiff] or any other Jew in B-1 to attend Jewish services and she does not allow Shabos services and makes it clear she is C[ ]atholic, and they are the only ones she goes out of her way for." (Dkt. No. 2 at 45.) I find that these allegations plausibly suggest Defendant Collado's personal involvement.

### B. Whether Plaintiff Alleged Facts Plausibly Suggesting a First Amendment Retaliation Claim Against Defendants Collado and Devlin-Varin

After carefully considering the matter, I answer this question in the affirmative.

To state a *prima facie* claim pursuant to 42 U.S.C. § 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that (1) the conduct at issue was protected, (2) the defendants took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action–in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, No. 99-CV-2065, 2003 WL 22299359, at *4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.).

### 1. Defendant Collado

Although Named Defendants' motion appears to challenge only the second and third elements of Plaintiff's retaliation claim, I find that the Complaint plausibly alleges the first element, that Plaintiff has engaged in protected activity. The Complaint alleges that on January 1, 2020, Plaintiff suffered a medical emergency but refused medical treatment at an outside hospital. (Dkt. No. 2 at 61-63.) The right to refuse medical treatment is protected speech or conduct. *Simmons v. Lantz*, 04-CV-2180, 2007 WL 842008, at *2 (D. Conn. Mar. 12, 2007) (citing *Pabon v. Wright*, 459 F.3d 241, 246 (2d Cir. 2006)).

With respect to the adverse action element, the Complaint alleges that after Plaintiff refused to be transported to an outside hospital, a sergeant directed that Plaintiff's cell be searched and commanded the searching officers to "find something." (Dkt. No. 2 at 61-67.) The Complaint alleges that the officers fabricated charges from the cell search and Plaintiff was placed in keeplock for approximately thirty-three days. (*Id.*) "Confining a prisoner to keeplock is sufficient to establish an adverse action." *Gunn v. Malani*, 20-CV-2681, 2023 WL 2664805, at *7 (S.D.N.Y. Mar. 28, 2023) (citing *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) (finding that a "sentence of three weeks in keeplock" constituted an adverse action); *Mack v. Hall*, 18-CV-0875, 2020 WL 5793438, at *8 (N.D.N.Y. July 27, 2020) (Hummel, M.J.) ("The Second Circuit has held that being placed in keeplock

Velez v. Collado, Not Reported in Fed. Supp. (2023)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 330 of 397

2023 WL 5782446

or otherwise confined is an adverse action."), *report and recommendation adopted*, 2020 WL 5775205 (N.D.N.Y. Sept. 28, 2020) (Sharpe, J.); *Marshall v. Griffin*, 18-CV-6673, 2020 WL 1244367, at *6 (S.D.N.Y. Mar. 16, 2020) ("[i]t is plausible for keeplock confinement to constitute an adverse action for claims of retaliation.").

 **\*5**  With respect to the third element, drawing all inferences in Plaintiff's favor, I find that he has satisfied the causation prong. To show causation, the allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 107 (2d Cir. 2000) (omitting internal quotation). Factors considered in evaluating whether causation existed include: "(1) the temporal proximity of the filing to the grievance and the disciplinary action; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining the plaintiff." *Thomas v. DeCastro*, 14-CV-6409, 2019 WL 1428365, at *9 (S.D.N.Y. Mar. 29, 2019) (citation omitted).

The Complaint alleges that on February 3, 2020, Defendant Collado came to Plaintiff's keeplock cell and stated "we are done with you, your [sic] out." (Dkt. No. 2 at 33.) Plaintiff also alleges that before the incidents described in the Complaint, approximately five years had elapsed without receiving a misbehavior report. (Dkt. No. 2 at 5.) Further, the keeplock confinement followed close in time to Plaintiff engaging in the protected activity, which supports an inference of a causal connection.[6] *See Johnson v. Morton*, 21-CV-0986, 2022 WL 1556404 at *5 (S.D.N.Y. May 17, 2022) (citing *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)) (holding that the "adverse action was taken against [the plaintiff] the same day he engaged in constitutionally protected activity, which is sufficient for the Court to infer a causal connection"); *see also Fabrizio v. Rielly*, 20-CV-0011, 2022 WL 18402299, at *10 (N.D.N.Y. Dec. 15, 2022) (Lovric, M.J.) (quoting *Espinal*, 558 F.3d at 129) ("The Second Circuit has held that the passage of 'only six months' is sufficient to support an inference of a causal connection."), *report and recommendation adopted*, 2023 WL 356204 (N.D.N.Y. Jan. 23, 2023) (Suddaby, J.).

6    "Although there is significant case law to support the contention that temporal proximity alone is insufficient to survive a motion for summary judgment, the same is not true at the motion to dismiss stage." *Hendricks v. Mallozzi*, 20-CV-1035, 2022 WL 1129887, at *5 (N.D.N.Y. Jan. 14, 2022) (Lovric, M.J.) (citations omitted), *report and recommendation adopted by*, 2022 WL 856885 (N.D.N.Y. Mar. 23, 2022) (D'Agostino, J.). The undersigned rejects Named Defendants' assertion that "[t]emporal proximity alone is insufficient to plead causation." *Hendricks*, 2022 WL 1129887, at *5 (rejecting that contention and analyzing the case law upon which Named Defendants' rest their argument).

As a result, I find that Plaintiff has alleged facts plausibly suggesting the elements for a retaliation claim against Defendant Collado and recommend that Named Defendants' motion to dismiss this claim be denied.

### 2. Defendant Devlin-Varin

Again, Named Defendants do not appear to contest that Plaintiff sufficiently alleged that he engaged in protected speech. (*See generally* Dkt. No. 19.) The Complaint alleges that Plaintiff engaged in constitutionally protected speech by the filing of a grievance against Defendant Devlin-Varin dated June 3, 2021. (Dkt. No. 2 at 73); *see Davis v. Goord*, 320 F.3d at 352-53 ("[T]he filing of prison grievances is a constitutionally protected activity."); *Flood v. Cappelli*, 18-CV-3897, 2019 WL 3778736, at *7 (S.D.N.Y. Aug. 2, 2019) (collecting cases) (holding that the filing of a grievance is protected speech).

In addition, Plaintiff alleges that approximately sixty-eight days later, he was placed in the SHU in retaliation for that grievance. (Dkt. No. 2 at 6.) Confining an incarcerated individual in the SHU is an adverse action. *See Johnson v. Morton*, 2022 WL 1556404, at *5 (finding that the plaintiff sufficiently alleged an adverse action where he alleged that the defendant made a false disciplinary report and placed him in the SHU); *Blount v. Apples*, 22-CV-0216, 2022 WL 1101547, at *8 (N.D.N.Y. Apr. 13, 2022) (Dancks, M.J.) (citing *Vidal v. Valentin*, 16-CV-5745, 2019 WL 3219442, at *8 (S.D.N.Y. July 17, 2019) ("Confinement in the SHU is an adverse action."); *Smith v. Hash*, 04-CV-0074, 2006 WL 2806464, at *6 (N.D.N.Y. Sept. 28, 2006) (Kahn, J.) (same)) (holding that placing the plaintiff in protective custody against his will was an adverse action).

Velez v. Collado, Not Reported in Fed. Supp. (2023)
2023 WL 5782446

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 331 of 397

**\*6** Moreover, as set forth above in Part III.B.1. of this Report-Recommendation, the close temporal proximity between Plaintiff's grievance against Defendant Devlin-Varin on June 3, 2021, and her alleged placement of Plaintiff in the SHU on August 10, 2021, sufficiently alleges a causal connection at this procedural posture.

As a result, I recommend that Named Defendants' motion to dismiss Plaintiff's retaliation claim against Defendant Devlin-Varin be denied.

### C. Whether Plaintiff Has Sufficiently Alleged an Eighth Amendment Conditions of Confinement Claim Against Defendants Devlin-Varin, Bodrogi, and Morely

After carefully considering the matter, I answer this question in the affirmative. I find Named Defendants' argument that Plaintiff fails to allege facts plausibly suggesting the objective and subjective elements of an Eighth Amendment claim, unpersuasive. In support of this argument, Named Defendants argue solely that placing Plaintiff under observation for a potential TB infection was reasonable. (Dkt. No. 19 at 14.) Assuming *arguendo*, that the Court agreed with Named Defendants' assertion, it still entirely ignores the conditions under which Plaintiff alleges that he was required to live from August 2021 until October 2021.

As set forth in Judge Kahn's order dated July 22, 2022, Plaintiff alleged, *inter alia*, that he was placed in a filthy hospital room with dried blood in the toilet, black dirt all over the edge of the entire cell, denied the ability to send mail to family or friends, denied a change of clothes, denied shampoo, and denied deodorant. (Dkt. No. 9 at 20 [citing Dkt. No. 2 at 17].)

The Second Circuit has "long recognized that unsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment." *Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013) (citing *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981) (noting that prisoners are entitled to, *inter alia*, sanitation)). Moreover, "the failure to provide prisoners with toiletries and other hygienic materials may rise to the level of a constitutional violation." *Walker*, 717 F.3d at 127 (citing *Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) ("[T]his court and other circuits have recognized that deprivation of toiletries, and especially toilet paper, can rise to the level of unconstitutional conditions of confinement ...."); *Atkins v. Cnty. of Orange*, 372 F. Supp. 2d 377, 406 (S.D.N.Y. 2005) ("The failure to regularly provide prisoners with ... toilet articles including soap, razors, combs, toothpaste, toilet paper, access to a mirror and sanitary napkin for female prisoners constitutes a denial of personal hygiene and sanitary living conditions.")). Further, "[a]vailability of hygienic materials is particularly important in the context of otherwise unsanitary living conditions." *Walker*, 717 F.3d at 127 (citing *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1975)).

The allegations in the Complaint plausibly suggest that Plaintiff was deprived of an identifiable human need for safe and sanitary living conditions. In addition, the allegations plausibly suggest a risk that was obvious or otherwise must have been known to Defendants Devlin-Varin, Bodrogi, and Morely. As a result, I recommend that Named Defendants' motion to dismiss Plaintiff's conditions of confinement claim against them be denied.

**\*7  ACCORDINGLY**, it is hereby respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 2) be **DISMISSED** with respect to the free exercise claim against Defendant Collado, for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6); and it is further respectfully

**RECOMMENDED** that Named Defendants' motion to dismiss (Dkt. No. 19) be **GRANTED** to the extent that it sought dismissal of Plaintiff's free exercise claim against Defendant Collado because the Complaint failed to state a claim upon which relief may be granted, and **DENIED** to the extent that it sought dismissal of the Complaint with respect to Plaintiff's (1) retaliation claim against Defendants Collado and Devlin-Varin, and (2) conditions of confinement claim against Defendants Devlin-Varin, Bodrogi, and Morely; and it is further

**ORDERED** that the Clerk of the Court is directed to amend the docket such that Defendant "S. Devilyn-Varin" is changed to "S. Devlin-Varin"; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[7]

[7]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[8]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2023 WL 5782446

---

    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Velez v. Collado, Not Reported in Fed. Supp. (2023)

2023 WL 5444418

2023 WL 5444418
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael Tony VELEZ, Plaintiff,

v.

COLLADO; S. Devlin-Varin; RNs John and Jane Doe; Bodrogi; Drs. John and Jane Doe; and Morley, Defendants.

9:22-cv-00362 (AMN/ML)
|
Signed August 24, 2023

**Attorneys and Law Firms**

MICHAEL TONY VELEZ, 03-A-6481, Clinton Correctional Facility, P.O. Box 2001, Dannemora, NY 12929, Plaintiff pro se.

MARK J. DOLAN, ESQ., NYS OFFICE OF THE ATTORNEY GENERAL, The Capitol, Albany, NY 12224, Attorneys for Defendant.

**ORDER**

Anne M. Nardacci, United States District Judge:

## I. INTRODUCTION

 **\*1** Presently before this Court is Defendants Collado, Devlin-Varin, Bodrogi, and Morley's (collectively "Named Defendants") motion to dismiss Plaintiff Michael Tony Velez's ("Plaintiff") Complaint, Dkt. No. 2 (the "Complaint"), [1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 19 (the "Motion"). Plaintiff opposed the Motion, Dkt. No. 22, and Named Defendants filed a Reply in support, Dkt. No. 24. On May 30, 2023, United States Magistrate Judge Miroslav Lovric issued an Order and Report-Recommendation, recommending that the Court grant Defendants' Motion in part and deny it in part. Dkt. No. 30 (the "Report-Recommendation"). [2]

[1] The Court set forth a complete summary of Plaintiff's claims and allegations in its July 22, 2022 Decision and Order (Kahn, J.), Dkt. No. 9 at 3-8.

[2] Magistrate Judge Lovric advised the parties that they had fourteen days within which to file written objections and that failure to object to the Report-Recommendation within fourteen days would preclude appellate review. Dkt. No. 30 at 16-17. Neither party has filed any objections to the Report-Recommendation and the time for filing objections has expired.

For the reasons set forth below, the Court adopts the Report-Recommendation in its entirety.

## II. STANDARD OF REVIEW

This Court reviews *de novo* those portions of a magistrate judge's report-recommendations that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C); *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012). If no specific objections have been filed, this court reviews a magistrate judge's report-recommendations for clear error. *See id.* at 229 (citing Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition). "When performing such a clear error review, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Dezarea W. v. Comm'r of Soc. Sec.*, No. 6:21-CV-01138 (MAD/TWD), 2023 WL 2552452, at \*1 (N.D.N.Y. Mar. 17, 2023)

(quoting *Canady v. Comm'r of Soc. Sec.*, No. 1:17-CV-0367 (GTS/WBC), 2017 WL 5484663, at *1 n.1 (N.D.N.Y. Nov. 14, 2017)). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

Magistrate Judge Lovric recommended dismissal of Plaintiff's First Amendment free exercise claim against Defendant Collado for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6), but recommended denying the Motion as to Plaintiff's First Amendment retaliation claim against Defendants Collado and Devlin-Varin, and his Eighth Amendment conditions of confinement claim against Defendants Devlin-Varin, Bodrogi, and Morely. Dkt. No. 30 at 16. [3] Because no party has filed objections to the Report-Recommendation, the Court reviews the Report-Recommendation for clear error.

[3]     Plaintiff's Complaint named several additional defendants who have since been dismissed from this action. *See* Dkt. No. 9. As a result, the case caption and CM/ECF docket will be updated to reflect only the Defendants remaining in the action. *See* Fed. R. Civ. P. 25(d).

### A. Plaintiff's First Amendment Free Exercise Claim

**\*2** First, Magistrate Lovric recommended granting the Motion as to Plaintiff's free exercise claim because "the Complaint fails to allege facts plausibly suggesting that Plaintiff held any sincere religious beliefs." *Id.* at 9. Magistrate Lovric determined that, essentially, Plaintiff did not sufficiently allege being denied free exercise of his faith because he did not sufficiently allege that he had a sincerely held belief in the Jewish faith or had previously made efforts to abide by said faith. *See id.* at 9-10 (citing by way of comparison *Ackridge v. Aramark Corr. Food Servs.*, 16-CV-6301 (KMK), 2018 WL 1626175, at *18 (S.D.N.Y. Mar. 30, 2018)). Finding no clear error, the Court adopts Magistrate Judge Lovric's recommendation. [4]

[4]     The Court also notes that Plaintiff has inadequately plead that his religious beliefs were burdened—let alone substantially burdened, *see* Dkt. No. 30 at 8-9 n.4,—by Defendant Collado's actions because no allegations in the Complaint, nor the exhibits thereto, inform the Court of the import of these practices to Plaintiff nor what religious accommodations are reasonable, for example, in light of those made for inmates who adhere to other faiths. *Compare* Dkt. No. 2 at 45 (alleging Defendant Collado "makes it clear she is Catholic and they are the only ones she goes out of her way for"); *with, e.g.*, *Rutherford v. Westchester Cnty.*, No. 18-CV-4872 (KMK), 2020 WL 433841, at *7 (S.D.N.Y. Jan. 28, 2020) (dismissing free exercise claim because plaintiff did not allege that his meal deficiencies were particular to halal meals rather than prison meals more generally); *Lombardo v. Freebern*, No. 16-CV-7146 (KMK), 2018 WL 1627274, at *9-10 (S.D.N.Y. Mar. 30, 2018) (dismissing free exercise claim based on denial of grape juice due to facility budgetary constraints); *Leach v. New York City*, No. 12 CIV. 3809 (PAC) (JCF), 2013 WL 3984996, at *2 (S.D.N.Y. Aug. 2, 2013) (dismissing free exercise claims with vague allegations of denial of kosher meals and access to a Rabbi).

### B. Plaintiff's First Amendment Retaliation Claim

Next, Magistrate Judge Lovric considered Plaintiff's First Amendment retaliation claim against Defendants Collado and Devlin-Varin. *See* Dkt. No. 30 at 10-14. Magistrate Judge Lovric applied the correct legal standard and found that Plaintiff adequately pled that (1) the conduct at issue was protected under the First Amendment; (2) Defendants Collado and Devlin-Varin took adverse action against Plaintiff; and (3) there was a causal connection between Plaintiff's protected conduct and Defendants' adverse action because Plaintiff's protected conduct was a "substantial or motivating factor" in the decision to take the adverse action. *Id.* Specifically, as to Defendant Collado, Plaintiff adequately pled (1) that he filed grievances in connection with his refusal of medical treatment, which is protected First Amendment conduct; (2) adverse action by Defendant Collado in the form of Plaintiff's keeplock confinement in his cell; and (3) causation, as evidenced by the alleged close temporal proximity of the adverse action to the protected conduct, as well as Plaintiff's lack of earlier misbehavior reports. *Id.* at 11-13. Similarly, as to Defendant Devlin-Varin, Plaintiff sufficiently pled (1) that he filed a grievance against Defendant Devlin-Varin, which

Velez v. Collado, Not Reported in Fed. Supp. (2023)

2023 WL 5444418

is protected First Amendment conduct; (2) adverse action by Defendant Devlin-Varin in the form of Plaintiff's detention in the special housing unit; and (3) causation, as evidenced by the alleged close temporal proximity of the adverse action to the protected conduct, as well as Plaintiff's lack of earlier misbehavior reports. *Id.* at 13-14. Finding no clear error, the Court adopts Magistrate Judge Lovric's recommendation as to this claim.

### C. Eighth Amendment Conditions of Confinement Claim

**\*3** Finally, Magistrate Judge Lovric considered Plaintiff's Eighth Amendment conditions of confinement claim against Defendants Devlin-Varin, Bodrogi, and Morely. *See id.* at 14-15. Magistrate Judge Lovric found Named Defendants' arguments for dismissal of this claim unpersuasive because they only sought to establish that the decision to confine was reasonable, without addressing Plaintiff's allegations that the state of the confined space was unreasonable. *Id.* at 14. Specifically, Magistrate Judge Lovric found Plaintiff's allegations that "he was placed in a filthy hospital room with dried blood in the toilet, black dirt all over the edge of the entire cell, denied the ability to send mail to family or friends, denied a change of clothes, denied shampoo, and denied deodorant" sufficiently "suggest that Plaintiff was deprived of an identifiable human need for safe and sanitary living conditions" and "a risk that was obvious or otherwise must have been known to Defendants ...." *Id.* at 15 (citing *Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013), *Atkins v. Cnty. of Orange*, 372 F. Supp. 2d 377, 406 (S.D.N.Y. 2005)). Finding no clear error, the Court adopts Magistrate Judge Lovric's recommendation as to this claim.

Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation in its entirety.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation, Dkt. No. 30, is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Defendant's motion to dismiss, Dkt. No. 19, is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Plaintiff's First Amendment free exercise claim is **DISMISSED**; and the Court further

**ORDERS** that the Clerk update the case caption to remove Defendant Paredez and interpose Defendant Collado as the first named Defendant; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

## All Citations

Not Reported in Fed. Supp., 2023 WL 5444418

---

**End of Document**                                      © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Thomas v. Pingotti, Not Reported in Fed. Supp. (2017)
2017 WL 3913018
Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 336 of 397

2017 WL 3913018
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

William D. THOMAS, Plaintiff,

v.

L. PINGOTTI; et al., Defendants.
William D. Thomas, Plaintiff,

v.

Polizzi; et al., Defendants.

9:17-CV-0300 (GTS/DEP)
|
9:17-CV-0377 (GTS/ATB)
|
Signed 09/06/2017

**Attorneys and Law Firms**

WILLIAM D. THOMAS, Plaintiff, pro se, 13-A-2123, Downstate Correctional Facility, Box F, Fishkill, NY 12524.

### DECISION and ORDER

Hon. Glenn T. Suddaby, Chief U.S. District Judge

## I. INTRODUCTION

 **\*1**  The Clerk of the Court has sent to the Court for review two complaints filed pro se by plaintiff William D. Thomas in the above-captioned actions.[1] Plaintiff, who is confined at Downstate Correctional Facility, asserts claims arising out of his confinement at Shawangunk Correctional Facility ("Shawangunk C.F.") in 2016. Plaintiff has not paid the filing fee in either action, and seeks leave to proceed in forma pauperis ("IFP").

[1]    Since March 2017, plaintiff has filed five civil rights actions in this District.

## II. Duplicative Actions

A court reviewing a complaint pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A may properly consider whether the claims asserted by the plaintiff are duplicative of claims asserted in another action.[2] As the Second Circuit has recognized, "plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138-39 (2d Cir. 2000). The principles which guide courts addressing duplicative and repetitive claims rest on considerations of "(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952). The doctrine is also meant to protect parties from "the vexation of concurrent litigation over the same subject matter." *Adam v. Jacob*, 950 F.2d 89, 93 (2d Cir. 1991). Thus, "[c]ourts generally look to the identity of the parties, legal claims, factual allegations including temporal circumstances, and the relief sought to determine if the complaint is repetitive or malicious." *Hahn v. Tarnow*, No. 06-CV-12814, 2006 WL 2160934, at *3 (E.D. Mich. July 31, 2006).

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 337 of 397

Thomas v. Pingotti, Not Reported in Fed. Supp. (2017)

2017 WL 3913018

2    The dismissal of an action as duplicative has been found on several occasions to fall within the ambit of the court's power to dismiss a complaint which is frivolous or malicious pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). *See, e.g., Abreu v. Travers*, No. 9:15-CV-0540 (MAD/ATB), 2015 WL 10741194, at *4 (N.D.N.Y. Sept. 14, 2015) (citing cases), reconsideration denied, No. 9:15-CV-0540 (MAD/ATB), 2016 WL 1717204 (N.D.N.Y. Apr. 28, 2016); *see also Denton v. Hernandez*, 504 U.S. 25, 30 (1992) (recognizing Congress's concern that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits") (citation omitted).

In managing the litigation in its court, there are several approaches to the proper disposition of duplicative actions, including dismissal without prejudice, and consolidation. *Curtis*, 226 F.3d at 138. The district court has broad discretion in making this determination, and the exercise of its power is reviewed by the Court of Appeals for abuse of discretion. *Id.*; *see also Lopez v. Ferguson*, 361 Fed.Appx. 225, 226 (2d Cir. 2010) ("We review a district court's dismissal of claims as duplicative for abuse of discretion."); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990) ("The trial court has broad discretion to determine whether consolidation is appropriate.").

 **\*2**  The pleading submitted by plaintiff in *Thomas* I is styled as a "Complaint under [New York] Civil Service Law Section 75." *See* Dkt. No. 1 at 5. [3] While nominally directed towards Shawangunk C.F. Acting Supt. Pingotti, the pleading identifies sixteen additional corrections and medical staff as "respondents" and alleges numerous claims of misconduct by those individuals during plaintiff's confinement at Shawangunk C.F. in 2016. *Id.* at 5-9. Liberally construed, plaintiff claims that he has been subjected to adverse actions in retaliation for his having filed grievances and complaints (related primarily to his participation in the Sex Offender Treatment Program ("SOTP")), disciplined without due process, denied proper and adequate mental health care, and denied proper investigation of and redress for the misconduct complained of his grievances.

3    Section 75 provides for the availability of a hearing upon stated charges prior to dismissal of certain government employees in New York. *See Russell v. Hodges*, 470 F.2d 212, 215 (2d Cir. 1972). Civil Service Law Section 75 does not afford plaintiff any basis for relief in this action; in light of plaintiff's pro se status the Court has liberally construed the pleading as seeking redress pursuant to 42 U.S.C. § 1983 ("Section 1983").

In *Thomas* II, plaintiff submitted a twenty-five page complaint utilizing the form civil rights complaint available to litigants in the Northern District of New York. *See* Dkt. No. 1 ("Compl."). All seventeen of the defendants named in *Thomas* I are defendants in this complaint. *Id.* at 1-7. The complaint in *Thomas* II sets forth, with some additional factual support, the instances of misconduct complained of in *Thomas* I, as well as additional claims and three additional defendants. *Id.* at 9-23. [4] Plaintiff seeks an award of compensatory and punitive damages as well as declaratory and injunctive relief. *Id.* at 24-25.

4    The additional defendants are Shawangunk C.F. Supt. Lamanna, Shawangunk C.F. C.O. Cunningham, and Shawangunk C.F. C.O. North. *Thomas* II, Compl. at 2, 6-7.

Upon review of the two pleadings, the Court finds that there is considerable duplication and repetition of claims and defendants in these two actions, as to which common questions of law and fact exist. To the extent that these actions differ in any significant way, the differences arise only from the additional claims and defendants in *Thomas* II. The Court also finds that the pleading in *Thomas* II sets forth plaintiff's claims in a more comprehensive and well-organized manner than does the pleading in *Thomas* I which, as noted, purports to be a state court petition under Civil Service Law Section 75.

Based upon the foregoing, and in order to conserve judicial resources and avoid duplicative litigation, the Court hereby dismisses *Thomas* I without prejudice in favor of *Thomas* II. [5]

5    In light of the dismissal of *Thomas* I, plaintiff's IFP application in that case, *see* Dkt. No. 11, is denied as moot. Except as specifically noted, all further references in this Decision and Order to the docket shall be to *Thomas* II.

Thomas v. Pingotti, Not Reported in Fed. Supp. (2017)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 338 of 397

2017 WL 3913018

## III. IFP STATUS

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). [6] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

[6]     Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. Based upon that review, it does not appear that plaintiff has accumulated three "strikes" for purposes of 28 U.S.C. § 1915(g).

 **\*3**  Upon review, the Court finds that plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility, *see* Dkt. No. 10, and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization required in the Northern District. Dkt. No. 3.

Accordingly, plaintiff's application to proceed with this action IFP is granted.

## IV. SUFFICIENCY OF THE COMPLAINT

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from officers and employees of a governmental entity, the Court must consider the sufficiency of the allegations set forth in his complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A. Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) ... the court shall dismiss the case at any time if the court determines that—... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [7] Similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both Sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

[7]     To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

In reviewing a complaint, the Court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Thomas v. Pingotti, Not Reported in Fed. Supp. (2017)

2017 WL 3913018

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 339 of 397

**\*4** Plaintiff seeks relief in this action pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983); *see also Myers v. Wollowitz,* No. 95-CV-0272, 1995 WL 236245, at \*2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that Section 1983 "is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). To be held liable for damages in a Section 1983 action, a defendant must have been personally involved in the alleged violation. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977). Thus, to set forth a cognizable claim under Section 1983, a "plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* No. 04-CV-7263, 2008 WL 857528, at \*2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986)).

Plaintiff asserts numerous claims for the violation of his rights protected under the First, Eighth, and Fourteenth Amendments to the U.S. Constitution. The sufficiency of those claims, as set forth in the complaint in seven causes of action, is addressed below.

### A. First Cause of Action—Retaliation

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff—namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action—in other words, the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker,* 239 F.3d 489, 492 (2d. Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002)).

The Second Circuit has long instructed that because virtually any adverse action taken against a prisoner by a prison official can be characterized as a constitutionally proscribed retaliatory act, courts must examine claims of retaliation with "skepticism and particular care." *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes,* 239 F.3d at 491). Analysis of retaliation claims thus requires thoughtful consideration of the protected activity in which the inmate plaintiff has engaged, the adverse action taken against him or her, and the factual allegations tending to link the two. "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983).

Here, plaintiff alleges that he was retaliated against "for filing grievances and voicing opinion. And filing the 42 U.S.C. 1983 lawsuit." Compl. at 10. [8] Plaintiff identifies the following instances in which defendants took allegedly adverse action against him: C.O. Bertone threatened plaintiff with physical harm if he "continue[d] to make complaints;" C.O. Cutler and C.O. Stefanik wrote false reports against plaintiff "due to plaintiff voicing his opinion, and views;" and C.O. Clayburn issued a false misbehavior report to plaintiff after learning that plaintiff had written several inmate grievances against "fellow employees." *Id.* at 12.

[8]    No other facts are alleged regarding the timing or subject matter of plaintiff's complaints and grievances.

It is well-settled that "verbal harassment, or even threats, are generally held not to rise to the level of adverse action that will support a First Amendment retaliation claim." *Rosales v. Kikendall,* 677 F. Supp.2d 643, 648 (W.D.N.Y. 2010) (citing *Cabassa v. Smith,* No. 08 Civ. 480 (LEK/DEP), 2009 WL 1212495, at \*7 (N.D.N.Y. Apr. 30, 2009)); *see Bartley v. Collins,* No. 95 Civ. 10161, 2006 WL 1289256, at \*6 (S.D.N.Y. May 10, 2006) ("[V]erbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action."); *Kemp v. LeClaire,* No. 03 Civ. 844, 2007 WL 776416, at \*15 (W.D.N.Y. Mar. 12, 2007) (threats such as "your day is coming," "you'll be sent to your mother in a black box," and "you'll get your black ass kicked" are indistinguishable from those that have been found insufficient to establish a constitutional violation).

Thomas v. Pingotti, Not Reported in Fed. Supp. (2017)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 340 of 397

2017 WL 3913018

**\*5** Upon review, the Court finds that C.O. Bertone's statement that he would "make something happen" to plaintiff if he continued to make complaints, without more, does not suffice to state a cognizable First Amendment retaliation claim against this defendant.

Plaintiff does not enjoy a protected constitutional right "to be free from false and inaccurate information" in his prison records. The creation of a false report in a prisoner's file is not, on its own, a due process violation. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report"); *Hollman v. Bartlett*, No. 08-CV-1417, 2011 WL 4382191, at \*12 (E.D.N.Y. Aug. 26, 2011) (the placement of a false report in an inmate's file, without more, is not a due process violation). The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more such as "retaliation against the prisoner for exercising a constitutional right." *Boddie*, 105 F.3d at 862.

Here, while plaintiff alleges that C.O. Cutler and C.O. Stefanik created false reports about plaintiff which were retaliatory in nature, plaintiff has not provided any facts regarding the type of records or reports that were created, the manner in which these records were falsified, or how such falsity harmed plaintiff. Upon review, the Court finds that plaintiff has not alleged facts sufficient to plausibly suggest that these defendants took actions against him which were sufficiently "adverse" for purposes of the First Amendment. As a result, plaintiff's claims against C.O. Cutler and C.O. Stefanik do not survive initial review and are dismissed without prejudice. *Sheehy v. Brown*, 335 Fed.Appx. 102, 104 (2d Cir. 2009) (summary order) (allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal.).

The Court also considered the sufficiency of plaintiff's claim that C.O. Clayburn issued a false misbehavior report in retaliation for grievances plaintiff had filed against other corrections officers. *See* Compl. at 12. [9] "Generally, alleged retaliation motivated by an action the prisoner took which did not personally involve the prison officials is insufficient for a retaliation claim." *Ortiz v. Russo*, No. 13 CIV. 5317, 2015 WL 1427247, at \*11 (S.D.N.Y. Mar. 27, 2015) (citing *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing a pro se prisoner's claim that he was assaulted by the defendant in retaliation for an earlier letter he wrote which did not name or address defendant)); *see also Guillory v. Ellis*, No. 9:11-CV-0600 (MAD/ATB), 2014 WL 4365274, at \*18 (N.D.N.Y. Aug. 28, 2014) ("it is difficult to establish one defendant's retaliation for complaints against another defendant"); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (plaintiff "failed to provide any basis to believe that [defendant] retaliated for a grievance that she was not personally named in"). Here, because plaintiff has not alleged facts sufficient to plausibly suggest that grievances he wrote against other officers were a "substantial or motivating factor" in C.O. Clayburn's decision to issue the challenged misbehavior report, this claim does not survive initial review.

[9]      Plaintiff's claim is asserted in wholly conclusory terms; no facts are provided regarding the date(s) of these grievances, the officers against whom the grievances were filed, or the nature of plaintiff's complaints.

**\*6** Based upon the foregoing, plaintiff's retaliation claims against C.O. Bertone, C.O. Cutler, C.O. Stefanik, and C.O. Clayburn set forth in the First Cause of Action are dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 19215A(b)(1).

### B. Second Cause of Action—Equal Protection

The Equal Protection Clause requires that the government treat all similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' " *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). To state a viable Equal Protection claim, a plaintiff generally must allege "purposeful discrimination ... directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). In the alternative, under a "class of one" theory, plaintiff must allege that he has been intentionally treated differently from others

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 341 of 397
Thomas v. Pingotti, Not Reported in Fed. Supp. (2017)
2017 WL 3913018

similarly situated, with no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).

Here, plaintiff states that he is an "African American Muslim," and claims that defendants treat him differently from the Caucasian inmates in the SOTP "without a [reason] of doing so." Compl. at 13. More specifically, plaintiff alleges that defendants Piliero-Kinderman, Bode-Cutler, and Snyder (identified as Caucasian female employees assigned to the SOTP), spoke disparagingly to him in an attempt to "dehumanize" him and "strip [him] of his self-esteem;" plaintiff contends that these remarks were racially motivated. *Id.* Plaintiff further claims that he was improperly disciplined by defendant Scaringi (identified as a "Caucasian female American"), who ignored substantial evidence of plaintiff's innocence and found him guilty due to her discriminatory motive. *Id.* at 13, 15 (Scaringi went "against her better judgment, due to the fact that plaintiff is a African American male in a sex-offender program. And Defendant is a Caucasian woman."). With respect to a disciplinary hearing conducted by defendant Polizzi (identified as a Caucasian American male), plaintiff claims that he was improperly found guilty without regard to the evidence "because [he] is an African-American Muslim." *Id.* at 15. [10] As against defendant Acting Supt. Pingotti, plaintiff complains that he improperly reviewed and approved misbehavior reports written against plaintiff by C.O. Cutler, C.O. Clayburn, and C.O. Figuero (not a defendant) and designated Polizzi to conduct the hearings, asserts that Acting Supt. Pingotti would not have taken in the case of a "Caucasian prisoner who had a false misbehavior report written against him." *Id.* at 18. Plaintiff further alleges that Acting Supt. Pingotti improperly affirmed the disciplinary findings by defendant Polizzi. *Id.*

[10]    The hearing was convened to consider an inmate misbehavior report written by C.O. Clayburn. Compl. at 16.

**\*7** Plaintiff's complaint does not include any facts plausibly suggesting that similarly situated prisoners were treated differently than he was. Rather, plaintiff merely makes the conclusory assertion that inmates of other races, religions, and gender were treated differently by defendants (or would be treated differently if they found themselves in similar circumstances). Conclusory allegations of disparate treatment or a plaintiff's personal belief of discriminatory intent are patently insufficient to plead a valid claim under the Equal Protection clause. *Nash v. McGinnis*, 585 F. Supp. 2d 455, 462 (W.D.N.Y. 2008); *see also Coleman v. Rice*, No. 8:14-CV-1469 (MAD/CFH), 2015 WL 401194, at \*7 (N.D.N.Y. Jan. 28, 2015); *Hughes v. Butt*, No. 9:06-CV-1462 (TJM/GHL), 2009 WL 3122952, at \*12 (N.D.N.Y. Sept. 28, 2009).

As a result, plaintiff's Equal Protection claims set forth in the Second Cause of Action are dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

### C. Third Cause of Action—Free Exercise

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). This includes the "right to participate in congregate religious services ... Confinement in keeplock does not deprive prisoners of this right." *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993) (internal citations omitted); *see also Ford*, 352 F.3d at 597 ("[A] prisoner's free exercise right to participate in religious services is not extinguished by his or her confinement in special housing or keeplock."). [11] However, an inmate's freedom of religion is not absolute, and must be balanced against "the interests of prison officials charged with complex duties arising from administration of the penal system." *Ford*, 352 F.3d at 588 (citation omitted). The analysis of a free exercise claim is governed by the framework set forth in *O'Lone v. Estate of Shabazz,* 482 U.S. 342 (1987) and *Turner v. Safley,* 482 U.S. 78, 84 (1987). [12]

[11]    As the Second Circuit noted in *Ford*, DOCCS Directive 4202 "sets out prison officials' obligations in accommodating prisoners' religious practices." *Ford*, 352 F.3d at 586. Part X of Directive 4202 provides that "[u]pon commencement of keeplock or confinement status, an inmate may submit a written request to attend regularly scheduled congregate religious services;" such requests are to be directed to (and decided by) the Deputy Superintendent for Security.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 342 of 397

Thomas v. Pingotti, Not Reported in Fed. Supp. (2017)

2017 WL 3913018

12    This framework is one of reasonableness and is "less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349. "It has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a 'prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.' " *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006)). At this early stage of the action, this Court applies the traditional formulation that, to prevail on a First Amendment claim, an inmate must show that he has a sincerely held religious belief, that it was substantially burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest. *See Holland*, 758 F.3d at 221; *Salahuddin*, 467 F.3d at 274-75.

As alleged in the complaint, defendants Piliero-Kinderman, Bode-Cutler, and Snyder deliberately undertook to deny plaintiff the ability to practice his religion "when they went out of their way to discretely get plaintiff remove[d] from sex-offender treatment program by having false misbehavior reports written on plaintiff." Compl. at 19.[13]  Plaintiff also contends that defendant Lt. Gardner made disparaging remarks about plaintiff's religion during the disciplinary hearing he conducted to address these reports. *Id.* At the conclusion of the hearing, Lt. Gardner found plaintiff guilty of misbehavior and sanctioned him with thirty (30) days of keeplock confinement. *Id.* During plaintiff's period of "restrictive confinement," Acting Deputy Supt. of Security ("Acting DSS") Bertone ignored plaintiff's written requests to attend Jum'mah services, and "to attend to break of Ramadan prayer and festival" with his "fellow Muslim[s]." *Id.* at 20-21.[14]  Plaintiff identifies these observances as "religious tenets" of his faith. *Id.* at 20.

13    As noted, plaintiff states that he is an "African American Muslim." Compl. at 13.

14    Plaintiff does not contend that he was prohibited or prevented from praying or otherwise practicing his religion in his cell during the period of keeplock confinement.

 **\*8**  Upon review, and with due regard for plaintiff's status as a pro se litigant, the Court finds that a response to plaintiff's claim that he was denied free exercise of his religion is required from Acting DSS Bertone. This is not a ruling on the merits and the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

The Court reaches a different conclusion, however, with respect to the sufficiency of plaintiff's claims against defendants Piliero-Kinderman, Bode-Cutler, Snyder, and Gardner. As to these defendants, because plaintiff has not alleged facts which plausibly suggest that they were personally involved in the determinations made regarding plaintiff's ability to participate in congregate religious services during his period of keeplock confinement, his First Amendment free exercise claims against them set forth in the Third Cause of Action do not survive the Court's initial review and are dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

 **D. Fourth Cause of Action—Privacy and Failure to Address Grievances**

The Supreme Court has recognized that the right to privacy protects against disclosure of personal matters, such as one's medical conditions. *Whalen v. Roe*, 429 U.S. 589, 598-600 (1977); *Doe v. City of N.Y.*, 15 F.3d 264, 267 (2d Cir. 1994). "The privacy interest is at its zenith when the prisoner suffers from an 'unusual' condition, such as HIV or transsexualism, that is 'likely to provoke an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others.' " *Shuler v. Brown*, No. 07-CV-0937 (TJM/GHL), 2009 WL 790973, at * 5 (N.D.N.Y. Mar. 23, 2009) (quoting *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999)). However, courts have held that the right of confidentiality does not prohibit the disclosure of an individual's criminal history, including arrest records. *See Paul v. Davis*, 424 U.S. 693, 713 (1976) (finding no constitutional right of confidentiality affected by the publication of the fact that an individual was arrested of shoplifting); *Doe v. Cuomo*, 755 F.3d 105, 114 (2d Cir. 2014) (rejecting claim that reporting and notification requirements of New York's Sex Offender Reporting Act violate plaintiff's right to privacy of personal information); *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) (holding that "there is no constitutional right to privacy in one's criminal record" because "arrest and conviction information are matters of public record").

2017 WL 3913018

Here, plaintiff alleges that defendant C.O. Cunningham improperly told other inmates in the SHU that plaintiff "is a rapist in the sex-offender program." Compl. at 21. According to plaintiff, C.O. Cunningham intended to "encourage" other inmates to antagonize plaintiff "to see if they could get him to hang himself." *Id.*

Because the constitutional right to privacy does not protect the type of information allegedly disclosed by C.O. Cunningham, this claim does not survive initial review. [15]

[15]    In light of plaintiff's pro se status, the Court also considered whether plaintiff has plausibly alleged that C.O. Cunningham intentionally exposed plaintiff to "a substantial risk to his safety" in violation of his Eighth Amendment rights when he made comments to other inmates about plaintiff's criminal history, and concludes that he has not. Plaintiff may pursue such a claim in a properly filed amended complaint.

**\*9** The Fourth Cause of Action also includes claims against Deputy Supt. Taylor-Stewart and Supt. Lamanna which arise, if at all, from their alleged failure to properly investigate and address plaintiff's complaints and grievances. Compl. at 22. As alleged, Deputy Supt. Taylor-Stewart ignored plaintiff's constant complaints about defendants Piliero-Kinderman, Bode-Cutler, and Snyder. *Id.* Plaintiff also alleges that Supt. Lamanna ignored plaintiff's complaints and improperly denied his grievance. *Id.*

Despite the fact that New York prison inmates are required to exhaust administrative remedies prior to commencing an action complaining of prison conditions, and resort to that grievance process is regarded as protected activity under the First Amendment which insulates inmates against retaliation for engaging in such activity, *see Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996), there is no constitutional right of access to the established inmate grievance program. *Pine v. Seally*, No. 9:09-CV-1198 (DNH/ATB), 2011 WL 856426, at \*9 (N.D.N.Y. Feb. 4, 2011) ("the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials") (citing *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (collecting cases)); *see also Shell v. Brzezniak*, 365 F. Supp. 2d362, 369-70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim").

Based upon the foregoing, plaintiff's allegations that his complaints and grievances were not properly processed, investigated, and responded to does not give rise to cognizable claims for the violation of his Fourteenth Amendment due process rights. As a result, these claims against Deputy Supt. Taylor-Stewart and Supt. Lamanna set forth in the Fourth Cause of Action are dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 19215A(b)(1).

### E. Fifth Cause of Action—Unlawful SHU Confinement

Although it is clear that the Constitution "does not mandate comfortable prisons," it does not permit inhumane treatment of those in custody. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (citing *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) and *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)). "To demonstrate that the conditions of his confinement constitute cruel and unusual punishment a plaintiff must show that (1) he was incarcerated under conditions which posed a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety. *See Farmer,* 511 U.S. at 834; *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994)." "Only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991).

In his Fifth Cause of Action, plaintiff claims that he was "unlawfully confined in the SHU" due to the actions of defendants Piliero-Kinderman, Bode-Cutler, Snyder, Cutler, Stefanik, Clayburn, Cunningham, Gardner, Taylor-Stewart, Pingotti, Scaringi, Polizzi, Denniston, North, and Koba. Compl. at 22. No other facts are alleged.

Generally speaking, the "normal" or "ordinary" restraints imposed on inmates confined in SHU are not unconstitutional. *See Sostre v. McGinnis*, 442 F.2d 178, 192 (2d Cir. 1971) (en banc) ("It is undisputed on this appeal that segregated confinement does

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 344 of 397

Thomas v. Pingotti, Not Reported in Fed. Supp. (2017)

2017 WL 3913018

not itself violate the Constitution."). [16] Moreover, such confinement is not "abnormal" unless it is "totally without penological justification, grossly disproportionate, or involve[s] the unnecessary and wanton infliction of pain." *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir. 1984) (internal quotation marks and citations omitted). In limited circumstances, the length of the disciplinary detention may itself constitute disproportionate punishment in light of the gravity of the offense. *See Sostre v. McGinnis*, 442 F.2d 178, 190–94 & n.28 (2d Cir. 1971) (length of disciplinary detention [12 months] did not constitute disproportionate punishment considering the gravity of the offense); *Peoples v. Fischer*, No. 11-2694, 2012 WL 1575302, at *9 (S.D.N.Y. May 3, 2012) (denying motion to dismiss claim that disciplinary sentence of thirty-six months SHU confinement for a non-violent rule infraction constituted cruel and unusual punishment), *motion for reconsideration granted in part and denied in part on other grounds*, 898 F. Supp.2d 618, 626 (S.D.N.Y. 2012).

[16]     "Under the 'normal conditions of SHU confinement in New York [state prison],' the prisoner is: placed in a solitary confinement cell, kept in his cell for 23 hours a day, permitted to exercise in the prison yard for one hour a day, limited to two showers a week, and denied various privileges available to general population prisoners, such as the opportunity to work and obtain out-of-cell schooling. Visitors [are] permitted, but the frequency and duration [is] less than in general population. The number of books allowed in the cell [is] also limited." *Palmer v. Richards*, 364 F.3d 60, 66 n.3 (2d Cir. 2004) (citation omitted).

 **\*10**  Significantly, plaintiff does not allege that the conditions of his SHU confinement were unduly harsh or in any way "abnormal" or "unusual." Plaintiff has also not disclosed the duration of his confinement. Moreover, plaintiff has failed to allege facts in support of his claim that these fifteen defendants were personally involved in creating the conditions of his SHU confinement that he seeks to complain of.

As a result, the unlawful confinement claim set forth in the Fifth Cause of Action is dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

### F. Sixth Cause of Action—Due Process

In the Sixth Cause of Action, plaintiff sets forth claims against defendants North, Hines, Pearson, and Koba which, liberally construed, assert violations of plaintiff's due process rights. *See* Compl. at 22-23.

As against defendant C.O. North, plaintiff alleges that he tampered with hearing tapes that plaintiff requested, and improperly "coached" Scaringi to find plaintiff guilty at a Tier III hearing held in November 2015. Compl. at 22.

To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he or she both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir. 1996). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). While not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin*.  *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000). [17] Thus, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin* (*see Colon*, 215 F.3d at 232 n.5), the Second Circuit generally takes the position that confinement in a SHU, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." *Ortiz*, 380 F.3d at 654; *Colon*, 215 F.3d at 231.

[17]     For example, segregation for a period of thirty days was found by the Supreme Court in *Sandin* not to impose a significant hardship on an inmate. *Sandin*, 515 U.S. at 485-86. In explaining its reasoning, the Court found that the disciplinary confinement failed to present "a dramatic departure from the basic conditions" of an inmate's normal sentence. *Id.*

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 345 of 397
Thomas v. Pingotti, Not Reported in Fed. Supp. (2017)
2017 WL 3913018

Here, insofar as plaintiff alleges that C.O. North engaged in conduct which resulted in his being denied due process at his disciplinary hearing, this claim does not survive initial review. Even assuming that plaintiff enjoyed a protected liberty interest in the disciplinary hearing conducted by Scaringi (and the Court makes no such finding), there is no basis in the complaint upon which the Court could conclude that C.O. North was personally involved in that wrongdoing for purposes of personal liability under Section 1983.

**\*11** Plaintiff alleges that defendant Hines improperly denied plaintiff's request for documents under the New York Freedom of Information Law ("FOIL"). Compl. at 23. [18] While the exact contours of plaintiff's claim are far from clear, to the extent that he claims that the denial of his FOIL request violated his constitutional rights, that claim is not cognizable in this Section 1983 action. *See Ladeairous v. Attorney Gen. of N.Y.*, 592 Fed.Appx. 47, 48 (2d Cir.), cert. denied sub nom. *Ladeairous v. Schneiderman*, 136 S. Ct. 220 (2015), reh'g denied, 136 S. Ct. 579 (2015) (" '[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control.' ") (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978)).

[18]    As alleged, plaintiff's request was denied on the ground that it was not timely. Compl. at 23.

As alleged in the complaint, defendant C.O. Pearson confiscated legal materials and grievance records from plaintiff's cell. Compl. at 23. Following this incident, plaintiff "started to have problems obtaining legal research and materials." *Id.*

The Supreme Court has held that even "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The Second Circuit has recognized that New York provides, "an adequate post deprivation remedy in the form of, inter alia, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001) (citing *Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983)). [19] As a result, plaintiff's claims against C.O. Pearson arising from the confiscation of his legal papers are not cognizable in this action.

[19]    The confiscation of an inmate's legal papers related to a legitimate, non-frivolous legal proceeding can give rise to a claim under the First Amendment for interference with access to the courts, provided that the inmate can establish that he or she has suffered prejudice as a result of the actions of corrections officials in the pursuit of his or her legal claims. *See Pacheco v. Pataki*, No. 9:07-CV-850 (FJS/GHL), 2010 WL 3635673, at \*3 (N.D.N.Y. Sept. 9, 2010) ("A prisoner has a constitutional right of access to the courts, which is infringed when prison officials actively interfere with a prisoner's preparation of legal documents.... [f]or the claim of denial of access to the courts to be successful, a plaintiff must allege an actual injury."). Here, because plaintiff does not claim and there are no facts alleged in the complaint which even suggest, that the problems he experienced with the law library resulted in "actual injury," the complaint does not state a cognizable access to the courts claim.

In his complaint, plaintiff alleges that defendant Koba, identified as the Grievance Supervisor, falsely reported that plaintiff never filed any grievances, and "prevented plaintiff from exhausting his grievances against fellow employees." Compl. at 23. In addition, plaintiff alleges that Koba provided false testimony at plaintiff's disciplinary hearing "to make plaintiff look like a gang member." *Id.*

Upon review, the Court finds that plaintiff's claims against defendant Koba do not survive initial review. As discussed above in Part III(D), an inmate does not enjoy a protected due process interest in accessing the inmate grievance system. As a result, plaintiff's claim that defendant Koba did not properly perform his duties as "Grievance Supervisor" at Shawangunk C.F. is not cognizable in this Section 1983 action. In addition, it is well-settled that "provision of false testimony against an inmate by corrections officers is insufficient on its own to establish a denial of due process." *Mitchell v. Senkowski*, 158 Fed.Appx. 346, 349 (2d Cir. 2005) (summary order) (citing *Boddie*, 105 F.3d at 862). Thus, the mere allegation that a defendant has given false testimony at a disciplinary hearing fails to support a section 1983 claim for damages against the witness providing such

Thomas v. Pingotti, Not Reported in Fed. Supp. (2017)

2017 WL 3913018

testimony. *Green v. Greene*, No. 9:07–CV–0351 (GTS/DEP), 2009 WL 5874308, at *23 (N.D.N.Y. Mar. 30, 2009); *see also Cole v. Fischer*, No. 07 Civ. 11096, 2009 WL 130186, at *3 (S.D.N.Y. Jan. 15, 2009).

**\*12** Based upon the foregoing, plaintiff's claims against defendants North, Hines, Pearson, and Koba set forth in the Sixth Cause of Action are dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

### G. Seventh Cause of Action—Inadequate Medical Care

There are two elements to a claim that officials violated a plaintiff's Eighth Amendment right to receive adequate medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). [20]

[20]  "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1970)).

In his complaint, plaintiff claims that Dr. Parks acted with deliberate indifference to plaintiff's "health and safety when he deny plaintiff proper and helpful medications." Compl. at 23. Plaintiff does not set forth any facts regarding the nature and extent of his medical and/or mental conditions, his efforts to obtain evaluation and treatment, or the basis for his belief that the treatment provided was not "proper and helpful."

Upon review, the Court concludes that the facts alleged in the complaint do not plausibly suggest that Dr. Parks acted with deliberate indifference, was reckless in his treatment of plaintiff, or provided him with treatment that was "inadequate" in a constitutional sense. It is well-settled that an inmate who disagrees with the physician over the appropriate course of treatment has no claim under Section 1983 if the treatment provided is "adequate." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.' " *Jones v. Westchester County Dept. of Corrections*, 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008). "[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

As a result, plaintiff's medical indifference claim set forth in the Seventh Cause of Action does not survive initial review and is dismissed without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

### V. CONCLUSION

**\*13 WHEREFORE**, it is hereby

**ORDERED** that upon review of the pleadings filed in *Thomas* I and *Thomas* II, the Court finds that there is considerable duplication and repetition of claims and defendants in these two actions, as to which common questions of law and fact exist; because the pleading in *Thomas* II is more complete and because plaintiff has asserted additional claims and named additional defendants in that action, *Thomas* I is hereby **DISMISSED without prejudice** in favor of *Thomas* II; and it is further

**ORDERED** that plaintiff's IFP application in *Thomas* I (Dkt. No. 11) is **DENIED as moot**; and it is further

Thomas v. Pingotti, Not Reported in Fed. Supp. (2017)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 347 of 397

2017 WL 3913018

**ORDERED** that plaintiff's IFP application in *Thomas* II (Dkt. No. 10) is **GRANTED**;[21] and it is further

[21]   Although his in forma pauperis application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's inmate authorization (Dkt. No. 3), and notify the official that this action has been filed and that plaintiff is required to pay to the Northern District of New York the entire statutory filing fee of $350 in installments, over time, pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk provide a copy of plaintiff's inmate authorization (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that plaintiff's claim that he was denied free exercise of his religion by Acting DSS Bertone set forth in the Third Cause of Action survives initial review and requires a response from this defendant; and it is further

**ORDERED** that plaintiff's remaining claims are **DISMISSED without prejudice** in accordance with 28 U.S.C. § 1915(e)(2) (ii) and 28 U.S.C. § 1915A(b)(1);[22] and it is further

[22]   Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must be a complete pleading and must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

**ORDERED** that the Clerk shall terminate Polizzi, Pingotti, Lamanna, Taylor-Stewart, Parks, Piliero-Kinderman, Denniston, Koba, Bode-Cutler, Snyder, Pearson, Gardner, Hines, Cunningham, Clayburn, Scaringi, Cutler, Stefanik, and North as defendants in this action; and it is further

**ORDERED** that upon receipt from plaintiff of the documents required for service of process, the Clerk shall issue a summons and forward it, along with a copy of the complaint, to the United States Marshal for service on defendant Bertone. The Clerk shall forward a copy of the summons and complaint to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

 **\*14** **ORDERED** that a response to plaintiff's complaint be filed by defendant Bertone or his counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number (No. 9:17-CV-0377), and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Decision and Order on plaintiff.


**IT IS SO ORDERED.**

Thomas v. Pingotti, Not Reported in Fed. Supp. (2017)

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 348 of 397

2017 WL 3913018

**All Citations**

Not Reported in Fed. Supp., 2017 WL 3913018

---

**End of Document**                                        © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)

2024 WL 6935161

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 349 of 397

2024 WL 6935161

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

James D. HILTON, Plaintiff,

v.

Justin MAHAN, [1] et al., Defendants.

[1]  The Court terminated the lead defendant following section 1915 review of plaintiff's complaint. See Dkt. No. 7 at 11-12. Accordingly, the Clerk is respectfully directed to amend the caption to reflect Justin Mahan, the next named still-remaining defendant, as the lead defendant.

No. 9:23-CV-00209 (MAD/CFH)

|

Signed February 29, 2024

**Attorneys and Law Firms**

JAMES D. HILTON, 16-A-4943, Great Meadow Correctional Facility, Box 51, Comstock, New York 12821, Plaintiff pro se.

OLIVIA R. COX, ESQ., Assistant Attorney General, Attorney General for the State of New York, The Capitol, Albany, New York 12224, Attorney for defendants.

## REPORT-RECOMMENDATION AND ORDER [2]

[2]  This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE

*1  Plaintiff pro se James D. Hilton ("plaintiff"), an inmate who was, at all relevant times, in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Correctional Officer ("C.O.") Justin Mahan, C.O. Andrew McDonald, Sergeant ("Sgt.") Bryan Mason, C.O. Matthew LaFountain, and C.O. Eugene Raimo, Jr. (collectively, "defendants"), violated his constitutional rights under the Eighth Amendment. See Dkt. No. 1 ("Compl."). Presently before the Court is defendants' motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). See Dkt. No. 14. Plaintiff opposed, and defendants replied. See Dkt. Nos. 22, 25, 27. Also pending is plaintiff's request for perjury charges, as well as his motion to amend his complaint. See Dkt. Nos. 41, 43. Defendants opposed the motion to amend. See Dkt. No. 48. For the following reasons, it is recommended that defendants' motion be denied, plaintiff's request for perjury charges be denied, and plaintiff's motion to amend be granted in part and denied in part.

## I. Background

At all relevant times, plaintiff was an inmate confined at Great Meadow Correctional Facility ("Great Meadow C.F."). See Compl. at 1, 10-14. [3]

3      Citations are to the pagination generated by CM/ECF, located in the header of each page.

### A. Plaintiff's Factual Assertions

Plaintiff alleges that, between June 20, 2022, and June 28, 2022, a lockdown occurred at Great Meadow C.F. See Compl. at 10. During that time, Deputy Superintendent of Security Armand S. Caringi ordered the DOCCS Community Emergency Response Team ("CERT") to search the facility. See id. Members of the New York State Hostage Response Team ("HRT") and agents associated with the Office of Special Investigations ("OSI") also assisted with the search. See id. at 10-12.

On June 21, 2022, Mahan, McDonald, and three unidentified officers (identified as John Doe #1, John Doe #2, and John Doe #3) "entered [plaintiff]'s cell and began to assault him." Compl. at 10. These five officers "slammed [plaintiff] against the cell wall[,] held [him down], choked, punched, kicked, elbowed, [and] kneed [him]." Id. at 11. The officers "struck [plaintiff] in the face, the back of [his] head, the ribs, the abdomen, [and] the groin area." Id. The officers also restrained plaintiff's left wrist and twisted the restraint, "caus[ing] deep cuts into the wrist area." Id. Mahan then "slammed [plaintiff] onto [the] bed and drove his knee into [plaintiff]'s left temple, which he left in position, pinning [plaintiff]'s head to the metal of his bed frame," and as a result, plaintiff was unable to breathe and "began [to] los[e] consciousness." Id. While pinning plaintiff down, Mahan pepper sprayed plaintiff multiple times "directly up the nose." Id.

"[T]here were about 25 to 30 other CERT members and [HRT] officers ... directly out side [sic] of [plaintiff's] cell observing the assault ... and listening to [plaintiff] scream in agony and for help." Compl. at 10. Specifically, HRT members (referred to as Tom Smiths #1-4) "could hear [plaintiff] scream for someone to help [him] during the assault," but failed to intervene. Id. at 12. OSI officers (referred to as Jane Does #1-2) were also "about 50 feet away," but did not attempt to intervene. Id. at 11. "Mason claims to have [also] been present at the time of the assault[,]" as he filed a misbehavior report related to this incident. Id. at 10.

 **\*2**  After this first assault, LaFountain "dragged [plaintiff] by the hair and cuffs ... to the Facility Hospital." Compl. at 12. As plaintiff entered the examination room, LaFountain, Raimo, and three unidentified CERT officers "began to attack" him. Id. The officers "struck [plaintiff] in the face, back of the head, chest, the sides of his ribs, solar plexus, as well as his abdominal area, all while [plaintiff] was in hand restraints." Id. Plaintiff "screamed for help," but the officers "ordered [him] to 'shut up' and then tried to render him unconscious with front hand chokes[,] blocking his airway with an intention to crush his windpipe." Id. The officers also pepper sprayed him. See id. The officers then "placed a 'spit net' over [plaintiff's] head[, which] further complicat[ed] his breathing," and cleaned the blood off of plaintiff's face and body as well as the floors and the walls. Id. Other CERT (referencing John Does #4-10), HRT (referencing Tom Smiths #4-5), and OSI officers (referencing Jane Does #1-3) "were present in the hospital corridor" during this second assault and "could hear [plaintiff] screaming in pain and for help and did nothing to assist him or stop the assault from taking place." Id. at 13.

Following the two incidents, plaintiff saw a physician's assistant and complained "about injuries all over his body including but not limited to his face, head, neck, ribs, hands, eyes and wrists[.]" Compl. at 13. The facility hospital denied plaintiff "concussion protocol," "follow ups," and a "complete body examination." Id. "The Lead medical Nurse Administrator provider at Great Meadow [C.F., C. Watkins,] was negligent for [her] failure to provide medical attention." Id.

On June 21, 2022, plaintiff received two misbehavior reports. See Compl. at 11, 13. "The first was for an assault by CERT officers that occurred in his cell in which he was the victim yet, they charged him with infractions of Assault on staff, Violent conduct, Interference with an employee, Creating a disturbance, non-Compliance with frisk procedures, and not following a Direct order." Id. at 13-14. "The second misbehavior report was for the infractions Not following a direct order, Unhygienic act, Violent conduct, Assault on Staff, as well as Creating a disturbance." Id. at 14. As a result, plaintiff was "unlawful[ly]" confined to the Special Housing Unit ("SHU") for twenty-four days. Id. "[A]ll charges on both misbehavior reports were [eventually] dismissed." Id.

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)

2024 WL 6935161

On June 29, 2022, plaintiff filed a grievance with the Inmate Grievance Review Committee ("IGRC"). See Compl. at 5. On August 24, 2022, plaintiff wrote a letter to the Superintendent of Great Meadow C.F., stating that he "never receiv[ed] a hearing or a reply in regards to [his] grievance." Id. On September 2, 2022, plaintiff filed a complaint to the Central Office Review Committee ("CORC") about the "IGRC not answering [his] complaint[.]" Id.

### B. Defendants' Factual Assertions [4]

[4]   In support of their motion, defendants filed a Statement of Material Facts. See Dkt. No. 14-1.

"Plaintiff ... had until July 12, 2022 to file a timely grievance with the IGRC at Great Meadow C.F." regarding the alleged June 21, 2022, incident. Dkt. No. 14-1 at 3, ¶12. However, "[p]laintiff never filed a facility-level grievance at Great Meadow C.F. relating to this incident, accordingly he never appealed this matter to CORC." Id. at 3, ¶13. "On August 24, 2022, [p]laintiff did file a separate grievance alleging that he had attempted to file a grievance dated June 29, 2022 related to the allegations in this lawsuit, but that he allegedly had not received a response." Id. at 3, ¶14. "This separate grievance was deemed untimely and returned, as it was received long past the 21-day and 45-day deadlines set forth in Directive 4040." Id. On October 7, 2022, plaintiff "file[d] a separate grievance in which he complain[ed] of the denial of the August 24, 2022 grievance due to timeliness." Id. at 3, ¶16. "Although he appealed his October 7, 2022 grievance denial to CORC, he failed to properly appeal the underlying grievance he had allegedly written on June 29, 2022." Id.

### C. Procedural History

Plaintiff commenced this action on February 3, 2023. See Compl. at 14. Upon section 1915 review of his complaint, the Court determined that plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against Mahan, McDonald, Mason, LaFountain, Ramos, John Does #1-3 survived sua sponte review, and ordered defendants to respond. [5]  See Dkt. No. 7 at 9. On May 24, 2023, defendants filed a motion for summary judgment in lieu of an answer, arguing that plaintiff failed to exhaust his administrative remedies. See Dkt. No. 14. Plaintiff opposed, and then filed an amended response, and defendants replied. See Dkt. Nos. 22, 25, 27. On October 30, 2023, plaintiff filed a letter requesting that perjury charges be brought against Alexandria Cutler, the Inmate Grievance Program ("IGP") Supervisor at Great Meadow C.F. See Dkt. No. 41. On December 8, 2023, plaintiff also filed a motion to amend his complaint, as well as a Valentin request. [6]  See Dkt. No. 43; see also Dkt. No. 43-1 ("Prop. Am. Compl."). On February 7, 2024, defendants filed their opposition to plaintiff's motion to amend. See Dkt. No. 48.

[5]   The Court further determined that plaintiff failed to state a claim upon which relief may be granted for: (1) Eighth Amendment failure-to-intervene claims against Caringi, John Does #4-10, Jane Does #1-2, and Tom Smiths #1-4; (2) Eighth Amendment medical indifference claims against Watkins; and (3) Fourteenth Amendment Due Process claims regarding his unlawful confinement in the SHU. See Dkt. No. 7 at 9-13. The Court dismissed those claims without prejudice. See id. at 14.

[6]   With his motion to amend, plaintiff submits two documents titled "Notice of Motion" and "Affidavit in Support of Dinkins Motion." Dkt. No. 43 at 3, 5. The Court will construe plaintiff's submission as a Valentin request. See Valentin v. Dinkins, 121 F.3d 72, 75 (2d Cir. 1997) (holding that a pro se litigant is entitled to assistance from the district court in identifying a defendant); see also discussion infra Subsection IV.C.4.

### II. Defendants' Motion for Summary Judgment

**\*3** Defendants contend that they are entitled to summary judgment because "plaintiff failed to exhaust his administrative remedies before commencing this action[.]" Dkt. No. 14-10 at 5. Plaintiff maintains that he exhausted his administrative remedies. See Compl. at 4-6; see also Dkt. No. 25 at 52, 62.

### A. Legal Standard Governing Motions for Summary Judgment

A motion for summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of disputed material facts by citing to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (citation omitted); see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court ... must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)); see also Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) ("[M]ere conclusory allegations or denials ... cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (citation omitted).

Where a party seeks judgment against a pro se litigant, or a pro se litigant moves for summary judgment, the Court must afford the pro se litigant special solicitude. See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam). As the Second Circuit explained,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[ ]" ....

Id. (citations omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obligated to construe his pleadings liberally.") (citations and quotation marks omitted).

### B. Exhaustion of Administrative Remedies

**\*4** The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust any available administrative remedies before bringing an action for claims arising out of their incarceration. See 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion is required even where the prisoner seeks relief not available in the administrative grievance process, such as money damages. See id. at 524. "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he is incarcerated." Adams v. Annucci, 537 F. Supp. 3d 475, 477-78 (W.D.N.Y. 2021); see

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 353 of 397

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)

2024 WL 6935161

Jones v. Bock, 549 U.S. 199, 218 (2007) (explaining that the applicable procedural rules "are defined not by the PLRA, but by the prison grievance process itself").

"Failure to exhaust administrative remedies under the PLRA is an affirmative defense, and thus the defendants have the burden of proving that [the plaintiff's] claim has not been exhausted[.]" Key v. Toussaint, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted). A defendant satisfies this burden by "establishing ... that a grievance process exists" and that the plaintiff failed to utilize the grievance procedure. Hubbs v. Suffolk Cnty. Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015) (citing Mojias v. Johnson, 351 F.3d 606, 610 (2d Cir. 2003), and Snider v. Melindez, 199 F.3d 108, 114 (2d Cir. 1999)). "However, once a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him or her, the remedy was unavailable." Coleman v. Nolan, No. 9:15-CV-40 (ATB), 2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018) (citing Smith v. Kelly, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013)). [7]

[7]    All unpublished decisions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Here, there is no genuine dispute that, at all relevant times, DOCCS had in place a three-step inmate grievance program. See N.Y. COMP. CODES R. & REGS. tit. 7 ("7 N.Y.C.R.R."), § 701.5. First, the inmate must file a complaint with the IGRC within twenty-one calendar days of the alleged incident. See id. § 701.5(a). Second, the inmate may appeal IGRC's decision to the facility's Superintendent. See id. § 701.5(c)(1). Third, the inmate may appeal the Superintendent's decision to the CORC. See id. § 701.5(d)(1)(i). "There is also an expedited procedure for complaints raising bona fide issues of harassment or other misconduct by DOCCS staff, which bypasses the IGRC, and initially refers the grievance to the facility superintendent or his designee for prompt review, investigation, and decision." Ferguson v. Mason, No. 9:19-CV-927 (GLS/ATB), 2021 WL 862070, at *2 (N.D.N.Y. Jan. 7, 2021) (citing 7 N.Y.C.R.R. § 701.8), report and recommendation adopted, 2021 WL 531968 (N.D.N.Y. Feb. 12, 2021).

### 1. Whether Plaintiff Exhausted His Administrative Remedies

Defendants argue that this action should be dismissed because plaintiff failed to exhaust administrative remedies available to him. See Dkt. No. 14-10 at 8-9. Specifically, defendants contend that "[p]laintiff never filed a timely grievance in relation to [his] allegations." Id. at 8. Defendants acknowledge that "[p]laintiff filed a separate grievance [on August 24, 2022,] alleging that he attempted to file a grievance dated June 29, 2022 related to the allegations in this lawsuit, but ... he allegedly had not received a response." Id. Defendants assert that "this separate [August 24, 2022] grievance was deemed untimely and returned to [p]laintiff, as it was received past the 21-day and 45-day deadlines set forth in Directive 4040." Id. Defendants note that "[h]ad [p]laintiff truly filed, or attempted to file, a grievance on June 29, 2022 related to the June 21, 2022 allegations, a Superintendent's response would [have] been due on or before July 24, 2022." Id. Defendants argue that "[a]fter that date, had [p]laintiff not receive a response, he would be obligated to appeal the non-response to CORC to properly exhaust his administrative remedies," yet "[p]laintiff filed no such appeal." Id. at 8-9.

 **\*5**  Defendants have submitted sworn declarations from Alexandria Cutler, the IGP Supervisor at Great Meadow C.F., and Rachel Seguin, the Director of the IGP for DOCCS. See Dkt. Nos. 14-3, 14-5. In her declaration, Cutler explains that she "conducted a diligent search of DOCCS records for any grievances filed by [p]laintiff," which revealed that "[p]laintiff never filed a facility-level grievance at Great Meadow C.F. relating to the June 21, 2022 incident[.]" [8] Dkt. No. 14-5 at 4-5, ¶¶16-17. Cutler acknowledges that plaintiff filed separate grievances on August 24, 2022, and October 7, 2022, but these were denied as untimely. See id. at 5, ¶¶19, 21; see also Dkt. Nos. 14-8, 14-9. Moreover, Seguin declares that, pursuant to her review of the relevant DOCCS records, "[p]laintiff has appealed three facility-level grievance determinations to CORC while incarcerated in DOCCS custody ... [but n]one of these three appealed facility-level grievance determinations are against [d]efendants[.]" [9] Dkt. No. 14-3 at 4, ¶13.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 354 of 397

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)

2024 WL 6935161

8        A copy of the computer print-out listing this information is attached to Cutler's declaration. See Dkt. No. 14-7 at 2-3.

9        A copy of the computer print-out listing this information is attached to Seguin's declaration. See Dkt. No. 14-4 at 2-3.

Plaintiff alleges that he fully exhausted his remedies because he filed a grievance related to the alleged June 21, 2022, incident on June 29, 2022. See Compl. at 5. Plaintiff specifically contends that he submitted the grievance, "while being housed in the [SHU]," "to the officer in charge of disbursing any and all correspondence to their designated destinations," but he never received a response. Dkt. No. 22 at 15, ¶13. Plaintiff argues that "IGRC never responded to [his] original grievance," so he did not "have to file an appeal." Id. at 17, ¶¶16-17. However, plaintiff's contentions are misguided. To satisfy the PLRA's exhaustion requirement, "any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can—and must—be appealed to the next level, including [the] CORC[.]" Murray v. Palmer, No. 9:03-CV-1010 (GTS/GHL), 2010 WL 1235591, at *2 (N.D.N.Y. Mar. 31, 2010); see also 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."). Accepting as true, for purposes of this motion, that plaintiff timely filed a complaint with the IGRC regarding his claims set forth in this action, he still failed to timely file an appeal of this grievance with the CORC when he failed to receive a response. See Compl. at 5-6; see also Dkt. No. 22 at 15-17. Without filing such an appeal, plaintiff has not satisfied the PLRA's exhaustion requirements. See Woodford v. Ngo, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines[.]"); see also Petit v. Bender, No. 99-CV-0969 (SHS), 2003 WL 22743485, at *5 (S.D.N.Y. Nov. 19, 2003) ("Courts in this jurisdiction have regularly held that failure to timely file an appeal during the administrative grievance process, followed by a subsequent denial of access by CORC due to untimeliness, will not constitute exhaustion.") (collecting cases).

Thus, defendants have met their burden of demonstrating that a grievance procedure existed, and that plaintiff failed to exhaust administrative remedies related to the June 21, 2022, incident. As a result, the undersigned must assess whether administrative remedies were available to plaintiff.


### 2. Availability as to Plaintiff

"[T]he PLRA requires 'proper exhaustion,' which ' "means using all steps that the agency holds out, and doing so properly[.]" ' " Ruggiero v. Cnty. of Orange, 467 F.3d 170, 176 (2d Cir. 2006) (quoting Woodford, 548 U.S. at 90, and Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). The PLRA's "exhaustion requirement hinges on the 'availability' of administrative remedies[.]" Ross v. Blake, 578 U.S. 632, 642 (2016) (brackets omitted). "An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." Id. Availability means "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.' " Id. (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)).

*6 There are "three kinds of circumstances in which an administrative remedy ... is not capable of use to obtain relief." Ross, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth, 532 U.S. at 736). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

Plaintiff claims that he submitted a grievance related to the June 21, 2022, incident "to the officer [in the SHU] in charge of disbursing any and all correspondence to their designated designations," on June 29, 2022. Dkt No. 22 at 15, ¶13. Defendants argue, however, that "[p]laintiff never filed a timely grievance in relation to [his] allegations." Dkt. No. 14-10 at 8. Specifically, defendants contend they never received the June 29, 2022, grievance, until plaintiff attached it to a separate grievance that he filed on August 24, 2022. See id.; see also Dkt. No. 14-8 at 3-7.

2024 WL 6935161

Before the Court is "a clash of sworn statements" where "[p]laintiff attested that he gave his grievance to a correction officer, ... and [defendants] submitted sworn statements from inmate grievance program supervisors indicating that a review of their records revealed that no grievance was filed." Hudson v. Kirkey, No. 20-CV-581 (LEK/DJS), 2021 WL 1966721, at *3 (N.D.N.Y. May 17, 2021). "To the extent that these statements are in contradiction, the Court cannot resolve this contradiction at the summary judgment stage, because the Court is prohibited from making credibility determinations." Id. (citing McLean v. LaClair, No. 19-CV-1227 (LEK/ATB), 2021 WL 671650, at *6 (N.D.N.Y. Feb. 22, 2021)); see Baltas v. Erfe, No. 3:19-CV-1820 (MPS), 2022 WL 4260672, at *10 (D. Conn. Sept. 15, 2022) (declining to render credibility determination for exhaustion issue on a motion for summary judgment; see also Carter v. Revine, No. 3:14-CV-01553 (VLB), 2017 WL 2111594, at *11 (D. Conn. May 15, 2017) ("The Court cannot render summary judgment for the [d]efendants on the basis of their contention that [the plaintiff] did not file grievances when [the plaintiff] claims that he did. These conflicting factual scenarios create the classic genuine issue of material fact.").

However, given that the Court "must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," it is not clear that plaintiff's statement and defendants' sworn statements are in fact contradictory. Torcivia v. Suffolk Cnty., New York, 17 F.4th 342, 355 (2d Cir. 2021); see Jenkins v. Officer S, No. 19-CV-10728 (KMK), 2023 WL 6259667, at *7 (S.D.N.Y. Sept. 26, 2023). Indeed, "the Court must infer that [plaintiff's] grievance was never filed because prison authorities did not file it, not because [p]laintiff did not attempt to submit it." Hudson, 2021 WL 1966721, at *4 (citations omitted); see McLean, 2021 WL 671650, at *8 ("[T]here is no necessary inconsistency between [the p]laintiff's claim that he mailed the appeals and [the d]efendants' claim that they were never filed; and the Court must grant [the p]laintiff the favorable inference that his grievance was sent and received, but not filed, for reasons out of his control.").

The Second Circuit has held that when a grievance goes unfiled and unanswered, "the process to appeal ... is prohibitively opaque, such that no inmate could actually make use of it." Williams v. Correction Officer Priatno, 829 F.3d 118, 126 (2d Cir. 2016). In Williams, the plaintiff, responding to the defendants' claim that the plaintiff did not exhaust, contended that he attempted to file a grievance while he was in the SHU but that the correction officer he gave it to "never filed it for him." Id. at 121. The Court accepted the plaintiff's allegation, [10] and held that, "[u]nder that circumstance, the regulations do not adequately outline the process to appeal or otherwise exhaust administrative remedies. On their face, the regulations only contemplate appeals of grievances that are actually filed." Id. at 124-25 (noting, in detail, the confusing nature of the timelines set forth in the DOCCS' regulations governing the grievance procedure). As such, the Second Circuit held that "the grievance procedures that were technically available to [the plaintiff] are so opaque and confusing that they were, 'practically speaking, incapable of use.' " Id. at 126 (quoting Ross, 578 U.S. at 643-44).

[10]    "The plaintiff supported [his] allegation [of unavailability] by providing the court with the date he filed the grievance, the procedure for how he filed it, and the timeline for roughly when [ ] subsequent follow-up conversations occurred." Ozzborn v. Cornell, No. 9:17-CV-1039 (MAD/ATB), 2021 WL 2227829, at *4 (N.D.N.Y. June 2, 2021) (citing Williams, 829 F.3d at 121).

*7    "Following Williams, this Court has denied a defendant's motion for summary judgment when faced with an unanswered and unfiled grievance drafted in SHU." Stephanski v. Allen, No. 9:18-CV-76 (BKS/CFH), 2020 WL 806331, at *8 (N.D.N.Y. Jan. 22, 2020) (citing Juarbe v. Carnegie, No. 9:15-CV-01485 (MAD/DEP), 2016 WL 6901277, at *1, 4 (N.D.N.Y. Nov. 23, 2016)), report and recommendation adopted, 2020 WL 777268 (N.D.N.Y. Feb. 18, 2020). This Court has also denied summary judgment where a plaintiff "does not have a copy of the grievance, was not confined in the SHU, and has not submitted any contemporaneous correspondence inquiring about the status of his grievance," but submitted a sworn response and testified under oath "that he submitted a handwritten grievance" and that "he verbally followed up with the [ ] grievance office." Maldonado v. Mandalaywala, No. 9:17-CV-1303 (BKS/TWD), 2020 WL 1159426, at *17 (N.D.N.Y. Feb. 12, 2020), report and recommendation adopted, 2020 WL 1157643 (N.D.N.Y. Mar. 10, 2020); cf. Khudan v. Lee, No. 12-CV-8147 (RJS), 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016) (granting summary judgment where, although the plaintiff asserted that he sent an appeal of his grievance to "Albany," he "fail[ed] to specify where in Albany he sent his grievance and fail[ed] to provide any other details, including the approximate date he submitted his appeal").

Plaintiff contends that he timely submitted a handwritten grievance to the officer in the SHU; yet, defendants "cit[e] records that show [plaintiff] never filed [a timely grievance or] an appeal." Williams, 829 F.3d at 121; see Dkt. No. 14-10 at 8-9. Plaintiff specified that he was in the SHU when he submitted his grievance, and provides other details relevant to his claim, including who he filed the grievance with and when he filed it. See Dkt. No. 22 at 15-17; cf. Heyliger v. Gebler, No. 06-CV-6220 (FPG), 2014 WL 4923140, at *3 (W.D.N.Y. Sept. 30, 2014) (granting the defendant's motion for summary judgment where the plaintiff alleged that his "original grievance was discarded by prison officials," yet the plaintiff "never described or named the individual who allegedly took this action"), aff'd, 624 F. App'x 780 (2d Cir. 2015) (summary order).

"[C]ourts have consistently held ... that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement." Scott v. Kastner-Smith, 298 F. Supp. 3d 545, 555 (W.D.N.Y. 2018) (citations and internal quotation marks omitted); see, e.g., Engles v. Jones, No. 6:13-CV-6461 (EAW), 2018 WL 6832085, at *10 (W.D.N.Y. Dec. 28, 2018) ("[The p]laintiff's unsupported assertion that he filed a grievance but that it was somehow lost or destroyed is insufficient to establish a genuine issue of material fact."). However, "those cases were either not decided in the context of a motion for summary judgment filed in lieu of an answer or involved allegations far more general than those at issue here." Murray v. Noeth, No. 6:19-CV-6342 (EAW), 2022 WL 4467691, at *5 (W.D.N.Y. Sept. 26, 2022). "[A]t this stage of the proceedings and with no discovery having been conducted, it would not be appropriate to resolve this issue just based on the papers." Id.; see Thaxton v. Simmons, No. 10-CV-1318 (MAD/RFT), 2013 WL 4806457, at *4 (N.D.N.Y. Sept. 9, 2013) ("[A] question of fact exists as to whether [the p]laintiff never filed his initial grievance ... as [the d]efendants claim, or that, as [the p]laintiff claims, he filed a timely grievance that was lost or tampered with by [the d]efendants. Such credibility assessments are to be resolved by a trier of fact.").

As such, it is recommended that the Court deny defendants' motion for summary judgment and "hold a hearing, at which a fact-finder can assess the credibility of witnesses and the relative weight of the evidence the parties present" to determine whether plaintiff exhausted his administrative remedies or if the administrative remedies were unavailable. Hudson, 2021 WL 1966721, at *4; see also Tillman v. Phillips, No. 9:19-CV-1597 (LEK/CFH), 2021 WL 5233308, at *9 (N.D.N.Y. Nov. 10, 2021), report and recommendation adopted, 2021 WL 5768393 (N.D.N.Y. Dec. 6, 2021). It is further recommended that the motion for summary judgment be denied without prejudice and with leave to renew upon completion of the exhaustion hearing.

### III. Plaintiff's Request for Perjury Charges

 **\*8** Plaintiff has submitted a letter "to inform [the Court] that ... Cutler ... has perjured herself before this court," and to "request[ ] that [the Court] recommend charge(s) of perjury against her[.]" Dkt. No. 41 at 1. Plaintiff argues that Cutler committed the "crime of perjury" in her declaration that is attached to defendants' motion for summary judgment by falsely stating that "[p]laintiff never filed a facility-level grievance at Great Meadow C.F. relating to the June 21, 2022 incident at Great Meadow C.F." Id. (citing Dkt. No. 14-5 at 5, ¶17). Plaintiff asserts that he "did[,] in fact[,] file numerous grievances with the IGP 'relating to the June, 21, 2022 incident at Great Meadow C.F.' "; specifically he filed a grievance on June 29, 2022, and when he did not receive a response, he filed an appeal with the Superintendent of Great Meadow C.F., Dennis W. Bradford, on August 24, 2022. Id. at 2.

"[A] private citizen does not have a constitutional right to initiate or to compel the initiation of criminal proceedings against another individual." McCrary v. Cnty. of Nassau, 493 F. Supp. 2d 581, 591 (E.D.N.Y. 2007) (citing Leeke v. Timmerman, 454 U.S. 83, 85-87 (1981) (explaining that prisoners lack standing to seek the issuance of an arrest warrant), Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another."), and Ostrowski v. Mehltretter, 20 F. App'x 87, 91 (2d Cir. 2001) (summary order)); see Annis v. Vermont Prosecutors, 568 F. App'x 9, 10 (2d Cir. 2014) (summary order). "The decision to commence a criminal prosecution by filing an accusatory instrument is a matter of prosecutorial discretion." Lis v. Leahy, No. 90-CV-834E, 1991 WL 99060, at *1 (W.D.N.Y. June 3, 1991); see United States v. Batchelder, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring ... are decisions that generally rest in the prosecutor's discretion"). Such decision is not generally subject to judicial review. See

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)

2024 WL 6935161

Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 383 (2d Cir. 1973). Consequently, it is recommended that plaintiff's request that criminal charges be initiated against Cutler be denied.

Moreover, as relevant here, "there is no private right of action for perjury or suborning perjury under New York law." Phillips v. Delaney, No. 19-CV-5113 (NSR), 2020 WL 5898972, at *7 (S.D.N.Y. Oct. 2, 2020) (citing Minus v. Spillane, No. 17-CV-4623 (JMF), 2019 WL 6498258, at *4 (S.D.N.Y. Dec. 3, 2019) (dismissing claim sounding in perjury because there is no private right of action for perjury under New York law), Carvel v. Ross, No. 09-CV-0722 (LAK/JCF), 2011 WL 856283, at *12 (S.D.N.Y. Feb. 16, 2011), Abrahams v. Inc. Village of Hempstead, No. 08-CV-02584 (SJF/WDW), 2009 WL 1560164, at *8 (E.D.N.Y. June 2, 2009), and Sash v. City of New York, No. 05-CV-1544 (DAB/JCF), 2006 WL 2474874, *6 n.5 (S.D.N.Y. Aug. 11, 2006) ("[P]erjury and subornation of perjury ... are not cognizable civil claims under either New York State or federal law.")); see Shaw v. Neece, 727 F.2d 947, 949 (10th Cir. 1984) ("[A] plaintiff cannot recover civil damages for an alleged violation of a criminal statute."). Thus, insofar as plaintiff asserts a civil claim for perjury, or initiates a criminal charge through this request, it is recommended that such claim be dismissed.

## IV. Plaintiff's Motion to Amend

Plaintiff moves to amend his original complaint. See Dkt. No. 43; see also Prop. Am. Compl. Defendants argue that plaintiff's motion "should be denied in its entirety[,]" because (1) plaintiff failed to comply with the N.D.N.Y. Local Rules, and (2) plaintiff "fail[ed] to assert any new facts relative to the incident and attempts to bring claims that are facially defective, rendering [his] Motion to Amend futile." Dkt. No. 48 at 2.

### A. Legal Standards Governing Motions to Amend

**\*9**  The Federal Rules of Civil Procedure provide that courts "should freely give leave" to amend a complaint "when justice so requires." FED. R. CIV. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." Williams v. Citigroup Inc., 659 F. 3d 208, 212-13 (2d Cir. 2011) (citation omitted). However, motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008); see Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000) (explaining that leave to amend should generally be granted "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility"). "The decision to grant or deny a motion to amend is committed to the sound discretion of the trial court and the court's decision is not subject to review on appeal except for abuse of discretion." Tafari v. McCarthy, 714 F. Supp. 2d 317, 385 (N.D.N.Y. 2010) (citation omitted).

"Where a proposed amendment seeks to add new defendants, Rules 20 and 21 also apply." [11] Mrani v. New York State DOCCS, No. 21-CV-1072 (NSR/AEK), 2023 WL 3736781, at *3 (S.D.N.Y. May 31, 2023). Under Rule 20, defendants may be joined if the claims against them arise "out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2); see also FED. R. CIV. P. 21 ("[T]he court may at any time, on just terms, add or drop a party."). Where the time to join additional parties has expired, "a motion to join additional parties is subject to the 'good cause' requirement of Rule 16(d)." Kleeberg v. Eber, 331 F.R.D. 302, 315 (S.D.N.Y. 2019). "Courts regularly deny motions to amend where the moving party seeks to add claims involving collateral matters, based on different factual allegations and distinct legal theories, from the claims already at issue in a case." Amusement Indus., Inc. v. Stern, No. 07-CV-11586 (LAK), 2014 WL 4460393, at *13 (S.D.N.Y. Sept. 11, 2014).

[11]  Rule 15(c)(1) applies when a plaintiff seeks to amend a complaint, including to add a new defendant, after the expiration of the limitations period. See FED. R. CIV. P. 15(c)(1). "Th[e Second] Circuit has interpreted the rule to preclude relation

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 358 of 397

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)
2024 WL 6935161

back for amended complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities." Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013). However, because the statute of limitations is not implicated in this case, Rule 15(c)'s relation-back principles do not apply.

### B. Summary of the Proposed Amended Complaint

Plaintiff's proposed amended complaint generally asserts the same facts and circumstances as those included in his original complaint [12] except that plaintiff has removed some of the allegations concerning the previously-dismissed claims and terminated defendants, added allegations to support new claims, and added new defendants. See Prop. Am. Compl. Plaintiff specifically proposes the following individuals and entities to be added as defendants in this action: the State of New York, DOCCS, Dennis W. Bradford, Armand S. Caringi, Eugene Raimo, Jr., Alexandra Cutler, and John Does #1-20. [13] See id. at 2-3, 22-23; see also Dkt. No. 43 at 6-9. The following facts are alleged in the amended complaint.

[12]    Plaintiff realleges his original claims that were not dismissed.

[13]    In his Valentin request, plaintiff notes that "John Doe #1" is "possibly" Justin Mahan, "John Doe #3" is "possibly" Andrew McDonald, "John Doe #4" is "possibly" M.J. LaFrance, "John Doe #5" is "possibly" Bryan Mason, and "John Doe #6" is "possibly" Matthew LaFountain. Dkt. No. 43 at 6-7. These parties, with the exception of M.J. LaFrance, were all named in plaintiff's original complaint. See Compl. at 1-2. It is unclear to the Court why the Valentin motion indicates these parties are "possibly" operating under the "John Doe" moniker in plaintiff's proposed amended complaint. The Court will refer to "John Doe #1" as Mahan, "John Doe #3" as McDonald, "John Doe #4" as LaFrance, "John Doe #5" as Mason, and "John Doe #6" as LaFountain.

 **\*10**  "On June 19, 2022, which was ... the newly instituted Federal Holiday Juneteenth (commemorating the freedom of slaves) [,] ... a violent incident broke out" in the recreation yard at Great Meadow C.F. "between a number of African American inmates and some white [ ] Corrections Officers[.]" Prop. Am. Compl. at 3, ¶8. "Immediately after the incident in the yard[, Great Meadow C.F.] was put on 'lock down[.]' " Id. at 4, ¶14. On June 21, 2022, CERT, HRT, and OSI officers "carried out" an "operation" in "[p]laintiff's housing area." Id. "[S]hortly before the search of his cell," plaintiff heard the officers say to each other "yeah, we're looking for a white guy ... we gotta beat up a white guy." Id. at 4, ¶17. On plaintiff's "information and belief, these officers were targeting a 'white guy' for a beating, in order to counter any claims that the [search] operation being carried out was racially motivated against African-Americans as retaliation for the aforementioned incident in the [recreation] yard." Id. at 4, ¶18. "[A] group of approximately ten (10) CERT officers formed in a tight group of concentrated force directly outside [p]laintiff's cell while plaintiff was sitting on his bed." Id. at 4-5, ¶19. "[T]here were [also] approximately four (4) HRT officers and approximately three (3) OSI officers present in the near vicinity[.]" Id. at 5, ¶20.

McDonald targeted plaintiff, "signal[ed] to the other officers[,] point[ed] towards plaintiff's cell[, and said] 'this is the guy.' " Prop. Am. Compl. at 5, ¶23. Plaintiff was then attacked by five officers, including Mahan, John Doe #2, McDonald, LaFrance, and Mason, "[i]n what can only be termed a wanton criminal gang assault[.]" Id. at 6-10. "[McDonald], in concert with [Mahan, John Doe #2, LaFrance, and Mason], manhandled [p]laintiff ... and slammed him bodily, with great force[.]" Id. at 6, ¶32. The five officers

individually and collectively, and with such depravity as to be shocking to the conscious, repeatedly beat, with closed fists, [p]laintiff in the face, beat him on the head, beat his torso, and beat his arms and legs, and further kicked [p]laintiff's legs with combat boots, causing severe pain and deep contusions to [p]laintiff's head, orbits, eye tissue, maxilla, nose, jaw, mouth, legs, knees, feet, torso (ribs: front, side,

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 359 of 397

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)
2024 WL 6935161

and back), and deep lacerations to the lingual side of [p]laintiff's lips, all while [p]laintiff was already subdued and in the grip of the [officers].

Id. at 7, ¶34. "The beating of [p]laintiff while he was handcuffed, completely subdued and utterly defenseless, went on for over five (5) minutes." Id. at 9, ¶47.

"During the entirety of the gang assault ... [p]laintiff was screaming at the top of his lungs ... in hopes that [LaFountain and John Does #7-10], the CERT officers who remained outside of the cell during the attack[,] ... and who could easily see [p]laintiff's constitutional rights being violated ... and who could easily hear [his] cries for help, would come and intervene and stop the brutal assault on him." Prop. Am. Compl. at 10, at ¶48. The HRT officers—John Does #14-18—and the OSI officers—John Does #11-13—"in close vicinity to [p]laintiff's cell, such that they could easily hear [his] cries for help, also failed to intervene[.]" Id. at 10, ¶¶50-51.

Following this incident, Mahan, McDonald, and John Doe #19 "individually and collectively filed a misbehavior report against [p]laintiff in which they deliberately falsified the facts related to the gang assault they perpetrated against [p]laintiff, claiming it was the [p]laintiff that attacked the [d]efendants." Prop. Am. Compl. at 10, ¶54. "This misbehavior report and the falsified facts contained therein were manufactured by [Mahan, McDonald, and John Doe #19], for the express purpose of protecting themselves and one another from culpability and accountability for the violent beating[.]" Id. at 11, ¶55. "At adjudication of this misbehavior report it was determined that the claims made therein ... were not credible, and were without merit, and the misbehavior report was, on summary judgment, dismissed ... in its entirety without prejudice." Id. at 11, ¶56.

After this first attack, Mahan "physically removed plaintiff from the cell and handed him off to" LaFountain. Prop. Am. Compl. at 12, ¶61. LaFountain, along with John Does #7-10, "escorted [p]laintiff ... to the facility hospital." Id. at 12, ¶62. Upon plaintiff's entrance to the hospital, Raimo led plaintiff, LaFountain, and John Does #7-10, into an examination room. See id. at 12, ¶63. One of the officers [14] closed the door to the examination room, "and by this affirmative action, prevented any medical service providers from entering the room to attend to [p]laintiff's serious injuries, demonstrating blatant deliberate indifference to [his] serious medical needs." Id. Raimo, LaFountain, and John Does #7-10 proceeded to "viciously beat the already seriously injured [p]laintiff." Id. at 12, ¶65. Specifically, "Raimo attempted to kill [p]laintiff by grabbing [his] throat and squeezing his wind pipe ... while he punched, with a closed fist and with great force, repeatedly, [p]laintiff's solar-plexus." Id. at 12, ¶65. LaFountain and John Does #7-10, "individually and collectively, threw [p]laintiff on the floor and while [p]laintiff had his hands cuffed behind his back, ... beat [him] in the face, about the head, on his torso, arms and legs, with closed fists, and [ ] kicked and stomped him with combat boots[.]" Id. at 12-13, ¶66. During this attack, "as [p]laintiff lay on the floor," he saw John Doe #19 and John Doe #20 "each in turn look through the window of [the] examination room ... while [p]laintiff was being beaten by" Raimo, LaFountain, and John Does #7-10. Id. at 13, ¶69. John Doe #19 and John Doe #20 "clearly and plainly witnessed the violations of [p]laintiff's constitutional rights and failed to intervene" and instead "just walked away." Id. at 13, ¶70.

[14]     Plaintiff does not specify which officer closed the door. See Prop. Am. Compl. at 12, ¶63.

**\*11** On June 29, 2022, plaintiff filed a grievance with Alexandria Cutler related to the aforementioned incidents. See Prop. Am. Compl. at 15, ¶84. However, "[t]here is an institutional work-place culture at [Great Meadow C.F.], in which employees of all ranks, whether uniformed or civilian, protect themselves, and each other, from accountability when one or more employee engages in malfeasance, unlawful conduct, or conduct that violates the constitutional rights of others." Id. at 14, ¶78. "Cutler was, and is, a member of the aforementioned culture and engaged in its customs, practices, usages, and traditions when she, deliberately and with malice of forethought, failed to assign a grievance number to [the] timely submitted grievance" and she "failed to log said grievance into the official facility grievance record keeping system[.]" Id. at 15, ¶82. Cutler intentionally made plaintiff's grievance "disappear" and "effectively thwarted [p]laintiff's rights to access to the courts and [his] rights to seek redress in the court." Id. at 15, ¶¶83, 87.

2024 WL 6935161

"[The] State of New York, Dennis W. Bradford, and Armand S. Caringi knew of the danger [posed] to [p]laintiff, yet] failed to take action to prevent the unlawful and unconstitutional acts committed against [p]laintiff[.]" Prop. Am. Compl. at 11, ¶57. Specifically, "Dennis W. Bradford and Armand S. Caringi personally caused [plaintiff] injuries by being deliberately or consciously indifferent to the rights of others in failing to properly recruit, screen, hire, supervise, and train their subordinate employees[,]" which "were the proximate cause of the constitutional injuries suffered by [p]laintiff[.]" Id. at 11, ¶¶58-59; see also id. at 14, ¶¶76-77. The State of New York "engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training and supervising its employees that was the moving force behind the violation of [plaintiff]'s rights[.]" Id. at 23, ¶125. Additionally, DOCCS "customs, policies, usages, practices, procedures and rules" led to the violation of plaintiff's rights. Id. at 23, ¶124.

In addition to realleging his Eighth Amendment excessive force and failure-to-intervene claims that survived section 1915 review of his original complaint, plaintiff asserts that his Fourth, [15] Fifth, [16] Sixth, [17] Eighth, and Fourteenth [18] Amendment rights were violated by the State of New York, DOCCS, Bradford, Caringi, Raimo, Cutler, Mahan, John Doe #2, McDonald, LaFrance, Mason, LaFountain, and John Does #7-20. See Prop. Am. Compl. at 18, ¶94.

[15]   Plaintiff specifically asserts that defendants violated his Fourth Amendment rights "not to be subject to illegal search and seizure through the use of excessive force" and the "fail[ure] to intervene." Prop. Am. Compl. at 19, ¶100; 20, ¶110; 24, ¶136; 26, ¶146. However, plaintiff alleges no facts to support an unlawful search and seizure claim. See, e.g., Hudson v. Palmer, 468 U.S. 517, 526 (1984) ("[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."). Moreover, as defendants point out, "post-conviction excessive force claims are analyzed under the Eighth Amendment." Dkt. No. 48 at 2 (citing Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)) ("After conviction, the Eighth Amendment 'serves as the primary source of substantive protection ... in cases ... where the deliberate use of force is challenged as excessive and unjustified.' ") (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)). Accordingly, in light of special solicitude, the Court will analyze plaintiff's excessive force and failure-to-intervene claims as if brought under the Eighth Amendment. See discussion infra Subsection IV.C.3.a.

[16]   Plaintiff does not specify how his rights were violated under the Fifth Amendment, and any such claim is not apparent from plaintiff's allegations in his proposed amended complaint. See, e.g., Lefkowitz v. Turley, 414 U.S. 70, 77 (1973) ("The [Fifth] Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding ... where the answers might incriminate him in future criminal proceedings"). Thus, it is recommended that any Fifth Amendment claim be dismissed as futile.

[17]   Plaintiff alleges that Cutler violated the Sixth Amendment by denying him "access to the Courts and to exercise [his] Right to redress." Prop. Am. Compl. at 29, ¶165. However, such a claim is guided by the First Amendment, not the Sixth. See Bourdon v. Loughren, 386 F.3d 88, 95 (2d Cir. 2004) ("[T]he right of access to the courts is grounded not in the Sixth Amendment but in various other constitutional provisions[.]"); see, e.g., Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 741 (1983) ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."). Accordingly, the undersigned will analyze plaintiff's access to courts claim under the First Amendment. See discussion infra Subsection IV.C.3.c.

[18]   To the extent that plaintiff seeks to bring a Fourteenth Amendment claim against Raimo, Mahan, John Doe #2, McDonald, LaFrance, Mason, LaFountain, and John Does #7-20, for their "excessive use of force" and "failure to intervene," such claims will be analyzed under the Eighth Amendment. Prop. Am. Compl. at 20, 21, 25, 27; see Kingsley v. Hendrickson, 576 U.S. 389, 400 (2015) ("[E]xcessive force claims [that are] brought by convicted prisoners [are governed by the] Eighth Amendment's Cruel and Unusual Punishment Clause" as opposed to excessive force "claims brought by pretrial detainees[, which are governed by] the Fourteenth Amendment's Due Process Clause."); see also discussion infra Subsection IV.C.3.a.

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)

2024 WL 6935161

### C. Analysis

#### 1. N.D.N.Y. Local Rules

**\*12**  Defendants assert that "[p]laintiff has not complied with [the] requirements [of the Local Rules,] and his Motion to Amend should be denied." Dkt. No. 48 at 2. Specifically, defendants contend that plaintiff failed "to include a memorandum of law, a supporting affidavit, or a Notice of Motion relative to his proposed Amended Complaint" and failed "to attach an unsigned copy of the proposed amended pleading to [his] motion papers." Id.

N.D.N.Y. Local Rule 7.1 provides that "all motions and opposition to motions require a memorandum of law, supporting affidavit when necessary to establish and provide factual and procedural background relevant to the motion, and proof of service on all the parties." N.D.N.Y. L.R. 7.1(b). Additionally, Local Rule 15.1 provides that "[a] party moving to amend a pleading ... must attach an unsigned copy of the proposed amended pleading to its motion papers." N.D.N.Y. L.R. 15.1(a); see also Haner v. Cnty. of Niagara, No. 19-CV-754 (LJV/MJP), 2021 WL 958448, at \*1 (W.D.N.Y. Mar. 15, 2021) ("In order to allow the court to adequately evaluate the proposed amendments, the Local Rules require the movant seeking to 'amend or supplement a pleading [to] attach an unsigned copy of the proposed amended pleading as an exhibit to the motion.' ") (quoting N.D.N.Y. L.R. 15.1(a)). The Local Rules are not "empty formalities," and this Court has denied a party's motion to amend based on the party's failure to comply with Local Rule 7.1 and 15.1. Kilmer v. Flocar, Inc., 212 F.R.D. 66, 69 (N.D.N.Y. 2002); see, e.g., Feliz v. Johnson, No. 9:17-CV-1294 (DNH/ATB), 2019 WL 3491232, at \*3 (N.D.N.Y. Aug. 1, 2019) (denying the pro se plaintiff's motion to amend where the plaintiff failed to comply with Local Rule 7.1, "which requires a party moving to amend to attach an unsigned copy of the proposed amended pleading to its motion papers"); see also Neroni v. Zayas, No. 3:13-CV-0127 (LEK/DEP), 2014 WL 1311560, at \*11-12 (N.D.N.Y. Mar. 31, 2014); Cusamano v. Sobek, 604 F. Supp. 2d 416, 426-27 & n.4 (N.D.N.Y. 2009) ("As has often been recognized by both the Supreme Court and Second Circuit, even pro se litigants must obey a district court's procedural rules.") (collecting cases). "However, it is well-established that pro se plaintiffs are 'entitled to certain latitude[.]' " McAdoo v. Jagiello, No. 9:10-CV-355, 2011 WL 1577236, at \*2 (N.D.N.Y. Apr. 26, 2011) (quoting Jemzura v. Pub. Serv. Comm'n, 961 F. Supp. 406, 415 (N.D.N.Y. 1997), and citing Murray v. Goord, 668 F. Supp. 2d 344, 353 (N.D.N.Y. 2009)).

The undersigned recognizes that plaintiff's motion to amend does not fully comply with the Local Rules, as he "failed to include a memorandum of law, a supporting affidavit, or a Notice of Motion relative to his proposed Amended Complaint." Dkt. No. 48 at 2 (citing Dkt. No. 43 and Prop. Am. Compl.). Moreover, plaintiff attaches only a signed copy of his proposed amended pleading and not an unsigned copy. See Prop. Am. Compl. at 30. However, in light of special solicitude, and because plaintiff's failure to comply with the Local Rules did not result in any appreciable harm or prejudice to defendants, plaintiff's motion will be considered. The Court reminds plaintiff that he must comply with the Local Rules of Practice for this Court. See Barnes v. Annucci, No. 9:19-CV-0109 (TJM/ATB), 2019 WL 1512799, at \*20 n.16 (N.D.N.Y. Apr. 8, 2019) (accepting the pro se plaintiff's motion to amend where he failed to comply with the Local Rules, but warning "that any further requests for leave to amend his complaint must comply with ... the Local Rules [or] will be summarily denied").

#### 2. Undue Delay, Bad Faith, and Undue Prejudice

**\*13**  In general, "permission to amend should be freely granted." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). However, courts may deny a party's motion for leave to amend a pleading "where the motion is made after an inordinate delay." Id. "When a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect and delay." Id. (citations omitted). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981) (citations omitted).

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 362 of 397

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)
2024 WL 6935161

Here, plaintiff filed his motion to amend more than ten months after he filed his original complaint. See Compl. at 14 (filed on Feb. 3, 2023); see also Prop. Am. Compl. at 30 (filed on Dec. 8, 2023). "Courts in this Circuit have found that similar and even longer delays are insufficient to warrant denial of leave to amend." Nat'l Rifle Ass'n of Am. v. Cuomo, 480 F. Supp. 3d 404, 413 (N.D.N.Y. Aug. 14, 2020) (citing Middle Atlantic Utils. Co. v. S.M.W. Dev. Corp., 392 F.2d 380, 384 (2d Cir. 1968) (holding that a three-year delay from the filing of the initial complaint was a factor to be considered but, in the absence of bad faith or prejudice to the opposing party, the delay alone was insufficient to deny relief), and Catapano v. Western Airlines, Inc., 105 F.R.D. 621, 623 (E.D.N.Y. 1985) (stating that a period of one year between the plaintiff's filing of the original complaint and the plaintiff's motion to amend is not enough to constitute undue delay)), aff'd in part, appeal dismissed in part sub nom. Nat'l Rifle Ass'n of Am. v. Hochul, No. 20-3187-CV, 2021 WL 5313713 (2d Cir. Nov. 16, 2021). Although plaintiff did not proffer an explanation for his delay, there is no evidence of bad faith on the current record. See generally Prop. Am. Compl. Moreover, defendants have not asserted any undue prejudice, [19] and "the Court is unable to glean any significant or undue prejudice to defendants by the untimely filing of the proposed Amended Complaint." Cunningham v. Lupis, No. 3:21-CV-00273 (SALM), 2022 WL 136463, at *2 (D. Conn. Jan. 14, 2022). "Accordingly, these factors do not weigh against granting plaintiff's motion [to amend his complaint]." Id.

[19]     The undersigned notes that this proceeding is still in its early stages and discovery has not yet commenced; thus, there is no ascertainable prejudice to defendants if plaintiff's motion to amend is granted. See Kirkland-Hudson v. Mount Vernon City Sch. Dist., No. 21-CV-695 (KMK), 2022 WL 1555606, at *2 (S.D.N.Y. May 16, 2022) ("Undue prejudice speaks to whether the amendment will require the opposing party to expend significant resources in discovery and whether resolution of the dispute will be delayed.") (internal quotation marks and citations omitted); see also McGrier v. Capitol Cardiology, No. 20-CV-1044 (LEK/DJS), 2021 WL 3552524, at *2 (N.D.N.Y. Aug. 11, 2021) (finding no prejudicial effect when "relatively little time and expense has been devoted to discovery, motion practice, or trial preparation").

### 3. Futility

"In addition to undue delay, bad faith, and undue prejudice, a court may exercise its discretion to deny a party's motion to amend a pleading when the proposed amendment would be futile." Am. Med. Ass'n v. United Healthcare Corp., No. 00-CV-2800 (LMM), 2006 WL 3833440, at *7 (S.D.N.Y. Dec. 29, 2006) (citing Foman, 371 U.S. at 182). An amendment is futile if the proposed claim could not survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citing Dougherty v. North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)). To avoid dismissal, the proposed amendment must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If the underlying facts or circumstances relied upon by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits. See U.S. ex rel. Mar. Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi., 889 F.2d 1248, 1254 (2d Cir. 1989).

*14 Construed liberally, plaintiff's proposed amended complaint asserts the following claims against the following defendants: (1) Eighth Amendment excessive force claims against Mahan, John Doe #2, McDonald, LaFrance, Mason, Raimo, LaFountain, and John Does #7-10; (2) Eighth Amendment failure-to-intervene claims against LaFountain, and John Does #7-20; (3) Eighth Amendment medical indifference claims against Raimo, LaFountain, and John Does #7-10; (4) Fourteenth Amendment equal protection claims against Mahan, John Doe #2, McDonald, LaFrance, Mason, Raimo, LaFountain, and John Does #7-20; (5) Fourteenth Amendment due process claims against Mahan, McDonald, and John Doe #19; (6) First Amendment access to courts claim against Cutler; (7) claims against the State of New York and DOCCS; and, (8) claims against Caringi and Bradford. See Prop. Am. Compl. at 1-30.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 363 of 397

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)
2024 WL 6935161

### a. Eighth Amendment Claims

Upon section 1915 review of plaintiff's original complaint, this Court determined that plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against Mahan, McDonald, Mason, Raimo, LaFountain, and John Does #1-3 survived sua sponte review. See Dkt. No. 7 at 14. Plaintiff now, in his proposed amended complaint, seeks to add more details about the alleged June 21, 2022, incidents, as well as to add new defendants. See generally Prop. Am. Compl.; see also Dkt. No. 43 at 6-9.

### i. Excessive Force

"The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated 'contemporary standards of decency.' " Lewis v. Stanton, No. 9:13-CV-1172 (LEK/TWD), 2014 WL 12992759, at *2 (N.D.N.Y. Dec. 31, 2014) (quoting Blyden v. Mancusi, 186 F.3d 252, 262-63 (2d Cir. 1999)). Plaintiff's excessive force allegations against Mahan, John Doe #2, McDonald, LaFrance, Mason, Raimo, LaFountain, and John Does #7-10 are nearly identical to the allegations set forth in the original complaint. Compare Compl. at 10-13, with Prop. Am. Compl. at 6-13. To the extent that plaintiff's allegations include new defendants, including the John Doe defendants, "these allegations are sufficiently plead and arise out of the same set of facts and circumstances involving [p]laintiff's [original excessive force claims], and will involve common questions of law and fact." Zielinski v. Annucci, No. 9:17-CV-1042 (DNH/TWD), 2019 WL 2870337, at *8 (N.D.N.Y. Mar. 19, 2019), report and recommendation adopted, 2019 WL 2869608 (N.D.N.Y. July 3, 2019); see FED. R. CIV. P. 20(a)(2) (permitting joinder of defendants if "any right to relief is asserted against them ... arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action").

Therefore, it is recommended that plaintiff's motion to amend be granted with respect to his Eighth Amendment excessive force claims against Mahan, John Doe #2, McDonald, LaFrance, Mason, Raimo, LaFountain, and John Does #7-10.

### ii. Failure to Intervene

In addition to the persons directly involved in the use of force, "[l]aw enforcement officials can be held liable under [section] 1983 for not intervening in a situation where excessive force is being used by another officer." Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988)).

During section 1915 review, this Court permitted plaintiff's failure-to-intervene claims against Mahan, McDonald, Mason, LaFountain, Raimo, and John Does #1-3 to continue. See Dkt. No. 7 at 9. However, the Court also determined that plaintiff failed to allege "facts suggesting that [some of the John Doe] defendants were personally involved in the alleged assault or that [they] had a realistic opportunity to prevent any assault." Id. at 9-10. The Court specifically noted that "[a]llegations that 'defendants' 'did nothing,' without specifying that any particular individual acted with deliberate indifference, do not meet pleading requirements." Id. (citing Lawson v. Rusin, No. 08-CV-321 (JS/WDW), 2008 WL 1902218, at *2 (E.D.N.Y. Apr. 25, 2008) (explaining that "lumping all Defendants ... together without specifying what actions were taken, and by whom, to violate his rights" was insufficient to meet pleading requirements)).

 *15 Plaintiff, in his proposed amended complaint, seeks to renew his failure-to-intervene allegations. See Prop. Am. Compl. at 9-10, 13. Plaintiff claims that "[d]uring the entirety of the [first] assault[,]" he "was screaming at the top of his lungs ... in hopes that [LaFountain and John Does #7-10] would come and intervene and stop the brutal assault on him." Id. at 9-10, ¶48. Plaintiff asserts that LaFountain and John Does #7-10 "remained outside of [plaintiff's] cell during the attack" and "could easily see [his] constitutional rights being violated" and "could easily hear [his] cries for help." Id. Plaintiff further contends that John Does

#11-18 were "in close vicinity to [his] cell, such that they could easily hear [his] cries for help" but they "failed to intervene[.]" Id. at 10, ¶¶50-51. Plaintiff additionally claims that, as he was laying on the ground during the second assault, he saw John Doe #19 and John Doe #20 "each in turn look through the window of [the] examination room ... while [p]laintiff was being beaten by [Raimo, LaFountain, and John Does #7-10]." Id. at 13, ¶69. Plaintiff alleges that John Does #19-20 "clearly and plainly witnessed the violations of [his] constitutional rights and failed to intervene[; t]hey just walked away." Id. at 13, ¶70.

Plaintiff's proposed amended complaint alleges sufficient facts to require a response from defendants LaFountain, John Does #7-10, and John Does #19-20, to plaintiff's failure-to-intervene claims against them, and it is, therefore, recommended that the motion to amend be granted in part as to these claims. However, plaintiff alleges no facts to plausibly suggest that John Does #11-18 were actually present during the alleged use of excessive force by Mahan, John Doe #2, McDonald, LaFrance, and Mason, and "therefore there is nothing to plausibly suggest that these defendants could have intervened to stop the alleged assault." Lewis, 2014 WL 12992759, at *3. Plaintiff only states that, during the attack, John Does #11-13 were "the OSI officers in close vicinity to [his] cell" and John Does #14-18 were the "HRT officers also in close vicinity to [his] cell" "such that they could easily hear [his] cries for help" but failed to intervene. Prop. Am. Compl. at 10, ¶¶50-51; see Dean v. New York City, No. 15-CV-8825 (LAK/KNF), 2017 WL 3670036, at *4 (S.D.N.Y. July 6, 2017) (denying as futile leave to amend to add failure-to-intervene claim against the defendant where the proposed amended complaint was "devoid of any factual allegations against [the defendant], such as, for example, where [the defendant] was located and what she was doing when [another correctional officer] pepper sprayed the plaintiff's face"). Plaintiff does not allege that John Does #11-18 "remained outside" his cell during the attack, but instead vaguely asserts that they were in "close vicinity." Prop. Am. Compl. at 9-10. Plaintiff does not define the "close vicinity" or otherwise specify how these officers were "in a position to intervene." Id.; Gonzalez v. Waterbury Police Dept., 199 F. Supp. 3d 616, 623 (D. Conn. 2016) ("in order to proceed under a theory that the defendants ... failed to intervene in another officer's use of excessive force, a plaintiff must establish, at a minimum, the particular defendant was in a position to intervene" and "an officer may not be held liable if there is a dearth of evidence with respect to whether the officer was in a position to intervene"); see Conroy v. Caron, 275 F. Supp. 3d 328, 354 (D. Conn. 2017) ("An officer's mere presence at the scene is not enough to establish liability for a failure to intervene.") (citing Gonzalez, 199 F. Supp. 3d at 623). "Th[is] proposed amendment would not withstand a motion to dismiss as it contains conclusory and vague general allegations against [John Does #11-18] and is therefore futile." Zielinski, 2019 WL 2870337, at *10. Thus, it is recommended that plaintiff's motion to amend be denied in part regarding his failure-to-intervene claims against John Does #11-18.

### iii. Deliberate Medical Indifference

The Eighth Amendment's prohibition against cruel and unusual punishment also establishes "the government's obligation to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103 (1976). Similar to an excessive force claim, a claim alleging that prison officials have violated this constitutional right must satisfy both objective and subjective requirements. See Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). To satisfy the objective requirement, the alleged deprivation must be "sufficiently serious." Id.; see also Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006) ("[T]he objective test asks whether the inadequacy in medical care is sufficiently serious."). To satisfy the subjective requirement "[i]n medical-treatment cases ..., the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." Salahuddin, 467 F.3d at 280. "Deliberate indifference," in a constitutional sense, "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Id.; see also Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

**\*16** Here, in his proposed amended complaint, plaintiff alleges that, when he, Raimo, LaFountain, and John Does #7-10 were inside the examination room, "one of these [d]efendants closed the door and by this affirmative action, prevented any medical service providers from entering the room to attend to [p]laintiff's serious injuries, demonstrating blatant deliberate indifference to [his] serious medical needs." Prop. Am. Compl. at 12, ¶63. The Court acknowledges that plaintiff's proposed

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 365 of 397

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)

2024 WL 6935161

amended complaint generally addresses both the objective and subjective requirements for a medical indifference claim. Cf. Smith v. Huggler, No. 9:20-CV-1435 (GTS/CFH), 2022 WL 1420848, at *3 (N.D.N.Y. May 5, 2022) (denying the plaintiff's motion to amend where his "allegations neither allege[d] that the failure to allow [him] to receive medication was sufficiently serious or that [the] defendant['s] interference amounted to deliberate indifference"). However, plaintiff does not explain how closing the door prevented him from accessing medical treatment. [20] Nor does plaintiff explain how closing the door "needlessly prolonged" or "caused extreme pain or exacerbated" his injuries. Ferguson v. Cai, No. 11-CV-6181 (PAE), 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) ("Where temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in this Circuit, they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness.") (citing Salahuddin, 467 F.3d at 281); see Smolen v. Wesley, No. 16-CV-2417 (KMK), 2019 WL 4727311, at *8 (S.D.N.Y. Sept. 25, 2019) (dismissing the plaintiff's deliberate medical indifference claim because the plaintiff's injuries, including an arm wound, a broken finger, and general pain following an assault, did not pose a "substantial risk of serious harm" because it "d[id] not produce death, degeneration, or extreme pain") (citing Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001)).

[20]    As this Court previously noted during section 1915 review, plaintiff was eventually treated by a physician's assistant, who ordered X-rays and CAT scans. See Dkt. No. 7 at 6; see also Melvin v. Cnty. of Westchester, No. 14-CV-2995 (KMK), 2016 WL 1254394, at *7 (S.D.N.Y. Mar. 29, 2016) ("Indeed, treatment of a prisoner's medical condition generally defeats a claim of deliberate indifference.") (internal quotation marks and citations omitted).

Moreover, plaintiff fails to specify which defendant took the "affirmative action" and "closed the door" to the examination room. Prop. Am. Compl. at 12, ¶63. Plaintiff also does not explain, that if one the defendants closed the door, how the rest of the defendants in the room exhibited deliberate medical indifference. See Leneau v. Ponte, No. 16-CV-776 (GHW), 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) ("[C]omplaints that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.") (internal quotation marks and citations omitted). "[A]s with all claims under § 1983," a prisoner seeking to prove an Eighth Amendment claim for deliberate indifference to his serious medical needs "must establish the defendant's personal involvement in the alleged constitutional deprivation." Bell v. Arnone, 455 F. Supp. 2d 232, 235 (W.D.N.Y. 2006). Allegations that "one of [t]hese defendants" violated plaintiff's constitutional rights, without specifying that any particular individual acted with deliberate indifference, does not establish personal involvement and fails to meet pleading requirements. Prop. Am. Compl. at 12, ¶63; see Burrell v. Annucci, No. 9:22-CV-0701 (GTS/ATB), 2022 WL 4618737, at *7 (N.D.N.Y. Sept. 30, 2022) (dismissing the plaintiff's medical indifference claim on section 1915 review where the plaintiff "allege[d] that [the] defendants disregarded protocols without specifying that any particular individual acted with deliberate indifference") (internal quotation marks and citations omitted); see also Taranto v. Putnam Cnty., No. 21-CV-2455 (KMK), 2023 WL 6318280, at *24 (S.D.N.Y. Sept. 28, 2023) ("It is unclear from [the p]laintiffs' pleadings which [of the d]efendants prevented [the plaintiff] from receiving proper medical attention[, as the plaintiff has] not provided a 'plausible factual basis to distinguish the conduct of each of the defendants.' ") (quoting Bardwil Indus. Inc. v. Kennedy, No. 19-CV-8211 (NRB), 2020 WL 2748248, at *3 (S.D.N.Y. May 27, 2020)).

Thus, it is recommended that plaintiff's motion to amend, insofar as he seeks to add Eighth Amendment medical indifference claims against Raimo, LaFountain, and John Does #7-10, be denied.

### b. Fourteenth Amendment Claims

### i. Equal Protection

*17    The Equal Protection Clause provides that "no State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To state an equal protection claim, a plaintiff must allege facts showing that the plaintiff was treated differently from similarly-situated individuals and that the reason for the

2024 WL 6935161

different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000) (quoting LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980)). "Where a plaintiff asserting an equal protection cause of action alleges that he or she was treated differently from similarly situated individuals on the basis of race, proof of racially discriminatory animus or purpose is required." Little v. Soulia, No. 9:19-CV-0263 (TJM/TWD), 2021 WL 4524220, at *19 (N.D.N.Y. June 16, 2021) (citing Bussey v. Phillips, 419 F. Supp. 2d 569, 581 (S.D.N.Y. 2006)), report and recommendation adopted, 2021 WL 4521048 (N.D.N.Y. Oct. 4, 2021).

"When a suspect classification is not at issue, the Equal Protection Clause still requires that individuals be treated the same as 'similarly situated' individuals." Salaam v. Stock, No. 9:19-CV-00689 (AMN/TWD), 2023 WL 3853811, at *4 (N.D.N.Y. Feb. 27, 2023) (citing Fortress Bible Church v. Feiner, 694 F.3d 208, 222 (2d Cir. 2012)), report and recommendation adopted, 2023 WL 3579770 (N.D.N.Y. May 22, 2023). "To state a valid claim under a 'class of one,' a prisoner-plaintiff must allege that: (1) he has been intentionally treated differently than other similarly situated inmates; and (2) there is no rational basis for the disparity in treatment." Morgan v. Semple, No. 3:16-CV-225 (VAB), 2020 WL 2198117, at *19 (D. Conn. May 6, 2020) (citing Holmes v. Haugen, 356 F. App'x 507, 509 (2d Cir. 2009) (summary order), and Green v. Martin, 224 F. Supp. 3d 154, 171 (D. Conn. Dec. 14, 2016)). In the Second Circuit, "class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." Clubside v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006) (citing Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005), overruled on other grounds by Appel v. Spiridon, 531 F.3d 138 (2d Cir. 2008) (per curiam)). The similarity between the plaintiff and comparators provides " 'an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose— whether personal or otherwise—is all but certain.' " Witt v. Vill. of Mamaroneck, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015) (quoting Neilson, 409 F.3d at 105), aff'd, 639 F. App'x 44 (2d Cir. 2016) (summary order). Class-of-one plaintiffs must also "prove 'intentional disparate treatment,' that is, [they must] demonstrate the decisionmakers were aware that there were other similarly-situated individuals who were treated differently." Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 143 (2d Cir. 2010) (quoting Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001)).

Here, plaintiff claims that he was discriminated against on account of his race. See Prop. Am. Compl. at 3-5. Plaintiff has alleged that McDonald targeted him—and then Mahan, John Doe #2, McDonald, LaFrance, and Mason assaulted him—for being a "white guy." Id. at 4, ¶¶17-18. Plaintiff believes that "these officers were targeting a 'white guy' for a beating, in order to counter any claims that the [search] operation being carried out [at Great Meadow C.F.] was racially motivated against African-Americans as retaliation for [a previous] incident in the [recreation] yard." Id. at 4, ¶18.

**\*18** Construing plaintiff's amended complaint liberally, his "equal protection claim would need to include allegations that [plaintiff] is similarly situated to all [white inmates at Great Meadow C.F.], but treated differently under circumstances giving rise to an inference that he was intentionally singled out by the state actors[.]" Gray v. Bansley/Anthony/Burdo LLC, No. 3:19-CV-1869 (KAD), 2020 WL 292230, at *5 (D. Conn. Jan. 21, 2020). Even assuming the truth of plaintiff's allegations that he overheard the officers saying to each other, "yeah, we're looking for a white guy ... we gotta beat up a white guy," his "complaint does not include any facts plausibly suggesting that similarly situated prisoners were treated differently than he was." Prop. Am. Compl. at 4, ¶17; Thomas v. Pingotti, No. 9:17-CV-0300 (GTS/DEP), 2017 WL 3913018, at *7 (N.D.N.Y. Sept. 6, 2017). Specifically, plaintiff "has identified and presented evidence of no other inmates with similar [characteristics] who were treated differently under the same circumstances." Shakur v. Sieminski, No. 3:07-CV-1239C, 2009 WL 2151174, at *8 (D. Conn. July 15, 2009). "Despite [plaintiff's] conclusory allegation of defendants displaying discriminatory animus against him, [plaintiff] makes no showing that defendants had purposefully treated him differently from others similarly situated inmates[.]" Walker v. LaValley, No. 9:12-CV-807, 2014 WL 4744735, at *21 (N.D.N.Y. Sept. 23, 2014) (citing Giordano, 274 F.3d at 751); see Barkai v. Nuendorf, No. 21-CV-4060 (KMK), 2023 WL 2691712, at *30 (S.D.N.Y. Mar. 29, 2023) ("[T]he Court finds that [the p]laintiff has failed to state a[n] equal protection claim, as [the p]laintiff has not identified a single comparator to plausibly establish disparate treatment.").

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)

2024 WL 6935161

"Conclusory allegations of disparate treatment or a plaintiff's personal belief of discriminatory intent are patently insufficient to plead a valid claim under the Equal Protection clause." Thomas, 2017 WL 3913018, at *7; see Vaher v. Town of Orangetown, 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013) (dismissing equal protection claim because the plaintiff did "not allege that he was treated differently from any identified individuals, let alone individuals who he claims were similarly situated to him in any respect"); see also Burrell, 2022 WL 4618737, at *9 (dismissing the plaintiff's Fourteenth Amendment equal protection claim because "the complaint d[id] not contain any allegations regarding similarly situated inmates."). "Based on the foregoing, there is no basis for the Court to plausibly infer from the allegations in the [amended] complaint that defendants [targeted] plaintiff based upon his race." Burrell, 2022 WL 4618737, at *9 (collecting cases); see Butler v. Bridgehampton Fire Dist., No. 14-CV-1429 (JS/SIL), 2015 WL 1396442, at *4-5 (E.D.N.Y. Mar. 25, 2015) (dismissing the plaintiff's equal protection claim under the selective enforcement and class of one theories because the complaint "only discuss[ed] the harmful actions [the defendants] took with respect to [the p]laintiff, but there [was] no discussion whatsoever of any similarities between [the p]laintiff and others").

To the extent plaintiff asserts that Raimo, LaFountain, and John Does #7-20 violated his rights under the Equal Protection clause of the Fourteenth Amendment, he has not alleged any facts which plausibly suggest that these defendants treated him differently from similarly-situated inmates. See Prop. Am. Compl. at 25-26; see also Page v. Lantz, No. 3:03-CV-1271 (MRK), 2007 WL 1834519, at *6 (D. Conn. June 25, 2007) (holding that equal protection claims fail as matter of law where the plaintiff did not allege that similarly-situated inmates were treated differently under similar circumstances). Therefore, plaintiff's Fourteenth Amendment equal protection claims as set forth in his proposed amended complaint are not cognizable. Thus, it is recommended that this aspect of his motion to amend be denied as futile.

### ii. Due Process

The Due Process Clause of the Fourteenth Amendment "has been interpreted as a 'protection of the individual against arbitrary action of government.' " Lombardi v. Whitman, 485 F.3d 73, 78-79 (2d Cir. 2007) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845 (1998)). "In the prison context, to establish a violation of due process, a plaintiff must demonstrate that (1) he possessed a liberty interest and (2) the defendants deprived him of that interest without sufficient process." Ruggiero v. Fischer, 807 F. App'x 70, 73 (2d Cir. 2020) (summary order) (citing Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001)). However, "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (citing Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir.1986)); see Sital v. Burgio, 592 F. Supp. 2d 355, 357 (W.D.N.Y. 2009) ("The Second Circuit has held that the issuance of false misbehavior reports against an inmate by corrections officers is insufficient on its own to establish a denial of due process[.]") (citations omitted). "An allegation that a false misbehavior report was issued in retaliation for an inmate's alleged exercise of a constitution[al] right ... cannot survive if it is phrased wholly in conclusory terms that are unsupported by detailed factual allegations." Zielinski, 2019 WL 2870337, at *9 (citing Friedl v. City of New York, 210 F.3d 79, 85-86 (2d Cir. 2000)).

**\*19** Here, plaintiff claims that Mahan, McDonald, and John Doe #19 filed a false misbehavior report against plaintiff in relation to the alleged incidents on June 21, 2022. See Prop. Am. Compl. at 10-11. However, plaintiff fails to support such claim with "detailed factual allegations." Zielinski, 2019 WL 2870337, at *9-10; see Sital, 592 F. Supp. 2d at 358 (dismissing the plaintiff's due process claim where the "plaintiff [did] not allege, nor is there any evidence, that [the] defendants issued the allegedly false reports against him out of any retaliatory motive"). Specifically, plaintiff "failed to set forth any facts to support the claim that [Mahan, McDonald, or John Doe #19] acted with retaliation" in filing their misbehavior reports. Crenshaw v. Hartman, 681 F. Supp. 2d 412, 417 (W.D.N.Y. 2010). "The proposed amendment would not withstand a motion to dismiss as it contains conclusory and vague general allegations against [Mahan, McDonald, and John Doe #19] and is therefore futile." Zielinski, 2019 WL 2870337, at *9. Accordingly, it is recommended that plaintiff's motion to amend his complaint to add a due process claim against Mahan, McDonald, and John Doe #19 be denied.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 368 of 397
Hilton v. Mahan, Not Reported in Fed. Supp. (2024)
2024 WL 6935161

### c. First Amendment Access to Courts Claim

"In a section 1983 claim alleging a cover-up by government agents, the constitutional right at issue is the First Amendment right of access to courts[.]" Tavares v. New York City Health & Hosps. Corp., No. 13-CV-3148 (PKC/MHD), 2015 WL 158863, at *7 (S.D.N.Y. Jan. 13, 2015). "[T]he theory is that the cover-up has made it impossible for the plaintiff to litigate an underlying claim, because material evidence was destroyed, for instance, or because the statute of limitations expired before the plaintiff discovered the cover-up." Id. (citing Christopher v. Harbury, 536 U.S. 403, 413-14 & n.11 (2002) (describing these claims as "backward-looking access claims")). "The Second Circuit has emphasized, however, that '[t]he viability of [such] claims is far from clear,' pointing out that the Harbury decision was careful not to endorse their validity." Id. (citing Sousa v. Marquez, 702 F.3d 124, 128 (2d Cir. 2012)).

Plaintiff contends that Cutler "deliberate[ly] obstruct[ed] ... [p]laintiff's engagement in the grievance process" regarding the alleged June 21, 2022, incident in efforts to "protect" her "fellow employees from accountability" for engaging in unconstitutional conduct. Prop Am. Compl. at 15-16. However, even assuming backward-looking access claims are actionable, plaintiff's fails. "[S]uch claims are available only if a judicial remedy was 'completely foreclosed' by the alleged cover-up." Sousa, 702 F.3d at 128 (quoting Broudy v. Mather, 460 F.3d 106, 120 (D.C. Cir. 2006)). "Plaintiff['s] claim [is] clearly not foreclosed as [he is] bringing them in this very Action and [has] not argued that any claims have been foreclosed—accordingly the claim is dismissed." Taranto, 2023 WL 6318280, at *13 (citing Tavares, 2015 WL 158863, at *7-8 (dismissing "cover-up" claim when the plaintiff "has not alleged that the DOCCS [d]efendants' actions prevented him from litigating his underlying Eighth Amendment and state-law medical malpractice claims against the City [d]efendants—indeed, he is bringing those very claims in this action.")).

To the extent plaintiff is alleging that Cutler is liable for overseeing an "unlawful[ ]" inmate grievance program, such claim also fails because "inmates have no constitutional right to file a grievance." Prop. Am. Compl. at 16; Mitchell v. New York State Dep't of Corr. Servs., No. 6:06-CV-6278 (MAT), 2012 WL 6204205, at *3 (W.D.N.Y. Dec. 12, 2012); see Tafari, 714 F. Supp. 2d at 349 ("While the First Amendment guarantees the right of access to courts, grievance programs [such as DOCCS'] were undertaken voluntarily and have no legal basis in the Constitution. Therefore these programs are not considered constitutional rights."); see also Cancel v. Goord, No. 00-CV-2042 (LMM), 2001 WL 303713, at *3-4 (S.D.N.Y. Mar. 29, 2001) ("While there is a First Amendment right of meaningful access to the courts and a right to petition the government for redress, e.g., Bill Johnson's Rest., Inc. v. NLRB, [461 U.S. 731, 741 (1983)] (finding that "the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances"), inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under [section] 1983.") (citation omitted); Torres v. Mazzuca, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (finding that because "[p]rison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment," claims that corrections officers failed to properly address the plaintiff's grievances by conducting a thorough investigation to the plaintiff's satisfaction must be dismissed).

**\*20** Moreover, the addition of Cutler as a new defendant in this case would not be proper, as plaintiff's access to courts claim does not present a question of law or fact common to the existing claims. See Amusement Indus., Inc., 2014 WL 4460393, at *13 ("[C]ourts have recognized that the addition of [new defendants and] collateral claims in amended pleadings can easily delay resolution of the case due to the need to engage in substantial additional discovery regarding the new factual contentions.") (collecting cases). Accordingly, joinder of Cutler as a new defendant would not be proper. Therefore, it is recommended that plaintiff's motion to amend to add an access to courts claim against Cutler be denied.

### d. Claims against the State of New York and DOCCS

Case 9:25-cv-00083-BKS-TWD   Document 29   Filed 01/20/26   Page 369 of 397

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)
2024 WL 6935161

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. CONST. AMEND. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); see Hans v. Louisiana, 134 U.S. 1, 10-21 (1890); see also Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Generally speaking, "[t]he Eleventh Amendment bars a damages action in federal court against a state and its officials when acting in their official capacity unless the state has waived its sovereign immunity or Congress has abrogated it." Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis., 804 F.3d 178, 193 (2d Cir. 2015); see Kentucky v. Graham, 473 U.S. 159, 169 (1985) (holding that a claim for damages against state officials in their official capacity is considered to be a claim against the State and is, therefore, barred by the Eleventh Amendment); see also Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); Severino v. Negron, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under section 1983] for money damages against state officials in their official capacities."). "State immunity extends not only to the states, but also to state agencies." Matagrano v. New York State Dep't of Corr. and Cmty. Supervision, No. 9:19-CV-00763 (BKS/DJS), 2020 WL 7338586, at *15 (N.D.N.Y. Dec. 14, 2020) (citations omitted).

Plaintiff claims that the State of New York "knew of the danger [posed] to [p]laintiff[, yet] failed to take action to prevent the unlawful and unconstitutional acts committed against [p]laintiff[.]" Prop. Am. Compl. at 11, ¶57. Plaintiff also contends that the State of New York and DOCCS "engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training and supervising its employees that was the moving force behind the violation of [plaintiff]'s rights[.]"[21] Id. at 23, ¶124-25. However, a claim that is barred by a state's sovereign immunity must be dismissed pursuant to the Eleventh Amendment for lack of subject matter jurisdiction. See Va. Off. for Prot. & Advoc. v. Stewart, 563 U.S. 247, 252 (2011) (noting that "the Eleventh Amendment ... confirm[s] the structural understanding that States entered the Union with their sovereign immunity intact, unlimited by Article III's jurisdictional grants"); see also Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55 (1996) ("For over a century [the Supreme Court has] reaffirmed that federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.") (quoting Hans, 134 U.S. at 15). Accordingly, it is recommended that plaintiff's motion to amend his complaint to add the State of New York and DOCCS, and any individual state officials acting in their official capacities, as new defendants be denied as futile.

21    Although plaintiff does not cite to Monell directly, his language regarding "policies" and "customs" may indicate that he seeks to bring these claims against the State of New York and DOCCS pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). That seminal case, however, is inapplicable here as the State of New York and DOCCS are not "municipalities." Id. at 690 n.54 (limiting holding "to local government units which are not considered part of the State for Eleventh Amendment purposes"). Moreover, Eleventh Amendment immunity would also bar such a claim. See generally Romaine v. New York, No. 9:21-CV-0127 (NAM/ML), 2022 WL 4236282, at *2 (N.D.N.Y. Sept. 14, 2022).

#### e. Claims against Bradford and Caringi

**\*21**  A section 1983 claim must allege that a defendant was "personally involved in the alleged constitutional deprivation." Littlejohn v. City of New York, 795 F.3d 297, 314 (2d Cir. 2015) (citing Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004)). Thus, "an individual cannot be held liable for damages under Section 1983 merely because he [or she] held a high position of authority, but can be held liable if he [or she] was personally involved in the alleged deprivation." Back v. Hastings on the Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004); see also Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) ("[S]upervisor liability in a Section 1983 action depends on a showing of some personal responsibility, and cannot rest on respondent superior ... [s]imilarly, proof of linkage in the prison chain of command is insufficient."). To that end, the Second Circuit has previously held that personal involvement of a supervisory defendant may be shown by evidence that:

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 370 of 397

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)

2024 WL 6935161

(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

Raspardo v. Carlone, 770 F.3d 97, 116 (2d Cir. 2014). Regardless of the basis for liability, the complaint must "allege particular facts indicating that an individual defendant was personally involved in the depravation of the plaintiff's constitutional rights; mere 'bald assertions and conclusions of law' do not suffice." Davis v. Cnty. of Nassau, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005).

Plaintiff alleges that Bradford and Caringi "personally caused [plaintiff] injuries by being deliberately or consciously indifferent to the rights of others in failing to properly recruit, screen, hire, supervise, and train their subordinate employees[,]" which "were the proximate cause of the constitutional injuries suffered by [p]laintiff[.]" Prop. Am. Compl. at 11, ¶¶58-59. However, as stated upon section 1915 review of plaintiff's original complaint, his proposed amended complaint "is devoid of any allegations which plausibly suggest that Caringi [or Bradford] ... created a policy or custom under which the assault occurred, or acted grossly negligent in supervising subordinates." Dkt. No. 7 at 11. Plaintiff's conclusory allegations that Bradford and Caringi maintained an unlawful hiring process and an inadequate supervision of employees do not suffice. See, e.g., Pettus v. Morgenthau, 554 F.3d 293, 300 (2d Cir. 2009) (holding that vague and conclusory allegations that a supervisor has failed to properly monitor the actions of subordinate employees do not suffice to establish the requisite personal involvement and support a finding of liability); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (concluding that a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement); Bridgewater v. Taylor, 832 F. Supp. 2d 337, 348 (S.D.N.Y. 2011) (determining that conclusory claims that a supervisory official has failed to provide proper training and supervision or created a policy, without facts showing personal involvement, are legally insufficient to state a claim); White v. Fischer, No. 9:09-CV-0240 (DNH/DEP), 2010 WL 624081, at *6 (N.D.N.Y. Feb. 18, 2010). Because plaintiff has not pleaded that Bradford or Caringi took any individual action with respect to the alleged constitutional violations, there is no basis for liability under section 1983. It is, therefore, recommended that plaintiff's motion to amend his complaint to add claims against Bradford and Caringi be denied.

#### 4. Plaintiff's Valentin Request

**\*22**  Plaintiff has submitted a Valentin motion, as well as an affidavit in support of his Valentin motion, requesting that this Court "assist [him] with the identification of the ... John Doe [d]efendants" named in his proposed amended complaint. Dkt. No. 43 at 3, 5. Plaintiff provides "a list of descriptions, and all additional identifying information currently available to [him] that pertain to ascertaining the true identity of the John Doe [d]efendants[.]" Id. at 5-6.

In light of the foregoing, pursuant to Valentin v. Dinkins, 121 F.3d 72 (2d. Cir. 1997) (per curiam), the undersigned recommends requesting that the New York State Attorney General's Office, through counsel for defendants Mahan, McDonald, Mason, LaFountain, and Raimo, attempt to ascertain the full names of John Doe #2, John Does #7-10, and John Does #19-20. The undersigned also recommends requesting the New York State Attorney General's Office, to the extent that it is able to identify any of the Doe defendants, provide the addresses where the defendant(s) so identified can currently be served. The New York State Attorney General's Office need not undertake to defend or indemnify these individuals at this juncture, only if and when they appear. This recommendation merely provides a means by which plaintiff may name and properly serve the defendants as instructed by the Second Circuit in Valentin.

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)

2024 WL 6935161

## V. Conclusion

**WHEREFORE**, for the reasons set forth above, it is hereby:

**RECOMMENDED**, that the Court hold an exhaustion hearing to determine if administrative remedies were available to plaintiff; and it is further

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 14) be **DENIED without prejudice**, subject to renewal upon completion of the exhaustion hearing; and it is further

**RECOMMENDED**, that plaintiff's request for perjury charges (Dkt. No. 41) be **DENIED**; and it is further

**RECOMMENDED**, that plaintiff's motion to amend (Dkt. No. 43) be **GRANTED in part** insofar as the amended complaint asserts Eighth Amendment excessive force claims against Mahan, John Doe #2, McDonald, LaFrance, Mason, Raimo, LaFountain, and John Does #7-10, as well as Eighth Amendment failure-to-intervene claims against LaFountain, John Does #7-10, and John Does #19-20; and it is further

**RECOMMENDED**, that plaintiff's motion to amend (Dkt. No. 43) otherwise be **DENIED**; and it is further

**RECOMMENDED**, that, if this Report-Recommendation and Order is adopted, the District Judge direct the Clerk to docket the proposed amended complaint (Dkt. No. 43-1) as the operative pleading in this action; and it is further

**RECOMMENDED**, that, if this Report-Recommendation and Order is adopted, the District Judge direct the Clerk to revise the docket to reflect Mahan, John Doe #2, McDonald, LaFrance, Mason, Raimo, LaFountain, John Does #7-10, and John Does #19-20 as the defendants in this action; and it is further

**RECOMMENDED**, that, if this Report-Recommendation and Order is adopted, the District Judge direct the Clerk to issue summonses and forward them, along with a copy of the amended complaint, to the United States Marshals Service for service of process on all named defendants; and it is further

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation and Order, defendants answer deadline be stayed pending the outcome of the exhaustion hearing, and reset upon its completion; and it is

**RECOMMENDED**, that, if this Report-Recommendation and Order is adopted, the District Judge direct the New York State Attorney General's Office to make all reasonable efforts to identify the John Doe defendants and produce the information specified above regarding the identities of the Doe defendants within thirty (30) days of the filing date of the District Judge's Decision and Order; and it is further

**\*23 ORDERED**, that the Clerk amend the case caption to reflect Justin Mahan as the lead defendant; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT**

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)

2024 WL 6935161

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 372 of 397

**WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993) (citing <u>Small v. Secretary of Health and Human Servs.</u>, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72. [22]

[22]    If you are proceeding <u>pro se</u> and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. <u>See</u> FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. <u>See id.</u> § 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 6935161

---

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 373 of 397

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)

2024 WL 1242263

2024 WL 1242263
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James D. HILTON, Plaintiff,

v.

Justin MAHAN, et al., Defendants.

9:23-CV-209 (MAD/CFH)
|
Signed March 22, 2024

**Attorneys and Law Firms**

JAMES D. HILTON, 16-A-4943, Great Meadow Correctional Facility, Box 51, Comstock, New York 12821, Plaintiff pro se.

OLIVIA R. COX, AAG, OFFICE OF THE NEW YORK, STATE ATTORNEY GENERAL, The Capitol, Albany, New York 12224, Attorneys for Defendants.

## MEMORANDUM-DECISION AND ORDER

Mae A. D'Agostino, United States District Judge:

## I. INTRODUCTION

**\*1** Plaintiff, an incarcerated individual in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action on February 3, 2023, pursuant to 42 U.S.C. § 1983, alleging that Defendants Justin Mahan, Andrew McDonald, Bryan Mason, Matthew LaFountain, Eugene Raimo, Jr., John Does #1-10, and Jane Does #1-2, violated his constitutional rights under the Eighth Amendment. *See* Dkt. No. 1. Generally, Plaintiff's claims relate to a use of force incident that occurred on June 21, 2022, when Defendants and other officers entered Plaintiff's cell and allegedly assaulted him. Upon initial review, the Court determined that Plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against Defendants Mahan, McDonald, Mason, LaFountain, Ramos, and John Does #1-3 survived *sua sponte* review. *See* Dkt. No. 7 at 9.

On May 24, 2023, Defendants moved for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies. *See* Dkt. No. 14. Plaintiff opposed the motion and subsequently filed a letter requesting that perjury charges be brought against Alexandria Cutler, the Inmate Grievance Program ("IGP") Supervisor at Great Meadow Correctional Facility ("Great Meadow C.F."). *See* Dkt. No. 41. On December 8, 2023, Plaintiff also filed a motion to amend his complaint, as well as a request pursuant to *Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997), requesting assistance in identifying the John and Jane Doe defendants. *See* Dkt. Nos. 43 & 43-1. Also, on August 14, 2023, Plaintiff filed a document which has been labeled as a motion for a preliminary injunction, in which Plaintiff generally claims about "mail tampering" that has been occurring at Great Meadow C.F. *See* Dkt. No. 32.

In a February 29, 2024 Report-Recommendation and Order, Magistrate Judge Hummel recommended that Defendants' motion for summary judgment be denied, Plaintiff's request for perjury charges be denied, and Plaintiff's motion to amend be granted in part and denied in part. *See* Dkt. No. 49. Neither party objected to Magistrate Judge Hummel's Report-Recommendation and Order.

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)

2024 WL 1242263

## II. BACKGROUND

For a complete recitation of the relevant background, the Court refers the parties to Magistrate Judge Hummel's February 29, 2024 Report-Recommendation and Order.

## III. DISCUSSION

**A. Standard of Review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he] presented to the magistrate judge," the court reviews those recommendations for clear error only. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

 **\*2**  A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36–37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56 (c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quotation omitted). "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252 (emphasis and alterations in original)). "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' ... and they 'may not rely on conclusory allegations or unsubstantiated speculation.' " *Id.* (quotations omitted).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has held that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment." *Kotler v. Fischer*, No. 9:09-CV-01443, 2012 WL 929823, *12 (N.D.N.Y. Mar. 19, 2012) (citations omitted). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence is not

sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B. Defendants' Motion for Summary Judgment**

In their motion for summary judgment, Defendants contend that this action should be dismissed because Plaintiff failed to exhaust his administrative remedies. *See* Dkt. No. 14-10 at 8-9. Specifically, Defendants allege that Plaintiff never filed a timely grievance in relation to his allegations. *See id.* at 8. Defendants acknowledge that Plaintiff filed a separate grievance on August 24, 2022, alleging that he attempted to file a grievance dated June 29, 2022 related to the allegations in this lawsuit, but he allegedly failed to receive a response. *See id.* This separate August 24, 2022 grievance was deemed untimely and returned to Plaintiff, since it was received past the twenty-one and forty-five day deadlines set forth in Directive 4040. *See id.* Defendants contend that had Plaintiff truly filed, or attempted to file, a grievance on June 29, 2022 related to the June 21, 2022 allegations, a Superintendent's response would have been due on or before July 24, 2022. *See id.* Defendants argue that after that date, had Plaintiff not received a response, he would be obligated to appeal the non-response to the CORC to properly exhaust his administrative remedies, yet Plaintiff filed no such appeal. *See id.* at 8-9.

**\*3** In response, Plaintiff contends that he fully exhausted his administrative remedies because he filed a grievance related to the alleged June 21, 2022 incident on June 29, 2022. *See* Dkt. No. 1 at 5. Plaintiff specifically alleges that he submitted the grievance, "while being housed in the [SHU]," "to the officer in charge of disbursing any and all correspondence to their designated destinations," but he never received a response. *See* Dkt. No. 22 at 15. Plaintiff claims that the "IGRC never responded to [his] original grievance," so he did not "have to file an appeal." *Id.* at 17.

As Magistrate Judge Hummel correctly determined, however, Plaintiff was required appeal the non-response by the IGRC to satisfy the exhaustion requirement. To satisfy the PLRA's exhaustion requirement, "any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can – and must – be appealed to the next level, including [the] CORC." *Murray v. Palmer*, No. 9:03-cv-1010, 2010 WL 1235591, \*2 (N.D.N.Y. Mar. 31, 2010); *see also* 7 N.Y.C.R.R. § 701.6(g). Therefore, accepting as true for purposes of this motion that Plaintiff timely filed a complaint with the IGRC, he still failed to timely file an appeal of this grievance to the CORC when he failed to receive a response. Without filing such an appeal, Plaintiff has not satisfied the PLRA's exhaustion requirements. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Since Defendants met their burden of demonstrating that a grievance procedure existed and that Plaintiff failed to exhaust administrative remedies, the Court must determine whether administrative remedies were available to Plaintiff.

As Magistrate Judge Hummel correctly noted, before the Court is "a clash of sworn statements" where "Plaintiff attested that he gave his grievance to a correction officer, ... and [Defendants] submitted sworn statements from inmate grievance program supervisors indicating that a review of their records revealed that no grievance was filed." *Hudson v. Kirkey*, No. 20-cv-581, 2021 WL 1966721, \*3 (N.D.N.Y. May 17, 2021). "To the extent that these statements are in contradiction, the Court cannot resolve this contradiction at the summary judgment stage, because the Court is prohibited from making credibility determinations." *Id.* (citation omitted).

Moreover, the Second Circuit has held that when a grievance goes unfiled and unanswered, "the process to appeal ... is prohibitively opaque, such that no inmate could actually make use of it." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 126 (2d Cir. 2016). "Following *Williams*, this Court has denied a defendant's motion for summary judgment when faced with an unanswered and unfiled grievance drafted in SHU." *Stephanski v. Allen*, No. 9:18-cv-76, 2020 WL 806331, \*8 (N.D.N.Y. Jan. 22, 2020) (citation omitted); *see also Maldonado v. Mandalaywala*, No. 9:17-cv-1303, 2020 WL 1159426, \*17 (N.D.N.Y. Feb. 12, 2020).

Accordingly, the Court finds that Magistrate Judge Hummel correctly determined that the Court must deny Defendants' motion for summary judgment at this time and "holding a hearing, at which a fact-finder can assess the credibility of witnesses and the relative weight of the evidence the parties present" to determine whether Plaintiff exhausted his administrative remedies

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 376 of 397

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)

2024 WL 1242263

or if the administrative remedies were unavailable. *See Hudson*, 2021 WL 1966721, at *4. As such, Defendants' motion for summary judgment is denied without prejudice to renew upon completion of the exhaustion hearing.

### C. Plaintiff's Motion for Perjury Charges

 **\*4**  In a letter received on November 13, 2023, Plaintiff claims that IGP Supervisor Alexandria Cutler "has perjured herself before this court" and "request[s] that [the Court] recommend charge(s) of perjury against her[.]" Dkt. No. 41 at 1. Plaintiff argues that IGP Supervisor Cutler committed the "crime of perjury" in her declaration that is attached to Defendants' motion for summary judgment by falsely statement that " 'Plaintiff never filed a facility-level grievance at Great Meadow C.F. relating to the June 21, 2022 incident at Great Meadow C.F.' " *Id.* (quoting Dkt. No. 14-5 at ¶ 17).

As Magistrate Judge Hummel correctly determined, this motion must be denied. *See* Dkt. No. 49 at 19. "[A] private citizen does not have a constitutional right to initiate or to compel the initiation of criminal proceedings against another individual." *McCrary v. Cnty. of Nassau*, 493 F. Supp. 2d 581, 591 (E.D.N.Y. 2007) (citations omitted). Since the decision whether to commence a criminal prosecution is a matter of prosecutorial discretion, which is generally not subject to judicial review, Plaintiff's motion must be denied.

### D. Letter Motion

In a letter filed on August 14, 2023, Plaintiff contends that his mail is being "tempered" with by staff at Great Meadow C.F. and the Comstock Post Office *See* Dkt. No. 32 at 1-4. Generally, Plaintiff points to discrepancies between when the Court and the Attorney General's Office receives his mail, noting that, despite the fact that he places items in the mail on the same day, the Attorney General's Office will generally receive the items several days before the Court. *See id.*

While it is not entirely clear what relief Plaintiff is seeking in this letter submission, to the extent that Plaintiff is attempting to assert that non-parties are interfering with his mail, any such request for relief must be denied. Insofar as Plaintiff seeks injunctive relief against non-parties, such relief is only available against non-parties in very limited circumstances, none of which are present here. *See Bradshaw v. Marshal*, No. 9:21-cv-826, 2021 WL 5822538, *4 (N.D.N.Y. Dec. 8, 2021) (citing cases). Additionally, Plaintiff has failed to demonstrate that any alleged mail tampering has interfered with his ability to prosecute this case, which would be fatal to a claim of denial of access to the courts. *See Jones v. Sullivan*, No. 9:19-cv-25, 2020 WL 6529236, *7 (N.D.N.Y. June 5, 2020) (citations omitted).

Accordingly, Plaintiff's letter motion is denied.

### E. Motion to Amend

Plaintiff has moved to amend his complaint. *See* Dkt. No. 43. Defendants contend that the motion should be denied in its entirety because Plaintiff failed to comply with the Local Rules and Plaintiff "fail[ed] to assert any new facts relative to the incident and attempts to bring claims that are facially defective, rendering [his] Motion to Amend futile." Dkt. No. 48 at 2.

As Magistrate Judge Hummel noted, Plaintiff's proposed amended complaint generally asserts the same facts and circumstances as those included in his original complaint, except that Plaintiff has removed some of the allegations concerning the previously-dismissed claims and terminated Defendants, added allegations to support new claims, and added new Defendants. *See* Dkt. No. 43-1. Specifically, Plaintiff proposes the following individuals and entities to be added as Defendants in this action: the State of New York, DOCCS, Dennis W. Bradford, Armand S. Caringi, Eugene Raimo, Jr., Alexandra Cutler, and John Does # 1-20. *See id.* at 2-3, 22-23; *see also* Dkt. No. 43 at 6-9.

Upon review, the Court agrees with Magistrate Judge Hummel that the motion to amend the complaint should be granted in part and denied in part. Initially, the Court notes that Magistrate Judge Hummel correctly concluded that, despite the fact that Plaintiff failed to fully comply with the Local Rules in that he failed to include a memorandum of law, affidavit, or a notice

of motion with his proposed amended complaint, given his *pro se* status, Plaintiff's motion should still be considered on the merits. *See Barnes v. Annucci*, No. 9:19-cv-109, 2019 WL 1512799, *20 n.16 (N.D.N.Y. Apr. 8, 2019). Similarly, Magistrate Judge Hummel also correctly determined that Plaintiff should not be denied leave to amend because of undue delay, bad faith, and undue prejudice. *See Nat'l Rifle Ass'n of Am. v. Cuomo*, 480 F. Supp. 3d 404, 413 (N.D.N.Y. 2020) (citations omitted).

### 1. Excessive Force

 **\*5**  As noted above, on initial review, the Court determined that Plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against Defendants Mahan, McDonald, Mason, Raimo, LaFountain, and John Does #1-3 survived *sua sponte* review. *See* Dkt. No. 7 at 14. In his proposed amended complaint, Plaintiff seeks to add more details about the alleged June 21, 2022 incidents, as well as to add new Defendants. *See* Dkt. No. 43-1. As Magistrate Judge Hummel concluded, Plaintiff's excessive force allegations against Mahan, John Doe #2, McDonald, LaFrance, Mason, Raimo, LaFountain, and John Does #7-10 are nearly identical to the allegations set forth in the original complaint. To the extent that Plaintiff's allegations include new Defendants, including the John Doe Defendants, these allegations are sufficiently pled and arise out of the same set of facts and circumstances involving Plaintiff's original excessive force claims, and will involve common questions of law and fact. *See Zielinski v. Annucci*, No. 9:17-cv-1042, 2019 WL 2870337, *8 (N.D.N.Y. Mar. 19, 2019). Therefore, Plaintiff's motion to amend is granted with respect to his Eighth Amendment excessive force claims against Defendants Mahan, John Doe #2, McDonald, LaFrance, Mason, Raimo, LaFountain, and John Does #7-10.

### 2. Failure to Intervene

As to Plaintiff's failure to intervene claim, during its initial review, the Court permitted the claim to proceed against Defendant Mahan, McDonald, Mason, LaFountain, Raimo, and John Does #1-3. *See* Dkt. No. 7 at 9. However, the Court also determined that Plaintiff failed to allege "facts suggesting that [some of the John Doe] defendants were personally involved in the alleged assault or that [they] had a realistic opportunity to prevent any assault." *Id.* at 9-10. The Court specifically noted that "[a]llegations that defendants' 'did nothing,' without specifying that any particular individual acted with deliberate indifference, do not meet pleading requirements." *Id.* (quotation omitted). In his proposed amended complaint, Plaintiff seeks to renew his failure-to-intervene allegations, including additional facts regarding individuals that were previously dismissed.

As Magistrate Judge Hummel correctly determined, Plaintiff's proposed amended complaint alleges sufficient facts to require a response from Defendants LaFountain, John Does #7-10, and John Does #19-20, to Plaintiff's failure to intervene claims; and, therefore, Plaintiff's motion to amend is granted in part as to these claims. However, Plaintiff alleges no facts to plausibly suggest that John Does #11-18 were actually present during the alleged use of excessive force and, therefore, there is nothing to plausibly suggest that these Defendants could have intervened to stop the alleged assault. *See Lewis*, 2014 WL 12992759, at *3. As such, Magistrate Judge Hummel correctly determined that Plaintiff's motion to amend should be denied in part regarding his failure-to-intervene claims against John Does #11-18.

### 3. Deliberate Medical Indifference

In his proposed amended complaint, Plaintiff alleges that when he, Raimo, LaFountain, and John Does #7-10 were inside the examination room, "one of these Defendants closed the door and by this affirmative action, prevented any medical service providers from entering the room to attend to Plaintiff's serious injuries, demonstrating blatant deliberate indifference to [his] serious medical needs." Dkt. No. 43-1 at 12. As Magistrate Judge Hummel correctly determined, Plaintiff does not explain how closing the door prevented him from accessing medical treatment and, in his original complaint, Plaintiff acknowledges that he was treated by a physician's assistant, who ordered X-rays and CAT scans. Nor does Plaintiff explain how closing the door "needlessly prolonged" or "caused extreme pain or exacerbated" his injuries. *See Ferguson v. Cai*, No. 11-cv-6181, 2012 WL 2865474, *4 (S.D.N.Y. July 12, 2012) ("Where temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in this Circuit, they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness") (citing *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Morever, Plaintiff's proposed amended complaint fails to specify which Defendant took the

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)

2024 WL 1242263

"affirmative action" and "closed the door" to the examination room. *See* Dkt. No. 43-1 at 12. Plaintiff also does not explain that, if one Defendant closed the door, how the rest of the Defendants in the room exhibited deliberate medical indifference. *See Leneau v. Ponte*, No. 16-cv-776, 2018 WL 566456, *15 (S.D.N.Y. Jan. 25, 2018). As such, the Court finds that Magistrate Judge Hummel correctly determined that Plaintiff's motion to amend to add deliberate indifference claims against Defendant Raimo, LaFountain, and John Does #7-10 must be denied.

### 4. Fourteenth Amendment Equal Protection

**\*6**  In his proposed amended complaint, Plaintiff claims that he was discriminated against on account of his race in violation of the Fourteenth Amendment Equal Protection clause. *See* Dkt. No. 43-1 at 3-5. Specifically, Plaintiff alleges that Defendant McDonald targeted him – and then Defendants Mahan, John Doe #2, McDonald, LaFrance, and Mason assaulted him – for being a "white guy." *Id.* at 4. Plaintiff believes that "these officers were targeting a 'white guy' for a beating, in order to counter any claims that the [search] operation being carried out [at Great Meadow C.F.] was racially motivated against African-Americans as retaliation for [a previous] incident in the [recreation] yard." *Id.*

As Magistrate Judge Hummel correctly determined, Plaintiff's proposed amended complaint fails to include any facts plausibly suggesting that similarly situated prisoners were treated differently than him, thereby giving rise to an inference that he was intentionally singled out by Defendants. *See Thomas v. Pingotti*, No. 9:17-cv-300, 2017 WL 3913018, *7 (N.D.N.Y. Sept. 6, 2017). Specifically, Plaintiff has failed to allege any other inmates with similar characteristics who were treated differently under the same circumstances. *See Shakur v. Sieminski*, No. 3:07-cv-1239, 2009 WL 2151174, *8 (D. Conn. July 15, 2009).

Accordingly, the Court finds that Plaintiff's motion to amend must be denied to the extent that he seeks to assert a Fourteenth Amendment Equal Protection claim against Defendant Raimo, LaFountain, and John Does #7-10.

### 5. Fourteenth Amendment Due Process

In his proposed amended complaint, Plaintiff alleges that Defendants Mahan, McDonald, and John Doe #19 field a false misbehavior report against him in relation to the alleged incidents on June 21, 2022. *See* Dkt. No. 43-1 at 10-11. As Magistrate Judge Hummel correctly determined, Plaintiff fails to support this claim with detailed factual allegations. Specifically, Plaintiff "failed to set forth any facts to support the claim that [these Defendants] acted with retaliation" in filing their misbehavior reports. *See Crenshaw v. Hartman*, 681 F. Supp. 2d 412, 417 (W.D.N.Y. 2010).

Accordingly, the Court denies Plaintiff's motion to amend his complaint to add a due process claim against Defendants Mahan, McDonald, and John Doe #19.

### 6. First Amendment Access to the Courts

In his proposed amended complaint, Plaintiff contends that IGP Supervisor Cutler "deliberate[ly] obstruct[ed] ... Plaintiff's engagement in the grievance process" regarding the alleged June 21, 2022, incident in efforts to "protect" her "fellow employees from accountability" for engaging in unconstitutional conduct. *See* Dkt. No. 43-1 at 15-16. As Magistrate Judge Hummel correctly determined, this claim is futile because "such claims are available only if a judicial remedy was 'completely foreclosed' by the alleged cover-up." *Sousa v. Marquez*, 702 F.3d 124, 128 (2d Cir. 2012) (quotation omitted). Plaintiff's claims are clearly not foreclosed as he is bringing them in this very action and he has not argued that any other claims have been foreclosed. *See Tavares v. N.Y.C. Health & Hosps. Corp.*, No. 13-cv-3148, 2015 WL 158863, *7-8 (S.D.N.Y. Jan. 13, 2015). Additionally, to the extent that Plaintiff is attempting to allege that IGP Supervisor Cutler is liable for overseeing an "unlawful" inmate grievance program, the claim also fails because "inmates have no constitutional right to file a grievance. *See Mitchell v. N.Y.S. Dep't of Corr. Servs.*, No. 6:06-cv-6278, 2012 WL 6204205, *3 (W.D.N.Y. Dec. 12, 2012). Finally, Magistrate Judge Hummel also correctly concluded that the addition of Cutler as a new defendant in this case would not be proper, as Plaintiff's access to the courts claim does not present a question of law or fact common to the existing claims.

2024 WL 1242263

**\*7** Accordingly, the Court denies Plaintiff's motion to amend insofar as he is seeking to add an access to the courts claim against IGP Supervisor Cutler.

### 7. *Claims Against New York and DOCCS*

Plaintiff has also attempted to add the State of New York and DOCCS as Defendants in this case. As Magistrate Judge Hummel correctly determined, Plaintiff's motion to amend the complaint to add DOCCS, the State of New York, and any claims against the individual Defendants in their official capacities must be denied because such claims are precluded by the Eleventh Amendment. *See Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 252 (2011); *see also Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993).

### 8. *Claims Against Bradford and Caringi*

Plaintiff alleges that Bradford and Caringi "personally caused [Plaintiff] injuries by being deliberately or consciously indifferent to the rights of others in failing to properly recruit, screen, hire, supervise, and train their subordinate employees," which "were the proximate cause of the constitutional injuries suffered by Plaintiff." Dkt. No. 43-1 at 11. However, as the Court noted in its initial review of Plaintiff's original complaint, such conclusory allegations are insufficient to plausibly allege that Caringi or Bradford created a policy or custom under which the assault occurred, or acted grossly negligent in supervising subordinates. *See Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009). Accordingly, the Court finds that Plaintiff's motion to amend must be denied insofar as he is seeking to add claims against Bradford and Caringi.

### F. *Valentin* Request

Plaintiff has submitted a request pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), requesting that the Court "assist [him] with the identification of the ... John Doe Defendants" named in the proposed amended complaint. *See* Dkt. No. 43 at 3, 5. Plaintiff's request is granted. The Court hereby requests that the New York State Attorney General's Office, through counsel for Defendants Mahan, McDonald, Mason, LaFountain, and Raimo, attempt to ascertain the full names of John Does #2, 7-10, 19-20. The Court also requests that the Attorney General's Office, to the extent that it is able to identify any of the John Doe Defendants, provide the addresses where the Defendant(s) so identified can currently be served, in accordance with *Valentin*.

### IV. CONCLUSION

After carefully reviewing Magistrate Judge Hummel's Report-Recommendation and Order, and the entire record in this matter, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 14) is **DENIED without prejudice** to renew upon completion of the exhaustion hearing; and the Court further

**ORDERS** that the Clerk of the Court shall schedule this matter for an exhaustion hearing at the parties' earliest convenience; and the Court further

**ORDERS** that Plaintiff's request for perjury charges (Dkt. No. 41) is **DENIED**; and the Court further

**ORDERS** that Plaintiff's letter motion seeking injunctive relief (Dkt. No. 32) is **DENIED**; and the Court further

**ORDERS** that Plaintiff's motion to amend the complaint (Dkt. No. 43) is **GRANTED in part and DENIED in part**; and the Court further

Hilton v. Mahan, Not Reported in Fed. Supp. (2024)
Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 380 of 397
2024 WL 1242263

**\*8  ORDERS** that Plaintiff's motion to amend is **GRANTED in part** insofar as the amended complaint asserts Eighth Amendment excessive force claims against Mahan, John Doe #2, McDonald, LaFrance, Mason, Raimo, LaFountain, and John Does #7-10, as well as Eighth Amendment failure-to-intervene claims against LaFountain, and John Does # 7-10, 19-20; and the Court further

**ORDERS** that Plaintiff's motion to amend is otherwise **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall docket the proposed amended complaint (Dkt. No. 43-1) as the operative pleading in this matter; and the Court further

**ORDERS** that the Clerk of the Court shall revise the docket to reflect that Mahan, John Doe #2, McDonald, LaFrance, Mason, Raimo, LaFountain, and John Does #7-10, 19-20 are Defendants in this matter; and the Court further

**ORDERS** that the Clerk of the Court shall issue summons and forward them, along with a copy of the amended complaint, to the United States Marshals Service for service of process on all named Defendants; and the Court further

**ORDERS** that Defendants answer deadline is **STAYED** pending the outcome of the exhaustion hearing; and the Court further

**ORDERS** that the New York State Attorney General's Office shall make all reasonable efforts to identify the John Doe Defendants within **THIRTY (30) DAYS** of the filing date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1242263

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Matthews v. Barq, Not Reported in Fed. Supp. (2019)

2019 WL 1025828

2019 WL 1025828

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Hashim MATTHEWS, Plaintiff,

v.

BARQ, et al., Defendants.

9:18-CV-0855 (TJM/CFH)

|

Signed 03/04/2019

**Attorneys and Law Firms**

HASHIM MATTHEWS, 03-A-3590, Plaintiff, pro se, Attica Correctional Facility, Box 149, Attica, NY 14011.

**DECISION AND ORDER**

Thomas J. McAvoy, Senior United States District Judge

## I. INTRODUCTION

 **\*1** The Clerk has sent to the Court for review an amended complaint submitted by pro se plaintiff Hashim Matthews asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"),[1] together with an application to proceed in forma pauperis ("IFP"), a motion for preliminary injunctive relief, and a motion for appointment of counsel. *See* Am. Compl.; Dkt. No. 21 ("Fifth IFP Application"); Dkt. No. 22 ("Fourth Preliminary Injunction Motion"); Dkt. No. 23 ("Motion for Counsel").[2] Plaintiff, who is incarcerated at Attica Correctional Facility ("Attica C.F."), has not paid the filing fee for this action.

1    After plaintiff filed his complaint, he filed a document he captioned as an "amended complaint" in which he included new factual allegations about the Deputy Superintendent of Great Meadow Correctional Facility ("Great Meadow C.F."), whom he named as a defendant. Dkt. No. 14. Thereafter, plaintiff filed a document captioned as a "motion to amended [sic]" together with a document captioned as an "amended complaint," which also included factual allegations about the Deputy Superintendent of Great Meadow C.F. and named him as a defendant. Dkt. No. 24; Dkt. No. 24-1. Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend his complaint once as a matter of course, and may thereafter amend with leave of the Court. The Court therefore considers the complaint amended to included the allegations in the "amended complaint" submissions. For the sake of clarity, the Clerk is directed to file a copy of these submissions (Dkt. No. 14; Dkt. No. 24-1) immediately following the signature page of the complaint (Dkt. No. 1), and docket these combined submissions (Dkt. No. 1, Dkt. No. 14, Dkt. No. 24-1) as the amended complaint. The Court will refer to these combined submissions as the amended complaint ("Am. Compl.") in this Decision and Order.

2    Plaintiff filed with his original complaint a motion for a preliminary injunction and one page of an application to proceed IFP. *See* Dkt. Nos. 2, 3. Plaintiff's initial application to proceed IFP was not certified or accompanied by the inmate authorization form required to proceed IFP in this District. As a result, plaintiff's initial application to proceed IFP was denied as incomplete and the action was administratively closed. Dkt. No. 4. Thereafter, plaintiff filed a second application to proceed IFP, together with a letter request for injunctive relief, and this action was re-opened. Dkt. Nos. 8, 9, 10. By Decision and Order filed October 23, 2018, plaintiff's second application to proceed IFP was denied as incomplete and his requests for injunctive relief (Dkt. Nos. 3, 8) were denied without prejudice based on his failure to comply with the filing fee requirements. Dkt. No. 11. Plaintiff then filed a third application to proceed IFP,

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 382 of 397

Matthews v. Barq, Not Reported in Fed. Supp. (2019)

2019 WL 1025828

together with his first "amended complaint" submission and a second motion for a preliminary injunction. Dkt. No. 13 ("Third Preliminary Injunction Motion"); Dkt. No. 14; and Dkt. No. 15 ("Third IFP Application"). Before the Court undertook a review of the Third IFP Application, plaintiff filed a fourth application to proceed IFP, together with an inmate authorization form. Dkt. No. 17 ("Fourth IFP Application"); Dkt. No. 18 ("Inmate Authorization Form"). By Decision and Order filed January 30, 2019, plaintiff's Third IFP Application and Fourth IFP Application were denied as incomplete, and plaintiff's Third Preliminary Injunction Motion was denied without prejudice based on plaintiff's failure to comply with the filing fee requirements. Dkt. No. 19. Plaintiff then timely and properly filed the Fifth IFP Application. Dkt. No. 21.

## II. IFP APPLICATION

**\*2**  Upon review, the Court finds that plaintiff's Fifth IFP Application (Dkt. No. 21) is properly completed and signed, and demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. Dkt. No. 18. Accordingly, the Fifth IFP Application is granted.

## III. SUFFICIENCY OF THE AMENDED COMPLAINT

### A. Governing Legal Standard

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) ... the court shall dismiss the case at any time if the court determines that -- ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3] Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis. *See id.*

[3]      To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading

2019 WL 1025828

that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### B. Summary of the Amended Complaint

**\*3**  The amended complaint asserts alleged wrongdoing that occurred, if at all, while plaintiff was incarcerated at Eastern Correctional Facility ("Eastern C.F.") and Great Meadow C.F. *See generally* Am. Compl. The following facts are set forth as alleged by plaintiff in his amended complaint.

On March 20, 2015, defendant Corrections Sergeant A.J. Ciorciari from Eastern C.F. "was overseeing an unusual incident which had involved the plaintiff." Am. Compl. at 4. Defendant Ciorciari "ask[ed] plaintiff about the altercation several times[.]" *Id.* Plaintiff did not respond. *Id.* As a result, defendant Ciorciari "raise[d] his voice" and struck plaintiff in the head. *Id.* Defendant Ciorciari then called plaintiff homophobic and racial slurs and threatened to tell "gang members" about the crime for which plaintiff is "locked up" because they would "slice and dice" plaintiff if they knew. *Id.* at 4-5.

On March 23, 2015, plaintiff "receive[d] a misbehavior report issued by defendant Ciorciari, in which he threatened inmates into becoming his confidential informants against the plaintiff." Am. Compl. at 5. A "couple" of days later, defendant Corrections Sergeant Barq from Eastern C.F. interviewed plaintiff about a complaint he filed against defendant Ciorciari regarding "the attack on plaintiff." *Id.* During the interview, defendant Barq sought to "demonstrate" on plaintiff's body where plaintiff claimed he was hit by defendant Ciorciari while "simultaneously questioning him about the incident." *Id.* After "striking" plaintiff, defendant Barq stated, "I don't care if [defendant Ciorciari] did punch you [because] [a]s far as I'm concerned this didn't happen." *Id.*

On March 31, 2015, defendant Corrections Officer Rossy conducted a search of plaintiff's cell in plaintiff's absence. Am. Compl. at 6. As plaintiff was being escorted back to his cell, he was "warned" by the escorting official not to file a complaint because "the place was a mess." *Id.* Plaintiff arrived at his cell to see his personal belongings "scattered, shattered and destroyed." *Id.*

Defendant Rossy handed plaintiff a form to sign acknowledging items taken from the cell. Am. Compl. at 6. Plaintiff "reluctantly" signed the form. *Id.* Among the items removed from plaintiff's cell were "personal letters[,]" which included a letter addressed to the Inspector General's Office that was stamped and sealed. *Id.* Plaintiff received "a ticket for this situation." *Id.*

During plaintiff's disciplinary hearing for "this erroneous infraction," plaintiff explained why he was in possession of certain items he was charged with having stolen. Am. Compl. at 6. Off the record, the hearing officer stated, "I know you didn't steal that stuff." *Id.* The hearing officer then advised plaintiff that he was being found guilty of possessing contraband because of the letter addressed to the Inspector General. *Id.*

On April 20, 2015, while plaintiff was "on transfer status," his belongings were placed in "departmental regulated draft bags" and catalogued by Corrections Officers Travis and Meinecke (not named as defendants). Am. Compl. at 7. The next morning, while plaintiff was in the "draft waiting area," defendant Barq advised plaintiff, in the presence of the transport officer (not a defendant), that plaintiff's "legal bag" would not be allowed on the transport bus. *Id.* The transport officer "intervened" and indicated that there was "plenty of room" for the bag. *Id.* Nonetheless, defendant Barq "commanded" the transport officer to remove plaintiff's legal bag from the bus. *Id.* Defendant Barq then handed plaintiff two disbursement forms and ordered him to fill them out if he wanted his legal bags.

**\*4**  After completing the disbursement forms, plaintiff asked defendant Barq when he would receive his legal bag. Am. Compl. at 7. Defendant Barq responded, "you'll get it when we mail it." *Id.* "Plaintiff insisted that he required possession of his legal bag due to pending litigation." *Id.* Defendant Barq then threatened plaintiff with a "ticket" and plaintiff boarded the bus. *Id.*

Plaintiff's legal bag did not arrive at "the next penitentiary" where plaintiff was transferred for "nearly a month[.]" Am. Compl. at 7. When the legal bag arrived, several items were missing. *Id.*

Case 9:25-cv-00083-BKS-TWD   Document 29   Filed 01/20/26   Page 384 of 397
Matthews v. Barq, Not Reported in Fed. Supp. (2019)
2019 WL 1025828

At some point after plaintiff was transferred out of Eastern C.F., he was transferred to Five Points Correctional Facility ("Five Points C.F."). Am. Compl. at 11. During plaintiff's incarceration at Five Points C.F., defendant Deputy Superintendent Thoms oversaw inmate grievances and was assigned to perform "a 'quasi' welfare check" throughout the facility. *Id.* Plaintiff provided defendant Thoms with "proof" that he was experiencing "property problems." *Id.* at 16. Because plaintiff had filed "various missives" concerning defendant Thoms and was housed in the "SOP unit[,]" defendant Thoms "never made any attempt to resolve [plaintiff's] issues." *Id.* at 11.

At some point plaintiff was transferred from Five Points C.F. to Great Meadow C.F. Am. Compl. at 11. Following plaintiff's arrival at Great Meadow C.F., he was "once again deprived of legal material which was not transported with other personal belongings." *Id.* "Plaintiff filed a formal complaint regarding the matter, then was told to file a claim." *Id.* at 16. "The security personnel ... given charge to investigate the claim said plaintiff can only obtain recourse through a grievance." *Id.* at 16-17. "However, when the grievance supervisor conducted [his] investigation plaintiff was [again] instructed to file a claim." *Id.* at 17.

Plaintiff contacted the Deputy Superintendent "in order to ascertain an actual answer[.]" Am. Compl. at 17. Upon doing so, plaintiff was advised by defendant Thoms that "as a former resident of the S.O.P. unit he cannot request[ ] ... any relief whatsoever." *Id.*[4]

[4]   Plaintiff identifies Great Meadow C.F. as the address where defendant Thoms is employed. Am. Compl. at 11, 16. As a result, the Court assumes for purposes of this Decision and Order that defendant Thoms was working at Great Meadow C.F. when he allegedly denied plaintiff's request for relief regarding missing property.

Construed liberally, plaintiff alleges the following claims: (1) Eighth Amendment excessive force claims against defendants Ciorciari and Barq; (2) Fourteenth Amendment due process claims against defendants Ciorciari and Rossy based on the issuance of false misbehavior reports; (3) Fourteenth Amendment due process claims against defendants Barq and Thoms based on their failure to adequately investigate plaintiff's complaints; (4) First Amendment retaliation claims against defendants Ciorciari, Barq, Rossy, and Thoms; (5) a Fourth Amendment unlawful cell search claim against defendant Rossy; (6) a First Amendment access-to-courts claim against defendant Barq; (7) a First Amendment interference with mail claim against defendant Rossy; (8) destruction of property claims against defendants Rossy and Barq; (9) an Eighth Amendment conditions-of-confinement claim against defendant Thoms; and (10) Fourteenth Amendment equal protection claims against each of the defendants.[5]

[5]   Although plaintiff also purports to assert a Fifth Amendment "double jeopardy" claim against defendant Rossy and a Fifth Amendment claim against defendant Thoms, *see* Am. Compl. at 8, 11, the Court does not construe the amended complaint to assert a cognizable Fifth Amendment claim against any named defendant.

**\*5**  Plaintiff seeks monetary damages as well as declaratory and injunctive relief. Am. Compl. at 9, 12-13.[6]  For a complete statement of plaintiff's claims, reference is made to the amended complaint.

[6]   To the extent plaintiff seeks "restoration of good time," such relief is not available to plaintiff in this action. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 554 (1974) (habeas is the appropriate remedy for seeking restoration of good time credits lost as a result of prison disciplinary proceedings); *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) ("Because an action for restoration of good-time credits in effect demands immediate release or a shorter period of detention, it attacks the very duration of ... physical confinement, and thus lies at the core of habeas corpus[.]" (internal citations and quotation marks omitted) ).

### C. Nature of the Action

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 385 of 397
Matthews v. Barq, Not Reported in Fed. Supp. (2019)
2019 WL 1025828

It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) ); *Iqbal*, 556 U.S. at 676. "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986) ) (other citation omitted). "[V]icarious liability is inapplicable to ... § 1983 suits." *Iqbal* 556 U.S. at 676.

### 1. Excessive Force Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) ). [7]

[7]    In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986) ); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

**\*6**  "To determine whether a defendant acted maliciously, several factors should be examined including, 'the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.' " *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) ).

### (i) Ciorciari

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that a response to plaintiff's excessive force claim against defendant Ciorciari is warranted. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### (ii) Barq

Plaintiff alleges that defendant Barq "demonstrate[d]" on plaintiff's body where defendant Ciorciari struck him, while "simultaneously questioning him about the incident." Am. Compl. at 5. The amended complaint lacks any details about the force used by defendant Barq in "striking" plaintiff, the manner in which defendant Barq contacted plaintiff, or any injuries plaintiff suffered as a result of the interaction. Without such details, the amended complaint lacks allegations which plausibly suggest that defendant Barq's act of touching plaintiff was done maliciously to cause harm. *See Hudson*, 503 U.S. at 9 ("[N]ot ... every malevolent touch by a prison guard gives rise to a federal cause of action."); *Cosby v. Russell*, No. 9:10-CV-0595 (TJM/DEP), 2012 WL 1514836, at *8 (N.D.N.Y. Feb. 8, 2012) ("The allegation that defendant Russell sat on plaintiff's legs after he

Matthews v. Barq, Not Reported in Fed. Supp. (2019)

2019 WL 1025828

complained of pain is insufficient to state a plausible deliberate indifference claim ... [where] ... [b]y plaintiff's own admission, he was non-compliant with orders ... requiring that some modicum of force be applied"), *report and recommendation adopted by* 2012 WL 715250 (N.D.N.Y. Mar. 5, 2012); *Headley v. Fisher*, No. 06-CV-6331, 2008 WL 1990771, at *4 (S.D.N.Y. May 7, 2008) (inmate's allegation that corrections official "grabbed his shoulder, cursed in his face, slapped him twice and pushed him in his cell" after inmate was directed to do as the official told him was not sufficient to demonstrate that the official "acted maliciously and sadistically to cause harm rather than in a good faith effort to maintain or restore discipline").

Accordingly, plaintiff's Eighth Amendment claim against defendant Barq is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. False Misbehavior Report Claims

It is well-settled that the issuance of a false misbehavior report does not state a constitutional claim for relief. *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997) (It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report.") (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988) ); *accord, Pittman v. Forte*, No. 9:01-CV-0100, 2002 WL 31309183, at *5 (N.D.N.Y. July 11, 2002) (Sharpe, M.J.); *see also Santana v. Olson*, No. 07-CV-0098, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007) ("[T]he filing of a false behavior report by a correctional officer does not state a claim for relief."); *Husbands v. McClellan*, 957 F. Supp. 403, 406-07 (W.D.N.Y. 1997) (claim that plaintiff had contraband placed in his cell and received a false misbehavior report, even if true, does not state a constitutional violation). [8] In addition, "[t]he filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing." *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986) (rejecting prisoner's "but for" argument as to guard who prepared misbehavior report but was not involved in Tier III hearing) (citation omitted).

[8]    A constitutional violation could occur in this situation if plaintiff were not provided adequate due process in the disciplinary proceeding, and then the claim is not based on the truth or falsity of the misbehavior report but instead on the conduct of the hearing itself. *See Freeman*, 808 F.2d at 951; *see also Santana v. Olson*, No. 07-CV-0098, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007). In this case, plaintiff has not asserted a disciplinary due process claim.

 *7   Accordingly, plaintiff's claims against defendants Ciorciari and Rossy based on them allegedly issuing him false misbehavior reports are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Failure-to-Investigate Claims

"[T]he law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine v. Seally*, No. 9:09-CV-1198 (DNH/ATB), 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) (citing *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (collecting cases) ); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause "generally confers no affirmative right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."). "In order for a constitutional violation to have occurred, the investigation *itself* must have resulted in a deprivation of a constitutional right." *Pine*, 2011 WL 856426, at *9 (emphasis in original).

In this case, the amended complaint lacks any allegations which plausibly suggest that plaintiff was deprived of a constitutional right as a result of either defendant Barq's investigation of plaintiff's complaint against defendant Ciorciari, or defendant Thoms's refusal to investigate plaintiff's complaint of missing property. [9] Accordingly, plaintiff's failure-to-investigate claims

2019 WL 1025828

are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

9       The law is equally well-settled that if an "official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation." *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008); *see also Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989) ("[T]he wrong ... [must] have been capable of mitigation at the time the supervisory official was apprised thereof ... Without such caveat, the personal involvement doctrine may effectively and improperly be transformed into one of respondeat superior."); *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001) ("[A] 'failure to remedy' theory of liability is not available with respect to discrete and completed violations.").

### 4. Retaliation Claims

Courts must approach claims of retaliation " 'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.' " *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ). To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

### (i) Ciorciari

**\*8**  Liberally construed, plaintiff alleges that defendant Ciorciari assaulted him on March 20, 2015, and thereafter issued him a false misbehavior report, because plaintiff refused to provide defendant Ciorciari with information about his involvement in an altercation that defendant Ciorciari was "overseeing." Am. Compl. at 4-5. The Second Circuit recently held that "the First Amendment protects an inmate's refusal both to serve as a prison informant and to provide false information." *Burns v. Martuscello*, 890 F.3d 77, 89 (2d Cir. 2018) (noting that "[s]afety risks as well as legitimate concerns about personal loyalty play a role in the decision to divulge information and incriminate others").

Accordingly, at this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that this retaliation claim survives sua sponte review and requires a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### (ii) Barq

Plaintiff alleges that defendant Barq expressed indifference to plaintiff's complaint against defendant Ciorciari, and physically contacted plaintiff's body while questioning him about the incident. Am. Compl. at 5. Plaintiff further alleges that defendant Barq refused to allow plaintiff to travel with his legal bag during his transport to another facility approximately one month later, and thereafter "tamper[ed]" with the legal bag. *Id.* at 5, 7.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 388 of 397
Matthews v. Barq, Not Reported in Fed. Supp. (2019)
2019 WL 1025828

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that a response to this claim is warranted. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### (iii) Rossy

Liberally construed, the amended complaint asserts a retaliation claim against defendant Rossy based on allegations that he "destroyed" certain items of plaintiff's personal property during a cell search, confiscated a letter addressed to the Inspector General's Office, and issued plaintiff a misbehavior report for possessing contraband in response to seeing the letter addressed to the Inspector General's Office. Am. Compl. at 6.

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that this retaliation claim survives sua sponte review and requires a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### (iv) Thoms

Liberally construed, the amended complaint asserts a retaliation claim against defendant Thoms based on allegations that he ignored complaints made by plaintiff about unidentified "issues" during his incarceration at Five Points C.F., and refused to investigate plaintiff's complaint regarding missing legal material upon his arrival at Great Meadow C.F., because plaintiff "filed various missives" concerning defendant Thoms. Am. Compl. at 11.

As an initial matter, plaintiff's allegation that defendant Thoms failed to investigate his complaints, without more, does not satisfy the adverse action requirement. *See Houston v. Schriro*, No. 11-CV-7374, 2013 WL 4457375, at *10 (S.D.N.Y. Aug. 20, 2013) ("Ignoring grievances cannot support a First Amendment retaliation claim.") (citing *Islam v. Goord*, No. 05-CV-7502, 2006 WL 2819651, at *6 (S.D.N.Y. Sept. 29, 2006) (prison official's failure to investigate prisoner's complaint is not sufficiently adverse to support First Amendment retaliation) ). Furthermore, plaintiff does not identify when he filed "missives" concerning defendant Thoms in relation to when defendant Thoms allegedly ignored his complaints and denied his missing property grievance. Nor does plaintiff allege any facts which plausibly suggest that defendant Thoms was aware that plaintiff filed "missives" about him. Thus, there exists no basis for the Court to infer a casual connection between the alleged "missives" plaintiff filed concerning defendant Thoms and the alleged inaction by defendant Thoms with respect to plaintiff's complaints.

**\*9** Accordingly, plaintiff's retaliation claim against defendant Thoms is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 5. Unlawful Cell Search Claim

"The Fourth Amendment is inapplicable to the unwarranted search of an inmate's prison cell, as inmates have no reasonable expectation of privacy in such a place." *Cucchiara v. Auburn Corr. Facility*, No. 9:18-CV-0605 (DNH/TWD), 2018 WL 3471280, at *3 (N.D.N.Y. July 19, 2018) (citing, *inter alia, Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("hold[ing] that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell ..." and thus the Fourth Amendment does not apply to cell searches); *Demaio v. Mann*, 877 F. Supp. 89, 95 (N.D.N.Y. 1995) ("Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights.") ).

Accordingly, plaintiff's unlawful cell search claim against defendant Rossy is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 389 of 397

Matthews v. Barq, Not Reported in Fed. Supp. (2019)

2019 WL 1025828

### 6. Access-To-Courts Claim

Interference with a prison inmate's legal mail "implicates [his] rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis*, 320 F.3d at 351. The "right of access to the courts," requires States "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *modified on other grounds, Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Bourdon v. Loughren*, 386 F.2d 88, 92 (2d Cir. 2004). "However, this right is not 'an abstract, freestanding right....' and cannot ground a Section 1983 claim without a showing of 'actual injury.' " *Collins v. Goord*, 438 F. Supp. 2d 399, 415 (S.D.N.Y. 2006) (quoting *Lewis*, 518 U.S. at 351).

To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that (1) the defendant acted deliberately, and (2) the plaintiff suffered an actual injury. *Lewis*, 518 U.S. at 353; *Konigsberg v. Lefevre*, 267 F. Supp. 2d 255, 261 (N.D.N.Y. 2003) ("Prison officials may only be held liable for such injury if they frustrated or impeded a prisoner's efforts to pursue a non-frivolous legal claim.").

"A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Amaker v. Haponik*, No. 98-CV-2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999). Instead, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 349, 351-53; *see also O'Diah v. Fischer*, No. 9:08-CV-941 (TJM/DRH), 2012 WL 987726, at *12 (N.D.N.Y. Feb. 28, 2012) (recommending denial of motion to dismiss access-to-courts claim where plaintiff alleged that "he provided Hahn, Shaw, Swierk and Moscicki his legal mail at various times in June of 2008, but that they intentionally failed to send the mail out" and his "Article 78 case filed in Cayuga County was [subsequently] dismissed"), *report and recommendation adopted by* 2012 WL 976033 (N.D.N.Y. Mar. 22, 2012). "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.' " *Davis*, 320 F.3d at 352 (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) ).

 **\*10**   The Supreme Court has stated that in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint...." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 415-16. "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id.* at 417-18 (footnote omitted).

Here, plaintiff alleges that defendant Barq denied him access to a legal bag prior to his transport to another facility, and that certain legal materials within the bag were subsequently removed. Am. Compl. at 7. Plaintiff, however, fails to allege any facts which plausibly suggest that he suffered an "actual injury" in any court proceeding as a result of these alleged acts of wrongdoing.

Accordingly, plaintiff's access-to-courts claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 7. Free-Flow-of-Mail Claim

"In addition to the right of access to the courts, a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis*, 320 F.3d at 351. A prisoner's mail may only be restricted to further " 'one or more of the substantial governmental interests of security, order, and rehabilitation ... [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.' " *Id.* (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986) ). "The First Amendment protects prisoners' access to mail directly, unlike the right of access to courts, which

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 390 of 397
Matthews v. Barq, Not Reported in Fed. Supp. (2019)
2019 WL 1025828

protects prisoners' access to mail only derivatively and with respect to given claims." *Bellezza v. Holland*, No. 09-CV-8434, 2011 WL 2848141, at *6 (S.D.N.Y. July 12, 2011).

As courts have attempted to balance the competing interests implicated when facilities place restrictions on prison mail, the courts have "consistently afforded greater protection to legal mail than to non-legal mail[.]" *Davis*, 320 F.3d at 351. "While a prisoner has a right to be present when his legal mail is opened, ... an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Davis*, 320 F.3d at 351 (citations omitted). However, in *Washington v. James*, the Second Circuit found that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Davis*, 320 F.3d at 351 (citing *Washington*, 782 F.2d at 1139); *see also Turner v. Safley*, 482 U.S. 78, 84-91 (1987) (prison regulations impinging constitutional rights must be "reasonably related to legitimate penological interests").

Here, plaintiff alleges that defendant Rossy confiscated "letters" during a cell search, including one addressed to the Inspector General's Office. Am. Compl. at 6. Plaintiff's allegation of a single instance of mail tampering, without more, is insufficient to plausibly suggest an ongoing practice of censorship unjustified by a substantial government interest. Moreover, the amended complaint is devoid of any allegations which plausibly suggest that the alleged tampering unjustifiably chilled plaintiff's right of access to the courts or impaired any legal representation received. *See Davis*, 320 F.3d at 351 ("[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation. Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.' ") (quoting *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29, 2001) ); *Romano v. Lisson*, 711 Fed. App'x 17, 19 (2d Cir. 2017) (summary order) (affirming dismissal of free-flow-of-mail claim without prejudice where the complaint made "only one reference" to tampering with legal mail); *Chavis v. Chappius*, No. 06-CV-543S, 2015 WL 1472117, at *14 (W.D.N.Y. Mar. 31, 2015) (dismissing free-flow-of-mail claim based on allegation that corrections official "confiscated a piece of his outgoing mail addressed to the Inspector General" because "[e]ven assuming plaintiff's letter to the Inspector General was legal mail, there are no factual allegations that DePasquale's action actually 'hindered [plaintiff's] efforts to pursue a legal claim' or otherwise prejudiced a legal action as required to state a claim for denial of access to the courts due to interference with legal mail ... [and] plaintiff does not allege that this defendant 'regularly and unjustifiably' interfered with his personal mail" (internal citations omitted) ); *Banks v. Annucci*, 48 F. Supp. 3d 394, 410-11 (N.D.N.Y. 2014) ("A single instance of mail tampering that does not result in the plaintiff suffering any damage is generally insufficient to support a constitutional challenge.") (citing *Morgan v. Montanye*, 516 F.2d 1367, 1371 (2d Cir. 1975) ); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 346 (N.D.N.Y. 2010) ("[C]ourts in the Second Circuit have never held an isolated incident of mail tampering to violate an inmate's First Amendment rights.").

**\*11** Accordingly, plaintiff's free-flow-of-mail claim against defendant Rossy is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## 8. Destruction of Property Claims

The Supreme Court has held that the unauthorized intentional destruction of prisoner's property may not be the basis for due process claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981) ); *see also Rivera-Powell v. New York City Board of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) ("When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post deprivation remedy."). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001); *Davis v. New York*, 311 Fed. App'x 397, 400 (2d Cir. 2009) (summary order) ("The existence of this adequate post-deprivation state remedy would thus preclude [plaintiff's] due process claim under § 1983 [for lost personal property].").

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 391 of 397
Matthews v. Barq, Not Reported in Fed. Supp. (2019)
2019 WL 1025828

In the instant case, plaintiff claims that certain of his personal property was lost or destroyed following a cell search and his transfer out of Eastern C.F. Am. Compl. at 6-7. Plaintiff has failed to allege that adequate post-deprivation remedies to recover the value of his destroyed property were unavailable. [10] Thus, the amended complaint is devoid of any allegations which plausibly suggest that plaintiff was denied due process when his personal property was allegedly lost or destroyed.

[10] To the extent plaintiff's claim is based on the destruction of legal materials, as stated above, plaintiff has failed to allege facts which plausibly suggest that he suffered an actual injury in any court proceeding.

Accordingly, plaintiff's destruction of property claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 9. Conditions-of-Confinement Claim

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective element. *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). A plaintiff must demonstrate that (1) the conditions of confinement resulted in "unquestioned and serious deprivations of basic human needs," *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *see also Jolly*, 76 F.3d at 480, and (2) the defendants acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303-04 (1991).

**\*12** Here, the amended complaint alleges that defendant Thoms "exhibited deliberate indifference towards plaintiff" by "utiliz[ing]" plaintiff's conviction to "create a volatile environment for the plaintiff, which was a primary reason for plaintiff's property mishaps." Am. Compl. at 11. These allegations are entirely conclusory. Moreover, the amended complaint is devoid of any allegations which plausibly suggest that plaintiff suffered an "unquestioned and serious deprivation" of a "basic human need" as a result of the actions of defendant Thoms.

Accordingly, plaintiff's Eighth Amendment claim against defendant Thoms is dismissed pursuant to 28 U.S.C. 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 10. Equal Protection Claims

The Equal Protection Clause requires that the government treat all similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' " *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980) ). To state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination ... directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). In the alternative, under a "class of one" theory, plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 392 of 397
Matthews v. Barq, Not Reported in Fed. Supp. (2019)
2019 WL 1025828

### (i) Ciorciari

Plaintiff alleges that defendant Ciorciari struck him in the head and then subjected him to racial and homophobic slurs while questioning him about his involvement in an altercation. Am. Compl. at 4-5. "Courts in this circuit and elsewhere have held that officers' use of racial epithets may be regarded as direct evidence of racial animus and, when combined with physical abuse or other unlawful actions, may establish an equal protection violation." *Ali v. Connick*, 136 F. Supp. 3d 270, 280 (E.D.N.Y. 2015); *see also Cole v. Fischer*, 379 Fed. App'x 40, 43 (2d Cir. 2010) ("When the verbal harassment and simultaneous physical abuse alleged in the amended complaint are considered together, we have little trouble concluding that plaintiff's allegations were sufficient to state a § 1983 claim for discrimination on the basis of race and religion."). Accordingly, at this stage of the proceeding, the Court finds that a response from defendant Ciorciari to plaintiff's equal protection claim is warranted. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### (ii) Thoms

Plaintiff alleges that defendant Thoms refused to clarify whether plaintiff should file a claim or grievance regarding missing property, and instead advised plaintiff that he could not seek "any relief whatsoever" for his missing property (after plaintiff had already done so) because he was "a former resident of the S.O.P. unit[.]" Am. Compl. at 16-17.

It is unclear from the amended complaint upon which basis plaintiff claims he was unequally treated by defendant Thoms. To the extent plaintiff claims that he was discriminated against based on his conviction as a sex offender, the law is well-settled that "[s]ex offenders do not comprise a suspect or quasi-suspect class for Equal Protection purposes." *Travis v. New York State Div. of Parole*, No. 96-CV-759 (TJM/GLS), 1998 WL 34002605, at *4 (N.D.N.Y. Aug. 26, 1998); *see also Selah v. N.Y.S. Docs Com'r.*, No. 04-CV-3273, 2006 WL 2051402, at *6 (S.D.N.Y. July 25, 2006) ("Neither sex offenders nor the mentally ill are a suspect class warranting heightened equal protection scrutiny.").

**\*13** Moreover, assuming that plaintiff has intended to assert an equal protection claim under a "class of one" theory, the amended complaint is devoid of any allegations that plaintiff was intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. *See Village of Willowbrook*, 528 U.S. at 564. In fact, the amended complaint fails to identify any similarities between plaintiff and others, let alone adverse treatment experienced by plaintiff compared to persons similarly situated. *See Thomas v. Pingotti*, No. 9:17-CV-0300 (GTS/DEP), 2017 WL 3913018, at *7 (N.D.N.Y. Sept. 6, 2017) ("Conclusory allegations of disparate treatment or a plaintiff's personal belief of discriminatory intent are patently insufficient to plead a valid claim under the Equal Protection clause."); *see also Butler v. Bridgehampton Fire Dist.*, No. 14-CV-1429, 2015 WL 1396442, at *4-5 (E.D.N.Y. Mar. 25, 2015) (dismissing the plaintiff's equal protection claim under the selective enforcement and class of one theories because the complaint "only discusse[d] the harmful actions [the defendants] took with respect to [the] [p]laintiff, but there [was] no discussion whatsoever of any similarities between [the] [p]laintiff and others"); *Tuitt v. Chase*, No. 9:11-CV-0776 (DNH/TWD), 2014 WL 2927803, at *8 (N.D.N.Y. June 27, 2014) ("While Plaintiff cursorily alleges that he 'suffered adverse treatment f[ro]m other inmates because he attempted to resolve ... issues through the use of grievances,' he does not identify any particular similarly situated individuals who received different treatment.... Such cursory allegations do not meet the plausibility standard required by *Twombly* and *Iqbal*."); *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 434-35 (S.D.N.Y. 2013) (dismissing the plaintiff's equal protection claim under theories of selective enforcement and class of one where the plaintiff "simply" alleged that the defendants "singled out [the] plaintiff, in part, because of his exercise of constitutional rights" (internal quotation marks omitted) ).

Furthermore, it appears that plaintiff's equal protection claim against defendant Thoms is based solely on defendant Thoms's alleged failure (because of the nature of plaintiff's conviction) to either confirm that plaintiff could file a claim for the value of his missing property or order an investigation into plaintiff's missing property. To the extent plaintiff's claim is based on the former, the amended complaint is devoid of any allegations which plausibly suggest that defendant Thoms interfered with

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 393 of 397

Matthews v. Barq, Not Reported in Fed. Supp. (2019)

2019 WL 1025828

plaintiff's ability to pursue post-deprivation remedies. Indeed, the amended complaint lacks any allegations regarding whether plaintiff even attempted to file an action in the New York State Court of Claims regarding his missing property.

To the extent plaintiff's claim is based on defendant Thoms's alleged failure to order an investigation into plaintiff's missing property, as noted, "the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine*, 2011 WL 856426, at *9; *see also Shell v. Brzezniak*, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005) ("inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures do [ ] not give rise to a cognizable § 1983 claim.") (citing *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ). Thus, "the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983." *Shell*, 365 F. Supp. 2d at 370.

Accordingly, plaintiff's equal protection claim against defendant Thoms is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) f or failure to state a claim upon which relief may be granted.

### (iii) Rossy and Barq

The amended complaint lacks any allegations which plausibly suggest that either defendant Rossy or defendant Barq discriminated against plaintiff based on him belonging to an identifiable or suspect class, or intentionally treated him differently from others similarly situated. Rather, plaintiff's equal protection claims against defendants Rossy and Barq are entirely conclusory. *See Iqbal*, 556 U.S. at 678 (concluding that a pleading that only "tenders naked assertions devoid of further factual enhancement" will not survive sua sponte review) (internal quotations and alterations omitted); *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation ... requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *Thomas*, 2017 WL 3913018, at *7.

**\*14**  Accordingly, plaintiff's equal protection claims against defendants Rossy and Barq are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## IV. FOURTH PRELIMINARY INJUNCTION MOTION

"In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.' " *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted) ).

With respect to the first factor, "as a general matter, there is a presumption of irreparable harm when there is an alleged deprivation of constitutional rights." *V.W. by & through Williams v. Conway*, 236 F. Supp. 3d 554, 588 (N.D.N.Y. 2017) (internal quotation marks and citation omitted); *see also The Bronx Household of Faith v. Board of Education of the City of New York*, 331 F.3d 342, 349 (2d Cir. 2003) (holding that "where a plaintiff alleges injury from a rule or regulation that directly limits [a First Amendment right], the irreparable nature of the harm may be presumed").

With respect to the second factor, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is heightened. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted) ). A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo*, 638 F.3d at 406 (citing *Citigroup Global Mkts.*, 598 F.3d at 35 n.4) (internal quotation marks omitted); *see also Tom Doherty Assocs., Inc.*

*v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (a plaintiff seeking a mandatory injunction must make a "clear" or "substantial" showing of a likelihood of success on the merits of his claim).

The same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Perri v. Bloomberg*, No. 06-CV-0403, 2008 WL 2944642, at * 2 (E.D.N.Y. Jul. 31, 2008). The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

In this case, plaintiff seeks a temporary restraining order and preliminary injunction enjoining defendants "and all other persons acting in concert ... with them from issuing plaintiff faulty facility rule violations, ... honoring erroneous institutional infractions, ... corroborating [sic] fabricated misbehavior reports ... [and engaging in] wrongful confinement harassment, discrimination and retaliation[.]" *See* Fourth Preliminary Injunction Motion at 1.

**\*15** Plaintiff's motion must be dismissed for several reasons. First, plaintiff is currently incarcerated at Attica C.F. *See* Fourth Preliminary Injunction Motion at 2. Neither plaintiff's pleadings nor the Fourth Preliminary Injunction Motion contain any allegations that plaintiff has suffered any wrongdoing at Attica C.F. Thus, plaintiff has failed to demonstrate a "clear and substantial" showing of a likelihood of success on any claim arising out of his confinement at Attica C.F. *See Amaker v. Fischer*, 453 Fed. App'x 59, 63-64 (2d Cir. 2011) (affirming denial of motion for preliminary injunction based on lack of standing, noting that "[t]o establish standing for a claim for the denial of access to the courts, an inmate must show that he has suffered an 'actual injury' traceable to the challenged conduct of prison officials[,]" and the plaintiff "failed to show that he suffered an 'actual injury' as a result of the personal property limitation placed on him by DOCS's policy"); *Hancock v. Essential Res., Inc.*, 792 F. Supp. 924, 928 (S.D.N.Y. 1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."); *Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction.").

Second, none of the defendants named in this action are alleged to be employed at Attica C.F., and none of the claims that remain in this action bear any relationship to plaintiff's treatment at that facility. *See Candelaria v. Baker,* No. 00-CV-0912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) ("To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." (internal quotation marks and citations omitted)); *see also Scarborough v. Evans*, No. 9:09-CV-0850 (NAM/DEP), 2010 WL 1608950, at *2 (N.D.N.Y. Apr. 20, 2010) (motion for preliminary injunction alleging use of excessive force and denial of medical care by non-parties denied where complaint alleged denial of mental health care and proper conditions of confinement); *Lewis v. Johnston*, No. 9:08-CV-0482 (TJM/ATB), 2010 WL 1268024, at *3 (N.D.N.Y. Apr. 1, 2010) (denying motion for injunctive relief based upon actions taken by staff at Great Meadow Correctional Facility in 2010, where the complaint alleged wrongdoing that occurred at Franklin and Upstate Correctional Facilities in 2006 and 2007); *Mitchell v. New York State Dep't of Corr. Servs.*, No. 06-CV-6278, 2011 WL 5326054, at *3 (W.D.N.Y. Nov. 3, 2011) (denying plaintiff's request for preliminary injunctive relief because "the facts underlying the request for injunctive relief [were] essentially unrelated to the underlying facts of the claims in this action, except for the fact that they arise in the prison context"); *McClenton v. Menifee*, No. 05-CV-2844, 2006 WL 2474872, at *17 (S.D.N.Y. Aug. 22, 2006) (denying motion for preliminary injunction where the underlying claim "[was] not included in the complaint and there [was] no showing that the plaintiff [had] exhausted his administrative remedies with respect to [that] claim").

Third, to the extent that plaintiff seeks injunctive relief against unnamed staff at Attica C.F. who are not defendants in the present action, injunctive relief is available against non-parties only under very limited circumstances, none of which are present here. *See* Fed.R.Civ.P. 65(d)(2); *Doctor's Associates, Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302-03 (2d Cir. 1999); *United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988); *see also In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction.").

Accordingly, for the foregoing reasons, plaintiff's Fourth Preliminary Injunction Motion (Dkt. No. 22) is denied. [11]

[11]     Plaintiff is advised that concerns regarding his current conditions of confinement at Attica C.F. should be addressed through administrative channels at that facility and the New York State Department of Corrections and Community Supervision and, if necessary, by means of a properly filed action.

## V. MOTION FOR COUNSEL

**\*16**  There is no right to appointment of counsel in civil matters. *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). Title 28 of United States Code Section 1915 specifically provides that a court may request an attorney to represent any person "unable to afford counsel." 28 U.S.C. § 1915(e)(1). Appointment of counsel must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. *Cooper v. A. Sargenti, Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

In *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion. In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination. *See id.* at 1341 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986) ); *Sawma v. Perales*, 895 F.2d 91, 95 (2d Cir. 1990). Among these are

> [t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues, and any special reason ... why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61. None of these factors are controlling, however, and each case should be decided on its own facts. *Id.*

This action was only recently commenced. The defendants that remain in this case after the Court's initial review have not yet responded to the allegations contained in plaintiff's amended complaint, and the only facts upon which this Court may base its decision as to whether this lawsuit is of substance are those portions of plaintiff's amended complaint wherein he states the facts surrounding his claims. Where a plaintiff does not provide a Court with evidence, as opposed to mere allegations, relating to his or her claims, such party does not meet the first requirement imposed by the Second Circuit relative to applications seeking appointment of pro bono counsel. *See Harmon v. Runyon*, No. 96-CV-6080, 1997 WL 118379 (S.D.N.Y. Mar. 17, 1997).

Moreover, there is nothing in the record which demonstrates that plaintiff is not able to effectively pursue this action. While it is possible that there will be conflicting evidence implicating the need for cross-examination if this case proceeds to trial, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61). Further, if this case survives a dispositive motion filed by defendants, it is highly probable that this Court will appoint trial counsel at the final pretrial conference. This Court is not aware of any special reason why appointment of counsel at this time would be more likely to lead to a just determination of this litigation.

In light of the foregoing, the Court denies plaintiff's Motion for Counsel without prejudice.

## VI. CONCLUSION
**WHEREFORE**, it is hereby

Case 9:25-cv-00083-BKS-TWD    Document 29    Filed 01/20/26    Page 396 of 397
Matthews v. Barq, Not Reported in Fed. Supp. (2019)
2019 WL 1025828

**ORDERED** that plaintiff's Fifth IFP Application (Dkt. No. 21) is **GRANTED**. The Clerk shall provide the Superintendent of the facility that plaintiff has designated as his current location with a copy of plaintiff's inmate authorization form (Dkt. No. 18) and notify that official that plaintiff has filed this action and is required to pay to the Northern District of New York the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

 **\*17 ORDERED** that the Clerk provide a copy of plaintiff's inmate authorization form (Dkt. No. 18) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the Clerk is directed to file a copy of the submissions captioned as "amended complaint" (Dkt. Nos. 14, 24-1) immediately following the signature page of the complaint (Dkt. No. 1) and docket these combined submissions as the amended complaint; and it is further

**ORDERED** that the following claims **SURVIVE** sua sponte review and require a response: (1) plaintiff's Eighth Amendment excessive force claim against defendant Ciorciari; (2) plaintiff's First Amendment retaliation claims against defendants Ciorciari, Barq, and Rossy; and (3) plaintiff's Fourteenth Amendment equal protection claim against defendant Ciorciari; and it is further

**ORDERED** that all remaining claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; [12] and it is further

[12]    Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file a second amended complaint in accordance with Rule 15(a) of the Federal Rules of Civil Procedure. Any amended pleading, which shall supersede and replace the amended complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

**ORDERED** that defendant Thoms is **DISMISSED without prejudice** as a defendant for the reasons set forth above; and it is further

**ORDERED** that, upon receipt from plaintiff of the documents required for service, the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon defendants Ciorciari, Barq, and Rossy. The Clerk shall also forward a copy of the summons and complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that defendants Ciorciari, Barq, and Rossy, or their counsel, file a response to plaintiff's claims against them as provided for in Rule 12 of the Federal Rules of Civil Procedure after service of process on them; and it is further

**ORDERED** that plaintiff's Fourth Preliminary Injunction Motion (Dkt. No. 22) is **DENIED without prejudice** for the reasons stated above; and it is further

**ORDERED** that plaintiff's Motion for Counsel (Dkt. No. 23) is **DENIED without prejudice** to renew at some future time for the reasons stated above; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any

2019 WL 1025828

requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; plaintiff's failure to do so will result in the dismissal of this action**; and it is further

  **\*18** **ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.


**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1025828

---

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.